1   ROBERT F. SCOULAR (SBN 85293)
    robert.scoular@dentons.com
2   JOHN A. MOE II (SBN 66893)
    john.moe@dentons.com
3   NORMAN M. ASPIS (SBN 313466)
    norman.aspis@dentons.com
4   DENTONS US LLP
    601 South Figueroa Street, Suite 2500
5   Los Angeles, California 90017-5704
    Telephone:    213 623 9300
6   Facsimile:    213 623 9924

7   Attorneys for Defendant, Crossclaimant and Counterclaimant
    YOGI SECURITIES HOLDINGS, LLC
8

9            **UNITED STATES BANKRUPTCY COURT**

10       **CENTRAL DISTRICT OF CALIFORNIA -- LOS ANGELES DIVISION**

11

12  | In re, | Case No. 2:21-bk-18205-DS |

13   CRESTLLOYD, LLC,                     Chapter 11
                          Debtor.
14
                                         Adversary Proceeding No. 2:22-ap-01125-DS
15   INFERNO INVESTMENT, INC., a Quebec
     corporation,
16                            Plaintiff,    COUNTERCLAIM AND CROSSCLAIM
                 v.                         OF YOGI SECURITIES HOLDINGS. LLC
17                                          FOR DECLARATORY RELIEF,
     CRESTLLOYD, LLC, California limited    EQUITABLE SUBORDINATION, AN
18   liability company; et al.             ACCOUNTING, AND DISALLOWANCE
                          Defendants.       OF CLAIMS
19

20   YOGI SECURITIES HOLDINGS, LLC, a
     Nevada limited liability company,
21
                Counter/Cross-Complainant,
22
                 v.
23
     CRESTLLOYD, LLC, a California Limited
24   Liability Company; HANKEY CAPITAL, LLC,
     a California limited liability company;
25   INFERNO INVESTMENT, INC., a Quebec
     corporation; and HILLDUN CORPORATION,
26   a New York corporation,
27              Counter/Cross-Defendants.
28

Plaintiff Yogi Securities Holdings, LLC ("Yogi Securities") states for its Counterclaim and Crossclaim in this adversary proceeding as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334. Jurisdiction to grant declaratory relief is conferred by 28 U.S.C. § 2201 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

2.      This adversary proceeding is brought pursuant to Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure.

3.      Venue is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises in and relates to a case under Title 11 of the Federal Bankruptcy Code that is now pending in this District.

4.      This adversary proceeding is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

## THE PARTIES

5.      Plaintiff Yogi Securities is a limited liability company duly organized and existing under the laws of the State of Nevada.

6.      Defendant Crestlloyd, LLC ("Crestlloyd" or "Debtor") is the debtor in this Chapter 11 bankruptcy case, which remains pending. Yogi Securities is informed and believes and thereon alleges that Crestlloyd is a limited liability company duly organized and existing under the laws of the State of California.

7.      Yogi Securities is informed and believes and thereon alleges that defendant Hankey Capital, LLC ("Hankey") is a California limited liability company duly organized and existing under the laws of the State of California.

8.      Yogi Securities is informed and believes and thereon alleges that defendant Inferno Investment, Inc. ("Inferno") is a corporation organized and existing under the laws of Quebec, Canada.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

9.       Yogi Securities is informed and believes and thereon alleges that defendant Hilldun Corporation ("Hilldun") is a corporation duly organized and existing under the laws of the State of New York.

## FACTUAL BACKGROUND

10.      The subject matter of this Counterclaim is real property referred to as "The One," a 105,000-square-foot single family luxury home located at 944 Airole Way, Los Angeles, California 90079 (the "Property"). Inferno, Hankey and Hilldun have each asserted that they loaned money or extended credit to Crestlloyd, allegedly secured by the Property, as set forth below. Yogi Securities lent money or extended credit to Crestlloyd, secured by the Property, as set forth below.

**A.       The Alleged Inferno Funding**

11.      On March 13, 2013, Crestlloyd entered into two transactions with Inferno and/or its predecessors in interest. The first transaction was purportedly evidenced by a Promissory Note Secured By Deed Of Trust in favor of Inferno Investment, Inc. in the alleged original principal amount of $3,925,545. Despite the title of the instrument, the funding was not secured by a lien against the Property in March 2013. The second transaction was purportedly evidenced by a Promissory Note Secured By Deed Of Trust in favor of Inferno Realty, LLP, as to an undivided $7,000,000 and Maybach Holdings Corporation, Inc., as to an undivided $7,040,000, totaling $14,040,000. An instrument entitled Deed Of Trust With Assignment Of Rents was recorded against the Property purportedly to secure repayment of this second funding (the "Inferno Deed Of Trust"). Through a series of assignments (collectively, the "Assignments To Inferno"), Inferno Investment Inc. purportedly acquired all right, title and interest of the initial funders in and to the two transactions and, on October 21, 2015, Inferno entered into a Modification And Supplement To Deed Of Trust with Crestlloyd (the "Supplemental Inferno Deed Of Trust"). The Supplemental Inferno Deed of Trust is the first time an instrument proffered by Inferno purported to secure repayment of the first transaction's funding (*i.e.,* purportedly for alleged principal amount of $3,925,545) with a lien on the Property. The Supplemental Inferno Deed Of Trust also identified the total amount then allegedly owed to Inferno as $10,295,545. Each of these documents was

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213.623.9300

recorded with the Los Angeles County Recorder's Office against the Property[1]: the Inferno Deed Of Trust was recorded on March 13, 2013 as instrument number 2013-0384037; the Assignments To Inferno were recorded on November 10, 2015 as instrument numbers 2015-1375606 and 2015-1375607; and the Supplemental Inferno Deed Of Trust was recorded on November 10, 2015 as instrument number 2015-1375608. True and correct copies of these recorded documents are attached hereto and incorporated herein as Exhibits A, B and C.

12.    On January 1, 2016, Crestlloyd and Inferno entered into a "Memorandum Of Agreement" (the "Memorandum"), whereby they agreed that proceeds from the sale of the Property would be distributed in the following manner:

> First to repay the loan(s) obtained from a bank or third-party parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property].

> Second to Crestlloyd and Inferno, *pro rata,* in repayment of any loans owing them, together with simple interest thereon at the rate of eight percent (8%) per annum.

> Third, to Crestlloyd, the sum of ONE HUNDRED FORTY-FIVE THOUSAND DOLLARS ($145,000) as compensation for general office overhead and services rendered by it in connection with the construction of the Residence.

> Thereafter, to Crestlloyd and Inferno in accordance with their share of the profits and losses determined in the manner set forth in paragraph 2 above.

A copy of the Memorandum is attached hereto and incorporated herein as Exhibit D.

13.    The Memorandum was amended by Amendment No. 1 To Memorandum Of Agreement (undated); Amendment No. 2 To Memorandum Of Agreement, entered into as of September 27, 2016; Revised Amendment No. 2 To Memorandum Of Agreement, entered into as of September 28, 2016; Amendment No. 3 To Memorandum Of Agreement, entered into as of March 29, 2018; and Revised Amendment No. 3 To Memorandum Of Agreement, entered into as of May 16, 2018, copies of which are attached hereto and incorporated herein as Exhibit E.

---

[1] All recorded documents referenced herein were recorded in the real property records of the Los Angeles County Registrar-Recorder/County Clerk's office as to the Property.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

14. Subsequent to Crestlloyd and Inferno entering into the Memorandum, Yogi Securities loaned money to Crestlloyd, and Hankey and Hilldun also allege that they loaned money to Crestlloyd.

**B.     The Yogi Securities Loans**

15. In October 2018, Crestlloyd obtained a $30,188,235 loan from Yogi Securities, which was secured by the Property. More specifically, on October 16, 2018, Crestlloyd executed and delivered a Secured Promissory Note (the "$30,188,235 Secured Promissory Note") in favor of Yogi Securities, a true and correct copy of which is attached hereto and incorporated herein as Exhibit F. In connection with the $30,188,235 Secured Promissory Note, Crestlloyd and Yogi Securities executed and delivered a Deed Of Trust And Assignment Of Rents, recorded on November 7, 2018 as instrument number 2108-1126580, a true and correct copy of which is attached hereto and incorporated herein as Exhibit G.

16. As further security for the repayment of the $30,188,235 Secured Promissory Note, Crestlloyd also executed and delivered a Deed Of Trust And Assignment Of Rents (the "Hillcrest Deed Of Trust") dated October 16, 2008, further securing the obligation with real property located at 1175 North Hillcrest Road, Beverly Hills, CA 90210 (the "Hillcrest Property"). In addition, and as further security, 10701 Bellagio Road, LLC ("Bellagio") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Bellagio Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 10701 Bellagio Road, Los Angeles, CA 90077 (the "Bellagio Property"); Carcassonne Fine Homes, LLC ("Carcassonne") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Carcassonne Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 627 North Carcassonne Road, Los Angeles, CA 90077 (the "Carcassonne Property"); Marbella Construction, Inc. ("Marbella") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Marbella Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 3381 Stone Ridge Road, Los Angeles, CA 90077 (the "Stone Ridge Property"); and 1369 Londonderry Estate, LLC ("Londonderry") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Londonderry Deed Of Trust") dated October 16 2018, further securing the obligation with real

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

property located at 1369 Londonderry Place, Los Angeles, CA 90069 (the "Londonderry Property"). These documents were recorded as follows: the Hillcrest Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065783; the Bellagio Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065788; the Carcassonne Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065789; the Marbella Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065790; and the Londonderry Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065787. True and correct copies of these recorded documents are attached collectively hereto and incorporated herein as Exhibit H. (When referred to collectively, the five additional properties securing the $30,188,235 Secured Promissory Note shall be referred to as the "Properties.")

17.    On or about June 18, 2019, Crestlloyd, Bellagio, Carcassonne, Marbella, Londonderry and Yogi Securities entered into an Amendment Of Note And Deeds Of Trust, extending the maturity date of the $30,188,235 Secured Promissory Note and increasing the loan to $30,588,235, repayment of which continued to be secured by the Properties, and which was recorded on August 30, 2019 as instrument number 2019-0889046, a true and correct copy of which is attached hereto and incorporated herein as Exhibit I.

18.    On or about August 17, 2019, Crestlloyd, Bellagio, Carcassonne, Marbella, Londonderry and Yogi Securities entered into a Second Amendment Of Note And Deed Of Trust, again extending the maturity date of the $30,188,235 Secured Promissory Note and increasing the loan to $31,528,363.12, repayment of which continued to be secured by the Properties, and was recorded on September 5, 2019 as instrument number 2019-0907091, a true and correct copy of which is attached hereto and incorporated herein as Exhibit J.

19.    Prior to Crestlloyd's execution and delivery of the $30,188,235 Secured Promissory Note, on April 20, 2018, Marbella and Londonderry executed and delivered a $5,200,000 Secured Promissory Note in favor of Yogi Securities (the "$5,200,000 Secured Promissory Note"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit K. In connection with the $5,200,000 Secured Promissory Note, Londonderry and Marbella each executed and delivered a Deed of Trust and Assignment of Rents, recorded on April 23, 2018 as instrument

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

numbers 2018-08389829 and 2018-0389830, true and correct copies of which are attached collectively hereto and incorporated herein as Exhibit L, securing the obligation to repay the $5,200,000 Secured Promissory Note with the Stone Ridge and Londonderry Property.

20.    On September 18, 2019, Crestlloyd, Marbella, Londonderry and Yogi Securities entered into a Fourth Amendment Of Note And Deed Of Trust (the "Fourth Amendment") relating to the $5,200,000 Secured Promissory Note, which Fourth Amendment was recorded on September 23, 2019 as instrument number 2019-0989745, a true and correct copy of which attached hereto and incorporated herein as Exhibit M. Concurrently with the execution of the Fourth Amendment, Crestlloyd executed and delivered a Deed Of Trust And Assignment Of Rents recorded on September 23, 2019 as instrument number 2019-0989746, a true and correct copy of which is attached hereto and incorporated herein as Exhibit N. The Fourth Amendment and the Deed Of Trust And Assignment Of Rents added the Property as further security for repayment of the $5,200,000 Secured Promissory Note.

21.    On October 22, 2019, Marbella, Londonderry, Crestlloyd, Carcassonne, Bellagio and Yogi Securities entered into a Fifth Amendment Of Note and Deed of Trust ("Fifth Amendment") relating to the $5,200,000 Secured Promissory Note, as amended, which Fifth Amendment was recorded on October 28, 2019 as instrument number 2019-1154393, a true and correct copy of which is attached hereto and incorporated herein as Exhibit O. Concurrently with the execution of the Fifth Amendment, Carcassonne and Bellagio each executed and delivered a Deed Of Trust And Assignment Of Rents, recorded on October 28, 2019 as instrument numbers 2019-1154392 and 2019-1154391, respectively, true and correct copies of which are attached collectively hereto and incorporated herein as Exhibit P. The Fifth Amendment and the two Deeds Of Trust And Assignments Of Rents added the Carcassonne Property and Bellagio Property as further security for repayment of the $5,200,000 Secured Promissory Note.

22.    As of October 22, 2019, the obligation to repay Yogi Securities under the $5,200,000 Secured Promissory Note was secured by the Property, Londonderry Property, Stone Ridge Property, Bellagio Property and Carcassonne Property, and the obligation to repay Yogi

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Securities under the $30,133,235 Secured Promissory Note was secured by the Property and the Properties.

**C.    The Alleged Hankey Funding**

23.    As of October 25, 2018, Hankey Capital and Crestlloyd entered into a written instrument entitled the Construction Loan Agreement, a true and correct copy of which is attached hereto and incorporated herein as Exhibit Q, *the purpose of which was to fund the construction of improvements to the Property.* In connection with the Construction Loan Agreement, Crestlloyd executed and delivered to Hankey an $82,500,000 Promissory Note, a true and correct copy of which is attached hereto and incorporated herein as Exhibit R. Hankey and Crestlloyd also executed and delivered a Security Agreement (Personal Property), a true and correct copy of which is attached hereto and incorporated herein as Exhibit S, and as Exhibit A to that agreement, a Profit Participation Agreement (the "October 2018-PP Agreement"), a true and correct copy of which is attached hereto and incorporated herein as Exhibit T. A Memorandum Of Agreement (the "2018 Memorandum of Agreement") reflecting the October 2018-PP Agreement was recorded on November 6, 2018 as instrument number 2018-1122919, a true and correct copy of which is attached hereto and incorporated herein as Exhibit U. The October 2018-PP Agreement provided that Hankey would receive $3,500,000 if the Property sold for more than $200,000,000. Finally, Crestlloyd executed and delivered in favor of Hankey a Construction Deed Of Trust, Security Agreement And Fixture Filing With Assignment Of Rents, purportedly secured by the Property, recorded on November 6, 2018 as instrument number 2018-1122917, a true and correct copy of which is attached hereto and incorporated herein as Exhibit V.

24.    In connection with the alleged $82,500,000 construction funding by Hankey, Hankey and Inferno entered into a Subordination Agreement, pursuant to which Hankey and Inferno agreed that the Inferno Deed Of Trust (Exhibit A, hereto) is subordinate to the Hankey Deed Of Trust (Exhibit V, hereto). A true and correct copy of the Subordination Agreement, recorded on November 6, 2018 as instrument number 2018-1122920, is attached hereto and incorporated herein as Exhibit W. On or about May 26, 2022, more than three years after the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Subordination Agreement was recorded, Inferno asserted that the Subordination Agreement was forged.

25.    Subsequently, *Hankey twice increased the funds that it made available to Crestlloyd without any notification to or consent by Yogi Securities,* as set forth below.

26.    On or about December 10, 2019, Hankey agreed to advance additional funds to Crestlloyd, which Hankey asserts increased the principal balance of Hankey's funding to Crestlloyd from $82,500,000 to $91,000,000.

27.    More specifically, on December 10, 2019, Crestlloyd purportedly executed and delivered to Hankey a written instrument entitled Amended And Restated Promissory Note (the "December 2019 Note") for the increased sum of $91,000,000, a copy of which is attached hereto and incorporated herein as Exhibit X. In connection with the December 2019 Note, Hankey and Crestlloyd purportedly entered into a written First Modification Of Construction Loan Agreement and a Modification Of Deed Of Trust to secure repayment of the increased funding amount, copies of which are attached hereto and incorporated herein as Exhibits Y and Z.

28.    Also as of December 10, 2019, in connection with the December 2019 Note transaction, Hankey and Crestlloyd entered into a second Profit Participation Agreement (the "December 2019-PP Agreement"), whereby in connection with the then purportedly increased amount of the loan from Hankey to Crestlloyd (from $82,500,000 to $91,000,000), Hankey's profit participation from the sale of the Property increased to include an additional $3,500,000 if the Property sold for more than $100,000,000. A copy of the December 2019-PP Agreement is attached hereto and incorporated herein as Exhibit AA.

29.    No documents were recorded in connection with the December 2019 Note or the December 2019-PP Agreement. No memorandum of agreement or any other document was recorded to provide notice of the December 2019-PP Agreement, and no document was recorded to provide notice of the increased $91,000,000 amount allegedly secured by the unrecorded Modification Of Deed Of Trust (Exhibit Z, attached hereto).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

30.     At no time did Yogi Securities agree to subordinate its secured position to the December 2019 Note transaction, the December 2019-PP Agreement or any other additional advances made by Hankey.

31.     On or about August 20, 2020, Hankey agreed to advance yet additional funds to Crestlloyd, which Hankey asserts increased the purported principal balance of Hankey's advances to Crestlloyd from $91,000,000 to $106,000,000.

32.     More specifically, on August 20, 2020, Crestlloyd executed and delivered to Hankey an instrument known as the Amended And Restated Promissory Note (the "August 2020 Note") for the principal sum of $106,000,000, a copy of which is attached hereto and incorporated herein as Exhibit BB. In connection with the August 2020 Note, Hankey and Crestlloyd entered into a written instrument known as the Second Modification Of Construction Loan Agreement, a copy of which is attached hereto and incorporated herein as Exhibit CC. Crestlloyd also executed a Modification Of Deed Of Trust, recorded on August 31, 2020 as instrument number 2020-1030024, a true and correct copy of which is attached hereto and incorporated herein as Exhibit DD. *The Modification Of Deed Of Trust recorded August 31, 2020 provided the first notice of a funding increase beyond the original $82,500,000 provided by Hankey to Crestlloyd.*

33.     As of August 20, 2020, in connection with the August 2020 Note, Hankey and Crestlloyd entered into a third Profit Participation Agreement (the "August 2020-PP Agreement"). A Memorandum Of Agreement (the "2020 Memorandum of Agreement") reflecting the August 2020-PP Agreement was recorded on August 31, 2020 as instrument number 2020-01030294. A copy of the August 2020-PP Agreement and a true and correct copy of the 2020 Memorandum Of Agreement are attached hereto and incorporated herein as Exhibits EE and FF, respectively.

34.     At no time did Yogi Securities agree to subordinate its secured position to the August 2020 Note transaction, the August 2020 PP-Agreement or any other additional advances made by Hankey to Crestlloyd.

35.     Neither a consent agreement nor a subordination agreement or any other document was executed by Yogi Securities permitting, authorizing and/or acknowledging the Hankey/ Crestlloyd December 2019 Note transaction, the August 2020 Note transaction, the December

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

2019-PP Agreement or the August 2020 PP-Agreement. Yogi Securities was not informed of the transactions before they occurred and never consented to them.

**D.      The Hilldun Loan**

36.      Yogi Securities is informed and believes that on or about April 13, 2017, N. Philanthropy and Crestlloyd, as guarantor, entered into a factoring agreement in favor of Hilldun, pursuant to which Crestlloyd executed and delivered a $5,000,000 guaranty in favor of Hilldun. The guaranty was purportedly secured by the Property pursuant to a Deed Of Trust, Assignment Of Rents, Security Agreement And Fixture Filing, recorded on September 4, 2020 as instrument number 2020-1058770, a true and correct copy of which is attached hereto as Exhibit GG.

## THE SALE OF THE PROPERTIES

37.      Between February 7, 2020 and July 9, 2021, the Hillcrest Property, Stone Ridge Property, Londonderry Property, Bellagio Property and Carcassonne Property were sold. From the proceeds of the sales of the Hillcrest Property, Bellagio Property, Carcassonne Property and Londonderry Property, $15,240,346.44 was applied to reduce the obligation on Yogi Securities' $30,188,235 Secured Promissory Note, as amended.

38.      In addition, from the sale of the Hillcrest Property, Yogi Securities received $6,436,536.37 which, at the direction of Crestlloyd, was used to pay off in full the $5,200,000 Secured Promissory Note, resulting in Yogi Securities' execution and recording of a Substitution Of Trustee and Deed Of Full Reconveyance for each Deed Of Trust And Assignment Of Rents that secured repayment of the $5,200,000 Secured Promissory Note. The Substitutions Of Trustee And Deeds Of Full Reconveyance affecting the Carcassonne Property, Londonderry Property, Stone Ridge Property, the Property and Bellagio Property were recorded on January 14, 2021 with the Los Angeles County Recorder's Office as instrument numbers 2021-0076455, 2021-0076456, 2021-0076457, 2021-0076458, and 2021-0076459, respectively, true and correct copies of which are attached collectively hereto and incorporated herein as Exhibit HH.

## THE BANKRUPTCY

39.      On October 26, 2021, the Debtor filed in this Court its voluntary petition under Chapter 11 of the Bankruptcy Code.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

40.     Yogi Securities and Hankey, Inferno and Hilldun have filed the following Proofs Of Claims in the Bankruptcy Case:

a.     As it pertains to the Property, Inferno filed secured Proof of Claim No. 11 in the amount of $20,902,106.12 based on various recorded instruments, including the Inferno Deed of Trust, the Assignment To Inferno, and the Supplemental Inferno Deed Of Trust, as set forth in the Proof of Claim.

b.     As it pertains to the Property, Hankey filed three secured claims: (1) Proof of Claim 17 in the amount of $3,500,000, based on the October 2018-PP Agreement and the 2018 Memorandum of Agreement as set forth in the Proof of Claim; (2) Proof of Claim 18 in the amount of $5,000,000, based on the August 2020-PP Agreement and the 2020 Memorandum of Agreement as set forth in the Proof of Claim; and (3) Proof of Claim 20, in the amount of $122,638,623.41, based on a Construction Deed Of Trust, Security Agreement And Future Filing With Assignment Of Rents and a Modification Of Deed Of Trust as set forth in Proof of Claim 20 ("Hankey's Proof of Claim"). At least Claims 17 and 18 are not actually secured claims because neither the 2018 Memorandum of Agreement nor the 2020 Memorandum of Agreement, or the underlying October 2018-PP Agreement and August 2020-PP Agreement, created a lien or perfected a security interest against the Property or otherwise.

c.     As it pertains to the Property, Yogi Securities filed a secured Amended Proof of Claim 27, asserting a secured claim in the amount of $24,385,366.77 based on the Deed Of Trust And Assignment Of Rents, the Amendment Of Note And Deeds Of Trust and the Second Amendment Of Note And Deeds Of Trust as set forth in Yogi Securities' Proof of Claim 27 (the "Yogi Securities' Proof of Claim").

d.     As it pertains to the Property, Hilldun filed Proof of Claim 9, asserting a secured claim in the amount of $5,000,000 based on a deed of trust recorded in favor of Hilldun, as set forth in Hilldun's Proof of Claim.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**THE SALE OF THE PROPERTY**

41.     By order entered on March 28, 2022, the Court overruled objections to the sale of the Property and approved the sale of the Property for $126,000,000, plus $11,970,000 attributable to a rebate of the buyer's premium by Concierge Auctions (the "Rebate").

42.     From the proceeds of sale, the debtor-in-possession loan of Hankey to the Debtor (the "DIP Loan") was paid and certain Mechanic's Liens were paid, among other obligations.

43.     On March 3, 2022, Debtor filed a *Motion For Authority To Disburse Funds To Hankey Capital, LLC, A Senior Secured Creditor* [Docket No. 326], requesting authority to pay to Hankey the amount of $103,837,545.86. Yogi Securities and Inferno consented to the payment of $82,500,000, subject to a reservation of rights, in order to mitigate a potential claim for interest. By order entered on May 27, 2022, the Court authorized Debtor to pay Hankey $82,500,000 "without prejudice to any and all parties' rights to assert claims and defenses as may be appropriate, including but not limited to the right to claw back any portion of the monies paid."

**FIRST CLAIM FOR RELIEF**

COUNTERCLAIM AGAINST INFERNO FOR DECLARATORY RELIEF
TO THE EFFECT THAT INFERNO'S PURPORTED LIEN SHOULD
BE SUBORDINATED TO THE LIEN OF YOGI SECURITIES

44.     Yogi Securities repeats and realleges the allegations contained in Paragraphs 1-43 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

45.     As set forth in paragraph 12, above, on January 1, 2016, Crestlloyd and Inferno entered into the Memorandum whereby Crestlloyd and Inferno agreed that the proceeds from the sale of Property would be distributed:

> First to repay the loan(s) obtained from a bank or third-parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property].

46.     Following execution of the Memorandum, Yogi Securities entered into loans with Crestlloyd as set forth above.

47.     Neither the Memorandum nor any of the Amendments contain any requirement that Crestlloyd must obtain Inferno's agreement for Crestlloyd to obtain loans secured by the Property.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

48. Under California Code of Civil Procedure §106.0, *et seq.*, 28 U.S.C. 2201 and Rule 7701(2) of the Federal Rules of Bankruptcy Procedure, a Court can and should determine the validity, priority and extent of the liens involved in this First Claim For Relief.

49. An actual controversy has arisen and now exists between Yogi Securities and Inferno, in that, among other things, Yogi Securities asserts that Inferno's purported secured debt has been subordinated to Yogi Securities' secured debt by reason of the Memorandum. Inferno disputes these contentions and contends to the contrary, asserting that Inferno's purported secured debt retains a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties as to the existence and priority of liens between Yogi Securities and Inferno.

50. Yogi Securities seeks a declaration from the Court to the effect that Inferno's secured debt (if any) is subordinated in its entirety to the entire secured debt of Yogi Securities on the grounds that, among other reasons, the Memorandum places the payment of Yogi Securities' secured debt ahead of the Inferno's purported secured debt.

## SECOND CLAIM FOR RELIEF

### CLAIM FOR AN ACCOUNTING FROM CRESTLLOYD AND INFERNO ON ALL DISBURSEMENTS FROM INFERNO TO CRESTLLOYD AND ON THE AMOUNT DUE FROM CRESTLLOYD TO INFERNO

51. Yogi Securities repeats and realleges the allegations contained in Paragraphs 1-43 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

52. Crestlloyd and Inferno entered into the transactions set forth in paragraphs 11 through 14 herein.

53. Crestlloyd and Inferno should be required to provide an accounting of the disbursements made by Inferno to Crestlloyd, with supporting documentation, and an accounting as to the calculation of the amount due from Crestlloyd to Inferno.

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

**THIRD CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE
EFFECT THAT HANKEY'S PURPORTED LIEN IS SUBORDINATED TO
THE LIEN OF YOGI SECURITIES
[By Reason Of Hankey Extending Additional Funds And Increasing The Purported
Lien On The Property Without Yogi Securities' Knowledge or Consent]

54.     Yogi Securities repeats and realleges the allegations contained in Paragraphs 1-43 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

55.     Crestlloyd and Hankey entered into the modifications set forth in paragraphs 25-35 above, never informing Yogi Securities of the modifications before they were completed, including the December 2019 Note transaction, the December 2019-PP Agreement, the August 2020 Note transaction and the August 2020-PP Agreement, and Yogi Securities had no knowledge of the transactions before they were completed.

56.     The effect of the modifications was to increase substantially the amount of the alleged secured obligations due Hankey, placing repayment of Crestlloyd's obligation to Yogi Securities at greater risk.

57.     As set forth in paragraphs 30, 34 and 35 above, neither a consent agreement, a subordination agreement nor any other document was executed by Yogi Securities, permitting, authorizing and/or acknowledging the Hankey/Crestlloyd December 2019 Note Transaction, the August 2020 Note Transaction, the December 2019-PP Agreement, and/or the October 2020-PP Agreement. Yogi Securities was not informed of and was unaware of the transactions before they occurred and never consented to them.

58.     Hankey's material modifications of its advances to Crestlloyd, without the knowledge or consent of Yogi Securities, materially impaired repayment of Crestlloyd's obligation to Yogi Securities.

59.     When Hankey noticed a foreclosure sale on the Property, it was noticed for the amount of $106,000,000, plus interest, despite the fact that Yogi Securities neither knew nor had consented to Hankey increasing Hankey's purported loan first to $91,000,000, then to $106,000,000, placing repayment of Yogi Securities' loan in serious jeopardy.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

60.     Hankey's unilateral, substantial and material modifications of its purported loan to Crestlloyd were done with utter disregard of Yogi Securities' rights, placing Crestlloyd in an over-leveraged position, enhancing the likelihood of Crestlloyd's default, resulting in a default, a noticed foreclosure, a receivership, this bankruptcy, and the sale of the Property at a depressed value in this bankruptcy case.

61.     Yogi Securities' lien was so impaired as to warrant judicially elevating Yogi Securities' lien to a position senior to Hankey's lien.

62.     Under California Code Civil Procedure § 106-0, *et seq.*, 28 U.S.C. § 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, the Court can and should determine the validity, priority and extent of the liens involved in this Third Claim For Relief.

63.     An actual controversy has arisen and now exists between Yogi Securities and Hankey, in that, among other things, Yogi Securities asserts that Hankey's purported loan should be subordinated to Yogi Securities' loan because of Hankey's actions. Hankey disputes these contentions and contends to the contrary, that Hankey holds secured debt which should retain a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to the existence and priority of liens between Yogi Securities and Hankey.

64.     Yogi Securities seeks a declaration from the Court to the effect that the entirety of Hankey's debt (if any) is subordinated to the debt of Yogi Securities.

**FOURTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION
OF HANKEY'S CLAIM TO YOGI SECURITIES' CLAIM
[By Reason Of Sections 510(c)(1), 502(a) And 105 Of The Bankruptcy Code]

65.     Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43 and 55-61 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

66.     On January 14, 2022, Hankey's Proof of Claim was filed in the amount of $122,638,623.41. On April 29, 2022, Yogi Securities filed as an amended claim Yogi Securities' Proof of Claim in the amount of $24,385,366.77.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213.623.9300

67.     Hankey asserts that Hankey's Proof of Claim has priority over Yogi Securities' Proof of Claim.

68.     Section 510(c)(1) of the Bankruptcy Code provides that after notice and a hearing, the bankruptcy court may under the principles of equitable subordination, "[s]ubordinate for purposes of distribution all or part of an allowed claim or interest to all or part of another allowed claim or interest . . . "

69.     Hankey engaged in the inequitable conduct alleged herein, which resulted in injury to Yogi Securities and/or conferred an unfair advantage on Hankey as a creditor in this Chapter 11 case.

70.     The request for equitable subordination of Hankey's Proof of Claim to Yogi Securities' Proof of Claim is consistent with the Bankruptcy Code.

71.     The entirety of Hankey's Proof of Claim should be equitably subordinated to the entirety of Yogi Securities' Proof of Claim, in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

### FIFTH CLAIM FOR RELIEF

**CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE EFFECT THAT PRINCIPAL AND INTEREST, FEES AND COSTS INCLUDED IN HANKEY'S PURPORTED LIEN, RELATED TO HANKEY'S MODIFICATIONS OF DECEMBER 10, 2019 AND AUGUST 20, 2020, ARE SUBORDINATED TO THE LIEN OF YOGI SECURITIES**
[By Reason Of Hankey Extending Additional Purported Loans And Increasing Its Purported Lien On The Property Without Yogi Securities' Knowledge or Consent]

72.     Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43 and 55-61 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

73.     Yogi Securities' lien was so impaired as to warrant judicially elevating Yogi Securities' lien to a position senior to Hankey's lien to the extent of the increase in principal and interest, fees and costs that accrued as a result of Hankey's modifications of December 10, 2019 and August 20, 2020.

74.     Under California Code of Civil Procedure § 106, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, the Court can and should determine the validity, priority and extent of the liens involved in this Fifth Claim For Relief.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

75.    As an alternative to the relief sought in the Fourth Claim For Relief, an actual controversy now exists between Yogi Securities and Hankey, in that the amount of principal and interest, fees and costs due in connection with Hankey's modifications to its purported loan in 2019 and 2020 should be subordinated to Yogi Securities' loan. Hankey disputes these contentions and contends to the contrary, that the entirety of Hankey's alleged secured debt retains a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to the existence and priority of liens between Yogi Securities and Hankey.

76.    Yogi Securities seeks a declaration from the Court to the effect that principal and interest, fees and costs allegedly due Hankey related to the two modifications of Hankey's purported loan are subordinated to Yogi Securities' loan.

### SIXTH CLAIM FOR RELIEF

CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION
OF HANKEY'S CLAIM TO YOGI SECURITIES' CLAIM IN REGARD TO
THE AMOUNT OF PRINCIPAL AND INTEREST, FEES AND COSTS
RELATED TO HANKEY'S PURPORTED LOAN MODIFICATIONS OF
DECEMBER 10, 2019 AND AUGUST 20, 2020
[By Reason Of Sections 510(c)(1), 502(a) and 105 Of The Bankruptcy Code]

77.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43, 55-61, 66-70 and 73 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

78.    That portion of Hankey's Proof of Claim consisting of principal and interest, fees and costs related to Hankey's modifications of its purported loan on December 20, 2019, and December 20, 2020, should be equitably subordinated to the entirety of Yogi Securities' Proof of Claim in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

18

**SEVENTH CLAIM FOR RELIEF**

CLAIM FOR AN ACCOUNTING BY CRESTLLOYD AND HANKEY ON ALL
DISBURSEMENTS FROM HANKEY TO CRESTLLOYD FOR
CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY, AND ON THE
AMOUNT DUE FROM CRESTLLOYD TO HANKEY
[In Regard To Hankey And Crestlloyd Abiding By The Terms Of The
Construction Loan Agreement]

79.     Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43 of

this Counterclaim and Crossclaim and incorporates them as though set forth in full herein

80.     The purpose of the Construction Loan Agreement was to fund improvements to the

Property, as set forth in the Recitals in that Agreement (Exhibit Q hereto):

A. Borrower owns or will own certain real property described in EXHIBIT A
hereto ("Property").

B. Borrower proposes to construct new improvements or renovate existing
improvements on the Property consisting of a single family residence, together
with all appurtenances, fixtures, and tenant improvements now or hereafter
located on the Property ("Improvements"). The Improvements shall be
constructed in accordance with plans and specifications which Borrower has
heretofore, or will hereafter deliver to Lender, as amended in order to comply
with the terms and conditions of this Agreement ("Plans and Specifications"),
Borrower has requested from Lender a loan for the purpose of such construction.

81.     The Construction Loan Agreement gave Hankey preapproval of design and

construction budgets for the improvements:

"Disbursement Budget" - means the design and construction budget for the
Improvements, as approved by Lender from time to time.

82.     Hankey's obligation to make any disbursement in connection with the Construction

Loan Agreement was subject to conditions precedent:

ARTICLE 3. DISBURSEMENT

3.1. Conditions Precedent. Lender's obligation to make any disbursements
or take any other action under the Loan Documents shall be subject at all times
to satisfaction of each of the following conditions precedent:

\*          \*          \*

(b) Any undisbursed Loan funds together with all sums, if any, to be
provided by Borrower, shall be at all times equal to or greater than the amount
which Lender from time to time reasonably determines necessary to: (i) pay,
through completion, all costs of renovation, development, construction,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

operation, marketing and sale or leasing of the Property and Improvements in accordance with the Loan Documents,

*     *     *

(d) Lender acknowledges that it has received and approved in form and substance satisfactory to Lender: (i) a soils report for the Property and Improvements; (ii) an environmental questionnaire and environmental site assessment with respect to the presence, if any, of Hazardous Materials on the Property and Improvements; (iii) two set of the Plans and Specifications (or if the Plans and Specifications for the entirety of the Improvements are not then complete or some portion of the Improvements are to be constructed using a design/build process, in either such case pursuant to partial Plans and Specifications approved by Lender under the provisions of Section 4.6 of this Agreement and for which a valid building permit has been issued, then such portion of the Plans and Specifications to the extent that payment for such portion of the Improvements is to be covered by a current disbursement request), together with evidence of all necessary or appropriate approvals of governmental agencies; (iv) copies of all agreements which are material to completion of the Improvements; (v) copies of all building permits and similar permits, licenses, approvals, development agreements and other authorizations of governmental agencies required in connection with the development of the Property and Improvements, or, if such approvals are to be issued on a staged basis, then for the current and all prior stages of development, provided that such staged development has been approved by Lender, as contemplated in Section 4.6; and (vi) copies of any initial study, negative declaration, mitigated negative declaration, environmental impact report, notice of determination or notice of exemption prepared, adopted, certified or filed by any governmental agency in connection with the Property; and

(e) Lender shall have received and approved the Disbursement Budget.

83.    The actual process of fund disbursements was under the control of Hankey, as set forth in the Construction Loan Agreement:

3.4. Loan Disbursements. Subject to the conditions set forth in Section 3.1(b), the proceeds of the Loan and Borrower's Funds shall be disbursed in accordance with the terms and conditions of EXHIBIT D.

The disbursement plan, which is contained in Exhibit D attached to the Construction Loan Agreement, states:

A. Timing Of Disbursement: …Borrower shall submit to: Hankey Capital… a written itemized statement, signed by Borrower ("Application For Payment") setting forth:

1. A description of the work performed, material supplied and/or costs incurred or due for which disbursement is requested with respect to any line item ("Item") shown in the Disbursement Budget. Notwithstanding the amount of any line item shown in the Disbursement Budget, Borrower may reallocate amounts among the line items by allocating cost savings in any line item to Contingency, and amounts from the Contingency to any line item with a cost overrun; provided, however, that the aggregate amount of all disbursements under the Loan shall not exceed the Loan amount; and

2. The total amount incurred, expended and/or due for each requested Item less prior disbursements.

\* \* \*

12. In the event any Application for Payment includes the cost of materials stored at a location other than the Property ("Offsite Materials"), each of the following: (a) evidence that the Offsite Materials have been purchased by Borrower, have been segregated from other materials in the facility and have been appropriately marked to indicate Borrower's ownership thereof and Lender's security interest therein; and (b) evidence that the Offsite Materials are insured as required by this Agreement.

13. In the event that any Application for Payment includes the cost of materials stored on the Property ("Onsite Materials"), each of the following: (a) evidence that the Onsite Materials have been purchased for or by Borrower; (b) evidence that the Onsite Materials are insured as required hereunder; and (c) evidence that the Onsite Materials are stored in an area on the Property for which adequate security is provided against theft and vandalism.

\* \* \*

D. Partial Disbursements. No disbursement shall be made for a particular Application for Payment unless all required supporting materials are included for Items totaling at least sixty-five percent (65%) of the total amount of funds requested thereunder.

84. The Construction Loan Agreement states that the $82,500,000 was sufficient to complete construction of the Property:

6.9. Loan Proceeds and Adequacy. The undisbursed Loan proceeds, together

with Borrower's Funds and all other sums, if any, to be provided by Borrower as shown in EXHIBIT C, are sufficient to construct the Improvements in accordance with the terms and conditions of this Agreement.

85. Yogi Securities is informed and believes that not all amounts disbursed by Hankey to Crestlloyd were used for construction of improvements to the Property.

86. Attached hereto and incorporated herein as Exhibit II is a chart itemizing disbursements to Crestlloyd that were not, or may not have been, used for construction of improvements to the Property. Exhibit II is based on a "Client Trust Ledger," which is attached hereto and incorporated herein as Exhibit JJ, which was prepared by Hankey regarding disbursements to Crestlloyd in connection with the Construction Loan Agreement (Exhibit P, hereto).

87. At least the following amounts appear not to be for construction of improvements to the Property:

• An EFI loan fee on November 5, 2018, totaling $1,200,000.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

- A payment of $74,389.56 on November 14, 2018, for "Nile Travel" referencing "Miscellaneous."

- A payment of $25,000 on December 19, 2019 for "Sales Office/Supplies/ Furnishings."

- Multiple payments totaling $5,918,013.46 for furniture.

88. In addition, further information is needed as to the legitimacy of the following amounts:

- Payments totaling $482,810 to Skyline for "Overhead/Payroll."

- Payments totaling $640,021.44 to Skyline for "Project Management Fees."

- Payments totaling $710,583.20 to Skyline for "Other Labor."

89. In addition, further information is needed as to whether all of Hankey's disbursements to Crestlloyd were used for construction of improvements to the Property, including, but not limited to, disbursements totaling $5,671,406.88 for audio-visual and $1,020,000 for electrical, the foregoing items not being an exhaustive list (with additional items to be potentially revealed through discovery).

90. None of the "Plans And Specifications," the "Applications For Payment," the "Disbursement Budget(s)" and/or "copies of all agreements which were material to completion of the Improvements," or other documents related to disbursements from Hankey to Crestlloyd, have been provided to Yogi Securities by either Crestlloyd and/or Hankey to confirm that the disbursements were used for construction of improvements to the Property.

91. Crestlloyd and Hankey should be required to provide an accounting of the disbursements made by Hankey to Crestlloyd, with supporting documentation, including the "Plans And Specifications," the "Applications For Payment," the "Disbursement Budget(s)" and "copies of all agreements which were material to completion of the Improvements," as those terms are used in the Construction Loan Agreement and Exhibit D to the Construction Loan Agreement and an accounting as to the amount allegedly due from Crestlloyd to Hankey.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**EIGHTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE
EFFECT THAT A PORTION OF HANKEY'S PURPORTED LIEN SHOULD
BE SUBORDINATED TO THE LIEN OF YOGI SECURITIES
[By Reason Of And To The Extent That Hankey's Alleged Loans Were Not Used
For Construction Of Improvements To The Property]

92.     Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43, 55-61 and 80-89 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

93.     Under California Code of Civil Procedure § 106, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, the Court can and should determine the validity, priority and extent of the liens involved in this Eighth Claim For Relief.

94.     An actual controversy now exists between Yogi Securities and Hankey, in that to the extent funds advanced by Hankey to Crestlloyd were not used for construction of improvements to the Property, Yogi Securities asserts that the total of those amounts should be subordinated to the amount due Yogi Securities. Hankey disputes these contentions and contends to the contrary, that the *entirety* of Hankey's secured debt, regardless of whether Hankey's alleged loan was used to fund construction of improvements to the Property, retains a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to the propriety, priority and amount of lien between Yogi Securities and Hankey, including the subordination of Hankey's purported lien to Yogi Securities' lien to the extent that Hankey's construction loan was not used for construction of improvements to the Property.

95.     Yogi Securities seeks a declaration from the Court to the effect that, to the extent Hankey's purported loan was *not* used for construction of improvements to the Property, such amounts of Hankey's purported lien and any interest related thereto are subordinated to Yogi Securities' lien.

**NINTH CLAIM FOR RELIEF**

**CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION
OF HANKEY'S CLAIM TO THE CLAIM OF YOGI SECURITIES TO THE
EXTENT HANKEY'S PURPORTED LOAN WAS NOT USED FOR
CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY**
[By Reason Of Sections 510(c)(1), 502(a) And 105 Of The Bankruptcy Code]

96.     Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43, 66-79 and 80-89 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

97.     That portion of Hankey's Proof of Claim consisting of amounts that Hankey supposedly lent to Crestlloyd that were not used for construction of improvements to the Property, should be equitably subordinated to Yogi Securities' Proof of Claim in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

**TENTH CLAIM FOR RELIEF**

**CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE
EFFECT THAT INTEREST CHARGED ON INTEREST INCLUDED IN
HANKEY'S PURPORTED LIEN SHOULD BE SUBORDINATED TO THE LIEN
OF YOGI SECURITIES**
[By Reason Of And To The Extent Hankey Charged And/Or Is Charging Interest
On Interest Payments Timely Disbursed To Or Retained By Hankey]

98.     Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

99.     In connection with disbursements, $18,280,231.87 was disbursed and/or retained by Hankey to pay interest to Hankey in connection with its supposed loan, including the two modifications thereto, which amounts Yogi Securities is informed and believes were received or credited timely.

100.     Upon default of the supposed loan, Hankey improperly charged interest, including default interest, on the interest payments timely disbursed to or retained by Hankey. This served to inflate the amount purportedly due and owing to Hankey to the detriment of Yogi Securities.

101.     Under California Code of Civil Procedure § 106, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, the Court can and should determine the validity, priority and extent of the liens involved in this Tenth Claim For Relief.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

102.   An actual controversy now exists between Yogi Securities and Hankey, in that to the extent Hankey has charged Crestlloyd interest, including default interest, on the interest payments timely disbursed to or retained by Hankey, Yogi Securities asserts that the amount of Hankey's purported lien should be subordinated to the lien of Yogi Securities. Hankey disputes these contentions and contends to the contrary, that the amount of Hankey's purported lien should include the interest on the interest, including default interest, sought by Hankey, and that the entirety of Hankey's alleged secured debt retains a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to the propriety, priority and the amount due Hankey in regard to the interest and default interest charged on timely received or credited interest payments.

103.   Yogi Securities seeks a declaration from the Court to the effect that Hankey's lien should be subordinated to the lien of Yogi Securities by the amount of interest and default interest charged by Hankey on timely received or credited interest payments.

**ELEVENTH CLAIM FOR RELIEF**

**CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION OF
HANKEY'S PROOF OF CLAIM TO YOGI SECURITIES' PROOF OF CLAIM
TO THE EXTENT THAT HANKEY'S CLAIM INCLUDES INTEREST AND
DEFAULT INTEREST CHARGED ON INTEREST PAYMENTS TIMELY
DISBURSED TO OR RECEIVED BY HANKEY**
[By Reason of Sections 510(c)(1), 502(a) And 105 Of The Bankruptcy Code]

104.   Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43, 66-70 and 99-100 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein

105.   That portion of Hankey's Proof of Claim consisting of amounts representing interest and default interest charged by Hankey on payments timely disbursed to and/or timely received by Hankey, should be equitably subordinated to Yogi Securities' Proof of Claim in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**TWELFTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR DISALLOWANCE OF HANKEY'S
ALLEGED SECURED CLAIMS ARISING FROM PROFIT PARTICIPATION
AGREEMENTS
[By Reason Of The Fact The Amounts Due Are Not Secured]

106.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

107.    As set forth in paragraphs 23, 28 and 33 above, Hankey entered into three profit participation agreements: the October 2018-PP Agreement (Exhibit T hereto), the December 2019-PP Agreement (Exhibit AA hereto) and the August 2020-PP Agreement (Exhibit EE hereto).

108.    The profit participation agreements provide that Hankey would receive a percentage of the amount for which the Property was sold, regardless of the status of Crestlloyd's repayment to Hankey of Hankey's supposed loans to Crestlloyd and regardless of a reconveyance of Hankey's deeds of trust to Crestlloyd.

109.    Neither Claim 17 nor Claim 18 is an actually secured claim because neither the 2018 Memorandum Of Agreement, the 2020 Memorandum Of Agreement, nor the underlying October 2018-PP Agreement, nor the August 2020-PP Agreement-, created a security interest or perfected a lien against the Property or otherwise.

110.    Yogi Securities requests that Hankey's Claims 17 and 18 be disallowed as secured claims.

**THIRTEENTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR RECHARACTERIZATION OF
HANKEY'S PROOF OF CLAIM FROM DEBT TO EQUITY
[Recharacterization By Reason of Sections 510(c)(1), 502(a) And 105 Of The
Bankruptcy Code]

111.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43, 55-61, 80-89 and 99-100 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein

112.    As set forth above, the nature and terms of the documents and instruments referenced above to which Hankey is a party or which Crestlloyd executed and delivered to Hankey

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

indicate Hankey's and Crestlloyd's intent that all or a portion of the purported secured debt of Hankey constitute, instead, contributions to equity (to the extent of any Hankey stake in Crestlloyd or against the Property).

113.    Among other grounds, Hankey's agreement to the three profit participation agreements described above (and other related documentation described above) and the terms thereof and the status of such supposed entitlements to recovery by Hankey as compared to other stakeholders demonstrate Hankey's and Crestlloyd's intent that Hankey not be considered a debt holder, but instead have status wholly or partially as equity (to the extent of any stake in Crestlloyd or against the Property).

114.    Hankey's omission of informing Yogi Securities (or, upon information and belief, any other creditor of Crestlloyd) of substantial increases of Hankey's funding of Crestlloyd in 2019 and 2020 further demonstrate Hankey's intent that its lending be considered wholly or partially as contributions to equity of Crestlloyd, not secured debt.

115.    Hankey's failure to follow and comply with the requirements for construction funding advances, as described above, and other evidence regarding the acts, omissions and intent of Hankey (including to be revealed by discovery) demonstrate or will demonstrate Hankey's intent that its lending be considered wholly or partially as contributions to equity of Crestlloyd, not secured debt.

116.    Yogi Securities therefore requests that, based on the grounds described above herein, Hankey's Claims 17, 18 and 20 be recharacterized wholly or partially as equity and disallowed wholly or partially as secured debt.

**FOURTEENTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST INFERNO FOR RECHARACTERIZATION OF THE CLAIM OF INFERNO FROM DEBT TO EQUITY
[Recharacterization By Reason of Sections 510(c)(1), 502(a) And 105 Of The Bankruptcy Code]

117.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-43 of this Counterclaim and Crossclaim and incorporates them as though set forth in full herein.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

118.   As set forth above, the nature and terms of the documents and instruments referenced above to which Inferno and Crestlloyd are a party indicate Inferno and Crestlloyd's intent that all or a portion of the purported secured debt of Inferno constitutes contribution to equity (to the extent of any Inferno stake in Crestlloyd or against the Property).

119.   Among other grounds, Inferno's agreement in the Memorandum and the Subordination Agreement and the terms thereof, the status of the supposed entitlements to recovery by Inferno, and Inferno's apparent entitlement to profits as set forth in the Memorandum, as compared to other stakeholders, demonstrate Inferno and Crestlloyd's intent that Inferno not be considered a debt holder, but instead have status wholly or partially as equity (to the extent of any stake in Crestlloyd or against the Property).

120.   Inferno's substantial delay of any attempt to record a lien related to Inferno's 2013 funding of Crestlloyd and other evidence regarding the acts, omissions and intent of Inferno (including to be revealed by discovery) demonstrate or will demonstrate Inferno's intent that its purported lending be considered wholly or partially as contributions to equity of Crestlloyd, not secured debt.

121.   Yogi Securities therefore requests that, based on the grounds described above herein, Inferno's Claim 11 be recharacterized wholly or partially as equity and disallowed wholly or partially as secured debt in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

**FIFTEENTH CLAIM FOR RELIEF**

**CROSSCLAIM AGAINST CRESTLLOYD FOR DECLARATORY RELIEF
TO THE EFFECT THAT THE REBATE AND THE DIP LOAN PROCEEDS
ARE ENCUMBERED**
[By Reason Of Yogi Securities' Lien]

122.   Yogi Securities repeats and realleges the allegations contained in paragraphs 1-43 of this Counterclaim and Crossclaim, and incorporates them as though set full herein.

123.   The Court authorized the Debtor to borrow up to $12,000,000 by way of the DIP Loan from Hankey to the Debtor, that Hankey secured with a first priority lien against the Property.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Upon Court approval, the Debtor immediately drew down the entire $12,000,000 loan. Yogi Securities is informed and believes that the Debtor did not spend the full $12,000,000.

124.   In connection with the sale of the Property, Yogi Securities is informed and believes that the Debtor repaid $12,084,999.98 to Hankey in regard to the DIP Financing from the proceeds from the sale of the Property instead of returning the unused DIP loan proceeds ("Unused DIP Loan Proceeds") and paying the difference from the sale proceeds. Yogi Securities is informed and believes and on that basis alleges that the Debtor is holding approximately $3,600,000 in Unused DIP Loan Proceeds, less professional fees recently authorized to be paid. Yogi Securities is informed and believes that the Debtor asserts the Unused DIP Loan Proceeds are unencumbered. Yogi Securities asserts that the Unused DIP Loan Proceeds are security for the secured obligations of Yogi Securities and any other lienholders as may be determined by the Court to exist. The Court has not made a determination as to whether the Unused DIP Loan Proceeds are encumbered or unencumbered.

125.   Further, in connection with the employment of Concierge Auctions, Debtor negotiated for Concierge to rebate to the estate 9.5% of the 12% buyer's premium to which Concierge was otherwise entitled. Yogi Securities is informed and believes that the Debtor asserts the Rebate is unencumbered. Yogi Securities asserts that the Rebate is security for the secured obligations of Yogi Securities and any other lienholders as may be determined by the Court to exist. The Court has not made a determination about whether the Rebate is encumbered or unencumbered.

126.   Under California Code of Civil Procedure § 106, et seq., 28 U.S.C. 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, the Court can and should determine the validity, priority and extent of the liens involved in this Fifteenth Claim For Relief.

127.   An actual controversy now exists between Yogi Securities and any other lienholders as may be determined by the Court to exist, and the Debtor about whether the Rebate and Unused DIP Loan Proceeds are secured for the obligations due to Yogi Securities and such other lienholders. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to whether the Rebate and the Unused DIP Loan Proceeds are encumbered or unencumbered.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

128.   Yogi Securities seeks a declaration that the Rebate and the Unused DIP Loan Proceeds are not unencumbered and cannot be used to pay unsecured claims unless and until all parties with liens against the Property, including Yogi Securities, are paid in full.

**PRAYER FOR RELIEF**

Wherefore, Yogi Securities prays for judgment as follows:

As to the First Claim For Relief:

1.   For a judicial determination that the entirety of the secured debt allegedly due Inferno is subordinate to the entirety of the secured debt of Yogi Securities in its entirety based on the Memorandum of Agreement, and therefore Yogi Securities' debt has priority and should be paid first from the proceeds of the sale of the Property prior to any payment to Inferno.

As to the Second Claim For Relief:

2.   For an accounting from and by Inferno and Crestlloyd as to all disbursements from Inferno to Crestlloyd and an accounting at to the amount allegedly due Inferno.

As to the Third Claim For Relief:

3.   For a judicial determination that the entirety of the lien asserted by Hankey is subordinated to the entirety of Yogi Securities' lien, and that Yogi Securities' lien has priority and should be paid from proceeds of the sale of the Property prior to any payment to Hankey.

As to the Fourth Claim For Relief:

4.   For a judicial determination that the entirety of the Proof of Claim asserted by Hankey is subordinated to the entirety of Yogi Securities' Proof of Claim, and that Yogi Securities' Proof of Claim has priority and should be paid from proceeds of the sale of the Property prior to any payment to Hankey.

As to the Fifth Claim For Relief:

5.   For a judicial determination that to the extent that Hankey's purported lien includes principal and interest, fees and costs, attributable to Hankey's modifications of December 10, 2019 and August 20, 2020, Hankey's purported lien is in any case subordinate to Yogi Securities' lien, and that Yogi Securities' lien has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey of such principal and interest, fees and costs.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

As to the Sixth Claim For Relief:

6.     For a judicial determination that to the extent that Hankey's Proof of Claim includes principal and interest, fees and costs, attributable to Hankey's modifications of December 10, 2019 and August 20, 2020, Hankey's Proof of Claim is subordinate to Yogi Securities' Proof of Claim, and that Yogi Securities' Proof of Claim has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey of such principal and interest, fees and costs.

As to the Seventh Claim For Relief:

7.     For an accounting from and by Hankey and Crestlloyd as to all disbursements made by Hankey to Crestlloyd, with supporting documentation, including the "Plans and Specifications," the "Applications for Payment," the "Disbursement Budget(s)" and "copies of all agreements which were material to completion of the Improvements," as those terms are used in the Construction Loan Agreement and Exhibit D to the Construction Loan Agreement, and an accounting as to the amount allegedly due Hankey.

As to the Eighth Claim For Relief:

8.     For a judicial determination that to the extent Hankey's purported loan was not used for construction of improvements to the Property, Hankey's purported lien is subordinate to Yogi Securities' lien, and that Yogi Securities' lien has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey.

As to the Ninth Claim For Relief:

9.     For a judicial determination that to the extent Hankey's purported loan was not used for construction of improvements to the Property, Hankey's Proof of Claim is subordinate to Yogi Securities' Proof of Claim, and that Yogi Securities' Proof of Claim has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey on Hankey's Proof of Claim.

As to the Tenth Claim For Relief:

10.     For a judicial determination that to the extent Hankey's purported loan was used to pay interest or default interest on interest payments timely disbursed or paid to Hankey, Hankey's purported lien is subordinate to Yogi Securities' lien, and that Yogi Securities' lien has priority and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  should be paid from proceeds of the sale of the Property prior to payment to Hankey of such interest

2  or default interest.

3       As to the Eleventh Claim For Relief:

4       11.    For a judicial determination that to the extent Hankey's purported loan was used to

5  pay interest or default interest on interest payments timely disbursed or paid to Hankey, Hankey's

6  Proof of Claim is subordinate to Yogi Securities' Proof of Claim, and that Yogi Securities' Proof

7  of Claim has priority and should be paid from proceeds of the sale of the Property prior to payment

8  to Hankey of such interest or default interest.

9       As to the Twelfth Claim For Relief:

10       12.    For an order disallowing Hankey's Proofs of Claim 17 and 18 as secured claims in

11  their entirety.

12       As to the Thirteenth Claim for Relief.

13       13.    For an order recharacterizing wholly or partially Hankey's Proofs of Claim 17, 18

14  and 20 as an equity contribution.

15       As to the Fourteenth Claim for Relief.

16       14.    For an order recharacterizing wholly or partially Inferno's Proof of Claim 11 as an

17  equity contribution.

18       As to the Fifteenth Claim For Relief:

19       15.    For a judicial determination that the remaining DIP Loan Proceeds and Rebate are

20  encumbered and are security for the secured obligations due the lienholders, including Yogi

21  Securities.

22       As to All Claims For Relief:

23       16.    There has been no trustee appointed in this case.

24       17.    There has been no creditors' committee appointed in this case.

25       18.    Yogi Securities has a sufficient interest and stake in obtaining the relief requested

26  in each of the counts herein, and has standing to do so, because, *inter alia*, Yogi Securities has an

27  interest in such relief, and each element of it as requested, which interest is separate and apart from

28  the interests of the Debtor's estate as a whole.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

19. To the extent of any distribution or other payment at any time to or for the benefit of Hankey or Inferno which was improper or otherwise inconsistent with any of the above-asserted rights, claims, lien and priority of Yogi Securities, recovery of all such amounts, to and for the benefit of and payment to Yogi Securities, and a judgment in favor of Yogi Securities as against Hankey and/or Inferno consistent therewith.

20. Payment to Yogi Securities of all such funds held by Crestlloyd as is consistent with or required by the above-asserted rights, claims, lien and priority of Yogi Securities, and a judgment in favor of Yogi Securities consistent therewith.

21. For costs of suit herein.

22. For attorney's fees, to the extent allowed by law, incurred in connection with this action.

23. For such other and further relief as this Court deems just and proper.

Dated: August 10, 2022

DENTONS US LLP
ROBERT F. SCOULAR
JOHN A. MOE, II
NORMAN M. ASPIS

By:    /s/*John A. Moe, II*
          JOHN A. MOE, II

*Attorneys for Yogi Securities Holdings, LLC*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213.623.9300

## **EXHIBIT LIST**

A.      Deed Of Trust And Assignment Of Rents, recorded March 13, 2013, executed by Crestlloyd, LLC ("Crestlloyd") in favor of Inferno Realty, L. P., and Maybach Corporation Holdings, Inc., recorded on March 13, 2013, as instrument number 2013-0384037.

B.      Assignments Of Notes And Deeds Of Trust/Mortgage, executed by Crestlloyd in favor of Inferno Investment, Inc., recorded November 10, 2016, as instrument number 2015-1375606 and 2015-1375607.

C.      Modification And Supplement To Deed Of Trust, executed by Crestlloyd in favor of Inferno Investments, Inc., recorded November 10, 2015, as instrument number 2015-1375608.

D.      Memorandum Of Agreement, executed by Inferno Investment, Inc., and Crestlloyd made and entered as of January 1, 2016.

E.      Amendment No. 1 To Memorandum Of Agreement, undated; Amendment No. 2 To Memorandum Of Agreement entered into as of September 27, 2016; Revised Amendment No. 2 To Memorandum Of Agreement entered into as of September 28, 2016; Amendment No. 3 To Memorandum Of Agreement entered into as of March 29, 2018; and Revised Amendment No. 3 To Memorandum Of Agreement entered into as of May 16, 2018;

F.      $30,188,235 Promissory Note, executed by Crestlloyd in favor of Yogi Securities Holdings, LLC ("Yogi Securities") dated October 16, 2018.

G.      Deed Of Trust And Assignment Of Rents, executed by Crestlloyd in favor of Yogi Securities, executed on October 16, 2022, and recorded November 7, 2018, as instrument number 2018-1126580.

H.      Deed Of Trust And Assignment Of Rents (the "Hillcrest Deed Of Trust") executed by Crestlloyd dated October 16, 2008, securing obligation with real property located at 1175 North Hillcrest Road, Beverly Hills, CA 90210 (the "Hillcrest Property"); a Deed Of Trust And Assignment Of Rents (the "Bellagio Deed Of Trust") executed by 10701 Bellagio Road, LLC ("Bellagio"), dated October 16, 2018, securing obligation with real property located at 10701 Bellagio Road, Los Angeles, CA 90077 (the "Bellagio Property"); Deed Of Trust And Assignment Of Rents (the "Carcassonne Deed Of Trust") executed by Carcassonne Fine Homes, LLC ("Carcassonne"), dated October 16, 2018, securing obligation with real property located at 627 North Carcassonne Road, Los Angeles, CA 90077 (the "Carcassonne Property"); Deed Of Trust And Assignment Of Rents (the "Marbella Deed Of Trust") executed by Marbella Construction, Inc. ("Marabella"), dated October 16, 2018, securing obligation with real property located at 3381 Stone Ridge Road, Los Angeles, CA 90077 (the "Stone Ridge Property"); and Deed Of Trust And Assignment Of Rents (the "Londonderry Deed Of Trust") executed by Londonderry Estate, LLC ("Londonderry"), dated October 16 2018, securing obligation with real property located at 1369 Londonderry Place, Los Angeles, CA 90069 (the "Londonderry Property"). Each of these documents was recorded: the Hillcrest Deed Of Trust on October 19, 2018, as instrument number 2018-1065783; the Bellagio Deed Of Trust on October 19, 2018, as instrument number 2018-1065788; the Carcassonne Deed Of Trust on October 19, 2018 as instrument number 2018-1065789; the Marbella Deed Of Trust on October 19, 2018 as instrument number 2018-1065790; and the Londonderry Deed Of Trust on October 19, 2018 as instrument number 2018-1065787.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

I.     Amendment Of Note And Deeds Of Trust, executed by Crestlloyd, in favor of Yogi Securities, recorded August 30, 2019, as instrument number 2019-0889046

J.     Second Amendment Of Note And Deeds Of Trust, executed by Crestlloyd, Bellagio, Carcassonne, Marbella, and Londonderry in favor of Yogi Securities, recorded September 5, 2019, as instrument number 2019-0907091, securing obligation with the Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and the Londonderry Property.

K.     $5,200,000 Secured Promissory Note in favor of Yogi Securities, executed April 20, 2018.

L.     Deeds Of Trust And Assignments Of Rents, executed by Londonderry and Marbella, in connection with the $5,200,000 Secured Promissory Note, recorded on April 23, 2018 as instrument numbers 2018-08389829 and 2018-0389830.

M.     Fourth Amendment Of Note And Deed Of Trust executed by Crestlloyd, Marbella and Londonderry, relating to the $5,200,000 Secured Promissory Note, recorded on September 23, 2019, as instrument number 2019-0989745, securing obligation with the Property, the Stone Ridge Property and the Londonderry Property.

N.     Deed Of Trust And Assignment Of Rents, executed by Crestlloyd in favor of Yogi Securities, relating to the $5,200,000 Secured Promissory Note, recorded on September 23, 2019, as instrument number 2019-0989746, securing obligation with the Property.

O.     Fifth Amendment Of Note And Deed Of Trust executed by Crestlloyd, Marbella, Londonderry, Carcassonne, Bellagio, in favor of Yogi Securities, relating to the $5,200,000 Secured Promissory Note, recorded on October 28, 2019 as instrument number 2019-1154393, securing obligation with the Property, the Stone Ridge Property, the Londonderry Property, the Carcassonne Property and the Bellagio Property.

P.     Deed Of Trust And Assignments Of Rent executed by Carcassonne and Bellagio, in favor of Yogi Securities, relating to the $5,200,000 Promissory Note, recorded October 28, 2019 as instrument numbers 2019-1154392 and 2019-1154391, securing obligation with the Carcassonne Property and the Bellagio Property.

Q.     Construction Loan Agreement, executed as of October 25, 2018, by and between Crestlloyd and Hankey Capital, LLC ("Hankey Capital").

R.     $82,500,000 Promissory Note dated October 25, 2018, executed by Crestlloyd in favor of Hankey Capital.

S.     Security Agreement (Personal Property) made as of October 25, 2018, by and between Crestlloyd and Hankey Capital.

T.     October 2018 Profit Participation Agreement [attached as Exhibit "A" to the "Security Agreement (Personal Property)"].

U.     Memorandum Of Agreement on 2018 Profit Participation Agreement, recorded November 6, 2018, as instrument number 2018-1122919.

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

2

V.    Construction Deed Of Trust, Security Agreement And Fixture Filing With Assignment Of Rents, executed by Crestlloyd in favor of Hankey Capital recorded November 6, 2018, as instrument number 2018-1122917.

W.    Subordination Agreement, executed by Inferno Investment in favor of Hankey Capital recorded November 6, 2018, as instrument number 2018-1122920.

X.    Amended And Restated Promissory Note dated December 10, 2019, executed by Crestlloyd in favor of Hankey Capital increasing loan to $91,000,000.

Y.    First Modification Of Deed Of Construction Loan, executed by and between Crestlloyd and Hankey Capital entered on December 10, 2019.

Z.    Modification Of Deed Of Trust, made as of December 10, 2019, by Crestlloyd in favor of Hankey Capital not recorded.

AA.    December 2019 Profit Participation Agreement, executed by Crestlloyd in favor of Hankey Capital.

BB.    Amended And Restated Promissory Note, dated August 20, 2018, executed by Crestlloyd in favor of Hankey Capital increasing Loan to $106,000,000.

CC.    Second Modification Of Construction Loan Agreement, entered into as of August 20, 2020, by and between Crestlloyd and Hankey Capital.

DD.    [Second] Modification Of Deed Of Trust executed by Crestlloyd in favor of Hankey Capital recorded August 31, 2020, as instrument number 2020-1030024.

EE.    August 2020 Profit Participation Agreement, executed by Crestlloyd in favor of Hankey Capital.

FF.    Memorandum Of Agreement on August 2020 Profit Participating Agreement, recorded August 31, 2020, as instrument number 2020-1030294.

GG.    Deed Of Trust, Assignment Of Rents, Security Agreement And Fixture Filing, executed in favor of Hilldun Corporation, recorded September 4, 2020, as instrument number 2020-1058720.

HH.    Substitutions Of Trustee And Deed of Full Reconveyance affecting the Property, the Carcassone Property, the Londonderry Property, the Stone Ridge Property and the Bellagio Property, recorded on January 14, 2021, as instrument numbers 2021-0076455, 2021-0076456, 2021-0076457, 2021-0076458, and 2021-0076459.

II.    Chart summarizing specific categories of disbursements.

JJ.    "Client Trust Ledger" prepared by Hankey Capital, LLC.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3

# EXHIBIT A

 

**This page is part of your document - DO NOT DISCARD**

## 20130384037







Pages:
0006

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/13/13 AT 04:13PM**

| | |
|---|---|
| FEES: | 52.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 52.00 |



L E A D S H E E T



201303130720064

00007387310



004714324

**SEQ:**
**01**

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

Name **Maybach Corporation Holdings, Inc.**
Street
Address **85 St. Paul West**
City, State **Montreal, Qubec Canada H2Y3V4**
Zip

Escrow
No.
Order No. _____

APN: 4369-026-002 and 4369-026-014 and 4369-026-017

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST WITH ASSIGNMENT OF RENTS

This DEED OF TRUST, made **March 13, 2013**, between **Crestlloyd LLC, a California limited liability company** herein called TRUSTOR, whose address is **10542 Valleyspring Lane, Toluca Lake, CA 91602**

(Number and Street)          (City)          (State)          (Zip)

**First American Title Insurance Company**, a California Corporation, herein called TRUSTEE, and **Inferno Realty, L.P. as to an undivided $7,040,000.00 interest and Maybach Corporation Holdings, Inc. as to an undivided $7,000,000.00 interest, as tenants in common**, herein called BENEFICIARY,

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that property in City of **Los Angeles**, County of **LOS ANGELES**, California, described as:

**See Exhibit "A" attached hereto and made a part hereof for Legal Description**

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of **$14,040,000.00** with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of trust recorded in the book and page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

1

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3788 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4788 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego SERIES 5 Book 1964, Page 149774 | | | | | |

Said agreements, terms and provisions contained in said subdivision A and B, (identical in all counties are printed on the reverse side hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by laws.

The foregoing assignment of rents is absolute unless initialed here, in which case, the assignment serves as additional security.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at this address hereinbefore set forth.

Dated: March 13, 2013

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES                )
                                     )  S.S.
On MARCH 13, 2013 _____ before me,
NIGEL GIBBS

a Notary Public in and for said County and State, personally appeared

Nile Niami

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

Crestlloyd, LLC, a Californai limited liability company:



Nile Niami, Manager

NIGEL GIBBS
Commission # 1890441
Notary Public - California
Los Angeles County
My Comm. Expires Oct 4, 2016

2

**(DO NOT RECORD)**

The following is a copy of Subdivision A and B of the fictitious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference is said Deed of Trust as being a part thereof as if set forth at length therein.

A. To protect the security of this Deed of Trust, Trustor agrees:

(1)   To keep said property in good condition and repair not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)   To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)   To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)   To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)   To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.   It is mutually agreed:

(1)   That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2)   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3)   That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plate thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4)   That upon written request of beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then hereunder. The recitals in such reconveyance of any matter or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5)   That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuances of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**(DO NOT RECORD)**

3

(6)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the persons legally entitled thereto.

(7)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8)    That this Deed applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

DO NOT RECORD

### REQUEST FOR FULL RECONVEYANCE

TO First American Title Insurance Company, a California Corporation, TRUSTEE:

The undersigned is the legal owner and holder of the note or notes, and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated_____

_____

_____

Please mail Deed of Trust,
Note and Reconveyance to_____

**Do not lose or destroy this Deed of Trust OR THE NOTE which it secures.  Both must be delivered to the Trustee for cancellation before reconveyance will be made.**

4

EXHIBIT "A"

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGES 81 TO 83 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET, AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 52"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

***END OF LEGAL DESCRIPTION***

# EXHIBIT B



## This page is part of your document - DO NOT DISCARD



# 20151375606



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

## 11/10/15 AT 08:00AM

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |



**LEADSHEET**



201511100300029

## 00011358907



007215269

## SEQ:
## 01

### DAR - Title Company (Hard Copy)



## THIS FORM IS NOT TO BE DUPLICATED

E212099

T72

WHEN RECORDED, RETURN TO:



11/10/2015

*20151375606*

NAME       INFERNO REALTY LP

MAILING    4-95 KANDAHAR
           MONT TREMBLANT
           QUEBEC J8E1E2
           CANADA

## TITLE(S)

4

### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

4369-26-20

2892 X59



WHEN RECORDED, RETURN TO:

NAME        INFERNO REALTY LP

MAILING     4-95 KANDAHAR
            MONT TREMBLANT
            QUEBEC J8E1E2
            CANADA

## ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

The undersigned, MAYBACH CORPORATION, a Canadian Corporation (erroneously named in the Deed of Trust hereafter referred to as "Maybach Holdings Corporation, Inc.") ("Assignor"),for value received, hereby grants, conveys, assigns and transfers to INFERNO REALTY, LP, a California Limited Liability Company ("Assignee") all of its beneficial interest  under the Deed of Trust with Assignment of Rents dated the 13th day of March, 2013 between CRESTLLOYD LLC, a California Limited Liability Company, as Trustor; FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, as Trustee; and Assignor and INFERNO REALTY LP as Beneficiaries, recorded on March 13, 2013, under Document No. 20130384037, records of Los Angeles County, State of California, together with the promissory note  therein described (the "Note"), the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Assignee is not assuming any obligations or liabilities to the maker under the Note or Deed of Trust described herein and shall not be deemed to have assumed any such obligations or liabilities except that Assignee agrees that, at such time as the maker has duly paid and performed all obligations set forth in the Note and Deed of Trust described herein, Assignee will deliver to the maker a full reconveyance under the Deed of Trust.

Dated:   June 2, 2014

                              MAYBACH CORPORATION, a Canadian
                              Corporation,

                              By _____

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

~~ACKNOWLEDGMENT~~ (WB)

STATE OF _New York_

COUNTY OF _Clinton_                                          )

On _October 21_, 2015, before me, _Weena L. Boyle_, a notary public, personally appeared _Julien Remillard._, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_Weena L. Boyle._          (SEAL)

Weena L. Boyle
Notary Public-New York
Commission #01BO6011026
My Comm. Exp. July 27, 20_18_



**This page is part of your document - DO NOT DISCARD**



## 20151375607



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/10/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 42.00 |



**L E A D S H E E T**



201511100300029

**00011358908**



007215269

**SEQ:**
**02**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

E312689

T72

RECORDING REQUESTED BY AND
WHEN RECORDED, RETURN TO:



11/10/2015

*20151375607*

NAME     INFERNO INVESTMENT INC.

MAILING  4-95 Kandahar
         Mont Tremblant
         Quebec J8E1E2
         CANADA

## TITLE(S)

### ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

WHEN RECORDED, RETURN TO:

NAME     INFERNO INVESTMENT INC.

MAILING  4-95 Kandahar
         Mont Tremblant
         Quebec J8E1E2
         Canada

## ASSIGNMENT OF NOTE AND DEED OF TRUST/MORTGAGE

The undersigned, INFERNO REALTY, LP, a California Limited Partnership ("Assignor"),for value received, hereby grants, conveys, assigns and transfers to INFERNO INVESTMENT INC., ("Assignee") all of its beneficial interest under the Deed of Trust with Assignment of Rents dated the 13th day of March, 2013, between CRESTLLOYD LLC, a California Limited Liability Company, as Trustor; CHICAGO TITLE COMPANY, as Trustee; and Maybach Corporation (erroneously named in the deed of trust as Maybach Holdings Corporation) and INFERNO REALTY LP as Beneficiary recorded on March 13, 2013 under Document No. 20130384037, records of Los Angeles County, State of California, together with the promissory not therein described (the "Note"), the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Assignee is not assuming any obligations or liabilities to the maker under the Note or Deed of Trust described herein and shall not be deemed to have assumed any such obligations or liabilities except that Assignee agrees that, at such time as the maker has duly paid and performed all obligations set forth in the Note and Deed of Trust described herein, Assignee will deliver to the maker a full reconveyance under the Deed of Trust.

Dated: _10/21/_,2015

                              INFERNO REALTY, LP, a California
                              Limited Partnership
                              By:    8393095 Canada, Inc., a Canadian
                                     Corporation, General Partner


                              By _____, Director
                                   Julien Remillard, Director

Non-Order Search                    Page 3 of 4        Requested By: Shivamma Sampangi, Printed: 12/3/2021 8:02 PM

4

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**ACKNOWLEDGMENT** _we_

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21_, 2015, before me, _Weena L. Boyle_, a notary public, personally appeared _Julien Remillard_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Weena L. Boyle_ (SEAL)

Weena L. Boyle
Notary Public-New York
Commission #01BO6011026
My Comm. Exp. July 27, 20_18_

Y:\Remillard\InfernoRealty\AssignNote DTt$14M-Realty to Inv.#2wpd

# EXHIBIT C

This page is part of your document - DO NOT DISCARD

## 20151375608




Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/10/15 AT 08:00AM**

Pages:
0007

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



**L E A D S H E E T**



201511100300029

00011358909



007215269

SEQ:
03

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**          T72

RECORDING REQUESTED BY
AND MAIL TAX STATEMENT TO:



11/10/2015

*20151375608*

'NFERNO INVESTMENT INC.
1-95 Kandahar
Mont Tremblant
Quebec J8E1E2
Canada

FOR RECORDER'S USE ONLY

TITLE

**MODIFICATION AND SUPPLEMENT TO DEED OF TRUST**

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

| | |
|---|---|
| NAME | INFERNO INVESTMENT INC. |
| ADDRESS | 4-95 Kandahar |
| CITY | Mont Tremblant |
| STATE & ZIP | Quebec J8E1E2, Canada |

## MODIFICATION AND SUPPLEMENT TO DEED OF TRUST

THIS AGREEMENT, made this __2__/ st day of October, 2015, by and between CRESTLLOYD, LLC., a California Limited Liability Company, hereinafter called Trustor, FIRST AMERICAN TITLE INSURANCE COMPANY, hereinafter called Trustee, and INFERNO INVESTMENT INC., hereinafter called Beneficiary,

WHEREAS, on the 13th day of March, 2013, Trustor did make, execute and deliver to Trustee that certain Deed of Trust recorded on March 13, 2013 as Instrument No. 20130384037 in the office of the County Recorder of Los Angeles County, State of California, securing a promissory note dated March 13, 2013 in favor of INFERNO REALTY, L.P. ("INFERNO"), and MAYBACH CORPORATION erroneously named as MAYBACH CORPORATION HOLDINGS, INC. ("MAYBACH") , as Beneficiary and covering the property described in Exhibit "A" attached hereto, and

WHEREAS, INFERNO INVESTMENT INC. acquired the interest of MAYBACH and INFERNO in the promissory note and deed of trust, and

WHEREAS, the parties desire to modify and supplement said deed of trust in certain particulars

NOW, THEREFORE, for value received the parties hereto do hereby modify and supplement said deed of trust as follows:

This Deed of Trust secures two (2) promissory notes each dated March 13, 2013 one in the face amount of $14,040,000,00 modified to $7,000,000.00 and one in the face amount of $3,925,545.00. The total amount secured by this Deed of Trust is $10,925,545.00.

Trustor does hereby grant and convey the subject real property to Trustee under said deed of trust, together with power of sale and subject to each and all of the terms and conditions of said deed of trust, including this modification and supplement thereto,

IT IS FURTHER AGREED, by and between the parties hereto that in all other respects not inconsistent herewith the terms of said deed of trust which is incorporated herein by reference thereto shall remain in full force and effect and be binding hereon. Said deed of trust modified and supplemented shall constitute one deed of trust.

Beneficiary agrees that this Deed of Trust shall automatically be subordinated to a loan or loans to be made to Trustor by First Republic Bank in an amount not to exceed Thirty Million Dollars ($30,000,000.00) which shall unconditionally be, and remain at all times, a lien or

Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

charge on the property herein described, prior and superior to the lien or charge of this deed of trust. Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                        BENEFICIARY

CRESTLLOYD LLC, a California Limited            INFERNO INVESTMENT INC.
Liability Company


EXECUTED IN COUNTERPART

By_____                    By_____
    Nile Niami, Manager                            Jullen Remillard, Director


Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

A notary public or other officer completing this certificate
verifies only the identity of the individual who signed the
document to which this certificate is attached, and not
the truthfulness, accuracy, or validity of that document.

STATE OF _New York_

COUNTY OF _Clinton_

On _October 21, 2015_, before me, _Weena L. Boyle_
(Insert Name of Notary Public and Title)

_Notary public_, personally appeared _Julien Remillard._,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Weena L. Boyle_ _____ (Seal)

Weena L. Boyle
Notary Public-New York
Commission #01B06011026
My Comm. Exp. July 27, 20_18_

Y:\Remillard\InfernoInvestment\ModiSuppDeedofTrust.14Mwpd

charge on the property herein described, prior and superior to the lien or charge of this deed of trust. Beneficiary covenants and agrees that it will execute any and all documents and perform any and all acts that may be required to ensure the priority of the lien of the deed of trust in favor of First Republic Bank.

Trustee is hereby authorized and directed to endorse a memorandum hereof upon said deed of trust and promissory note.

This agreement shall inure to and bind the heirs, devisees, successors and assigns of the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this agreement on the dates set opposite in the attached notaries.

TRUSTOR                                          BENEFICIARY

CRESTLLOYD LLC, a California Limited             INFERNO INVESTMENT INC.
Liability Company

By _____                     By _____
   Nile Niami, Manager                              Julien Remillard, Director

                                                 EXECUTED IN COUNTERPART

7

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                )
County of *LOS ANGELES*                            )

On *OCTOBER 31, 2015* before me, *NIGEL GIBBS, Notary Public*,
    Date                              Here Insert Name and Title of the Officer

personally appeared _*Nile Nvami*_
                           Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

NIGEL GIBBS
Commission # 1990441
Notary Public - California
Los Angeles County
My Comm. Expires Oct 4, 2016

Signature _____
                     Signature of Notary Public

    Place Notary Seal Above
———————————————— **OPTIONAL** ————————————————
*Though this section is optional, completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: *Modification & Supplement DEED of TRUST*
Document Date: *10-21-15*  Number of Pages: *3*
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____       Signer's Name: _____
☐ Corporate Officer — Title(s): _____       ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General       ☐ Partner — ☐ Limited  ☐ General
☐ Individual      ☐ Attorney in Fact       ☐ Individual      ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator       ☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____       ☐ Other: _____
Signer Is Representing: _____       Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

# EXHIBIT D

## MEMORANDUM OF AGREEMENT

This Memorandum of Agreement is made and entered into this *1st* day of *January*, 2016 by and between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENTS INC. ("Inferno").

### RECITALS

The parties desire to set forth their respective rights with regard to distribution of proceeds at such time as the residence being constructed by Crestlloyd (as successor to the Company) at 944 Airole Way, Los Angeles, California (the "Residence") is sold.

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1. Incorporation of Recitals. The above Recital is incorporated herein by this reference as though made a part hereof.

2. Division of Profits and Losses. Profits and Losses shall be allocated as follows: Fifty percent (50%) to Crestlloyd for Developer fee and fifty percent (50%) to Crestlloyd and Inferno in proportion to the money loaned by each to finance the construction of the Residence.

For Example: Assume Inferno loaned $18,000,000.00 and Crestlloyd loaned $41,000,000.00. Inferno's share of the profits and losses is 15.25% ($18,000,000 ÷ $59,000,000 = 30.5% multiplied by 50% = 15.25%). Crestlloyd's share of the profits and losses is 84.75% ($41,000,000 ÷ $59,000,000 = 69.5% multiplied by 50% = 34.75%), plus Crestlloyd's Developer fee of 50% = 84.75%.

3. Distributions. All proceeds received from a sale, condemnation, financing or refinancing of the Residence shall be distributed in the following manner:

First, to repay the loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the Residence.

Second, to Crestlloyd and Inferno, pro rata, in repayment of any loans owing them, together with simple interest thereon at the rate of eight percent (8%) per annum.

Third, to Crestlloyd, the sum of ONE HUNDRED FORTY-FIVE THOUSAND DOLLARS ($145,000.00) as compensation for general office overhead and services rendered by it in connection with the construction of the Residence.

Thereafter, to Crestlloyd and Inferno in accordance with their share of the profits and losses determined in the manner set forth in paragraph 2 above.

IN WITNESS HEREOF, the parties have executed this Memorandum of Agreement, effective as of the date set forth above.

CRESTLLOYD, LLC, a California
Limited Liability Company

By _____
    Nile Niami, Manager

INFERNO INVESTMENTS INC.

By _____
    Julian Remillard, Director

# EXHIBIT E

**AMENDMENT NO. 1**

**TO MEMORANDUM OF AGREEMENT**

**AMENDMENT NO. 1**

**TO AMENDMENT OF AGREEMENT**

This Amendment No. 1 to Memorandum of Agreement is entered into this _____ day of July, 2016 by and between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENTS INC. ("Inferno").

## RECITALS

A.     Crestlloyd and Inferno previously entered into a Memorandum of Agreement dated January 1, 2016 with regard to division of profits and losses on the sale of the real property located at 944 Airole Way, Los Angeles, California (the "Residence").

B.     Deeds of Trust have been recorded against the Residence in favor of Inferno to secure the loans which it, and its predecessor, previously made to Crestlloyd.

C.     Crestlloyd previously obtained a loan from First Republic Bank which loan is secured by a first Deed of Trust on the Residence. Crestlloyd desires to refinance the existing loan with a new loan to be made by First Credit Bank ("New Lender"). In order to refinance the existing loan New Lender requires that Inferno subordinate the Liens of its Deeds of Trust on the Residence to the new loan to be obtained by Crestlloyd from New Lender in the amount of Forty Million Dollars ($40,000,000.00) which will be secured by a First Trust Deed on the Residence (the "New Loan").

D.     Inferno is willing to subordinate the Liens of its Deeds of Trust on the Residence to the New Loan for the consideration hereafter set forth.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.     <u>Incorporation of Recitals</u>. Each and all of the above Recitals are incorporated herein by this reference as though set forth in full hereat.

2.     <u>Subordination</u>. Inferno hereby agrees to subordinate the Liens of its Deeds of Trust on the Residence to the Lien of the First Deed of Trust securing the New Loan. In connection therewith Inferno agrees to execute any and all documents reasonably required by New Lender to evidence the subordination.

3.     <u>Consideration</u>. In consideration of Inferno subordinating the Liens of its Deeds of Trust to a first Deed of Trust that will secure the New Loan, Crestlloyd agrees that the percentage of profits and losses set forth in paragraph 2 of the Memorandum of Agreement shall be adjusted to provide for Inferno to be allocated an additional one and one-half percent (1.5%) of the profits and losses on the sale of the Residence (the "Additional Percentage"). The Additional Percentage to be allocated to Inferno shall be deducted from the percentage of profits and losses allocated to Crestlloyd.

Y:\NIAMI\944Airole\AmendNo.1-MemoAgt.wpd

For Example:  Assume that, pursuant to the formula set forth in paragraph 2 of the Memorandum of Agreement, Crestlloyd is allocated eighty-four and three-quarter percent (84.75%) of the profits and losses and Inferno is allocated  fifteen and one-quarter percent (15.25%) of the profits and losses.  The profits and losses will now be adjusted and allocated as follows:  83.25% to Crestlloyd and 16.75% to Inferno.

4.    <u>No Other Changes</u>.  Except as herein expressly provided, all of the terms and provisions of the Memorandum of Agreement  shall remain in full force and effect.

Dated the day and year set forth above.

CRESTLLOYD, LLC, a California              INFERNO INVESTMENTS INC.
Limited Liability Company

By _____        By _____
        Nile Niami, Manager                       Julien Remillard, Director

Y:\NIAMI\944Airole\AmendNo.1-MemoAgt.wpd

AMENDMENT NO 2.

TO MEMORANDUM OF AGREEMENT

This Amendment No. 2 to Memorandum of Agreement is entered into this 27th day of September , 2016 between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENT, INC. ("Inferno").

RECITALS

A.    Crestlloyd and Inferno previously entered into a Memorandum of Agreement dated January 1, 2016, which was amended July ____, 2016, with regard to division of profits and losses on the sale of the real property located at 944 Airole Way, Los Angeles, California (the "Residence").

B.    Deeds of Trust have been recorded against the Residence in favor of Inferno to secure the loans which it and its predecessor previously made to Crestlloyd.

C.    Crestlloyd previously obtained a loan with First Credit Bank which loan is secured by a first Deed of Trust on the Residence.  Crestlloyd desires to take on additional loans or refinance the existing loan with a new loan or loans to be made by First Credit Bank or another bank or a combination thereof (collectively "New Lender").  In order to accomplish same, New Lender requires that Inferno subordinate the Liens of its Deeds of Trust on the Residence to the new loan(s) to be obtained by Crestlloyd ("the New Loan") in an amount which, in the aggregate, including existing bank loans, shall not exceed fifty-two million dollars ($52 million), which shall be secured by a First Trust Deed on the Residence.

D.    Inferno is willing to subordinate the Liens of its Deeds of Trust on the Residence to the New Loan for the consideration hereafter set forth.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.    Incorporation of Recitals.  Each and all of the above Recitals are incorporated herein by this reference as though set forth in full hereat.

2.    Subordination.  Inferno hereby agrees to subordinate the Liens of its Deeds of Trust on the Residence to the Lien of the First Deed of Trust securing the New Loan.  In connection therewith Inferno agrees to execute any and all documents reasonably required by New Lender to evidence the subordination.

3.    Consideration.  In consideration of Inferno subordinating the Liens of its Deeds of Trust to a first Deed of Trust that will secure the New Loan,

Crestlloyd shall immediately pre pay two million dollars  $2,000,000.00) of loan principal ("Principal") owed to Inferno, thereby reducing the total amount of Principal to sixteen million dollars ($16,000,000.00).  Notwithstanding the foregoing, Interest due Inferno shall continue to accrue from the date hereof on the amount of eighteen million dollars ($18,000,000.00).

4.    <u>Interest Bearing Periods.</u>  The parties agree that Interest shall not be payable to either party during periods when the Property is being rented out to third parties.

5.    <u>No Other Changes</u>.  Except as herein expressly provided, all of the terms and provisions of the Memorandum of Agreement as previously amended shall remain in full force and effect.

Dated the day and year set forth above.


CRESTLLOYD, LLC, a California          INFERNO INVESTMENT, INC.,
Limited Liability Company              a Canadian Corporation

By _____        By _____
        Nile Niami, Manager                    Julien Remillard, Director

REVISED AMENDMENT NO 2.

TO MEMORANDUM OF AGREEMENT

This Revised Amendment No. 2 to Memorandum of Agreement is entered into this 28th day of September , 2016 between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENT, INC. ("Inferno").

## RECITALS

A. Crestlloyd and Inferno previously entered into a Memorandum of Agreement dated January 1, 2016, which was amended July ____, 2016, with regard to division of profits and losses on the sale of the real property located at 944 Airole Way, Los Angeles, California (the "Residence").

B. A document entitled Amendment No 2 was previously executed between the parties, however that document is deemed null and void upon execution of this Revised Amendment No. 2.

C. Deeds of Trust have been recorded against the Residence in favor of Inferno to secure the loans which it and its predecessor previously made to Crestlloyd.

D. Crestlloyd previously obtained a loan with First Credit Bank which loan is secured by a first Deed of Trust on the Residence. Crestlloyd desires to take on additional loans or refinance the existing loan with a new loan or loans to be made by First Credit Bank or another bank or a combination thereof (collectively "New Lender"). In order to accomplish same, New Lender requires that Inferno subordinate the Liens of its Deeds of Trust on the Residence to the new loan(s) to be obtained by Crestlloyd ("the New Loan") in an amount which, in the aggregate, including existing bank loans, shall not exceed fifty-two million dollars ($52 million), which shall be secured by a First Trust Deed on the Residence.

E. Inferno is willing to subordinate the Liens of its Deeds of Trust on the Residence to the New Loan for the consideration hereafter set forth.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1. Incorporation of Recitals. Each and all of the above Recitals are incorporated herein by this reference as though set forth in full hereat.

2. Subordination. Inferno hereby agrees to subordinate the Liens of its Deeds of Trust on the Residence to the Lien of the First Deed of Trust securing the New Loan. In connection therewith Inferno agrees to execute any

and all documents reasonably required by New Lender to evidence the
subordination.

3.    _Incentive._  As an incentive for Inferno to subordinate the Liens of its
Deeds of Trust to a first Deed of Trust that will secure the New Loan, Crestlloyd
shall immediately pre pay to Inferno two million dollars $2,000,000.00.  It is
agreed that this payment shall be made in reduction of the outstanding
indebtedness owing to Inferno and not as consideration or interest.

4.    _Interest and Interest Bearing Periods._  The parties agree that
Interest shall not be payable to either party during periods when the Property is
being rented out to third parties.

5.    _No Other Changes._  Except as herein expressly provided, all of the
terms and provisions of the Memorandum of Agreement as previously amended
shall remain in full force and effect.

Dated the day and year set forth above.


CRESTLLOYD, LLC, a California          INFERNO INVESTMENT, INC.,
Limited Liability Company              a Canadian Corporation

By_____          By_____
      Nile Niami, Manager                   Julien Remillard,  Director

AMENDMENT NO 3

TO MEMORANDUM OF AGREEMENT

This Amendment No. 3 to Memorandum of Agreement is entered into this 29th day of _Mar_ , 2018 between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENT INC. ("Inferno").

## RECITALS

A.      Crestlloyd and Inferno previously entered into a Memorandum of Agreement dated January 1, 2016, which was amended July ____, 2016, and Feb ___, 2017 with regard to division of profits and losses on the sale of the real property located at 944 Airole Way, Los Angeles, California (the "Residence"). Except as modified by this Amendment No. 3, all previous items agreed to by the parties shall be incorporated herein.

B.      Deeds of Trust have been recorded against the Residence in favor of Inferno or its associates to secure the loans which it and its predecessor previously made to Crestlloyd. (the "Inferno DOTs")

C.      Deeds of Trust shall be recorded against the Residence in favor of Crestlloyd, its successor, designee or assigns, to secure the loans which it or its affiliated entities have made and may continue to make in order to complete construction and pay carrying costs associated with the Residence.  (the "Crestlloyd DOTs").

D.      Crestlloyd previously obtained loans with First Credit Bank which are secured by Deeds of Trust on the Residence. (the "FCB DOTs"). Crestlloyd desires to refinance these existing bank loans with a new loan to be made by ABP Capital, LLC or its affiliate, C3 Capital, LLC (hereafter "New Lender").  In order to accomplish same, New Lender requires that Inferno subordinate the Liens of the Inferno DOTs to the new loan(s) to be obtained by Crestlloyd ("the New Loan") in an amount which, in the aggregate, (including existing First Credit Bank loans), shall not exceed eighty-five million dollars ($85 million), and which shall be secured by a new First Trust Deed on the Residence. (the "ABP DOT").

E.      New Lender also requires that Crestlloyd subordinate the Liens of the Crestlloyd DOTs to the New Loan.

F.      Crestlloyd and Inferno are willing to subordinate the Liens of their respective Deeds of Trust on the Residence to the New Loan for the consideration hereafter set forth.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.    Incorporation of Recitals.  Each and all of the above Recitals are incorporated herein by this reference as though set forth in full hereat.

2.    Subordination.  Inferno hereby agrees (on a pari-passu basis with Crestlloyd) to subordinate the Liens of the Inferno DOTs to the ABP DOT.  In connection therewith, Inferno agrees to execute any and all documents reasonably required by New Lender to evidence the subordination.  Crestlloyd hereby agrees to subordinate the Liens of the Crestlloyd DOTs to the ABP DOT. In connection therewith Crestlloyd agrees to execute any and all documents reasonably required by New Lender to evidence the subordination.

3.    Consideration due Inferno.  In consideration of Inferno subordinating the Liens of the Inferno DOTs to the ABP DOT, Inferno shall receive from the first draw proceeds of the New Loan the sum of Five Million Four Hundred Fifty-Two Thousand One Hundred And Seventy-Four Dollars $5,452,174.00 ("Consideration").  This Consideration shall pay down $5,452,174.00 of loan principal owed to Inferno ("Inferno Principal").  Because an additional Two Million Dollars ($2,000,000.00) of Inferno Principal was previously paid down on October 3, 2016, the revised amount of Inferno Principal owing once this Consideration has been paid shall be Six Million Five Hundred Eighty-Seven Thousand Eight Hundred Twenty-Six Dollars ($6,587,826), (hereafter "Revised Inferno Principal").  Notwithstanding the foregoing, the Revised Inferno Principal amount is for Inferno internal accounting purposes only; Interest due Inferno shall continue to accrue from the date hereof on the full amount of Eighteen Million Dollars ($18,000,000.00).  The amount of Seven Million Four Hundred Fifty-Two Thousand One Hundred and Seventy-Four Dollars ($7,452,174.00) shall be deducted from Inferno's Share of Net Profits as defined in Section 5 below.

4.    Consideration due Crestlloyd.  In consideration of Crestlloyd subordinating the Liens of the Crestlloyd DOTs to the ABP DOT, and only in the event the New Loan has not been otherwise paid in full by the maturity date thereof, Inferno shall use its best efforts to loan or cause to be loaned to Crestlloyd, its designee, successor or assigns, the sum of at least Eighty-Five Million Dollars ($85,000,000.00) (the "Future Inferno-Arranged Loan") with terms mutually agreed to between the parties.:  The maturity date of the Future Inferno Loan shall be the date escrow closes upon the sale of the Residence ("Maturity Date").  The Future Inferno-Arranged Loan shall be secured by the lien of a new First Trust Deed to which the Inferno DOTs and Crestlloyd DOTs shall subordinate.  It is understood and agreed between the parties that the budget reflecting the Residence's construction and carrying costs shall be raised as necessary to accommodate the interest, points and/or fees required by the Future Inferno-Arranged Loan.

5.    Distribution of Net Profits.  All consideration paid to purchase the Residence shall be paid into escrow by the buyer.  "Gross Receipts" shall be defined as all monies so received by escrow.  "Net Receipts" shall be defined as that amount remaining after the deduction from Gross Receipts of the following:

2

a) all closing costs including but not limited to taxes, commissions, escrow fees, title fees, legal costs and fees, accounting fees, etc., b) that amount required to reconvey any First Trust Deeds from third-party lenders, it being agreed that the Inferno DOTs and the Crestlloyd DOTs shall NOT be considered as being from third-party lenders, however the Future Inferno-Arranged Loan SHALL be considered a third-party lender;  and c) the sum of One Hundred And Forty Five Thousand Dollars $145,000, which shall be paid to Skyline Development or its designee as reimbursement for overhead expenses.  Net Receipts shall be disbursed in the following order: on a pro-rata, pari passu basis, to Inferno and Crestlloyd or their designees, successors or assigns, the amounts required to reconvey fully their respective DOTs.  The amount remaining, if any, shall be defined as "Net Profits".  Net Profits shall be disbursed as follows: Twenty-Four Per Cent (24%) to Inferno ("Inferno Share of Net Profits") and Seventy-Six Per Cent (76%) to Crestlloyd ("Crestlloyd Share of Net Profits").  Notwithstanding the aforesaid, the Inferno Share of Net Profits shall be decreased by the amount of $7,452,174.00, and this amount shall be paid instead to Crestlloyd.

5.    No Other Changes.  Except as herein expressly provided, all of the terms and provisions of the Memorandum of Agreement as previously amended shall remain in full force and effect.

Dated the day and year set forth above.

CRESTLLOYD, LLC, a California
Limited Liability Company

By _____
    Nile Niami, Manager

INFERNO INVESTMENT INC.,
a Canadian Corporation

By _____
    Julien Remillard, Director

2

REVISED AMENDMENT NO 3

TO MEMORANDUM OF AGREEMENT


This Amendment No. 3 to Memorandum of Agreement is entered into this 16th day of May, 2018 between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENT INC. ("Inferno").

<u>RECITALS</u>

A.     Crestlloyd and Inferno previously entered into a Memorandum of Agreement dated January 1, 2016, which was amended July _____, 2016, and September 28, 2016 with regard to division of profits and losses on the sale of the real property located at 944 Airole Way, Los Angeles, California (the "Residence"). Except as modified by this Revised Amendment No. 3, all previous items agreed to by the parties shall be incorporated herein.

B.     A previous document entitled AMENDMENT NO 3 TO MEMORANDUM OF AGREEMENT was executed by the parties on the 29th of March 2018

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.     <u>Incorporation of Recitals</u>.  Each and all of the above Recitals are incorporated herein by this reference as though set forth in full hereat.

2.     The aforementioned AMENDMENT NO 3 TO MEMORANDUM OF AGREEMENT shall be deemed null and void as if it never existed.

5.     <u>No Other Changes</u>.  Except as herein expressly provided, all of the terms and provisions of the Memorandum of Agreement as previously amended shall remain in full force and effect.

Dated the day and year set forth above.


CRESTLLOYD, LLC, a California
Limited Liability Company

By _____
        Nile Niami, Manager

INFERNO INVESTMENT INC.,
a Canadian Corporation

By _____
        Julien Remillard, Director

# EXHIBIT F

## SECURED PROMISSORY NOTE

$30,188,235.00

Los Angeles, California
October 16 , 2018

FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("*Borrower*"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("*Lender*"), the principal sum of up to $30,188,235.00 (the "*Loan Amount*"), plus interest on the unpaid principal balance thereof as detailed below.

**1.    Interest Rate; Maturity Date; Repayment.**

a.    The outstanding principal amount of the loan evidenced by this Note (the "**Loan**") shall accrue interest at the rate of 3.975% per annum (the "*Note Rate*"). Notwithstanding the previous sentence, the Note Rate shall be calculated on the entire Loan Amount, regardless of whether any portion of the Loan Amount has not been advanced pursuant to Section 2 below.

b.    The outstanding principal balance owing under this Note as well as interest thereon shall be due and payable in full on the earlier of (i) the sale of either the Hillcrest Property or the Airole Property (as each such term is defined in Section 3 below) such that the entire Loan Amount shall be repaid from proceeds of such sale, or (ii) June 18, 2019 (the "*Maturity Date*"). Additionally: (i) upon the sale of the Londonderry Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (ii) upon the sale of the Bellagio Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (iii) upon the sale of the Carcassonne Property (as defined in Section 3 below) $15,000,000.00 shall be due and payable and (iv) upon the sale of the Stone Ridge Property (as such defined in Section 3 below) $5,000,000.00 shall be due and payable.

c.    This Note may be prepaid in whole or in part; however the $800,000.00 of prepaid interest is guaranteed and no portion shall be refunded upon any principal payments made prior to the Maturity Date whether obligatory under the terms of this Note or made at Borrower's option.

**2.    Advances under the Note.**

2.1    Timing.  Advances of Loan proceeds under this Note will be disbursed as follows:

a.    Lender shall retain $800,000.00 as prepaid interest, calculated at the Note Rate on the entire Loan Amount.

b.    Lender has already advanced $17,499,900.00 under a Promissory Note dated May 22, 2018 and $2,188,235.00 under a Promissory Note dated August 9, 2017 as amended previously executed by Borrower in favor of Lender (together, the "**Prior Notes**").

c.    Lender shall advance an amount equal to $4,500,100.00 of the Loan Amount, to be disbursed in connection with the closing of the Loan contemplated under this Note upon receipt of confirmation of recording of the Deeds of Trust.

d.      So long as there is no uncured breach by Borrower of any of the covenants or obligations of Borrower under any of the documents executed by Borrower in connection with the Loan (collectively, **"Loan Documents"**), Lender shall advance up to the remaining available Loan Amount, in the amount of \$5,200,000.00, to Borrower within five (5) business days after Lender's receipt of a written request from Borrower.

2.2.    Title Endorsements.  As a condition to each advance, at Lender's sole and absolute discretion Lender may require Borrower to obtain, in connection with any or all requested disbursements, at Borrower's sole cost and expense, title endorsements satisfactory to Lender to protect Lender against mechanic's liens, to be attached to and be a part of Lender's title policies.

2.3.    Insurance.  Borrower shall furnish to Lender evidence of builders risk insurance for the Property (as defined below) in amounts and with an insurance company satisfactory to Lender and with a standard mortgagee's endorsement naming Lender as first mortgagee.

2.4.    Inspection.  Lender and its agents shall, at all times until the Note is fully repaid, have the right of entry and free access to the Property and the right to inspect all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property.  It is expressly understood and agreed that Lender is not under any duty to supervise or to inspect the work or construction or examine any books and records, and that any such inspection or examination is for the sole purpose of protecting the security of Lender and preserving Lender's rights hereunder.  Failure to inspect the work or any part thereof shall not constitute a waiver of any rights of Lender; and inspection not followed by notice of default shall not constitute a waiver of any default then existing.  In no event shall any inspection by Lender constitute a representation that there has been or will be compliance with the plans and specifications or that the construction is free from defective materials or workmanship.

2.5.    Exculpatory Provisions.  Borrower acknowledges, understands and agrees as follows:

2.5.1    Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of the quality, adequacy or suitability of the following:  (a) the plans and specifications or amendments, alterations and additions thereto; (b) architects, contractors, subcontractors, and materialmen employed or utilized in the construction, or workmanship of or the materials used by any of them; or (c) the progress or course of construction and its conformance or nonconformance with the plans and specifications or amendments, alterations and changes thereto.

2.5.2    Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction.

2.5.3    The consent or approval by Lender to or of any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act.

2.5.4   By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Lender pursuant hereto or pursuant to the loan documents, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

2.5.5   Lender shall in no way be liable for any acts or omissions of the Borrower, agent, contractor or any person furnishing labor and/or materials used in relation to the Property.

2.6.   Protection Against Liens.  Borrower agrees to fully pay and discharge all claims for labor done, material and services furnished in connection with the Property, to diligently file or procure the filing of a valid notice of completion upon completion of construction, to diligently file or procure the filing of a notice of cessation upon the event of a cessation of labor on the work of improvement for a continuous period of thirty (30) days or more, and to take all other reasonable steps to forestall the assertion of claims of lien against the Property or any part thereof and/or claims against Lender.  Borrower irrevocably appoints, designates and authorizes Lender as its agent (said agency being coupled with an interest) with the authority, but without any obligation, to file for record any notice of completion, cessation of labor, or any other notice that Lender deems necessary or desirable to protect its interests under the Note or the Loan Documents.  Nothing herein contained shall require Borrower to pay any claims for labor, materials, or services which Borrower in good faith disputes and which Borrower, at its own expense, is currently and diligently contesting; provided that Borrower shall, within ten (10) days after filing of any claim of lien, record in the Office of the County Recorder where the Property is located, obtain a surety bond sufficient to release said claim of lien or post such other security or make such other arrangements as Lender may approve in writing.

2.7.   Books, Records and Plans.  Borrower shall maintain full and complete books of account and other records concerning the Property, and shall furnish to Lender, at any time and from time to time, such financial data, plans and specifications as Lender shall reasonably request relating to the Property.  Borrower shall maintain at all times a full and current set of working drawings on the site of the Property and available for inspection by Lender or its representatives.

2.8.   Relationship.  Nothing contained herein shall be deemed or construed by the parties hereto or any third person to create a partnership or joint venture or any association between the parties other than the relationship of lender and borrower.

3.   Security.  This Note is secured by: (i) a Deed of Trust dated of even date herewith (the "*Hillcrest Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "*Hillcrest Property*"), (ii) a Deed of Trust dated of even date herewith (the "*Airole Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 944 Airole Way, Los Angeles, California 90077 (the "*Airole Property*"), (iii) a Deed of Trust dated of even date

herewith (the "***Bellagio Deed of Trust***"), executed by 10701 Bellagio Road, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 10701 Bellagio Road, Los Angeles, California (the "***Bellagio Property***"); (iv) a Deed of Trust dated of even date herewith (the "***Carcassonne Deed of Trust***"), executed by Carcassonne Fine Homes, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 627 North Carcassonne Road, Los Angeles, California (the "***Carcassonne Property***"), (v) a Deed of Trust dated of even date herewith (the "*****Stone Ridge Deed of Trust***"), executed by Marbella Construction, Inc., as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 3381 Stone Ridge Lane, Los Angeles, California (the "***Stone Ridge Property***") and (vi) a Deed of Trust dated of even date herewith (the "***Londonderry Deed of Trust***"), executed by 1369 Londonderry Estate, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1369 Londonderry Place, Los Angeles, California (the "**Londonderry *Property***"). The Hillcrest Deed of Trust, the Airole Deed of Trust, the Bellagio Deed of Trust, the Carcassonne Deed of Trust, the Stone Ridge Deed of Trust and the Londonderry Deed of Trust are collectively referred to herein as the "***Deeds of Trust***".   The Hillcrest Property, the Airole Property, Bellagio Property, the Carcassonne Property, the Stone Ridge Property and the Londonderry Property are collectively referred to herein as the "***Property***".

    **4.**    **Application of Payments.** All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

    **5.**    **Address for Payments.** All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

    **6.**    **No Offset; Holder in Due Course.** Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

    **7.**    **Waivers.** Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

- 4 -

**8.      Default Interest; Acceleration.** The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder. Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10.00% above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note. The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event. The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

**9.      Lawful Money; Costs of Collection.** All amounts payable hereunder are payable in lawful money of the United States. Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

**10.      Due on Sale and Encumbrance.** Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the

Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

     **11.**    **Usury Protection.** The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "***Maximum Rate***"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

     **12.**    **Governing Law; Venue; Joint and Several Liability.** This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

     **13.**    **Fees and Expenses.** Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other Loan Documents and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

     **14.**    **Commercial Purpose.** Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly the development of the Property. Borrower does not occupy, and does not intend to occupy, the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property and no principal or owner of Borrower (including but not limited to Nile Niami) occupies or intends to occupy the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property.

**15.**   **Severability.**  If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note.  If any provision or part thereof of this Note is stricken in accordance with the provisions of this Section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

**16.**   **Limits on Senior Loan Balances.**  Borrower agree that at no time while any portion of the Note remains unpaid shall senior indebteness: (i) encumbering the Hillcrest Property exceed $28,700,000.00, (ii) encumbering the Airole Property exceed $115,000,000.00, (iii) encumbering the Londonderry Property exceed $29,000,000.00, (iv) encumbering the Bellagio Property exceed $34,000,000.00, (v) encumbering the Carcassonne Property exceed $34,000,000.00, or (vi) encumbering the Stone Ridge Property exceed $17,100,000.00.

**17.**   **Prior Notes.**  The Prior Notes are hereby cancelled and superseded by this Note.

> Crestlloyd, LLC,
> a California limited liability company
>
> By: _____
>    Nile Niami, Manager

# EXHIBIT G





**This page is part of your document - DO NOT DISCARD**



## 20181126580



**Pages:**
**0014**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/07/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 83.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 233.00 |



**L E A D S H E E T**



201811070180001

00015924543

009450611

**SEQ:**
**12**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

2

RECORDING REQUESTED BY:

CHICAGO

AND WHEN RECORDED MAIL TO:

WOLF, RIFKIN, SHAPIRO, SCHULMAN
& RASKIN LLP
11400 V OLYMPIC BLVD 9TH FL
L.A. CA 90064



11/07/2018

*20181126580*

SPACE ABOVE FOR RECORDER'S USE ONLY

DEED OF TRUST
**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

**TITLE ORDER NO. 00094109-997-BS5-KD3**          **APN NO. 4369-026-021**

   This **Deed of Trust**, made as of October 16 , 2018, between Crestlloyd, LLC, a
California limited liability company, herein called Trustor, whose address is 8981 West Sunset
Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called
Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called
Beneficiary,

   Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE
IN TRUST, WITH POWER OF SALE**, that certain property in Los Angeles County,
California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

   **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the
right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the
provisions herein to collect and apply such rents, issues and profits.

   **For the Purpose of Securing:**

   1.    Performance of each agreement of Trustor incorporated by reference or
contained herein;

   2.    Payment of the indebtedness evidenced by one promissory note of even
date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00
executed by Trustor in favor of Beneficiary or order;

   3.    Payment of such further sums as the then record owner of said property
may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so
secured; and

   4.    Payment of any future advances by Beneficiary regardless of whether such
advances were contemplated by the parties at the time of the granting of this Deed of Trust,
whether or not such future advances are evidenced by any document, or whether or not any such
document specifies that it is secured hereby.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3281725.2                                  2

(6)      That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)      That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)      That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)      That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be· appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)      That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3281725.2

3

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

### SEE RIDER TO DEED OF TRUST ATTACHED HERETO.

3281725.2

4

7

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Crestlloyd, LLC,
a California limited liability company

By:
Nile Niami, Manager

## RIDER TO DEED OF TRUST

1.     Due on Sale and Encumbrance. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.     Insurance.

a.     Liability Insurance. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

*9*

an encumbrance (the *"Property"*) and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

   b.    Property Insurance. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

   c.    Insurance Policies. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    Remedies.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

Non-Order Search                     Page 9 of 14                     Requested By: lcarlos, Printed: 11/15/2018 10:01 AM
Doc: CALOSA:2018 01126580

10

4.   Appointment of Receiver.

a.   Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

b.   Reimbursement of Advances.

(i)   Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

(ii)   In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

c.   Possession and Operation of Properties. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.   Reserved.

R-3

Non-Order Search
Doc: CALOSA:2018 01126580
Requested By: lcarlos, Printed: 11/15/2018 10:01 AM

6.    Conflicts. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

Crestlloyd, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

R-4

12

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On October 16, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Steven H. Zidell (Seal)

13

**REQUEST FOR FULL RECONVEYANCE**

To be used only when note has been paid:

To [_____ Title], Trustee                     Dated _____

     The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____          MAIL RECONVEYANCE TO:


By: _____          _____
Name: _____          _____
Title: _____          _____


Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

14

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

(Property commonly known as: 944 Airole Way, Los Angeles, CA)

# EXHIBIT H

**This page is part of your document - DO NOT DISCARD**



## 20181065783

**Pages:**
**0013**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/19/18 AT 08:00AM**

| | |
|---|---|
| **FEES:** | 80.00 |
| **TAXES:** | 0.00 |
| **OTHER:** | 0.00 |
| **SB2:** | 150.00 |
| **PAID:** | 230.00 |



**L E A D S H E E T**



201810190110030

00015859176



009413317

**SEQ:**
**04**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

*2*

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



10/19/2018

*20181065783*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

**TITLE ORDER NO. 000983368-994-LT2-KD**                    **APN NO. 4391-028-014**

**This Deed of Trust**, made as of October 16, 2018, between Crestlloyd, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE**, that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

1.    Performance of each agreement of Trustor incorporated by reference or contained herein;

2.    Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00 executed by Trustor in favor of Beneficiary or order;

3.    Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

4.    Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

4A

3

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)     To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)     To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)     To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)     To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3281724.2

2

(6)     That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)     That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)     That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3281724.2                                           3

5

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3281724.2

4

6

   IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the
date first above written.

                                        Crestlloyd, LLC,
                                        a California limited liability company


                                        By: _____
                                             Nile Niami, Manager

3281724.2

## RIDER TO DEED OF TRUST

1.  <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

> "Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntary, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

> Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.  <u>Insurance</u>.

  a.  <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

3281724.2

an encumbrance (the "*Property*") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

b.    Property Insurance. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

c.    Insurance Policies. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    Remedies.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

Non-Order Search                          Page 8 of 13                     Requested By: choffman, Printed: 7/22/2022 12:24 PM
Doc: CALOSA:2018 01065783

9

4.    <u>Appointment of Receiver.</u>

a.    <u>Appointment of Receiver.</u> In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

b.    <u>Reimbursement of Advances.</u>

(i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

(ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

c.    <u>Possession and Operation of Properties.</u> Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    <u>Reserved.</u>

3281724.2                                        R-3

*10*

6.    Conflicts. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

Crestlloyd, LLC,
a California limited liability company

By: _____
        Nile Niami, Manager

3281724.2                                        R-4

/1

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA )
                    )
COUNTY OF LOS ANGELES )

On _October 16_, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_ (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

3281724.2

*12*

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee          Dated _____

      The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____          MAIL RECONVEYANCE TO:

By: _____          _____
Name: _____          _____
Title: _____          _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

3281724.2

13

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF BEVERLY HILLS, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 95 OF TRACT NO. 21360, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 587, PAGES 59 TO 63 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4391-028-014

(Property commonly known as 1175 North Hillcrest Road, Beverly Hills, CA)

3281724.2

**This page is part of your document - DO NOT DISCARD**



## 20181065788



**Pages:
0014**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/19/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 83.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 233.00 |



**LEADSHEET**



201810190110030

00015859181



009413317

**SEQ:
09**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**                    T72

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

2

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



10/19/2018

*20181065788*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

TITLE ORDER NO. 00098370-994-LT2-KD            APN No. 4362-003-044

   **This Deed of Trust**, made as of October 16 , 2018, between 10701 Bellagio Road,
LLC, a California limited liability company, herein called Trustor, whose address is 8981 West
Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company,
herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company,
herein called Beneficiary;

   Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE
IN TRUST, WITH POWER OF SALE**, that certain property in Los Angeles County,
California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

   **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the
right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the
provisions herein to collect and apply such rents, issues and profits.

   **For the Purpose of Securing:**

        1.      Performance of each agreement of Trustor incorporated by reference or
contained herein;

        2.      Payment of the indebtedness evidenced by one promissory note of even
date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00
executed by Trustor in favor of Beneficiary or order;

        3.      Payment of such further sums as the then record owner of said property
may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so
secured; and

        4.      Payment of any future advances by Beneficiary regardless of whether such
advances were contemplated by the parties at the time of the granting of this Deed of Trust,
whether or not such future advances are evidenced by any document, or whether or not any such
document specifies that it is secured hereby.

9

3

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3282289.1

2

4

(6)    That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)    That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3282289.1                                                  3

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)   Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)   That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)   That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3282289.1                                        4

*6*

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

10701 Bellagio Road, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

3282289.1

7

# RIDER TO DEED OF TRUST

1.    <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion.  Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable.  If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section.  Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.    <u>Insurance</u>.

a.    <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

3282289.1

8

an encumbrance (the "*Property*") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

      b.    <u>Property Insurance</u>. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

      c.    <u>Insurance Policies</u>. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    <u>Remedies</u>.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

Non-Order Search          Page 8 of 14          Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2018 01065788

9

4.    <u>Appointment of Receiver.</u>

a.    <u>Appointment of Receiver.</u> In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

b.    <u>Reimbursement of Advances.</u>

(i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

(ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

c.    <u>Possession and Operation of Properties.</u> Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    <u>Waiver by Trustor of Right to Require Beneficiary to Proceed Directly Against Borrower.</u>

5.1    Trustor waives all of the following:

3282289.1                                        R-3

10

a.      Trustor's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to a guarantor or other surety by reason of Sections 2787 to 2855, inclusive of the California Civil Code, including but not limited to any right Trustor may otherwise have to require Beneficiary to proceed directly against Borrower prior to seeking recovery against Property encumbered hereby.

b.      Any rights or defenses Trustor may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor.

c.      Any rights or defenses Trustor may have because the principal's note or other obligation is secured by real property or an estate for years.  These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation.

5.2      Trustor waives all rights and defenses that Trustor may have because the debtor's debt is secured by real property.  This means, among other things:

a.      Beneficiary may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

b.      If Beneficiary forecloses on any real property collateral pledged by the debtor:

(i)      The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(ii)      Beneficiary may collect from Trustor even if the Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

5.3      Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise.

3282289.1                                      R-4

6.    _Conflicts_. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

<div style="text-align:right">

10701 Bellagio Road, LLC,
a California limited liability company

By: _____
      Nile Niami, Manager

</div>

Non-Order Search                      Page 11 of 14          Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2018 01065788

12

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On Octoberᵗʰ 16 , 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

3282289.1

13

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

     The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____              MAIL RECONVEYANCE TO:

By: _____          _____
Name: _____          _____
Title: _____          _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

3282289.1

*14*

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOTS 9 AND 10 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY DESCRIBED AS FOLLOWS:

PARCEL 1 AS DESCRIBED IN THE CERTIFICATE OF COMPLIANCE RECORDED MAY 9, 2012 AS INSTRUMENT NUMBER 2012-696783, OF OFFICIAL RECORDS IN THE RECORDER'S OFFICE OF THE COUNTY LOS ANGELES, STATE OF CALIFORNIA

EXCEPTING THAT PORTION LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF SAID PARCEL 1, DISTANT SOUTH 40° 49' 30" EAST 126.00 FEET FROM THE WESTERLY MOST CORNER OF PARCEL 1; SAID CORNER BEING ALSO THE WESTERLY MOST CORNER OF LOT 9 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE NORTH 61° 16' 30" EAST 358.35 FEET TO A POINT IN THE WESTERLY RIGHT OF WAY OF CARCASSONNE ROAD, SAID POINT BEING DISTANT 103.50 FEET SOUTHERLY, ALONG SAID RIGHT OF WAY, FROM THE INTERSECTION WITH THE EASTERLY PROLONGATION OF THE NORTHWESTERLY LINE OF PARCEL 1, HAVING A BEARING OF NORTH 64° 12' 12° EAST.

SAID LAND IS ALSO SHOWN AS PARCEL 2 IN THE CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT RECORDED SEPTEMBER 24, 2015 AS INSTRUMENT NO. 20151182272, OF OFFICIAL RECORDS.

APN: **4362-003-044**

(Property commonly known as: 10701 Bellagio Road, Los Angeles, CA)

3282289.1

**This page is part of your document - DO NOT DISCARD**



# 20181065789

**Pages:**
**0014**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/19/18 AT 08:00AM**

| | |
|---|---|
| **FEES:** | 83.00 |
| **TAXES:** | 0.00 |
| **OTHER:** | 0.00 |
| **SB2:** | 150.00 |
| **PAID:** | 233.00 |



**LEADSHEET**



201810190110030

00015859182



009413317

**SEQ:**
**10**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

**2**

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



10/19/2018

*20181065789*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

**TITLE ORDER NO. 00098371-994-LT2-KD**                **APN No. 4362-003-043**

· **This Deed of Trust**, made as of October 16 , 2018, between Carcassonne Fine Homes,
LLC, a California limited liability company, herein called Trustor, whose address is 8981 West
Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company,
herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company,
herein called Beneficiary,

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE
IN TRUST, WITH POWER OF SALE**, that certain property in Los Angeles County,
California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the
right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the
provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

        1.      Performance of each agreement of Trustor incorporated by reference or
contained herein;

        2.      Payment of the indebtedness evidenced by one promissory note of even
date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00
executed by Trustor in favor of Beneficiary or order;

        3.      Payment of such further sums as the then record owner of said property
may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so
secured; and

        4.      Payment of any future advances by Beneficiary regardless of whether such
advances were contemplated by the parties at the time of the granting of this Deed of Trust,
whether or not such future advances are evidenced by any document, or whether or not any such
document specifies that it is secured hereby.

*10*

3

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)     To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)     To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)     To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)     To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3282291.1

2

4

(6)    That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)    That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3282291.1

3

*5*

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

328229L1                                   4

6

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Carcassonne Fine Homes, LLC,
a California limited liability company

By: _____
     Nifo Niami, Manager

3282291.1

## RIDER TO DEED OF TRUST

1.   <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

> "Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

> Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.   <u>Insurance</u>.

     a.    <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

3282291.1

8

an encumbrance (the *"Property"*) and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

   **b.** <u>Property Insurance</u>. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

   **c.** <u>Insurance Policies</u>. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

**3.** <u>Remedies</u>. Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

Non-Order Search         Page 8 of 14       Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2018 01065789

9

4.    Appointment of Receiver.

    a.    Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

    b.    Reimbursement of Advances.

        (i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

        (ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

    c.    Possession and Operation of Properties. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

    5.    Waiver by Trustor of Right to Require Beneficiary to Proceed Directly Against Borrower.

        5.1 Trustor waives all of the following:

3282291.1                             R-3

10

a.      Trustor's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to a guarantor or other surety by reason of Sections 2787 to 2855, inclusive of the California Civil Code, including but not limited to any right Trustor may otherwise have to require Beneficiary to proceed directly against Borrower prior to seeking recovery against Property encumbered hereby.

b.      Any rights or defenses Trustor may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor.

c.      Any rights or defenses Trustor may have because the principal's note or other obligation is secured by real property or an estate for years. These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation.

5.2      Trustor waives all rights and defenses that Trustor may have because the debtor's debt is secured by real property. This means, among other things:

a.      Beneficiary may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

b.      If Beneficiary forecloses on any real property collateral pledged by the debtor:

(i)      The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(ii)      Beneficiary may collect from Trustor even if the Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

5.3      Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise.

Non-Order Search                           Page 10 of 14                  Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2018 01065789

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

Carcassonne Fine Homes, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

3282291.1                    R-5

12

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA           )
                              )
COUNTY OF LOS ANGELES         )

On October 16, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_ (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

3282291.1

13

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

  The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____  MAIL RECONVEYANCE TO:

By: _____  _____
Name: _____  _____
Title: _____  _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

3282291.1

14

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOTS 7 AND 9 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY DESCRIBED AS FOLLOWS:

PARCEL 1 AS DESCRIBED IN THE CERTIFICATE OF COMPLIANCE RECORDED MAY 9, 2012 AS INSTRUMENT NUMBER 2012-696783, OF OFFICIAL RECORDS IN THE RECORDER'S OFFICE OF THE COUNTY LOS ANGELES, STATE OF CALIFORNIA

EXCEPTING THAT PORTION LYING SOUTHERLY OF THE FOLLOWING DESCRIBED LINE

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF SAID PARCEL 1, DISTANT SOUTH 40° 49' 30" EAST 126.00 FEET FROM THE WESTERLY MOST CORNER OF PARCEL 1; SAID CORNER BEING ALSO THE WESTERLY MOST CORNER OF LOT 9 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE NORTH 61° 16' 30" EAST 358.35 FEET TO A POINT IN THE WESTERLY RIGHT OF WAY OF CARCASSONNE ROAD, SAID POINT BEING DISTANT 103.50 FEET SOUTHERLY, ALONG SAID RIGHT OF WAY, FROM THE INTERSECTION WITH THE EASTERLY PROLONGATION OF THE NORTHWESTERLY LINE OF PARCEL 1, HAVING A BEARING OF NORTH 64° 12' 12" EAST. SAID LAND IS ALSO SHOWN AS PARCEL 1 IN THE CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT RECORDED SEPTEMBER 24, 2015 AS INSTRUMENT NO. 20151182271, OF OFFICIAL RECORDS.

APN: 4362-003-043

(Property commonly known as: 627 N. Carcassonne, Los Angeles, CA)

3282291.1



**This page is part of your document - DO NOT DISCARD**

## 20181065790





Pages:
0013

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/19/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 80.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 230.00 |



**LEADSHEET**



201810190110030

00015859183

009413317

**SEQ:**
**11**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72



2

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

10/19/2018

*20181065790*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

TITLE ORDER NO. 00098301-997-BS5-KD3            APN No. 2278-032-027

**This Deed of Trust,** made as of October 16 , 2018, between Marbella Construction, Inc., a California corporation, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

1. Performance of each agreement of Trustor incorporated by reference or contained herein;

2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00 executed by Trustor in favor of Beneficiary or order;

3. Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

4. Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

11

3

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3283948.1                                    2

4

(6)    That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)    That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3283948.1                                    3

5

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3283948.1                                   4

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Marbella Construction, Inc.,
a California corporation

By: _____
Nile Niami, President and Secretary

3283948.1

7

## RIDER TO DEED OF TRUST

1.    <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntary, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.    <u>Insurance</u>.

a.    <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

3283948.1

an encumbrance (the "*Property*") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

b.    <u>Property Insurance</u>. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

c.    <u>Insurance Policies</u>. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    <u>Remedies</u>.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

3283948.1                              R-2

*9*

4.     Appointment of Receiver.

     a.     Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

     b.     Reimbursement of Advances.

     (i)     Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

     (ii)     In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

     c.     Possession and Operation of Properties. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.     Reserved.

Non-Order Search                          Page 9 of 13                    Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2018 01065790

10

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

Marbella Construction, Inc.,
a California corporation

By: _____
Nile Niami, President and Secretary

3283948.1

R-4

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not truthfulness,
accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF LOS ANGELES                  )

On _October 16_, 2018, before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

3283948.1

*/2*

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

      The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____           MAIL RECONVEYANCE TO:

By: _____           _____
Name: _____           _____
Title: _____           _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

3283948.1

/3

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 2 OF TRACT 36113A, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1097, PAGES 46 THROUGH 50, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THAT PORTION OF LOT 1 OF SAID TRACT 36113A, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 1, THENCE SOUTHERLY ALONG THE WESTERLY LINE OF SAID LOT 1, SOUTH 20° 10' 31" WEST, A DISTANCE OF 187.62 FEET TO THE SOUTHWESTERLY CORNER THEREOF; THENCE EASTERLY ALONG THE SOUTHERLY PROLONGATION BOUNDARY OF SAID LOT 1, SOUTH 79° 07' 05" EAST A DISTANCE OF 31.12 FEET; THENCE LEAVING SAID SOUTHERLY LINE, NORTH 10° 37' 45" EAST A DISTANCE OF 185.16 FEET TO THE POINT OF BEGINNING OF THIS DESCRIPTION.

ALSO THAT PORTION OF LOT 12 OF TRACT 36113A, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 1097, PAGES 46 THROUGH 50, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF LOT 2 OF SAID TRACT 36113A, THENCE SOUTHERLY ALONG THE SOUTHERLY PROLONGATION OF THE WESTERLY LINE OF SAID LOT 2, SOUTH 14° 49' 48" WEST A DISTANCE OF 21.00 FEET; THENCE SOUTH 58° 03' 38" EAST A DISTANCE OF 120.00 FEET; THENCE NORTH 31° 56' 22" EAST A DISTANCE OF 60.00 FEET; THENCE NORTH 10° 37' 45" EAST A DISTANCE OF 8.08 FEET TO THE SOUTHERLY BOUNDARY OF LOTS 1 AND 2 OF SAID TRACT 36113A; THENCE NORTH 79° 07' 05" WEST A DISTANCE OF 132.06 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

THAT PORTION OF LOT 12 OF TRACT 36113A, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 1097, PAGES 46 THROUGH 50, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF LOT 2 OF SAID TRACT 36113A; THENCE SOUTHERLY ALONG THE SOUTHERLY PROLONGATION OF THE WESTERLY LINE OF SAID LOT 2, SOUTH 14° 49' 48" WEST, A DISTANCE OF 21.00 FEET, TO THE TRUE POINT OF BEGINNING OF THIS DESCRIPTION; THENCE CONTINUING ALONG SAID PROLONGATION, SOUTH 14° 49' 48" WEST, A DISTANCE OF 38.00 FEET; THENCE LEAVING SAID PROLONGATION, SOUTH 54° 32' 16" EAST, A DISTANCE OF 77.00 FEET; THENCE NORTH 84° 58' 37" EAST, A DISTANCE OF 40.00 FEET; THENCE NORTH 31° 56' 22" EAST, A DISTANCE OF 17.00 FEET; THENCE NORTH 58° 03' 38" WEST, A DISTANCE OF 120.00 FEET TO THE TRUE POINT OF BEGINNING OF THIS DESCRIPTION.

SAID DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE FOR LOT-LINE ADJUSTMENT RECORDED MAY 14, 1997 AS INSTRUMENT NO. 97-731472, OF OFFICIAL RECORDS AND AS INSTRUMENT NO. 97-731473, OF OFFICIAL RECORDS.

APN: 2278-032-027

(Property commonly known as: 3381 Stone Ridge Lane, Los Angeles, CA)

3283948.1

**This page is part of your document - DO NOT DISCARD**



# 20181065787



**Pages:**
**0014**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/19/18 AT 08:00AM**

| | | |
|---|---|---|
| **FEES:** | | 83.00 |
| **TAXES:** | | 0.00 |
| **OTHER:** | | 0.00 |
| **SB2:** | | 150.00 |
| **PAID:** | | 233.00 |



**L E A D S H E E T**



201810190110030

00015859180



009413317

**SEQ:**
**08**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

2

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



10/19/2018

*20181065787*

## DEED OF TRUST AND ASSIGNMENT OF RENTS

TITLE ORDER NO. 00098369-994-LT2-KD          APN NO. 5559-010-004

**This Deed of Trust,** made as of October 16, 2018, between 1369 Londonderry Estate, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

1. Performance of each agreement of Trustor incorporated by reference or contained herein;

2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00 executed by Trustor in favor of Beneficiary or order;

3. Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

4. Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

8

3

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3282293.1                                           2

4

(6)     That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)     That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)     That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3282293.1

3

5

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3282293.1                                        4

6

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

1369 Londonderry Estate, LLC,
a California limited liability company

By: _____
     Nile Niami, Manager

3282293.1

## RIDER TO DEED OF TRUST

1.    <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.    <u>Insurance</u>.

a.    <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

3282293.1

an encumbrance (the "*Property*") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

b.    Property Insurance. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

c.    Insurance Policies. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    Remedies.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

Non-Order Search                        Page 8 of 14                Requested By: choffman, Printed: 7/22/2022 12:24 PM
Doc: CALOSA:2018 01065787

9

4.    <u>Appointment of Receiver</u>.

a.    <u>Appointment of Receiver</u>. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

b.    <u>Reimbursement of Advances</u>.

(i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

(ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

c.    <u>Possession and Operation of Properties</u>. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

Non-Order Search                        Page 9 of 14                    Requested By: choffman, Printed: 7/22/2022 12:24 PM
Doc: CALOSA:2018 01065787

*10*

5.    <u>Waiver by Trustor of Right to Require Beneficiary to Proceed Directly Against Borrower</u>.

5.1 Trustor waives all of the following:

a.    Trustor's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to a guarantor or other surety by reason of Sections 2787 to 2855, inclusive of the California Civil Code, including but not limited to any right Trustor may otherwise have to require Beneficiary to proceed directly against Borrower prior to seeking recovery against Property encumbered hereby.

b.    Any rights or defenses Trustor may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor.

c.    Any rights or defenses Trustor may have because the principal's note or other obligation is secured by real property or an estate for years. These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation.

5.2    Trustor waives all rights and defenses that Trustor may have because the debtor's debt is secured by real property. This means, among other things:

a.    Beneficiary may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

b.    If Beneficiary forecloses on any real property collateral pledged by the debtor:

(i)    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(ii)    Beneficiary may collect from Trustor even if the Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

5.3    Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation

.3282293.1                            R-4

and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise.

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

<div style="margin-left: 40%;">

1369 Londonderry Estate, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

</div>

12

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On ___October 16___, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_ (Seal)

> STEVEN H. ZIDELL
> Notary Public - California
> Los Angeles County
> Commission # 2241601
> My Comm. Expires Jun 6, 2022

3282293.1

13

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

     The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____          MAIL RECONVEYANCE TO:

By: _____          _____
Name: _____          _____
Title: _____          _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

3282293.1

14

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11 OF TRACT NO. 12360, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 239, PAGES 27 AND 28 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: **5559-010-004**

(Property commonly known as: 1369 Londonderry Place, Los Angeles, CA)

3282293.1

# EXHIBIT I

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

This document filed for recording
by Chicago Title Insurance Company as
un accommodation only. It has not
been examined as to its execution or
as its effect upon the title.

*112434*

Recording Requested By )
and When Recorded Mail To: )
)
WOLF, RIFKIN, SHAPIRO, )
SCHULMAN & RABKIN, LLP )
11400 West Olympic Blvd., 9th Floor )
Los Angeles, California 90064-1582 )
Attention: Steven H. Zidell, Esq. )

This is to certify that this is a full, true and correct
copy of the original recorded in the office of the
County Recorder of *LOS ANGELES*
*8-30-19*
as Document No. *2019 0889046*
CHICAGO TITLE

By *Kal Daly*
      TITLE OFFICER

---

Space Above This Line For Recorder's Use

## AMENDMENT OF NOTE AND DEEDS OF TRUST

This Amendment of Note and Deeds of Trust (the "**Amendment**") is entered into as of June 18, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.      10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.      Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of Lender, as

3705229.1                                    -1-

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.    Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.    1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.    The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.    Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

I.    Borrower and Lender wish to execute and record this Amendment to extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by this Amendment. The Original Note, as amended by this Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Definitions**. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.    **Maturity Date Extension**. The maturity date of the Note is hereby extended to August 17, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable. By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.    <u>Interest Rate; Total Payoff Amount.</u>  The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Note, and as of the prior maturity date of June 18, 2019, the current balance of unpaid principal due and owing is Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00).  Additionally, the parties acknowledge and agree that the interest rate of the Note is being increased by this Amendment to 4.0% per annum, to begin accruing on the unpaid principal balance on June 18, 2019, until the Maturity Date.  Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $400,000.00 to Borrower, which shall be added as principal to the current principal balance of $30,188,235.00, such that the total unpaid balance of principal shall be Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00) ("New Principal"), which shall be considered the New Principal as of June 18, 2019.  The parties further agree that, pursuant to the interest rate established by this Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), including the New Principal, and Two Hundred One Thousand One Hundred Twenty Eight and 12/100 Dollars ($201,128.12) in interest accrued at 4.0% per annum on the New Principal between June 18, 2019 and the Maturity Date.  Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.

4.    <u>Releases, Covenants Not to Litigate, Assignments and Indemnification.</u>  As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

A.    Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term **"Released Parties"** shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys) of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the **"Released Claims"**);

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

3705229.1                                     -3-

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.   Continuing Security.  The Deed of Trust, as modified by this Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by this Amendment, and all other indebtedness and obligations secured by the Deed of Trust.  Except as expressly modified by this Amendment, the Deed of Trust shall remain in full force and effect, and this Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.   The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

B.   The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

C.   The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

D.   The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

E.   The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

3705229.1                                              -4-

F.      The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.      No Other Modifications. Except as modified expressly or by necessary implication hereby and by this Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect. To the extent the provisions of this Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.      Successors and Assigns. All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

**BORROWER:**

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
    Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

**LENDER:**

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

  By: _____
      Joseph Englanoff, Trustee

3705229.1

-6-

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:                                    LENDER:

CRESTLLOYD, LLC,                             YOGI SECURITIES HOLDINGS, LLC,
a California limited liability company       a Nevada limited liability company

                                             By: YOGI Management Trust, its manager

By:_____
     Nile Niami, Manager                     By: _____
                                                  Joseph Englanoff, Trustee

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By:_____
     Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By:_____
     Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By:_____
     Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By:_____
     Nile Niami, Manager

3705229.1                                    -6-

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

┌─────────────────────────────────────────────────────────────────────────┐
│ A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document │
│ to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. │
└─────────────────────────────────────────────────────────────────────────┘

State of California

County of _LOS ANGELES_

On _JUNE 26, 2019_ before me, _Nigel Gibbs, Notary Public_
_____Date_____                                _Here Insert Name and Title of the Officer_

personally appeared _____Nile Niami_____
                              _Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

┌──────────────────────────┐
│      NIGEL GIBBS         │     I certify under PENALTY OF PERJURY under the
│  Notary Public - California │     laws of the State of California that the foregoing
│    Los Angeles County    │     paragraph is true and correct.
│   Commission # 2164239   │
│  My Comm. Expires Oct 4, 2020 │     WITNESS my hand and official seal.
└──────────────────────────┘

                                         Signature _____
_Place Notary Seal and/or Stamp Above_              _Signature of Notary Public_

─────────────────────────── OPTIONAL ───────────────────────────
          *Completing this information can deter alteration of the document or*
          *fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Assignment of Note & Deeds of Trust_
Document Date: _6/26/19_ _____ Number of Pages: _6_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____      Signer's Name: _____
☐ Corporate Officer – Title(s): _____      ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General           ☐ Partner – ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact         ☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator  ☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____             ☐ Other: _____
Signer is Representing: _____      Signer is Representing: _____

©2018 National Notary Association

---

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not truthfulness, accuracy, or validity of
> that document.

---

STATE OF CALIFORNIA                )
                                   )
COUNTY OF LOS ANGELES              )

On __7|10|2019__ , before me, __Yolanda Chavez—__ , a Notary Public in and
for said State, personally appeared __Joseph Balanoff__ , who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> YOLANDA CHAVEZ
> Notary Public – California
> Los Angeles County
> Commission # 2204195
> My Comm. Expires Aug 3, 2021

3705229.1                          -7-

# EXHIBIT J

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

**This page is part of your document - DO NOT DISCARD**

## 20190907091



**Pages:**
**0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/05/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |



**LEADSHEET**



201909050150015

00017107247



010099932

**SEQ:**
**16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T72

RECORDER MEMO: This COPY has not been QUALITY ASSURED

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED

**CHICAGO TITLE COMPANY
COMMERCIAL DIVISION**

112434-994-LT2

Recording Requested By                    )
and When Recorded Mail To:                )
                                          )
WOLF, RIFKIN, SHAPIRO,                    )
SCHULMAN & RABKIN, LLP                    )
11400 West Olympic Blvd., 9th Floor       )
Los Angeles, California 90064-1582        )
Attention:  Steven H. Zidell, Esq.        )



09/05/2019

*20190907091*

_____
Space Above This Line For Recorder's Use

## SECOND AMENDMENT OF NOTE AND DEEDS OF TRUST

This Second Amendment of Note and Deeds of Trust (the "**Second Amendment**") is entered into as of August 17, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A.    Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.    Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.    10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.    Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of Lender, as

37814701                                  -1-

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.     Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.     1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.     The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.     Borrower and Lender executed an Amendment of Note and Deed of Trust dated June 18, 2019 (the "**First Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00).

I.     Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

J.     Borrower and Lender wish to execute and record this Second Amendment to further extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by the First Amendment and this Second Amendment. The Original Note, as amended by the First Amendment and this Second Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     Definitions. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Second Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

3781470.1                                -2-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

ER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

2.    <u>Maturity Date Extension.</u>  The maturity date of the Note is hereby extended to October 16, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable.  By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.    <u>Interest Rate; Total Payoff Amount.</u>  The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Original Note.  The parties acknowledge and agree that pursuant to the terms of the First Amendment, Lender funded an additional $400,000.00 to Borrower, adding such amount to the unpaid principal balance, and increased the interest rate of the Original Note to 4.0% per annum.  The parties acknowledge and agree that as of the prior maturity date of August 17, 2019, the current balance of unpaid principal and interest due and owing is Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), which includes (i) the principal amount established by the First Amendment of $30,588,235.00 ("**First Amendment Principal**"), and (ii) interest of $201,128.12 accrued at a rate of 4.0% per annum between June 18, 2019, and August 17, 2019.  The parties further acknowledge and agree that on August 17, 2019, the unpaid interest of $201,128.12 shall be added as principal to the First Amendment Principal balance of $30,588,235.00.  Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $739,000.00 to Borrower, which shall also be added as principal to the First Amendment Principal balance of $30,588,235.00.  Accordingly, the total updated unpaid principal balance shall include (i) the First Amendment Principal balance of $30,588,235.00, (ii) the unpaid interest of $201,128.12, and (iii) Lender's additional funding of $739,000.00 to Borrower, for a total updated principal balance of Thirty One Million Five Hundred Twenty Eight Thousand Three Hundred Sixty Three and 12/100 Dollars ($31,528,363.12) ("**New Principal Balance**"), which shall be considered the New Principal Balance as of August 17, 2019.  The parties further acknowledge and agree that pursuant to the interest rate established by the First Amendment and maintained in this Second Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty One Million Seven Hundred Thirty Five Thousand Six Hundred Seventy Two and 72/100 Dollars ($31,735,672.72), including the New Principal Balance, and Two Hundred Seven Thousand Three Hundred Nine and 60/100 Dollars ($207,309.60) in interest accrued at 4.0% per annum on the New Principal Balance between August 17, 2019 and the Maturity Date.  Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Second Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.  Lender may, at its sole option, pay for such attorneys' fees and costs, title company charges and recording fees out of the proceeds of the additional funding of $739,000.00.

4.    <u>Releases, Covenants Not to Litigate, Assignments and Indemnification.</u>  As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

    A.    Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term "**Released Parties**" shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys)

3781470.1

-3-

RECORDER MEMO: This COPY has not been QUALITY ASSURED

of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Second Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "**Released Claims**");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.   Continuing Security. The Deed of Trust, as modified by the First Amendment and this Second Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by the First Amendment and this Second Amendment, and all other indebtedness and obligations secured by the Deed of Trust. Except as expressly modified by the First Amendment and this Second Amendment, the Deed of Trust shall remain in full force and effect, and this Second Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.   The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

3781470 1

-4-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED

B.    The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

C.    The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

D.    The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

E.    The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

F.    The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.    No Other Modifications. Except as modified expressly or by necessary implication hereby and by this Second Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect. To the extent the provisions of this Second Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Second Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.    Successors and Assigns. All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

3781470.1

-5-

RECORDER MEMO: This COPY has not been QUALITY ASSURED

RECC° ER MEMO: This COPY has not been QUALITY ASSURED

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

LENDER:

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
Joseph Englanoff, Trustee

3781470.1                                              -6-

Order: QuickView_                     Page 7 of 9          Requested By:  , Printed: 9/11/2019 7:35 AM
Doc: 2019-907091 REC ALL

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not truthfulness, accuracy, or validity of
> that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On September 3, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Joseph Englanoff, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_ (Seal)

STEVEN H. ZIDELL
Notary Public · California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

RECORDER MEMO: This COPY has not been QUALITY ASSURED

3781470.1

-7-

RECORDER MEMO: This COPY has not been QUALITY ASSURED

9

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             )
COUNTY OF LOS ANGELES        )

On _Septembe 3, 2019_ before me, _Nigel Gibbs_____, a Notary Public in and for said State, personally appeared _Nile Niami_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

RECORDER MEMO: This COPY has not been QUALITY ASSURED

3781470.1

-8-

# EXHIBIT K

## SECURED PROMISSORY NOTE

$5,200,000.00

Los Angeles, California
April 20, 2018

FOR VALUE RECEIVED, Marbella Construction, Inc., a California corporation ("*Marbella*"), and 1369 Londonderry Estate, LLC, a California limited liability company ("*Londonderry*" and together with Marbella, "*Borrower*"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("*Lender*") the principal sum of $5,200,000.00, plus interest on the unpaid principal balance thereof at the rate set forth below.

1.    **Interest Rate; Maturity Date; Prepayment**.

a.    The outstanding balance owing under this Note shall accrue interest at a rate of 4.750% per annum until November 20, 2018. From and after November 20, 2018, the outstanding balance owing under this Note shall accrue interest at a rate of 9.750% per annum.

b.    The outstanding balance owing under this Note as well as interest thereon shall be due and payable in full on January 20, 2019 (the "*Maturity Date*").

c.    This Note may be prepaid in whole or in part without penalty or premium at any time.

2.    **Security**.  This Note is secured by (i) a Deed of Trust dated as of April 1, 2018 (the "*Londonderry Deed of Trust*"), executed by Londonderry, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1369 Londonderry Place, Los Angeles, California 90069 (the "*Londonderry Property*"), and (ii) a Deed of Trust dated as of April 1, 2018 (the "*Stoneridge Deed of Trust*" and, together with the Londonderry Deed of Trust, the "*Deed of Trust*"), executed by Marbella, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 3381 Stoneridge Lane, Los Angeles, California 90077 (the "*Stoneridge Property*" and, together with the Londonderry Property, the "*Property*").

3.    **Application of Payments**.  All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

4.    **Late Charge**.  Borrower acknowledges that if any payment required under this Note is not paid within 10 days after the same becomes due and payable, the holder hereof will incur extra administrative expenses, in addition to expenses incident to receipt of timely payment, and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by the holder hereto by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that a late charge of 10% of the amount of the delinquent payment and the imposition of the default interest rate provided for below shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor (provided that no such late charge shall be payable with respect to any balloon payment due on the Maturity Date).  Borrower shall, therefore, in such event, without further notice, pay to the

holder hereof as such holder's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of 10% of the amount of such delinquent payment and any additional interest owed as a result of the imposition of the default interest rate as provided below. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as an express or implied agreement by the holder hereof to forbear in the collection of any delinquent payment, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the holder hereto to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such holder to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

     **5.**    **Address for Payments**. All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

     **6.**    **No Offset; Holder in Due Course**. Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

     **7.**    **Waivers**. Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

     **8.**    **Default Interest; Acceleration**. The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder. Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10%, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.

The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event. The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

9.     **Lawful Money; Costs of Collection**. All amounts payable hereunder are payable in lawful money of the United States. Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

10.     **Due on Sale and Encumbrance**. Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

**Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.**

11.     **Usury Protection**. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in

- 3 -

excess of the maximum amount permitted by applicable law (the "*Maximum Rate*").  In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate.  If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

**12.    Governing Law; Venue; Joint and Several Liability**.  This Note shall be governed by and construed according to the laws of the State of California.  The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue.  Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction.  In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

**13.    Fees and Expenses**.  Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other loan documents executed pursuant hereto and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

**14.    Commercial Purpose.  Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes.  Borrower does not occupy, and does not intend to occupy, the Property, and no principal or owner of Borrower occupies or intends to occupy the Property.**

**15.    Severability**.  If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note.  If any provision or part thereof of this Note is stricken in accordance with the provisions of this section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

1369 LONDONDERRY ESTATE, LLC,            MARBELLA CONSTRUCTION, INC.,
a California limited liability company            a California corporation


By: _____            By: _____
Name: _____            Name: _____
Title: _____            Title: _____

    *Nile Niami, MAnager*                *Nile Niami, President*

# EXHIBIT L

 

**This page is part of your document - DO NOT DISCARD**

## 20180389829

 

**Pages:
0012**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**04/23/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 77.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 227.00 |



**L E A D S H E E T**



201804230110014

00015153425



009039699

**SEQ:
07**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72



CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Daniel Wiesel, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



04/23/2018

*20180389829*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

TITLE ORDER NO. _88802-994-LT2_ ESCROW NO. _540 2-SPJ_        APN NO. _5559-010-004_

**This Deed of Trust,** made as of April 1, 2018, between 1369 Londonderry Estate, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary;

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

1.  Performance of each agreement of Trustor incorporated by reference or contained herein;

2.  Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $5,200,000.00 executed by Trustor and Marbella Construction, Inc., a California corporation, in favor of Beneficiary or order;

3.  Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

4.  Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3051587.3                                              2

Non-Order Search
Doc: CALOSA:2018 00389829
Requested By: lcarlos, Printed: 5/11/2018 7:58 AM

(6)    That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)    That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3051587.3                                    3

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3051587.3                                          4

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By:
Name:
Title:

Nile Niami, Manager

## RIDER TO DEED OF TRUST

1.    <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

> "[Trustor] acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If [Trustor] is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of [Trustor], or of the beneficial interest of such trust, or, in the event [Trustor] is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

> [Trustor] agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

2.    <u>Insurance</u>.

    a.    <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is an encumbrance (the "***Property***") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be

designated as an additional insured under the liability insurance required under this Deed of Trust.

    b.    <u>Property Insurance</u>. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

    c.    <u>Insurance Policies</u>. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    <u>Remedies</u>.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

4.    <u>Appointment of Receiver</u>.

    a.    <u>Appointment of Receiver</u>. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the

<div align="center">R-2</div>

Q

Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

     b.    <u>Reimbursement of Advances.</u>

       (i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

       (ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

     c.    <u>Possession and Operation of Properties.</u> Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    <u>Reserved.</u>

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

            1369 LONDONDERRY ESTATE, LLC,
            a California limited liability company

            By: _____
            Name: _____
            Title: _____
                 *Nile Niami  Manager*

       R-3

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On _4-20-2018_ , before me, _Jesse Jack Riddle-Jansen_ , a Notary Public,
personally appeared _Nile Niami_ , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

JESSE JACK RIDDLE-JANSEN
COMM. # 2203501
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. JULY 1, 2021

## REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

    The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____         MAIL RECONVEYANCE TO:


By: _____       _____
Name: _____       _____
Title: _____       _____


Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

PRELIMINARY REPORT
YOUR REFERENCE: Escrow 5402-JFJ

Chicago Title Company
ORDER NO.: 00088802-994-LT2-KD

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 11 OF TRACT NO. 12360, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 239, PAGES 27 AND 28 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5559-010-004

**This page is part of your document - DO NOT DISCARD**

# 20180389830



**Pages:**
**0012**



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/23/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 77.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 227.00 |



**LEADSHEET**



**201804230110014**

**00015153426**



**009039699**

**SEQ:**
**08**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Daniel Wiesel, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



04/23/2018

*20180389830*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

TITLE ORDER NO. *88803-994· LTZ* ESCROW NO. *5403-1FI*          APN NO. *2278·032·-027*

    **This Deed of Trust,** made as of April 1, 2018, between Marbella Construction, Inc., a California corporation, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

    Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

    **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

    **For the Purpose of Securing:**

        1.    Performance of each agreement of Trustor incorporated by reference or contained herein;

        2.    Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $5,200,000.00 executed by Trustor and 1369 Londonderry Estate, LLC, a California limited liability company, in favor of Beneficiary or order;

        3.    Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

        4.    Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.



**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)     To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)     To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)     To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)     To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

Non-Order Search                              Page 3 of 12                  Requested By: lcarlos, Printed: 5/11/2018 8:48 AM
Doc: CALOSA:2018 00389830

(6)    That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)    That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3051592.3                                                  3

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)  Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)  That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)  That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3051592.3                                    4

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
Name: _____  *Nile Niami*
Title: _____  *President*

## RIDER TO DEED OF TRUST

1.   Due on Sale and Encumbrance. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

> "[Trustor] acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If [Trustor] is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of [Trustor], or of the beneficial interest of such trust, or, in the event [Trustor] is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.
>
> [Trustor] agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

2.   Insurance.

   a.   Liability Insurance. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is an encumbrance (the "*Property*") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be

designated as an additional insured under the liability insurance required under this Deed of Trust.

       **b.**    <u>Property Insurance</u>. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

       **c.**    <u>Insurance Policies</u>. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

**3.**    <u>Remedies</u>.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

**4.**    <u>Appointment of Receiver</u>.

       **a.**    <u>Appointment of Receiver</u>. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the

<center>R-2</center>

Q

Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

     b.    <u>Reimbursement of Advances</u>.

       (i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

       (ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

     c.    <u>Possession and Operation of Properties</u>. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    <u>Reserved</u>.

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
Name: _____ Nile Niami
Title: _____ president

R-3

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On _4-20-2018_, before me, _Jesse Jack Riddle-Jansen_, a Notary Public,
personally appeared _Nile Niami_, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)



JESSE JACK RIDDLE-JANSEN
COMM. # 2203501
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. JULY 1, 2021

## REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid:

To [_____ Title], Trustee        Dated _____

      The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____      MAIL RECONVEYANCE TO:

By: _____      _____

Name: _____      _____

Title: _____      _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

PRELIMINARY REPORT
YOUR REFERENCE: Escrow 5403-JFJ

Chicago Title Company
ORDER NO.: 00088803-997-LT1-KD3

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 2 OF TRACT 36113A, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1097 PAGES 46 THROUGH 50 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND THAT PORTION OF LOT 1 OF SAID TRACT 36113A, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF SAID LOT 1, THENCE SOUTHERLY ALONG THE WESTERLY LINE OF SAID LOT 1, SOUTH 20° 10' 31" WEST, A DISTANCE OF 187.62 FEET TO THE SOUTHWESTERLY CORNER THEREOF; THENCE EASTERLY ALONG THE SOUTHERLY PROLONGATION BOUNDARY OF SAID LOT 1, SOUTH 79° 07' 05" EAST A DISTANCE OF 31.12 FEET; THENCE LEAVING SAID SOUTHERLY LINE, NORTH 10° 37' 45" EAST A DISTANCE OF 185.16 FEET TO THE POINT OF BEGINNING OF THIS DESCRIPTION.

ALSO THAT PORTION OF LOT 12 OF TRACT 36113A, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 1097 PAGES 46 THROUGH 50 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF LOT 2 OF SAID TRACT 36113A, THENCE SOUTHERLY ALONG THE SOUTHERLY PROLONGATION OF THE WESTERLY LINE OF SAID LOT 2, SOUTH 14° 49' 48" WEST A DISTANCE OF 21.00 FEET; THENCE SOUTH 58° 03' 38" EAST A DISTANCE OF 120.00 FEET; THENCE NORTH 31° 56' 22" EAST A DISTANCE OF 60.00 FEET; THENCE NORTH 10° 37' 45" EAST A DISTANCE OF 8.08 FEET TO THE SOUTHERLY BOUNDARY OF LOTS 1 AND 2 OF SAID TRACT 36113A; THENCE NORTH 79° 07' 05" WEST A DISTANCE OF 132.06 FEET TO THE POINT OF BEGINNING.

PARCEL 2:

THAT PORTION OF LOT 12 OF TRACT 36113A, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 1097 PAGES 46 THROUGH 50 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF LOT 2 OF SAID TRACT 36113A; THENCE SOUTHERLY ALONG THE SOUTHERLY PROLONGATION OF THE WESTERLY LINE OF SAID LOT 2, SOUTH 14° 49' 48" WEST, A DISTANCE OF 21.00 FEET, TO THE TRUE POINT OF BEGINNING OF THIS DESCRIPTION; THENCE CONTINUING ALONG SAID PROLONGATION, SOUTH 14° 49' 48" WEST, A DISTANCE OF 38.00 FEET; THENCE LEAVING SAID PROLONGATION, SOUTH 54° 32' 16" EAST, A DISTANCE OF 77.00 FEET; THENCE NORTH 84° 58' 37" EAST, A DISTANCE OF 40.00 FEET; THENCE NORTH 31° 56' 22" EAST, A DISTANCE OF 17.00 FEET; THENCE NORTH 58° 03' 38" WEST, A DISTANCE OF 120.00 FEET TO THE TRUE POINT OF BEGINNING OF THIS DESCRIPTION.

SAID DESCRIPTION IS MADE PURSUANT TO THAT CERTAIN CERTIFICATE OF COMPLIANCE FOR LOT-LINE ADJUSTMENT RECORDED MAY 14, 1997 AS INSTRUMENT NO. 97 731472 , OF OFFICIAL RECORDS AND AS INSTRUMENT NO. 97 731473, OF OFFICIAL RECORDS.

APN: 2278-032-027

# EXHIBIT M

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

**This page is part of your document - DO NOT DISCARD**



## 20190989745

Pages:
0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/23/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |



**L E A D S H E E T**



201909231110001

00017193715



010145023

**SEQ:**
**09**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

117408
—09
—10

09/23/2019

*20190989745*

Recording Requested By                )
and When Recorded Mail To:            )
                                       )
WOLF, RIFKIN, SHAPIRO,                 )
SCHULMAN & RABKIN, LLP                 )
11400 West Olympic Blvd., 9th Floor    )
Los Angeles, California 90064-1582     )
Attention: Steven H. Zidell, Esq.      )

Space Above This Line For Recorder's Use

## FOURTH AMENDMENT OF NOTE AND DEED OF TRUST

This Fourth Amendment of Note and Deed of Trust (the "**Fourth Amendment**") is entered into as of September 18, 2019, by and between Marbella Construction, Inc., a California corporation ("**Marbella**"), and 1369 Londonderry Estate, LLC, a California limited liability company ("**Londonderry**") (together, "**Borrower**"), Crestlloyd, LLC, a California limited liability company ("**Crestlloyd**"), and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A. Marbella executed a Deed of Trust dated April 1, 2018 (the "**Marbella Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on April 23, 2018, as Instrument No. 20180389830, Official Records of Los Angeles County, California ("**Official Records**").

B. Londonderry executed a Deed of Trust dated April 1, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on April 23, 2018, as Instrument No. 20180389829, Official Records. The Marbella Deed of Trust and the Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

C. The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Five Million Two Hundred Thousand Dollars ($5,200,000.00). The Loan is evidenced by a Secured Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated April 20, 2018, made by Borrower in favor of Lender.

D. Borrower and Lender executed an Amendment of Note and Deed of Trust dated January 20, 2019 (the "**First Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Five Million Four Hundred Twenty Nine Thousand Five Hundred Forty Seven and 38/100 Dollars ($5,429,547.38).

3804184.1                          -1-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

E. Borrower and Lender executed a Second Amendment of Note and Deed of Trust dated March 20, 2019 (the "**Second Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Five Million Nine Hundred Sixty Four Thousand Four Hundred Seventeen and 52/100 Dollars ($5,704,417.52).

F. Borrower and Lender executed a Third Amendment of Note and Deed of Trust dated June 13, 2019 (the "**Third Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Five Million Nine Hundred Sixty Four Thousand Two Hundred Two and 59/100 Dollars ($5,964,202.59).

G. Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note, the First Amendment, the Second Amendment and all other instruments that evidence and/or secure the Loan.

H. Borrower and Lender wish to execute and record this Fourth Amendment to extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, as amended, and other obligations described in the Original Note and Deed of Trust as modified by the First Amendment, the Second Amendment, the Third Amendment, and this Fourth Amendment. The Original Note, as amended by the First Amendment, the Second Amendment, the Third Amendment, and this Fourth Amendment, is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>Definitions</u>. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Fourth Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2. <u>Maturity Date Extension</u>. The maturity date of the Note is hereby extended to November 20, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable. By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3. <u>Interest; Total Payoff Amount</u>. The parties acknowledge and agree that as of the prior maturity date of September 20, 2019, the current balance of unpaid principal and interest due and owing is Six Million One Hundred Twelve Thousand Eight Hundred Ten and 64/100 Dollars ($6,112,810.64), which includes (i) the principal amount of $5,964,202.59, and (ii) interest of $148,608.05 accrued at a rate of 9.750% per annum between June 20, 2019, and September 20, 2019. On September 20, 2019, the parties acknowledge and agree that the unpaid interest of $148,608.05 shall be added as principal to the current principal balance of $5,964,202.59. Additionally, on September 20, 2019, the parties acknowledge and agree that

RECORDER MEMO: This COPY has not been QUALITY ASSURED

Lender shall fund an additional $84,000.00 to Borrower, which shall be added as principal to the current principal balance of $5,964,202.59.  After adding the unpaid interest of $148,608.05 and Lender's additional funding of $84,000.00 as principal, then the total unpaid balance of principal as of September 20, 2019, shall be Six Million One Hundred Ninety Six Thousand Eight Hundred Ten and 64/100 Dollars ($6,196,810.64) ("**New Principal**").  The Note shall continue to accrue interest at the rate of 9.750% per annum, as stated in the Note, on such New Principal, until the Maturity Date.  Accordingly, the parties acknowledge and agree that the total unpaid balance of principal and interest due on the Maturity Date (i.e., the payoff amount) under the Loan Documents shall then be Six Million Two Hundred Ninety Seven Thousand Five Hundred Eight and 17/100 Dollars ($6,297,508.17), which shall include the New Principal and interest of $100,698.17 accrued at 9.75% per annum between September 20, 2019 and the Maturity Date. Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Fourth Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.  Lender may, at its sole option, pay for such attorneys' fees and costs, title company charges and recording fees out of the proceeds of the additional funding of $84,000.00.

    4.    <u>Releases, Covenants Not to Litigate, Assignments and Indemnification</u>.  As of the Date of this Fourth Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

    4.1    Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term "**Released Parties**" shall be defined as Lender and its respective members, managers, officers, directors, shareholders, representatives, employees, agents and attorneys) of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Fourth Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "**Released Claims**");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

Non-Order Search        Page 4 of 9        Requested By: choffman, Printed: 9/26/2019 10:11 AM
Doc: CALOSA:2019 00989745

RECORDER MEMO: This COPY has not been QUALITY ASSURED

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.    Continuing Security.  The Marbella Deed of Trust, as modified by the First Amendment, the Second Amendment the Third Amendment, and this Forth Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by this Fourth Amendment, and all other indebtedness and obligations secured by the Marbella Deed of Trust. Except as expressly modified by the First Amendment, the Second Amendment, the Third Amendment, and this Fourth Amendment, the Marbella Deed of Trust shall remain in full force and effect, and this Fourth Amendment shall have no effect on the priority or validity of the lien of the Marbella Deed of Trust, which shall continue to constitute a third position lien and charge on the property encumbered by the Marbella Deed of Trust. The Londonderry Deed of Trust, as modified by the First Amendment, the Second Amendment, the Third Amendment, and this Fourth Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by this Fourth Amendment, and all other indebtedness and obligations secured by the Londonderry Deed of Trust. Except as expressly modified by the First Amendment, the Second Amendment, the Third Amendment, and this Fourth Amendment, the Londonderry Deed of Trust shall remain in full force and effect, and this Fourth Amendment shall have no effect on the priority or validity of the lien of the Londonderry Deed of Trust, which shall continue to constitute a fourth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.    Additional Security.  As additional security for the Note, concurrently herewith, Crestlloyd agrees to execute and acknowledge a Deed of Trust and Assignment of Rents, in a form satisfactory to Lender in Lender's sole and absolute discretion, encumbering certain property located in the City of Los Angeles, commonly known as 944 Airole Way, Los Angeles, CA 90077, as more particularly described therein (the **"Crestlloyd Deed of Trust"**).  Upon execution of this Fourth Amendment, the term Deed of Trust shall also include the Crestlloyd Deed of Trust.

7.    No Other Modifications.  Except as modified expressly or by necessary implication hereby and by this Fourth Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect. To the extent the provisions of this Fourth Amendment are inconsistent with the provisions of the Note or Deed of

3804184.1

-4-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

Trust, the provisions of this Fourth Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

8.     Successors and Assigns.   All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on the following page]*

3804184.1                                         -5-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

**BORROWER:**

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company



By: _____
    Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
    Nile Niami, President

**CRESTLLOYD:**

CRESTLLOYD, LLC,
a California limited liability company



By: _____
    Nile Niami, Manager

**LENDER:**

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
    Joseph Englanoff, Trustee

3804184.1

-6-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.
RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                )
                                   )
County of Los Angeles              )

On 04/18 , 2019, before me, *Nigel Gibbs* , a Notary Public, personally appeared *Nile Niami* , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public

(seal)

NIGEL GIBBS
Notary Public · California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

3804184.1

-7-

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
                           )
County of Los Angeles      )

On 9|19, 2019, before me, _Melisa Arenas_, a Notary Public, personally appeared _Joseph Englanoff_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____

Notary Public                                    (seal)

MELISA ARENAS
COMM. # 2174579
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. DEC. 3, 2020

3804184 1                              -7-

# EXHIBIT N

RECORDER MEMO: This COPY has not been QUALITY ASSURED.



**This page is part of your document - DO NOT DISCARD**



## 20190989746

**Pages:**
**0012**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/23/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 77.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 227.00 |



**L E A D S H E E T**



201909231110001

00017193716



010145023

**SEQ:**
**10**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

E441953

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



09/23/2019

*20190989746*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

**TITLE ORDER NO.** 117408-994                                    **APN NO.** 4369-026-021

**This Deed of Trust,** made as of September 1 8 , 2019, between Crestlloyd, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, commonly known as 944 Airole Way, Los Angeles, CA 90077, as more particularly described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

1.      Performance of each agreement of Trustor incorporated by reference or contained herein;

2.      Payment of the indebtedness evidenced by one promissory note executed by 1369 Londonderry Estate, LLC, a California limited liability company, and Marbella Construction, Inc., a California corporation, in favor of Beneficiary or order, as amended by that certain Amendment of Note and Deed of Trust executed as of January 20, 2019, that certain Second Amendment of Note and Deed of Trust executed as of March 20, 2019, and that certain Third Amendment of Note and Deed of Trust executed as of June 13, 2019, and as further amended as of even date herewith, and any extension or renewal thereof, in the principal sum of $6,196,810.64 (as amended, the "**Note**");

3.      Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

1

3803735_1



RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

4.      Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

## To Protect the Security of This Deed of Trust, Trustor Agrees:

1.      To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2.      To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.      To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

4.      To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

3803735_1

2

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

5.      To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

6.      That any award of damages in connection with any condemnation for public use or of injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7.      That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8.      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9.      That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

10.      That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3

3803735_1

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

11.    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

12.    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

13.    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

14.    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

4

3803735_1

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

15.     Waiver by Trustor.

15.1    Trustor waives all of the following:

15.1.1 Trustor's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to a guarantor or other surety by reason of Sections 2787 to 2855, inclusive of the California Civil Code, including but not limited to any right Trustor may otherwise have to require Beneficiary to proceed directly against Borrower prior to seeking recovery against Property encumbered hereby.

15.1.2 Any rights or defenses Trustor may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor.

15.1.3 Any rights or defenses Trustor may have because the principal's note or other obligation is secured by real property or an estate for years.  These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation.

15.2    Trustor waives all rights and defenses that Trustor may have because the debtor's debt is secured by real property.  This means, among other things:

15.2.1 Beneficiary may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

15.2.2 If Beneficiary forecloses on any real property collateral pledged by the debtor:

(a)     The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(b)     Beneficiary may collect from Trustor even if the Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

15.3    Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise.

3803735_1

5

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

16.  <u>Due on Sale and Encumbrance</u>.  The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion.  Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable.   If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

17.  <u>Insurance</u>.

17.1  <u>Liability Insurance</u>.  Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is an encumbrance (the "***Property***") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

6

3803735_1

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

17.2    Property Insurance.  Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

17.3    Insurance Policies.  Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 17. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 17.

18.    Remedies.  Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

19.    Appointment of Receiver.

19.1    Appointment of Receiver.  In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure

7

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

19.2    Reimbursement of Advances.

19.2.1  Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

19.2.2  In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

19.3    Possession and Operation of Properties.  Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Crestlloyd, LLC,
a California limited liability company

By: _____
Name: NILE NIAMI
Title: MGR

3803735_1

8

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
                             )
County of Los Angeles        )

On 09/18, 2019, before me, *Nigel Gibbs*_____, a Notary Public, personally appeared ___*Nile Niami*___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

_____
Notary Public                                    (seal)

3803735_1

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

# REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

  The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____    MAIL RECONVEYANCE TO:

By: _____    _____
Name: _____    _____
Title: _____    _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

3803735_1

RECORDER MEMO: This COPY has not been QUALITY ASSURED.

## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

(Property commonly known as: 944 Airole Way, Los Angeles, CA 90077)

3803735_1

# EXHIBIT O



**This page is part of your document - DO NOT DISCARD**

## 20191154393





**Pages:**
**0008**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/28/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 46.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 121.00 |



**L E A D S H E E T**



201910280240036

.00017360572



010238947

**SEQ:**
**14**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72



**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**
117408-994-LT2



Recording Requested By                    )
and When Recorded Mail To:                )
                                          )
WOLF, RIFKIN, SHAPIRO,                     )
SCHULMAN & RABKIN, LLP                     )
11400 West Olympic Blvd., 9th Floor       )
Los Angeles, California 90064-1582        )
Attention: Steven H. Zidell, Esq.          )

_____

                                    Space Above This Line For Recorder's Use

## FIFTH AMENDMENT OF NOTE AND DEED OF TRUST

This Fifth Amendment of Note and Deed of Trust (the "**Fifth Amendment**") is entered into as of October 22, 2019, by and between Marbella Construction, Inc., a California corporation ("**Marbella**"), and 1369 Londonderry Estate, LLC, a California limited liability company ("**Londonderry**") (together, "**Borrower**"), Crestlloyd, LLC, a California limited liability company ("**Crestlloyd**"), 10701 Bellagio Road, LLC, a California limited liability company ("**Bellagio**"), Carcassonne Fine Homes, LLC, a California limited liability company ("**Carcassonne**"), and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A.      Marbella executed a Deed of Trust dated April 1, 2018 (the "**Marbella Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on April 23, 2018, as Instrument No. 20180389830, Official Records of Los Angeles County, California ("**Official Records**").

B.      Londonderry executed a Deed of Trust dated April 1, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on April 23, 2018, as Instrument No. 20180389829, Official Records.

C.      Crestlloyd executed a Deed of Trust dated September 18, 2019 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on September 22, 2019 as Instrument No. 20190989746, Official Records.  The Marbella Deed of Trust, the Londonderry Deed of Trust and the Airole Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

D.      The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Five Million Two Hundred Thousand Dollars ($5,200,000.00).  The Loan is evidenced

*3*

by a Secured Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated April 20, 2018, made by Borrower in favor of Lender.

E.      Borrower and Lender executed an Amendment of Note and Deed of Trust dated January 20, 2019 (the "**First Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Five Million Four Hundred Twenty Nine Thousand Five Hundred Forty Seven and 38/100 Dollars ($5,429,547.38).

F.      Borrower and Lender executed a Second Amendment of Note and Deed of Trust dated March 20, 2019 (the "**Second Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Five Million Nine Hundred Sixty Four Thousand Four Hundred Seventeen and 52/100 Dollars ($5,704,417.52).

G.      Borrower and Lender executed a Third Amendment of Note and Deed of Trust dated June 13, 2019 (the "**Third Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Five Million Nine Hundred Sixty Four Thousand Two Hundred Two and 59/100 Dollars ($5,964,202.59).

H.      Borrower and Lender executed a Fourth Amendment of Note and Deed of Trust dated September 18, 2019 (the "**Fourth Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Six Million One Hundred Ninety-six Thousand Eight Hundred Ten and 64/100 Dollars ($6,196,810.64).

I.      Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note, the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment and all other instruments that evidence and/or secure the Loan.

J.      Borrower and Lender wish to execute and record this Fifth Amendment to add additional collateral to the Loan.  The Original Note, as amended by the First Amendment, the Second Amendment, the Third Amendment, Fourth Amendment and this Fifth Amendment, is hereinafter referred to as the "**Note**".  The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Definitions.  Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Fifth Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.      Releases. Covenants Not to Litigate, Assignments and Indemnification.  As of the date of this Fifth Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

- 2 -

3843269 1

2.1    Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term **"Released Parties"** shall be defined as Lender and its respective members, managers, officers, directors, shareholders, representatives, employees, agents and attorneys) of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Fifth Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the **"Released Claims"**);

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

3.    <u>Continuing Security</u>. The Deed of Trust, as modified by the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment and this Fifth Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by this Fifth Amendment, and all other indebtedness and obligations secured by the Deed of Trust. Except as expressly modified by the First Amendment, the Second Amendment, the Third Amendment, the Fourth Amendment and this Fifth Amendment, the Deed of Trust shall remain in full force and effect, and this Fifth Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust.

4.    <u>Additional Security (Bellagio)</u>. As additional security for the Note, concurrently herewith, Bellagio agrees to execute and acknowledge a Deed of Trust and Assignment of Rents, in a form satisfactory to Lender in Lender's sole and absolute discretion, encumbering certain property located in the City of Los Angeles, commonly known as 10701 Bellagio Road,

- 3 -

3843269 1



Los Angeles, CA 90077, as more particularly described therein (the "**Bellagio Deed of Trust**"). Upon execution of this Fifth Amendment, the term Deed of Trust shall also include the Bellagio Deed of Trust.

5.    Additional Security (Carcassonne).    As additional security for the Note, concurrently herewith, Carcassonne agrees to execute and acknowledge a Deed of Trust and Assignment of Rents, in a form satisfactory to Lender in Lender's sole and absolute discretion, encumbering certain property located in the City of Los Angeles, commonly known as 627 N. Carcassonne, Los Angeles, CA 90077, as more particularly described therein (the "**Carcassonne Deed of Trust**"). Upon execution of this Fifth Amendment, the term Deed of Trust shall also include the Carcassonne Deed of Trust.

6.    No Other Modifications.    Except as modified expressly or by necessary implication hereby and by this Fifth Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect. To the extent the provisions of this Fifth Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Fifth Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.    Successors and Assigns.    All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on the following page]*

- 4 -

3843269.1

6

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

**BORROWER:**

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

**LENDER:**

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
    Joseph Englanoff, Trustee

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
    Nile Niami, President

**CRESTLLOYD:**

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

**CARCASSONNE:**

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

**BELLAGIO:**

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

3843269.1

- 5 -

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )
                             )
County of Los Angeles        )

On __10/ 23_____, 2019, before me, _Nigel Gibbs_____, a Notary Public, personally appeared _Nile Niami_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

_____
Notary Public                                          (seal)

3843269.1

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF _Los ANGELES_        )

On _October 24_, 2019 before me, _Steven H. Zidell_, a Notary
Public, personally appeared _Joseph Englanoff_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> STEVEN H. ZIDELL
> Notary Public · California
> Los Angeles County
> Commission # 2241601
> My Comm. Expires Jun 6, 2022

F:\SHZ\Misc\NOTARY ACKNOWLEDGMENT.DOCX

# EXHIBIT P



**This page is part of your document - DO NOT DISCARD**

## 20191154392







**Pages:**
**0013**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/28/19 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 80.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| SB2: | | 150.00 |
| PAID: | | 230.00 |



**L E A D S H E E T**



201910280240036

00017360571



010238947

**SEQ:**
**13**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION
119418-994-LT2



10/28/2019

*20191154392*

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

## DEED OF TRUST AND ASSIGNMENT OF RENTS

APN No. 4362-003-043

**This Deed of Trust,** made as of October 22, 2019, between Carcassonne Fine Homes, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, commonly known as 627 N. Carcassonne, Los Angeles, CA 90077, as more particularly described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

       1.      Performance of each agreement of Trustor incorporated by reference or contained herein;

       2.      Payment of the indebtedness evidenced by one promissory note executed by 1369 Londonderry Estate, LLC, a California limited liability company, and Marbella Construction, Inc., a California corporation, in favor of Beneficiary or order, as amended by that certain Amendment of Note and Deed of Trust executed as of January 20, 2019, that certain Second Amendment of Note and Deed of Trust executed as of March 20, 2019, that certain Third Amendment of Note and Deed of Trust executed as of June 13, 2019, that certain Fourth Amendment of Note and Deed of Trust executed as of September 18, 2019, and as further amended as of even date herewith, and any extension or renewal thereof, in the principal sum of $6,196,810.64 (as amended, the "**Note**");

3.      Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

4.      Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

1.      To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2.      To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.      To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

4.      To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien

3845278.1                           - 2 -

4

which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5.      To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

6.      That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7.      That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8.      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9.      That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

10.     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure

3845278.1                                    - 3 -

*5*

or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

11.    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

12.    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

13.    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Non-Order Search                          Page 5 of 13                    Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2019 01154392



14.    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

15.    <u>Waiver by Trustor</u>.

15.1    Trustor waives all of the following:

15.1.1 Trustor's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to a guarantor or other surety by reason of Sections 2787 to 2855, inclusive of the California Civil Code, including but not limited to any right Trustor may otherwise have to require Beneficiary to proceed directly against Borrower prior to seeking recovery against Property encumbered hereby.

15.1.2 Any rights or defenses Trustor may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor.

15.1.3 Any rights or defenses Trustor may have because the principal's note or other obligation is secured by real property or an estate for years. These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation.

15.2    Trustor waives all rights and defenses that Trustor may have because the debtor's debt is secured by real property. This means, among other things:

15.2.1 Beneficiary may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

15.2.2 If Beneficiary forecloses on any real property collateral pledged by the debtor:

(a)    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(b)    Beneficiary may collect from Trustor even if the Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Non-Order Search                              Page 6 of 13                    Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2019 01154392

15.3    Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise.

16.    Due on Sale and Encumbrance. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

17.    Insurance.

17.1    Liability Insurance. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily

Non-Order Search                    Page 7 of 13                    Requested By: choffman, Printed: 7/22/2022 12:23 PM
Doc: CALOSA:2019 01154392

injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is an encumbrance (the "***Property***") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

      17.2   Property Insurance.  Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

      17.3   Insurance Policies.  Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 17. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 17.

      18.   Remedies.  Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

3845278.1                                        - 7 -

19.    Appointment of Receiver.

    19.1    Appointment of Receiver.    In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

    19.2    Reimbursement of Advances.

        19.2.1    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

        19.2.2    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

    19.3    Possession and Operation of Properties.    Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

    **The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

3845278.1                                          - 8 -

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Carcassonne Fine Homes, LLC,
a California limited liability company

By: _____
~~Nile Niami~~, Manager

3845278.1                                    - 9 -

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California           )
                                 )
County of Los Angeles     )

On _10/23_, 2019, before me, _Nigel Gibbs_____, a Notary Public, personally appeared ___Nile Niami_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NIGEL GIBBS
Notary Public · California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

_____
Notary Public

(seal)

3845278.1



## REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid:

To [                    Title], Trustee                    Dated _____

   The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____        MAIL RECONVEYANCE TO:

By: _____        _____
Name: _____        _____
Title: _____        _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

3845278.1



## EXHIBIT A

### LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

THAT PORTION OF LOTS 7 AND 9 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY DESCRIBED AS FOLLOWS:

PARCEL 1 AS DESCRIBED IN THE CERTIFICATE OF COMPLIANCE RECORDED MAY 9, 2012 AS INSTRUMENT NUMBER 2012-696783, OF OFFICIAL RECORDS IN THE RECORDER'S OFFICE OF THE COUNTY LOS ANGELES, STATE OF CALIFORNIA

EXCEPTING THAT PORTION LYING SOUTHERLY OF THE FOLLOWING DESCRIBED LINE

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF SAID PARCEL 1, DISTANT SOUTH 40° 49' 30" EAST 126.00 FEET FROM THE WESTERLY MOST CORNER OF PARCEL 1; SAID CORNER BEING ALSO THE WESTERLY MOST CORNER OF LOT 9 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE NORTH 61° 16' 30" EAST 358.35 FEET TO A POINT IN THE WESTERLY RIGHT OF WAY OF CARCASSONNE ROAD, SAID POINT BEING DISTANT 103.50 FEET SOUTHERLY, ALONG SAID RIGHT OF WAY, FROM THE INTERSECTION WITH THE EASTERLY PROLONGATION OF THE NORTHWESTERLY LINE OF PARCEL 1, HAVING A BEARING OF NORTH 64° 12' 12" EAST.
SAID LAND IS ALSO SHOWN AS PARCEL 1 IN THE CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT RECORDED SEPTEMBER 24, 2015 AS INSTRUMENT NO. 20151182271, OF OFFICIAL RECORDS.

APN: 4362-003-043

(Property commonly known as: 627 N. Carcassonne, Los Angeles, CA)

3845278.1



**This page is part of your document - DO NOT DISCARD**



## 20191154391



**Pages:**
**0013**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/28/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 80.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 230.00 |



**L E A D S H E E T**



201910280240036

**00017360570**



010238947

**SEQ:**
**12**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72



CHICAGO TITLE COMPANY
COMMERCIAL DIVISION
108674-994-LT2



10/28/2019

*20191154391*

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

---

### DEED OF TRUST AND ASSIGNMENT OF RENTS

APN No. 4362-003-044

    **This Deed of Trust,** made as of October 22, 2019, between 10701 Bellagio Road, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

    Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, commonly known as 10701 Bellagio Road, Los Angeles, CA 90077, as more particularly described as:

### SEE EXHIBIT A ATTACHED HERETO,

    **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

    **For the Purpose of Securing:**

        1.    Performance of each agreement of Trustor incorporated by reference or contained herein;

        2.    Payment of the indebtedness evidenced by one promissory note executed by 1369 Londonderry Estate, LLC, a California limited liability company, and Marbella Construction, Inc., a California corporation, in favor of Beneficiary or order, as amended by that certain Amendment of Note and Deed of Trust executed as of January 20, 2019, that certain Second Amendment of Note and Deed of Trust executed as of March 20, 2019, that certain Third Amendment of Note and Deed of Trust executed as of June 13, 2019, that certain Fourth Amendment of Note and Deed of Trust executed as of September 18, 2019 and as further amended as of even date herewith, and any extension or renewal thereof, in the principal sum of $6,196,810.64 (as amended, the **"Note"**);

3.    Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

4.    Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

1.    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

2.    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

4.    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien

3845273.1

- 2 -

4

which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5.      To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

6.      That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

7.      That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

8.      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

9.      That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

10.     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure

- 3 -

3845273.1

5

or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

11.     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

12.     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

13.     That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

- 4 -

3845273.1



14.    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

15.    <u>Waiver by Trustor.</u>

15.1    Trustor waives all of the following:

15.1.1 Trustor's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to a guarantor or other surety by reason of Sections 2787 to 2855, inclusive of the California Civil Code, including but not limited to any right Trustor may otherwise have to require Beneficiary to proceed directly against Borrower prior to seeking recovery against Property encumbered hereby.

15.1.2 Any rights or defenses Trustor may have in respect of his or her obligations as a guarantor or other surety by reason of any election of remedies by the creditor.

15.1.3 Any rights or defenses Trustor may have because the principal's note or other obligation is secured by real property or an estate for years.  These rights or defenses include, but are not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure to the principal's note or other obligation.

15.2    Trustor waives all rights and defenses that Trustor may have because the debtor's debt is secured by real property.  This means, among other things:

15.2.1 Beneficiary may collect from Trustor without first foreclosing on any real or personal property collateral pledged by the debtor.

15.2.2 If Beneficiary forecloses on any real property collateral pledged by the debtor:

(a)    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(b)    Beneficiary may collect from Trustor even if the Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from the debtor.

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

3845273.1

- 5 -

*9*

15.3    Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise.

16.    <u>Due on Sale and Encumbrance</u>.  The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

> "Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion.  Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable.   If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.
>
> Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

17.    <u>Insurance</u>.

17.1    <u>Liability Insurance</u>.  Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability

- 6 -

3845273.1

arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is an encumbrance (the "**Property**") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

17.2    Property Insurance.    Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

17.3    Insurance Policies.    Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 17. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 17.

18.    Remedies.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

- 7 -

19.    Appointment of Receiver.

19.1    Appointment of Receiver.  In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

19.2    Reimbursement of Advances.

19.2.1  Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

19.2.2  In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

19.3    Possession and Operation of Properties.  Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

- 8 -

3845273.1

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

10701 Bellagio Road, LLC,
a California limited liability company

By: _____

Nile Niami, Manager

- 9 -

3845273.1

> A notary public or other officer completing this certificate
> verifies only the identity of the individual who signed the
> document to which this certificate is attached, and not the
> truthfulness, accuracy, or validity of that document.

State of California )

County of Los Angeles )

On _10/23_, 2019, before me, _Nigel Cubbs_____, a Notary Public, personally
appeared __Nile Niami_____, who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

_____
Notary Public

(seal)

3845273.1

## REQUEST FOR FULL RECONVEYANCE

To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

      The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____          MAIL RECONVEYANCE TO:

By: _____          _____
Name: _____          _____
Title: _____          _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

3845273.1



## EXHIBIT A

### LEGAL DESCRIPTION

THAT PORTION OF LOTS 9 AND 10 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK. 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY DESCRIBED AS FOLLOWS:

PARCEL 1 AS DESCRIBED IN THE CERTIFICATE OF COMPLIANCE RECORDED MAY 9, 2012 AS INSTRUMENT NUMBER 2012-696783, OF OFFICIAL RECORDS IN THE RECORDER'S OFFICE OF THE COUNTY LOS ANGELES, STATE OF CALIFORNIA

EXCEPTING THAT PORTION LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE

BEGINNING AT A POINT IN THE SOUTHWESTERLY LINE OF SAID PARCEL 1, DISTANT SOUTH 40° 49' 30" EAST 126.00 FEET FROM THE WESTERLY MOST CORNER OF PARCEL 1; SAID CORNER BEING ALSO THE WESTERLY MOST CORNER OF LOT 9 IN BLOCK 6 OF TRACT NO. 7656, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, RECORDED IN BOOK 119 PAGES 70 TO 76, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE NORTH 61° 16' 30" EAST 358.35 FEET TO A POINT IN THE WESTERLY RIGHT OF WAY OF CARCASSONNE ROAD, SAID POINT BEING DISTANT 103.50 FEET SOUTHERLY, ALONG SAID RIGHT OF WAY, FROM THE INTERSECTION WITH THE EASTERLY PROLONGATION OF THE NORTHWESTERLY LINE OF PARCEL 1, HAVING A BEARING OF NORTH 64° 12' 12° EAST.

SAID LAND IS ALSO SHOWN AS PARCEL 2 IN THE CERTIFICATE OF COMPLIANCE FOR LOT LINE ADJUSTMENT RECORDED SEPTEMBER 24, 2015 AS INSTRUMENT NO. 20151182272, OF OFFICIAL RECORDS.

APN: 4362-003-044

(Property commonly known as: 10701 Bellagio Road, Los Angeles, CA 90077)

3845273.1

# EXHIBIT Q

CONSTRUCTION LOAN AGREEMENT

BETWEEN

CRESTLLOYD, LLC,
A CALIFORNIA LIMITED LIABILITY COMPANY,
AS BORROWER

AND

HANKEY CAPITAL, LLC,
A CALIFORNIA LIMITED LIABILITY COMPANY,
AS LENDER

EXECUTED AS OF OCTOBER 25, 2018

CONSTRUCTION LOAN AGREEMENT

THIS CONSTRUCTION LOAN AGREEMENT ("Agreement") is executed as of October 25, 2018 by and between CRESTLLOYD, LLC, a California limited liability company (the "Borrower"), and HANKEY CAPITAL, LLC, a California limited liability company ("Lender").

RECITALS

A. Borrower owns or will own certain real property described in EXHIBIT A hereto ("Property").

B. Borrower proposes to construct new improvements or renovate existing improvements on the Property consisting of: a single family residence, together with all appurtenances, fixtures, and tenant improvements now or hereafter located on the Property ("Improvements"). The Improvements shall be constructed in accordance with plans and specifications which Borrower has heretofore, or will hereafter deliver to Lender, as amended in order to comply with the terms and conditions of this Agreement ("Plans and Specifications"). Borrower has requested from Lender a loan for the purpose of such construction.

NOW, THEREFORE, Borrower and Lender agree as follows:

ARTICLE 1. DEFINITIONS

1.1. Defined Terms. The following capitalized terms generally used in this Agreement shall have the meanings defined or referenced below. Certain other capitalized terms used only in specific sections of this Agreement are defined in such sections.

1

"Account" - means an account with Bank, account number _____, in the name of Borrower or Borrower's designee into which Loan proceeds will be deposited.

"ADA" - means the Americans with Disabilities Act, 42 U.S.C. Section 12101, et seq. as now or hereafter amended or modified.

"Affiliate" - means, as to any person or entity, any person or entity which, directly or indirectly, controls, is controlled by or is under common control with, or which has the power to control the management or operations of, such person or entity.

"Bank" - means _____.

"Bankruptcy Code" - means the Bankruptcy Reform Act of 1978 (11 U.S.C. Section 101-1330) as now or hereafter amended or recodified.

"Bonded Work" - shall have the meaning ascribed to such term in Section 8.1.

"Border Zone Property" - means any property designated as "border zone property" under the provisions of California Health and Safety Code, Sections 25220 et seq., or any regulation adopted in accordance therewith.

"Borrower" - means CRESTLLOYD, LLC, a California limited liability company.

"Borrower's Funds" - means all funds of Borrower deposited with Lender into the Borrower's Funds Account maintained with Bank pursuant to the terms and conditions of this Agreement.

"Borrower's Funds Account" - means the account with Bank into which all funds deposited with Lender pursuant to this Agreement shall be placed.

"Business Day" - means a day of the week (but not a Saturday, Sunday or holiday) on which the offices of Bank are open to the public for carrying on substantially all of Bank's business functions. Unless specifically referenced in this Agreement as a Business Day, all references to "days" shall be to calendar days.

"Certificate of Approval" - means a certificate in the form of EXHIBIT F.

"Completion Date" - means the date upon which Borrower satisfies the last of the conditions for the release of the Retention, as provided in Paragraph C of EXHIBIT D, currently estimated to be _____, the date by which construction of the Improvements must be complete, subject to extension pursuant to change orders approved by Lender as provided herein or pursuant to the provisions of Section 4.3.

"Construction Agreements" - means those certain agreements to construct the Improvements by and between Borrower (in its capacity as the builder) and various contractors.

2

"Contractors" - means various contractors which have executed Construction Agreements for construction of the Improvements.

"Deed of Trust" - means that certain Deed of Trust and Fixture Filing with Assignment of Leases and Rents, of even date herewith executed by Borrower, as Trustor, to Chicago Title Company, as Trustee, for the benefit of Lender, as Beneficiary, as hereafter amended, supplemented, replaced or modified.

"Deemed Approval Matter" - means any matter requiring the consent of Lender under the Loan Documents including, without limitation, the following: (1) contracts for which Lender approval is required hereunder, as contemplated in Sections 4.4 and 4.5, (2) Plans and Specifications and changes thereto for which Lender approval is required hereunder, as contemplated in Section 4.6, (3) Borrower's contracting for any materials, furnishings, equipment, fixtures or other parts or components of the Improvements in which any third party will retain any interest for which Lender approval is required hereunder, as contemplated in Section 4.8, (4) the inclusion of the Property in any assessment district or community facilities district for which Lender approval is required hereunder, as contemplated in Section 4.11, (5) formation and authorization documents of Borrower, and modifications thereto, for which Lender approval is required hereunder, as contemplated in Sections 6.3 and 9.10, (6) the issuance of any Set Aside Letter for which Lender approval is required hereunder, as contemplated in Section 8.1; (7) leases and leasing parameters for which Lender approval is required hereunder, as contemplated in Section 9.4, (8) any Subdivision Map for which Lender approval is required hereunder, as contemplated in Section 9.6, (9) assignment of all or any portion of Borrower's interest under the Loan documents or any moneys due or to become due thereunder for which Lender approval is required hereunder, as contemplated in Section 9.8, and (10) agreements providing for the management, leasing or operation of the Property or Improvements for which Lender approval is required hereunder, as contemplated in Section 9.9.

"Default" - shall have the meaning ascribed to such term in Section 11.1.

"Disbursement Budget" - means the design and construction budget for the Improvements, as approved by Lender from time to time.

"Distribution" - means any transfer of cash or other property from Borrower to any constituent member or statutory manager thereof, whether characterized as a distribution, dividend, redemption, fee, repayment of a loan or otherwise, but excluding the payment of any fees, commissions or expenses pursuant to the Development and Management Agreements prior to the date that Lender requires Borrower to terminate the Development and Management Agreements under the provisions of Section 11.6 and following the date of any reinstatement of any terminated Development and Management Agreements under the provisions of Section 11.6.

3

"Effective Date" - means the date the Deed of Trust is recorded in the Office of the County Recorder of the county where the Property is located.

"Environmental Report" - means the reports actually received by Lender as contemplated in Section 3.1(d) of this Agreement.

"Hazardous Materials" - shall have the meaning ascribed to such term in Section 7.1(a).

"Hazardous Materials Claims" - shall have the meaning ascribed to such term in Section 7.1(c).

"Hazardous Materials Laws" - shall have the meaning ascribed to such term in Section 7.1(b).

"Improvements" - shall have the meaning ascribed to such term in Recital B.

"Lender" - means Hankey Capital, LLC, a California limited liability company.

"Lender Payment Turnaround Period" - means, provided that Borrower delivers the applicable application for payment to Lender under cover of a written notice stating in bold, all-capitalized letters what the outside date for such Lender Payment Turnaround Period is for that specific application for payment, ten (10) calendar days.

"Loan" - means the principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: EIGHTY TWO MILLION, FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($82,500,000.00).

"Loan Documents" - means those documents, as hereafter amended, supplemented, replaced or modified, properly executed and in recordable form, if necessary, listed in EXHIBIT B as Loan Documents.

"Maturity Date" – October 31, 2020.

"Note" - means that certain Promissory Note of even date herewith, in the original principal amount of the Loan, executed by Borrower and payable to the order of Lender, as hereafter amended, supplemented, replaced or modified.

"Obligee" - shall have the meaning ascribed to such term in Section 8.1.

"Other Borrower Loan Documents" - means those documents, as hereafter amended, supplemented, replaced or modified from time to time, properly executed and in recordable form, if necessary, listed in EXHIBIT B as "Other Borrower Loan Documents."

4

"Other Related Documents" - means those documents, as hereafter amended, supplemented, replaced or modified from time to time, properly executed and in recordable form, if necessary, listed in EXHIBIT B as Other Related Documents.

"Out of Balance Notice" - shall have the meaning ascribed to such term in Section 3.1(b).

"Plans and Specifications" - shall have the meaning ascribed to such term in Recital B.

"Principal Subs" - shall have the meaning ascribed to such term in Section 4.7.

"Project Entitlements" - means the Los Angeles Department of Building and Safety Permit Nos. _____.

"Property" - shall have the meaning ascribed to such term in Recital A.

"Secured Obligations" - shall have the meaning ascribed to such term in the Deed of Trust.

"Set Aside Letter" - shall have the meaning ascribed to such term in Section 8.1.

"Subdivision Map" - shall have the meaning ascribed to such term in Section 9.6.

"Surety" - shall have the meaning ascribed to such term in Section 8.1.

"Title Policy" - means the ALTA Lender's Policy of Title Insurance as issued by First American Title Company, together with such special endorsements as Lender may require thereto, including, without limitation, forms CLTA 100 (making particular reference to any easement or encroachment listed in the Title Policy), 116, 116.1 (survey), 102.7 (foundation), 103.7 (modified to insure access to a physically open public street sufficient to provide vehicular and pedestrian ingress and egress), 111.5 (variable interest rate), 129-06 (separate tax parcel), 122.4 (advances), 137.1-06, and such other special endorsements as Lender may require.

"Working Capital" - means all proceeds of the Loan disbursed by Lender into the Working Capital Reserve Account maintained with Bank pursuant to the terms and conditions of this Agreement.

"Working Capital Reserve Account" - means the account with Bank into which all funds disbursed as Working Capital by Lender pursuant to this Agreement shall be placed.

1.2. Exhibits Incorporated. EXHIBITS A, B, C, D, E, F and G, all attached hereto, are hereby incorporated into this Agreement.

5

## ARTICLE 2. LOAN

2.1. **Loan.** By and subject to the terms of this Agreement, Lender agrees to lend to Borrower and Borrower agrees to borrow from Lender the principal sum of EIGHTY-TWO MILLION, FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($82,500,000.00), said sum to be evidenced by the Note of even date herewith. The Note shall be secured, in part, by the Deed of Trust, of even date herewith, encumbering certain real property and improvements as legally defined therein. Amounts disbursed to or on behalf of Borrower pursuant to the Note shall be used to purchase and finance the construction of the Property and Improvements and for such other purposes and uses as may be permitted under this Agreement and the other Loan Documents.

2.2. **Loan Documents.** Borrower shall deliver to Lender concurrently with this Agreement each of the documents, properly executed and in recordable form, as applicable, described in EXHIBIT B as Loan Documents, together with those documents described in EXHIBIT B as Other Related Documents. Notwithstanding anything to the contrary contained elsewhere within this Agreement, the lien of the Deed of Trust shall not secure any obligation under any of the Loan Documents that are designated on EXHIBIT B as not being secured by liens upon real property.

2.3. **Effective Date.** The date of the Loan Documents is for reference purposes only. The Effective Date of delivery and transfer to Lender of the security under the Loan Documents and of Borrower's and Lender's obligations under the Loan Documents shall be the date the Deed of Trust is recorded in the Office of the County Recorder of the county where the Property is located.

2.4. **Maturity Date; Prepayment.** Upon the Maturity Date, all sums due and owing under this Agreement and the other Loan Documents shall be repaid in full. All payments due to Lender under this Agreement, whether at the Maturity Date or otherwise, shall be paid in immediately available funds. Amounts owing under the Note may be prepaid by Borrower, in whole or in part, at any time, without premium or penalty.

2.5. **Credit for Principal Payments.** Any payment made upon the outstanding principal balance of the Loan shall be credited as of the Business Day received, provided such payment is received by Lender no later than 11:00 a.m. Pacific Time) and constitutes immediately available funds. Any principal payment received after said time or which does not constitute immediately available funds shall be credited upon such funds having become unconditionally and immediately available to Lender.

2.6. **Full Repayment and Reconveyance.** Upon receipt of all sums owing and outstanding under the Loan Documents, Lender shall issue a full reconveyance of the Property and Improvements from the lien of the Deed of Trust and otherwise release Lender's security interest in all other personal property collateral that secure the Loan; provided, however, that all of the following conditions shall be satisfied at the time of,

6

and with respect to, such reconveyance: (a) Lender shall have received all escrow, closing and recording costs, the costs of preparing and delivering such reconveyance and any sums then due and payable under the Loan Documents, and (b) Lender shall have received a written release satisfactory to Lender of any set aside letter, letter of credit or other form of undertaking which Lender has issued to any surety, governmental agency or any other party in connection with the Loan and/or the Property and Improvements. Lender's obligation to make further disbursements under the Loan shall terminate as to any portion of the Loan undisbursed as of the date of issuance of such full release or reconveyance, and any commitment of Lender to lend any undisbursed portion of the Loan shall be canceled.

2.7. **Lender Profit Participation.** If, at any time, during the term of the Loan or following repayment of the Loan, the Property is sold for a purchase price in excess of $200,000,000, Lender shall be entitled to a Lender Profit Participation Payment in the amount of $3,500,000. The Lender Profit Participation Payment shall be collected at the close of the sale of the Property. Contemporaneous with this Agreement, Borrower and Lender shall enter into a Profit Participation Agreement memorializing the parties' agreement with respect to the Lender Profit Participation Payment, and upon the closing of the Loan, Lender shall record a Memorandum of Agreement in the Official Records of the County Recorder of Los Angeles County, California, evidencing the existence of the Profit Participation Agreement.

## ARTICLE 3. DISBURSEMENT

3.1. **Conditions Precedent.** Lender's obligation to make any disbursements or take any other action under the Loan Documents shall be subject at all times to satisfaction of each of the following conditions precedent:

(a) There shall exist no Default, as defined in this Agreement, Default as defined in any of the other Loan Documents, event, omission or failure of condition which would constitute a Default after notice or lapse of time, or both, or default by Borrower (following any applicable notice and cure period) under any of the Other Related Documents, except to the extent that such event, omission or failure (i) is of a nature that it could ripen into a monetary Default, and that event, omission or failure will be cured by the requested disbursement or with funds that Borrower is then attempting to raise during the 60-day cure period set forth in the provisions of the final paragraph of Section 11.1, or (ii) is of a nature that it could ripen into a non-monetary Default, such event, omission or failure is curable, and Borrower is then diligently prosecuting such cure to completion within the applicable cure period; and

(b) Any undisbursed Loan funds together with all sums, if any, to be provided by Borrower, shall be at all times equal to or greater than the amount which Lender from time to time reasonably determines necessary to: (i) pay, through completion, all costs of renovation, development, construction, operation, marketing and sale or leasing of the Property and Improvements in accordance with the Loan Documents; (ii) pay all sums which may accrue under the Loan Documents prior to repayment of the Loan; and (iii)

7

enable Borrower to perform and satisfy all of the covenants of Borrower contained in the Loan Documents. If Lender reasonably determines at any time that the undisbursed Loan funds are insufficient for said purposes, Lender may deliver to Borrower written notice demanding that Borrower then deposit funds equal to such deficiency in the Borrower's Funds Account (an "Out of Balance Notice"), in which event Borrower shall deposit the amount of such deficiency in the Borrower's Funds Account within thirty (30) days after the date of delivery of the applicable Out of Balance Notice; and

(c) Lender shall have received all Loan Documents, other documents, instruments, policies, and forms of evidence or other materials requested by Lender under the terms of this Agreement or any of the other Loan Documents, including, without limitation, such forms of estoppel certificates and subordination, non-disturbance and attornment agreements as Lender may then require from existing tenants of the Property; and

(d) Lender acknowledges that it has received and approved in form and substance satisfactory to Lender: (i) a soils report for the Property and Improvements; (ii) an environmental questionnaire and environmental site assessment with respect to the presence, if any, of Hazardous Materials on the Property and Improvements; (iii) two sets of the Plans and Specifications (or if the Plans and Specifications for the entirety of the Improvements are not then complete or some portion of the Improvements are to be constructed using a design/build process, in either such case pursuant to partial Plans and Specifications approved by Lender under the provisions of Section 4.6 of this Agreement and for which a valid building permit has been issued, then such portion of the Plans and Specifications to the extent that payment for such portion of the Improvements is to be covered by a current disbursement request), together with evidence of all necessary or appropriate approvals of governmental agencies; (iv) copies of all agreements which are material to completion of the Improvements; (v) copies of all building permits and similar permits, licenses, approvals, development agreements and other authorizations of governmental agencies required in connection with the development of the Property and Improvements, or, if such approvals are to be issued on a staged basis, then for the current and all prior stages of development, provided that such staged development has been approved by Lender, as contemplated in Section 4.6; and (vi) copies of any initial study, negative declaration, mitigated negative declaration, environmental impact report, notice of determination or notice of exemption prepared, adopted, certified or filed by any governmental agency in connection with the Property; and

(e) Lender shall have received and approved the Disbursement Budget.

3.2. Account, Pledge and Assignment, and Disbursement Authorization. The proceeds of the Loan and Borrower's Funds, when qualified for disbursement, shall be deposited into an account to be designated by Borrower or otherwise disbursed to or for the benefit or account of Borrower under the terms of this Agreement. Disbursements hereunder may be made by Lender upon the written request of any person who has been authorized by

8

Borrower to request such disbursements until such time as written notice of Borrower's revocation of such authority is received by Lender at the address shown in EXHIBIT D.

3.3. Borrower's Funds Account, Pledge and Assignment. Except as otherwise provided in this Agreement, all of the Borrower's Funds which are deposited with Lender by Borrower as shown in EXHIBIT C, or any other provision of the Loan Documents, shall be placed in the Borrower's Funds Account for disbursement under this Agreement. As additional security for Borrower's performance under the Loan Documents, Borrower hereby irrevocably pledges and assigns to Lender the Borrower's Funds Account and all monies at any time deposited in the Borrower's Funds Account.

3.4. Loan Disbursements. Subject to the conditions set forth in Section 3.1(b), the proceeds of the Loan and Borrower's Funds shall be disbursed in accordance with the terms and conditions of EXHIBIT D. Disbursements made after the deposit of Borrower's Funds shall be made first from the Borrower's Funds Account until depleted. All disbursements shall be held by Borrower in trust and applied by Borrower solely for the purposes for which the funds have been disbursed. Lender has no obligation to monitor or determine Borrower's use or application of the disbursements. Partial disbursements shall be permitted under the terms and subject to the conditions set forth in EXHIBIT D.

3.5. Working Capital. From time to time, in Borrower's Applications for Payment, Borrower may request the disbursement of proceeds of the Loan and Borrower's Funds into the Working Capital Reserve Account to maintain the balance of the Working Capital Reserve Account at the amount specified in the Disbursement Budget, provided that amounts in the Working Capital Reserve Account may only be used to pay reasonable costs of the design or construction of the Improvements, and that Borrower shall have delivered the monthly reports with respect to the Working Capital Reserve Account that are required under the provisions of Section 10.1 of this Agreement for all prior months. As additional security for Borrower's performance under the Loan Documents, Borrower hereby irrevocably pledges and assigns to Lender the Working Capital Reserve Account and all monies at any time deposited in the Working Capital Reserve Account.

3.6. Interest Reserve.  Interest charged on the Loan shall be applied monthly from an interest reserve account to be maintained by the Lender, in accordance with the budget approved by the Lender. Borrower shall make timely payments of monthly interest upon depletion of the interest reserve maintained by the Lender.

## ARTICLE 4. CONSTRUCTION

4.1. Commencement and Completion. Borrower shall commence construction of the Improvements without delay after recordation of the Deed of Trust and shall complete construction of the Improvements on or before the Completion Date.

4.2. Commencement and Completion of Offsite Improvements. Borrower shall commence construction of any offsite improvements required by any governmental

9

authority to be performed by Borrower under any Project Entitlements in connection with the construction of the Improvements without delay after recordation of the Deed of Trust and shall complete construction of any such offsite improvements on or before the date required under the applicable Project Entitlements.

4.3. Force Majeure. The time within which construction of the Improvements must be completed shall be extended for a period of time equal to the period of any delay directly affecting construction which is caused by fire, earthquake or other acts of God, unexpected inclement weather, utility shortages or interruptions, strike, lockout, acts of public enemy, riot, insurrection, or governmental regulation of the sale or transportation of materials, supplies or labor, the failure of any governmental authority to issue any Project Entitlement for reasons beyond Borrower's reasonable control, the failure of any condition of approval on any Project Entitlement for any reason beyond Borrower's reasonable control, or any moratorium enacted by any governmental authority over Borrower's good faith opposition that prohibits, impairs, delays or restricts development of the Improvements; provided, however, that Borrower shall furnish Lender with written notice satisfactory to Lender evidencing any such delay within ten (10) days after the occurrence of any such delay. In no event shall the time the anticipated date for completion of the Improvements be extended beyond the Maturity Date or more than one hundred twenty (120) days beyond the Completion Date as scheduled prior to such delay.

4.4. Construction Agreements. Borrower and Contractors have entered into various Construction Agreements pursuant to the terms and conditions of which Contractors are to construct the Improvements. Borrower shall require each Contractor to perform in accordance with the terms of the Construction Agreements and shall not amend, modify or alter the Construction Agreements without Lender's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Borrower shall execute, upon Lender's request, an assignment of Borrower's rights under the Construction Agreements to Lender as security for Borrower's obligations under this Agreement and the other Loan Documents and shall cause the Contractors to consent to any such assignment.

4.5. [Deleted].

4.6. Plans and Specifications.

(a) Changes; Lender Consent. If the Plans and Specifications contemplate staged design and construction, and if Lender has approved Plans and Specifications that contemplate that certain stages will be designed in the future, then any stages of such Plans and Specifications that have not been approved by Lender as of the date of this Agreement shall be subject to Lender's prior written approval, which consent shall not be unreasonably withheld, conditioned or delayed. Except as otherwise provided in this Agreement, Borrower shall not make any changes in the Plans and Specifications or the Improvements without Lender's prior written consent if such change, taken together with all other changes for which Lender's approval was not required hereunder, could materially affect the overall quality or efficiency of the Improvements or the

10

Improvements' exterior, lobbies or building systems. Without limiting the above, Lender agrees that Borrower may make minor changes in the Plans and Specifications and Improvements without Lender's prior written consent, provided that such changes do not violate any of the conditions specified herein. Notwithstanding the foregoing, Lender shall not have any approval rights respecting any change in the Plans and Specifications or the Improvements if such change follows inevitably from previously approved Plans and Specifications or changes thereto. Borrower shall at all times maintain, for inspection by Lender, a set of working drawings of the Improvements, which, if there is staged design that has not yet occurred, if applicable, shall at least cover the portions of the Improvements completed and under construction or fully designed at such time.

(b) Changes; Submission Requirements. Borrower shall submit any proposed change in the Plans and Specifications requiring Lender's consent to Lender prior to the commencement of construction relating to such proposed change, at least ten (10) Business Days prior to the commencement of construction. Requests for any change which requires consent shall be accompanied by working drawings (or appropriate submittals) and a written description of the proposed change, submitted on a change order form acceptable to Lender, signed by Borrower and, if required by Lender, also by the Contractors. At its option, Lender may require Borrower to provide: (i) evidence satisfactory to Lender of the cost and time necessary to complete the proposed change; and (ii) a deposit in the amount of any increased costs into Borrower's Funds Account.

(c) Consent Process. Borrower acknowledges that Lender's review of any changes and required consent may result in delays in construction and hereby consents to any such delays. Nevertheless, Lender shall use commercially reasonable efforts to respond to requests for approval within the time periods provided in this Agreement. Lender shall not declare a Default under the terms of the Loan in the event the Default has been caused by a delay in Lender's approval.

(d) Final Plans and Specifications. Upon completion of the Improvements, Borrower shall deliver to Lender within sixty (60) days a set of final, as-built Plans and Specifications.

4.7. Contractor/Construction Information. Borrower shall deliver to Lender in a form acceptable to Lender: (a) a list detailing the name, address and phone number of each contractor, subcontractor and material supplier to be employed or used for construction of the Improvements who is under contract or otherwise has been selected to supply goods or services or perform work for the Project costing in excess of $5,000 in the aggregate and any other person or entity who delivers a Preliminary Notice to Owner or Lender under Civil Code Sections 3097 or 3098 (collectively, "Principal Subs") together with the dollar amount, including changes, if any, reflected in each contract and subcontract for the Principal Subs, and the portion thereof, if any, paid through the date of such list of Principle Subs; (b) copies of each contract and subcontract identified in such list of Principal Subs, including any changes thereto; (c) a cost breakdown of the projected total cost of constructing the Improvements, and that portion, if any, of each cost item which has been incurred; and (d) a construction progress schedule detailing the progress of

11

construction and the projected sequencing and completion time for uncompleted work, all as of the date of such schedule.

Borrower agrees that Lender's approval of any contractor, subcontractor or material supplier if and to the extent permitted under the terms of this Agreement shall not constitute a warranty or representation of qualification by Lender. Lender may contact any contractor, subcontractor or material supplier to discuss the course of construction.

4.8. Prohibited Contracts. Without Lender's prior written consent, Borrower shall not contract for any materials, furnishings, equipment, fixtures or other parts or components of the Improvements, if any third party shall retain any ownership interest (other than lien rights created by operation of law) in such items after their delivery to the Property and Improvements. Borrower shall have twenty (20) days to effect the removal of any such retained interest not otherwise permitted above, or, provided that such interest or the holder's realization thereon will not jeopardize Borrower's title to or use of the Property, if such retained interest cannot be reasonably removed in such period, Borrower shall have commenced such removal within such time and shall diligently pursue its removal until completed.

4.9. Liens and Stop Notices. If a claim of lien is recorded which affects the Property or Improvements or a bonded stop notice is served upon Lender, within twenty (20) calendar days after such recording or service or within five (5) Business Days after Lender's demand, whichever occurs first, Borrower, at Borrower's election, shall do one of the following: (a) pay and discharge the claim of lien or bonded stop notice; (b) effect the release thereof by recording or delivering to Lender a surety bond in sufficient form and amount; or (c) provide Lender with other assurances which Lender deems, in its sole discretion, to be satisfactory for the payment of such claim of lien or bonded stop notice and for the full and continuous protection of Lender from the effect of such lien or bonded stop notice.

4.10. Construction Responsibilities. Borrower shall construct the Improvements in a workmanlike manner substantially in accordance with the Plans and Specifications and the recommendations of any soils or engineering report approved by Lender pursuant to Section 3.1(d) above. Borrower shall substantially comply with all applicable laws, ordinances, rules, regulations, building restrictions, recorded covenants and restrictions, and requirements of all regulatory authorities having jurisdiction over the Property or Improvements. Borrower shall be solely responsible for all aspects of Borrower's business and conduct in connection with the Property and Improvements, including, without limitation, for the quality and suitability of the Plans and Specifications and their compliance with all governmental requirements, the supervision of the work of construction, the qualifications, financial condition and performance of all architects, engineers, contractors, material suppliers, consultants and property managers, and the accuracy of all applications for payment and the proper application of all disbursements. Lender is not obligated to supervise, inspect or inform Borrower or any third party of any aspect of the construction of the Improvements or any other matter referred to above.

12

4.11. Assessments and Community Facilities Districts. Without Lender's prior written consent, Borrower shall not cause or suffer to become effective or otherwise consent to the formation of any assessment district or community facilities district which includes all or any part of the Property and Improvements pursuant to: (a) the Mello-Roos Community Facilities Act of 1982; (b) the Municipal Improvement Act of 1913; or (c) any other comparable or similar statute or regulation. Nor shall Borrower cause or otherwise consent to the levying of special taxes or assessments against the Property and Improvements by any such assessment district or community facilities district.

4.12. Delay. Borrower shall promptly notify Lender in writing of any event causing delay or interruption of construction, or the timely completion of construction. The notice shall specify the particular work delayed, and the cause and period of each delay.

4.13. Inspections. Lender shall have the right to enter upon the Property at all reasonable times to inspect the Improvements and the construction work to verify information disclosed or required pursuant to this Agreement. Any inspection or review of the Improvements by Lender is solely to determine whether Borrower is properly discharging its obligations to Lender and may not be relied upon by Borrower or by any third party as a representation or warranty of compliance with this Agreement or any other agreement. Lender owes no duty of care to Borrower or any third party to protect against, or to inform Borrower or any third party of, any negligent, faulty, inadequate or defective design or construction of the Improvements as determined by Lender.

4.14. Surveys. Upon Lender's written request, Borrower shall promptly deliver to Lender: (a) a current survey of the Property showing the location of the Improvements on the Property (as constructed as of the date of such survey), all easements, encroachments and applicable governmental set backs; and (b) upon completion of the Improvements, an as-built survey acceptable to a title insurer for purposes of issuing an ALTA policy of title insurance. All such surveys shall be performed and certified by a licensed engineer or surveyor acceptable to the title insurer.

## ARTICLE 5. INSURANCE

Borrower shall, while any obligation of Borrower under any Loan Document remains outstanding, maintain at Borrower's sole expense, with licensed insurers approved by Lender, the following policies of insurance in form and substance satisfactory to Lender:

5.1. Title Insurance. A Title Policy insuring Lender, in the principal amount of the Loan, of the validity and the priority of the lien of the Deed of Trust upon the Property and Improvements, subject only to matters approved by Lender in writing. During the term of the Loan, Borrower shall deliver to Lender, within five (5) Business Days after Lender's written request, such other endorsements to the Title Policy as Lender may reasonably require.

5.2. Property Insurance. A Builders Risk Completed Value Hazard Insurance policy, including, without limitation, such endorsements as Lender may require, insuring Lender

13

against damage to the Property and Improvements in an amount acceptable to Lender. Lender shall be named on the policy under a Lender's Loss Payable Endorsement (form #438BFU or equivalent).

5.3. Flood Hazard Insurance. A policy of flood insurance, as required by applicable governmental regulations, or as deemed necessary by Lender.

5.4. Liability Insurance. A policy of commercial general liability insurance with limits as required by Lender, insuring against liability for injury and/or death to any person and/or damage to any property occurring on the Property and/or in the Improvements from any cause whatsoever.

5.5. General. Borrower shall provide to Lender the originals of all required insurance policies, or other evidence of insurance acceptable to Lender. All insurance policies shall provide that the insurance shall not be cancelable or materially changed without ten (10) days prior written notice to Lender. Lender shall be named under a Lender's Loss Payable Endorsement (form #438BFU or equivalent) on all insurance policies which Borrower actually maintains with respect to the Property and Improvements. Borrower shall provide to Lender evidence of any other hazard insurance Lender may deem necessary at any time during the Loan.

## ARTICLE 6. REPRESENTATIONS AND WARRANTIES

As a material inducement to Lender's entry into this Agreement, Borrower represents and warrants to Lender as of the Effective Date and as of the date each Application for Payment is submitted to Lender pursuant to EXHIBIT D (provided, however, that to the extent circumstances have changed for reasons beyond the reasonable control of Borrower such that Borrower must qualify such representations and warranties as of the date of delivery of any such Application for Payment, such qualification, to the extent it renders the applicable representation materially untrue or breaches the applicable warranty, shall merely be a failure of condition to Lender's obligation to disburse funds under the provisions of EXHIBIT D, as opposed to constituting an Event of Default) that:

6.1. Authority/Enforceability. Borrower is in substantial compliance with all laws and regulations applicable to its organization, existence and transaction of business and has all necessary rights and powers to own, develop and operate the Property and Improvements as contemplated by the Loan Documents.

6.2. Binding Obligations. Borrower is authorized to execute, deliver and perform its obligations under the Loan Documents and such obligations are and shall continue to be valid and binding obligations of Borrower.

6.3. Intentionally Omitted.

6.4. No Violation. Borrower's execution, delivery, and performance under the Loan Documents do not: (a) require any consent or approval not heretofore obtained under any

14

partnership agreement, operating agreement, limited liability company agreement, articles of incorporation, bylaws or other document; (b) materially violate any governmental requirement applicable to the Property and Improvements or any other statute, law, regulation or ordinance or any order or ruling of any court or governmental entity; (c) materially conflict with, or constitute a material breach or default or permit the acceleration of obligations under any agreement, contract, lease, or other document by which the Borrower is or the Property and Improvements are bound or regulated; or (d) materially violate any statute, law, regulation or ordinance, or any order of any court or governmental entity.

6.5. Compliance with Laws. Borrower has, and at all applicable times shall have obtained, all permits, licenses, exemptions, and approvals necessary to construct, occupy, operate and market the Property and Improvements for the applicable stage of development and operation, and shall maintain substantial compliance with all governmental requirements applicable to the Property and Improvements and all other applicable statutes, laws, regulations and ordinances necessary for the transaction of its business.

6.6. Litigation. Except as disclosed to Lender in writing, there are no claims, actions, suits, or proceedings pending, or to Borrower's knowledge threatened, against Borrower or affecting the Property or Improvements that are of a material nature and that, if successfully prosecuted against Borrower would create a material adverse change in the financial condition of Borrower.

6.7. Financial Condition. All financial statements and information relating to the financial condition of Borrower, the Property, and the Improvements, which have been heretofore and hereafter are delivered to Lender by Borrower, fairly and accurately represent as of the date of such delivery the financial condition of the subject thereof and have been prepared (except as noted therein) in accordance with generally accepted accounting principles consistently applied. Borrower acknowledges and agrees that Lender may request and obtain additional information from third parties regarding any of the above, including, without limitation, credit reports.

6.8. [Deleted]

6.9. Loan Proceeds and Adequacy. The undisbursed Loan proceeds, together with Borrower's Funds and all other sums, if any, to be provided by Borrower as shown in EXHIBIT C, are sufficient to construct the Improvements in accordance with the terms and conditions of this Agreement.

6.10. Accuracy. All reports, documents, instruments, information and forms of evidence delivered to Lender concerning the Loan or security for the Loan or required by the Loan Documents are accurate, correct and sufficiently complete to give Lender true and accurate knowledge of their subject matter, and do not contain any material misrepresentation or omission.

15

6.11. **Tax Liability.** Borrower has filed all required federal, state, county and municipal tax returns and has paid all taxes and assessments owed and payable by Borrower or with respect to the Property, and Borrower has no knowledge of any basis for any additional payment with respect to any such taxes and assessments.

6.12. **Utilities.** Subject to the provisions of Section 4.3 of this Agreement, all utility services, including, without limitation, gas, water, sewage, electrical and telephone, necessary for the development and occupancy of the Property and Improvements are available at or within the boundaries of the Property, or Borrower has taken all steps reasonably necessary to date to assure that all such services will be available upon completion of the Improvements.

6.13. **Compliance.** Borrower is familiar with and in substantial compliance with all governmental requirements for the development of the Property and construction of the Improvements and, subject to the provisions of Section 4.3 of this Agreement, will substantially conform to and comply with all governmental requirements and the Plans and Specifications.

6.14. **[Deleted].**

6.15. **Business Loan.** The Loan is a business loan transaction in the stated amount solely for the purpose of carrying on the business of Borrower and none of the proceeds of the Loan will be used for the personal, family or agricultural purposes of the Borrower. Lender acknowledges that a portion of the Loan, up to Six Million and No/100 Dollars ($6,000,000.00), may be used by Borrower for distributions to members and other affiliates of the Borrower.

## ARTICLE 7. HAZARDOUS MATERIALS

7.1. **Special Representations and Warranties.** Without in any way limiting the other representations and warranties set forth in this Agreement, and after reasonable investigation and inquiry, and except as disclosed in the Environmental Report or otherwise disclosed in writing to Lender prior to the date of this Agreement, Borrower hereby specially represents and warrants to the best of Borrower's knowledge as of the date of this Agreement as follows:

(a) **Hazardous Materials.** The Property and Improvements are not and have not been a site for the use, generation, manufacture, storage, treatment, release, threatened release, discharge, disposal, transportation or presence of any oil, flammable explosives, asbestos, urea formaldehyde insulation, radioactive materials, hazardous wastes, toxic or contaminated substances or similar materials, including, without limitation, any substances which are "hazardous substances," "hazardous wastes," "hazardous materials," "toxic substances," "wastes," "regulated substances," "industrial solid wastes," or "pollutants" under the Hazardous Materials Laws, as described below, and/or other applicable environmental laws, ordinances or regulations (collectively, the "Hazardous Materials"). "Hazardous Materials" shall not include commercially reasonable amounts of

16

such materials used in the ordinary course of preparation of the Property for construction, construction of the Improvements and operation of the Property which are used and stored in accordance with all applicable environmental laws, ordinances and regulations.

(b) Hazardous Materials Laws. The Property and Improvements are in substantial compliance with all laws, ordinances and regulations relating to Hazardous Materials ("Hazardous Materials Laws"), including, without limitation: the Clean Air Act, as amended, 42 U.S.C. Section 7401 et seq.; the Federal Water Pollution Control Act, as amended, 33 U.S.C. Section 1251 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, 42 U.S.C. Section 6901 et seq.; the Comprehensive Environment Response, Compensation and Liability Act of 1980, as amended (including the Superfund Amendments and Reauthorization Act of 1986, "CERCLA"), 42 U.S.C. Section 9601 et seq.; the Toxic Substances Control Act, as amended, 15 U.S.C. Section 2601 et seq.; the Occupational Safety and Health Act, as amended, 29 U.S.C. Section 651, the Emergency Planning and Community Right-to-Know Act of 1986, 42 U.S.C. Section 11001 et seq.; the Mine Safety and Health Act of 1977, as amended, 30 U.S.C. Section 801 et seq.; the Safe Drinking Water Act, as amended, 42 U.S.C. Section 300f et seq.; and all comparable state and local laws, laws of other applicable jurisdictions or orders and regulations.

(c) Hazardous Materials Claims. To the actual knowledge of the Borrower, there are no claims or actions ("Hazardous Materials Claims") pending or threatened against Borrower, the Property or Improvements by any governmental entity or agency or by any other person or entity relating to Hazardous Materials or pursuant to the Hazardous Materials Laws.

(d) Border Zone Property. To the actual knowledge of the Borrower, the Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be designated as Border Zone Property.

7.2. Hazardous Materials Covenants. Borrower agrees as follows:

(a) No Hazardous Activities. Except for the implementation of remediation programs or plans required under agreements, orders or consent decrees referenced in the Environmental Report, Borrower shall not cause or permit the Property or Improvements to be used as a site for the use, generation, manufacture, storage, treatment, release, discharge, disposal, transportation or presence of any Hazardous Materials.

(b) Compliance. Except to the extent such compliance is to be the result of the implementation of remediation programs or plans required under agreements, orders or consent decrees referenced in the Environmental Report, Borrower shall comply and cause the Property and Improvements to comply with all Hazardous Materials Laws.

(c) Notices. Except for those matters set forth in the Environmental Report or otherwise disclosed in writing to Lender prior to the date of this Agreement, Borrower

17

shall immediately notify Lender in writing of: (i) the discovery of any Hazardous Materials on, under or about the Property and Improvements; (ii) any knowledge by Borrower that the Property and Improvements are not in material compliance with any Hazardous Materials Laws; (iii) any Hazardous Materials Claims; and (iv) the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be designated as Border Zone Property.

(d) Remedial Action. Except with respect to any Hazardous Materials, violations of Hazardous Materials Laws and Hazardous Materials Claims that are to be remedied by the implementation of remediation programs or plans required under agreements, orders or consent decrees referenced in the Environmental Report, in response to the presence of any Hazardous Materials on, under or about the Property or Improvements, Borrower shall immediately take, at Borrower's sole expense, all remedial action required by any Hazardous Materials Laws or any judgment, consent decree, settlement or compromise in respect to any Hazardous Materials Claims.

(e) Inspection By Lender. Upon reasonable prior notice to Borrower, Lender, its employees and agents, may from time to time (whether before or after the commencement of a nonjudicial or judicial foreclosure proceeding) enter and inspect the Property and Improvements for the purpose of determining the existence, location, nature and magnitude of any past or present release or threatened release of any Hazardous Materials into, onto, beneath or from the Property and Improvements.

(f) Hazardous Materials Indemnity. BORROWER HEREBY AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER, ITS DIRECTORS, OFFICERS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, ACTIONS, JUDGMENTS, COURT COSTS AND LEGAL OR OTHER EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND EXPENSES) WHICH LENDER MAY INCUR AS A DIRECT OR INDIRECT CONSEQUENCE OF THE USE, GENERATION, MANUFACTURE, STORAGE, DISPOSAL, THREATENED DISPOSAL, TRANSPORTATION OR PRESENCE OF HAZARDOUS MATERIALS IN, ON, UNDER OR ABOUT THE PROPERTY OR IMPROVEMENTS. BORROWER SHALL IMMEDIATELY PAY TO LENDER UPON DEMAND ANY AMOUNTS OWING UNDER THIS INDEMNITY, TOGETHER WITH INTEREST FROM THE DATE THE INDEBTEDNESS ARISES UNTIL PAID AT THE RATE OF INTEREST APPLICABLE TO THE PRINCIPAL BALANCE OF THE NOTE. BORROWER'S DUTY AND OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER SHALL SURVIVE THE CANCELLATION OF THE NOTE AND THE RELEASE, RECONVEYANCE OR PARTIAL RECONVEYANCE OF THE DEED OF TRUST.

(g) Legal Effect of Section. Borrower and Lender agree that: (a) this Article VII is intended as Lender's written request for information (and Borrower's response) concerning the environmental condition of the real property security as required by

18

California Code of Civil Procedure Section 726.5; and (b) each provision in this Article (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the real property security is intended by Lender and Borrower to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736, and as such it is expressly understood that Borrower's duty to indemnify Lender hereunder shall survive: (i) any judicial or non-judicial foreclosure under the Deed of Trust, or transfer of the Property in lieu thereof; (ii) the release and reconveyance or cancellation of the Deed of Trust; and (iii) the satisfaction of all of Borrower's obligations under the Loan Documents.

## ARTICLE 8. SET ASIDE LETTERS

8.1. **Set Aside Letters.** If, at Borrower's request, Lender issues any letter or letters ("Set Aside Letter") to any governmental agency ("Obligee") or bonding company ("Surety") whereby Lender agrees to allocate Loan proceeds for the construction of off-site, common area, or other improvements required by any governmental agency or for which bonds may be required ("Bonded Work") in connection with the development of the Property, Borrower represents, warrants, covenants and agrees as follows:

(a) The sum which Borrower requests Lender to allocate for the Bonded Work shall be sufficient to pay for the construction and completion cost of the Bonded Work in accordance with any agreement between Borrower and Obligee or as may be required under the Project Entitlements, and a copy of such agreement shall be furnished to Lender by Borrower prior to and as a condition precedent to the issuance by Lender of any Set Aside Letter;

(b) Lender is irrevocably and unconditionally authorized to disburse to the Obligee or Surety all or any portion of said allocated Loan proceeds upon a demand of such Surety or Obligee made in accordance with the terms and conditions of the Set Aside Letter;

(c) Any disbursements or payments which Lender makes or may be obligated to make under any Set Aside Letter, whether made directly to the Surety, Obligee, or to others for completion of all or part of the Bonded Work, shall be deemed a disbursement under this Agreement to or for the benefit or account of Borrower;

(d) BORROWER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER FROM ANY CLAIM, DEMAND, CAUSE OF ACTION, DAMAGE, LOSS OR LIABILITY, INCLUDING, WITHOUT LIMITATION, ANY COURT COSTS AND ATTORNEYS' FEES AND EXPENSES, WHICH LENDER MAY SUFFER OR INCUR AS A DIRECT OR INDIRECT CONSEQUENCE OF ITS ISSUANCE OF OR COMPLIANCE WITH ANY REQUESTED SET ASIDE LETTER. BORROWER SHALL PAY ANY INDEBTEDNESS ARISING UNDER THIS INDEMNITY TO LENDER IMMEDIATELY UPON DEMAND OF LENDER. BORROWER'S DUTY TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER HEREUNDER SHALL SURVIVE THE RELEASE AND CANCELLATION OF THE NOTE AND

19

THE FULL OR PARTIAL RELEASE OR RECONVEYANCE OF THE DEED OF
TRUST OR OTHER LOAN DOCUMENTS;

(e) Lender shall have no obligation to release any collateral or security under the
Loan Documents unless and until Lender has received a full and final written release of
its obligations under each Set Aside Letter; and

(f) Lender is not obligated to issue any Set Aside Letter and may refuse to do so
in Lender's sole and absolute discretion, excepting only the following Set Aside Letters:
None.

## ARTICLE 9. COVENANTS OF BORROWER

9.1. Expenses. Borrower shall immediately pay Lender upon demand all Lender's
reasonable out-of-pocket costs and expenses actually incurred by Lender in connection
with: (a) the preparation of this Agreement, all other Loan Documents and Other Related
Documents contemplated hereby; (b) the administration of this Agreement, the other
Loan Documents and Other Related Documents for the term of the Loan; and (c) the
enforcement or satisfaction by Lender of any of Borrower's obligations under this
Agreement, the other Loan Documents or the Other Related Documents. For all purposes
of this Agreement, Lender's costs and expenses shall include, without limitation, all
appraisal fees, cost engineering and inspection fees, legal fees and expenses, accounting
fees, environmental consultant fees, auditor fees, and the cost to Lender of any title
insurance premiums, title surveys, reconveyance and notary fees. Borrower recognizes
and agrees that Lender may, at its option, require inspection of the Property and
Improvements by an independent supervising architect and/or cost engineering specialist:
(i) prior to each advance; (ii) at least once each month during the course of construction
even though no disbursement is to be made for that month; (iii) upon completion of the
Improvements; and (iv) at least semi-annually thereafter during the term of the Loan. To
the extent that any of the foregoing are performed or incurred by employees of Lender or
any Affiliate of Lender, no such costs, or any associated travel, lodging, subsistence or
other expenses for such goods and services shall be owed by Borrower.

9.2. ERISA Compliance. Borrower shall at all times comply with the provisions of
ERISA with respect to any retirement or other employee benefit plan to which it is a
party as employer, and as soon as possible after Borrower knows, or has reason to know,
that any Reportable Event (as defined in ERISA) with respect to any such plan of
Borrower has occurred, it shall furnish to Lender a written statement setting forth details
as to such Reportable Event and the action, if any, which Borrower proposes to take with
respect thereto, together with a copy of the notice of such Reportable Event furnished to
the Pension Benefit Guaranty Corporation.

9.3. [Deleted]

9.4. [Deleted]

20

9.5. Revenue to be Applied to Debt Service. Following the occurrence and during the continuation of any Default, no Distributions shall be made or distributed to any partner, venturer, member or equity investor of Borrower.

9.6. Subdivision Maps. Prior to recording any final map, plat, parcel map, lot line adjustment or other subdivision map of any kind covering any portion of the Property (collectively, "Subdivision Map"), Borrower shall submit such Subdivision Map to Lender for Lender's review and approval, which approval shall not be unreasonably withheld. Within ten (10) Business Days after Lender's receipt of such Subdivision Map, Lender shall provide Borrower written notice if Lender disapproves of said Subdivision Map. Lender shall be deemed to have approved the Subdivision Map if such notice is not so provided to Borrower. Within five (5) Business Days after Lender's request, Borrower shall execute, acknowledge and deliver to Lender such amendments to the Loan Documents as Lender may reasonably require to reflect the change in the legal description of the Property resulting from the recordation of any Subdivision Map. In connection with and promptly after the recordation of any amendment or other modification to the Deed of Trust recorded in connection with such amendments, Borrower shall deliver to Lender, at Borrower's sole expense, a title endorsement to the Title Policy in form and substance satisfactory to Lender insuring the continued first priority lien of the Deed of Trust. Subject to the execution and delivery by Borrower of any documents required under this Section, Lender shall, if required by applicable law, sign any Subdivision Map approved, or deemed to be approved, by Lender pursuant to this Section.

9.7. Further Assurances. Upon Lender's request and at Borrower's sole cost and expense, Borrower shall execute, acknowledge and deliver any other instruments and perform any other acts necessary, desirable or proper, as determined by Lender, to carry out the purposes of this Agreement and the other Loan Documents or to perfect and preserve any liens created by the Loan Documents.

9.8. Assignment. Without the prior written consent of Lender, Borrower shall not assign Borrower's interest under any of the Loan Documents, or in any monies due or to become due thereunder, and any assignment without such consent shall be void. In this regard, Borrower acknowledges that Lender would not make this Loan except in reliance on Borrower's expertise, reputation, prior experience in developing and constructing commercial real property, Lender's knowledge of Borrower, and Lender's understanding that this Agreement is more in the nature of an agreement involving personal services than a standard loan where Lender would rely on security which already exists.

9.9. [Deleted]

9.10. Governing Documents. Without the prior written consent of Lender, Borrower shall not modify or permit to be modified the formation or organizational documents of the Borrower, or any partners, joint venturers or members thereof.

9.11. [Deleted]

21

## ARTICLE 10. REPORTING COVENANTS

10.1. Financial Information. Borrower hereby consents to Lender's obtaining from other parties copies of any and all reports that Borrower delivers to any party. In addition, on or before the tenth (10th) day of each month, Borrower shall deliver to Lender a reconciliation showing the balance of the Working Capital Reserve Account as of the beginning of the first day of the preceding calendar month, the balance of the Working Capital Reserve as of the end of the last day of the preceding calendar month, and a line item listing of all expenditures, together with supporting documentation, of amounts expended from the Working Capital Reserve Account during such period.

To the extent not otherwise obtained as provided above, within thirty (30) days after Lender's request, Borrower shall also deliver to Lender such quarterly and other financial information regarding the Property or Borrower. If audited financial information is prepared, Borrower shall deliver to Lender copies of that information within fifteen (15) days after its final preparation. Except as otherwise agreed to by Lender, all such financial information shall be prepared in accordance with generally accepted accounting principles consistently applied. Upon written request of Lender, Borrower use good faith efforts to obtain and deliver to Lender any specific financial reports and information pertaining to the members, managers, partners and shareholders of Borrower.

10.2. Books and Records. Borrower shall maintain complete books of account and other records for the Property and Improvements and for disbursement and use of the proceeds of the Loan and Borrower's Funds, and the same shall be available for inspection and copying by Lender upon reasonable prior notice.

## ARTICLE 11. DEFAULTS AND REMEDIES

11.1. Default. The occurrence of any one or more of the following shall constitute an event of default (hereinafter, "Default") under this Agreement and the other Loan Documents:

(a) Monetary. Borrower's failure to pay within ten (10) Business Days following the date of delivery of written notice from Lender to Borrower that such amount was not received when due, any sums payable under the Note or any of the other Loan Documents or Borrower's failure to deposit any Borrower's Funds as and when required under this Agreement; provided, however, that if such written notice from Lender is an Out of Balance Notice, then, in lieu of such 10-Business Day period, Borrower shall have a thirty (30) day period following the date of delivery of such Out of Balance Notice before a Default shall occur in which to deposit funds equal to the amount of the applicable deficiency into the Borrower's Funds Account, as contemplated by the provisions of Section 3.1(b); further, provided, however, that no such notice or cure period shall apply at maturity or upon acceleration; or

22

(b) Performance of Obligations. Borrower's failure to perform any obligation in addition to those in Section 11.1(a) above under any of the Loan Documents within thirty (30) days following the date of delivery of written notice from Lender; provided, however, that if a longer or shorter cure period is expressly provided for the remedy of any such failure, Borrower's failure to perform will not constitute a Default until such longer or shorter date as the specified cure period expires; but provided further, however, if such Default is curable, but the nature of such failure is such that it cannot reasonably be cured within said thirty (30) days (or longer or shorter specified cure period), then if Borrower fails to commence a cure thereof within said time and thereafter fails to diligently pursue a cure thereof and fails to complete same within ninety (90) days after Lender's written demand; or a default by Borrower (following any applicable notice and cure period) under any of the Other Related Documents; or

(c) Construction; Use. (i) There is any material deviation in the work of construction from the Plans and Specifications or governmental requirements from that required under this Agreement or the appearance or use of defective workmanship or materials in constructing the Improvements, and Borrower fails to remedy the same to Lender's satisfaction within ten (10) Business Days after Lender's written demand to do so, or if the nature of such deviation or defect is curable but such that it cannot reasonably be cured within said ten (10) Business Days, then if Borrower fails to commence a cure thereof within said ten (10) Business Days and thereafter fails to diligently pursue a cure thereof and complete same within ninety (90) days after Lender's written demand; or (ii) subject to the provisions of Section 4.3, there is a cessation of construction of the Improvements prior to completion for a continuous period of more than fifteen (15) days; or (iii) the construction, renovation, sale or leasing of any of the Improvements in accordance with the Loan Documents is prohibited, enjoined or delayed for a continuous period of more than forty-five (45) days; or (iv) subject to the provisions of Section 4.3, utilities or other public services necessary for the full occupancy and utilization of the Property and Improvements are curtailed for a continuous period of more than thirty (30) days; or

(d) Liens, Attachment; Condemnation. (i) The recording of any claim of lien against the Property or Improvements or the service on Lender of any bonded stop notice relating to the Loan and the continuance of such claim of lien or bonded stop notice for twenty (20) days without discharge, satisfaction or provision for payment being made by Borrower in a manner satisfactory to Lender, subject to the provisions of Section 4.9 hereof and Section 5.5 of the Deed of Trust; or (ii) the condemnation, seizure or appropriation of, or occurrence of an uninsured casualty with respect to any material portion of the Property or Improvements that is not otherwise offset by Borrower's deposit of sufficient restoration funds (including any applicable deductible amount under any applicable policy of casualty insurance) into the Borrower's Funds Account within forty-five (45) days after the occurrence of such event; or (iii) the sequestration or attachment of, or any levy or execution upon any of the Property or Improvements, any other collateral provided by Borrower under any of the Loan Documents, any monies in the Account or in the Borrower's Funds Account, or any substantial portion of the other assets of Borrower, which sequestration, attachment, levy or execution is not released,

23

expunged or dismissed prior to the earlier of forty-five (45) days or the sale of the assets affected thereby; or

(e) Representations and Warranties. (i) The material failure of any representation or warranty of Borrower in any of the Loan Documents to be true, correct and complete as of the date made, and the continuation of such failure for more than ten (10) Business Days after written notice to Borrower from Lender requesting that Borrower cure such failure; or

(f) Voluntary Bankruptcy; Insolvency; Dissolution. (i) The filing of a petition by Borrower for relief under the Bankruptcy Code, or under any other present or future state or federal law regarding bankruptcy, reorganization or other debtor relief law; (ii) a general assignment by Borrower for the benefit of creditors; or (iii) Borrower applying for, or the appointment of, a receiver, trustee, custodian or liquidator of Borrower or any of its property; or

(g) Involuntary Bankruptcy. (i) The filing of any pleading or an answer by Borrower in any involuntary proceeding under the Bankruptcy Code or other debtor relief law which admits the jurisdiction of the court or the petition's material allegations regarding Borrower's insolvency; or (ii) the failure of Borrower to effect a full dismissal of any involuntary petition under the Bankruptcy Code or under any other debtor relief law that is filed against Borrower or in any way restrains or limits Borrower or Lender regarding the Loan, the Property or the Improvements, prior to the earlier of the entry of any court order granting relief sought in such involuntary petition, or forty-five (45) days after the date of filing of such involuntary petition; or

(h) [Deleted]; or

(i) Change In Management or Control. The occurrence of any material management or organizational change in Borrower or in the partners, venturers or members of Borrower, including, without limitation, any dispute among the constituent members or partners of Borrower, and which Lender determines, in its sole and absolute discretion, shall have a material adverse effect on the Loan, on the Property and Improvements, or on the ability of Borrower or its partners, venturers or members to perform their obligations under the Loan Documents; or

(j) Loss of Priority. The failure at any time of the Deed of Trust to be a valid first lien upon the Property and Improvements or any portion thereof, other than as a result of any release or reconveyance of the Deed of Trust with respect to all or any portion of the Property and Improvements pursuant to the terms and conditions of this Agreement; or

(k) Hazardous Materials. The discovery of any significant Hazardous Materials in, on or about the Property or Improvements subsequent to the Effective Date (to the extent not disclosed in the Environmental Report or otherwise disclosed in writing to Lender prior to the date of this Agreement); provided, however, if such Default is curable, but the nature of such failure is such that it cannot reasonably be cured within thirty (30) days,

24

then if Borrower fails to commence a cure thereof within said time and thereafter fails to diligently pursue a cure thereof and fails to complete same within ninety (90) days after Lender's written demand. Any such Hazardous Materials shall be "significant" for this purpose if said Hazardous Materials, in Lender's sole discretion, have a materially adverse impact on the value of the Property and Improvements.

Notwithstanding any of the foregoing or anything to the contrary in this Agreement, to the extent that any Default can be cured by the payment of money directly to Lender, to Borrower's Funds Account or to any third party to reimburse same for materials or services already delivered or performed or for the purpose of delivering materials or performing services which if so done would cure said Default, the applicable cure period specified in this Agreement shall be extended by an additional sixty (60) days to allow Borrower to undertake any necessary capital calls or to seek or arrange the necessary partnership loans.

11.2. Acceleration Upon Default; Remedies. Upon the occurrence of any Default specified in this Article XI, Lender may, at its sole option, declare all sums owing to Lender under the Note, this Agreement and the other Loan Documents immediately due and payable. Upon such acceleration, Lender may, in addition to all other remedies permitted under this Agreement and the other Loan Documents and at law or equity, apply any sums in the Account and Borrower's Funds Account to the sums owing under the Loan Documents and any and all obligations of Lender to fund further disbursements under the Loan shall terminate.

11.3. Disbursements to Third Parties. Upon the occurrence of a Default occasioned by Borrower's failure to pay money to a third party as required by this Agreement, Lender may but shall not be obligated to make such payment from the Loan proceeds, Borrower's Funds, or other funds of Lender. If such payment is made from proceeds of the Loan or from Borrower's Funds, Borrower shall immediately deposit with Lender, upon written demand, an amount equal to such payment. If such payment is made from funds of Lender, Borrower shall immediately repay such funds upon written demand of Lender. In either case, the Default with respect to which any such payment has been made by Lender shall not be deemed cured until such deposit or repayment (as the case may be) has been made by Borrower to Lender.

11.4. Lender's Completion of Construction. Upon the occurrence of a Default, Lender may, upon five (5) Business Days prior written notice to Borrower, and with or without legal process, take possession of the Property and Improvements, remove Borrower and all agents, employees and contractors of Borrower from the Property and Improvements, complete the work of construction and market for lease and lease space within the Property and/or Improvements. For this purpose, Borrower irrevocably appoints Lender as its attorney-in-fact, which agency is coupled with an interest. As attorney-in-fact, Lender may, in Borrower's name, take or omit to take any action Lender may deem appropriate with respect to third parties, including, without limitation, exercising

25

Borrower's rights under all contracts concerning the Property and/or Improvements, but excluding the Loan Documents.

11.5. Lender's Cessation of Construction. If Lender determines at any time that the Improvements are not being constructed substantially in accordance with the requirements under this Agreement, then upon the occurrence of a Default therefor, Lender may, upon five (5) Business Days prior written notice to Borrower, immediately cause all construction to cease on any of the Improvements affected by the condition of nonconformance. Borrower shall thereafter not allow any construction work, other than corrective work, to be performed on any of the Improvements affected by the condition of nonconformance until such time as Lender notifies Borrower in writing that the nonconforming condition has been corrected.

11.6. Termination or Continuation of Development and Management Agreements. Upon the occurrence of a Default wherein Lender elects to accelerate the Loan and records a notice of default to foreclose the lien of the Deed of Trust, Lender may elect to require Borrower to terminate the Development and Management Agreements (and Borrower shall immediately do so), without any termination fee or penalty, provided that all fees and expenses previously accrued thereunder up to the effective date of such termination are paid in full; provided however, so long as the Development and Management Agreements are not terminated, the respective party or parties performing services thereunder shall be entitled to continue to receive all fees and expenses owed such party or parties under the applicable Development and Management Agreements. In the event that Borrower reinstates the Loan under California law prior to the foreclosure of the lien of the Deed of Trust, such Development and Management Agreements shall be deemed to have been reinstated as of the date of such reinstatement of the Loan.

11.7. Repayment of Funds Advanced. Any funds expended by Lender in the exercise of its rights or remedies under this Agreement and the other Loan Documents shall be payable to Lender upon demand, together with interest at the rate applicable to the principal balance of the Note from the date the funds were expended.

11.8. Rights Cumulative, No Waiver. All Lender's rights and remedies provided in this Agreement and the other Loan Documents, together with those granted by law or at equity, are cumulative and may be exercised by Lender at any time. Lender's exercise of any right or remedy shall not constitute a cure of any Default unless all sums then due and payable to Lender under the Loan Documents are repaid and Borrower has cured all other Defaults. No waiver shall be implied from any failure of Lender to take, or any delay by Lender in taking, action concerning any Default or failure of condition under the Loan Documents, or from any previous waiver of any similar or unrelated Default or failure of condition. Any waiver or approval under any of the Loan Documents must be in writing and shall be limited to its specific terms.

## ARTICLE 12. MISCELLANEOUS PROVISIONS

26

12.1. Indemnity. BORROWER HEREBY AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER, ITS DIRECTORS, OFFICERS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS, SUCCESSORS AND ASSIGNS FROM AND AGAINST ANY AND ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, ACTIONS, JUDGMENTS, COURT COSTS AND LEGAL OR OTHER EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES AND EXPENSES) WHICH LENDER MAY INCUR AS A DIRECT OR INDIRECT CONSEQUENCE OF: (A) THE PURPOSE TO WHICH BORROWER APPLIES THE LOAN PROCEEDS; (B) THE FAILURE OF BORROWER TO PERFORM ANY OBLIGATIONS AS AND WHEN REQUIRED BY THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS; (C) ANY FAILURE AT ANY TIME OF ANY OF BORROWER'S REPRESENTATIONS OR WARRANTIES TO BE TRUE AND CORRECT; OR (D) ANY ACT OR OMISSION BY BORROWER, ANY CONSTITUENT PARTNER OR MEMBER OF BORROWER, ANY CONTRACTOR, SUBCONTRACTOR OR MATERIAL SUPPLIER, ENGINEER, ARCHITECT OR OTHER PERSON OR ENTITY WITH RESPECT TO ANY OF THE PROPERTY OR IMPROVEMENTS, EXCEPT TO THE EXTENT CAUSED OR CONTRIBUTED TO BY THE BAD FAITH, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LENDER. BORROWER SHALL IMMEDIATELY PAY TO LENDER UPON DEMAND ANY AMOUNTS OWING UNDER THIS INDEMNITY, TOGETHER WITH INTEREST FROM THE DATE THE INDEBTEDNESS ARISES UNTIL PAID AT THE RATE OF INTEREST APPLICABLE TO THE PRINCIPAL BALANCE OF THE NOTE.  BORROWER'S DUTY AND OBLIGATIONS TO DEFEND, INDEMNIFY AND HOLD HARMLESS LENDER SHALL SURVIVE CANCELLATION OF THE NOTE AND THE RELEASE, RECONVEYANCE OR PARTIAL RECONVEYANCE OF THE DEED OF TRUST.

12.2. Form of Documents. The form and substance of all documents, instruments, and forms of evidence to be delivered to Lender under the terms of this Agreement and any of the other Loan Documents shall be subject to Lender's approval and shall not be modified, superseded or terminated in any respect without Lender's prior written approval, except to the extent otherwise provided in this Agreement.

12.3. No Third Parties Benefited. No person other than Lender and Borrower and their permitted successors and assigns shall have any right of action under any of the Loan Documents.

12.4. Notices. All notices, demands, or other communications under this Agreement and the other Loan Documents shall be in writing and shall be delivered to the appropriate party at the address set forth on the signature page of this Agreement and as specified in EXHIBIT D (subject to change from time to time by written notice to all other parties to this Agreement). All communications shall be deemed served upon delivery of, or if mailed, upon receipt or rejection after the deposit in the United States Postal Service mail, certified postage prepaid-return receipt requested and addressed to the address of Borrower or Lender at the address specified; provided, however, that non-receipt of any communication as the result of any change of address of which the sending

27

party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

12.5. **Attorney-in-Fact.** Borrower hereby irrevocably appoints and authorizes Lender, as Borrower's attorney-in-fact, which agency is coupled with an interest, to execute and/or record in Lender's or Borrower's name any notices, instruments or documents that Lender deems appropriate to protect Lender's interest under any of the Loan Documents.

12.6. **Actions.** Borrower agrees that Lender, in exercising the rights, duties or liabilities of Lender or Borrower under the Loan Documents, may commence, appear in or defend any action or proceeding purporting to affect the Property, the Improvements, or the Loan Documents and Borrower shall immediately reimburse Lender upon demand for all such expenses so incurred or paid by Lender, including, without limitation, attorneys' fees and expenses and court costs.

12.7. **Right of Contest.** Borrower may contest in good faith any claim, demand, levy or assessment (other than liens and stop notices, subject to the provisions of Section 4.9 of this Agreement) by any person other than Lender which would constitute a Default if: (a) Borrower pursues the contest diligently, in a manner which Lender determines is not prejudicial to Lender, and does not impair the rights of Lender under any of the Loan Documents; and (b) Borrower deposits with Lender any funds or other forms of assurance which Lender in good faith determines from time to time appropriate to protect Lender from the consequences of the contest being unsuccessful. Borrower's compliance with this Section shall operate to prevent such claim, demand, levy or assessment from becoming a Default.

12.8. **Relationship of Parties.** The relationship of Borrower and Lender under the Loan Documents is, and shall at all times remain, solely that of borrower and lender, and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any third party with respect to the Property or Improvements, except as expressly provided in this Agreement and the other Loan Documents.

12.9. **Delay Outside Lender's Control.** Lender shall not be liable in any way to Borrower or any third party for Lender's failure to perform or delay in performing under the Loan Documents if such failure to perform or delay in performing results directly or indirectly from, or is based upon, the action, inaction, or purported action, of any governmental or local authority, or because of war, rebellion, insurrection, strike, lock-out, boycott or blockade (whether presently in effect, announced or in the sole judgment of Lender deemed probable), or from any Act of God or other cause or event beyond Lender's control.

12.10. **Attorneys' Fees and Expenses; Enforcement.** If any attorney is engaged by Lender to enforce or defend any provision of this Agreement, any of the other Loan Documents or Other Related Documents, or as a consequence of any Default under the Loan Documents, with or without the filing of any legal action or proceeding, and including, without limitation, any fees and expenses incurred in any bankruptcy

28

proceeding of the Borrower, then Borrower shall immediately pay to Lender, upon demand, the amount of all reasonable attorneys' fees and expenses and all costs incurred by Lender in connection therewith, together with interest thereon from the date of such demand until paid at the rate of interest applicable to the principal balance of the Note as specified therein.

12.11. Immediately Available Funds. Unless otherwise expressly provided for in this Agreement, all amounts payable by Borrower to Lender shall be payable only in United States currency, immediately available funds.

12.12. Lender's Consent. Wherever in this Agreement there is a requirement for Lender's consent and/or a document to be provided or an action taken "to the satisfaction of Lender", it is understood by such phrase that Lender shall exercise its consent, right or judgment in a reasonable manner given the specific facts and circumstance applicable at the time.

12.13. Signs. Lender may place on the Property reasonable signs standard to construction loan transactions stating that construction financing is being provided by Lender and any other lenders or participants in the Loan, subject to the requirements of the Project Entitlements and applicable law.

12.14. Lender's Agents. Lender may designate an agent or independent contractor to exercise any of Lender's rights under this Agreement and any of the other Loan Documents. Any reference to Lender in any of the Loan Documents shall include Lender's agents, employees or independent contractors. Borrower shall pay the costs of such agent or independent contractor either directly to such person or to Lender in reimbursement of such costs, as applicable.

12.15. Tax Service. Lender is authorized to secure, at Borrower's expense, a tax service contract with a third party vendor which shall provide tax information on the Property and Improvements satisfactory to Lender.

12.16. WAIVER OF RIGHT TO TRIAL BY JURY. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THE LOAN DOCUMENTS, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN DOCUMENTS (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM,

29

DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF ANY RIGHT THEY MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12.17. Severability. If any provision or obligation under this Agreement and the other Loan Documents shall be determined by a court of competent jurisdiction to be invalid, illegal or unenforceable, that provision shall be deemed severed from the Loan Documents and the validity, legality and enforceability of the remaining provisions or obligations shall remain in full force as though the invalid, illegal, or unenforceable provision had never been a part of the Loan Documents, provided, however, that if the rate of interest or any other amount payable under the Note or this Agreement or any other Loan Document, or the right of collectability therefor, are declared to be or become invalid, illegal or unenforceable, Lender's obligations to make advances under the Loan Documents shall not be enforceable by Borrower.

12.18. Heirs, Successors and Assigns. Except as otherwise expressly provided under the terms and conditions of this Agreement, the terms of the Loan Documents shall bind and inure to the benefit of the heirs, successors and assigns of the parties.

12.19. Time. Time is of the essence of each and every term of this Agreement.

12.20. Headings. All article, section or other headings appearing in this Agreement and any of the other Loan Documents are for convenience of reference only and shall be disregarded in construing this Agreement and any of the other Loan Documents.

12.21. Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of California, except to the extent preempted by federal laws. Borrower and all persons and entities in any manner obligated to Lender under the Loan Documents consent to the jurisdiction of any federal or state court within the State of California having proper venue and also consent to service of process by any means authorized by California or federal law.

12.22. Integration; Interpretation. The Loan Documents contain or expressly incorporate by reference the entire agreement of the parties with respect to the matters contemplated therein and supersede all prior negotiations or agreements, written or oral. The Loan Documents shall not be modified except by written instrument executed by all parties. Any reference in any of the Loan Documents to the Property or Improvements shall include all or any part of the Property or Improvements. Any reference to the Loan Documents includes any amendments, renewals or extensions now or hereafter approved by Lender in writing.

30

**12.23. Joint and Several Liability.** The liability of all persons and entities obligated in any manner under this Agreement and any of the Loan Documents shall be joint and several.

**12.24. Counterparts.** This Agreement, any of the other Loan Documents (except for the Note), any Other Related Documents and any subsequent modifications, amendments, waivers, consents or supplements thereof, if any, may be executed in any number of counterparts, each of which when executed and delivered shall be deemed to be an original and all such counterparts together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement as of the date appearing on the first page of this Agreement.

[SIGNATURE PAGES TO FOLLOW]

31

"Lender"

Hankey Capital, LLC,
a California limited liability company

By:_____
    W. Scott Dobbins, President

Lender's Address:

4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

32

**BORROWER:**

**CRESTLLOYD, LLC,**
a California limited liability company

By:_____
     Nile Niami, Manager

**Borrower's Address:**

c/o Skyline Development
8981 W. Sunset Blvd., Suite 303
West Hollywood, CA 90069

33

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_ }

On _OCTOBER 30, 2018_ before me, _Nigel Gibbs, Notary Public_
　　　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Nile Niami_
　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　Signature of Notary Public

Place Notary Seal and/or Stamp Above

─────────────── **OPTIONAL** ───────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _CONSTRUCTION LOAN Agreement_
Document Date: _10/25/18_　　　　　　　Number of Pages: _43_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2018 National Notary Association

EXHIBIT A

DESCRIPTION OF PROPERTY

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND
IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY
OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE
WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH
76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER
THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE
WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH
THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A
RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID
CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF
A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A
RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG
SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH
56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE
NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE
NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL
ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE
BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF
35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH
A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37
FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40
FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF
LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER
MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE

34

OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

35

**EXHIBIT B**

**DOCUMENTS**

A. Loan Documents. The documents listed below, numbered 1 through 7, inclusive, and amendments, modifications and supplements thereto which have received the prior written consent of Lender, together with any documents executed in the future that are approved by Lender and that recite that they are "Loan Documents" for purposes of this Agreement are collectively referred to herein as the Loan Documents.

1. This Agreement;

2. Promissory Note of even date herewith in the original principal amount of the Loan made by Borrower payable to the order of Lender;

3. Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents of even date herewith executed by Borrower, as Trustor, to Chicago Title Company, as Trustee, for the benefit of Lender, as Beneficiary;

4. Hazardous Materials Indemnification Agreement of even date herewith executed by Borrower.

5. Assignment of Contracts

B. Other Related Documents (Which Are Not Loan Documents):

1. Manager's Consent;

2. Certificate Regarding Loan Purpose;

3. Truth-In-Lending Affidavit;

4. Summary of Loan Terms and Good Faith Estimate

5. Profit Participation Agreement

36

**EXHIBIT C**

FINANCIAL REQUIREMENT ANALYSIS

THIS SPACE INTENTIONALLY LEFT BLANK

37

EXHIBIT D

DISBURSEMENT PLAN

A. Timing of Disbursement. Unless another provision of this Agreement specifies otherwise, on or before the fifteenth (15th) day of each month, Borrower shall submit to:

> Hankey Capital, LLC
> c/o Scott Dobbins
> 4751 Wilshire Blvd., Suite 110
> Los Angeles, California 90010
> Phone :  (323) 692-4022
> Facsimile:  (323) 692-4122

with a copy to:

> [none]

a written itemized statement, signed by Borrower ("Application for Payment") setting forth:

1. A description of the work performed, material supplied and/or costs incurred or due for which disbursement is requested with respect to any line item ("Item") shown in the Disbursement Budget. Notwithstanding the amount of any line item shown in the Disbursement Budget, Borrower may reallocate amounts among the line items by allocating cost savings in any line item to Contingency, and amounts from the Contingency to any line item with a cost overrun; provided, however, that the aggregate amount of all disbursements under the Loan shall not exceed the Loan amount; and

2. The total amount incurred, expended and/or due for each requested Item less prior disbursements.

Each Application for Payment by Borrower shall constitute a representation and warranty by Borrower that Borrower is in compliance with all the conditions precedent to a disbursement specified in this Agreement. With respect to Borrower's remaking of the representations and warranties set forth in Article 6 of this Agreement on the date of submission of each Application for Payment, to the extent circumstances have changed for reasons beyond the reasonable control of Borrower such that Borrower must qualify such representations and warranties as of the date of delivery of any such Application for Payment, such qualification, to the extent it renders the applicable representation materially untrue or breaches the applicable warranty, shall merely be a failure of condition to Lender's obligation to disburse funds under the provisions of this EXHIBIT D, as opposed to constituting an Event of Default.

B. Lender's Right to Condition Disbursements. Lender shall have the right to condition any disbursement upon Lender's receipt in the appropriate form of the

following submissions and Lender's reasonable determination that such submissions comply with the requirements set forth below:

1. The Application for Payment and an itemized requisition for payment;

2. Bills, invoices, documents of title, vouchers, statements, receipts and any other documents evidencing the total amount expended, incurred or due for any requested Items;

3. Evidence of Borrower's use of a lien release, joint check and voucher system acceptable to Lender for payments or disbursements to any contractor, subcontractor, materialman, supplier or lien claimant;

4. Architect's, inspector's and/or engineer's periodic certifications of the percentage and/or stage of construction that has been completed and its conformance to the Plans and Specifications and governmental requirements based upon any such architect's, inspector's and/or engineer's periodic physical inspections of the Property and Improvements;

5. Waivers and releases of any mechanics' lien, stop notice claim, equitable lien claim or other lien claim rights (conditional for costs to be paid from the current Application for Payment, and unconditional for all prior costs which have been disbursed by Lender by the twenty-fifth (25th) day of the immediately preceding month or were to have been paid from Borrower's own funds under the Disbursement Budget);

6. Reasonable evidence of Borrower's compliance with the provisions of the Sections of this Agreement entitled CONSTRUCTION and AUTHORITY/ENFORCEABILITY. Where this Agreement calls for the delivery of a certificate as evidence of any action, such certificate, if factually accurate, shall constitute such reasonable evidence;

7. A written release executed by any surety to whom Lender has issued or will issue a set-aside letter and/or any public entity or agency which is a beneficiary under any instrument of credit, set-aside letter or standby letter of credit which Lender has issued or will issue with respect to the Loan;

8. For final payment only with respect all or any separate, independent portion of the Improvements, valid, recorded Notice(s) of Completion for the Improvements or any portions of the Improvements for which Notice(s) of Completion may be recorded under applicable law, and final payment lien release waivers (conditional with respect to costs to be paid from such final payment, and unconditional for all other costs);

9. Certificate of Substantial Completion from the Architect and Engineer, if any, prior to the final retention disbursement;

39

10. Any other document, requirement, evidence or information that Lender may have reasonably requested under any provision of the Loan Documents at least thirty (30) days prior to the Application for Payment in question; and

11. Except with respect to items covered under #12 and #13 below, evidence that any goods, materials, supplies, fixtures or other work in process for which disbursement is requested have been incorporated into the Improvements.

12. In the event any Application for Payment includes the cost of materials stored at a location other than the Property ("Offsite Materials"), each of the following: (a) evidence that the Offsite Materials have been purchased by Borrower, have been segregated from other materials in the facility and have been appropriately marked to indicate Borrower's ownership thereof and Lender's security interest therein; and (b) evidence that the Offsite Materials are insured as required by this Agreement.

13. In the event that any Application for Payment includes the cost of materials stored on the Property ("Onsite Materials"), each of the following: (a) evidence that the Onsite Materials have been purchased for or by Borrower; (b) evidence that the Onsite Materials are insured as required hereunder; and (c) evidence that the Onsite Materials are stored in an area on the Property for which adequate security is provided against theft and vandalism.

Borrower acknowledges that this approval process may result in disbursement delays and Borrower hereby consents to all such delays; provided, however, that Lender shall use commercially reasonable efforts to respond to all requests for approval within the time periods designated in this Agreement.

C. Periodic Disbursement of Construction Costs, Site Work Costs and Offsite Costs. As construction progresses, the amount of the retention as provided under any construction contract to which Borrower is a party (the "Retention") shall be disbursed into the Account or to or for the benefit or account of the Borrower, Property or Improvements upon Borrower's delivery to Lender of (1) the applicable lien releases specified above in Paragraph B.8 of this EXHIBIT D, (2) the applicable certificate specified above in Paragraph B.9 of this EXHIBIT D and (3) solely with respect to the Construction Contract, a duly issued temporary certificate of occupancy for the Improvements and completion of the Improvements in accordance with the Plans and Specifications.

D. Partial Disbursements. No disbursement shall be made for a particular Application for Payment unless all required supporting materials are included for Items totaling at least sixty-five percent (65%) of the total amount of funds requested thereunder. Subject to the foregoing, to the extent that an unconditional lien release and waiver for an Item that was included in a prior disbursement is not delivered to Lender prior to the date that Lender approves the subsequent disbursement, Lender may withhold from the then current approved disbursement an amount equal to one hundred fifty percent (150%) of the amount for the Item(s) which had been previously funded. Thereafter, such withheld

40

amount shall be disbursed as part of the next ensuing disbursement upon Lender's receipt of the missing unconditional lien release and waiver.

E. Timing of Disbursements. Lender shall exercise diligent and good faith efforts to disburse funds for all approved Items in any Application for Payment within the applicable Lender Payment Turnaround Period.

41

**EXHIBIT E**

**LEASING PARAMETERS**

**THIS SPACE INTENTIONALLY LEFT BLANK**

**EXHIBIT F**

**CERTIFICATE OF APPROVAL**

**THIS SPACE INTENTIONALLY LEFT BLANK**

43

**EXHIBIT G**

**SCHEDULE OF PRE-CLOSING DISBURSEMENTS**

**THIS SPACE INTENTIONALLY LEFT BLANK**

44

# EXHIBIT R



# Hankey Capital

*a California Finance Lender*
*Department of Business Oversight License No. 6038812*

**PROMISSORY NOTE**
**(VARIABLE RATE)**

| BORROWER'S NAME | MATURITY DATE |
|---|---|
| CRESTLLOYD, LLC, a California limited liability company (the "Borrower") | October 31, 2020 |

$82,500,000.00          Los Angeles, California          October 25, 2018

On or prior to October 31, 2020 (the "Maturity Date"), for value received, Borrower promises to pay to the order of HANKEY CAPITAL, LLC, a California limited liability company ("Lender"), at its office at 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010, or at such other place as the holder of this Note may from time to time designate in writing, the principal sum of Eighty-Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding, at the rate of four and three-quarters percent (4.75%) per annum above the Prime Rate.

Prime Rate: The rate of interest published from time to time by *The Wall Street Journal* as the "prime rate." **In no event shall the interest rate hereunder be less than 11.0%.**

The interest rate on this Note is subject to change from time to time based on changes in the Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notice to Borrower. Lender will disclose to Borrower the current Index rate upon Borrower's request. Borrower acknowledges that Lender may make loans based on other rates as well. The Index currently is 5.25% per annum. Borrower hereby waives the right to receive notice of any future change(s) in the Index rate. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) Increase Borrower's payments to ensure that the Loan will pay off by its original final maturity date, (b) Increase Borrower's payments to cover accruing interest, (c) Increase the number of payments, and (d) continue the payments and increase Borrower's final payment.

Commencing on the first full calendar month following the date of the initial disbursement, and continuing on the first day of each subsequent calendar month until the Maturity Date, Borrower shall make monthly payments of interest-only in arrears on the disbursed and

1

unpaid principal balance of this Note.  Interest shall be computed daily based upon a three hundred sixty (360) day year for the actual number of days elapsed.  Should interest not be paid when due, it shall become part of the principal and thereafter bear interest as herein provided.

Should default be made in the payment of principal or interest when due or in the performance or observance when due of any term, covenant or condition of any deed of trust, security agreement or other agreement (including amendments and extensions thereof) securing or pertaining to this Note, then, upon Lender's written notice to Borrower of such default (sent via certified mail), and upon Borrower's failure to cure such default within thirty (30) days from the date of receipt of said notice, at the option of the holder hereof, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable and thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein as it may vary from time to time.  Borrower acknowledges and agrees that during the time that any payment of principal, interest or other amounts due under this Note is delinquent, the holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on the holder's ability to avail itself of other opportunities.  Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such costs and expenses and that proof of actual damages would be costly or inconvenient.  Borrower therefore agrees that interest at the increased rate of five percent (5%) per annum over and above the interest rate contracted for in this Note represents a reasonable sum considering all the circumstances existing on the date of this Note and represents a fair and reasonable estimate of such costs and expenses.  No delay or omission on the part of the holder hereof in exercising any right hereunder, or under any such deed of trust, security agreement or other agreement shall operate as a waiver of such right or of any other right under this Note or under any such deed of trust, security agreement or other agreement.

Except with respect to the final monthly payment hereunder and following the Maturity Date, if any payment of principal or interest under this Note shall not be made within five (5) calendar days of the date due, a late charge of five percent (5%) of the overdue amount may be charged by the holder for the purpose of defraying the expenses incident to handling such delinquent payments.  Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such expenses and that proof of actual damages would be costly or inconvenient.  Borrower therefore agrees that such late charge represents a reasonable sum considering all of the circumstances existing on the date of this Note and represents a fair and reasonable estimate of the costs that will be sustained by the holder due to the failure of Borrower to make timely payments.  Such late charge shall be paid without prejudice to the right of the holder to collect any other amounts provided to be paid or to declare a default under this Note or under the Deed of Trust referred to in this Note or from exercising any of the other rights and remedies of the holder, including, without limitation, the right to declare the entire balance of the principal and accrued interest then remaining unpaid immediately due and payable.

In no event shall interest accrue or be payable hereon or under any such deed of trust, security agreement or other agreement in excess of the maximum amount of interest permitted on the date hereof by the laws of the State of California.

2

If this Note is not paid when due, whether at its specified or accelerated maturity date, Borrower promises to pay all costs of collection and enforcement of this Note, including, but not limited to, reasonable attorneys' fees and costs, incurred by the holder hereof on account of such collection or enforcement, whether or not suit is filed hereon.

Principal and interest shall be payable in lawful money of the United States without setoff, demand or counterclaim. Borrower waives the defense of the statute of limitations in any action on this Note. Presentment, notice of dishonor, and protest are waived by all makers, sureties, guarantors and endorsers of this Note. Such parties expressly consent to any extension of the time of payment hereof or any installment hereof, to any renewal, and to the release of any or all of the security given for the payment of this Note or the release of any party liable for this obligation.

This Note shall be governed and construed in accordance with the laws of the State of California.

Borrower may prepay this Note in whole or in part, at any time. In the event this Note is paid in its entirety on or prior to April 30, 2020, a prepayment penalty equal to one percent (1.0%) of the then-outstanding principal balance shall be payable hereunder. No partial prepayment shall affect the obligation of Borrower to pay the next subsequent regular installment payable hereunder until the entire balance of principal and interest shall have been paid in full.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company


By: _____
    Nile Niami, Manager


3

This loan is made pursuant to California Finance Lender's Law,
Division 9 (commencing with Section 22000) of the Financial Code.
For information contact the Department of Business Oversight, State of California.

# EXHIBIT S

## SECURITY AGREEMENT (PERSONAL PROPERTY)

THIS SECURITY AGREEMENT is made this 25th day of October, 2018 by and between CRESTLLOYD, LLC, a California limited liability company (hereinafter referred to as "Guarantor") and HANKEY CAPITAL, LLC, a California limited liability company (hereinafter, "Secured Party").  Guarantor hereby grants to Secured Party a security interest in all that certain personal property (hereinafter "Security"), as described herein and the proceeds and products thereto:

**See Exhibit "A" attached hereto and incorporated herein by reference.**

The above "Security" is collateral/security for the payment to Secured Party of any and all sums under the terms of a certain Promissory Note, of even date herewith, executed by Guarantor in favor of Secured Party, in the principal amount of Eighty-Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00).

Guarantor shall keep the Security in a safe place, and shall not use it for any unlawful purpose.  Guarantor hereby declares and warrants to Secured Party that Guarantor is the absolute and sole owner, and is in possession of all of the Security, and that the same is free and clear of all liens, encumbrances, adverse claims, and any other security interests. Guarantor shall not sell or offer to sell or otherwise transfer the Security or any interest therein without the prior written consent of Secured Party; nor shall Guarantor sell, assign or create or permit to exist any lien on or security interest in the Security in favor of anyone other than Secured Party, unless Secured Party consents thereto in writing.  Guarantor shall, upon Secured Party's request, remove any unauthorized lien or security interest on the Security, and defend any claim affecting the Security; and Guarantor shall pay all charges against the Security, including but not limited to taxes, assessments, encumbrances and insurance, and upon Guarantor's

failure to do so, Secured Party may pay any such charge as it deems necessary and add the amount paid to the Indebtedness of Guarantor secured hereunder.

If Guarantor fails to fulfill any obligations under said Indemnification Agreement at the time and in the manner therein specified, or if any breach be made of any obligation, promise or warranty of Guarantor herein contained, then the whole unpaid sums due thereunder shall immediately become due and payable, without notice, at the option of Secured Party, and Secured Party, at its option, may: (a) sell or otherwise dispose of the Security at public or private sale, unless the Security is perishable and threatens to decline speedily in value or is a type customarily sold on a recognized market, Secured Party will give Guarantor at least ten (10) business days prior written notice of the time and place of any public sale or of the time after which any private sale or any other intended disposition may be made; (b) retain the Security in satisfaction of the obligations secured hereby, with notice of such retention sent to Guarantor as required by law; (c) notify any parties obligated on any of the Security consisting of accounts, instruments, chattel paper, choses in action or the like to make payment to Secured Party and enforce collection of any of the Security herein; (d) require Guarantor to assemble and deliver any of the Security to Secured Party at a reasonably convenient place designated by Secured Party; (e) apply all sums received or collected from or on account of the Security, including the proceeds of any sales thereof, to the payment of the costs and expenses incurred in preserving and enforcing the rights of Secured Party, including, but not limited to, reasonable attorneys' fees, provided that in the event of a bona fide dispute reasonably attorneys' fees shall be due only to the party prevailing in such dispute, and the indebtedness secured hereby in such order and manner as Secured Party in its sole discretion determines; Secured Party shall

2

account to Guarantor for any surplus remaining thereafter and shall pay such surplus to the party entitled thereto, including any second secured party who has made a proper demand upon Secured Party and has furnished proof to Secured Party as requested in the manner provided by law; in like manner, Guarantor agrees to pay to Secured Party without demand any deficiency after any Security has been disposed of and proceeds applied as aforesaid Secured Party shall have all the rights and remedies of a secured party under the Uniform Commercial Code in California or any jurisdiction where enforcement is sought. Guarantor agrees to pay all costs incurred by Secured Party in enforcing its rights under this Security Agreement, including but not limited to reasonable attorneys' fees. All rights, powers and remedies of Secured Party hereunder shall be cumulative and not alternative. No delay on the part of Secured Party in the exercise of any right or remedy shall constitute a waiver thereof, and no exercise by Secured Party of any right or remedy shall preclude the exercise of any other right or remedy or further exercise of the same remedy.

It is further agreed, subject to applicable law, that upon any sale of the Security according to law, or under the power herein given, that Secured Party may bid at said sale, or purchase the Security, or any part thereof at said sale.

If more than one Guarantor executes this Security Agreement, the obligations hereunder are joint and several. All words used herein in the singular shall be deemed to have been used in the plural when the context and construction so require. Any married person who signs this Security Agreement expressly agrees that recourse may be had against his/her separate property for all of his/her obligations to Secured Party.

This Security Agreement shall inure to the benefit of and bind Secured Party, its successors and assigns and each of the Secured Party, their respective heirs,

3

executors, administrators and successors in interest.  Upon transfer by Secured Party

of any part of the obligations secured hereby, Secured Party shall be fully discharged

from all liability with respect to the Security transferred therewith.

Whenever possible each provision of this Security Agreement shall be

interpreted in such manner as to be effective and valid under applicable law, but, if any

provision of this Security Agreement shall be prohibited or invalid under applicable law,

such provisions shall be ineffective only to the extent of such prohibition or invalidity,

without invalidating the remainder of such provisions or the remaining provisions of this

Security Agreement.

IN WITNESS WHEREOF, Secured Party and Guarantor have executed this

instrument, as of the date set forth above.

"Secured Party"

HANKEY CAPITAL, LLC
a California limited liability company


By: _____
     W. Scott Dobbins, President



"Guarantor"

CRESTLLOYD, LLC,
a California limited liability company


By: _____
     Nile Niami, Manager

4

# EXHIBIT T

**EXHIBIT A**

5

## PROFIT PARTICIPATION AGREEMENT

This Profit Participation Agreement (this "Agreement") is made as of October 25, 2018, between CRESTLLOYD, LLC, a California limited liability company (the "Borrower") and HANKEY CAPITAL, LLC, a California limited liability company (the "Lender") for the purpose of memorializing the parties' agreement with respect to that certain real property commonly known as, and located at, 944 Airole Way, Los Angeles, California (the "Property").

WHEREAS, contemporaneous with this Agreement, the Lender is making a loan to the Borrower, for completion of construction of improvements on the Property, in the principal amount of Eighty-Two Million Five Hundred Thousand Dollars ($82,500,000.00), which loan shall be secured by, among other things, a first-priority deed of trust on the Property (the "Loan"); and

WHEREAS, Borrower's execution of this Agreement is a condition of Lender's agreement to make the Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties have agreed as follows:

1.    LENDER'S RIGHT OF PROFIT PARTICIPATION

If, at any time, during the term of the Loan or following repayment of the Loan, the Property is sold by the Borrower, or by any affiliate of the Borrower, for a purchase price in excess of $200,000,000, Lender shall be entitled to receive, from the sale proceeds, a Lender Profit Participation Payment in the amount of $3,500,000. Borrower's obligation to make the Lender Profit Participation Payment shall be evidenced by a Memorandum of Agreement, to be recorded in the Official Records of the County Recorder of Los Angeles County, California.

2.    GENERAL PROVISIONS

(a) This Agreement shall be governed by the laws of the State of California as they apply to contracts entered into and wholly to be performed in such state. This Agreement represents the entire agreement between the parties with respect to the profit participation by and between Lender and Borrower and may only be modified or amended in writing signed by both parties.

(b) Any notice, demand or request required or permitted to be given by either the Lender or the Borrower pursuant to the terms of this Agreement shall be in writing and shall be deemed given (i) when delivered personally, (ii) five days after it is deposited in the U.S. mail, certified with return receipt requested and with postage prepaid, or (iii) one day after deposit (prepaid) with a nationally recognized overnight courier, and addressed to the party being notified at his or her address specified on the applicable signature page hereto or such other address which the addressee may subsequently notify the other party in writing.

(c) Lender's failure to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions, nor prevent the Lender thereafter from enforcing each and every other provision of this Agreement. The rights granted to lender herein are cumulative and shall not constitute a waiver of Lender's right to assert all other legal remedies available to it under the circumstances.

(d) The parties acknowledge that money damages may not be an adequate remedy for violations of this Agreement and that the Lender may, in its sole discretion, apply to a court of competent jurisdiction for specific performance or injunctive or such other relief as such court may deem just and proper to enforce this Agreement or to prevent any violation hereof and, to the extent permitted by applicable law, Borrower waives any objection to the imposition of such relief in appropriate circumstances.

(e) This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(f) Borrower represents that it has duly authorized, executed and delivered this Agreement and that this Agreement is a valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

IN WITNESS WHEREOF, the Borrower has executed this Agreement as of the first date above written.

BORROWER:                                    LENDER:

CRESTLLOYD, LLC,                             HANKEY CAPITAL, LLC,
a California limited liability company        a California limited liability company

By: _____                 By: _____
Nile Niami, Manager                              W. Scott Dobbins, President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _October 31 2018_ before me, _Nigel Gibbs_ a Notary Public, personally appeared _Nile Nigmi_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____      (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2184239
My Comm. Expires Oct 4, 2020

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On November 1, 2018 before me, T Douglas a Notary Public, personally appeared W. Scott Dobbins, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE,
AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE
MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE
CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT
CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET;
THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35'
48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A
RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE
BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET;
THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF
44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE
CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET
ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16"
EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE,
AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141
PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13°
13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID
EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13'
20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A
POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A
LENGTH OF 115.83 FEET.

APN: 4369-026-021

# EXHIBIT U



**This page is part of your document - DO NOT DISCARD**





## 20181122919

Pages:
0005

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/06/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 29.00 |



**LEADSHEET**



201811060250001

00015919185

009447827

**SEQ:
19**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

Exhibit B - 9

T72

*f/II/IH*

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attn.: Eugene M. Leydiker

---

Space Above for Recorder's Use

Loan No.

## MEMORANDUM OF AGREEMENT

In connection with a certain loan transaction between Hankey Capital, LLC, a California limited liability company (the "Lender") and Crestlloyd, LLC, a California limited liability company (the "Borrower"), the undersigned declare and acknowledge that the Borrower has executed a Profit Participation Agreement (the "Agreement"), dated of even date herewith, pertaining to the real property described in Exhibit A hereof. This instrument is a memorandum of the Agreement, and the same is incorporated herein by this reference with the same effect and as though set forth herein in its entirety.

**LENDER:**

**HANKEY CAPITAL, LLC**
a California limited liability company

By: _____
W. Scott Dobbins, President

**BORROWER:**

**CRESTLLOYD, LLC,**
a California limited liability company

By: _____
Nile Niami, Manager

1

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California

County of LOS ANGELES

On OCTOBER 31 2018 before me, Nigel C. Gibbs a Notary Public, personally
appeared Nile Niami , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____    (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

Exhibit B - 11

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California

County of Los Angeles

On November 1, 2018 before me, T Douglas a Notary Public, personally
appeared W. Scott Dobbins , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

Exhibit B - 12

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

Exhibit B - 13

# EXHIBIT V



**This page is part of your document - DO NOT DISCARD**

## 20181122917





Pages:
0020

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/06/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 121.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 346.00 |



**L E A D S H E E T**

201811060250001

00015919183

009447827

**SEQ:
17**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72



**RECORDING REQUESTED BY**

**AND WHEN RECORDED MAIL TO:**

HANKEY CAPITAL, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attention: Eugene Leydiker

## CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS
### [944 Airole Way]

This CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS (hereinafter the "Deed of Trust") made this 25th day of October, 2018, by CRESTLLOYD, LLC, a California limited liability company (hereinafter referred to as "Trustor", whose address is c/o Skyline Development, 8981 W. Sunset Blvd., Suite 303, West Hollywood, California 90069 to CHICAGO TITLE COMPANY, hereinafter called "Trustee", for the benefit of HANKEY CAPITAL, LLC, a California limited liability company, hereinafter called "Beneficiary", whose address is 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010.

This Deed of Trust is given for purpose of securing the following:

(1)     Performance of all obligations of Trustor under any agreements of Trustor incorporated by reference or contained herein.

(2)     Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.

(3)     Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.

1

94109

17 E

Non-Order Search
Doc: CALOSA:2018 01122917

Requested By: ravindrak, Printed: 5/5/2020 9:11 PM

(4)    Payment of all sums advanced or paid out by the Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

This Deed of Trust, and any other instruments given to evidence or further secure the payment and performance of any obligation secured hereby may hereinafter be referred to as the "Trust Documents". The payment obligations of Trustor described in Paragraphs 2, 3, and 4 above are hereinafter referred to as the "Indebtedness".

Trustor, in consideration of the premises and the aforesaid Indebtedness, and in order to secure its obligations under the Note, according to their terms, has granted, bargained, sold, conveyed, confirmed, transferred and assigned and by these presents does grant, bargain, sell, convey, confirm, transfer and assign unto Trustee, his successors and assigns, with power of sale and right of entry and possession, Trustor's interest in and to that certain property described as follows:

(A)    The land described in Exhibit A attached hereto, made a part hereof.

(B)    All buildings and improvements now or hereafter located on said land.

(C)    All easements, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits of the aforesaid property and all the estate, title and interest, homestead or other claim or demand, as well in law as in equity, which Trustor now has or hereafter may acquire, of, in or to said property, or any part thereof, with the appurtenances thereto.

(D)    All of Trustor's right, title and interest in, to or under the property described in Exhibit B attached hereto, made a part hereof and comprising one page.

Trustor's interest in and to the land, buildings, improvements and the rights and property described in paragraphs (A) through (D) above are hereinafter referred to collectively as the "Property".

TO HAVE AND TO HOLD the same unto Trustee, Trustee's successors and assigns, Trustor hereby covenants and agrees as follows:

### ARTICLE I
### COVENANTS AND AGREEMENTS OF TRUSTOR

Trustor hereby covenants and agrees:

1.00    Payment of Indebtedness. Trustor will pay the Indebtedness hereby secured promptly when and as said Indebtedness becomes due and payable.

1.01    Liens. Trustor, absent the written consent of Beneficiary, will not suffer any lien to

2

be created hereafter upon the Property, or any part thereof, prior to the lien of this Deed of Trust, and will not do or suffer any act or omission whereby the value of the Property, or lien hereof or of any estate or title covered hereby, may be diminished or impaired in any way.

1.02   Maintenance, Repair and Alterations.   Trustor will keep any buildings and improvements constructed on the Property in good condition and repair, will not remove or demolish any buildings or improvements thereon, and commit or permit no waste thereon. Should said building or buildings, or any part thereof, require inspection, repair or protection other than that given it by Trustor, then, and in that event, Beneficiary may enter or cause entry to be made upon the Property and into said building or buildings for inspection, repair or protection thereof and such repair may be made by Beneficiary and be made or done in such manner as fully to protect the interest of Beneficiary in the opinion of Beneficiary, and any and all sums expended by Beneficiary in doing or causing to be done any of the things above authorized are secured by this Deed of Trust and shall be paid by Trustor on demand.   Trustor shall comply with all laws, ordinances, governmental regulations, covenants, conditions and restrictions affecting the Property or requiring any alteration or improvement thereof, and permit no violation, as to the Property, of any such law, ordinance, governmental regulation, covenant, condition or restriction affecting the Property.

1.03   Title to Property.   Trustor covenants that Trustor is lawfully seized of each and every part and parcel of the Property as described in the granting clauses hereof and has good and indefeasible title to the same; that there are no liens or encumbrances on said property except for such liens and encumbrances that are approved by Beneficiary; and Trustor forever will warrant and defend the title in the same to the Trustee against the claims and demands of all persons. If during the existence of this Deed of Trust there be commenced or pending any suit or action affecting said property, or any part thereof, or the title thereto, or if any adverse claim for or against said property, or any part thereof, be made or asserted, Trustee or Beneficiary may appear in said suit or action and retain counsel therein and defend the same or otherwise take such action therein as Trustee or Beneficiary may deem advisable, and may settle or compromise the same or the said adverse claim, and in that behalf and for any of the said purposes, may pay and expend such sums of money as Trustee or Beneficiary may deem to be necessary.

1.04   Taxes and Assessments.   Trustor shall pay, satisfy and discharge at maturity all taxes and assessments and all other charges and encumbrances which now are or hereafter shall be or appear to be a lien upon the Property, or any part thereof, or upon the debt secured hereby; and in default thereof, Beneficiary, without demand or notice, may pay, satisfy or discharge said taxes, assessments, charges or encumbrances, and pay and expend such sums of money as Beneficiary may deem to be necessary therefor, and shall be the sole judge of the legality or the validity of such taxes, assessments, charges or encumbrances, and the amount necessary to be paid in the satisfaction or discharge thereof.

1.05   Evidence of Payment of Taxes and Assessments.   Trustor further agrees to deposit with Beneficiary within thirty (30) days of Beneficiary's request, all receipts or other satisfactory evidence of the payment of taxes, assessments, charges, claims and liens of every nature (hereinafter collectively referred to as "taxes" or "tax") affecting or which may affect the Property or any part thereof.   Upon the request of Beneficiary, following Trustor's failure to

3

provide such evidence of payment, Trustor thereafter shall deposit with and pay to Beneficiary, on the first day of each calendar month, a sum equivalent to one-twelfth (1/12) of the estimated annual taxes assessed or levied against the Property and all annual premiums for insurance required by this Deed of Trust to be furnished by Trustor, and upon the date when any such tax or insurance premiums shall become due shall pay to Beneficiary an amount which, taken together with tax and insurance deposits theretofore made and not expended for taxes and insurance, shall be sufficient to pay and discharge such tax and insurance premiums. Beneficiary shall not be liable for interest on any such tax and insurance deposits and may mingle the same with its general funds, and such deposits shall create a debtor-creditor relationship and not that of a trust. Trustor shall procure and deliver to Beneficiary, in advance, statements for such charges. Payments from said account for such purposes may be made by Beneficiary at Beneficiary's discretion, even though subsequent owners of the property described herein may benefit thereby. In the event of any default under the terms of this Deed of Trust, any part or all of the balance of said account may be applied to any part of the indebtedness hereby secured, and, in refunding any part of said account, Beneficiary may deal with whomever is represented to be the owner of said property at that time. The enforceability of the covenants relating to taxes and insurance premiums provided for herein shall not be affected, except to the extent that said obligations have been actually met by compliance with this paragraph.

1.06    Insurance.    Trustor at all times shall keep the buildings and improvements which are now or hereafter erected upon said property insured against loss or damage by vandalism, malicious mischief and fire with extended coverage (and by other hazards as reasonably may be required by Beneficiary) and shall procure and maintain in force such other insurance as may be required by Beneficiary, all in amounts approved by Beneficiary and by an insurance company or companies or governmental agency or instrumentality approved by Beneficiary, and the policies for such insurance shall be made payable, in case of loss, to Beneficiary pursuant to standard mortgagee's loss payable endorsement, and shall be delivered to and held by Beneficiary as further security for payment under the Note and other moneys herein mentioned, said policies shall provide for fifteen days' notice to Beneficiary prior to cancellation or nonrenewal for any reason, including nonpayment of premium; and in default thereof, Beneficiary may procure such insurance to be effected upon Beneficiary's interest as Beneficiary or upon the interest of Trustee or upon the interest of the owners of the Property and in their names; loss, if any, being made payable to Beneficiary, and Beneficiary may pay and expend for premiums for such insurance such moneys as Beneficiary may deem to be necessary. The form of said policies shall be approved by Beneficiary. If Trustor is a co-insurer under any policies of fire and extended coverage insurance, then Trustor covenants and agrees that, upon request of Beneficiary at any time, it will furnish the Beneficiary satisfactory evidence of insurable value of the improvements situated on said Property. In addition, Trustor shall procure and maintain liability insurance insuring Trustor and, if requested, Beneficiary against liability because of personal injury or property damage in amounts and by companies approved by Beneficiary.

1.07    Insurance and Condemnation Proceeds.    Should a loss occur under any policy of insurance required by Paragraph 1.06 hereof, or should all or any portion of the Property be taken or damaged by reason of any public improvement or condemnation proceeding, Beneficiary shall be entitled to all insurance proceeds, compensation, awards, and other payments or relief therefor (all hereinafter referred to as "proceeds"), and, whether or not the

4

security for the Note secured by this Deed of Trust has been impaired, Beneficiary shall be entitled to apply the proceeds collected, after first deducting therefrom all its expenses, including attorneys' fees, in collecting said proceeds, to any and all indebtedness secured hereby and thereafter shall pay the balance remaining, if any, to Trustor. At its option, in its own name, Beneficiary shall be entitled to commence, appear in and prosecute any action or proceedings or to make any compromise or settlement, in connection with such loss, taking or damage. All such proceeds and rights of action hereby are assigned to Beneficiary. Notwithstanding the foregoing, absent an "Event of Default" as set for in Paragraph 4.00 below, in the event of such insurance loss or that only a portion of the Property is taken or damaged by reason of any public improvement or condemnation proceeding, and restoration is necessary, Beneficiary, after deducting from said proceeds received all its expenses, including attorneys' fees, may release to Trustor as restoration progresses, so much of said amount as equals the costs of restoration effected by Trustor, subject to reasonable conditions, including the right of Beneficiary to withhold up to ten percent (10%) of said amount until completion and the expiration of the period within which mechanics' or materialmen's liens may be filed and until receipt of satisfactory evidence that no liens exist. Any amount required to complete such restoration in excess of such proceeds shall be paid to Trustor before such proceeds are used. Trustor agrees to execute such further assignments of any such proceeds and rights of action as Beneficiary or Trustee may require.

1.08  Performance of Other Obligations. Trustor promises and agrees to perform all of the obligations in and under the Note, and any other documents given now or hereafter as security for the Indebtedness secured by this Deed of Trust.

1.09  Restrictions on Transfer or Further Encumbrance. Absent the prior written consent of Beneficiary, Trustor shall not (a) execute or deliver any pledge, security agreement, mortgage, deed of trust or other instrument of hypothecation, covering all or any portion of the Property or any interest therein; (b) sell, convey, alienate, transfer or otherwise dispose of all or any portion of the Property or any interest therein, whether voluntarily or involuntarily, by operation of law or otherwise; (c) in the event Trustor is a corporation or trust or similar entity, sell, convey, transfer or encumber, whether voluntarily, involuntarily or otherwise, more than ten percent (10%) of the issued and outstanding capital stock of Trustor or of the beneficial interest of such trust or similar entity; or (d) in the event Trustor is a limited or general partnership, or a joint venture, change any constituent general partner or any joint venturer whether voluntarily, involuntarily or otherwise, or sell, convey, transfer, change or encumber any such general partner or joint venturer interests.

1.10  Environmental Compliance. Trustor shall keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of any federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions on, under or about the Property including, but not limited to, soil and ground water conditions. Trustor shall not use, generate, manufacture, store or dispose of on, under or about the Property or transport to or from the Property any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under any applicable federal or

5

state laws or regulations (collectively referred to hereinafter as "Hazardous Materials"), except only those materials and substances which are usually and customarily used in the operation of a residential construction project so long as the amount of such materials and substances which are used or stored upon the Property shall not exceed the amount reasonably required for the operation of such business in its normal and ordinary course.

Trustor shall immediately advise Beneficiary in writing of (i) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials affecting the Property ("Hazardous Materials Laws"); (ii) all claims made or threatened by any third party against Trustor or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (i) and (ii) above are hereinafter referred to as "Hazardous Materials Claims"); and (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

Beneficiary shall have the right to join and participate in, as a party, if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims and to have its reasonable attorneys' fees in connection therewith paid by Trustor.  Trustor shall be solely responsible for, and shall indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any loss, damage, cost, expense or liability directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or presence of Hazardous Materials on, under or about the Property, including, without limitation: (a) all foreseeable consequential damages; (b) the costs of any required or necessary repair, cleanup or detoxification of the Property, and the preparation and implementation of any closure, remedial or other required plans; and (c) all reasonable costs and expenses incurred by Beneficiary in connection with clauses (a) and (b) including, but not limited to, reasonable attorneys' fees.

Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Materials on, under, or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any Hazardous Material Claims, which remedial action, settlement, consent or compromise might, in Beneficiary's reasonable judgment, impair the value of the Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Materials on, under, or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action, provided that in such event Trustor shall notify Beneficiary as soon as practicable of any action so taken. Beneficiary agrees not to withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the

6

reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

1.11    Indemnification.    Trustor hereby agrees to indemnify Beneficiary and hold Beneficiary harmless from and against any and all claims, losses, damages, liabilities, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including, but not limited to, reasonable attorneys' fees and expenses) arising directly or indirectly, in whole or in part, out of (i) the presence on or under the Property of any Hazardous Materials (as defined in Paragraph 1.10), or any releases or discharges of any Hazardous Materials on, under or from the Property, or (ii) any activity carried on or undertaken on or off the Property, whether prior to or during the period during which any indebtedness under the Note is outstanding and whether by Trustor or any predecessor in title or any employees, agents, contractors or subcontractors of Trustor or any predecessor in title, or any third persons at any time occupying or present on the Property, in connection with the handling, treatment, removal, storage, decontamination, clean-up, transport or disposal of any Hazardous Materials (as defined in Paragraph 1.10) at any time located or present on or under the Property. The foregoing indemnity shall further apply to any residual contamination on or under the Property, or affecting any natural resources, and to any contamination of any property or natural resources arising in connection with the generation, use, handling, storage, transport or disposal of any such Hazardous Materials, and irrespective of whether any of such activities were or will be undertaken in accordance with applicable laws, regulations, codes and ordinances.

1.12    Environmental Provisions.    Trustor hereby acknowledges and agrees that the provisions of Paragraphs 1.10 and 1.11 hereof are intended to be "environmental provisions" (as defined in Section 736 of the California Code of Civil Procedure), and that Beneficiary is intended to have all of the rights of a secured lender under Section 736 of the California Code of Civil Procedure in respect of such "environmental provisions." Trustor further acknowledges and agrees that the rights afforded to Beneficiary under Section 736 of the California Code of Civil Procedure are in addition to all rights, powers and remedies otherwise available to Beneficiary under any of the Trust Documents or at law or in equity.

1.13    Financial Statements.    Trustor shall deliver to Beneficiary a copy of Trustor's federal and state tax returns, prepared by a certified public accountant, concurrently with Trustor's filing of said returns.

1.14    Covenant to Assign Future Leases.    Until all of the Indebtedness secured by the Deed of Trust shall have been paid in full, Trustor covenants and agrees that it will immediately transfer and assign to Beneficiary any and all other and future leases on all or any portion of the Property. Assignor further covenants and agrees to make, execute and deliver to Assignee on demand, and at any time or times, any and all written assignments and other instruments sufficient for this purpose or that Beneficiary may deem advisable for carrying out the true intent of this covenant.

## ARTICLE II
## ASSIGNMENT OF RENTS, ISSUES AND PROFITS

7

2.00    <u>Assignments of Rents.</u>    Trustor hereby assigns to Beneficiary the rents, issues, profits, royalties, and payment payable under any lease of the Property, or portion thereof including any oil, gas or mineral lease, or any installments of money payable pursuant to any agreement or any sale of said property or any part thereof, reserving unto Trustor the rights prior to default by Trustor in payment of the Indebtedness secured hereby or in the performance of any agreement hereunder, to collect and retain such rents, issues, profits, royalties, payments and installments of money as they may become due and payable. Upon any such default, Beneficiary, without regard to the adequacy of any security for the Indebtedness hereby secured, shall be entitled to (1) collect such rents, issues, profits, royalties, payments and installments of money and apply the same as more particularly set forth in this Paragraph, all without taking possession of the Property, or (2) enter and take possession of the Property or any part thereof, in person, by agent, or by a receiver to be appointed by the court and to sue for or otherwise collect such rents, issues, profits, royalties, payments and installments of money. Beneficiary may apply any such rents, issues, profits, royalties, payments and installments of money so collected, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, in such order as Beneficiary may determine, and, if such costs and expenses and attorneys' fees shall exceed the amount collected, the excess shall be immediately due and payable. The collection of such rents, issues, profits, royalties, payments and installments of money and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any  act done pursuant to such notice, except to the extent any such default fully is cured. Failure or discontinuance of Beneficiary at any time, or from time to time, to collect any such moneys shall not impair in any manner the subsequent enforcement by Beneficiary of the right, power and authority herein conferred on Beneficiary. Nothing contained herein, including the exercise of any right, power or authority herein granted to Beneficiary, shall be, or be construed to be, an affirmation by Beneficiary of any tenancy, lease or option, or an assumption of liability under, or the subordination of the lien or charge of this Deed of Trust to any such tenancy, lease or option. Trustor hereby agrees that, in the event Beneficiary exercises its rights as in this Paragraph provided, Trustor waives any right to compensation for the use of Trustor's furniture, furnishings or equipment in the Property for the period such assignment of rents or receivership is in effect, it being understood that the rents, issues, profits, royalties, payments and installments of money derived from the use of any such items shall be applied to Trustor's obligation hereunder as above provided. In the event that Trustor concurrently herewith or hereafter executes any separate assignment of rents or of leases to Beneficiary, then to the extent of any inconsistency between the provisions hereof and any such assignment, the provisions of such assignment shall control.

2.01    <u>Performance of Leases.</u>    Trustor promises and agrees to keep, perform and observe all of the lessor's covenants, agreements and obligations, under the terms of all leases now or hereafter executed relating to all or any portion of the Property, to require that lessees under said leases keep, perform, and observe all of the covenants, agreements and obligations thereunder on their part to be kept, performed and observed; not to alter, amend or modify such leases or any of them without the prior written consent of Beneficiary.

## ARTICLE III
## SECURITY AGREEMENT AND FIXTURE FILING

8

3.00    Creation of Security Interest. This Deed of Trust is deemed a Security Agreement as defined in the California Commercial Code, the Trustor being the Debtor and the Beneficiary being the Secured Party, and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be as prescribed (i) herein, or (ii) by general law, or (iii) as to such part of the security which is also reflected in the financing statement which will be filed to perfect the security interest created herein, by the specific statutory consequences now, or hereafter enacted and specified in the California Commercial Code, all at Beneficiary's sole election. Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and the hereby-stated intention of the parties hereto that everything used in connection with the operation or occupancy of the Property is and, at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property, irrespective of whether (1) any such item is physically attached to the buildings and improvements, (2) serial numbers are used for the better identification of certain equipment items capable of being filed by the Beneficiary, or (3) any such item is referred to or reflected in any such financing statement so filed at any time. Such mention in the financing statement is declared to be for the protection of the Beneficiary in the event any court or judge shall at any time hold that notice of Beneficiary's priority of interest must be filed in the California Commercial Code records to be effective against a particular class of persons, including, but not limited to, the federal government and any subdivision or entity of the federal government. Trustor covenants and agrees to reimburse Beneficiary for any costs incurred in filing such financing statement and any continuation statements.

3.01    Fixture Filing. Portions of the Property are goods which are or are to become fixtures relating to the land, buildings and improvements, and Trustor covenants and agrees that the recording of this Deed of Trust in the real estate records of the County where the land is located shall also operate from the time of recording as a Fixture Filing in accordance with Section 9313 of the California Uniform Commercial Code.

## ARTICLE IV
## DEFAULTS AND REMEDIES

4.00    Events of Default. Any of the following events shall be deemed an Event of Default hereunder, upon the expiration of any applicable grace period:

(a)    Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, whether at maturity or by acceleration or as part of any prepayment or otherwise; or

(b)    If the Trustor shall become insolvent or admit in writing its inability to pay its debts as they mature; or make any assignment for the benefit of creditors; or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business; or

(c)    If any order, judgment or decree shall be entered against Trustor decreeing its dissolution or diversion; or

9

(d)    If bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for relief under any bankruptcy law or any law for the relief of debtors shall be instituted against Trustor; or

(e)    A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein; or

(f)    There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in the Note or the Note, or any loan application or other agreement related thereto or any other now or hereafter existing agreement between Trustor or any affiliate of Trustor and Beneficiary.

4.01    Acceleration upon Default. Additional Remedies.  In the event of any such Event of Default, Beneficiary may declare, by notice given to Trustor, all Indebtedness secured hereby to be due and payable without any further presentment, demand, protest or notice of any kind. Thereafter Beneficiary may:

(a)    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of any security for the Indebtedness and obligations hereby secured, enter upon and take possession of the Property hereby granted, or any part thereof, in its own name or in the name of the Trustee, and do any acts which it deems necessary or desirable to preserve the rentability or increase the income of such property or protect the security hereof and with or without taking possession of the Property sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the rents, issues and profits collected, less costs and expenses of operation and collection including reasonable attorneys' fees and accountants' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice; and notwithstanding Beneficiary's or Trustee's continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in this instrument or by law upon the occurrence of any default including the right to exercise the power of sale;

(b)    Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof;

(c)    Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

10

4.02    Foreclosure by Power of Sale.  Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note, the Note and such receipts with evidence of expenditures made and secured hereby as Trustee may require. Trustee shall then have the following duties and powers:

(a)    Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Election to Sell as then required by law and by this Deed of Trust and after lapse of such time as may then be required by law and after recordation of such notice of default, Trustee, without demand on Trustor, shall, after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels or items and in such order as Trustee may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary, may purchase at such sale.

(b)    After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums due under the Note, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(c)    Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place first fixed for sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give new notice of sale.

4.03    Appointment of Receiver.  If any Event of Default described in Paragraph 4.00 of this Deed of Trust shall have occurred and be continuing, Beneficiary, as a matter of right but with notice as provided herein to Trustor, but without notice to anyone claiming under Trustor and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property.  Any such receiver or receivers shall have all the usual powers and duties of Beneficiary in case of entry as provided in Paragraph 4.01(a) and shall continue as such and exercise such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

4.04    Remedies Not Exclusive.  No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, in the Trust Documents, or by law provided or permitted, but each shall be distinct and cumulative and shall be in addition to every other remedy given hereunder, under the Trust Documents, or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this Deed of Trust or by the Trust Documents to Trustee or Beneficiary or to which either of them may be otherwise entitled,

11

may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

4.05  Partial or Late Payment.  The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums secured hereby or to declare a default as herein provided and in either event to assess a late charge or penalty. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon the condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this Deed of Trust or the other Trust Documents confirmed upon them or either of them upon the occurrence of a default.

4.06  Failure or Indulgence Not Waiver.  No failure or delay on the part of Beneficiary in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.

## ARTICLE V
## MISCELLANEOUS

5.00  Governing Law.  This Deed of Trust shall be governed by the laws of the State of California. In the event that any provision or clause of this Deed of Trust conflicts with applicable laws, such conflicts shall not affect other provisions of this Deed of Trust which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust are declared to be severable. This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.01  Statements by Trustor.  Trustor, upon fifteen (15) days' written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust and stating either that there are no known offsets or defenses existing against the debt, or if such known offsets or defenses are alleged to exist, the nature thereof.

5.02  Repayment.  In the event that Trustor fully satisfies its obligations under the Note, in lawful money of the United States of America, and pays all moneys herein agreed to be paid by Trustor, and the interest thereon, and also the reasonable expenses of this trust, as herein specified, then Trustee at the request and expense of Trustor, shall reconvey to Trustor, Trustor's successors or assigns, all the estate in the Property granted to Trustee by this instrument.

5.03  Change in Taxation Method.  In the event of the passage after the date of this Deed of Trust of any law of the State of California, deducting from the value of land, for the purpose

12

of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust for state or local purposes or the manner of the collection of such taxes so as to cause the assessment of a tax on Beneficiary or a lien or charge on this Deed of Trust, the entire amount due under said Note, at the option of said Beneficiary, without demand or notice, forthwith shall become due and payable; provided, however, that such option shall be ineffective if Trustor is permitted by law to pay the whole of such tax, in addition to all other payments required hereunder and, if prior to such specified date, Trustor does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall constitute a modification of this Deed of Trust.

5.04    Substitution of Trustee.   Beneficiary, from time to time, may substitute another Trustee in place of the Trustee named herein, to execute the trusts hereby created; and upon such appointment, and without conveyance to the successor trustee, the successor trustee shall be vested with all the title, interest, powers, duties and trusts in the Property hereby vested in or conferred upon Trustee herein named. Each such appointment and substitution shall be made by written instrument executed by the Beneficiary containing reference to this Deed of Trust sufficient to identify it, which, when recorded in the office of the County Recorder of the county or counties in which the Property is situated, shall be conclusive proof of proper appointment of the successor trustee. The recital or statements in any instrument executed by Trustee, in pursuance of any of said trusts of the due authorization of any agent of the Trustee executing the same, shall for all purposes be conclusive proof of such authorization.

5.05    Legal Proceedings by Trustee.   Trustee at any time, at Trustee's option, may commence and maintain suit in any court of competent jurisdiction and obtain the aid and direction of said court in the execution by it of the trusts or any of them, herein expressed or contained, and, in such suit, may obtain the orders or decrees, interlocutory or final of said court directing the execution of said trusts, and confirming and approving Trustee's acts, or any of them, or any sales or conveyance made by Trustee, and adjudging the validity thereof, and directing that the purchasers of the Property sold and conveyed be let into immediate possession thereof, and providing for orders of court or other process requiring the Sheriffs of the counties in which the Property is situated to place and maintain said purchasers in quiet and peaceable possession of the Property so purchased by them, and the whole thereof.

5.06    Reconveyance by Trustee.   Trustee, at any time, upon request of Beneficiary, may reconvey to Trustor or Trustor's successors or assigns, any portion of the Property without affecting the personal liability of any person for the payment of any of the Indebtedness, or the lien of this Deed of Trust upon the remainder of the Property not reconveyed.

5.07    No Estoppel.   Any failure of Trustee or Beneficiary to exercise any right or option by this Deed of Trust given or preserved to Trustee or Beneficiary shall not stop Trustee or Beneficiary from exercising any such right or option upon any subsequent default of Trustor.

5.08    Further Assurances.   Trustor, forthwith upon request, at any and all times hereafter, at the expense of Trustor, will cause to be made, executed, acknowledged and delivered to Trustee, any and every deed or assurance in law which Trustee or counsel of Trustee shall advise

13

or require for the more sure, effectual and satisfactory granting and confirming of the Property unto Trustee.

5.9    Non-Liability of Trustee.    Trustee shall not be liable or responsible with respect to its acts or omissions hereunder, except for Trustee's own gross negligence or willful default, or be liable or responsible for any acts or omissions of any agent, attorneys or employee by it employed hereunder, if selected with reasonable care.

5.10    Release and Exchange of Security.    In the event that any change or changes occur in the title to all or any part of the Property, Beneficiary, from time to time, without notice to or consent of Trustor and without prejudice to any rights which Beneficiary may have against Trustor, may (a) take, exchange, or release any security for any of the obligations now or hereafter secured hereby; or (b) extend the time for payment of the said obligations.

5.11    Successors and Assigns.    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their successors and assigns.

5.12    Construction.    This Deed of Trust shall be construed so that, wherever applicable and with reference to any of the parties hereto, the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, the use of one gender shall include the neuter, masculine and feminine gender.

5.13    Notices.    Trustor requests that a copy of any notice of default and of any notice of sale hereunder shall be mailed to Trustor at the address set forth above which is Trustor's address.

14

Non-Order Search
Doc: CALOSA:2016 01122917

Requested By: ravindrak, Printed: 5/5/2020 9:11 PM

IN WITNESS WHEREOF, Trustor has executed this instrument the day and year first above written.

CRESTLLOYD, LLC
a California limited liability company

By: _____
     Nile Niami, Manager

15

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _October 30, 20__ before me, _Nigel Gibbs_____ a Notary Public, personally appeared _Nile Niami___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

16

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OP LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

17

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

Initials

18

## EXHIBIT B

(1)     All machinery, equipment, materials (including building materials), appliances, and fixtures now or hereafter installed or placed on or in said land or buildings and improvements for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration or for ventilating or air conditioning purposes or for sanitary or drainage purposes or for the exclusion of vermin or insects or the removal of dust, refuse or garbage, and all elevators, awnings, window shades, drapery rods and brackets, screens, floor coverings, incinerators, carpeting and all furniture, fixtures, and other property used in the operation or occupancy of said land or buildings and improvements, together with all additions to, substitutions for, changes in or replacements of the whole or any part of any or all of said articles of property, and together with all property of the same character that Trustor may hereafter acquire at any time until the termination of this Deed of Trust and all proceeds received upon the sale, exchange, collection or other disposition of the foregoing.

(2)     All intangible property and rights relating to that land or the operation thereof, or used in connection therewith, including but not limited to all governmental permits relating to construction on said land.

(3)     All reserves, deferred payments, deposits, refunds, cost savings and payments of any kind relating to the construction of any improvements on said land.

(4)     All water stock relating to said property.

(5)     All causes of action, claims, compensation and recoveries for any damage, condemnation or taking of said property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or injury to said property, or for any loss or diminution in value of said property.

(6)     All plans and specifications prepared for construction of buildings and improvements on said land and all studies, data and drawings related thereto; and also all contracts and agreements of the Trustor relating to the aforesaid plans and specifications or to the aforesaid studies, data and drawings or to the construction of buildings and improvements on said land.

(7)     All monies on deposit for the payment of real estate taxes or special assessments against said property or for the payment of premiums on policies of fire and other hazard insurance covering the property described herein or said land.

_____

Initials

# EXHIBIT W



**This page is part of your document - DO NOT DISCARD**



## 20181122920



**Pages:
0012**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/06/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 50.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 50.00 |



**L E A D S H E E T**



201811060250001

**00015919186**

009447827

**SEQ:
20**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T72

2

RECORDING REQUESTED BY
CHICAGO
**WHEN RECORDED, RETURN TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Ste 110
Los Angeles, CA 90010
Attn: Eugene M. Leydiker

<u>APN No. 4369-026-021</u>



11/06/2018

*20181122920*

6

## SUBORDINATION
## AGREEMENT

### (Deed of Trust to Deed of Trust)

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY
INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY
THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

THIS SUBORDINATION AGREEMENT ("Agreement") is entered into as of October 30, 2018,
by and between CRESTLLOYD, LLC, a California limited liability company ("Owner"); and
INFERNO INVESTMENT INC. ("Subordinate Lender"); and Hankey Capital, LLC ("Lender").

### RECITALS

**A.**      Subject to the terms and provisions of that certain Deed of Trust With Assignment of
Rents dated March 13, 2013, executed by Owner, as Trustor, in favor of INFERNO REALTY, L.P.
and MAYBACH CORPORATION HOLDINGS, INC., Subordinate Lender's predecessors-in-
interest, recorded on March 13, 2013, as Document Number 20130384037 in the official records of
the County of Los Angeles, State of California ("Official Records") ("Subordinate Lender's Deed
of Trust"), Owner granted to Subordinate Lender's predecessors-in-interest a security interest in and to
the property described in Exhibit "A" attached hereto and incorporated herein located at 944 Airole Way,
Los Angeles, California (which property, together with all improvements now or hereafter located on
the property, is hereinafter collectively referred to as the "Property") to secure Owner's obligations
to Subordinate Lender's predecessors-in-interest (the "Subordinated Debt").

**B.**      MAYBACH CORPORATION HOLDINGS, INC. assigned the entirety of its interest in
the Subordinate Lender's Deed of Trust to INFERNO REALTY, L.P. by means of that certain
Assignment of Note and Deed of Trust/Mortgage, dated June 2, 2014 and recorded on November 10,
2015 in the Official Records as Document Number 20151375606.

**C.**      INFERNO REALTY, L.P. assigned the entirety of its interest in the Subordinate
Lender's Deed of Trust to Subordinate Lender by means of that certain Assignment of Note and Deed of
Trust/Mortgage, dated October 21, 2015 and recorded on November 10, 2015 in the Official Records as
Document Number 20151375607.

**D.**      Owner has executed or will execute a Deed of Trust, Security Agreement and
Fixture Filing With Assignment of Rents ("Lender's Deed of Trust") securing, among other things,
Owner's obligations to Lender as set forth in that certain Promissory Note dated October 25,
2018, in favor of Lender, in the principal amount of Eighty Two Million Five Hundred Thousand and
No/100 Dollars ($82,500,000.00) (the "Note"). Lender's Deed of Trust is being recorded in the Official

1

9 4 1 0 9

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225 reached

Records concurrently herewith. The Note and the Lender's Deed of Trust are collectively referred to herein as the "Loan Agreement".

     **E.**    As a condition to Lender making a Loan (the "Loan"), to be secured by, among other things, the Lender's Deed of Trust (the "Senior Debt"), Lender requires that Lender's Deed of Trust be unconditionally and at all times remain a lien or charge upon the Property, prior and superior to all the rights of Subordinate Lender under its deed of trust and that Subordinate Lender specifically and unconditionally subordinates its deed of trust to the lien or charge of Lender's Deed of Trust.

     **F.**    Subordinate Lender and Owner agree to the subordination in favor of Lender.

    **NOW THEREFORE**, for good and valuable consideration and the receipt and adequacy of which is hereby acknowledged, and to induce Lender to make the Loan, Owner and Subordinate Lender hereby agree for the benefit of Lender as follows:

    **Section 1.**    **Subordination.**  Lender's Deed of Trust securing the Note in favor of Lender, shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to Subordinate Lender's Deed of Trust.

    **Section 2.**    **Entire Agreement.**  This Agreement shall be the whole agreement with regard to the subordination of Subordinate Lender's Deed of Trust to the lien or charge of Lender's Deed of Trust, and shall supersede and cancel, but only insofar as would affect the priority of Lender's Deed of Trust, any prior agreements as to such subordination, including, without limitation, those provisions, if any, contained in Subordinate Lender's deed of trust which provide for the subordination of the deed of trust to a deed or deeds of trust or to a mortgage or mortgages.

    **Section 3. Lien Subordination.**  Subordinate Lender intentionally and unconditionally waives, relinquishes and subordinates all of Subordinate Lender's right, title and interest in and to the Property to the lien or charge of Lender's Deed of Trust, upon the Property and understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination, specific loans and advances are being and will be made by Lender and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination.

    **Section 4. Rights Upon Insolvency.**  In the event of (1) any insolvency, bankruptcy, receivership, liquidation, reorganization, arrangement, assignment for the benefit of creditors, or other similar proceeding relative to the Owner or its property (as defined in the Loan Agreement), or (2) any proceeding for the voluntary or involuntary liquidation, dissolution or other winding up of the Owner whether or not involving insolvency or bankruptcy proceedings, then and in any such event:

        (a) the principal amount of, and all interest on, and all other amounts in respect of, the Senior Debt (including interest thereon accruing after the commencement of any such proceeding, whether or not such interest shall be allowed in such proceeding) shall be paid in full before any payment or distribution of any character, whether in cash, securities or other property, shall be made in respect of the Subordinated Debt; and

        (b) any payment or distribution of any character, whether in cash, securities or other property, which would otherwise (but for the terms hereof) be payable or deliverable in respect of Subordinated Debt (including any payment or distribution in respect of the Subordinated Debt by reason of any other indebtedness of the Owner being subordinated to the Subordinated Debt), shall be paid or delivered directly to the Lender, or its representatives, until the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt shall have been paid in full and the Subordinate Lender or any other holder of the Subordinated Debt

irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, conservators and others having authority in the premises to effect all such payments and deliveries.

**Section 5. Owner Obligations.** Owner agrees that, in the event that any note or other obligation of the Owner not evidencing Senior Debt, or any portion thereof, shall become due and payable before its expressed maturity for any reason, Owner will give prompt notice, in writing, of such occurrence to the Lender.

**Section 6.       Rights of Lender.**

(a)       Subordinate Lender further declares, agrees and acknowledges for the benefit of the Lender, that Lender, in making disbursement pursuant to the Loan Agreement (whether obligatory or optional), is under no obligation or duty to, nor has Lender represented that it will, see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds, an any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part.

(b)       Except as otherwise provided herein, so long as any of the Senior Debt shall remain unpaid, Lender may at all times exercise any and all powers and rights which it now has or may hereafter acquire with respect to the Loan Agreement, any other security instrument, including, but not limited to deed of trust or mortgage, Collateral Security Agreement, or Membership Interest Pledge Agreement (collectively, "Security Document"), or any of the collateral subject to the Loan Agreement or any other Security Document without having to obtain any consent or approval of the Subordinate Lender and without any accountability to the Subordinate Lender, nor shall it have any liability to the Subordinate Lender for any action taken or failure to act with respect to this Agreement, the Loan Agreement, any other Security Document or the aforesaid collateral.

**Section 7. Constructive Trust.** If, notwithstanding the provisions of this Agreement, any payment or distribution of any character (whether in cash, securities or other property) shall be received by the Subordinate Lender in contravention of the terms of this Agreement, such payment or distribution shall not be commingled with any asset of the Subordinate Lender, but shall be held in trust for the benefit of, and shall be paid over or delivered and transferred to, the Lender, or its representatives or agents, for application to the payment of all Senior Debt remaining unpaid, until the principal amount of, and all interest and premium (including interest thereon accruing after the commencement of any proceedings described herein) on, and all other amounts in respect of, the Senior Debt shall have been paid in full.

**Section 8.       Successors and Assigns.** This Agreement, without further reference, shall pass to and may be relied on and enforced by any transferee or subsequent holder of the Senior Debt and the Subordinated Debt.

**Section 9. Modification.** The terms of this Agreement, the subordination effectuated hereby, and the rights of the Lender and the obligations of the Subordinate Lender arising hereunder, shall  not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Loan Agreement, any other Security Document or any other instrument or document executed or delivered pursuant thereto.

**Section 10. Notices.** All notice, consents, approvals, requests, demands, instruments or other communications to be made, given or furnished pursuant to, under or by virtue of their Agreement (each, a "Notice") shall be in writing and shall be deemed given or furnished if addressed to the party intended to receive the same at the address or such party as set forth below (i) upon receipt when personally delivered at such address, or (ii) one (1) business day after the date of delivery of such notice to a nationwide, reputable commercial courier service:

3

Lender:                HANKEY CAPITAL, LLC
                       4751 Wilshire Blvd., Suite 110
                       Los Angeles, CA 90010
                       Attention: Eugene M. Leydiker

Subordinate Lender:    INFERNO INVESTMENT INC.
                       95-4 Chemin de Kandahar
                       Mont-Tremblant, Quebec J8E 1E2

Owner:                 CRESTLLOYD, LLC
                       c/o Skyline Development
                       8981 W. Sunset Blvd., Suite 303
                       West Hollywood, CA 90069
                       Attn: Nile Niami

Any party may change the address to which any notice is to be delivered to any other address within the United States of America by furnishing written notice of such change at least fifteen (15) days prior to the effective date of such change to the other parties in the manner set forth above, but no such notice of change shall be effective unless and until received by such other parties. Notices may be given on behalf of any party by its attorneys.

**Section 11.   Miscellaneous.** This Agreement may not be amended or modified orally but may be amended or modified only in writing, signed by all parties hereto. No waiver of any term or provision of this Agreement shall be effective unless it is in writing, making specific reference to this Agreement and signed by the party against whom such waiver is sought to be enforced. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. This Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

**Section 12.   Definitions.** Terms used in this Agreement and not defined herein shall have the respective meanings ascribed to them in the Loan Agreement. The recitals hereto shall be a part of this Agreement.

**Section 13.   Termination.** This Agreement shall terminate upon the final and indefeasible payment in full of the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt.

**Section 14.   Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS AGREEMENT, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT HERETO.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof.

4

NOTE:  THIS AGREEMENT MAY BE EXECUTED IN COUNTERPARTS.

[SIGNATURES COMMENCE ON THE FOLLOWING PAGE.]

**OWNER:**

CRESTLLOYD, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California )

County of LOS ANGELES )

On OCTOBER 30, 2018 before me, Nigel Gibbs, Notary Public
    *Date*                  *Here Insert Name and Title of the Officer*

Personally Appeared Nile Niami
                                *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
             *Signature of Notary Public*

6

O

**SUBORDINATE LENDER:**

**INFERNO INVESTMENT INC.**

By:

Name: Julien Remillard

Title: Director

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                          )

County of_____ )

On_____before me, _____
    *Date*                                    *Here Insert Name and Title of the Officer*
Personally Appeared _____
                                      *Name(s) of Signer(s)*

_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)  is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
> WITNESS my hand and official seal.

Signature _____
                   *Signature of Notary Public*

7

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of __LOS ANGELES__ }

On __OCTOBER 30, 2018__ before me, __Nigel Gibbs, Notary Public__,
    Date                           Here Insert Name and Title of the Officer

personally appeared __Julien LeMilland__
                                     Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

> NIGEL GIBBS
> Notary Public - California
> Los Angeles County
> Commission # 2164239
> My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
               Signature of Notary Public

*Place Notary Seal and/or Stamp Above*

──────────────────────── **OPTIONAL** ────────────────────────
*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: __Subordination Agreement__
Document Date: __10/25/18__ _____ Number of Pages: __10__
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____  Signer's Name: _____
□ Corporate Officer – Title(s): _____  □ Corporate Officer – Title(s): _____
□ Partner – □ Limited □ General            □ Partner – □ Limited □ General
□ Individual    □ Attorney in Fact   □ Individual    □ Attorney in Fact
□ Trustee    □ Guardian or Conservator  □ Trustee    □ Guardian or Conservator
□ Other: _____          □ Other: _____
Signer is Representing: _____     Signer is Representing: _____

©2018 National Notary Association

1 ₩

**LENDER:**

**HANKEY CAPITAL, LLC**

By: _____
W. Scott Dobbins, President

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                          )

County of _Los Angeles_                      )

On _November 1, 2018_        before me, _T. Douglas, Notary Public_
Date                                     *Here Insert Name and Title of the Officer*
Personally Appeared _W. Scott Dobbins_
                          *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.



T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2164270
My Comm. Expires Mar 22, 2021

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
                *Signature of Notary Public*

8

‖

## EXHIBIT "A"

## PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF
THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY,
30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07"
'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE
LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A
RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE
WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE
NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF
03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE
SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE
NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL
ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE
BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS
OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST
208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING
A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST
42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40
FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

9

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS
OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET
FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID
WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

10

# EXHIBIT X



# Hankey Capital

*a California Finance Lender*
*Department of Business Oversight License No. 6038812*

### AMENDED AND RESTATED
### PROMISSORY NOTE
### (VARIABLE RATE)

| BORROWER'S NAME | MATURITY DATE |
|---|---|
| CRESTLLOYD, LLC, a California limited liability company (the "Borrower") | October 31, 2020 |

$91,000,000.00          Los Angeles, California          December 10, 2019

On or prior to October 31, 2020 (the "Maturity Date"), for value received, Borrower promises to pay to the order of HANKEY CAPITAL, LLC, a California limited liability company ("Lender"), at its office at 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010, or at such other place as the holder of this Note may from time to time designate in writing, the principal sum of Ninety-One Million and No/100 Dollars ($91,000,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding, at the rate of four and three-quarters percent (4.75%) per annum above the Prime Rate.

Prime Rate: The rate of interest published from time to time by *The Wall Street Journal* as the "prime rate." **In no event shall the interest rate hereunder be less than 11.0%.**

The interest rate on this Note is subject to change from time to time based on changes in the Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notice to Borrower. Lender will disclose to Borrower the current Index rate upon Borrower's request. Borrower acknowledges that Lender may make loans based on other rates as well. The Index currently is 4.75% per annum. Borrower hereby waives the right to receive notice of any future change(s) in the Index rate. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) Increase Borrower's payments to ensure that the Loan will pay off by its original final maturity date, (b) Increase Borrower's payments to cover accruing interest, (c) Increase the number of payments, and (d) continue the payments and increase Borrower's final payment.

Commencing on the first full calendar month following the date of the initial disbursement, and continuing on the first day of each subsequent calendar month until the Maturity Date,

Borrower shall make monthly payments of interest-only in arrears on the disbursed and unpaid principal balance of this Note. Interest payment shall be initially paid from a reserve account, maintained by the Lender, in the amount of $4,500,000.00 (the "Reserve"). Borrower shall make timely payments of interest upon depletion of the Reserve. Interest shall be computed daily based upon a three hundred sixty (360) day year for the actual number of days elapsed. Should interest not be paid when due, it shall become part of the principal and thereafter bear interest as herein provided.

On or prior to the Maturity Date, should default be made in the payment of principal or interest when due or in the performance or observance when due of any term, covenant or condition of any deed of trust, security agreement or other agreement (including amendments and extensions thereof) securing or pertaining to this Note, then, at the option of the holder hereof and without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable and thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Should Borrower fail to pay all outstanding principal and accrued interest on or prior to the Maturity Date, then, without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Borrower acknowledges and agrees that during the time that any payment of principal, interest or other amounts due under this Note is delinquent, whether before or after the Maturity Date, the holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on the holder's ability to avail itself of other opportunities. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such costs and expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that interest at the increased rate of five percent (5%) per annum over and above the interest rate contracted for in this Note represents a reasonable sum considering all the circumstances existing on the date of this Note and represents a fair and reasonable estimate of such costs and expenses. No delay or omission on the part of the holder hereof in exercising any right hereunder, or under any deed of trust, security agreement or other agreement shall operate as a waiver of such right or of any other right under this Note or under any such deed of trust, security agreement or other agreement.

Except with respect to the final monthly payment hereunder and following the Maturity Date, if any payment of principal or interest under this Note shall not be made within five (5) calendar days of the date due, a late charge of five percent (5%) of the overdue amount may be charged by the holder for the purpose of defraying the expenses incident to handling such delinquent payments. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that such late charge represents a reasonable sum considering all of the circumstances existing on the date of this Note and represents a fair and reasonable estimate of the costs that will be sustained by the holder due to the failure of Borrower to make timely payments. Such late charge shall be paid without prejudice to the right of the holder to collect any other amounts provided to be paid or to declare a default under this Note or under the Deed of Trust referred to in this Note or from exercising any of the other rights and remedies of the holder, including, without limitation,

2

the right to declare the entire balance of the principal and accrued interest then remaining unpaid immediately due and payable.

In no event shall interest accrue or be payable hereon or under any such deed of trust, security agreement or other agreement in excess of the maximum amount of interest permitted on the date hereof by the laws of the State of California. If this Note is not paid when due, whether at its specified or accelerated maturity date, Borrower promises to pay all costs of collection and enforcement of this Note, including, but not limited to, reasonable attorneys' fees and costs, incurred by the holder hereof on account of such collection or enforcement, whether or not suit is filed hereon.

Principal and interest shall be payable in lawful money of the United States without setoff, demand or counterclaim. Borrower waives the defense of the statute of limitations in any action on this Note. Presentment, notice of dishonor, and protest are waived by all makers, sureties, guarantors and endorsers of this Note. Such parties expressly consent to any extension of the time of payment hereof or any installment hereof, to any renewal, and to the release of any or all of the security given for the payment of this Note or the release of any party liable for this obligation. This Note shall be governed and construed in accordance with the laws of the State of California.

Borrower may prepay this Note in whole or in part, at any time. In the event this Note is paid in its entirety on or prior to April 30, 2020, a prepayment penalty equal to one percent (1.0%) of the then-outstanding principal balance shall be payable hereunder. No partial prepayment shall affect the obligation of Borrower to pay the next subsequent regular installment payable hereunder until the entire balance of principal and interest shall have been paid in full. This Note replaces and supersedes, in its entirety, that certain Promissory Note, executed by Borrower in favor of Lender on October 25, 2018, in the principal amount of $82,500,000.00. A loan fee in the amount of Eighty-Five Thousand and No/100 Dollars ($85,000.00) shall be payable to Lender in connection with this Note.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

3

This loan is made pursuant to California Finance Lender's Law,
Division 9 (commencing with Section 22000) of the Financial Code.
For information contact the Department of Business Oversight, State of California.

# EXHIBIT Y

**FIRST MODIFICATION**

**OF**

**CONSTRUCTION LOAN AGREEMENT**

This First Modification to Construction Loan Agreement (the "Modification") is entered into on this 10th day of December 2019 by and between Hankey Capital, LLC, a California limited liability company ("Lender"), on the one hand, and CRESTLLOYD, LLC, a California limited liability company (referred to herein as "Borrower"), on the other hand, for the purpose of setting forth the terms of the parties' agreement with respect to a certain secured Promissory Note (the "Original Note"), originally executed by Borrower, in favor of Lender, on or about October 25, 2018, and that certain Construction Loan Agreement dated October 25, 2018 (the "Loan Agreement").

**RECITALS**

WHEREAS, under the terms of the Original Note, the Loan Agreement and other related documents, Borrower borrowed from Lender the amount of $82,500,000.00; and

WHEREAS, Borrower has requested a $8,500,000.00 increase in the amount of the said loan;

WHEREAS, Lender has agreed to such increase subject to, *inter alia,* certain changes to the Loan Agreement, as set forth below.

**AGREEMENT**

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties have agreed as follows:

Contemporaneous with the execution of this Modification, Borrower shall execute an Amended and Restated Promissory Note and other documents in Lender's sole discretion, of even date herewith, which Amended and Restated Promissory Note shall replace the Original Note.

Loan Agreement Section 1.1 – the definition of "Loan" shall be deleted in its entirety and replaced with the following:

> *"Loan" means the principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: NINETY-ONE MILLION AND NO/100THS DOLLARS ($91,000,000.00).*

1

Loan Agreement Section 1.1 – the definition of "Note" shall be deleted in its entirety and replaced with the following:

> *"Note" means that certain Amended and Restated Promissory Note, dated December 10, 2019, in the original principal amount of the Loan, executed by Borrower and payable to the order of Lender, as hereafter amended, supplemented, replaced or modified.*

The Loan Agreement shall be further modified with the addition of a new Section 2.8 as follows:

2.8. Lender Additional Profit Participation. If, at any time, during the term of the Loan or following repayment of the Loan, the Property is sold for a purchase price in excess of $100,000,000, Lender shall be entitled to an Additional Lender Profit Participation Payment in the amount which shall be equal to the lesser of (a) five percent (5%) of the gross sales price for the Property in excess of $100,000,000, or (b) Five Million and No/100 Dollars ($5,000,000.00). The Additional Lender Profit Participation Payment shall be collected at the close of the sale of the Property. Contemporaneous with this Modification, Borrower and Lender shall enter into a Profit Participation Agreement memorializing the parties' agreement with respect to the Additional Lender Profit Participation Payment, and Lender shall record a Memorandum of Agreement in the Official Records of the County Recorder of Los Angeles County, California, evidencing the existence of the said Profit Participation Agreement.

The Loan Agreement shall be further modified with the addition of a new Section 2.9 as follows:

2.9 Funds Control. Until such time as the Loan has been paid in full, Borrower shall allow Lender's funds control agent weekly access to the Property so as to facilitate the processing of Loan advances.

The Loan Agreement shall be further modified with the addition of a new Section 2.10 as follows:

2.10 Post-Construction Interest Accrual. Notwithstanding anything to the contrary set forth in the Amended and Restated Promissory Note, executed by Borrower in favor of Lender as of the date hereof, upon the occurrence of each of the following, which shall be determined by Lender in its sole and absolute discretion, interest on the Amended and Restated Promissory Note shall no longer be payable monthly, but rather, shall accrue and become payable, together with all outstanding principal thereunder, upon the earlier of (a) the payoff of all indebtedness evidenced by the Amended and Restated Promissory Note, or (b) the Maturity Date set forth in the Amended and Restated Promissory Note, or (c) the accelerated Maturity Date, upon the occurrence of an Event of Default, as set forth in the Amended and Restated Promissory Note, the Deed of Trust securing said Amended Promissory Note, or any other documents evidencing the Loan:

2

     (i)     Any and all furniture, furnishings and other personal property necessary to market the Property for sale has been properly placed and installed at the Property;

     (ii)     Lender has filed a UCC Financing Statement on all such personal property, as additional security for the Loan;

     (iii)     All grading at the Property has been completed and approved by the City of Los Angeles;

     (iv)     Borrower has arranged for an appropriate global marketing effort to market the Property, which Lender has approved in its sole and absolute discretion;

     (v)     Any and all applicable permits, with the sole exception of permanent electrical power to be provided by the Los Angeles Department of Water and Power (LADWP), have been received in order for the Property to obtain a Certificate of Occupancy.

Each and every term of the Construction Loan Agreement, not otherwise amended by the instant Amendment, shall remain in full force and effect until the complete satisfaction of Borrower's obligations set forth in the Construction Loan Agreement and in all related loan documents.

<div align="center">[SIGNATURE PAGE TO FOLLOW]</div>

<div align="center">3</div>

IN WITNESS WHEREOF, the parties have executed this Modification as of the date first above written.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager


LENDER:

HANKEY CAPITAL, LLC.
a California limited liability company

By: _____
    W. Scott Dobbins, President

4

# EXHIBIT Z

Prepared by and upon recordation
please return to:

HANKEY CAPITAL, LLC
Attention: Eugene Leydiker
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST (this "**Modification**"), is made as of the 10th day of December, 2019 by CRESTLLOYD, LLC, a California limited liability company (the "**Trustor**") in favor of HANKEY CAPITAL, LLC, a California limited liability company ("**Lender**"), with reference to that certain Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents made as of October 25, 2018 by Trustor in favor of the Lender as Beneficiary securing Trustor's obligations as described therein, recorded November 6, 2018 in the Official Records of the County Recorder of Los Angeles County, California as Instrument Number 20181122917 (the "**Deed of Trust**"). Said Deed of Trust encumbers, among other things, all of those certain lots, pieces or parcels of land described in **Exhibit A** annexed hereto and made a part hereof, together with the buildings and improvements erected thereon.

WHEREAS, by this Modification, Trustor and Lender are modifying the terms of the Deed of Trust. Capitalized terms used but not defined herein have the meanings given to them in the Deed of Trust.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Trustor agree as follows:

1.    The Deed of Trust is granted by Trustor for the purpose of securing, in such order of priority as Beneficiary may elect, (1) payment of an indebtedness in the sum of Ninety-One Million and 00/100 Dollars ($91,000,000.00), evidenced by that certain Amended and Restated Promissory Note of even date herewith executed by Trustor to the order of Beneficiary and any and all modifications, extensions or renewals thereof (the "**Promissory Note**"), whether hereafter evidenced by said Promissory Note or otherwise; (2) payment of interest on said indebtedness according to the terms of said Promissory Note; (3) payment of all other sums, with interest as herein provided, becoming due or payable under the provisions hereof to Trustee or Beneficiary; (4) due, prompt and complete observance, performance and discharge of each and every condition, obligation, covenant and agreement contained herein, or in said note, or in any loan agreement relative to any indebtedness evidenced by said Promissory Note or in any document or instrument evidencing, securing or pertaining to the indebtedness evidenced by said Promissory Note, and all modifications, renewals or extensions of any of the foregoing; and (5)

payment of such additional sums with interest thereon as may be hereafter borrowed from Beneficiary, its successors or assigns by Trustor or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes or guaranty instrument(s), which are by the terms thereof secured by this Deed of Trust.

2.      The Deed of Trust is hereby further modified with the addition of a new paragraph 4.00(g) as follows:

> **(g)**      If, without Lender's prior written consent, which may be withheld by Lender in its sole and absolute discretion, (i) any lien is recorded in the County of Los Angeles, State of California, affecting the Property, or (ii) any existing lien affecting the Property is modified so as to evidence an increase in the Trustor's obligation to such lienholder.

3.      This Modification may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

4.      Except as expressly amended by this Modification, the terms and provisions of the Deed of Trust are unchanged and hereby ratified and affirmed.

IN WITNESS WHEREOF, Trustor has caused this Modification to be duly executed as of the day and year above first written.

TRUSTOR:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
     Nile Niami, Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of LOS ANGELES

On 12/23/2019 before me, Nigel Cobbs a Notary Public, personally appeared Nita Ngami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2184239
My Comm. Expires Oct 4, 2020

IN WITNESS WHEREOF, Lender has caused this Modification to be duly executed as of the day and year above first written.

**HANKEY CAPITAL, LLC,**
a California limited liability company

By: _____
    W. Scott Dobbins, President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On December 21, 19 before me, T. Douglas a Notary Public, personally appeared D. Scott Dennis, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)



T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

EXHIBIT A
Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30
FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST
2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING
SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF
361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY
LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE
BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING
A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID
CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22"
WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY
AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET
ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH
11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE
EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44
FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE
NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF
STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS

OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

# EXHIBIT AA

## PROFIT PARTICIPATION AGREEMENT

This Profit Participation Agreement (this "Agreement") is made as of December 10, 2019, between CRESTLLOYD, LLC, a California limited liability company (the "Borrower") and HANKEY CAPITAL, LLC, a California limited liability company (the "Lender") for the purpose of memorializing the parties' agreement with respect to that certain real property commonly known as, and located at, 944 Airole Way, Los Angeles, California (the "Property").

WHEREAS, on October 25, 2018, Lender made a loan to the Borrower in the principal amount of Eighty-Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00), which loan was secured by, among other things, a first-priority deed of trust on the Property (the "Loan"); and

WHEREAS, on October 25, 2018, Lender and Borrower entered into a Profit Participation Agreement (the "First Profit Participation Agreement"), whereby, in consideration for the Loan, Borrower agreed to allow the Lender to participate in the profit from the ultimate sale of the Property; and

WHEREAS, a Memorandum of Agreement, relating to the First Profit Participation Agreement, was recorded in the Official Records of the Los Angeles County Recorder's Office on November 6, 2018 as Instrument Number 20181122919; and

WHEREAS, contemporaneous with the execution of this Agreement, Borrower has proposed to modify the Loan by increasing the principal balance thereof to Ninety-One Million and No/100 Dollars ($91,000,000.00) (the "Loan Modification"); and

WHEREAS, Lender has agreed to the Loan Modification subject to the parties' execution of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties have agreed as follows:

1.    LENDER'S RIGHT OF PROFIT PARTICIPATION

If, at any time, during the term of the Loan or subsequent to Borrower's repayment of the Loan, the Property is sold by the Borrower, or by any affiliate of the Borrower, for a purchase price in excess of One Hundred Million and No/100 Dollars ($100,000,000), Lender shall be entitled to receive, from the sale proceeds, a Lender Profit Participation Payment in the amount equal to the lesser of (a) five percent (5.0%) of the gross sales price for the Property which exceeds $100,000,000, or (b) Five Million and No/100 Dollars ($5,000,000.00). Borrower's obligation to make the Lender Profit Participation Payment shall be evidenced by a Memorandum of Agreement, to be recorded in the Official Records of the County Recorder of Los Angeles County, California. The parties further acknowledge that this Agreement neither replaces nor supersedes, but rather supplements, the First Profit Participation Agreement.

2.    GENERAL PROVISIONS

(a) This Agreement shall be governed by the laws of the State of California as they apply to contracts entered into and wholly to be performed in such state. This Agreement represents the entire agreement between the parties with respect to the profit participation by and between Lender and Borrower and may only be modified or amended in writing signed by both parties.

(b) Any notice, demand or request required or permitted to be given by either the Lender or the Borrower pursuant to the terms of this Agreement shall be in writing and shall be deemed given (i) when delivered personally, (ii) five days after it is deposited in the U.S. mail, certified with return receipt requested and with postage prepaid, or (iii) one day after deposit (prepaid) with a nationally recognized overnight courier, and addressed to the party being notified at his or her address specified on the applicable signature page hereto or such other address which the addressee may subsequently notify the other party in writing.

(c) Lender's failure to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions, nor prevent the Lender thereafter from enforcing each and every other provision of this Agreement. The rights granted to lender herein are cumulative and shall not constitute a waiver of Lender's right to assert all other legal remedies available to it under the circumstances.

(d) The parties acknowledge that money damages may not be an adequate remedy for violations of this Agreement and that the Lender may, in its sole discretion, apply to a court of competent jurisdiction for specific performance or injunctive or such other relief as such court may deem just and proper to enforce this Agreement or to prevent any violation hereof and, to the extent permitted by applicable law, Borrower waives any objection to the imposition of such relief in appropriate circumstances.

(e) This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(f) Borrower represents that it has duly authorized, executed and delivered this Agreement and that this Agreement is a valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the first date above written.

BORROWER:                                    LENDER:

CRESTLLOYD, LLC,                             HANKEY CAPITAL, LLC,
a California limited liability company       a California limited liability company

By: _____               By: _____
    Nile Niami, Manager                          W. Scott Dobbins, President

# EXHIBIT BB



# Hankey Capital

*a California Finance Lender*
*Department of Business Oversight License No. 6038812*

### AMENDED AND RESTATED
### PROMISSORY NOTE
### (VARIABLE RATE)

| BORROWER'S NAME | MATURITY DATE |
| --- | --- |
| CRESTLLOYD, LLC, a California limited liability company (the "Borrower") | October 31, 2020 |

$106,000,000.00          Los Angeles, California          August 20, 2020

On or prior to October 31, 2020 (the "Maturity Date"), for value received, Borrower promises to pay to the order of HANKEY CAPITAL, LLC, a California limited liability company ("Lender"), at its office at 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010, or at such other place as the holder of this Note may from time to time designate in writing, the principal sum of One Hundred Six Million and No/100 Dollars ($106,000,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding, at the rate of four and three-quarters percent (4.75%) per annum above the Prime Rate.

Prime Rate: The rate of interest published from time to time by *The Wall Street Journal* as the "prime rate." **In no event shall the interest rate hereunder be less than 11.0%.**

The interest rate on this Note is subject to change from time to time based on changes in the Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute Index after notice to Borrower. Lender will disclose to Borrower the current Index rate upon Borrower's request. Borrower acknowledges that Lender may make loans based on other rates as well. The Index currently is 3.25% per annum. Borrower hereby waives the right to receive notice of any future change(s) in the Index rate. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) Increase Borrower's payments to ensure that the Loan will pay off by its original final maturity date, (b) Increase Borrower's payments to cover accruing interest, (c) Increase the number of payments, and (d) continue the payments and increase Borrower's final payment.

Commencing on the first full calendar month following the date of the initial disbursement, and continuing on the first day of each subsequent calendar month until the Maturity Date, Borrower shall make monthly payments of interest-only in arrears on the disbursed and unpaid principal balance of this Note. Interest payment shall be initially paid from a reserve

1

account, maintained by the Lender, in the amount of $5,700,000.00 (the "Reserve"). Borrower shall make timely payments of interest upon depletion of the Reserve. Interest shall be computed daily based upon a three hundred sixty (360) day year for the actual number of days elapsed. Should interest not be paid when due, it shall become part of the principal and thereafter bear interest as herein provided.

On or prior to the Maturity Date, should default be made in the payment of principal or interest when due or in the performance or observance when due of any term, covenant or condition of any deed of trust, security agreement or other agreement (including amendments and extensions thereof) securing or pertaining to this Note, then, at the option of the holder hereof and without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable and thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Should Borrower fail to pay all outstanding principal and accrued interest on or prior to the Maturity Date, then, without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall thereafter bear interest, until paid in full, at the increased rate of five percent (5%) per annum over and above the interest rate contracted for herein. Borrower acknowledges and agrees that during the time that any payment of principal, interest or other amounts due under this Note is delinquent, whether before or after the Maturity Date, the holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on the holder's ability to avail itself of other opportunities. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such costs and expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that interest at the increased rate of five percent (5%) per annum over and above the interest rate contracted for in this Note represents a reasonable sum considering all the circumstances existing on the date of this Note and represents a fair and reasonable estimate of such costs and expenses. No delay or omission on the part of the holder hereof in exercising any right hereunder, or under any deed of trust, security agreement or other agreement shall operate as a waiver of such right or of any other right under this Note or under any such deed of trust, security agreement or other agreement.

Except with respect to the final monthly payment hereunder and following the Maturity Date, if any payment of principal or interest under this Note shall not be made within five (5) calendar days of the date due, a late charge of five percent (5%) of the overdue amount may be charged by the holder for the purpose of defraying the expenses incident to handling such delinquent payments. Borrower acknowledges and agrees that it is extremely difficult and impractical to ascertain the extent of such expenses and that proof of actual damages would be costly or inconvenient. Borrower therefore agrees that such late charge represents a reasonable sum considering all of the circumstances existing on the date of this Note and represents a fair and reasonable estimate of the costs that will be sustained by the holder due to the failure of Borrower to make timely payments. Such late charge shall be paid without prejudice to the right of the holder to collect any other amounts provided to be paid or to declare a default under this Note or under the Deed of Trust referred to in this Note or from exercising any of the other rights and remedies of the holder, including, without limitation, the right to declare the entire balance of the principal and accrued interest then remaining unpaid immediately due and payable.

2

In no event shall interest accrue or be payable hereon or under any such deed of trust, security agreement or other agreement in excess of the maximum amount of interest permitted on the date hereof by the laws of the State of California.  If this Note is not paid when due, whether at its specified or accelerated maturity date, Borrower promises to pay all costs of collection and enforcement of this Note, including, but not limited to, reasonable attorneys' fees and costs, incurred by the holder hereof on account of such collection or enforcement, whether or not suit is filed hereon.

Principal and interest shall be payable in lawful money of the United States without setoff, demand or counterclaim.  Borrower waives the defense of the statute of limitations in any action on this Note.  Presentment, notice of dishonor, and protest are waived by all makers, sureties, guarantors and endorsers of this Note.  Such parties expressly consent to any extension of the time of payment hereof or any installment hereof, to any renewal, and to the release of any or all of the security given for the payment of this Note or the release of any party liable for this obligation.  This Note shall be governed and construed in accordance with the laws of the State of California.

Borrower may prepay this Note in whole or in part, at any time, without penalty.  No partial prepayment shall affect the obligation of Borrower to pay the next subsequent regular installment payable hereunder until the entire balance of principal and interest shall have been paid in full.  This Note replaces and supersedes, in its entirety, that certain Amended and Restated Promissory Note, executed by Borrower in favor of Lender on December 10, 2019, in the principal amount of $91,000,000.00.

A loan fee in the amount of One Million and No/100 Dollars ($1,000,000.00) shall be payable to Lender in connection with this Note.  Said fee shall be paid from proceeds of the Loan upon execution hereof.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company


By: _____
    Nile Niami, Manager

3

This loan is made pursuant to California Finance Lender's Law,
Division 9 (commencing with Section 22000) of the Financial Code.
For information contact the Department of Business Oversight, State of California.

# EXHIBIT CC

## SECOND MODIFICATION

## OF

## CONSTRUCTION LOAN AGREEMENT

This Second Modification to Construction Loan Agreement (the "Modification") is entered into on this 20th day of August 2020 by and between Hankey Capital, LLC, a California limited liability company ("Lender"), on the one hand, and CRESTLLOYD, LLC, a California limited liability company (referred to herein as "Borrower"), on the other hand, for the purpose of setting forth the terms of the parties' agreement with respect to a certain secured Promissory Note (the "Original Note"), originally executed by Borrower, in favor of Lender, on or about October 25, 2018, as amended and restated by that certain Amended and Restated Promissory Note dated December 10, 2019, and that certain Construction Loan Agreement dated October 25, 2018, as modified by that certain First Modification of Construction Loan Agreement dated December 10, 2019 (the "Loan Agreement").

### RECITALS

WHEREAS, under the terms of the Original Note, the Loan Agreement and other related documents, Borrower borrowed from Lender the amount of $82,500,000.00; and

WHEREAS, under the terms of the Amended and Restated Promissory Note dated December 10, 2019, executed by Borrower in favor of Lender, and the First Modification of Construction Loan Agreement dated December 10, 2019, executed by Borrower and Lender, the Loan was increased to $91,000,000.00; and

WHEREAS, Borrower has requested another $15,000,000.00 increase in the amount of the Loan;

WHEREAS, Lender has agreed to such increase subject to, *inter alia*, certain changes to the Loan Agreement, as set forth below.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties have agreed as follows:

Contemporaneous with the execution of this Modification, Borrower shall execute an Amended and Restated Promissory Note and other documents in Lender's sole discretion, of even date herewith, which Amended and Restated Promissory Note shall replace the Amended and Restated Note executed by Borrower in favor of Lender on December 10, 2019.

1

Loan Agreement Section 1.1 – the definition of "Loan" shall be deleted in its entirety and replaced with the following:

> *"Loan" means the principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: ONE HUNDRED SIX MILLION AND NO/100THS DOLLARS ($106,000,000.00).*

Loan Agreement Section 1.1 – the definition of "Note" shall be deleted in its entirety and replaced with the following:

> *"Note" means that certain Amended and Restated Promissory Note, dated May 20, 2020, in the principal amount of the Loan, executed by Borrower and payable to the order of Lender, as hereafter amended, supplemented, replaced or modified.*

Loan Agreement Section 2.8 – the Loan Agreement shall provide for a new Section 2.8 as follows:

> *2.8 Satisfaction of Debt. In addition to the Property, Borrower's obligations are separately secured by liens on (a) that certain parcel of real property located at 301 Copa de Oro Rd., Los Angeles, California 90077, and (b) that certain parcel of real property located at 9066 Saint Ives Dr., Los Angeles, California 90069 (collectively, the "Additional Properties") in favor of Lender. Lender shall not have the right to foreclose on either or both of the Additional Properties until such time as Lender has foreclosed upon the Property, the Property has been sold (whether at trustee's sale or by Lender thereafter), and the sale of the Property has resulted in a deficiency in the amount owed to Lender. If no such deficiency results upon the sale of the Property, Lender shall, promptly, following the sale of the Property, reconvey its interest in the Additional Properties.*

Loan Agreement Section 4.9 is hereby deleted in its entirety and replaced with the following:

> *4.9. Liens and Stop Notices. If a claim of lien is recorded which affects the Property or Improvements or a bonded stop notice is served upon Lender, within thirty (30) calendar days after such recording or service or within thirty (30) calendar days after Lender's demand, whichever occurs first, Borrower, at Borrower's election, shall do one of the following: (a) pay and discharge the claim of lien or bonded stop notice; (b) effect the release thereof by recording or delivering to Lender a surety bond in sufficient form and amount; or (c) provide Lender with other assurances which Lender deems, in its sole discretion, to be satisfactory for the payment of such claim of lien or bonded stop notice and for*

2

*the full and continuous protection of Lender from the effect of such lien or bonded stop notice.*

Loan Agreement Section 11.1(d) is hereby deleted in its entirety and replaced with the following:

> *(d) Liens, Attachment; Condemnation. (i) The recording of any claim of lien against the Property or Improvements or the service on Lender of any bonded stop notice relating to the Loan and the continuance of such claim of lien or bonded stop notice for thirty (30) days without discharge, satisfaction or provision for payment being made by Borrower in a manner satisfactory to Lender, subject to the provisions of Section 4.9 hereof; or (ii) the condemnation, seizure or appropriation of, or occurrence of an uninsured casualty with respect to any material portion of the Property or Improvements that is not otherwise offset by Borrower's deposit of sufficient restoration funds (including any applicable deductible amount under any applicable policy of casualty insurance) into the Borrower's Funds Account within forty-five (45) days after the occurrence of such event; or (iii) the sequestration or attachment of, or any levy or execution upon any of the Property or Improvements, any other collateral provided by Borrower under any of the Loan Documents, any monies in the Account or in the Borrower's Funds Account, or any substantial portion of the other assets of Borrower, which sequestration, attachment, levy or execution is not released, expunged or dismissed prior to the earlier of forty-five (45) days or the sale of the assets affected thereby;*

Loan Agreement Section 11.9 – the Loan Agreement shall provide for a new Section 11.9 as follows:

> *11.9 Notice of Default. Notwithstanding any provision to the contrary set forth in the Loan Documents, Lender shall provide no less than ten (10) calendar days' prior notice, by electronic mail, of its intent to record a Notice of Default with the Office of the County Recorder of Los Angeles County, California, to the following notice recipients:*

> > *nile@skylinedevelopment.net*
> > *yvonne@nphilanthropy.com*
> > *doug@skylinedevelopment.net*
> > *mrosenbaum@wrslawyers.com*

Each and every term of the Construction Loan Agreement, not otherwise amended by the instant Amendment, shall remain in full force and effect until the complete satisfaction of Borrower's obligations set forth in the Construction Loan Agreement and in all related loan documents.

3

IN WITNESS WHEREOF, the parties have executed this Modification as of the date first above written.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager


LENDER:

HANKEY CAPITAL, LLC.
a California limited liability company


By: _____
    W. Scott Dobbins, President

4

# EXHIBIT DD



**This page is part of your document - DO NOT DISCARD**



## 20201030024



**Pages:**
**0008**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/31/20 AT 02:49PM**

| | | |
|---|---|---|
| FEES: | | 38.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| SB2: | | 75.00 |
| PAID: | | 113.00 |



L E A D S H E E T



202008311190076

00018779213



011100474

**SEQ:**
**01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

437_5474171_

Order: 124425
Doc: CALOSA:2020 01030024

Page 1 of 8

Requested By: mikechavez, Printed: 10/16/2020 3:35 PM

Prepared by and upon recordation
please return to:

HANKEY CAPITAL, LLC
Attention: Eugene Leydiker
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST (this "**Modification**"), is made as of the 20th day of August, 2020 by CRESTLLOYD, LLC, a California limited liability company (the "**Trustor**") in favor of HANKEY CAPITAL, LLC, a California limited liability company ("**Lender**"), with reference to that certain Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents made as of October 25, 2018 by Trustor in favor of the Lender as Beneficiary securing Trustor's obligations as described therein, recorded November 6, 2018 in the Official Records of the County Recorder of Los Angeles County, California as Instrument Number 20181122917 (the "**Deed of Trust**"). Said Deed of Trust encumbers, among other things, all of those certain lots, pieces or parcels of land described in **Exhibit A** annexed hereto and made a part hereof, together with the buildings and improvements erected thereon.

WHEREAS, by this Modification, Trustor and Lender are modifying the terms of the Deed of Trust. Capitalized terms used but not defined herein have the meanings given to them in the Deed of Trust.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lender and Trustor agree as follows:

1.      The Deed of Trust is granted by Trustor for the purpose of securing, in such order of priority as Beneficiary may elect, (1) payment of an indebtedness in the sum of One Hundred Six Million and 00/100 Dollars ($106,000,000.00), evidenced by that certain Amended and Restated Promissory Note of even date herewith executed by Trustor to the order of Beneficiary and any and all modifications, extensions or renewals thereof (the "**Promissory Note**"), whether hereafter evidenced by said Promissory Note or otherwise; (2) payment of interest on said indebtedness according to the terms of said Promissory Note; (3) payment of all other sums, with interest as herein provided, becoming due or payable under the provisions hereof to Trustee or Beneficiary; (4) due, prompt and complete observance, performance and discharge of each and every condition, obligation, covenant and agreement contained herein, or in said note, or in any loan agreement relative to any indebtedness evidenced by said Promissory Note or in any document or instrument evidencing, securing or pertaining to the indebtedness evidenced by said Promissory Note, and all modifications, renewals or extensions of any of the foregoing; and (5)

payment of such additional sums with interest thereon as may be hereafter borrowed from Beneficiary, its successors or assigns by Trustor or the then record owner or owners of the Trust Estate when evidenced by another promissory note or notes or guaranty instrument(s), which are by the terms thereof secured by this Deed of Trust.

2.      The Deed of Trust is hereby further modified with the addition of a new paragraph 4.00(g) as follows:

> (g)     If, without Lender's prior written consent, which may be withheld by Lender in its sole and absolute discretion, (i) any lien is recorded in the County of Los Angeles, State of California, affecting the Property, or (ii) any existing lien affecting the Property is modified so as to evidence an increase in the Trustor's obligation to such lienholder.

3.      This Modification may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same agreement.

4.      Except as expressly amended by this Modification, the terms and provisions of the Deed of Trust are unchanged and hereby ratified and affirmed.


        IN WITNESS WHEREOF, Trustor has caused this Modification to be duly executed as of the day and year above first written.

TRUSTOR:

CRESTLLOYD, LLC,
a California limited liability company


By: _____
    Nile Niami, Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _AUGUST 20, 2020_ before me, _Nigel Gibbs_ _____ a Notary Public, personally appeared _Nile Niami_ _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____          (Seal)

NIGEL GIBBS
Notary Public · California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

IN WITNESS WHEREOF, Lender has caused this Modification to be duly executed as of the day and year above first written.

HANKEY CAPITAL, LLC,
a California limited liability company

By: _____
W. Scott Dobbins, President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_

On _August 25, 2020_ before me, _T. Douglas_ a Notary Public, personally appeared _W. Scott Ditans_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

T. DOUGLAS
Notary Public - California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

EXHIBIT A
Legal Description

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS

OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

# EXHIBIT EE

## PROFIT PARTICIPATION AGREEMENT

This Profit Participation Agreement (this "Agreement") is made as of August 20, 2020, between CRESTLLOYD, LLC, a California limited liability company (the "Borrower") and HANKEY CAPITAL, LLC, a California limited liability company (the "Lender") for the purpose of memorializing the parties' agreement with respect to that certain real property commonly known as, and located at, 944 Airole Way, Los Angeles, California (the "Property").

WHEREAS, on October 25, 2018, Lender made a loan to the Borrower in the principal amount of Eighty-Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00), which loan was secured by, among other things, a first-priority deed of trust on the Property (the "Loan"); and

WHEREAS, on October 25, 2018, Lender and Borrower entered into a Profit Participation Agreement (the "First Profit Participation Agreement"), whereby, in consideration for the Loan, Borrower agreed to allow the Lender to participate in the profit from the ultimate sale of the Property; and

WHEREAS, a Memorandum of Agreement, relating to the First Profit Participation Agreement, was recorded in the Official Records of the Los Angeles County Recorder's Office on November 6, 2018 as Instrument Number 20181122919; and

WHEREAS, contemporaneous with the execution of this Agreement, Borrower has proposed to modify the Loan by increasing the principal balance thereof to One Hundred Six Million and No/100 Dollars ($106,000,000.00) (the "Loan Modification"); and

WHEREAS, Lender has agreed to the Loan Modification subject to the parties' execution of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties have agreed as follows:

1.   LENDER'S RIGHT OF PROFIT PARTICIPATION

If, at any time, during the term of the Loan or subsequent to Borrower's repayment of the Loan, the Property is sold by the Borrower, or by any affiliate of the Borrower, for a purchase price in excess of One Hundred Million and No/100 Dollars ($100,000,000), Lender shall be entitled to receive, from the sale proceeds, a Lender Profit Participation Payment in the amount equal to the lesser of (a) five percent (5.0%) of the gross sales price for the Property which exceeds $100,000,000, or (b) Five Million and No/100 Dollars ($5,000,000.00). Borrower's obligation to make the Lender Profit Participation Payment shall be evidenced by a Memorandum of Agreement, to be recorded in the Official Records of the County Recorder of Los Angeles County, California. The parties further acknowledge that this Agreement neither replaces nor supersedes, but rather supplements, the First Profit Participation Agreement.

Exhibit A - 6

2.    GENERAL PROVISIONS

(a) This Agreement shall be governed by the laws of the State of California as they apply to contracts entered into and wholly to be performed in such state. This Agreement represents the entire agreement between the parties with respect to the profit participation by and between Lender and Borrower and may only be modified or amended in writing signed by both parties.

(b) Any notice, demand or request required or permitted to be given by either the Lender or the Borrower pursuant to the terms of this Agreement shall be in writing and shall be deemed given (i) when delivered personally, (ii) five days after it is deposited in the U.S. mail, certified with return receipt requested and with postage prepaid, or (iii) one day after deposit (prepaid) with a nationally recognized overnight courier, and addressed to the party being notified at his or her address specified on the applicable signature page hereto or such other address which the addressee may subsequently notify the other party in writing.

(c) Lender's failure to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions, nor prevent the Lender thereafter from enforcing each and every other provision of this Agreement. The rights granted to lender herein are cumulative and shall not constitute a waiver of Lender's right to assert all other legal remedies available to it under the circumstances.

(d) The parties acknowledge that money damages may not be an adequate remedy for violations of this Agreement and that the Lender may, in its sole discretion, apply to a court of competent jurisdiction for specific performance or injunctive or such other relief as such court may deem just and proper to enforce this Agreement or to prevent any violation hereof and, to the extent permitted by applicable law, Borrower waives any objection to the imposition of such relief in appropriate circumstances.

(e) This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(f) Borrower represents that it has duly authorized, executed and delivered this Agreement and that this Agreement is a valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms.

[SIGNATURE PAGE TO FOLLOW]

Exhibit A - 7

IN WITNESS WHEREOF, the parties have executed this Agreement as of the first date above written.

BORROWER:                                          LENDER:

CRESTLLOYD, LLC,                                   HANKEY CAPITAL, LLC,
a California limited liability company             a California limited liability company

By: _____                      By: _____
Nile Niami, Manager                                W. Scott Dobbins, President

Exhibit A - 8

# EXHIBIT FF

**This page is part of your document - DO NOT DISCARD**

## 20201030294







**Pages: 0005**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/31/20 AT 03:08PM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 104.00 |



**L E A D S H E E T**

202008311010125

00018779229

011100484

**SEQ: 01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

*E.521046*

437_5474188_4_

Exhibit B - 10

**RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attn.: Eugene M. Leydiker

Loan No.

Space Above for Recorder's Use

## MEMORANDUM OF AGREEMENT

In connection with a certain loan transaction between Hankey Capital, LLC, a California limited liability company (the "Lender") and Crestlloyd, LLC, a California limited liability company (the "Borrower"), the undersigned declare and acknowledge that the Borrower has executed a Profit Participation Agreement (the "Agreement"), dated August 20, 2020, pertaining to the real property described in Exhibit A hereof. This instrument is a memorandum of the Agreement, and the same is incorporated herein by this reference with the same effect and as ɔugh set forth herein in its entirety.

LENDER:

HANKEY CAPITAL, LLC
a California limited liability company

By:_____          Dated: August 20, 2020
   W. Scott Dobbins, President

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By:_____          Dated: August 20, 2020
   Nile Niami, Manager

1

Exhibit B - 11

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of LOS ANGELES

On AUGUST 20, 2020 before me, Nigel Gibbs a Notary Public, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

```
NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020
```

Exhibit B - 12

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of California

County of Los Angeles

On August 25, 2020 before me, T. Douglas a Notary Public, personally
appeared W. Scott Dobbins , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

```
T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021
```

Page 3 of 4                    Exhibit B - 13

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' '3" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A ADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A 'NGTH OF 115.83 FEET.

APN: **4369-026-021**

# EXHIBIT GG



**This page is part of your document - DO NOT DISCARD**



**20201058770**

Pages:
0024

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/04/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 133.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 358.00 |



**LEADSHEET**



202009041030027

00018844913

011145133

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E08_200903_7001067

RECORDING REQUESTED BY:

Pacific Coast Title Company

AND WHEN RECORDED MAIL TO:
Racey Cohn, Esq.
Brutzkus Gubner Rozansky
Seror Weber LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Assignment of Rents,
Security Agreement And Fixture Filing

**Title of Document**

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

*Partha CristEtu*

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Racey Cohn, Esq.
Brutzkus Gubner Rozansky Seror Weber LLP
21650 Oxnard Street, Suite 500
Woodland Hills, California 91367

APN# 4369-026-021

*10141330*

Space above this line for Recorder's use

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (this **"Deed of Trust"**) is made as of February **11**, 2020, by CRESTLLOYD, LLC, a California limited liability company with offices at 8981 W. Sunset Blvd, Suite 303, West Hollywood, California 90069, as trustor (**"Trustor"**), to PACIFIC COAST TITLE COMPANY, as trustee (**"Trustee"**), for the benefit of HILLDUN CORPORATION, a New York corporation with offices at 225 West 35th St. New York, New York 10001, as beneficiary (**"Beneficiary"**).

### 1. GRANT IN TRUST.

1.1  The Property.  For the purpose of securing payment and performance of the Secured Obligations defined in Section 2 below, Trustor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Trustee, in trust for the benefit of Beneficiary, with power of sale and right of entry and possession, all estate, right, title and interest which Trustor now has or may later acquire in the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty, as hereinafter defined, being hereinafter collectively referred to as the **"Property"**):

(a)  The real property located in the County of Los Angeles, State of California, as described in **Exhibit A** hereto, with a street address of 944 Airole Way, Los Angeles, California 90077 (the **"Real Property"**);

(b)  All buildings, structures, improvements, fixtures and appurtenances now or hereafter located at or placed on, in or under or comprising a part of the Real Property, including but not limited to any houses, docks, wharves, ramps or moorings, and all apparatus and equipment now or hereafter attached in any manner to the Real Property or any building on comprising a part of the Real Property, including all pumping plants, engines, pipes, ditches and flumes, and also all gas, electric, cooking, heating, cooling, air conditioning, lighting, refrigeration and plumbing fixtures and equipment (collectively, the **"Improvements"**);

(c)  All easements and rights of way appurtenant to the Real Property; all crops growing or to be grown on the Real Property (including all such crops following severance from the Real Property); all standing timber upon the Real Property (including all such timber following severance from the Real Property); all development rights or credits and air rights; all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Real Property) and shares of stock pertaining to such water or water rights, ownership of which affect the Real Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Real Property;

1

(d)   All existing and future leases, subleases, subtenancies, licenses, occupancy agreements and concessions relating to the use and enjoyment of all or any part of the Real Property or the Improvements, and any and all guaranties and other agreements relating to or made in connection with any of the foregoing;

(e)   All proceeds, including all claims to and demands for them, of the voluntary or involuntary conversion of any of the Real Property, Improvements, or the other property described above into cash or liquidated claims, including proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Real Property, Improvements, or the other property described above or any part of them; and

(f)   All proceeds of, additions and accretions to, substitutions and replacements for, and changes in any of the property described above.

1.2   Fixture Filing.   This Deed of Trust is intended to be and constitutes a financing statement filed as a fixture filing under Section 9502(c) of the California Uniform Commercial Code, as amended or recodified from time to time, covering any Property which now is or later may become a fixture attached to the Real Property or any building located thereon.

## 2. THE SECURED OBLIGATIONS.

2.1   Purpose of Securing.   Trustor makes the grant, conveyance, transfer and assignment set forth in Section 1, makes the irrevocable and absolute assignment set forth in Section 3, and grants the security interest set forth in Section 4, all for the purpose of securing the following obligations (the "**Secured Obligations**") in any order of priority that Beneficiary may choose:

(a)   Payment of all obligations of Trustor to Beneficiary now or hereafter arising under that certain Guaranty executed by Trustor for the benefit of Beneficiary dated February ____**11**____, 2020 which is limited to Five Million Dollars ($5,000,000) plus the costs and expenses referenced in Section 5.8 of this Deed of Trust (as amended, supplemented, or modified from time to time, the "**Guaranty**") with respect to the payment and performance of all debts, liabilities, obligations and duties of N:PHILANTHROPY LLC, a California limited liability company ("**Obligor**"), to Beneficiary under that certain Discount Factoring Agreement entered into between Obligor and Beneficiary dated April 13, 2017 (as supplemented and/or amended from time to time, the "**Factoring Agreement**") and/or under any other related instruments, documents and agreements between Beneficiary and Obligor (together with the Factoring Agreement, all as amended from time to time, collectively, the "**Factoring Documents**"), whether such debts, liabilities, obligations and duties of Obligor are by acceleration or otherwise, are now or hereafter owing, are direct or indirect, fixed or contingent, are now due or hereafter arising, or are matured and not yet matured, (the "**Obligor Liabilities**"). This Deed of Trust also secures all obligations of Trustor under any amendments to the Guaranty or any successor agreement or instrument which restates or supersedes the Guaranty in its entirety;

(b)   Payment and performance of all obligations of Trustor under this Deed of Trust; and

(c)   Payment and performance of all future advances and other obligations that Trustor

2

(or any successor in interest to Trustor) may agree to pay and/or perform (whether as principal, surety or guarantor) to or for the benefit of Beneficiary.

2.2  <u>Terms of Secured Obligations</u>.  All persons who may have or acquire an interest in all or any part of the Property will be considered to have notice of, and will be bound by, the terms of the Guaranty described in Paragraph 2.1(a) and each other agreement or instrument made or entered into in connection with each of the Secured Obligations.

## 3.  ASSIGNMENT OF RENTS.

3.1  <u>Assignment</u>.  Trustor hereby irrevocably, absolutely, presently and unconditionally assigns to Beneficiary all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "<u>Rents</u>"), and confers upon Beneficiary the right to collect such Rents with or without taking possession of the Property.  In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Trustor as bonus or royalty payments, and any damages or other compensation payable to Trustor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph.  THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.

3.2  <u>Grant of License</u>.  Notwithstanding the provisions of Paragraph 3.1, Beneficiary hereby confers upon Trustor a license ("<u>License</u>") to collect and retain the Rents as they become due and payable, so long as no Event of Default, as defined in Paragraph 6.2, shall exist and be continuing.  If an Event of Default has occurred and is continuing, Beneficiary shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Trustor, and without regard to the adequacy of the security for the Secured Obligations.

## 4.  GRANT OF SECURITY INTEREST.

4.1  <u>Grant of Security Interest</u>.  Trustor grants to Beneficiary a security interest in, and pledges and assigns to Beneficiary, all of Trustor's right, title and interest now or hereafter acquired in and to all of the following described personal property (collectively, the "<u>Personalty</u>"):

(a)  All tangible personal property of every kind and description, whether stored on the Property or elsewhere, including, without limitation, all goods, materials, supplies, tools, books, records, chattels, furniture, fixtures, equipment, and machinery, and which in all cases is (i) used or useful or acquired in connection with any construction undertaken on the Property or the maintenance of the Property and the Improvements, or (ii) affixed or installed, or to be affixed or installed, in any manner on the Real Property or the Improvements;

(b)  All crops growing or to be grown on the Property (including all such crops following severance from the Property); all standing timber upon the Property (including all such timber following severance from the Property); all water and water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant to the Property) and shares of stock pertaining to such water or water rights, ownership of which affect the Property; and all architectural and engineering plans, specifications and drawings, and as-built drawings which arise from or relate to the Real Property or the Improvements;

(c)  All general intangibles and rights relating to the Property, including, without limitation, all permits, licenses and claims to or demands for the voluntary or involuntary

3

conversion of any of the Property into cash or liquidated claims, proceeds of all present and future fire, hazard or casualty insurance policies, whether or not such policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any breach of warranty, misrepresentation, damage or injury to, or defect in, the Property or any part of it;

(d)    All deposit accounts from which Trustor may from time to time authorize Beneficiary to debit payments due on the Secured Obligations;

(e)    All substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

5.  RIGHTS AND DUTIES OF THE PARTIES.

5.1    Representations, Warranties, Acknowledgments and Covenants.  Trustor represents and warrants that Trustor lawfully possesses and holds fee simple title to the Property.  Trustor further represents that no third party has any rights to own, occupy, acquire or use the Property. Trustor acknowledges that the following covenants: Nos. 1, 2, 3, 4, 5, 6, 7, 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust.

5.2    Taxes, Assessments, Liens and Encumbrances.  Trustor shall pay prior to delinquency all taxes, levies, charges and assessments, including assessments on appurtenant water stock, imposed by any public or quasi-public authority or utility company which are (or if not paid, may become) a lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it.  Trustor shall immediately discharge any lien on the Property which Beneficiary has not consented to in writing or which was not a lien of public record prior to the date hereof, and shall also pay when due each obligation secured by or reducible to a lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or part of the Property, whether the lien, charge or encumbrance is or would be senior or subordinate to this Deed of Trust.

5.3    Damages and Insurance and Condemnation Proceeds.

(a)    Trustor hereby absolutely and irrevocably assigns to Beneficiary, and authorizes the payor to pay to Beneficiary, the following claims, causes of action, awards, payments and rights to payment (collectively, the "**Claims**"):

(i)    all awards of damages and all other compensation payable directly or indirectly because of a condemnation, proposed condemnation or taking for public or private use which affects all or part of the Property or any interest in it;

(ii)    all other awards, claims and causes of action, arising out of any breach of warranty or misrepresentation affecting all or any part of the Property, or for damage or injury to, or defect in, or decrease in value of all or part of the Property or any interest in it;

(iii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property, whether or not such insurance policies are required by

4

Beneficiary; and

    (iv) all interest which may accrue on any of the foregoing.

(b) Trustor shall immediately notify Beneficiary in writing if:

    (i) any damage occurs or any injury or loss is sustained to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or

    (ii) any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

If Beneficiary chooses to do so, it may in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on breach of warranty or misrepresentation, or for damage or injury to, defect in, or decrease in value of all or part of the Property, and it may make any compromise or settlement of the action or proceeding. Beneficiary, if it so chooses, may participate in any action or proceeding relating to condemnation or taking of all or part of the Property, and may join Trustor in adjusting any loss covered by insurance.

(c) All proceeds of the Claims assigned to Beneficiary under this Paragraph shall be paid to Beneficiary. In each instance, Beneficiary shall apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds, including attorneys' fees. Trustor further authorizes Beneficiary, at Beneficiary's option and in Beneficiary's sole discretion, and regardless of whether there is any impairment of the Property, (i) to apply the balance of such proceeds, or any portion of them, to pay or prepay some or all of the Secured Obligations in such order or proportion as Beneficiary may determine, or (ii) to hold the balance of such proceeds, or any portion of them, in an interest-bearing account to be used for the cost of reconstruction, repair or alteration of the Property, or (iii) to release the balance of such proceeds, or any portion of them, to Trustor. If any proceeds are released to Trustor, neither Beneficiary nor Trustee shall be obligated to see to, approve or supervise the proper application of such proceeds. If the proceeds are held by Beneficiary to be used to reimburse Trustor for the costs of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition, or such other condition as Beneficiary may approve in writing. Beneficiary may, at Beneficiary's option, condition disbursement of the proceeds on Beneficiary's approval of such plans and specifications prepared by an architect satisfactory to Beneficiary, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen, and such other evidence of costs, percentage of completion of construction, application of payments, and satisfaction of liens as Beneficiary may reasonably require.

5.4 <u>Insurance</u>. Trustor shall provide and maintain in force at all times all risk property damage insurance (including without limitation flood coverage, windstorm coverage and hurricane coverage as applicable) on the Property and such other type of insurance on the Property as may be required by Beneficiary in its reasonable judgment. At Beneficiary's request, Trustor shall provide Beneficiary with a counterpart original of any policy, together with a certificate of insurance setting forth the coverage, the limits of liability, the carrier, the policy number and the expiration date. Each such policy of insurance shall be in an amount, for a term, and in form and content satisfactory to Beneficiary, and shall be written only by companies approved by Beneficiary. In addition, each policy of hazard insurance shall include a Form 438BFU or equivalent loss payable endorsement in favor of Beneficiary.

5.5 <u>Maintenance and Preservation of Property</u>.

5

(a) Trustor shall keep the Property in good condition and repair and shall not commit or allow waste of the Property. Trustor shall not remove or demolish the Property or any part of it, or alter, restore or add to the Property, or initiate or allow any change in any zoning or other Real Property use classification which affects the Property or any part of it, except with Beneficiary's express prior written consent in each instance.

(b) If all or part of the Property becomes damaged or destroyed, Trustor shall promptly and completely repair and/or restore the Property in a good and workmanlike manner in accordance with sound building practices, regardless of whether or not Beneficiary agrees to disburse insurance proceeds or other sums to pay costs of the work of repair or reconstruction under Paragraph 5.3.

(c) Trustor shall not commit or allow any act upon or use of the Property which would violate any applicable law or order of any governmental authority, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property. Trustor shall not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Trustor on the Property or any part of it under this Deed of Trust.

(d) If Trustor's interest in the Property is a leasehold interest, Trustor shall observe and perform all obligations of Trustor under any lease or leases and shall refrain from taking any actions prohibited by any lease or leases. Trustor shall preserve and protect the leasehold estate and its value.

(e) If the Property is a condominium, Trustor shall observe and perform all obligations of Trustor under the recorded covenants, conditions, and restrictions applicable to the Property, and under the bylaws of the condominium association and any rules or regulations thereunder. As appropriate, the requirements under this Deed of Trust relating to maintenance of insurance and the preservation and maintenance of the Property may be performed by the condominium association on behalf of Trustor.

(f) If the Property is agricultural, Trustor shall farm the Property in a good and husbandlike manner. Trustor shall keep all trees, vines and crops on the Property properly cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees or vines with new ones. Trustor shall prepare for harvest, harvest, remove and sell any crops growing on the Property. Trustor shall keep all buildings, fences, ditches, canals, wells and other farming improvements on the Property in first class condition, order and repair.

(g) Trustor shall perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value.

5.6 Releases, Extensions, Modifications and Additional Security. Without affecting the personal liability of any person, including Trustor, for the payment of the Secured Obligations or the lien of this Deed of Trust on the remainder of the Property for the unpaid amount of the Secured Obligations, Beneficiary and Trustee are respectively empowered as follows:

(a) Beneficiary may from time to time and without notice:

(i) release any person liable for payment of any Secured Obligations;

6

(ii) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligations;

(iii) accept additional real or personal property of any kind as security for any Secured Obligations, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security; or

(iv) alter, substitute or release any property securing the Secured Obligations.

(b) Trustee may perform any of the following acts when requested to do so by Beneficiary in writing:

(i) consent to the making of any plat or map of the Property or any part of it;

(ii) join in granting any easement or creating any restriction affecting the Property;

(iii) join in any subordination or other agreement affecting this Deed of Trust or the lien of it; or

(iv) reconvey the Property or any part of it without any warranty.

5.7 <u>Reconveyance</u>.  Upon full and final payment and performance of all Obligor Liabilities to Beneficiary where any applicable preference or similar period has passed and termination of the Guaranty in accordance with its terms, Trustee shall reconvey the Property, or so much of it as is then held under this Deed of Trust, without warranty to the person or persons legally entitled to it.  In the reconveyance, the grantee may be described as "the person or persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness.  Neither Beneficiary nor Trustee shall have any duty to determine the rights of persons claiming to be rightful grantees of any reconveyance.

5.8 <u>Compensation and Reimbursement of Costs and Expenses</u>.

(a) Trustor agrees to pay fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary and Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement of the Secured Obligations or Trustee's rendering of services in connection with a reconveyance. Trustor shall also pay or reimburse all of Beneficiary's and Trustee's costs and expenses which may be incurred in rendering any such services.

(b) Trustor further agrees to pay or reimburse Beneficiary for all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee to protect or preserve the Property or to enforce any terms of this Deed of Trust, including the exercise of any rights or remedies afforded to Beneficiary or Trustee or both of them under Paragraph 6.3, whether any lawsuit is filed or not, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any sale of the Property and any cost of evidence of title.

(c) Trustor shall pay all obligations arising under this Paragraph immediately upon demand by Trustee or Beneficiary. Each such obligation shall be added to, and considered to be

7

part of, the principal of the Secured Obligations, and shall bear interest from the date the obligation arises at the rate provided in any instrument or agreement evidencing the Secured Obligations. If more than one rate of interest is applicable to the Secured Obligations, the highest rate shall be used for purposes hereof.

5.9  Exculpation and Indemnification.

(a)  Beneficiary and its affiliates, shareholders, directors, officers, employees, attorneys and agents (collectively, the "Beneficiary Parties") shall not be directly or indirectly liable to Trustor or any other person as a consequence of any of the following by any of the Beneficiary Parties:

(i)  exercise of or failure to exercise any rights, remedies or powers granted to any of the Beneficiary Parties in this Deed of Trust;

(ii)  failure or refusal to perform or discharge any obligation or liability of Trustor under any agreement related to the Property or under this Deed of Trust;

(iii)  failure to produce Rents from the Property or to perform any of the obligations of the lessor under any lease covering the Property;

(iv)  any waste committed by lessees of the Property or any other parties, or any dangerous or defective condition of the Property; or

(v)  any loss sustained by Trustor or any third party resulting from any act or omission of any of the Beneficiary Parties in operating or managing the Property upon exercise of the rights or remedies afforded under Paragraph 6.3, unless the loss is caused by the gross negligence or willful misconduct and bad faith of any of the Beneficiary Parties.

Trustor hereby expressly waives and releases all liability of the types described above, and agrees that no such liability shall be asserted against or imposed upon any of the Beneficiary Parties. Trustor hereto expressly waives any rights or benefits available under Section 1542 of the Civil Code of the State of California which provides as follows:
"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

(b)  Trustor agrees to indemnify Trustee and the Beneficiary Parties against and hold them harmless from all losses, damages, liabilities, claims, causes of action, judgments, court costs, attorneys' fees and other legal expenses, cost of evidence of title, cost of evidence of value, and other costs and expenses which any of them may suffer or incur in performing any act required or permitted by this Deed of Trust or by law or because of any failure of Trustor to perform any of its obligations or because the execution of this Deed of Trust by Trustor for the benefit of Beneficiary causes or creates a breach, default, event of default or acceleration of Trustor's obligations under any other deed of trust, note, security instrument or agreement, or financing or loan agreement. This agreement by Trustor to indemnify Trustee and the Beneficiary Parties shall survive the release and cancellation of any or all of the Secured Obligations and the full or partial release and/or reconveyance of this Deed of Trust.

5.10  Defense and Notice of Claims and Actions.  At Trustor's sole expense, Trustor shall protect,

8

preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Trustor shall give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

5.11 <u>Substitution of Trustee</u>. From time to time, Beneficiary may substitute a successor to any Trustee named in or acting under this Deed of Trust in any manner now or later to be provided at law, or by a written instrument executed and acknowledged by Beneficiary and recorded in the office of the recorder of the county where the Property is situated. Any such instrument shall be conclusive proof of the proper substitution of the successor Trustee, who shall automatically upon recordation of the instrument succeed to all estate, title, rights, powers and duties of the predecessor Trustee, without conveyance from it.

5.12 <u>Representation and Warranty Regarding Hazardous Substances</u>. Before signing this Deed of Trust, Trustor researched and inquired into the previous uses and ownership of the Property. Based on that due diligence, Trustor represents and warrants that to the best of its knowledge, no Hazardous Substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Trustor has disclosed to Beneficiary in writing, including, without limitation, petroleum and natural gas in compliance with all applicable laws. Trustor further represents and warrants that Trustor has complied, and will comply and cause all occupants of the Property to comply, with all current and future laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or Hazardous Substances ("**Environmental Laws**"). Trustor shall promptly, at Trustor's sole cost and expense, take all reasonable actions with respect to any Hazardous Substances or other environmental condition at, on, or under the Property necessary to (i) comply with all applicable Environmental Laws; (ii) allow continued use, occupation or operation of the Property; or (iii) maintain the fair market value of the Property. Trustor acknowledges that Hazardous Substances may permanently and materially impair the value and use of the Property. "**Hazardous Substance**" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

5.13 <u>Site Visits, Observation and Testing</u>. Beneficiary and its agents and representatives shall have the right at any reasonable time, after giving reasonable notice to Trustor, to enter and visit the Property for the purposes of performing appraisals, observing the Property, taking and removing environmental samples, and conducting tests on any part of the Property. Trustor shall reimburse Beneficiary on demand for the costs of any such environmental investigation and testing. Beneficiary will make reasonable efforts during any site visit, observation or testing conducted pursuant this Paragraph to avoid interfering with Trustor's use of the Property. Beneficiary is under no duty, however, to visit or observe the Property or to conduct tests, and any such acts by Beneficiary will be solely for the purposes of protecting Beneficiary's security and preserving Beneficiary's rights under this Deed of Trust. No site visit, observation or testing or any report or findings made as a result thereof ("**Environmental Report**") (i) will result in a waiver of any default of Trustor; (ii) impose any liability on Beneficiary; or (iii) be a representation or warranty of any kind regarding the Property (including its condition or value or compliance with any laws) or the Environmental Report (including its accuracy or completeness). In the event Beneficiary has a duty or obligation under applicable laws, regulations or other requirements to disclose an Environmental Report to Trustor or any other party, Trustor authorizes Beneficiary to make such a disclosure. Beneficiary may also disclose an Environmental Report to any regulatory authority, and to any other parties as necessary or appropriate in Beneficiary's judgment.

9

Trustor further understands and agrees that any Environmental Report or other information regarding a site visit, observation or testing that is disclosed to Trustor by Beneficiary or its agents and representatives is to be evaluated (including any reporting or other disclosure obligations of Trustor) by Trustor without advice or assistance from Beneficiary.

## 6. ACCELERATING TRANSFERS, DEFAULT AND REMEDIES.

### 6.1 Accelerating Transfers.

(a) "**Accelerating Transfer**" means any sale, contract to sell, conveyance, encumbrance, or other transfer, whether voluntary, involuntary, by operation of law or otherwise, of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Trustor's own use), oil, gas or other hydrocarbon substances or any mineral of any kind on or under the surface of the Property. If Trustor is a corporation, "Accelerating Transfer" also means any transfer or transfers of shares possessing, in the aggregate, more than fifty percent (50%) of the voting power. If Trustor is a partnership, "Accelerating Transfer" also means withdrawal or removal of any general partner, dissolution of the partnership under applicable law, or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the partnership interests. If Trustor is a limited liability company, "Accelerating Transfer" also means withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of, in the aggregate, more than fifty percent (50%) of the voting power or in the aggregate more than fifty percent (50%) of the ownership of the economic interest in the Trustor. If Trustor is a joint tenancy, "Accelerating Transfer" also means the death of either joint tenant or a sale, pledge, encumbrance, conveyance or transfer (voluntary or involuntary) of either joint tenancy interest or any interest therein or portion thereof.

(b) Trustor agrees that Trustor shall not make any Accelerating Transfer, unless the transfer is preceded by Beneficiary's express written consent to the particular transaction and transferee. Beneficiary may withhold such consent in its sole discretion. If any Accelerating Transfer occurs, Beneficiary in its sole discretion may declare all of the Secured Obligations to be immediately due and payable, and Beneficiary and Trustee may invoke any rights and remedies provided by Paragraph 6.3 of this Deed of Trust.

6.2 Events of Default. The occurrence of any one or more of the following events, at the option of Beneficiary, shall constitute an event of default ("**Event of Default**") under this Deed of Trust:

(a) Trustor fails to make any payment, when due, under the Guaranty (after giving effect to any applicable grace period) or any other default occurs under the Guaranty or in any other instrument or agreement evidencing any of the Secured Obligations and such default continues beyond any applicable cure period;

(b) Any default or event of default occurs with respect to the Obligor Liabilities;

(c) Trustor fails to make any payment or perform any obligation which arises under this Deed of Trust;

(d) Trustor makes or permits the occurrence of an Accelerating Transfer in violation of Paragraph 6.1;

(e) Any representation or warranty made in connection with this Deed of Trust or the Secured Obligations proves to have been false or misleading in any material respect when made;

10

or

     (f) Any default occurs under any other deed of trust on all or any part of the Property, or under any obligation secured by such deed of trust, whether such deed of trust is prior to or subordinate to this Deed of Trust.

6.3 <u>Remedies</u>. At any time after the occurrence of an Event of Default, Beneficiary and Trustee shall be entitled to invoke any and all of the rights and remedies described below, as well as any other rights and remedies authorized by law. All of such rights and remedies shall be cumulative, and the exercise of any one or more of them shall not constitute an election of remedies.

     (a) Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

     (b) Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property.

     (c) Beneficiary, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and in its own name or in the name of Trustor sue for or otherwise collect any and all Rents, including those that are past due, and may also do any and all other things in connection with those actions that Beneficiary may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust. Such other things may include: entering into, enforcing, modifying, or canceling leases on such terms and conditions as Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying Rents; completing any unfinished construction; contracting for and making repairs and alterations; performing such acts of cultivation or irrigation as necessary to conserve the value of the Property; and preparing for harvest, harvesting and selling any crops that may be growing on the property. Trustor hereby irrevocably constitutes and appoints Beneficiary as its attorney-in-fact to perform such acts and execute such documents as Beneficiary in its sole discretion may consider to be appropriate in connection with taking these measures, including endorsement of Trustor's name on any instruments. Trustor agrees to deliver to Beneficiary all books and records pertaining to the Property, including computer-readable memory and any computer hardware or software necessary to access or process such memory, as may reasonably be requested by Beneficiary in order to enable Beneficiary to exercise its rights under this Paragraph.

     (d) Either Beneficiary or Trustee may cure any breach or default of Trustor, and if it chooses to do so in connection with any such cure, Beneficiary or Trustee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Beneficiary or Trustee under, this Deed of Trust; paying, purchasing, contesting or compromising any encumbrance, charge, lien or claim of lien which in Beneficiary's or Trustee's sole judgment is or may be senior in priority to this Deed of Trust, such judgment of Beneficiary or Trustee to be conclusive as among the parties to this Deed of Trust; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under this Deed of Trust; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Beneficiary or Trustee. Beneficiary and Trustee may take any of the actions permitted hereunder either with or without giving notice to any person.

11

(e) Beneficiary may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Deed of Trust.

(f) Beneficiary may cause the Property which consists solely of real property to be sold by Trustee as permitted by applicable law. Before any such trustee's sale, Beneficiary or Trustee shall give such notice of default and election to sell as may then be required by law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee shall sell the Property, either as a whole or in separate parcels, and in such order as Trustee may determine, at a public auction to be held at the time and place specified in the notice of sale. Neither Trustee nor Beneficiary shall have any obligation to make demand on Trustor before any trustee's sale. From time to time in accordance with then applicable law, Trustee may, and in any event at Beneficiary's request shall, postpone any trustee's sale by public announcement at the time and place noticed for that sale. At any trustee's sale, Trustee shall sell to the highest bidder at public auction for cash in lawful money of the United States. Any person, including Trustor, Trustee or Beneficiary, may purchase at the trustee's sale. Trustee shall execute and deliver to the purchaser(s) a deed or deeds conveying the property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed of any matters or facts, including any facts bearing upon the regularity or validity of any trustee's sale, shall be conclusive proof of their truthfulness. Any such deed shall be conclusive against all persons as to the facts recited in it.

(g) Beneficiary may proceed under the Uniform Commercial Code as to all or any part of the Personalty, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee may sell the Personalty at a public sale to be held at the time and place specified in the notice of sale. It shall be deemed commercially reasonable for the Trustee to dispose of the Personalty without giving any warranties as to the Personalty and specifically disclaiming all disposition warranties. Alternatively, Beneficiary may choose to dispose of some or all of the Property, in any combination consisting of both personal property and real property, in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Trustor agrees that such a sale of personal property together with real property constitutes a commercially reasonable sale of the personal property.

6.4 Application of Sale Proceeds and Rents.

(a) Beneficiary and Trustee shall apply the proceeds of any sale of the Property in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs, fees and expenses of the sale, including costs of evidence of title in connection with the sale; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto.

(b) Beneficiary shall apply any and all Rents collected by it, and any and all sums other than proceeds of any sale of the Property which Beneficiary may receive or collect under Paragraph 6.3, in the following manner: first, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Trustee, Beneficiary or any receiver; and, second, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose. The remainder, if any, shall be remitted to the person or persons entitled thereto. Beneficiary shall have no liability for any

12

funds which it does not actually receive.

## 7. MISCELLANEOUS PROVISIONS

### 7.1 No Waiver or Cure.

(a) Each waiver by Beneficiary or Trustee must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from any delay or failure by Beneficiary or Trustee to take action on account of any default of Trustor. Consent by Beneficiary or Trustee to any act or omission by Trustor shall not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Beneficiary's or Trustee's consent to be obtained in any future or other instance.

(b) If any of the events described below occurs, that event alone shall not cure or waive any breach, Event of Default or notice of default under this Deed of Trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed); or impair the security of this Deed of Trust; or prejudice Beneficiary, Trustee or any receiver in the exercise of any right or remedy afforded any of them under this Deed of Trust; or be construed as an affirmation by Beneficiary of any tenancy, lease or option, or a subordination of the lien of this Deed of Trust:

(i) Beneficiary, its agent or a receiver takes possession of all or any part of the Property;

(ii) Beneficiary collects and applies Rents, either with or without taking possession of all or any part of the Property;

(iii) Beneficiary receives and applies to any Secured Obligation proceeds of any Property, including any proceeds of insurance policies, condemnation awards, or other claims, property or rights assigned to Beneficiary under this Deed of Trust;

(iv) Beneficiary makes a site visit, observes the Property and/or conducts tests thereon;

(v) Beneficiary receives any sums under this Deed of Trust or any proceeds of any collateral held for any of the Secured Obligations, and applies them to one or more Secured Obligations;

(vi) Beneficiary, Trustee or any receiver performs any act which it is empowered or authorized to perform under this Deed of Trust or invokes any right or remedy provided under this Deed of Trust.

### 7.2 Powers of Beneficiary and Trustee.

(a) Trustee shall have no obligation to perform any act which Trustee is empowered to perform under this Deed of Trust unless Trustee is requested to do so in writing and is reasonably indemnified against loss, cost, liability and expense.

(b) Beneficiary may take any of the actions permitted under Paragraphs 6.3(b) and/or 6.3(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or

13

all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Deed of Trust.

(c)  From time to time, Beneficiary or Trustee may apply to any court of competent jurisdiction for aid and direction in executing and enforcing the rights and remedies created under this Deed of Trust.  Beneficiary or Trustee may from time to time obtain orders or decrees directing, confirming or approving acts in executing this trust and enforcing these rights and remedies.

7.3  Modification to Obligor Liabilities.

(a)  Trustor authorizes Beneficiary to perform any of the following acts at any time, all without notice to Trustor and without affecting Beneficiary's rights or Trustor's obligations under this Deed of Trust:

(i)  Beneficiary may alter any terms of the Obligor Liabilities or any part of them, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Obligor Liabilities or any part of them;

(ii)  Beneficiary may take and hold security for the Obligor Liabilities, accept additional or substituted security for the Obligor Liabilities, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security;

(iii)  Beneficiary may apply any security now or later held for the Obligor Liabilities in any order that Beneficiary in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of such security and bid at any such sale;

(iv)  Beneficiary may release Obligor of its liability under the Obligor Liabilities or any part of them;

(v)  Beneficiary may substitute, add or release any one or more guarantors or endorsers of the Obligor Liabilities; and

(vi)  Beneficiary may extend other credit to Obligor, and may take and hold security for the credit so extended.

(b) Trustor waives:

(i)  Any right Trustor may have to require Beneficiary to proceed against Obligor, proceed against or exhaust any security held from Obligor, or pursue any other remedy in Beneficiary's power to pursue;

(ii)  Any defense based on any legal disability of Obligor, any discharge or limitation of the liability of Obligor to Beneficiary, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Trustor's obligations exceed or are more burdensome than those of Obligor;

14

(iii)  All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Obligor, and demands and notices of every kind;

(iv)  Any defense based on or arising out of any defense that Obligor may have to the payment or performance of the Obligor Liabilities or any part of them; and

(v)  Until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that the Beneficiary may have against Obligor, and all rights to participate in any security now or later to be held by Beneficiary for the Secured Obligations.

(c)  Trustor waives any rights or defenses that are or may become available to Trustor by reason of Sections 2787 to 2855, inclusive, of the California Civil Code.

(d)  Trustor waives all rights and defenses that Trustor may have because the Obligor Liabilities may be secured by real property other than the Property hereby encumbered.  This means, among other things:  (i)  Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) without first foreclosing on any real or personal property collateral securing the Obligor Liabilities; and (ii) if Beneficiary forecloses on any real property collateral securing the Obligor Liabilities:  (A) the amount due under the Obligor Liabilities and the Guaranty may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (B) Beneficiary may collect from Trustor (including enforcing this Deed of Trust against Trustor) even if Beneficiary, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Obligor.  This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because the Obligor Liabilities may be secured by real property other than the Property hereby encumbered.  These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580c, 580d, 580e and/or 726 of the California Code of Civil Procedure.

(e)  Trustor waives any right or defense Trustor may have at law or equity, including California Code of Civil Procedure Section 580a, to a fair market value hearing or action to determine a deficiency judgment after a foreclosure of any real property other than the Property hereby encumbered.

(f)  Trustor assumes full responsibility for keeping informed of financial condition of Obligor and business operations and all other circumstances affecting the ability of Obligor to pay and perform its obligations to Beneficiary, and agrees that Beneficiary shall have no duty to disclose to Trustor any information which Beneficiary may receive about the financial condition or business operations of Obligor, or any other circumstances bearing on the ability of Obligor to perform.

(g)  No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust.

(h)  For purposes of this Paragraph 7.3, all references to the Obligor Liabilities or the Guaranty shall also include any instrument or agreement executed by Obligor or Trustor

15

subsequent to the date of this Deed of Trust which is secured by this Deed of Trust in accordance with the provisions of Paragraphs 2.1(b) and 2.1(c).

7.4 <u>Merger</u>. No merger shall occur as a result of Beneficiary's acquiring any other estate in or any other lien on the Property unless Beneficiary consents to a merger in writing.

7.5 <u>Joint and Several Liability</u>. If Trustor consists of more than one person, each shall be jointly and severally liable for the faithful performance of all of Trustor's obligations under this Deed of Trust, and each representation or warranty made by Trustor hereunder shall be deemed to have been made jointly and severally by each such person.

7.6 <u>Applicable Law</u>. This Deed of Trust shall be governed by California law.

7.7 <u>Successors in Interest</u>. The terms, covenants and conditions of this Deed of Trust shall be binding upon and inure to the benefit of the heirs, legal representatives, successors and assigns of the parties. However, this Paragraph does not waive the provisions of Paragraph 6.1.

7.8 <u>Waiver of Jury Trial</u>. **TRUSTOR AGREES AND DOES HEREBY WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT AGAINST TRUSTOR ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS DEED OF TRUST, AND TRUSTOR HEREBY CONSENTS TO THE JURISDICTION OF THE STATE COURTS LOCATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, FOR A DETERMINATION OF ANY DISPUTE AS TO ANY SUCH MATTERS AND AUTHORIZES THE SERVICE OF PROCESS ON THE TRUSTOR BY REGISTERED MAIL SENT TO TRUSTOR AT THE ADDRESS OF THE TRUSTOR SET FORTH IN PARAGRAPH 7.12 BELOW.**

**(a)     TRUSTOR AND BENEFICIARY (COLLECTIVELY, "THE PARTIES") PREFER THAT ANY DISPUTE BETWEEN THEM BE RESOLVED IN LITIGATION SUBJECT TO A JURY TRIAL WAIVER AS SET FORTH IN WITH THIS DEED OF TRUST, BUT THE CALIFORNIA SUPREME COURT HAS HELD THAT PRE-DISPUTE JURY TRIAL WAIVERS NOT AUTHORIZED BY STATUTE ARE UNENFORCEABLE. THIS REFERENCE PROVISION WILL BE APPLICABLE UNTIL: (I) THE CALIFORNIA SUPREME COURT HOLDS THAT A PRE-DISPUTE JURY TRIAL WAIVER PROVISION SIMILAR TO THAT CONTAINED IN THIS DEED OF TRUST IS VALID OR ENFORCEABLE; OR (II) THE CALIFORNIA LEGISLATURE ENACTS A STATUTE WHICH BECOMES LAW, AUTHORIZING PRE-DISPUTE JURY TRIAL WAIVERS OF THE TYPE IN THIS DEED OF TRUST AND, AS A RESULT, SUCH WAIVERS BECOME ENFORCEABLE. IN ADDITION, THIS REFERENCE PROVISION, IF NOT ALREADY APPLICABLE AS OTHERWISE PROVIDED HEREIN, WILL BECOME APPLICABLE, IF A COURT, CONTRARY TO A CHOICE OF LAW PROVISION CONTAINED IN THIS DEED OF TRUST, HOLDS THAT THE LAWS OF THE STATE OF CALIFORNIA APPLY TO THIS DEED OF TRUST.**

**(b)     OTHER THAN (i) NONJUDICIAL FORECLOSURE OF SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (ii) THE APPOINTMENT OF A RECEIVER OR (iii) THE EXERCISE OF OTHER PROVISIONAL REMEDIES (ANY OF WHICH MAY BE INITIATED PURSUANT TO APPLICABLE LAW), ANY CONTROVERSY, DISPUTE OR CLAIM (EACH, A "CLAIM") BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS DEED OF TRUST, WILL BE RESOLVED BY A REFERENCE PROCEEDING IN CALIFORNIA IN ACCORDANCE WITH THE PROVISIONS OF SECTION 638 ET SEQ. OF THE CALIFORNIA CODE OF CIVIL PROCEDURE ("CCP"), OR THEIR**

16

SUCCESSOR SECTIONS, WHICH SHALL CONSTITUTE THE EXCLUSIVE REMEDY FOR THE RESOLUTION OF ANY CLAIM, INCLUDING WHETHER THE CLAIM IS SUBJECT TO THE REFERENCE PROCEEDING. EXCEPT AS OTHERWISE PROVIDED IN THIS DEED OF TRUST, VENUE FOR THE REFERENCE PROCEEDING WILL BE IN THE SUPERIOR COURT OR FEDERAL DISTRICT COURT IN THE COUNTY OR DISTRICT WHERE THE REAL PROPERTY, IF ANY, IS LOCATED OR IN A COUNTY OR DISTRICT WHERE VENUE IS OTHERWISE APPROPRIATE UNDER APPLICABLE LAW (THE "COURT").

(c)    THE REFEREE SHALL BE A RETIRED JUDGE OR JUSTICE SELECTED BY MUTUAL WRITTEN AGREEMENT OF THE PARTIES. IF THE PARTIES DO NOT AGREE, THE REFEREE SHALL BE SELECTED BY THE PRESIDING JUDGE OF THE COURT (OR HIS OR HER REPRESENTATIVE). A REQUEST FOR APPOINTMENT OF A REFEREE MAY BE HEARD ON AN EX PARTE OR EXPEDITED BASIS, AND THE PARTIES AGREE THAT IRREPARABLE HARM WOULD RESULT IF EX PARTE RELIEF IS NOT GRANTED. THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT HAS POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(d)    THE PARTIES AGREE THAT TIME IS OF THE ESSENCE IN CONDUCTING THE REFERENCE PROCEEDINGS. ACCORDINGLY, THE REFEREE SHALL BE REQUESTED, SUBJECT TO CHANGE IN THE TIME PERIODS SPECIFIED HEREIN FOR GOOD CAUSE SHOWN, TO (A) SET THE MATTER FOR A STATUS AND TRIAL-SETTING CONFERENCE WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF SELECTION OF THE REFEREE, (B) IF PRACTICABLE, TRY ALL ISSUES OF LAW OR FACT WITHIN NINETY (90) DAYS AFTER THE DATE OF THE CONFERENCE AND (C) REPORT A STATEMENT OF DECISION WITHIN TWENTY (20) DAYS AFTER THE MATTER HAS BEEN SUBMITTED FOR DECISION.

(e)    THE REFEREE WILL HAVE POWER TO EXPAND OR LIMIT THE AMOUNT AND DURATION OF DISCOVERY. THE REFEREE MAY SET OR EXTEND DISCOVERY DEADLINES OR CUTOFFS FOR GOOD CAUSE, INCLUDING TRUSTOR'S OR BENEFICIARY'S FAILURE TO PROVIDE REQUESTED DISCOVERY FOR ANY REASON WHATSOEVER. UNLESS OTHERWISE ORDERED BASED UPON GOOD CAUSE SHOWN, NEITHER TRUSTOR NOR BENEFICIARY SHALL BE ENTITLED TO "PRIORITY" IN CONDUCTING DISCOVERY, DEPOSITIONS MAY BE TAKEN BY EITHER TRUSTOR OR BENEFICIARY UPON SEVEN (7) DAYS WRITTEN NOTICE, AND ALL OTHER DISCOVERY SHALL BE RESPONDED TO WITHIN FIFTEEN (15) DAYS AFTER SERVICE. ALL DISPUTES RELATING TO DISCOVERY WHICH CANNOT BE RESOLVED BY THE PARTIES SHALL BE SUBMITTED TO THE REFEREE WHOSE DECISION SHALL BE FINAL AND BINDING.

(f)    EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT THAT WHEN EITHER TRUSTOR OR BENEFICIARY SO REQUESTS, A COURT REPORTER WILL BE USED AT ANY HEARING CONDUCTED BEFORE THE REFEREE, AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING

17

SUCH A REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COURT REPORTER. SUBJECT TO THE REFEREE'S POWER TO AWARD COSTS TO THE PREVAILING PARTY, THE PARTIES WILL EQUALLY SHARE THE COST OF THE REFEREE AND THE COURT REPORTER AT TRIAL.

(g)    THE REFEREE SHALL BE REQUIRED TO DETERMINE ALL ISSUES IN ACCORDANCE WITH EXISTING CASE LAW AND THE STATUTORY LAWS OF THE STATE OF CALIFORNIA. THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA WILL BE APPLICABLE TO THE REFERENCE PROCEEDING. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF, PROVIDE ALL TEMPORARY OR PROVISIONAL REMEDIES, ENTER EQUITABLE ORDERS THAT WILL BE BINDING ON THE PARTIES AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING WITHOUT LIMITATION MOTIONS FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CCP §644 THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT OR AN ORDER IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER OR FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS PROVIDED BY LAW. THE PARTIES RESERVE THE RIGHT TO FINDINGS OF FACT, CONCLUSIONS OF LAWS, A WRITTEN STATEMENT OF DECISION, AND THE RIGHT TO MOVE FOR A NEW TRIAL OR A DIFFERENT JUDGMENT, WHICH NEW TRIAL, IF GRANTED, IS ALSO TO BE A REFERENCE PROCEEDING UNDER THIS PROVISION.

(h)    IF THE ENABLING LEGISLATION WHICH PROVIDES FOR APPOINTMENT OF A REFEREE IS REPEALED (AND NO SUCCESSOR STATUTE IS ENACTED), ANY DISPUTE BETWEEN THE PARTIES THAT WOULD OTHERWISE BE DETERMINED BY REFERENCE PROCEDURE WILL BE RESOLVED AND DETERMINED BY ARBITRATION. THE ARBITRATION WILL BE CONDUCTED BY A RETIRED JUDGE OR JUSTICE, IN ACCORDANCE WITH THE CALIFORNIA ARBITRATION ACT §1280 THROUGH §1294.2 OF THE CCP AS AMENDED FROM TIME TO TIME.    THE LIMITATIONS WITH RESPECT TO DISCOVERY SET FORTH ABOVE SHALL APPLY TO ANY SUCH ARBITRATION PROCEEDING.

(i)    THE PARTIES RECOGNIZE AND AGREE THAT ALL DISPUTES RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH OF THE PARTIES KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION WILL APPLY TO ANY DISPUTE BETWEEN THEM WHICH ARISES OUT OF OR IS RELATED TO THIS DEED OF TRUST.

7.9  <u>Interpretation</u>. Whenever the context requires, the word "it" shall include the word "they" or "them", the word "its" shall include the word "their", all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Deed of Trust are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation," and the word "including" means "including, but not limited to." The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations. It further includes all principal, interest, prepayment charges, late charges, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or

18

satisfy conditions.  No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Deed of Trust.  The Exhibit(s) to this Deed of Trust are hereby incorporated in this Deed of Trust.

7.10  Counsel Fees.  Whenever Trustor is obligated to pay or reimburse Beneficiary or Trustee for any attorneys' fees, those fees shall include the allocated costs for services of counsel.

7.11  *Waiver of Marshaling*.  *Trustor waives all rights, legal and equitable, Trustor may now or* hereafter have to require marshaling of assets or to direct the order in which any of the Property will be sold in the event of any sale under this Deed of Trust, including any rights provided by California Civil Code Sections 2899 and 3433, as such Sections may be amended from time to time.  Each successor and assign of Trustor, including any holder of a lien subordinate to this Deed of Trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

7.12  Notices.  Trustor hereby requests that a copy of notice of default and notice of sale be mailed to Trustor at the address set forth below.  That address is also the mailing address of Trustor as debtor under the Uniform Commercial Code.  Beneficiary's address given below is the address for Beneficiary as secured party under the Uniform Commercial Code.  Any such notice shall be deemed received two (2) business days after the date of deposit if deposited in the United States mail, first class, certified or registered, with postage prepaid, and addressed to such party's mailing address as set forth above, or as may be changed in a written notice sent in such manner.

Addresses for Notices to Trustor:        CRESTLLOYD, LLC
                                         8981 W. Sunset Blvd, Suite 303
                                         West Hollywood, California 90069
                                         Attn:  Nile Niami and Yvonne Niami

Address for Notices to Beneficiary:      HILLDUN CORPORATION
                                         225 West 35th St.
                                         New York, New York 10001
                                         Attn: Joshua W. Kapelman

7.13  Severability.  If any provision of this Deed of Trust should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Deed of Trust except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare all Secured Obligations immediately due and payable.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

CRESTLLOYD, LLC

By: _____
Name: Nile Niami
Title: Manager

By: _____
Name: Yvonne Niami
Title: Manager

19

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES )

On April 15, 2020 before me, Nigel Gibbs, Notary Public (insert name and title of the officer)

personally appeared Nile Niami , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

20

## ACKNOWLEDGMENT

> A notary public or other officer
> completing this certificate verifies only
> the identity of the individual who signed
> the document to which this certificate is
> attached, and not the truthfulness,
> accuracy, or validity of that document.

State of California
County of _LOS ANGELES_ )

On _April 15, 2020_ before me, _Nigel Gibbs, Notary Public_ (insert
name and title of the officer)

personally appeared _Yvonne Niami_ , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

Signature _____ (Seal)

21

## LEGAL DESCRIPTION

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGES 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76 DEGREES 06 MINUTES 07 MINUTES WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET, AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03 DEGREES 35 MINUTES 48 SECONDS TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39 DEGREES 06 MINUTES 52 SECONDS; THENCE NORTH 56 DEGREES 36 MINUTES 22 SECONDS WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44 DEGREES 55 MINUTES 04 SECONDS; THENCE NORTH 11 DEGREES 41 MINUTES 18 SECONDS WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56 DEGREES 32 MINUTES 34 SECONDS; THENCE NORTH 44 DEGREES 51 MINUTES 16 SECONDS EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13 DEGREES 13 MINUTES 20 SECONDS EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13 DEGREES 13 MINUTES 20 SECONDS WEST 106.35 FEET; THENCE NORTH 89 DEGREES 27 MINUTES 20 SECONDS WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

# EXHIBIT HH



**This page is part of your document - DO NOT DISCARD**



# 20210076455



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/14/21 AT 12:41PM**

| | |
|---|---|
| FEES: | 43.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 193.00 |



**L E A D S H E E T**



202101141110163

**00019703148**



011680671

**SEQ:**
**01**

SECURE - Daily - Priority



**THIS FORM IS NOT TO BE DUPLICATED**

E464723

444_5974292_

FOR REFERENCE ONLY: 20210076455

RECORDING REQUESTED BY AND )
WHEN RECORDED RETURN TO: )

)
Wolf, Rifkin, Shapiro, Schulman & )
Rabkin, LLP )
11400 W. Olympic Blvd., 9th Floor )
Los Angeles, CA 90064-1582 )
Attn: Steven H. Zidell, Esq. )

)

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

_____

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded October 28, 2019 as Instrument No. 20191154392 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by Carcassonne, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the "**Deed of Trust**"), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
       Joseph Englanoff, Trustee of
       Yogi Management Trust

4411657.1

RECORDING REQUESTED BY AND    )
WHEN RECORDED RETURN TO:      )
                              )
Wolf, Rifkin, Shapiro, Schulman &   )
Rabkin, LLP                   )
11400 W. Olympic Blvd., 9th Floor   )
Los Angeles, CA 90064-1582    )
Attn: Steven H. Zidell, Esq.  )
                              )

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

---

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

---

WHEREAS, the note secured by that certain Deed of Trust, recorded October 28, 2019 as Instrument No. 20191154392 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by Carcassonne, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the "**Deed of Trust**"), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
       Joseph Englanoff, Trustee of
       Yogi Management Trust

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF LOS ANGELES                  )

On _December 28, 2020_ , before me, _Faramarz Rabizadeh_____, a Notary Public, personally appeared Joseph Englanoff_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Notary Public in and for said State

> FARAMARZ RABIZADEH
> NOTARY PUBLIC - CALIFORNIA
> COMMISSION # 2288692
> LOS ANGELES COUNTY
> My Comm. Exp. November 29, 2022

4411657.1



**This page is part of your document - DO NOT DISCARD**



## 20210076456



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/14/21 AT 12:41PM**

| | |
|---|---|
| FEES: | 43.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 193.00 |



**L E A D S H E E T**



202101141110163

**00019703149**



011680671

**SEQ:**
**02**

**SECURE - Daily - Priority**



**THIS FORM IS NOT TO BE DUPLICATED**

444_5974292_4

E464123

FOR REFERENCE ONLY: 20210076456

RECORDING REQUESTED BY AND )
WHEN RECORDED RETURN TO: )
)
Wolf, Rifkin, Shapiro, Schulman & )
Rabkin, LLP )
11400 W. Olympic Blvd., 9th Floor )
Los Angeles, CA 90064-1582 )
Attn: Steven H. Zidell, Esq. )
)

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded April 23, 2018 as Instrument No. 20180389829 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by 1369 Londonderry Estate, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the **"Deed of Trust"**), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
      Joseph Englanoff, Trustee of
      Yogi Management Trust

4309034.1



| RECORDING REQUESTED BY AND | ) |
| WHEN RECORDED RETURN TO: | ) |
| | ) |
| Wolf, Rifkin, Shapiro, Schulman & | ) |
| Rabkin, LLP | ) |
| 11400 W. Olympic Blvd., 9th Floor | ) |
| Los Angeles, CA 90064-1582 | ) |
| Attn:  Steven H. Zidell, Esq. | ) |
| | ) |

_____    SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded April 23, 2018 as Instrument No. 20180389829 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by 1369 Londonderry Estate, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the **"Deed of Trust"**), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
　　　　Joseph Englanoff, Trustee of
　　　　Yogi Management Trust

4309034.1

<div style="border:1px solid black;">

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not truthfulness,
accuracy, or validity of that document.

</div>

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF LOS ANGELES                  )

On _December 28, 2020_, before me, _Faramarz Rabizadeh_____, a
Notary Public, personally appeared Joseph Englanoff , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Notary Public in and for said State

FARAMARZ RABIZADEH
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2268692
LOS ANGELES COUNTY
My Comm. Exp. November 29, 2022

4309034.1

**This page is part of your document - DO NOT DISCARD**



## 20210076457



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/14/21 AT 12:41PM**

| | |
|---|---|
| FEES: | 43.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 193.00 |



**L E A D S H E E T**



202101141110163

00019703150



011680671

**SEQ:**
**03**

SECURE - Daily - Priority



**THIS FORM IS NOT TO BE DUPLICATED**

444_5974292_4__

FOR REFERENCE ONLY: 20210076457

RECORDING REQUESTED BY AND     )
WHEN RECORDED RETURN TO:        )
                                )
Wolf, Rifkin, Shapiro, Schulman &   )
Rabkin, LLP                     )
11400 W. Olympic Blvd., 9th Floor   )
Los Angeles, CA 90064-1582      )
Attn: Steven H. Zidell, Esq.    )
                                )

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded April 23, 2018 as Instrument No. 20180389830 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by Marbella Construction, Inc., a California corporation, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the "**Deed of Trust**"), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
     Joseph Englanoff, Trustee of
     Yogi Management Trust

4411646.1

3

RECORDING REQUESTED BY AND    )
WHEN RECORDED RETURN TO:    )

Wolf, Rifkin, Shapiro, Schulman &    )
Rabkin, LLP    )
11400 W. Olympic Blvd., 9th Floor    )
Los Angeles, CA 90064-1582    )
Attn:  Steven H. Zidell, Esq.    )
    )
    )

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded April 23, 2018 as Instrument No. 20180389830 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by Marbella Construction, Inc., a California corporation, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the "**Deed of Trust**"), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
    Joseph Englanoff, Trustee of
    Yogi Management Trust

4411646.1

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA                )
                                   )
COUNTY OF LOS ANGELES              )


On _December 28, 2020_, before me, _Faramarz Rabizadeh_____, a
Notary Public, personally appeared Joseph Englanoff, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS MY HAND AND OFFICIAL SEAL.


_____
Notary Public in and for said State

FARAMARZ RABIZADEH
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2268692
LOS ANGELES COUNTY
My Comm. Exp. November 29, 2022

**This page is part of your document - DO NOT DISCARD**

## 20210076458





Pages:
0003

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/14/21 AT 12:41PM**

| | |
|---|---:|
| FEES: | 43.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 193.00 |



**L E A D S H E E T**



202101141110163

**00019703151**



011680671

**SEQ:**
**04**

SECURE - Daily - Priority



**THIS FORM IS NOT TO BE DUPLICATED**

444_5974292_1_ _

FOR REFERENCE ONLY: 20210076458

RECORDING REQUESTED BY AND )
WHEN RECORDED RETURN TO: )

)
Wolf, Rifkin, Shapiro, Schulman & )
Rabkin, LLP )
11400 W. Olympic Blvd., 9th Floor )
Los Angeles, CA 90064-1582 )
Attn: Steven H. Zidell, Esq. )

)
)

_____
SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded September 23, 2019 as Instrument No. 20190989746 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by Crestlloyd, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the "**Deed of Trust**"), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
Joseph Englanoff, Trustee of
Yogi Management Trust

4411650.1



RECORDING REQUESTED BY AND )
WHEN RECORDED RETURN TO: )
)
Wolf, Rifkin, Shapiro, Schulman & )
Rabkin, LLP )
11400 W. Olympic Blvd., 9th Floor )
Los Angeles, CA 90064-1582 )
Attn: Steven H. Zidell, Esq. )
)
)

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded September 23, 2019 as Instrument No. 20190989746 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by Crestlloyd, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the **"Deed of Trust"**), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
Joseph Englanoff, Trustee of
Yogi Management Trust

4411650.1

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF LOS ANGELES                  )


On _December 28, 2020_, before me, _Faramarz Rabizadeh_____, a
Notary Public, personally appeared Joseph Englanoff_, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Notary Public in and for said State

FARAMARZ RABIZADEH
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2289692
LOS ANGELES COUNTY
My Comm. Exp. November 29, 2022

4411650.1

**This page is part of your document - DO NOT DISCARD**

## 20210076459



Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/14/21 AT 12:41PM**

| | |
|---|---|
| FEES: | 43.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 193.00 |



**L E A D S H E E T**



202101141110163

**00019703152**



011680671

**SEQ:
05**

**SECURE - Daily - Priority**



**THIS FORM IS NOT TO BE DUPLICATED**

444_5974292_4__

FOR REFERENCE ONLY: 20210076459

RECORDING REQUESTED BY AND )
WHEN RECORDED RETURN TO: )
)
Wolf, Rifkin, Shapiro, Schulman & )
Rabkin, LLP )
11400 W. Olympic Blvd., 9th Floor )
Los Angeles, CA 90064-1582 )
Attn: Steven H. Zidell, Esq. )
)
)

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded October 28, 2019 as Instrument No. 20191154391 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by 10701 Bellagio Road, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the "**Deed of Trust**"), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
Joseph Englanoff, Trustee of
Yogi Management Trust

4411655.1

RECORDING REQUESTED BY AND )
WHEN RECORDED RETURN TO: )
)
Wolf, Rifkin, Shapiro, Schulman & )
Rabkin, LLP )
11400 W. Olympic Blvd., 9th Floor )
Los Angeles, CA 90064-1582 )
Attn: Steven H. Zidell, Esq. )
)
)

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

# TITLE(S)

## SUBSTITUTION OF TRUSTEE AND DEED OF FULL RECONVEYANCE

WHEREAS, the note secured by that certain Deed of Trust, recorded October 28, 2019 as Instrument No. 20191154391 in the Official Records in the Office of the County Recorder of Los Angeles County, State of California, executed by 10701 Bellagio Road, LLC, a California limited liability company, as trustor, to Chicago Title Company as trustee, for YOGI Securities Holdings, LLC, a Nevada limited liability company, as beneficiary (the "**Deed of Trust**"), has been fully paid and satisfied;

NOW, THEREFORE, the undersigned, being the present legal owner and holder of the note secured by the Deed of Trust, does hereby substitute and appoint itself as successor trustee, and as trustee does hereby reconvey, without warranty, to the person or persons entitled thereto, all the estate, title, and interest held by it, as trustee under the Deed of Trust, to the property described therein.

IN WITNESS WHEREOF, the undersigned has caused this reconveyance to be executed as of December 24, 2020.

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
Joseph Englanoff, Trustee of
Yogi Management Trust

4411655.1

> A notary public or other officer completing this
> certificate verifies only the identity of the
> individual who signed the document to which this
> certificate is attached, and not truthfulness,
> accuracy, or validity of that document.

STATE OF CALIFORNIA                    )
                                       )
COUNTY OF LOS ANGELES                  )


On _December 28, 2020_, before me, _Faramarz Rabizadeh_____, a
Notary Public, personally appeared Joseph Englanoff, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Notary Public in and for said State

FARAMARZ RABIZADEH
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 2286692
LOS ANGELES COUNTY
My Comm. Exp. November 29, 2022

# EXHIBIT II

| Date of Payment | EFI Loan Fees | Furniture | Sales Office/ Supplies/ Furnishing | Skyline/ Overhead Payroll | Nile Travel | Interest Payments | Skyline – Project Management Fees | Property Taxes | Centurion AV | Electric | Skyline/ Other Labor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/19 | | | | | | $695,044.29 | | | | | |
| 5/15/19 | | | | | | | | | | $65,000.00 | |
| 9/1/19 | | | | | | $703,993.75 | | | | | |
| 10/1/19 | | | | | | $689,623.27 | | | | | |
| 10/3/19 | | | | | | | | $123,001.04 | | | |
| 10/10/19 | $1,500,000.00 | | | | | | $30,000.00 | | | | $45,000.00 |
| 10/21/19 | | | | | | | | | $500,000.00 | $150,000.00 | |
| 11/1/19 | | | | | | $736,649.19 | | | | | |
| 12/1/19 | | | | | | $306.91 $734,421.79 | | | | | |
| 12/12/19 | | | $25,000.00 | | | | | | | | |
| 12/31/19 | | | | | | | | $600,335.06 | | | |
| 1/1/20 | | | | | | $561,146.01 | | | | | |
| 1/2/20 | | | | | | $208,557.12 | | | | | |
| 1/3/20 | | | | $72,780.00 | | | $30,906.00 | | | | |
| 1/28/20 | | | | $34,495.00 | | | $32,702.94 | | | | |
| 2/1/20 | | | | | | $785,339.87 | | | | | |
| 2/3/20 | | | | | | | | | | $25.000.00 | |

| Date of Payment | EFI Loan Fees | Furniture | Sales Office/ Supplies/ Furnishing | Skyline/ Overhead Payroll | Nile Travel | Interest Payments | Skyline – Project Management Fees | Property Taxes | Centurion AV | Electric | Skyline/ Other Labor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/12/20 | | | | | | | | | $750,000.00 | | |
| 2/14/20 | | | | $50,000.00 | | | $28,479.80 | | | | $33,060.00 |
| 3/1/20 | | | | | | $750,504.24 | | | | | |
| 3/5/20 | | | | | | | $13,692.30 | | | | $22,820.20 |
| 3/16/20 | | | | | | | $13,742.30 | | | | $20,375.00 |
| 3/30/20 | | | | | | | $13,717.30 | | | | $27,935.00 |
| 4/1/20 | | | | | | $818,492.10 | | | | | |
| 4/6/20 | | | | | | | | | | $75,000.00 | $33,418.38 |
| 4/7/20 | | | | | | | | $545,759.14 | | | |
| 4/10/20 | | | | | | | $16,252.15 | | | | $27,996.97 |
| 4/21/22 | | | | | | | $9,058.95 | | | | $14,932.00 |
| 4/28/20 | | | | | | | $9,058.95 | | | | $14,692.00 |
| 5/1/20 | | | | | | $809,716.55 | | | | | |
| 5/5/20 | | | | | | | $9,058.95 | | | | $16,373.00 |
| 5/11/20 | | | | | | | $8,077.38 | | | | $14,687.00 |
| 5/19/20 | | | | | | | $7,058.95 | | | | $13,687.00 |
| 5/26/20 | | | | | | | $7,233.57 | | | | $12,412.00 |
| 6/3/20 | | | | | | | $7,058.00 | | | | $10,886.00 |

| Date of Payment | EFI Loan Fees | Furniture | Sales Office/ Supplies/ Furnishing | Skyline/ Overhead Payroll | Nile Travel | Interest Payments | Skyline – Project Management Fees | Property Taxes | Centurion AV | Electric | Skyline/ Other Labor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/10/20 | $85,000.00 | | | | | $362,012.29 | $7,058.95 | | | $50,000.00 | $10,512.00 |
| 8/25/20 | | | | | | $405,569.94 $1,210,156.30 $1,253,956.73 $1,000,000.00* $873,642.46 | | | | | |
| 8/27/20 | | $317,000.00 $30,000.00 | | | | | | | $655,000.00 | $50,000.00 | |
| 9/1/20 | | | | | | $85,000.00 | | | | | |
| 9/3/20 | | | | | | | $77,648.45 | | | | $37,690.00 |
| 9/17/20 | | $158,000.00 $317,000.00 | | | | | $21,184,22 | | | | $14,177.65 |
| 9/21/20 | | $57,000.00 | | | | | | | | | |
| 10/1/20 | | | | | | $899,661.63 | | | | | |
| 10/2/20 | | $61,250.00 | $535.00 | | | | $14,132.63 | | | | $15,645.00 |
| 10/6/20 | | | | | | | $9,500.00 | | | | |
| 10/19/20 | | $36,610.00 | | | | | $14,810.20 | | | | $17,855.00 |
| 10/29/20 | | $75,000.00 | | | | | | | | | |
| 11/1/20 | | | | | | $949,015.81 | | | | | |
| 11/5/20 | | | | | | | $14,810.20 $9,500.00 | | | $50,000.00 | $18,630.00 |
| 11/19/20 | | $316,000.00 $25,000.00 $25,000.00 | $59.82 | | | | $14,810.20 | | | | $18,199.00 |
| 12/7/20 | | | | | | | $9,500.00 $22,215.30 | | | | $21,080.00 |

| Date of Payment | EFI Loan Fees | Furniture | Sales Office/ Supplies/ Furnishing | Skyline/ Overhead Payroll | Nile Travel | Interest Payments | Skyline – Project Management Fees | Property Taxes | Centurion AV | Electric | Skyline/ Other Labor |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/23/20 | | | | | | | | | $480,500.00 | | |
| 12/24/20 | | | | | | | $22,215.30 | | | | $22,785.00 |
| 12/31/20 | | | | | | | $14,810.20 | | | $30,000.00 | $11,200.00 |
| 1/4/21 | $15,500.00 | | | | | | | | | | |
| 1/22/21 | | | | | | | $15,984.60 | | | | $12,470.00 |
| 2/2/21 | $15,500.00 | | | | | | | | | | |
| 2/12/21 | | | | | | | $24,043.32 | | $7,406.88 | | $22,125.00 |
| 2/16/21 | | $13,500.00 $50,000.00 | | | | | | | | | |
| 2/26/21 | | | | | | | | | $131,000.00 | | |
| 3/3/21 | $15,500.00 | | | | | | | | $118,500.00 | | |
| 6/3/21 | | $27,000.00 | | | | | $20,192.25 | | | | $19,940.00 |
| 6/17/21 | | | | | | | $2,692.30 | | $150,000.00 | | |
| 7/6/21 | $21,000.00 | | | | | | | | | | |
| TOTAL | $1,352,500.00 | $5,918,013.46 | $25,259.82 | $482,810.00 | $74,389.56 | $18,280,031.87 | $640,021.44 | $2,356,354.24 | $5,671,406.88 | $1,020,000.00 | $710,583.20 |

**Grand total:  $36,531,370.47**

*Points paid

# EXHIBIT JJ

CLIENT TRUST LEDGER
HANKEY INVESTMENT COMPANY, LP
HI1344-000-CRESTLLOYD, LLC (BORROWER)

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 11/05/2018 | CLOSING FUND | HANKEY CAP | EFI Doc Fee | $15,000.00 |
| 11/05/2018 | HANKEY CAP | HANKEY CAP | Deposit | -$5,000.00 |
| 11/05/2018 | HANKEY CAP | HANKEY CAP | EFI Loan Fee | $1,200,000.00 |
| 11/05/2018 | HANKEY CAP | ESCROW | Hard Cost Contingency | $273,549.67 |
| 11/05/2018 | ESCROW | HANKEY CAP | EFI Doc Fee | $7,500.00 |
| 11/05/2018 | ESCROW | ESCROW | Land/Lot Purchase | $45,343,950.33 |
| 11/05/2018 | ESCROW | ESCROW | Title and Recording Fees | $82,500.00 |
| | | | | |
| 11/13/2018 | CGS | CRESTLLOYD | Doors and Windows | $261,916.00 |
| 11/13/2018 | SKYLINE | CRESTLLOYD | Other-Labor | $30,000.00 |
| 11/13/2018 | SCP POOL JABS FLEXI | CRESTLLOYD | Swimming Pool | $145,752.34 |
| 11/13/2018 | SCP POOL JABS FLEXI | CRESTLLOYD | Swimming Pool | $8,580.00 |
| 11/13/2018 | WEST COAST GATE | CRESTLLOYD | Garage Doors | $100,000.00 |
| 11/13/2018 | CENTURION | CRESTLLOYD | A/V | $1,900,000.00 |
| 11/13/2018 | NILE ILG | CRESTLLOYD | Furniture | $1,500,000.00 |
| 11/13/2018 | AMERICAN RENTALS | CRESTLLOYD | Rentals | $41,845.60 |
| 11/13/2018 | POWERTEK | CRESTLLOYD | Electrical | $300,000.00 |
| 11/13/2018 | PUBLIC INSURANCE | CRESTLLOYD | Permits and Fees | $1,263.00 |
| 11/13/2018 | BMC | CRESTLLOYD | Decks | $8,865.32 |
| 11/13/2018 | INDIGO | CRESTLLOYD | Foundation | $30,707.94 |
| 11/13/2018 | JASS DESIGN | CRESTLLOYD | Exterior Painting | $45,000.00 |
| 11/13/2018 | INVESTOR PAYOUT | CRESTLLOYD | Lot Payoff | $6,000,000.00 |
| 11/13/2018 | CAD STONE | CRESTLLOYD | CAD AND WIN SPLIT | $225,160.00 |
| 11/13/2018 | BMC | CRESTLLOYD | Decks | $52,651.24 |
| 11/13/2018 | SYNDER DIAMON | CRESTLLOYD | Finish Plumbing | $652,590.13 |
| 11/13/2018 | MISC | CRESTLLOYD | Utilities | $11,319.44 |
| 11/13/2018 | J&E TEXTURE | CRESTLLOYD | Drywall | $30,200.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 11/13/2018 | ALLIANCE PREM FINANCE | CRESTLLOYD | Insurance | $161,546.52 |
| 11/13/2018 | WEST COAST GATE | CRESTLLOYD | Finish Carpentry (Sub) | $100,000.00 |
| 11/13/2018 | ADVANCED CONCRETE CUTTING | CRESTLLOYD | Foundation | $475.00 |
| 11/13/2018 | DAIKIN MANUFA / NSWC | CRESTLLOYD | HVAC | $118,380.99 |
| 11/13/2018 | CREST REAL ESTATE | CRESTLLOYD | Permits and Fees | $20,243.51 |
| 11/13/2018 | LANDSCAPE DEV | CRESTLLOYD | Landscaping | $211,725.88 |
| 11/13/2018 | PORTNOY | CRESTLLOYD | Water Hookup/Tank/Well | $110,200.00 |
| 11/13/2018 | KENNCO | CRESTLLOYD | Plumbing | $45,396.75 |
| 11/13/2018 | KN COATING | CRESTLLOYD | Waterproofing | $48,675.00 |
| 11/14/2018 | SKYLINE | CRESTLLOYD | Overhead/Payroll | $50,000.00 |
| 11/14/2018 | PORTNOY | CRESTLLOYD | Water Hookup/Tank/Well | $103,900.00 |
| 11/14/2018 | CGS | CRESTLLOYD | Doors and Windows | $318,661.00 |
| 11/14/2018 | WEST VALLEY GREEN | CRESTLLOYD | Landscaping | $105,000.00 |
| 11/14/2018 | NILE TRAVEL | CRESTLLOYD | Miscellaneous | $74,389.56 |
| 11/14/2018 | WEST COAST GATE | CRESTLLOYD | Finish Carpentry (Sub) | $125,000.00 |
| 11/14/2018 | WEST COAST GATE | CRESTLLOYD | Garage Doors | $75,000.00 |
| 11/14/2018 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $50,000.00 |
| 11/20/2018 | PLUS DEV | PLUS DEV | Soft Cost Contingency | $5,000.00 |
| 12/01/2018 | HANKEY CAP | HANKEY CAP | Interest payment | $444,329.13 |
| 12/05/2018 | PROP TAXES | PROP TAXES | Property Taxes | $543,629.50 |
| 01/01/2019 | HANKEY CAP | CRESTLLOYD | Interest payment | $576,903.41 |
| 01/09/2019 | ALLIANCE PREM FINANCE | ALLIANCE | Insurance | $84,811.92 |
| 01/11/2019 | NILE FIJI SCULPTURE | CRESTLLOYD | Furniture | $20,000.00 |
| 01/11/2019 | SNYDER DIAMON | CRESTLLOYD | Finish Plumbing | $463,639.19 |
| 01/11/2019 | WEST VALLEY GREEN | CRESTLLOYD | Landscaping | $208,365.00 |
| 01/11/2019 | SKYLINE | CRESTLLOYD | Overhead/Payroll | $100,000.00 |
| 01/11/2019 | JF BUILDERS | CRESTLLOYD | Foundation | $62,682.00 |
| 01/11/2019 | KENNCO | CRESTLLOYD | Plumbing | $38,693.75 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 01/11/2019 | YK CABINETS | CRESTLLOYD | Finish Carpentry (Sub) | $125,000.00 |
| 01/11/2019 | POWERTEK | CRESTLLOYD | Electrical | $100,000.00 |
| | | | | |
| 01/30/2019 | MONKEY TRUCKING | CRESTLLOYD | Finish Grading | $19,100.00 |
| 01/30/2019 | CAD STONE | CRESTLLOYD | Stone | $121,660.00 |
| 01/30/2019 | PORTNOY | CRESTLLOYD | Water Hookup/Tank/Well | $138,224.00 |
| 01/30/2019 | ALLIANCE PREM FINANCE | CRESTLLOYD | Insurance | $80,773.26 |
| 01/30/2019 | NILE ILG | CRESTLLOYD | Furniture | $826,646.00 |
| 01/30/2019 | JASS DESIGN | CRESTLLOYD | Exterior Painting | $25,000.00 |
| 01/30/2019 | SYNDER DIAMOND | CRESTLLOYD | Finish Plumbing | $125,000.00 |
| 01/30/2019 | BARAZANI | CRESTLLOYD | Foundation | $50,170.00 |
| 01/30/2019 | AMERICAN RENTALS | CRESTLLOYD | Rentals | $15,841.52 |
| 01/30/2019 | RSD | CRESTLLOYD | HVAC | $43,095.60 |
| 01/30/2019 | SCP POOL JABS FLEXI | CRESTLLOYD | Swimming Pool | $2,850.00 |
| 01/30/2019 | DWP | CRESTLLOYD | Rough Electrical | $8,997.00 |
| 01/30/2019 | KN COATING | CRESTLLOYD | Waterproofing | $17,100.00 |
| 01/30/2019 | PACIFICO STRUCTURE | CRESTLLOYD | Shoring Bracing | $30,135.00 |
| 01/30/2019 | METRO DISPOSAL | CRESTLLOYD | Clean up | $7,781.60 |
| | | | | |
| 02/01/2019 | 0119 | CRESTLLOYD | Soft Cost Contingency | $12,000.00 |
| 02/01/2019 | HANKEY CAP | HANKEY CAP | Interest payment | $590,753.13 |
| | | | | |
| 02/12/2019 | CGS | CRESTLLOYD | Doors and Windows | $172,280.00 |
| | | | | |
| 03/01/2019 | HANKEY CAP | HANKEY CAP | Interest payment | $555,883.87 |
| 03/01/2019 | ALLIANCE PREM FINANCE | ALLIANCE PREM | Insurance | $80,773.26 |
| | | | | |
| 03/27/2019 | ROLLS SCAFFOLD | CRESTLLOYD | Plaster, Stucco | $5,536.56 |
| 03/27/2019 | SCP POOL JABS FLEXI | CRESTLLOYD | Swimming Pool | $145,752.34 |
| 03/27/2019 | CARAVAN RUGS | CRESTLLOYD | Furniture | $85,990.00 |
| 03/27/2019 | GOLDEN STATE ROOF | CRESTLLOYD | Roofing | $10,000.00 |
| 03/27/2019 | CREST REAL ESTATE | CRESTLLOYD | Permits and Fees | $7,616.48 |
| 03/27/2019 | J&E TEXTURE | CRESTLLOYD | Drywall | $69,917.50 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 03/27/2019 | COAST FIREPLACE | CRESTLLOYD | Fireplaces/Chimneys | $16,055.00 |
| 03/27/2019 | DESIGN SHOP DELIVERED | CRESTLLOYD | Decorator Walls | $151,123.00 |
| 03/27/2019 | SKYLINE | CRESTLLOYD | Other-Labor | $40,000.00 |
| 03/27/2019 | JASS DESIGN | CRESTLLOYD | Exterior Painting | $50,000.00 |
| 03/27/2019 | KN COATING | CRESTLLOYD | Waterproofing | $28,625.00 |
| 03/27/2019 | BARCA IRON WORKS | CRESTLLOYD | Stairs and Rails | $22,700.00 |
| 03/27/2019 | OSARIO CONSTRUCTION | CRESTLLOYD | Decks | $87,513.39 |
| 03/27/2019 | POWERTEK | CRESTLLOYD | Electrical | $150,000.00 |
| 03/27/2019 | FEFFER GEO | CRESTLLOYD | Soils Report/Tests | $20,412.95 |
| 03/27/2019 | ALLIANCE PREM FINANCE | CRESTLLOYD | Insurance | $80,773.26 |
| 03/27/2019 | NILE SKYLINE | CRESTLLOYD | Overhead/Payroll | $150,000.00 |
| 03/27/2019 | KENNCO | CRESTLLOYD | Plumbing | $42,818.10 |
| 03/27/2019 | Wolf, Rifkin, & Shapiro | CRESTLLOYD | Legal Services | $42,738.87 |
| 03/27/2019 | ALLSTATE | CRESTLLOYD | Landscaping | $30,837.00 |
| 03/27/2019 | PARQUET BY DAN | CRESTLLOYD | Flooring | $40,925.00 |
| 03/27/2019 | BARAZANI | CRESTLLOYD | Foundation | $23,200.00 |
| 03/27/2019 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $30,000.00 |
| 04/01/2019 | HANKEY CAP | CRESTLLOYD | Interest payment | $624,088.46 |
| 04/01/2019 | PROP TAX | CRESTLLOYD | Property Taxes | $543,629.50 |
| 04/16/2019 | ALLIANCE PREM FINANCE | CRESTLLOYD | Insurance | $75,037.29 |
| 04/18/2019 | RICHEE | CRESTLLOYD | Lighting Fixtures | $29,565.52 |
| 04/18/2019 | AMERICAN RENTALS | CRESTLLOYD | Rentals | $39,183.65 |
| 04/18/2019 | SCP POOL JABS FLEXI | CRESTLLOYD | Swimming Pool | $10,000.00 |
| 04/18/2019 | WEST COAST GATE | CRESTLLOYD | Finish Carpentry (Sub) | $75,000.00 |
| 04/18/2019 | HENANDEZ CARPET | CRESTLLOYD | Carpet | $108,742.81 |
| 04/18/2019 | CENTURION | CRESTLLOYD | A/V | $979,000.00 |
| 04/18/2019 | NEWBURY CONCRETE | CRESTLLOYD | Plaster, Stucco | $67,600.00 |
| 04/18/2019 | CAD STONE | CRESTLLOYD | CAD AND CREATIVE SPLIT | $272,330.60 |
| 04/18/2019 | WEST VALLEY GREEN | CRESTLLOYD | Landscaping | $150,000.00 |
| 04/18/2019 | METRO DISP | CRESTLLOYD | House Cleaning | $7,726.80 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 05/01/2019 | HANKEY CAP | CRESTLLOYD | Interest payment | $632,229.27 |
| 06/01/2019 | HANKEY CAP | CRESTLLOYD | Interest payment | $668,982.63 |
| 06/07/2019 | ALLIANCE PREM FINANCE | CRESTLLOYD | Insurance | $48,601.81 |
| 06/10/2019 | SKYLINE | CRESTLLOYD | Overhead/Payroll | $25,000.00 |
| 07/01/2019 | ALLIANCE PREM FINANCE | CRESTLLOYD | Insurance | $58,833.32 |
| 07/01/2019 | HANKEY CAP | CRESTLLOYD | Interest payment | $654,051.72 |
| 07/01/2019 | HANKEY CAP | CRESTLLOYD | WIRE FEE | $12.00 |
| 07/12/2019 | PLUS DEV | CRESTLLOYD | Soft Cost Contingency | $7,000.00 |
| 07/19/2019 | KENNCO | CRESTLLOYD | Plumbing | $38,114.53 |
| 07/19/2019 | WEST COAST GATE | CRESTLLOYD | Ornamental Iron | $19,308.00 |
| 07/19/2019 | MUSE WALL | CRESTLLOYD | Decorator Walls | $75,125.00 |
| 07/19/2019 | RESIDENTIAL ELEVATOR | CRESTLLOYD | Elevator/Dumbwaiter | $70,215.50 |
| 07/19/2019 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $30,000.00 |
| 07/19/2019 | CGS | CRESTLLOYD | Doors and Windows | $50,000.00 |
| 07/19/2019 | DRS ENGINEER | CRESTLLOYD | Soils Report/Tests | $2,375.00 |
| 07/19/2019 | NILE OFFICE | CRESTLLOYD | Land/Lot Purchase | $50,000.00 |
| 07/19/2019 | SKYLINE | CRESTLLOYD | Other-Labor | $90,000.00 |
| 07/19/2019 | NORTHSTAR FREIGHT | CRESTLLOYD | Water Hookup/Tank/Well | $34,548.59 |
| 07/19/2019 | CREST REAL ESTATE | CRESTLLOYD | Permits and Fees | $3,646.55 |
| 07/19/2019 | TECHNOGYM | CRESTLLOYD | Gym | $16,053.40 |
| 07/19/2019 | LADWP | CRESTLLOYD | Utilities | $8,604.73 |
| 07/19/2019 | AZ FIRE SPRINKLERS | CRESTLLOYD | Fire Sprinklers | $7,450.00 |
| 07/19/2019 | CARAVAN RUGS RESTORATION HW | CRESTLLOYD | Furniture | $563,007.46 |
| 07/19/2019 | JASS DESIGN | CRESTLLOYD | Exterior Painting | $20,000.00 |
| 07/19/2019 | AMERICAN RENTALS | CRESTLLOYD | Rentals | $33,271.33 |
| 07/19/2019 | ALLSTATE LANDSCAPING | CRESTLLOYD | Landscaping | $16,215.00 |
| 07/19/2019 | KN COASTING | CRESTLLOYD | Waterproofing | $23,750.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 07/19/2019 | SCHMIDT METAL | CRESTLLOYD | Gazebo | $139,700.00 |
| 08/01/2019 | HANKEY CAP | HANKEY CAP | Interest payment | $695,044.29 |
| 08/06/2019 | ALLIANCE PREM FINANCE | CRESTLLOYD | Insurance | $43,973.07 |
| 08/15/2019 | BARAZANI / INDIGO | CRESTLLOYD | Foundation | $59,217.53 |
| 08/15/2019 | JMS AIR | CRESTLLOYD | HVAC | $45,000.00 |
| 08/15/2019 | CAD STONE | CRESTLLOYD | Stone | $100,000.00 |
| 08/15/2019 | POWERTEK | CRESTLLOYD | Electrical | $65,000.00 |
| 08/15/2019 | WEST VALLEY GREEN | CRESTLLOYD | Landscaping | $75,000.00 |
| 08/15/2019 | GB DRAPERY | CRESTLLOYD | Decorator Walls | $59,302.18 |
| 08/20/2019 | PLUS DEV | PLUS DEV | Soft Cost Contingency | $5,500.00 |
| 09/01/2019 | HANKEY CAP | HANKEY CAP | Interest payment | $703,993.75 |
| 10/01/2019 | HANKEY CAP | HANKEY CAP | Interest payment | $689,623.27 |
| 10/03/2019 | PROP TAX | PROP TAX | Property Taxes | $123,001.04 |
| 10/10/2019 | INDIGO CONST | CRESTLLOYD | Foundation | $36,017.53 |
| 10/10/2019 | AZ FIRE SPRINKLERS | CRESTLLOYD | Fire Sprinklers | $4,600.00 |
| 10/10/2019 | NILE ILG | CRESTLLOYD | Furniture | $1,500,000.00 |
| 10/10/2019 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $30,000.00 |
| 10/10/2019 | AMERICAN RENTALS | CRESTLLOYD | Rentals | $32,909.39 |
| 10/10/2019 | KENNCO | CRESTLLOYD | Plumbing | $9,606.70 |
| 10/10/2019 | WEST COAST GATE | CRESTLLOYD | Ornamental Iron | $45,052.00 |
| 10/10/2019 | LADWP/SPECTRUM/VERIZON | CRESTLLOYD | Utilities | $9,768.81 |
| 10/10/2019 | SCP POOL JABS FLEXI | CRESTLLOYD | Swimming Pool | $74,045.00 |
| 10/10/2019 | CGS | CRESTLLOYD | Doors and Windows | $51,151.80 |
| 10/10/2019 | NILE OFFICE | CRESTLLOYD | Overhead/Payroll | $100,000.00 |
| 10/10/2019 | JASS DESIGN | CRESTLLOYD | Exterior Painting | $30,000.00 |
| 10/10/2019 | SKYLINE | CRESTLLOYD | Other-Labor | $45,000.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|--------------------------|------|---------|
| 10/16/2019 | POWERTEK | POWERTEK | Electrical | $150,000.00 |
| 10/21/2019 | CENTURION | CENTURION | A/V | $500,000.00 |
| 10/25/2019 | DAKOTA DRILL | DAKOTA DRILL | Foundation | $360,961.00 |
| 10/28/2019 | CAD STONE | CAD STONE | Stone | $251,108.37 |
| 11/01/2019 | HANKEY CAP | HANKEY CAP | Interest payment | $736,649.19 |
| 11/08/2019 | CAP PREMIUM | CAP PREMIUM | Insurance | $50,698.08 |
| 11/15/2019 | EP KRANITZ | EP KRANITZ CUT CHECK | Legal Services | $49,387.88 |
| 11/25/2019 | NILE OFFICE & PAYROLL | CRESTLLOYD | Overhead/Payroll | $210,508.00 |
| 12/01/2019 | HANKEY CAP | CRESTLLOYD | Interest payment | $306.91 |
| 12/01/2019 | HANKEY CAP | CRESTLLOYD | Interest payment | $734,421.79 |
| 12/04/2019 | CAP PREMIUM | CAP PREMIUM | Insurance | $47,159.80 |
| 12/09/2019 | PLUS DEV | PLUS DEV | Miscellaneous | $5,500.00 |
| 12/12/2019 | NILE TRAVEL | CRESTLLOYD | Sales Office/Supplies/Furnishing | $25,000.00 |
| 12/12/2019 | WEST VALLEY GREEN | WEST VALLEY GREEN | Landscaping | $150,000.00 |
| 12/17/2019 | CAP PREMIUM | CAP PREMIUM | Insurance | $3,715.19 |
| 12/19/2019 | CAP PREMIUM | CAP PREMIUM | Insurance | $47,159.80 |
| 12/19/2019 | CAP PREMIUM | CAP PREMIUM | Insurance | $3,538.28 |
| 12/31/2019 | PROP TAX | PROP TAX | Property Taxes | $600,335.06 |
| 01/01/2020 | HANKEY CAP | HANKEY CAP | Interest payment PARTIAL | $561,146.01 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 01/02/2020 | HANKEY CAP | HANKEY CAP | Interest payment PARTIAL | $208,557.12 |
| 01/03/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $30,906.00 |
| 01/03/2020 | SKYLINE | CRESTLLOYD | Overhead/Payroll | $72,780.00 |
| 01/06/2020 | KN COATING | KN COATING | Waterproofing | $32,675.00 |
| 01/07/2020 | CAD STONE | CRESTLLOYD | Stone | $56,355.93 |
| 01/15/2020 | SKYLINE | CRESTLLOYD | Rentals | $16,653.54 |
| 01/15/2020 | SKYLINE | CRESTLLOYD | Utilities | $13,222.20 |
| 01/22/2020 | CAP PREMIUM | | Insurance | $50,698.08 |
| 01/28/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $32,702.94 |
| 01/28/2020 | SKYLINE | CRESTLLOYD | Overhead/Payroll | $34,495.00 |
| 02/01/2020 | HANKEY CAP | HANKEY CAP | Interest payment | $785,339.87 |
| 02/03/2020 | KENNCO | KENNCO | Plumbing | $23,363.15 |
| 02/03/2020 | WEST ELEC / RICHEE | WEST ELEC / RICHEE | Lighting Fixtures | $115,725.12 |
| 02/03/2020 | EA GUZMAN | EA GUZMAN | Plaster, Stucco | $40,241.65 |
| 02/03/2020 | BURSWICK BOWL | BURSWICK BOWL | Bowling Alley | $45,000.00 |
| 02/03/2020 | POWERTEK | POWERTEK | Electrical | $75,000.00 |
| 02/12/2020 | CENTURION | CENTURION | A/V | $750,000.00 |
| 02/12/2020 | PLUS DEV | PLUS DEV | Miscellaneous | $4,000.00 |
| 02/14/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $28,479.80 |
| 02/14/2020 | NILE OFFICE | CRESTLLOYD | Overhead/Payroll | $50,000.00 |
| 02/14/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $33,060.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 02/24/2020 | FEFFER GEO | FEFFER GEO | Soils Report/Tests | $20,000.00 |
| 02/24/2020 | CREST REAL ESTATE | CREST REAL | Permits and Fees | $13,768.13 |
| 02/24/2020 | AMERICAN TRUCK | AMERICAN TRUCK | Rentals | $14,689.35 |
| 02/24/2020 | WEST COAST GATE | WEST COAST GATE | Garage Doors | $116,865.00 |
| 02/24/2020 | KN COAT | KN COAT | Waterproofing | $33,975.00 |
| 02/24/2020 | INDIGO | INDIGO | Foundation | $12,000.00 |
| 02/26/2020 | CAP PREMIUM | CAP PREMIUM | Insurance | $538.28 |
| 02/26/2020 | CAP PREMIUM | CAP PREMIUM | Insurance | $69,496.61 |
| 02/26/2020 | CAP PREMIUM | CAP PREMIUM | Insurance | $3,000.00 |
| 03/01/2020 | HANKEY CAP | HANKEY CAP | Interest payment | $750,504.24 |
| 03/02/2020 | DAKOTA DRILL | DAKOTA DRILL | Foundation | $145,413.65 |
| 03/02/2020 | METRO DISP | METRO DISP | House Cleaning | $5,507.15 |
| 03/05/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $13,692.30 |
| 03/05/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $22,280.20 |
| 03/12/2020 | KN COAT | KN COAT | Waterproofing | $28,850.00 |
| 03/12/2020 | RESIDENTIAL ELEVATOR | CRESTLLOYD | Elevator/Dumbwaiter | $14,274.00 |
| 03/12/2020 | SKYLINE | CRESTLLOYD | Exterior Painting | $1,562.76 |
| 03/12/2020 | CAD STONE | CAD STONE | Stone | $52,115.43 |
| 03/12/2020 | SKYLINE | CRESTLLOYD | Landscaping | $1,000.00 |
| 03/12/2020 | BOOTH GRADING | BOOTH GRADING | Finish Grading | $59,246.00 |
| 03/12/2020 | SKYLINE | CRESTLLOYD | House Cleaning | $1,400.00 |
| 03/12/2020 | SCHMIDT METAL | SCHMIDT METAL | Gazebo | $19,800.00 |
| 03/12/2020 | SKYLINE | CRESTLLOYD | Rentals | $6,708.59 |
| 03/12/2020 | KR WELDING | KR WELDING | Stairs and Rails | $15,000.00 |
| 03/13/2020 | PLUS DEV | PLUS DEV | Miscellaneous | $9,500.00 |
| 03/16/2020 | TONY REIMBURSE | CRESTLLOYD | Clean up | $872.50 |
| 03/16/2020 | MUSE WALL | MUSE WALL COVER | Decorator Walls | $16,940.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 03/16/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $13,742.30 |
| 03/16/2020 | FEFFER GEO | FEFFER GEO | Soils Report/Tests | $11,188.00 |
| 03/16/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $20,375.00 |
| 03/16/2020 | GIROUX GLASS | GIROUX GLASS | Doors and Windows | $31,079.70 |
| 03/16/2020 | TOP BUILD SUPPORT | TOP BUILD SUPPORT | Waterproofing | $7,200.00 |
| 03/16/2020 | PRO PEST | PRO PEST | Landscaping | $7,800.00 |
| 03/30/2020 | TONY HOME DEPOT | CRESTLLOYD | Drywall | $10,164.52 |
| 03/30/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $13,717.30 |
| 03/30/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $27,935.00 |
| 03/30/2020 | TONY GENERATOR | CRESTLLOYD | Rentals | $4,994.80 |
| 03/30/2020 | CAP PREMIUM | CAP PREMIUM | Insurance | $52,617.94 |
| 04/01/2020 | HANKEY CAP | HANKEY CAP | Interest payment | $818,492.10 |
| 04/02/2020 | WEST ELEC | WEST ELEC | Electrical | $5,487.13 |
| 04/02/2020 | DAKOTA DRILL | DAKOTA | Foundation | $159,832.40 |
| 04/02/2020 | KN COAT | KN COAT | Waterproofing | $27,775.00 |
| 04/06/2020 | SCP POOL JABS FLEXI | JABS POOL | Swimming Pool | $13,450.00 |
| 04/06/2020 | SKYLINE | CRESTLLOYD | Permits and Fees | $1,507.28 |
| 04/06/2020 | QUINOX (PYRL TAX | QUINOX (PYRL TAX | Other-Labor | $33,418.38 |
| 04/06/2020 | JMS AIR | JMS AIR | HVAC | $45,000.00 |
| 04/06/2020 | POWERTEK | POWERTEK | Electrical | $75,000.00 |
| 04/07/2020 | PROP TAXES | PROP TAXES | Property Taxes | $545,759.14 |
| 04/08/2020 | DIAMOND | DIAMOND | Utilities | $3,995.35 |
| 04/10/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $16,252.15 |
| 04/10/2020 | WOOD OIL | WOOD OIL | Utilities | $14,287.39 |
| 04/10/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $27,996.97 |
| 04/21/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $9,058.95 |
| 04/21/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $14,932.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 04/21/2020 | PLUS DEV | PLUS DEV | Miscellaneous | $9,500.00 |
| 04/21/2020 | CAP PREMIUM | CAP PREMIUM | Insurance | $49,079.66 |
| 04/24/2020 | TOAL | TOAL | Soft Cost Contingency | $2,074.29 |
| 04/24/2020 | WEST ELEC | WEST ELEC | Other-Electrical | $2,491.13 |
| 04/27/2020 | WEST VALLEY GREEN | WEST VALLEY GREEN | Landscaping | $150,000.00 |
| 04/28/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $9,058.95 |
| 04/28/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $14,692.00 |
| 04/28/2020 | GIROUX | GIROUX | Doors and Windows | $11,505.30 |
| 04/29/2020 | SYNDER DIAMOND | CRESTLLOYD | Finish Plumbing | $81,314.88 |
| 05/01/2020 | HANKEY CAP | CRESTLLOYD | Interest payment | $809,716.55 |
| 05/05/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $9,058.95 |
| 05/05/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $16,373.00 |
| 05/11/2020 | METRO DISP | METRO DISP | Clean up | $1,280.15 |
| 05/11/2020 | REIMBUSE TONY PAINT | CRESTLLOYD | Exterior Painting | $1,382.58 |
| 05/11/2020 | CREST REAL ESTATE | CREST CUT CHECK | Permits and Fees | $6,464.26 |
| 05/11/2020 | ANAWALT | ANAWALT CUT CHECK | Finish Carpentry (Sub) | $2,767.11 |
| 05/11/2020 | KN COAT | KN COAT | Waterproofing | $30,875.00 |
| 05/11/2020 | CAD STONE | CAD STONE | Stone | $53,900.00 |
| 05/11/2020 | DAKOTA DRILL | DAKOTA DRILL | Foundation | $314,713.92 |
| 05/11/2020 | PRO PEST / SKYLINE | PROPEST | Landscaping | $5,108.78 |
| 05/11/2020 | TOAL | TOAL | Soils Report/Tests | $1,500.00 |
| 05/11/2020 | FISHER INSPECT | FISHER INSPECT CUT CHECK | Soils Report/Tests | $3,784.00 |
| 05/11/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $8,077.38 |
| 05/11/2020 | JMBM DEP ACCT | JMBM DEP ACCT | Legal Services | $1,750.00 |
| 05/11/2020 | HOME DEPOT DENNIS | CRESTLLOYD | Rentals | $4,925.00 |
| 05/11/2020 | PLUS | PLUS | Miscellaneous | $4,000.00 |
| 05/11/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $14,687.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 05/19/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $13,687.00 |
| 05/19/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $7,058.95 |
| 05/26/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $12,412.00 |
| 05/26/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $7,233.57 |
| 06/01/2020 | PUBLIC INSURANCE | PUBLIC INSURANCE | Insurance | $20,921.00 |
| 06/01/2020 | CAP PREMIUM | CAP PREMIUM | Insurance | $49,079.66 |
| 06/03/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $10,886.00 |
| 06/03/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $7,058.00 |
| 06/10/2020 | HANKEY CAP | HANKEY CAP | Interest payment | $362,012.29 |
| 06/10/2020 | FEFFER GEO | FEFFER GEO | Soils Report/Tests | $29,900.00 |
| 06/10/2020 | PLUS | PLUS | Land/Lot Purchase | $9,500.00 |
| 06/10/2020 | UNITED RENTAL TONY | CRESTLLOYD | Rentals | $4,775.80 |
| 06/10/2020 | ANAWALT / TONY | ANAWALT CHECK | Clean up | $3,326.75 |
| 06/10/2020 | SKYLINE | CRESTLLOYD | Project Mgmt Fees | $7,058.95 |
| 06/10/2020 | SKYLINE | CRESTLLOYD | Other-Labor | $10,512.00 |
| 06/10/2020 | PROPEST | PROPEST | Landscaping | $400.00 |
| 06/10/2020 | DAKOTA DRILL | DAKOTA DRILL | Foundation | $156,004.03 |
| 06/10/2020 | CAD STONE | CAD STONE | Stone | $34,235.72 |
| 06/10/2020 | KN COATING | KN COATING | Waterproofing | $29,775.00 |
| 06/10/2020 | AZ FIRE | AZ FIRE CUT CHECK | Fire Sprinklers | $1,300.00 |
| 06/10/2020 | ADVANCED CONCRETE CUTTING | ADVANCE CONCRETE | Swimming Pool | $6,470.00 |
| 06/10/2020 | POWERTEK | POWERTEK | Electrical | $50,000.00 |
| 06/10/2020 | HANKEY CAP | HANKEY CAP | EFI Loan Fee | $85,000.00 |
| 07/28/2020 | CAP PREMIUM | CRESTLLOYD | Insurance | $100,663.29 |
| 08/25/2020 | HANKEY CAP | CRESTLLOYD | INTERST MAY INT | $405,569.94 |
| 08/25/2020 | HANKEY CAP | CRESTLLOYD | INTEREST JUNE INT | $1,210,156.30 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 08/25/2020 | HANKEY CAP | CRESTLLOYD | INTEREST JULY INT | $1,253,956.73 |
| 08/25/2020 | HANKEY CAP | CRESTLLOYD | RENEWAL POINT | $1,000,000.00 |
| 08/27/2020 | HANKEY CAP | CRESTLLOYD | AUG INTEREST | $873,642.46 |
| 08/27/2020 | BEN REZNIK | BEN REZNIK | Legal Services | $7,979.40 |
| 08/27/2020 | CREST REAL ESTATE | CREST REAL ESTATE | Permits and Fees | $3,968.41 |
| 08/27/2020 | KENNCO | KENCO PLUMBING | Plumbing | $16,727.00 |
| 08/27/2020 | FISHER INSPECTIONS | FISHER INSPECTIONS | Soils Report/Tests | $4,904.00 |
| 08/27/2020 | POWERTEK | POWERTEK | Electrical | $50,000.00 |
| 08/27/2020 | WEST VALLEY GREEN | PROPEST | Landscaping | $1,200.00 |
| 08/27/2020 | TONY CREDIT CARD | UNITED AND DIAMOND | Rentals | $9,492.96 |
| 08/27/2020 | CAD STONE | CAD STONE | Stone | $44,495.00 |
| 08/27/2020 | VESTA | VESTA | Furniture | $317,000.00 |
| 08/27/2020 | PEP | PEP | Swimming Pool | $168,342.24 |
| 08/27/2020 | JABS POOLS | JABS POOLS | Swimming Pool | $37,550.00 |
| 08/27/2020 | KFR DESIGN | KFR DESIGN | Furniture | $30,000.00 |
| 08/27/2020 | METROPOLIS DISPOSAL | METROPOLIS DISPOSAL | House Cleaning | $3,216.60 |
| 08/27/2020 | CGS | CGS | Doors and Windows | $56,119.00 |
| 08/27/2020 | KN COATING | KN COATING | Waterproofing | $24,600.00 |
| 08/27/2020 | WEST VALLEY GREEN | WEST VALLEY GREEN | Landscaping | $107,425.00 |
| 08/27/2020 | CENTURION | CENTURION | A/V | $655,000.00 |
| 08/27/2020 | JASS DESIGN | JASS DESIGN | Exterior Painting | $20,000.00 |
| 08/27/2020 | EA GUZMAN | EA GUZMAN | Plaster, Stucco | $40,000.00 |
| 08/27/2020 | ADVANCED CONCRETE CUTTING | ADVANCED CONCRETE CUTTING | Foundation | $3,920.00 |
| 09/01/2020 | HANKEY CAP | HANKEY CAP | REMAINDER MAY INTE | $85,000.00 |
| 09/03/2020 | PLUS DEV | PLUS DEV | PLUS DEV (3 MONTHS) | $19,000.00 |
| 09/03/2020 | CRESTLLOYD | CRESTLLOYD | Other-Labor | $37,690.00 |
| 09/03/2020 | CRESTLLOYD | CRESTLLOYD | Project Mgmt Fees | $77,648.45 |
| 09/17/2020 | ILG | ILG | Furniture | $158,000.00 |
| 09/17/2020 | FEFFER GEO | FEFFER GEO | Soils Report/Tests | $38,190.00 |
| 09/17/2020 | TOP BUILD SUPPORT SERVICES | TRU TEAM | Waterproofing | $14,331.00 |
| 09/17/2020 | TECHNOGYM | TECHNOGYM | Gym | $64,824.10 |
| 09/17/2020 | ELEGANT POOL | ELEGANT POOL | Swimming Pool | $55,200.00 |
| 09/17/2020 | SCHMIDT METAL | SCHMIDT METAL | Gazebo | $19,800.00 |
| 09/17/2020 | BMC | BMC | Decks | $13,198.70 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 09/17/2020 | KR WELD | KR WELD | Stairs and Rails | $15,000.00 |
| 09/17/2020 | VESTA | VESTA | Furniture | $317,000.00 |
| 09/17/2020 | PARQUET BY DAN | PARQUEST BY DAN | Flooring | $12,583.00 |
| 09/17/2020 | MARCO BARRIENTOS | MARCO BARRIENTOS | Carpet | $9,306.00 |
| 09/17/2020 | WESTERN ELEC | WESTERN ELEC | Electrical | $7,101.04 |
| 09/17/2020 | AZ FIRE | AZ FIRE | Fire Sprinklers | $5,900.00 |
| 09/17/2020 | NOTARY | NOTARY | Miscellaneous | $535.00 |
| 09/17/2020 | BRADFORD SHEET | BRADFORD SHEET | Roofing | $2,800.00 |
| 09/17/2020 | YK CABINETS | YK CABINETS | Finish Carpentry (Sub) | $50,000.00 |
| 09/17/2020 | ANAWALT | ANAWALT | Finish Carpentry (Sub) | $4,046.13 |
| 09/17/2020 | WEST COAST GATE | WEST COAST GATE | Ornamental Iron | $43,750.00 |
| 09/17/2020 | GYPSY PALACE | GYPSY PALACE | Decorator Walls | $42,581.50 |
| 09/17/2020 | MUSE | MUSE | Decorator Walls | $10,292.00 |
| 09/17/2020 | STONE CARE PRO | STONE CARE PRO | Foundation | $17,430.00 |
| 09/17/2020 | DAKOTA DRILL | DAKOTA DRILL | Foundation | $40,975.00 |
| 09/17/2020 | SKYLINE | SKYLINE | Other-Labor | $14,177.65 |
| 09/17/2020 | SKYLINE | SKYLINE | Project Mgmt Fees | $21,184.22 |
| 09/17/2020 | WOOD OIL | WOOD OIL | Clean up | $10,666.16 |
| 09/17/2020 | HERNANDEZ CARPET | HERNANDEZ CARPET | Carpet | $5,578.35 |
| 09/21/2020 | ILG | ILG | Furniture | $57,000.00 |
| 09/30/2020 | PUBLIC INSURANCE | PUBLIC INSURANCE | Insurance | $165,545.57 |
| 10/01/2020 | HANKEY CAP | HANKEY CAP | Interest payment | $899,661.63 |
| 10/01/2020 | TITLE FEE | HANKEY CAP | MOD FEE | $690.00 |
| 10/02/2020 | KFR DESIGN | KFR DESIGN | Furniture | $61,250.00 |
| 10/02/2020 | ADVANCED CONCRETE CUTTING | ADVANCED CONCRETE CUTTING | Foundation | $7,000.00 |
| 10/02/2020 | CAD STONE | CAD STONE | Stone | $12,458.50 |
| 10/02/2020 | CGS | CGS | Doors and Windows | $29,858.80 |
| 10/02/2020 | GENERAL PLATING | GENERAL PLATING | Finish Plumbing | $1,800.00 |
| 10/02/2020 | TARGET | CRESTLLOYD | Carpet | $65.69 |
| 10/02/2020 | MARCO BARRIENTOS | MARCO BARRIENTOS | Carpet | $3,200.00 |
| 10/02/2020 | JASS DESIGN | JASS DESIGN | Exterior Painting | $45,000.00 |
| 10/02/2020 | EA GUZMAN | EA GUZMAN | Plaster, Stucco | $46,280.00 |
| 10/02/2020 | LIGHTING | CRESTLLOYD | Landscaping | $6,772.84 |
| 10/02/2020 | JABS POOLS | JABS POOLS | Sauna, Hot Tub | $20,000.00 |
| 10/02/2020 | HOME DEPOT | CRESTLLOYD | Swimming Pool | $657.62 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 10/02/2020 | PARQUEST BY DAN | PARQUEST BY DAN | Flooring | $15,474.00 |
| 10/02/2020 | CRESTLLOYD | CRESTLLOYD | Other-Labor | $12,645.00 |
| 10/02/2020 | CRESTLLOYD | CRESTLLOYD | Project Mgmt Fees | $14,132.63 |
| 10/02/2020 | NOTARY | CRESTLLOYD | Overhead/Payroll | $535.00 |
| 10/02/2020 | MISC | CRESTLLOYD | Utilities | $913.71 |
| 10/02/2020 | FEFFER GEO | FEFFER GEO | Soils Report/Tests | $4,149.17 |
| 10/02/2020 | COAST FIREPLACE | COAST FIREPLACE | Fireplaces/Chimneys | $14,725.00 |
| 10/06/2020 | PLUS DEV | PLUS DEV | Project Mgmt Fees | $9,500.00 |
| 10/19/2020 | KN COATING | KN COATING | Waterproofing | $19,750.00 |
| 10/19/2020 | CRESTLLOYD | SYNDER DIAMOND | Finish Plumbing | $7,522.46 |
| 10/19/2020 | PARQUEST BY DAN | PARQUEST BY DAN | Flooring | $3,606.00 |
| 10/19/2020 | EA GUZMAN | EA GUZMAN | Plaster, Stucco | $31,280.00 |
| 10/19/2020 | CARAVAN RUGS | CARAVAN RUGS | Furniture | $36,610.00 |
| 10/19/2020 | SCHMIDT METAL | SCHMIDT METAL | Gazebo | $24,250.00 |
| 10/19/2020 | TONY AMEX | TONY AMEX | Swimming Pool | $946.76 |
| 10/19/2020 | CREST REAL ESTATE | CREST REAL ESTATE | Permits and Fees | $2,542.95 |
| 10/19/2020 | METROPOLIS DISPOSAL | METROPOLIS DISPOSAL | House Cleaning | $4,318.30 |
| 10/19/2020 | CRESTLLOYD | CRESTLLOYD | Project Mgmt Fees | $14,810.20 |
| 10/19/2020 | CRESTLLOYD | CRESTLLOYD | Other-Labor | $17,855.00 |
| 10/19/2020 | DIRECT TO VENDOR | ADVANCED CONCRETE CUTTING | Foundation | $39,850.77 |
| 10/19/2020 | CRESTLLOYD | SALON DESIGNERS | Sauna, Hot Tub | $6,482.77 |
| 10/23/2020 | CAP PREMUM | CAP PREMUM | Insurance | $54,391.65 |
| 10/23/2020 | JABS | JABS | Swimming Pool | $19,475.00 |
| 10/29/2020 | ILG | ILG | Furniture | $75,000.00 |
| 11/01/2020 | HANKEY CAPITAL | HANKEY CAP | Interest payment | $949,015.81 |
| 11/05/2020 | Barazani Outdoors Inc. | CHECK TO BARAZANI | Foundation | $33,825.00 |
| 11/05/2020 | LA DWP | CHECK TO DWP | Utilities | $42,104.37 |
| 11/05/2020 | TECHNO GYM | CRESTLLOYD | Gym | $6,157.06 |
| 11/05/2020 | JABS POOL | JABS POOL | Swimming Pool | $30,000.00 |
| 11/05/2020 | WHOLESALE POOL MART | CRESTLLOYD | Swimming Pool | $582.63 |
| 11/05/2020 | HABITAT HORTICULTURE | CHECK TO HABITAT | Sauna, Hot Tub | $28,010.10 |
| 11/05/2020 | MAILBOX DOC | CRESTLLOYD | Furniture | $566.45 |
| 11/05/2020 | MARCO BARRIENTOS | MARCO BARRIENTOS | Carpet | $500.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 11/05/2020 | DRAKEN SECURITY | DRAKEN SECURITY | Security System | $6,160.00 |
| 11/05/2020 | JMS | JMS | HVAC | $20,000.00 |
| 11/05/2020 | PARKER RESNIK | CHECK TO PARKER RESNIK | Structural | $1,350.00 |
| 11/05/2020 | GYPSY PALACE | GYPSY PALACE | Decorator Walls | $43,350.40 |
| 11/05/2020 | ROLLS SCAFFOLD | ROLLS SCAFFOLD | Rentals | $14,000.00 |
| 11/05/2020 | BOOTH GRADING | BOOTH GRADING | Foundation | $34,214.94 |
| 11/05/2020 | ADVANCE CONCRETE CUTTING | ADVANCE CONCRETE CUTTING | Foundation | $17,700.00 |
| 11/05/2020 | PROPEST | PROPEST | Landscaping | $1,200.00 |
| 11/05/2020 | KENNCO | KENNCO | Plumbing | $48,404.75 |
| 11/05/2020 | LABOR | CRESTLLOYD | Other-Labor | $18,630.00 |
| 11/05/2020 | POWERTEK | POWERTEK | Electrical | $50,000.00 |
| 11/05/2020 | PROJECT MANAGEMENT | CRESTLLOYD | Project Mgmt Fees | $14,810.20 |
| 11/05/2020 | PLUS | PLUS | Project Mgmt Fees | $9,500.00 |
| 11/05/2020 | PUBLIC INSURANC | PUBLIC INSURANCE | Insurance | $1,263.00 |
| 11/05/2020 | METROPOLIS DISP | METROPOLIS DISP | House Cleaning | $689.70 |
| 11/05/2020 | DIAMOND | CRESTLLOYD | Rentals | $1,061.94 |
| 11/05/2020 | CAD STONE | CAD STONE | Stone | $33,470.00 |
| 11/05/2020 | ADJ HH | HANKEY CAP | Sauna, Hot Tub | $0.42 |
| | | | | |
| 11/19/2020 | CGS | CGS | Doors and Windows | $49,985.00 |
| 11/19/2020 | CRESTLLOYD | CRESTLLOYD | Swimming Pool | $2,369.67 |
| 11/19/2020 | SALON DESIGN | CRESTLLOYD | Sauna, Hot Tub | $6,482.77 |
| 11/19/2020 | SCHMIDT | SCHMIDT | Gazebo | $34,875.00 |
| 11/19/2020 | VESTA | VESTA | Furniture | $316,000.00 |
| 11/19/2020 | VESTA | VESTA | Furniture | $25,000.00 |
| 11/19/2020 | CRESTLLOYD | CRESTLLOYD | Other-Labor | $18,199.00 |
| 11/19/2020 | APROPOS FLORA | APROPOS FLORA | Furniture | $25,000.00 |
| 11/19/2020 | DRAKEN | DRAKEN | Security System | $3,520.00 |
| 11/19/2020 | RICHEE LUMENS WESTERN ELEC | RICHEE LUMENS WESTERN ELEC | Lighting Fixtures | $14,007.68 |
| 11/19/2020 | SYNDER | CRESTLLOYD | Finish Plumbing | $2,995.11 |
| 11/19/2020 | HOME DEPOT VIA TONY | CRESTLLOYD | Swimming Pool | $2,311.24 |
| 11/19/2020 | YK CABINENTS | CHECK TO YK | Finish Carpentry (Sub) | $19,500.00 |
| 11/19/2020 | BRADFORD SHEET | BRADFORD SHEET | Structural | $2,800.00 |
| 11/19/2020 | CAD STONE | CAD STONE | Stone | $22,907.73 |
| 11/19/2020 | ANAWALT VIA TONY | CRESTLLOYD | Foundation | $234.53 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 11/19/2020 | ANAWALT | CHECK TO ANAWALT | Foundation | $8,168.34 |
| 11/19/2020 | STONE CARE PLUS | STONE CARE PLUS | Foundation | $4,680.00 |
| 11/19/2020 | FEFFER GEO | FEFFER GEO | Soils Report/Tests | $2,255.45 |
| 11/19/2020 | CRESTLLOYD | CRESTLLOYD | Sales Office/Supplies/Furnishing | $59.82 |
| 11/19/2020 | CRESTLLOYD | CRESTLLOYD | Project Mgmt Fees THRU 11/23 WEEK | $14,810.20 |
| 11/19/2020 | CAPITAL PRMEM | CAPITAL PREMIUM | Insurance | $54,391.65 |
| 11/19/2020 | CAL GROVE AND METRO | CAL GROVE AND METRO | House Cleaning | $9,476.65 |
| 11/19/2020 | CRESTLLOYD | CRESTLLOYD | Utilities | $69.99 |
| 11/19/2020 | WEST VALLEY GREEN | WEST VALLEY GREEN | Landscaping | $50,000.00 |
| | | | | |
| 12/7/2020 | MUSE WALLCOVERING | MUSE WALLCOVERING | Decorator Walls | $11,866.00 |
| 12/7/2020 | CREST | CREST | Permits and Fees | $215.00 |
| 12/7/2020 | FRONTIER VIA CRESTLLOYD | CRESTLLOYD | Utilities | $832.36 |
| 12/7/2020 | CAL GROVE RENTAL | CAL GROVE RENTAL | Rentals | $5,434.05 |
| 12/7/2020 | METROPOLIS | METROPOLIS | House Cleaning | $913.40 |
| 12/7/2020 | PLUS DEV | PLUS DEV | Project Mgmt Fees | $9,500.00 |
| 12/7/2020 | PM VIA CRESTLLOYD | CRESTLLOYD | Project Mgmt Fees | $22,215.30 |
| 12/7/2020 | LABOR VIA CRESTLLOYD | CRESTLLOYD | Other-Labor | $21,080.00 |
| 12/7/2020 | Rene Vizcaino (plumber) | CRESTLLOYD | Plumbing | $800.00 |
| 12/7/2020 | Advance Concrete Cutting | Advance Concrete Cutting | Foundation | $4,200.00 |
| 12/7/2020 | Midland Contractors | Midland Contractors | Foundation | $15,000.00 |
| 12/7/2020 | CAD STONE | CAD STONE | Stone | $26,260.00 |
| 12/7/2020 | Joe Greco Cabinets | Joe Greco Cabinets | Finish Carpentry (Sub) | $16,850.00 |
| 12/7/2020 | KN COATING | KN COATING | Waterproofing | $23,600.00 |
| 12/7/2020 | DRAKEN | DRAKEN | Security System | $2,800.00 |
| 12/7/2020 | JASS STUDIO | JASS STUDIO | Exterior Painting | $40,000.00 |
| 12/7/2020 | Parquet by Dian | Parquet by Dian | Flooring | $5,600.00 |
| 12/7/2020 | KFR DESIGN | KFR DESIGN | Furniture | $42,104.28 |
| 12/7/2020 | JABS POOL | JABS POOL | Swimming Pool | $20,000.00 |
| 12/7/2020 | CARTURNER | CARTURNER | Car Turntables | $26,109.75 |
| 12/7/2020 | STONE CARE PROS | STONE CARE PROS | Foundation | $16,226.27 |
| | | | | |
| 12/23/2020 | CENTURION | CENTURION | A/V | $480,500.00 |
| | | | | |
| 12/24/2020 | NEWMARK AMEX | CRESTLLOYD | Finish Grading | $3,591.95 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|---|---|---|---|---|
| 12/24/2020 | SCP AMEX | CRESTLLOYD | Swimming Pool | $1,844.10 |
| 12/24/2020 | WHOLESALE POOL AMEX | CRESTLLOYD | Swimming Pool | $163.92 |
| 12/24/2020 | WHOLESALE POOL AMEX | CRESTLLOYD | Swimming Pool | $1,905.30 |
| 12/24/2020 | FENCE FACTORY | CHECK TO FENCE FACTORY | Swimming Pool | $26,380.00 |
| 12/24/2020 | KR WELDING | CHECK TO KR WELDING | Furniture | $10,000.00 |
| 12/24/2020 | EA GUZMAN | EA GUZMAN | Plaster, Stucco | $15,000.00 |
| 12/24/2020 | ANAWALT AMEX | CRESTLLOYD | Flooring | $310.16 |
| 12/24/2020 | DRAKEN | DRAKEN | Security System | $2,900.00 |
| 12/24/2020 | CGS | CGS | Doors and Windows | $12,612.00 |
| 12/24/2020 | KN COATING | KN COATING | Waterproofing | $26,875.00 |
| 12/24/2020 | CAD STONE | CAD STONE | Stone | $18,200.00 |
| 12/24/2020 | Advanced Concrete Cutting | Advanced Concrete Cutting | Foundation | $1,000.00 |
| 12/24/2020 | Crest Real Estate | Crest Real Estate | Permits and Fees | $1,072.00 |
| 12/24/2020 | DIETZ AMEX | CRESTLLOYD | Landscaping | $6,518.00 |
| 12/24/2020 | LABOR | CRESTLLOYD | Other-Labor | $22,785.00 |
| 12/24/2020 | PM | CRESTLLOYD | Project Mgmt Fees | $22,215.30 |
| 12/24/2020 | SPECTRUM AMEX | CRESTLLOYD | Utilities | $74.99 |
| 12/24/2020 | FRONTIER AMEX | CRESTLLOYD | Utilities | $419.51 |
| 12/24/2020 | AMEX CREDIT ANAWALT | CRESTLLOYD | Landscaping | -$2,311.24 |
| | | | | |
| 12/31/2020 | Biabani & Associates | Biabani & Associates | Hard Cost Contingency | $5,920.00 |
| 12/31/2020 | Draken Security | Draken Security | Security System | $1,400.00 |
| 12/31/2020 | Labor | CRESTLLOYD | Other-Labor | $11,200.00 |
| 12/31/2020 | Powertek | Powertek | Electrical | $30,000.00 |
| 12/31/2020 | Diamond | Diamond | Temporary Building | $315.94 |
| 12/31/2020 | Project Mgmt | CRESTLLOYD | Project Mgmt Fees | $14,810.20 |
| 12/31/2020 | Metropolis | Metropolis | House Cleaning | $1,693.25 |
| | | | | |
| 01/04/2021 | PLUS DEV | PLUS DEV | EFI Loan Fee | $15,500.00 |
| 01/05/2021 | DEC AND JAN INSURANCE | CAPITAL PREMIUM | Insurance | $108,783.30 |
| 01/06/2021 | CITY OF LADBS | LADBS | Permits and Fees | $635.86 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Other-Labor | $12,470.00 |
| 01/22/2021 | DRAKEN | DRAKEN | Security System | $7,200.00 |
| 01/22/2021 | KN COATING | KN COATING | Waterproofing | $33,775.00 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Swimming Pool | $580.24 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Foundation | $8,081.37 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Swimming Pool | $6,192.89 |
| 01/22/2021 | KENNCO | KENNCO | Plumbing | $25,115.25 |
| 01/22/2021 | CAD STONE | CAD STONE | Stone | $17,550.00 |
| 01/22/2021 | ALLSTATE LANDSCAPE | ALLSTATE LANDSCAPE | Landscaping | $16,215.00 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Project Mgmt Fees | $15,984.60 |
| 01/22/2021 | METROPOLIS DISP | METROPOLIS DISP | House Cleaning | $857.85 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Temporary Building | $617.86 |
| 01/22/2021 | CUT CHECK DRS ENGINEER | CUT CHECK DRS ENGINEER | Structural | $3,725.00 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Exterior Painting | $223.78 |
| 01/22/2021 | VESTA | VESTA | Furniture | $14,100.88 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Fire Sprinklers | $1,510.73 |
| 01/22/2021 | GEOBRUGG | GEOBRUGG | Structural | $22,628.69 |
| 01/22/2021 | CRESTLLOYD | CRESTLLOYD | Foundation | $800.00 |
| 01/22/2021 | RICHEE AND CRESTLLOYD | RICHEE & CRESTLLOYD | Lighting Fixtures | $4,335.24 |
| 01/22/2021 | CUT CHECK ANAWALT | CHECK ANAWALT | Drywall | $2,048.35 |
| 01/22/2021 | CAL GROVE | CAL GROVE | Rentals | $4,164.46 |
| 01/22/2021 | CUT CHECK LADWP | CHECK DWP | Sewer and Storm Drains | $17,807.83 |
| 02/02/2021 | PLUS DEV | PLUS | EFI Loan Fee | $15,500.00 |
| 02/12/2021 | SPECTRUM | CRESTLLOYD | Miscellaneous | $74.99 |
| 02/12/2021 | PM | CRESTLLOYD | Project Mgmt Fees | $24,043.32 |
| 02/12/2021 | DIAMOND | CRESTLLOYD | Temporary Building | $308.93 |
| 02/12/2021 | BAUCO FERG AND FRS | CRESTLLOYD | Fire Sprinklers | $3,233.27 |
| 02/12/2021 | SNYDER DIAMOND | CRESTLLOYD | Finish Plumbing | $1,965.40 |
| 02/12/2021 | ARC | CRESTLLOYD | Permits and Fees | $102.00 |
| 02/12/2021 | CENTURION | CENTURION | A/V | $7,406.88 |
| 02/12/2021 | WAYFAIR | CRESTLLOYD | Plumbing | $1,292.08 |
| 02/12/2021 | KITCHEN POP UP | CRESTLLOYD | Furniture | $783.15 |
| 02/12/2021 | LABOR | CRESTLLOYD | Other-Labor | $22,125.00 |
| 02/12/2021 | DUNN EDWARDS | CRESTLLOYD | Exterior Painting | $566.45 |
| 02/12/2021 | WEST VALLEY | CRESTLLOYD | Landscaping | $44,600.00 |
| 02/12/2021 | MIDLAND | MIDLAND | Foundation | $3,200.00 |
| 02/16/2021 | MARCO BARRIENTOS | MARCO BARRIENTOS | Carpet | $8,275.00 |
| 02/16/2021 | VESTA | VESTA | Furniture | $13,500.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 02/16/2021 | KN COATING | KN COATING | Waterproofing | $23,950.00 |
| 02/16/2021 | JASS | JASS | Exterior Painting | $7,500.00 |
| 02/16/2021 | CHECK ANAWALT AND BMC | CHECK ANAWALT AND BMC | Finish Plumbing | $6,500.43 |
| 02/16/2021 | CREST | CREST | Permits and Fees | $1,956.50 |
| 02/16/2021 | PROPEST | PROPEST | Temporary Building | $7,450.00 |
| 02/16/2021 | CAL GROVE | CAL GROVE | Rentals | $3,059.55 |
| 02/16/2021 | FIBERGLASS ENG | HANKEY CAPITAL | Landscaping | $10,000.00 |
| 02/16/2021 | ILG | ILG | Furniture | $50,000.00 |
| 02/16/2021 | PUBLIC | PUBLIC | Insurance | $2,600.00 |
| 02/16/2021 | FENCE FACTORY CHECK | FENCE FACTORY CHECK | Foundation | $18,810.00 |
| 02/16/2021 | CAD STONE | CAD STONE | Stone | $14,550.00 |
| 02/16/2021 | METROPOLIS DISP | METROPOLIS DISP | House Cleaning | $2,413.00 |
| 02/26/2021 | CENTURION | CENTURION | A/V | $131,000.00 |
| 03/02/2021 | CAPITAL PREMIUM | CAPITAL PREMIUM | Insurance | $54,391.65 |
| 03/03/2021 | CENTURION | CENTURION | A/V | $118,500.00 |
| 03/03/2021 | PLUS DEV | PLUS | EFI Loan Fee | $15,500.00 |
| 03/04/2021 | HANKEY CAPITAL | LEGAL COST DIRECT TO TITLE | FORECLOSURE FEE | $73,301.00 |
| 5/21/2021 | ADVANCE TO YVONNE NIAMI | HOLDING COMPANY BEV HILLS | LEGAL AND TRUST | $500,000.00 |
| 6/3/2021 | CREST | CREST | Permits and Fees | $13,794.57 |
| 6/3/2021 | LABOR JESUS (SECURITY LIVE IN MAINTE | CRESTLLOYD | Other-Labor | $19,940.00 |
| 6/3/2021 | MIDLAND | MIDLAND | Foundation | $60,000.00 |
| 6/3/2021 | VESTA | VESTA | Furniture | $27,000.00 |
| 6/3/2021 | BIABANI | BIABANI | Electrical | $8,800.00 |
| 6/3/2021 | CHRISTOPER | CHRISTOPER TOERRY | Project Mgmt Fees | $20,192.25 |
| 6/3/2021 | WEST VALLEY GREEN | WEST VALLEY GREEN | Landscaping | $20,000.00 |
| 6/4/2021 | HANKEY CAP | LEGAL COST DIRECT TO TITLE | FORECLOSURE FEE | $155.00 |
| 6/14/2021 | HANKEY CAP | LEGAL COST DIRECT TO TITLE | FORECLOSURE FEE | $15,646.00 |
| 6/17/2021 | CENTURION | CENTURION | A/V | $150,000.00 |
| 6/17/2021 | CHRISTOPER | CHRISTOPER TOERRY | Project Mgmt Fees | $2,692.30 |
| 6/17/2021 | LABOR CHECKS | MELCHOR, JESUS, YALY, LUIS | POOL, CLEANING, SECURITY | $4,280.00 |
| 07/06/2021 | PLUS | PLUS | EFI Loan Fee | $21,000.00 |

| Date | VENDOR | From Whom Received / Paid | Memo | Payment |
|------|--------|---------------------------|------|---------|
| 07/06/2021 | DRAKEN | DRAKEN INC $10K RETAINER | Security System | $24,867.51 |
| 8/2/2021 | BUCHALTER | BUCHALTER | Legal July 2021 | $112,797.50 |
| 9/9/2021 | BUCHALTER | BUCHALTER | Legal Aug 2021 | $87,800.44 |
| | | | **TOTAL** | **$105,691,720.39** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is Suite 2500, 601 South Figueroa Street, Los Angeles, California 90017-5704.

A true and correct copy of the foregoing document entitled (*specify*): COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS. LLC FOR DECLARATORY RELIEF, EQUITABLE SUBORDINATION, AN ACCOUNTING, AND DISALLOWANCE OF CLAIMS will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below.

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 10, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David B Golubchik
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034

Counsel for Crestlloyd, LLC
T: 310 229 1234 / F: 310 229 1244
E: dbg@lnbyg.com

Howard Steinberg
Greenberg Traurig LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121

Counsel for Hankey Capital, LLC
T: 310 586 7702 / F: 310 586 0227
E: steinbergh@gtlaw.com

Ryan Coy
BG Law LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

Counsel for Hilldun Corp.
T: 517 376 0350
E: rcoy@bg.law

Kyra E Andrassy
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626

Counsel for Inferno Investment, Inc.
T: 714 445 1000 / F: 714 445 1002
E: kandrassy@swelawfirm.com

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

U.S. Trustee
T: 213 894 6811
E: ustpregion16.la.ecf@usdoj.gov

**Courtesy NEFs:**

Todd M Arnold
Jonathan Gottlieb
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034

T: 310-229-1234
E: tma/jdg@lnbyg.com

Thomas M Geher
Jeffer Mangels Butler & Mitchell, LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

T: 310-203-8080
E: tmg@jmbm.com

**2.  SERVED BY UNITED STATES MAIL:** On (*date*) August 10, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| Martin D Singer | Counsel for Inferno Investment, Inc. |
| Lavely & Singer PC | T: 310 556 3501 / F: 310 556 3615 |
| 2049 Century Park East Ste 2400 | E: n/a |
| Los Angeles, CA 90067-2906 | |

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 10, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than the next business day after the document is filed.

| | |
|---|---|
| Honorable Deborah J. Saltzman | ☒ No judge's copy of any document is required unless a |
| U.S. Bankruptcy Court, Central District of California | copy is requested by chambers. If chambers calls to |
| Edward R. Roybal Federal Building and Courthouse | request a judge's copy, it must be provided by means |
| 255 East Temple Street, Suite 1634 / Courtroom 1639 | such that it is received in chambers within two business |
| Los Angeles, CA 90012 | days (for example, by messenger or overnight mail). |
| | ☐ By Next Business Day [Trkg#_____] |
| | ☐ By Facsimile to _____ |
| | ☐ Proposed Order via Lodged Order Upload |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| August 10, 2022 | Frederick Kalve | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      2                          **F 9013-3.1.PROOF.SERVICE**