1  Howard J. Steinberg (SBN 89291)
   Eric V. Rowen (SBN 106234)
2  Matthew R. Gershman (SBN 253031)
   GREENBERG TRAURIG, LLP
3  1840 Century Park East, Suite 1900
   Los Angeles, California 90067-2121
4  Telephone: 310.586.7700/Facsimile: 310.586.7800

5  Thomas M. Geher (SBN 130588)
   JEFFER MANGELS BUTLER & MITCHELL LLP
6  1900 Avenue of the Stars, 7th Floor
   Los Angeles, California 90067
7  Telephone: 310-203-8080/Facsimile: 310-203-0567

8  Attorneys for Defendant Hankey Capital, LLC

9

10              **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

12

13  In re                              CASE NO. 2:21-bk-18205-DS

14  CRESTLLOYD, LLC,                   Chapter 11

15          Debtor.                    Adv. No. 2:22-ap-01125-DS

16  INFERNO INVESTMENT, INC., a Quebec  **CROSS-DEFENDANT HANKEY CAPITAL,**
    corporation,,                       **LLC'S REPLY IN SUPPORT OF MOTION**
17                                      **TO DISMISS FIRST AMENDED**
            Plaintiff,                  **COUNTERCLAIM AND CROSSCLAIM OF**
18                                      **YOGI SECURITIES HOLDINGS, LLC**
    v.
19                                      DATE:     December 15, 2022
    CRESTLLOYD, LLC, a California limited  TIME:   11:30 a.m.
20  liability company; HANKEY CAPITAL, LLC,  DEPT:  1639
    a California limited liability company; YOGI  JUDGE:  Deborah J. Saltzman
21  SECURITIES HOLDINGS, LLC, a Nevada
    limited liability company; and HILLDUN  Action Filed:  June 9, 2022
22  CORPORATION, a New York corporation,,

23          Defendants.

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.    THE CLAIMS AGAINST HANKEY FAIL TO STATE A CLAIM FOR RELIEF ................... 3

    A.    The Third Claim for Relief for Subordination of Hankey's Lien Fails to State a
        Claim for Relief ........................................................................................... 3

    B.    The Fourth Claim for Relief for Equitable Subordination Fails to State a Claim for
        Relief ........................................................................................................ 10

    C.    The Fifth Claim for Relief for Subordination Fails to State a Claim for Relief .............. 12

    D.    The Sixth Claim for Relief for Equitable Subordination Fails to State a Claim for
        Relief ........................................................................................................ 12

    E.    The Seventh Claim for Relief for an Accounting Fails to State a Claim for Relief ........ 13

    F.    The Eighth Claim for Relief for Subordination Fails to State a Claim for Relief .......... 13

    G.    The Ninth Claim for Relief for Equitable Subordination Fails to State a Claim for
        Relief ........................................................................................................ 15

    H.    The Tenth Claim for Relief for Subordination Fails to State a Claim for Relief ............ 15

    I.    The Eleventh Claim for Relief for Equitable Subordination Fails to State a Claim
        for Relief ................................................................................................... 16

    J.    The Twelfth Claim for Relief For Disallowance of Alleged Secured Claim Fails to
        State a Claim for Relief ................................................................................. 17

    K.    The Thirteenth Claim for Relief for Recharacterization Fails to State a Claim for
        Relief ........................................................................................................ 18

III.    CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
　556 U.S. 662 (2009).................................................................................6, 9, 14

*Benjamin v. Diamond (In re Mobil Steel Co.),*
　563 F.2d 692 (5th Cir. 1977) ...................................................................10, 11

*Bostian v. Shapiro (In re Kansas City Journal-Post Co.),*
　144 F.2d 791 (8th Cir. 1944) ..........................................................................10

*Boyette v. Algonquin Gas Transmission Co.,*
　952 F. Supp. 2d 192 (S.D.N.Y. 1997)..............................................................14

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
　824 F.3d 1156 (9th Cir. 2016) .........................................................................16

*CMR Mortg. Fund, LLC v. Canpartners Realty Holding Co. IV LLC (In re CMR Mortg. Fund, LLC),*
　416 B.R. 720 (Bankr. N.D. Cal. 2009) ............................................................11

*Enea v. Mercedes Benz USA, LLC,*
　No. 18-cv-02792-HSG, 2019 WL 402315 (C.D. Cal. Jan. 31, 2019)...................6

*In re GOCO Realty Fund I,*
　151 B.R. 241 (Bankr. N.D. Cal. 1993) ............................................................17

*In re Granite Partners, L.P.,*
　210 B.R. 508 (Bankr. S.D.N.Y. 1997)..............................................................11

*Griffin v. Green Tree Servicing, LLC,*
　166 F. Supp. 3d 1030 (C.D. Cal. 2015) ......................................................13, 18

*Grossi v. Bosco Credit, LLC,*
　No. 16-3100 MEJ, 2017 WL 3453347 (N.D. Cal. Aug. 10, 2017).....................16

*Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.),*
　471 F.3d 977 (9th Cir. 2006) ...........................................................................11

*Lapachet v. Cal. Forensic Med. Grp., Inc.,*
　313 F. Supp. 3d 1183 (E.D. Cal. 2018)..............................................................6

*Malibu Behavioral Health Servs. v. Magellan Healthcare, Inc.,*
　No. 2:20-cv-01731-ODW (PBCx), 2020 WL 7646974 (C.D. Cal. Dec. 23, 2020).......................4, 13

*Maryland National Bank v. Vessel Madam Chapel,*
　46 F.3d 895 (9th Cir. 1995) .............................................................................12

*In re Millette,*
　186 B.R. 638 (5th Cir. 1999) ...........................................................................17

*Pepper v. Litton,*
　308 U.S. 295 (1935)........................................................................................10

*Prudence Realization Corp. v. Geist,*
216 U.S. 89 (1942) ................................................................................................10

*Resolution Trust Corp. v. BVS Dev., Inc.,*
42 F.3d 1206 (9th Cir. 1994) ................................................................................14

*Schneider v. Cal. Dept. of Corr,*
151 F.3d 1194 (9th Cir. 1998) ..............................................................................14

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ................................................................................14

*St. Joseph's Found. v. Bashas' Inc. (In re Bashas' Inc.),*
468 B.R. 381 (D. Ariz. 2012) ..................................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...........................................................13, 18

*U.S. v. Noland,*
517 U.S. 535 (1996) ..............................................................................................11

*Wilkerson v. Mobile Oil Corp.,*
941 F. Supp. 614 (E.D. Tex. 1996) ........................................................................14

**State Cases**

*612 S. LLC v. Laconic Ltd. P'ship,*
184 Cal. App. 4th 1270 (2010) .............................................................................17

*Am. Med. Int'l, Inc. v. Feller,*
59 Cal. App. 3d 1008 (1976) ................................................................................17

*Atkinson v. Foote,*
44 Cal. App. 149 (1919) ..........................................................................................8

*Bank of N.Y. Mellon v. Citibank, N.A.,*
8 Cal. App. 5th 935 (2017) ......................................................................................5

*Connor v. Great Western Sav. & Loan Ass'n.,*
69 Cal. 2d 850 (1968) ...........................................................................................15

*Esparaza v. Sand & Sea, Inc.,*
2 Cal. App. 5th 781 (2016) ......................................................................................6

*Friery v. Sutter Buttes Sav. Bank,*
61 Cal. App. 4th 869 (1998) ..............................................................................6, 7

*Gluskin v. Atl. Sav. & Loan Ass'n,*
32 Cal. App. 3d 307 (1973) ...............................................................................5, 7

*Kendall-Jackson Winery, Ltd. v. Superior Court,*
76 Cal. App. 4th 970 (1999) ...................................................................................9

*Lawrence v. Oakes,*
117 Cal. App. 32 (1931) ..........................................................................................4

*Lennar Northeast Partners v. Buice*,
   49 Cal. App. 4th 1576 (1999) ..........................................................................5, 7, 8

*MDFC Loan Corp. v. Greenbrier Plaza Partners*,
   21 Cal. App. 4th 1045 (1994) ..................................................................................17

*Middlebrook-Anderson Co. v. Southwest Sav. & Loan Ass'n*,
   18 Cal. App. 3d 1023 (1971) ...........................................................................5, 6, 7

*Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Ass'n.*,
   184 Cal. App. 3d 817 (1986) ..................................................................................17

*Savings & Loan Soc. v. Burnett*,
   106 Cal. 514 (1895) ..................................................................................................8

*Tapia v. Demartini*,
   77 Cal. 383 (1888) ....................................................................................................8

**State Statutes**

Cal. Code Civ. P. § 19.................................................................................................17

Cal. Code Civ. P. § 580b...............................................................................................7

Cal. Code Civ. P. § 2838(b).........................................................................................17

CROSS-DEFENDANT HANKEY CAPITAL, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED
COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS, LLC

I. **INTRODUCTION**

In the Opposition of Counter/Crossclaimant Yogi Securities Holdings, LLC to Motion of Cross-Defendant Hankey Capital, LLC to Dismiss the First Amended Counterclaim and Crossclaim of Yogi Securities Holdings, LLC, Doc. No. 113 ("Opposition"), Yogi Securities Holdings, LLC ("Yogi") attempts to overcome its pleading deficiencies by repeatedly citing to "facts" which are not alleged in the First Amended Counterclaim and Crossclaim ("Crossclaim"); misstating what is alleged in the Crossclaim; ignoring the provisions in the underlying loan agreements that the debtor, Crestlloyd, LLC ("Crestlloyd" or "Debtor") entered into with Hankey Capital LLC ("Hankey") and Yogi; relying on conclusory statements that are not supported by facts; and misstating the law.[1] For instance:

- Yogi contends that its decision to record its deed of trust after Hankey recorded a deed of trust to secure an $82.5 million loan (the "Hankey Deed of Trust") was "in accordance with an agreement by Crestlloyd with Yogi and by Crestlloyd with Hankey." (Opposition 2.) Yogi cites to ¶ 94 of the Crossclaim but nowhere in that paragraph or anywhere else in the Crossclaim are there allegations setting forth such agreements.

- While acknowledging that it only alleged in ¶ 95 of the Crossclaim that Hankey would control disbursements to pay for construction improvements (without setting forth any facts explaining what that even means), Yogi proceeds to rely on conclusory statements throughout the Opposition that Hankey was in "complete control" of the process. (Opposition 2 ["complete control"]; p. 5 ["comprehensive control"]; p. 6 ["complete control"]; p. 11["all-encompassing"]; p. 25 ["complete control"]; p. 26 ["completely controlled"].)

- Yogi says that Hankey falsely states that Yogi's notes "were cancelled and superseded" by its October 16, 2018, Promissory Note, because they were "amended and incorporated," not "cancelled." (Opposition 6-7 [citing Crossclaim, Ex. H].) Section 17 of that Note states, in no uncertain terms, that "[t]he Prior Notes are hereby cancelled and superseded by this Note."

- Yogi states the Hankey Deed of Trust does not have provisions that provide for an increase in the principal amount of Hankey's loan (Opposition 6) despite the fact that Hankey's Deed of

---

[1] Misstatements of the law will be discussed in Section II.

Trust provides that it is securing (1) not only the initial principal of $82.5 million, but also "any and all modifications" of the note; (2) "payment of such other indebtedness now *or hereafter* owing" to Hankey; as well as (3) "all sums advanced … to protect the security of this Deed of Trust." (Crossclaim, Ex. X) [emphasis added].)

•       Yogi says that the senior loan amount exceeds the $115 million cap it agreed to in its loan if Inferno Investment, Inc. ("Inferno") has a senior priority lien (Opposition 6), despite the fact that Yogi does not allege that Inferno has a senior lien and has expressly taken a contrary position in its filings. (Yogi's Answer to Plaintiff Inferno Investment, Inc.'s Adversary Complaint, ¶¶ 1, 50-54).

Such tactics cannot salvage Yogi's deficient pleading. Having conceded that its claims to recharacterize the debt owed to Hankey and for an accounting from Hankey are baseless, what remains to be determined is whether claims asserted by Yogi to subordinate and equitably subordinate Hankey's liens are viable. They are not.

With respect to the subordination claims, the law is clear that absent limited exceptions not applicable here, a senior lienholder is free to act in its own self-interests and owes no duties to junior lienholders. This includes the right to make additional loans to its borrower. Yogi, a self-professed hard money lender, concedes that its lien was knowingly recorded after Hankey recorded the Hankey Deed of Trust. While subordination of a senior lien can be appropriate as to new monies advanced where there is an agreement between the lenders to either subordinate or delay recording a deed of trust, there are no allegations in the Crossclaim that such an agreement ever existed. Further, Yogi's loan agreement authorized the incursion of senior indebtedness provided the loans were below a $115 million threshold, and the loans made by Hankey were less than this amount.

There is no basis in law, fact, or otherwise justifying subordination in the circumstances here, where there is no special relationship between Hankey or Yogi, and the two are merely competing lienholders on the same property who owe each other no duties. Seeking to circumvent the risk that befell it merely as a result of its junior position, Yogi argues that its independent election to defer recording a deed of trust until after Hankey recorded a deed of trust securing its loan is "tantamount" to a subordination agreement, such that Hankey assumed an obligation to obtain Yogi's consent to alter its loan or risk subordination. Yogi misreads the law in advocating as much. Far from suggesting that one

party can unilaterally impose duties on the other, the law is clear that only where there is an actual agreement of subordination between the parties—*i.e.*, the parties mutually consent—is a senior lender required to consider any impact modification of its loan may have on a junior lender. Yogi's case law merely states that the agreement need not be in a separate document titled a "subordination agreement" to constitute an agreement to subordinate. Yet, here, Yogi concedes no agreement of any kind exists, as it alleges only the bare conclusion that "Hankey knew" of Yogi's decision. (Crossclaim, ¶ 94)

Equitable subordination is only appropriate in the case of a non-fiduciary, non-insider such as Hankey where there is gross and egregious misconduct tantamount to fraud, misrepresentation, overreaching, or spoliation. Here, Yogi complains of additional advances made by Hankey after the Debtor breached a representation and warranty and had insufficient funds to complete a construction project. Not surprisingly, not a single case is cited which remotely suggests a claim for equitable subordination can be stated under these circumstances. Yogi also contends, without citation to any authority, that this relief is warranted because Hankey allegedly negligently supervised the disbursement of construction loan proceeds even though the Ninth Circuit has held that negligent conduct cannot support an equitable subordination claim.

These deficiencies cannot be cured. As such, the claims against Hankey in the Crossclaim should be dismissed without leave to amend.

## II.   THE CLAIMS AGAINST HANKEY FAIL TO STATE A CLAIM FOR RELIEF

### A.   The Third Claim for Relief for Subordination of Hankey's Lien Fails to State a Claim for Relief

The Motion to Dismiss the First Amended Counterclaim and Crossclaim of Yogi Securities Holdings, LLC, Doc No. 93 ("Motion") established that the Third Claim for Relief seeking subordination of the entirety of Hankey's claim because Hankey loaned additional funds to Debtor without first obtaining consent from Yogi fails for at least five reasons. The Opposition does not to refute any of these bases for dismissal.

First, Yogi argues it did not consent to additional senior secured lending on the Property up to $115 million. (Opposition 13-14; *see* Motion 8) The plain language of Yogi's Promissory Note states that senior indebtedness on the Property can be incurred up to $115 million, (Crossclaim, Ex. H ¶ 16), and

there is no dispute that, even with the modifications to Hankey's loan to Debtor, the principal owed is

less than that sum. (*See* Crossclaim, ¶ 37 [stating total principal is $106 million after modifications])

Yogi's only response is that none of Hankey's loan documents (the Promissory Note, Construction Loan

Agreement, and Deed of Trust) "indicate[] that Hankey can increase the principal amount of its loan."

(Opposition 13-14.) Yogi is wrong. Hankey's Deed of Trust states that it is securing (1) not only the

initial principal of $82.5 million, but also "any and all modifications" of the note; (2) "payment of such

other indebtedness now *or hereafter* owing" to Hankey; as well as (3) "all sums advanced … to protect

the security of this Deed of Trust." (Crossclaim, Ex. X [emphasis added]) Such language clearly provides

the Promissory Note may be "modif[ied]" to include additional sums that may be "hereafter" owed,

including any that are necessary to "protect the security," *i.e.*, the Property—clear "indicat[ions] that

Hankey can increase the principal amount of its loan." (Opposition 13-14); *see Lawrence v. Oakes*, 117

Cal. App. 32, 34-35 (1931) (mortgage given "to secure all other indebtedness and obligations that may

now or hereafter be due, owing or existing from said mortgagors" covered subsequent advances). Thus,

no consent from Yogi was required since Hankey's senior loan could be increased per the terms of the

Hankey Deed of Trust up to an amount not exceeding $115 million.

Second, the Motion established that, in the absence of a special relationship between the lenders,

a senior lender like Hankey owes no duty to a junior lender to refrain from modifying the terms of its

loan, and doing so does not risk the senior lender's subordination. (Motion 8-9) Yogi does not dispute

this maxim, and indeed, does not even address it, thereby conceding the point. *See Malibu Behavioral

Health Servs. v. Magellan Healthcare, Inc.*, Case No. 2:20-cv-01731-ODW (PVCx), 2020 WL 7646974,

at *4 (C.D. Cal. Dec. 23, 2020) ("Courts in this district have found that a failure to address an argument

in opposition to a motion to dismiss constitutes a concession of that argument.").

Instead, Yogi argues that *any* variation in the "basic priority concept of 'first in time, first in

priority'"—whether by unilateral choice or the result of an agreement between the parties—"is

tantamount to entering into a formal subordination agreement." (Opposition, 15) Thus, according to

Yogi, alleging the bare conclusions that "Hankey knew that Yogi [] was making a loan to [Debtor]" and

"Hankey knew that Yogi [] would record its lien after Hankey recorded its lien only on condition that

Hankey's loan to [Debtor] would be used to construct improvements to the Property" (Opposition, 2)—

allegations that should not even be considered as they are not incorporated into this Claim for Relief—is sufficient to impose obligations on Hankey to refrain from modifying its loan or risk subordination. In so arguing, Yogi misreads its cited authorities.

Contrary to Yogi's assertions, the authorities on which it relies stand only for the limited proposition Hankey explained in the Motion, namely, that a senior lienholder may risk its subordination by modifying its loan when there *is* a subordination agreement with a junior lienholder. Indeed, all *Middlebrook-Anderson Co. v. Southwest Sav. & Loan Ass'n*, 18 Cal. App. 3d 1023, 1029 (1971), says is that there need not be a "formal subordination agreement" (like the one Inferno signed) to impose duties on senior lenders; any actual "agreement by the seller to record after the lender" can impose the same duties. *Middlebrook* does not stand for the proposition urged by Yogi that a lender's unilateral choice to delay recording constitutes a subordination agreement because it varies the "first in time, first in priority" concept. Rather, *Middlebrook* provides that parties can enter into an "agreement" to subordinate that is not itself a "formal subordination agreement," and the law will treat the two the same. *See id.* at 1030 ("the parties intended to enter into an arrangement of subordination"). Yogi's other cited authorities, *Gluskin v. Atl. Sav. & Loan Ass'n*, 32 Cal. App. 3d 307 (1973), and *Lennar Northeast Partners v. Buice*, 49 Cal. App. 4th 1576 (1996), are in accord as each imposes duties on senior lenders because there is a subordination agreement with the junior lienholder. *See Gluskin*, 32 Cal. App. 3d at 309-10 (noting that the controversy at issue was whether "a modification of [lender's] loans disturbed the priority that [lender] had *by reason of a subordination agreement*") (emphasis added); *Lennar*, 49 Cal. App. 4th at 1580 (junior lender "executed a subordination agreement in favor of the [senior lender's] deed of trust").[2] In all such instances, there was an agreement between the parties.  No such agreement between Hankey and Yogi is alleged in the Crossclaim.

---

[2] Yogi's criticism that Hankey "cherry-pick[ed]" language from *Bank of N.Y. Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 955 (2017) to misrepresent the law is incorrect. (Opposition 19) The "immediately succeeding language" that Yogi chastises Hankey for not including, (*id.*), merely reiterates the principle for which Hankey cited the case and is in accord with *Middlebrook*, *Gluskin*, and *Lennar*, that when there is an "agree[ment]" to subordinate, there can be a loss of priority, but "absent contractual subordination," a senior lender owes no duties to junior lienholders.

To the extent Yogi suggests *Middlebrook* did not involve a subordination agreement, Yogi is incorrect. The *Middlebrook* court held that the lender's conduct specifically "induced the seller to subordinate its lien" in circumstances that constituted an "agreement" between them because, as was specifically communicated to the seller, the lender agreed to make its construction loan only on the condition of the "subordination of the seller's trust deed by priority of recording rather than through a formal subordination agreement." 18 Cal. App. 3d at 1028-29, 1037. In other words, there was an agreement to subordinate, though not formally titled a subordination agreement.

Yogi's Crossclaim alleges nothing comparable to constitute any sort of "agreement" between the parties for Yogi to subordinate to Hankey's Deed of Trust. *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781, 788 (2016) ("An essential element of any contract is the consent of the parties, or mutual assent. Further, the consent of the parties must be communicated by each party to the other."). Wholly absent are any allegations remotely amounting to an agreement or even anything to suggest that Hankey or Debtor ever suggested to Yogi in any way that Hankey's loan was conditioned on Yogi's subordination. To the contrary, the *only* arguably relevant allegation (and one that is not even incorporated into this Claim for Relief, and thus should be disregarded), is that "Hankey knew" Yogi was making a loan and would record its lien after Hankey on specified conditions. (Crossclaim ¶ 94)  Yogi alleges no "facts from which it can be plausibly inferred that [Hankey] possessed such knowledge." *Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1191, 1194 (E.D. Cal. 2018) (granting motion to dismiss because allegation that defendant "knew and/or had reason to know" was "merely conclusory and insufficient"); *see Enea v. Mercedes Benz USA, LLC*, Case No. 18-cv-02792-HSG, 2019 WL 402315, at *5 (N.D. Cal. Jan. 31, 2019) ("allegations of knowledge must still satisfy the plausibility standard of Rule 8, and conclusory statements are insufficient"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."; "While legal conclusion can provide the framework of a complaint, they must be supported by factual allegations.").

Yogi attempts to distinguish *Friery v. Sutter Buttes Sav. Bank*, 61 Cal. App. 4th 869 (1998), which provides that a senior lienholder owes no duty to a junior lienholder, and argues that the case involved a sophisticated loan broker who took a calculated investment risk. That is certainly applicable to

CROSS-DEFENDANT HANKEY CAPITAL, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED
COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS, LLC

this case where Yogi, a self-described hard money lender, knowingly delayed recording a deed of trust as a consequence of its extensive dealings with the Debtor and its related parties. Yogi does not deny that its loan was secured by five other properties and that it recorded deeds of trust on those properties to secure its loan prior to the recordation of the Hankey Deed of Trust.

*Friery* provides there is no duty to junior lienholders where there is no type of subordination agreement. As *Friery* unambiguously explains: "The duty found in *Gluskin* is firmly grounded on contractual principles." 61 Cal. App. 4th at 877; *see Middlebrook*, 18 Cal. App. 3d at 1033 (noting that "the claim of loss of priority … is based on principles of contract law"). Thus, rather than providing a wholesale rule that all junior lienholders are owed duties, "[r]ead properly, *Gluskin* does no more than find a duty of good faith and fair dealing *in* a subordination agreement." *Friery*, 61 Cal. App. 4th at 877 (emphasis added)*.* On the other hand, where a senior lender "undert[akes] no express or implied contractual duties" toward a junior lienholder, the "relationship to the [senior lender] [is] nothing more than that of a competing lienholder on the same property," and the senior lender is free to modify its loan without the junior lienholder's consent without risk of subordination. *Id.* at 877-78.

Even if Yogi were correct that *Middlebrook* upends the ordinary rules governing the obligation of senior lienholders and traditional contract principles (and it is not), Yogi is nonetheless incorrect that *Middlebrook* is not limited "to disputes between property sellers and lenders based on public policy." (Opposition 15.) Indeed, contrary to Yogi's suggestion that nothing in *Middlebrook* limits the stated policy to sellers, the opposite is true as the policy's rationale does not apply to other commercial lenders. *See Middlebrook*, 18 Cal. App. 3d at 1036-37 ("in our opinion strong public policy reasons to protect *the seller* in subordination situations" exist; "If the lender loses priority as a result of improper disbursements, it remains in a position to redeem the seller's purchase money lien and foreclose…. *The seller, on the other hand, is normally not in a position to protect himself by redemption….* After redemption, the lender can obtain a deficiency judgment against the defaulting developer *whereas the seller, … would be barred by Code of Civil Procedure section 580b*, if he tried to recover a deficiency judgment against the developer.") (emphases added); *see also Gluskin*, 32 Cal. App. 3d at 314 (referencing discussion in *Middlebrook*); *Lennar*, 49 Cal. App. 4th at 1588 ("When the junior lienholder

7

CROSS-DEFENDANT HANKEY CAPITAL, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED
COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS, LLC
*ACTIVE 683861773v1*

is a subordinating seller, equity may require a different result," than when both lienholders "are hard money lenders.").

It is for this reason that *Lennar* makes clear that, to the extent any subordination of a senior lien is appropriate when the junior lienholder is another commercial lender, the loss of priority applies *only* to the senior lender's modification—and not to the entirety of the senior lender's loan. 49 Cal. App. 4th at 1589. Thus, even if any subordination of Hankey's loan were appropriate (and it is not for the reasons previously stated), under *Lennar*, Hankey would maintain priority for its initial $82.5 million loan. (*See* Opposition 19 [admitting that "in the case of a subordinating junior lender, only the modification of the senior lien loses priority"].) Because the Third Claim for Relief requests subordination of the *entire* amount of Hankey's loan, this is an additional independent reason why the claim must be dismissed.

Recognizing there is in fact no agreement to subordinate of any kind that would trigger any of the duties of *Middlebrook* and its progeny, Yogi points to three cases from more than a century ago as standing for the proposition that advances on a loan "made after the senior lienholder has actual notice of the junior lien" are subordinate. (Opposition 19) As an initial matter, even if applicable, by its very terms, this argument would not save the Third Claim for Relief since it applies, at best, only to sums in excess of the initial $82.5 million principal, and this Claim seeks subordination of Hankey's entire loan. Moreover, the rule is also inapplicable since Yogi does not plausibly allege Hankey had actual knowledge of Yogi's loan. *See supra*, p. 6 (plaintiff must allege facts to plausibly allege knowledge and not its bare conclusion). The only "fact" Yogi alleges in support of any purported knowledge by Hankey of Yogi's loan is Yogi's recordation thereof. (Crossclaim, ¶ 29 [alleging Yogi recorded its loan the day after Hankey]) But Yogi's cited authority makes clear that "notice must be *actual*. Constructive notice, *by the recording of subsequent encumbrances*, is not enough." *Tapia v. Demartini*, 77 Cal. 383, 387 (1888) (first emphasis in original; second emphasis added); *Savings & Loan Soc. v. Burnett*, 106 Cal. 514, 533 (1895) (same); *Atkinson v. Foote*, 44 Cal. App. 149, 159 (1919) (same).

Third, the Motion established that the only circumstances in which a junior lienholder may assert a claim for subordination of a senior lender's lien are where there is a subordination agreement with the junior lienholder or the junior lienholder is a seller. (Motion 11)  These circumstances do not apply for the reasons previously discussed.

8

Fourth, Yogi cites no facts to justify subordination. Rather, it relies on conclusory statements that Hankey's actions "materially impaired repayment." These are insufficient to support a claim for subordination. (Motion 11-12) There are no allegations that the additional loan proceeds were used for an improper purpose and did not enhance the value of the Property. *See Iqbal*, 556 U.S. at 663-64 ("determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense"). Despite representing to Hankey that the loan proceeds were sufficient to complete construction (Crossclaim, Ex. S [Construction Loan Agreement] ¶ 6.9), Debtor in fact needed more money. It would make little sense to hold *Hankey* liable for Debtor's breach of its representation that the original sum was sufficient when Hankey's additional funds were needed to complete construction.

Fifth, the Motion established that Yogi's own unclean hands preclude it from seeking subordination. (Motion 12) Yogi's Opposition only reinforces this point, by doubling down on the enforceability of its $5.2 million Deed of Trust on the Property, which it admits it obtained for *no consideration* to the Debtor. (Opposition 9-10) Given Yogi's position that additional encumbrances enhanced the likelihood of default, foreclosure, and a depressed value for the Property, (Crossclaim, ¶ 68), Yogi cannot credibly contend that maintaining such encumbrance on the Property for 14 months without *any* consideration did not do the same. Thus, Yogi has unclean hands that preclude subordination. *See Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 979 (1999) ("[T]he misconduct need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine [of unclean hands]."); *St. Joseph's Found. v. Bashas' Inc. (In re Bashas' Inc.)*, 468 B.R. 381, 383 (D. Ariz. 2012) (finding that, under promissory estoppel, "[e]nforcement of [a] promise [made with no consideration] to the detriment of creditors who gave true consideration would be an injustice.").

Accordingly, Yogi's Opposition does not overcome the showing made in the Motion that the Third Claim against Hankey fails and must be dismissed.

### B.    The Fourth Claim for Relief for Equitable Subordination Fails to State a Claim for Relief

Hankey's Motion demonstrated that the Fourth Claim for Relief seeking to equitably subordinate the entirety of Hankey's $122,638,623.41 claim fails because Yogi simply asserts in conclusory fashion that Hankey "engaged in [] inequitable conduct," relying solely on the fact that Hankey made loan advancements and increased its profit participation agreement by $1.5 million without Yogi's consent, and on the unsupported allegation that Hankey negligently supervised loan disbursements. (Opposition 22) In Opposition, Yogi cites nothing to refute that none of this constitutes the "egregious" conduct necessary to amount to the "few and far between" circumstances that can support equitable subordination against an ordinary creditor like Hankey. (Motion 13-14)

First, Yogi fails to address any of the cases cited by Hankey, and in what is tantamount to a virtual concession by Yogi that its claim is frivolous, Yogi relies upon four cases that pre-date the adoption of the Bankruptcy Code in 1978, which it cites to support its assertion that a bankruptcy court has "broad powers" to equitably subordinate a claim. (Opposition 21-22 [citing *Prudence Realization Corp. v. Geist*, 316 U.S. 89, 93 (1942); *Pepper v. Litton*, 308 U.S. 295, 305 (1939); *Bostian v. Shapiro (In re Kansas City Journal-Post Co.)*, 144 F.2d 791, 800 (8th Cir. 1944); *Benjamin v. Diamond (In re Mobil Steel Co.)*, 563 F.2d 692, 699 (5th Cir. 1977)].) Three of these cases held that subordination is *not* appropriate.

*Pepper* discusses the equitable powers of the bankruptcy court in setting aside a scheme orchestrated by an insider to have a prepetition confession of judgment entered followed by a bankruptcy filing designed to allow him to realize upon the debtor's assets. 308 U.S. 295 at 305. This is not germane to the facts of this proceeding. In *Prudence*, the Court held that subordination of a guarantor's claim was not appropriate. 316 U.S. at 93. In *Bostian*, the court reversed the bankruptcy court which had subordinated the claim of an insider who foreclosed on assets of the debtor, noting that subordination is used "to nullify the effect of any fraud that a creditor has committed, to prevent unjust enrichment in a fiduciary relation, and to make the transactions of officers with the corporation conform to their sound realities in the existing situation." 144 F.2d at 800. Such facts are simply not present in this case. The final pre-Code case cited by Yogi, *Benjamin*, likewise involved reversal of a bankruptcy court decision to

10

subordinate the claims of insiders. 563 F.2d at 699. The *only* case cited by Yogi that involves application of section 510(c), *U.S. v. Noland*, 517 U.S. 535, 538-39 (1996), held that IRS tax claims could not be equitably subordinated.

Yogi's failure to cite relevant case authority is understandable. There are no cases even remotely similar to this proceeding where a court subordinated a non-insider creditor's claim, and thus this claim should be dismissed without leave to amend.

Where, as here, the senior lender is neither an insider nor a fiduciary, gross and egregious conduct not remotely present here is required. *See Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.*), 471 F.3d 977, 1006-07 (9th Cir. 2006); *CMR Mortg. Fund, LLC v. Canpartners Realty Holding Co. IV LLC (In re CMR Mortg. Fund, LLC)*, 416 B.R. 720, 736 (Bankr. N.D. Cal. 2009) (plaintiff could not allege "inequitable conduct" to support equitable subordination because challenged conduct was "expressly authorized by the [loan documents"). Yogi must "allege facts showing fraud, illegality or breach of some other legal duty owing by [the defendant creditor] to the Debtors or their creditors." *In re Granite Partners, L.P.*, 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997).

Despite this high standard, the only facts Yogi cites in its Fourth Claim as "egregious conduct" are that (i) Hankey made additional loans to the Debtor without Yogi's consent in connection with the construction of the Property, and (ii) Hankey changed the terms of a profit participation agreement without Yogi's consent. But Yogi cites no authority that making additional advances or changing the terms of a profit participation agreement is "egregious conduct" justifying equitable subordination. This is particularly the case since the Hankey Deed of Trust expressly allowed for the additional advances about which Yogi complains. *Supra* p. 4. Nor is it remotely plausible to suggest that in consideration of additional funding and other concessions the small increase of $1.5 million in the profit participation agreement—amounting to a tiny fraction of the total indebtedness to Hankey—is so "egregious" that it justifies equitable subordination of Hankey's *entire* nine-figure claim.  Numerous cases are cited in the Motion, none of which are refuted by Yogi, which provide that it is permissible and not wrongful for a lender to modify the terms of its loan.

Second, Yogi's reference to "facts" in its Seventh Claim for Relief (which Yogi withdraws) about how Hankey "actively engaged in funds control" over construction loan proceeds and negligently failed

to properly monitor the use of funds also does not support equitable subordination. (Opposition 23) As an initial matter, Yogi merely asserts in conclusory fashion that certain payments "were not, *or may not have been*, used for construction improvements" on the Property without alleging any facts plausibly suggesting this to be true. (Crossclaim ¶ 96-97 [emphasis added]; *see* Motion 5-6) And in any event, even if Hankey owed any duty to monitor the use of the funds (it does not), Yogi does not attempt to refute that negligence is insufficient to support equitable subordination. *Maryland National Bank v. Vessel Madam Chapel*, 46 F.3d 895, 901 (9th Cir. 1995). Nor does Yogi dispute that there was no requirement that Hankey's loan be used exclusively for constructing improvements. (Motion 5-6) Thus, even if Hankey failed to monitor the uses of these funds (something not plausibly alleged), this would nonetheless provide no basis to find "egregious conduct" warranting equitable subordination.

Yogi also engaged in inequitable conduct by encumbering the Property for no consideration to the Debtor, and its own unclean hands thus bar any claim of equitable subordination. (Motion 14) Yogi cites no contrary authority.

### C.  The Fifth Claim for Relief for Subordination Fails to State a Claim for Relief

The Fifth Claim for Relief seeks to subordinate only the Amended Hankey Note and Second Amended Hankey Note (Crossclaim, ¶ 84), i.e., the portions in excess of the initial $82.5 million principal, and fails for the same reasons as the Third Claim for Relief. In Opposition, Yogi appears to concede this is the case, and reiterates only that *Lennar* provides for its requested subordination. As noted above, (*supra* p. 5), *Lennar* only helps junior lienholders who have an agreement to subordinate to a senior lender. Yet, here, Yogi alleges no facts to suggest any agreement to subordinate, simply that "Hankey knew" Yogi recorded later. This is insufficient. *See supra* p. 6.

### D.  The Sixth Claim for Relief for Equitable Subordination Fails to State a Claim for Relief

The Sixth Claim for Relief seeks to subordinate only the Amended Hankey Note and Second Amended Hankey Note (Crossclaim, ¶ 87), and fails for the same reasons as the Fourth Claim for Relief. In Opposition, Yogi concedes that this claim rises and falls with the Fourth Claim for Relief, again reiterating that *Lennar* provides for its requested subordination. *Lennar* has nothing to do with equitable subordination, and Yogi has not provided any basis to support its claim for equitable subordination.

### E.    The Seventh Claim for Relief for an Accounting Fails to State a Claim for Relief

Hankey has withdrawn its claim for an accounting. Accordingly, the claim should be dismissed without leave to amend. *See, e.g.*, *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1054 (C.D. Cal. 2015) ("Because [plaintiff] did not oppose defendants' motion to dismiss the claim, which constitutes abandonment of the claim, the court dismisses it with prejudice"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008) (dismissing claim without leave to amend where plaintiff did not address the claim or defendant's arguments in his opposition and thus "the Court concludes that plaintiffs have abandoned this claim").

### F.    The Eighth Claim for Relief for Subordination Fails to State a Claim for Relief

The Eighth Claim for Relief, which seeks to subordinate Hankey's claim to the extent disbursements were not used for construction purposes, fails because (1) the Construction Loan Agreement did not so limit the use of the funds, (2) even if the funds were used for an improper purpose, Hankey owed no duty to Debtor or Yogi to monitor the funds, and (3) any purported negligence in overseeing the use of funds does not support subordination as a matter of law.

The Opposition addresses neither the first nor third points, thus conceding that the claim must be dismissed on these bases. *See Malibu Behavioral Health*, 2020 WL 7646974, at *4 ("Courts in this district have found that a failure to address an argument in opposition to a motion to dismiss constitutes a concession of that argument. … [B]y failing to meaningfully respond to [defendant's] argument, [plaintiff] has effectively conceded the issue as to whether its claim … is adequately pled. … [T]he Court construes [plaintiff's] failure to address those specific grounds raised in the Motion as consenting to dismissal on those grounds.").

As to whether Yogi can simply disregard the plain language of the Construction Loan Agreement, which expressly states that "Lender has no obligation to monitor or determine Borrower's use or application of the disbursements," (Crossclaim, Ex. S ¶ 3.4), Yogi apparently concedes the claim, as alleged, fails, since the Opposition seeks to rely on new facts not alleged in the Crossclaim that Hankey purportedly "t[ook] upon itself the complete control of [] disbursements," and argues that such conduct supersedes the plain language of the Construction Loan Agreement. (Opposition 25) Even if Yogi's failure to address the other bases for dismissal did not mandate dismissal of this claim, Yogi's newly

minted allegations cannot save the claim. First, the Court cannot consider any of the "new allegations contained in [Yogi's] opposition motion," because they "are irrelevant for Rule 12(b)(6) purposes. In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to … a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dept. of Corr*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Thus, the newly (conclusory) assertion that Hankey assumed "complete control" over funds disbursements, (Opposition 25), should be ignored.

With respect to the allegations that actually appear in Yogi's Counterclaim, all Yogi alleges is the conclusion on "inform[ation] and belie[f] that Hankey was actively engaged in funds control." (Crossclaim, ¶ 95) But the only "fact" alleged in support of this conclusion is that Hankey's control was "set forth in the Construction Loan Agreement." (Crossclaim ¶ 92 [citing Ex. D [Loan Agreement] ¶ 3.4]) However, as noted in the Motion, this statement is untrue, as the very provision of the Construction Loan Agreement that Yogi (selectively) quotes in the Counterclaim (and others in the same agreement) confirm the opposite was true. The Court does not accept as true allegations that contradict the attached exhibits. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). Moreover, no other facts plausibly allege any level of control by Hankey, and such bare conclusion must also be disregarded at the motion to dismiss stage. *See Iqbal*, 556 U.S. at 678.

Finally, none of Yogi's cited law allows Yogi to disregard the plain language of the agreement disclaiming a duty to monitor. (Opposition 12, 25) No such language can be found in *Middlebrook*, and in the one cited case where such exculpatory language was present, the court held that "because there is no duty on the [lender] implied in the law, *and because the written agreements disclaim* any implied duty," the lender owed *no duties* to the subordinated seller. *See Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1215 (9th Cir. 1994) (emphasis added).[3] To the extent *Resolution* could be read as

---

[3] Yogi's citation to out-of-jurisdiction authority as supporting the notion that the contract can be superseded by conduct reveals its desperation. (Opposition 26 n. 15) Neither cited case has anything to do with a lending relationship; rather, each involves whether a property owner could be responsible for workplace safety when that duty was contractually assigned to another. And, in each case, specific facts existed to support the supposed duty. In *Boyette v. Algonquin Gas Transmission Co.*, 952 F. Supp. 192, 197 (S.D.N.Y. 1997), although workplace safety was contractually the responsibility of another, the owner hired on site inspectors whose daily functions included "looking for potential safety problems." And in *Wilkerson v. Mobile Oil Corp.*, 941 F. Supp. 614, 617 (E.D. Tex. 1996), the owner participated in weekly meetings about the project, maintained responsibility for scheduling work, discussed "[p]roblems

1  suggesting there are other circumstances that might support imposition of such a duty, as noted above,

2  Yogi does not plausibly allege any of those circumstances exist here. And Yogi does not dispute that the

3  California Supreme Court held in *Connor v. Great Western Sav. & Loan Ass'n.*, 69 Cal. 2d 850, 871

4  (1968), that a construction lender owes no duties to junior lenders to monitor the use of construction

5  funds. (Motion 16)

### G. The Ninth Claim for Relief for Equitable Subordination Fails to State a Claim for Relief

8  The Ninth Claim for Relief fails because, like the Eighth Claim for Relief, it wrongly seeks to

9  equitably subordinate Hankey's claim to the extent any funds advanced by Hankey to the Debtor were

10 not used for construction of improvements to the Property. In Opposition, Yogi merely reiterates that

11 such claim should survive because Hankey acted egregiously in assuming control over funds and failing

12 to monitor their use. Such conclusory allegations do not remotely suggest the type of "egregious"

13 conduct needed to warrant equitable subordination. *Supra* pp. 10-12. Further, Yogi's conduct in obtaining

14 a $5.2 million deed of trust on the Property for *no consideration* bars it from seeking relief.

### H. The Tenth Claim for Relief for Subordination Fails to State a Claim for Relief

16 The Tenth Claim for Relief, which seeks to subordinate Hankey's claim to the extent Hankey

17 received "interest on interest" (Opposition 26) for loan payments fails because, as Yogi does not dispute,

18 Hankey's promissory note allows it to charge interest upon interest, and Yogi alleges no facts as to what

19 portion of the $18,280,231.87 in interest were for payments Hankey already received. (Motion 18)

20 Yogi does not dispute that all three iterations of the Hankey promissory notes that applied during

21 the course of the Hankey/Debtor loan state that if interest is not timely paid, it becomes part of the

22 principal and thereafter bears interest. Nor does Yogi dispute that California law allows interest to be

23 charged on interest if the note so provides.

24 Instead, Yogi contends that its Tenth Claim for Relief only seeks subordination to the extent

25 Hankey charged interest on interest for payments already received. This argument fails for at least two

27 and anticipated problems," and answered engineering questions about the project. Neither involved a bare
28 conclusion that the owner was in control, and neither has any bearing on a creditor's duty to monitor a
lender's use of funds when such duty is specifically disclaimed.

reasons. First, Yogi conflates the actual receipt of interest payments with the establishment of an interest reserve. Hankey's second iteration of the promissory note established that "[i]nterest payment[s] shall be initially paid from a reserve account, maintained by Lender, in the amount of $4,500,00.00," and only required Debtor to make interest payments "upon depletion of the Reserve." (Crossclaim, Ex. Z at 2). The third iteration of the promissory note maintained the same reserve account but increased the amount to $5,700,000. (Crossclaim, Ex. DD at 2) Hankey's maintenance of an interest reserve account— something that Yogi's promissory note *also* provides for (Crossclaim, Ex. H, ¶ 2.1)—is not the same thing as being actually paid interest owed.

Second, neither Yogi's Crossclaim nor its Opposition alleges what portion of the $18,280,231.87 in interest payments was received by Hankey (as opposed to deposited in the reserve fund) or upon what portion of this amount Hankey improperly charged interest. (*See* Crossclaim ¶¶ 110-112). Hankey has no way of knowing what interest payments Yogi claims were improper and thus no way to reasonably defend against this claim. *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) (a complaint must allege facts sufficient to give the opposing party fair notice and the ability to defend itself effectively). This claim is not pleaded on information and belief, and Yogi must allege the facts which supposedly support its conclusory allegation, including identifying the actual charges at issue.  (Motion at 18 [citing *e.g., Grossi v. Bosco Credit, LLC*, No. 16-3100 MEJ, 2017 WL 3453347, at *15 (N.D. Cal. Aug. 10, 2017)]

## I.    The Eleventh Claim for Relief for Equitable Subordination Fails to State a Claim for Relief

The Eleventh Claim for Relief fails because it likewise seeks to equitably subordinate Hankey's claim to the extent it received interest on interest with respect to loan payments. In Opposition, Yogi merely reiterates that such a claim should survive because Hankey received interest on interest for payments Hankey received from Debtor. As noted *supra*, Section II.H., Hankey cannot discern from the pleading what interest payments were actually received by Hankey (as opposed to drawn from the interest reserve) or upon what portion of this amount Hankey allegedly improperly charged interest. Even if such charges were overstated, Yogi cites no authority which even suggests that this would support a claim for equitable subordination.

CROSS-DEFENDANT HANKEY CAPITAL, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED
COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS, LLC
ACTIVE 683861773v1

### J.    The Twelfth Claim for Relief For Disallowance of Alleged Secured Claim Fails to State a Claim for Relief

The Twelfth Claim for Relief seeks to disallow as secured claims Proof of Claims 17 and 18 filed by Hankey. It fails because the profit participation agreement ("PPA") that serves as the basis for claim 18 (claim 17 being moot as the Property did not sell for $200 million) was a present assignment that was perfected upon recording.

Yogi contends that the recording of the Memorandum of Agreement ("MOA") does not perfect Hankey's profit-sharing agreement because the MOA did not attach a copy of the PPA or specify its terms. (Opposition 28-29 [citing Cal. Civ. Code § 2938(b)]). But nothing in Civil Code § 2938(b) requires the actual assignment to be recorded nor the details of the PPA to be expressly listed in any recorded document. Rather, assignments must only be recorded "in accordance with the methods, procedures, and requirements for recordation of conveyances of other interests in real property . . . ." Cal. Civ. Code. § 2938(b). Yogi does not allege this was not done.

The cases Yogi cites do not impose the requirement to disclose the specific terms of the PPA. The text Yogi quotes from *MDFC Loan Corp. v. Greenbrier Plaza Partners* simply approves of one method of recording an assignment, but never states it is the *only* way to do so.  21 Cal. App. 4th 1045, 1050 (1994). And nothing in *In re GOCO Realty Fund I* speaks to the level of detail required for an assignment to be properly recorded. 151 B.R. 241, 247 (Bankr. N.D. Cal. 1993).  *In re Millette* is even further afield as it simply predicts that the Mississippi Supreme Court would hold that recording is sufficient to perfect an assignment. 186 F.3d 638, 639 (5th Cir. 1999).

Recording provides a "conclusive presumption" that a subsequent acquiror or junior lienholder has constructive notice of the contents of recorded documents. *612 S. LLC v. Laconic Ltd. P'ship*, 184 Cal. App. 4th 1270, 1278 (2010); *see* Cal Civ Code § 19. And Yogi ignores the well-established rule that a subsequent party has constructive notice of the contents of *unrecorded* documents that are *referenced* in a recorded document. 4 Cal. Real Est. § 10:61 (4th ed.); *see Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Assn.*, 184 Cal. App. 3d 817, 825-26 (1986) (holding junior lienholder had constructive notice of terms of a promissory note referenced in a recorded deed); *Am. Med. Int'l, Inc. v. Feller*, 59 Cal. App. 3d 1008, 1020-21 (1976) (holding a subsequent acquiror had constructive notice of a limitation on the right to seek

CROSS-DEFENDANT HANKEY CAPITAL, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED
COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS, LLC

partition of the property contained in an unrecorded application to the state department of corporations that was referenced in the recorded deed). The MOA clearly references the PPA and put Yogi on constructive notice of its terms—including specifically that it is a "Profit Participation Agreement"—the terms of which Yogi could have discovered with reasonable investigation. (Counterclaim Ex. HH) Accordingly, there is no basis to reject the recording, and the Twelfth Claim for Relief should be dismissed.

### K.    The Thirteenth Claim for Relief for Recharacterization Fails to State a Claim for Relief

Yogi has withdrawn its recharacterization claim. Accordingly, it should be dismissed with prejudice. *See supra* p. 13 (citing *Griffin*, 166 F. Supp. 3d at 1054 (claim is properly dismissed without leave to amend as abandoned when not opposed); *In re TFT*, 586 F. Supp. 2d at 1131 (same)).

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Hankey respectfully requests that the Court dismiss the claims that are the subject of this Motion without leave to amend.

DATED:  December 8, 2022            GREENBERG TRAURIG, LLP


By */s/ Howard J. Steinberg*
Howard J. Steinberg
Attorneys for Defendant Hankey Capital, LLC

CROSS-DEFENDANT HANKEY CAPITAL, LLC'S REPLY ISO MOTION TO DISMISS FIRST AMENDED
COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS, LLC
ACTIVE 683861773v1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled (*specify*): **CROSS-DEFENDANT HANKEY CAPITAL, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM OF YOGI SECURITIES HOLDINGS, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/08/2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Todd M Arnold**    tma@lnbyg.com
- **Ryan Coy**    rcoy@bg.law, ecf@bg.law
- **Max Fabricant**    mfabricant@lavelysinger.com
- **Thomas M Geher**    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **David B Golubchik**    dbg@lnbyg.com, stephanie@lnbyb.com
- **Jonathan Gottlieb**    jdg@lnbyg.com
- **John A Moe**    john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Joseph M Rothberg**    jmr@lnbyg.com
- **Paul Sorrell**    psorrell@lavelysinger.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 12/08/2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Crestlloyd, LLC, 4470 W. Sunset Blvd., #362, Los Angeles, CA  90027
Martin D Singer, Lavely & Singer Professional Corporation, 2049 Century Park East Ste 2400, Los Angeles, CA 90067

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/08/2022 | Terrine Pearsall | /s/ Terrine Pearsall |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**