1  ROBERT F. SCOULAR (SBN 85293)
   robert.scoular@dentons.com
2  JOHN A. MOE II (SBN 66893)
   john.moe@dentons.com
3  NORMAN M. ASPIS (SBN 313466)
   norman.aspis@dentons.com
4  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
5  Los Angeles, California 90017-5704
   Telephone:    213 623 9300
6  Facsimile:    213 623 9924

7  Attorneys for Defendant, Crossclaimant and Counterclaimant
   YOGI SECURITIES HOLDINGS, LLC

8

9              **UNITED STATES BANKRUPTCY COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA -- LOS ANGELES DIVISION**

11

12  In re,                          Case No. 2:21-bk-18205-DS

13  CRESTLLOYD, LLC,                 Chapter 11
                      Debtor.
14                                   Adversary Proceeding No. 2:22-ap-01125-DS

15  INFERNO INVESTMENT, INC., a Quebec   SECOND AMENDED COUNTERCLAIM
    corporation,                          AND CROSSCLAIM OF YOGI SECURITIES
16                                        HOLDINGS, LLC, AGAINST
                       Plaintiff,         CRESTLLOYD, LLC, INFERNO
17         v.                             INVESTMENT, INC. AND HANKEY
                                          CAPITAL, LLC, FOR DECLARATORY
18  CRESTLLOYD, LLC, California limited   RELIEF, AN ACCOUNTING, EQUITABLE
    liability company; et al.             SUBORDINATION, DISALLOWANCE OF
19                      Defendants.       CLAIMS AND RECHARACTERIZATION
                                          OF CLAIMS
20  YOGI SECURITIES HOLDINGS, LLC, a
    Nevada limited liability company,
21
              Counter/Cross-Complainant,
22
              v.
23
    CRESTLLOYD, LLC, a California Limited
24  Liability Company; HANKEY CAPITAL, LLC,
    a California limited liability company;
25  INFERNO INVESTMENT, INC., a Quebec
    corporation; and HILLDUN CORPORATION,
26  a New York corporation,

27            Counter/Cross-Defendants.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1  CRESTLLOYD, LLC, a California limited
2  liability company,
                              Cross-Claimant,
3         v.

4  INFERNO INVESTMENT, INC., a Quebec
   Corporation; NILE NIAMI, an individual;
5  YVONNE NIAMI, an individual; GROUND
   VIEW LLLP, a Nevada limited liability limited
6  partnership; 1369 LONDONDERRY ESTATE
   LLC, a California limited liability company;
7  MARBELLA CONSTRUCTION INC., a
   California limited liability company;
8  N:PHILANTHROPY LLC, a California limited
   liability company; YOGI SECURITIES
9  HOLDINGS, LLC, a Nevada limited liability
   company; TROUSDALE ESTATE, LLC, a
10 Nevada limited liability Company; JOSEPH
   ENGLANOFF, an individual; JUSTINE
11 ENGLANOFF, an individual; NICOLE
   ENGLANOFF , an individual; JACQUELINE
12 ENGLANOFF, an individual; HILLDUN
   CORPORATION, a New York corporation,

13                            Cross-Defendants.

14

15        Plaintiff Yogi Securities Holdings, LLC ("Yogi Securities") states for its Counterclaim and

16 Crossclaim in this adversary proceeding as follows.

17                        **JURISDICTION AND VENUE**

18        1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and

19 1334. Jurisdiction to grant declaratory relief is conferred by 28 U.S.C. § 2201 and Rule 7001 of the

20 Federal Rules of Bankruptcy Procedure.

21        2.      This adversary proceeding is brought pursuant to Rule 7001, *et seq.* of the Federal

22 Rules of Bankruptcy Procedure.

23        3.      Venue is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises in

24 and relates to a case under Title 11 of the Federal Bankruptcy Code that is now pending in this

25 District.

26        4.      This adversary proceeding is a "core" proceeding as defined in 28 U.S.C.

27 § 157(b)(2)(A), (B), (K) and (O).

28

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**THE PARTIES**

5.     Plaintiff Yogi Securities is a limited liability company duly organized and existing under the laws of the State of Nevada.

6.     Defendant Crestlloyd, LLC ("Crestlloyd" or "Debtor"), is the debtor in this Chapter 11 bankruptcy case, which case remains pending. Yogi Securities is informed and believes and thereon alleges that Crestlloyd is a limited liability company duly organized and existing under the laws of the State of California.

7.     Yogi Securities is informed and believes and thereon alleges that defendant Hankey Capital, LLC ("Hankey") is a California limited liability company duly organized and existing under the laws of the State of California.

8.     Yogi Securities is informed and believes and thereon alleges that defendant Inferno Investment, Inc. ("Inferno") is a corporation organized and existing under the laws of Quebec, Canada.

9.     Yogi Securities is informed and believes and thereon alleges that defendant Hilldun Corporation ("Hilldun") is a corporation duly organized and existing under the laws of the State of New York.

**FACTUAL BACKGROUND**

10.     The subject matter of this Counterclaim and Crossclaim is real property referred to as "The One," a 105,000-square-foot, single family, luxury home located at 944 Airole Way, Los Angeles, California 90079 (the "Property"). Yogi Securities lent money or extended credit to Crestlloyd, secured by the Property, as set forth below. Inferno, Hankey and Hilldun have each asserted that they loaned money and/or extended credit to Crestlloyd, allegedly secured by the Property, as set forth below.

**A.     The Alleged Inferno Funding**

11.     On March 13, 2013, Crestlloyd executed and delivered two promissory notes related to the Property. The first was a Promissory Note Secured By Deed Of Trust in favor of Inferno Investments, Inc., in the amount of $3,925,545 (the "First Inferno Note"), a true and correct copy of which is attached hereto as Exhibit A and incorporated by reference. The loan evidenced by the

First Inferno Note was understood by Inferno Investments, Inc. and Crestlloyd to be a "high risk loan," such that Crestlloyd agreed to pay the lender "additional consideration and not as additional interest" fifty percent of the net profits derived from the sale of two properties (271 South Mapleton Drive, Los Angeles, California, and 1175 Hillcrest Road, Beverly Hills, California) and fifteen percent of the net profits derived from the sale of the Property. Despite being dated March 13, 2013, the First Inferno Note includes a footnote with the date "10/14/15."

12.     The second promissory note executed and delivered by Crestlloyd on March 13, 2013, was a Promissory Note Secured By Deed Of Trust in favor of Inferno Realty, LP, as to an undivided $7,040,000 and Maybach Holdings Corporation, Inc., as to an undivided $7,000,000, totaling $14,040,000 (the "Second Inferno Note"). The Second Inferno Note was secured by the Property, as evidenced by a Deed Of Trust With Assignment Of Rents in favor of Inferno Realty, LP, as to an undivided $7,040,000 interest and Maybach Corporation Holdings, Inc., as to an undivided $7,000,000 interest, which deed of trust (the "Inferno Deed Of Trust") was recorded in the real property records of the Los Angeles County Recorder's Office[1] on March 13, 2013, as instrument number 2013-0384037, a true and correct copy of which is attached hereto as Exhibit B and incorporated by reference.

13.     Thereafter, Maybach Corporation assigned its right, title and interest in the Inferno Deed Of Trust to Inferno Realty, LP, by Assignment Of Note And Deed Of Trust/Mortgage dated June 2, 2014, and recorded November 10, 2015, as instrument number 2015-1375606 (the "First Inferno Assignment"), a true and correct copy of which is attached hereto as part of Exhibit C and incorporated by reference.

14.     By subsequent Assignment Of Note And Deed Of Trust/Mortgage dated October 21, 2015, and recorded on November 10, 2015, as instrument number 2015-1375607 (the "Second Inferno Assignment"), Inferno Realty, LP, assigned its right, title and interest in the Inferno Deed Of Trust to Inferno Investment, Inc. A true and correct copy of the Second Inferno Assignment is attached hereto as Exhibit D and incorporated by reference.

---

[1] All recordings referenced within this document were recorded in the real property records of the Los Angeles County Recorder.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

15.    In October 2015, the Second Inferno Note was reduced "to provide that the face amount of the Note is $7,000,000.00 which is the principal balance due and owing as of this date" (the "Modified Inferno Note"), a true and correct copy of which is attached hereto as Exhibit E and incorporated by reference. The creation of the Modified Inferno Note was not done by separate instrument. Upon information and belief, the terms of the Second Inferno Note were modified by language that was typed into the Second Inferno Note after Crestlloyd's signature block, the date "October ____, 2015" was typed above the lender's signature block, and "Modified" was added to the title of the instrument. The modification language was typed on the second page below the word "MODIFICATION" and agreed to and executed by Julien Remillard, Director of Inferno Investments Inc, a Canadian Corporation, which indicates that the modification was executed after the Second Inferno Assignment.

16.    The Inferno Deed Of Trust was amended by that certain Modification And Supplement To Deed Of Trust dated October 21, 2015, and recorded November 10, 2015, as instrument number 2015-1375608, executed by Crestlloyd and Inferno Investment Inc. (the "Modified Inferno Deed Of Trust"), a true and correct copy of which is attached hereto as Exhibit F and incorporated by reference. The Modified Inferno Deed Of Trust secures the First Inferno Note and the Modified Inferno Note, the total amount secured by the Modified Inferno Deed Of Trust being $10,295,545. The Modified Inferno Deed Of Trust is the first time that a recorded instrument proffered by Inferno that purports to secure repayment of the First Inferno Note with a lien on the Property.

17.    On January 1, 2016, Crestlloyd and Inferno entered into a "Memorandum Of Agreement" (the "Memorandum"), whereby they agreed that proceeds from the sale of the Property would be distributed in the following manner:

First to repay the loan(s) obtained from a bank or third-party parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property].

Second to Crestlloyd and Inferno, *pro rata,* in repayment of any loans owing them, together with simple interest thereon at the rate of eight percent (8%) per annum.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

> Third, to Crestlloyd, the sum of ONE HUNDRED FORTY-FIVE THOUSAND DOLLARS ($145,000) as compensation for general office overhead and services rendered by it in connection with the construction of the Residence.
>
> Thereafter, to Crestlloyd and Inferno in accordance with their share of the profits and losses determined in the manner set forth in paragraph 2 above.

A copy of the Memorandum is attached hereto as Exhibit G and incorporated by reference.

18.    The Memorandum was amended by Amendment No. 1 To Memorandum Of Agreement (undated); Amendment No. 2 To Memorandum Of Agreement, entered into as of September 27, 2016; Revised Amendment No. 2 To Memorandum Of Agreement, entered into as of September 28, 2016; Amendment No. 3 To Memorandum Of Agreement, entered into as of March 29, 2018; and Revised Amendment No. 3 To Memorandum Of Agreement, entered into as of May 16, 2018, copies of which are attached collectively hereto as Exhibit H and incorporated by reference.

19.    Thereafter, Yogi Securities loaned money to Crestlloyd. Hankey, Inferno and Hilldun allege that they also loaned money to Crestlloyd.

**B.    The Yogi Securities Loans**

20.    In August 2017, Crestlloyd obtained a loan from Yogi Securities in the original principal amount of $1,800,000. More specifically, on August 9, 2017, Crestlloyd executed and delivered to Yogi Securities a Secured Promissory Note in the amount of $1,800,000 (the "$1.8M Promissory Note"), a copy of which is attached hereto as Exhibit I and incorporated by reference. In connection with the $1.8M Promissory Note, Crestlloyd executed a Deed Of Trust And Assignment Of Rents, recorded on August 17, 2017, as instrument number 2017-0931482 (the "$1.8M Deed Of Trust"), a copy of which is attached hereto as Exhibit J and incorporated by reference, securing its repayment obligations with real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "Hillcrest Property").

21.    The $1.8M Promissory Note was initially due to be paid in full in February 2018. On April 13, 2018, Crestlloyd and Yogi Securities entered into a First Amendment Of Promissory Note, a copy of which is attached hereto as Exhibit K and incorporated by reference, extending the maturity date to October 12, 2018, and increasing the outstanding principal amount to $2,044,125.

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

22.     Subsequently, as set forth in paragraph 24 below, in connection with Crestlloyd executing as of October 16, 2018 a $30,188,235 Secured Promissory Note in favor of Yogi Securities, Crestlloyd and Yogi Securities agreed the amount then due on the original $1.8M Promissory Note was $2,188,235.

23.     In May 2018, Crestlloyd obtained a second loan from Yogi Securities in the original principal amount of $17,499,900. More specifically, on May 22, 2018, Crestlloyd executed and delivered a Secured Promissory Note in favor of Yogi Securities for $17,499,900 (the "$17,499,900 Promissory Note"), a copy of which is attached hereto as Exhibit L and incorporated by reference. In connection with the $17,499,900 Promissory Note, and pursuant to Paragraph 3 of the $17,499,900 Promissory Note, Crestlloyd and Holding Company of Beverly Hills, LLC, executed and delivered to Yogi Securities three Deeds Of Trust And Assignments Of Rents recorded on May 29, 2018, as instrument numbers 2018-0527856, 2018-0527857 and 2018-0527858, securing Crestlloyd's repayment obligations with the Property, the Hillcrest Property, and real property located at 301 Copa de Oro Road, Los Angeles, California 90077 (the "Copa de Oro Property"), copies of which three Deeds Of Trust And Assignment Of Rents are attached collectively hereto as Exhibit M and incorporated by reference.

24.     In October 2018, Crestlloyd obtained a third loan from Yogi Securities in the original principal amount of $30,188,235. More specifically, on October 16, 2018, Crestlloyd executed a Secured Promissory Note in favor of Yogi Securities (the "$30,188,235 Promissory Note"), a copy of which is attached hereto as Exhibit N and incorporated by reference. Paragraph 2.1(b) of the $30,188,235 Promissory Note identifies the prior notes (defined therein and above as the "$1.8M Promissory Note" and the "$17,499,900 Promissory Note") and confirms that the amounts due and owing thereunder as of October 16, 2018, were $2,188,235 for the $1.8M Promissory Note and $17,499,900 for the $17,499,900 Promissory Note. The amounts advanced under the prior notes were included in the $30,188,235 loan and, pursuant to Paragraph 17 of the $30,188,235 Promissory Note, the prior notes were "cancelled and superseded by this Note."

25.     In connection with the $30,188,235 Promissory Note, Crestlloyd executed and delivered to Yogi Securities a Deed Of Trust And Assignment Of Rents, recorded on November 7,

2018 as instrument number 2108-1126580, a true and correct copy of which is attached hereto as Exhibit O and incorporated by reference, which secured repayment of the $30,188,235 Promissory Note with the Property.

26.     As further security for the repayment of the $30,188,235 Promissory Note:

- Crestlloyd executed and delivered a Deed Of Trust And Assignment Of Rents (the "Hillcrest Deed Of Trust") dated October 16, 2008, further securing the obligation with real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "Hillcrest Property");

- 10701 Bellagio Road, LLC ("Bellagio") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Bellagio Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 10701 Bellagio Road, Los Angeles, California 90077 (the "Bellagio Property");

- Carcassonne Fine Homes, LLC ("Carcassonne") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Carcassonne Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 627 North Carcassonne Road, Los Angeles, California 90077 (the "Carcassonne Property");

- Marbella Construction, Inc. ("Marbella") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Marbella Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 3381 Stone Ridge Road, Los Angeles, California 90077 (the "Stone Ridge Property"); and

- 1369 Londonderry Estate, LLC ("Londonderry") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Londonderry Deed Of Trust") dated October 16 2018, further securing the obligation with real property located at 1369 Londonderry Place, Los Angeles, California 90069 (the "Londonderry Property").

These documents were recorded as follows: the Hillcrest Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065783; the Bellagio Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065788; the Carcassonne Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065789; the Marbella Deed Of Trust

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

was recorded on October 19, 2018 as instrument number 2018-1065790; and the Londonderry Deed Of Trust was recorded on October 19, 2018 as instrument number 2018-1065787. True and correct copies of these recorded documents are attached collectively hereto as Exhibit P and incorporated by reference. (When referred to collectively, the Property and the five additional properties securing the $30,188,235 Secured Promissory Note shall be referred to as the "Properties.")

27.    With the recording of the Hillcrest, Bellagio, Carcassonne, Stone Ridge and Londonderry Deeds of Trust, Yogi Securities caused the following reconveyances to be recorded in conjunction with the six new deeds of trust recorded against the Properties as set forth in paragraphs 25 and 26 above.

- Substitution Of Trustee And Full Reconveyance dated October 13, 2018, recorded October 16, 2018, as instrument number 2018-1065780 (relating to the $1.8M Deed Of Trust And Assignment Of Rents recorded on August 17, 2019, as instrument number 2017-0931482 that encumbered the Hillcrest Property);

- Substitution Of Trustee And Full Reconveyance dated October 13, 2018, recorded October 16, 2018, as instrument number 2018-1065781 (relating to the $17,499,900 Deed Of Trust And Assignments Of Rents recorded on May 29, 2018, as instrument number 2018-0527857 that encumbered the Hillcrest Property); and

- Substitution Of Trustee And Full Reconveyance dated October 13, 2018, recorded October 16, 2018, as instrument number 2018-1065782 (relating to the $17,499,900 Deed Of Trust And Assignments Of Rents recorded on May 29, 2018, as instrument number 2018-0527858 that encumbered the Copa De Oro Property).

Copies of the three Substitutions Of Trustee And Full Reconveyances are attached collectively hereto as Exhibit Q and incorporated by reference.

28.    On or about June 18, 2019, Crestlloyd, Bellagio, Carcassonne, Marbella, Londonderry and Yogi Securities entered into an Amendment Of Note And Deeds Of Trust, extending the maturity date of the $30,188,235 Promissory Note and increasing the loan to $30,588,235, repayment of which continued to be secured by the Properties, and which was recorded on

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

August 30, 2019 as instrument number 2019-0889046, a true and correct copy of which Amend-ment Of Note And Deed of Trust is attached hereto as Exhibit R and incorporated by reference.

29.    On or about August 17, 2019, Crestlloyd, Bellagio, Carcassonne, Marbella, London-derry and Yogi Securities entered into a Second Amendment Of Note And Deed Of Trust, again extending the maturity date of the $30,188,235 Promissory Note and increasing the loan to $31,528,363.12, repayment of which continued to be secured by the Properties, and was recorded on September 5, 2019 as instrument number 2019-0907091, a true and correct copy of which Second Amendment Of Note And Deed Of Trust is attached hereto as Exhibit S and incorporated by reference.

30.    Prior to Crestlloyd's execution and delivery of the $30,188,235 Secured Promissory Note, on April 20, 2018, Marbella and Londonderry executed and delivered a $5,200,000 Secured Promissory Note in favor of Yogi Securities (the "$5,200,000 Secured Promissory Note"), a true and correct copy of which is attached hereto as Exhibit T and incorporated by reference. In connection with the $5,200,000 Secured Promissory Note, Londonderry and Marbella each executed and delivered a Deed Of Trust And Assignment Of Rents, recorded on April 23, 2018 as instrument numbers 2018-08389829 and 2018-0389830, true and correct copies of which are attached collectively hereto as Exhibit U and incorporated by reference, securing the obligation to repay the $5,200,000 Secured Promissory Note with the Stone Ridge and Londonderry Property.

31.    On September 18, 2019, Crestlloyd, Marbella, Londonderry and Yogi Securities entered into a Fourth Amendment Of Note And Deed Of Trust (the "Fourth Amendment") relating to the $5,200,000 Secured Promissory Note, which Fourth Amendment was recorded on September 23, 2019 as instrument number 2019-0989745, a true and correct copy of which is attached hereto as Exhibit V and incorporated by reference. Concurrently with the execution of the Fourth Amendment, Crestlloyd executed and delivered a Deed Of Trust And Assignment Of Rents recorded on September 23, 2019 as instrument number 2019-0989746, a true and correct copy of which is attached hereto as Exhibit W and incorporated by reference. The Fourth Amendment and the Deed Of Trust And Assignment Of Rents added the Property as further security for repayment of the $5,200,000 Secured Promissory Note.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

32.    On October 22, 2019, Marbella, Londonderry, Crestlloyd, Carcassonne, Bellagio and Yogi Securities entered into a Fifth Amendment Of Note And Deed of Trust ("Fifth Amendment") relating to the $5,200,000 Secured Promissory Note, as amended, which Fifth Amendment was recorded on October 28, 2019 as instrument number 2019-1154393, a true and correct copy of which is attached hereto as Exhibit X and incorporated by reference. Concurrently with the execution of the Fifth Amendment, Carcassonne and Bellagio each executed and delivered a Deed Of Trust And Assignment Of Rents, recorded on October 28, 2019 as instrument numbers 2019-1154392 and 2019-1154391, respectively, true and correct copies of which are attached collectively hereto as Exhibit Y and incorporated by reference. The Fifth Amendment and the two Deeds Of Trust And Assignments Of Rents added the Carcassonne Property and Bellagio Property as further security for repayment of the $5,200,000 Secured Promissory Note.

33.    As of October 22, 2019, Crestlloyd's obligation to repay Yogi Securities under the $5,200,000 Secured Promissory Note was secured by the Property, the Londonderry Property, the Stone Ridge Property, the Bellagio Property and the Carcassonne Property, and Crestlloyd's obligation to repay Yogi Securities under the $30,133,235 Promissory Note was secured by the Properties.

**C.    The Alleged Hankey Funding And The Interrelationship Between The Hankey Funding And The Increased Yogi Securities Funding**

34.    In approximately September of 2018, Crestlloyd needed substantial funding to complete construction of improvements to the Property.

35.    Accordingly, Crestlloyd entered into an agreement with Hankey to borrow $82,500,000 as a construction loan for the Property and Crestlloyd entered into an agreement with Yogi Securities, pursuant to which Yogi Securities increased its previous loans of then $2,440,125 and $17,499,900 to $30,188,235 as set forth in paragraph 24 above and as reflected in the $30,188,235 Promissory Note.

36.    As confirmed by a series of telephone calls over many days between representatives of Crestlloyd and Yogi Securities (of which Hankey was aware) and between Crestlloyd and Hankey (of which Yogi Securities was aware), Yogi Securities knew that Hankey and Crestlloyd

122990391\V-6

had agreed that Hankey would loan $82,500,000 to Crestlloyd (the "$82,500,000 Construction Loan Agreement") on condition that Hankey would be in first position on the Property, ahead of Yogi Securities, and Yogi Securities agreed with Crestlloyd that Yogi Securities would increase its loan to $30,188,235 with the understanding that Yogi Securities would reconvey its lien on the Property recorded in connection with the $17,499,900 Promissory Note and subordinate its new lien on the Property in regard to the $30,188,235 Promissory Note, so as to be in second position on the Property behind Hankey.

37.    In accordance with the agreements entered into between Crestlloyd and Yogi Securities and between Crestlloyd and Hankey as set forth in paragraph 36 above:

- Hankey and Yogi Securities both knew that Yogi Securities was making a loan to Crestlloyd at the same time Hankey was making a loan to Crestlloyd;

- Hankey and Yogi Securities both knew that Yogi Securities would reconvey its new deed of trust on Yogi Securities' $17,499,900 Promissory Note so that Hankey's lien against the Property could be in first position;

- Hankey and Yogi Securities both knew that Yogi Securities would record Yogi Securities' deed of trust against the Property in connection with its $30,188,235 Promissory Note after Hankey recorded Hankey's deed of trust in connection with Hankey's $82,500,000 Construction Loan Agreement, Yogi Securities thereby subordinating its new lien to Hankey's new lien;

- Hankey and Yogi Securities both knew that Yogi Securities was recording its lien after Hankey recorded its lien on the basis that Hankey's loan to Crestlloyd was a "construction loan" that would be used to construct improvements to the Property; and

- At the time Yogi Securities entered into the $30,188,235 Promissory Note, Yogi Securities understood that Hankey would control disbursements to pay for construction of improvements to the Property, and Yogi Securities confirmed -- by being repeatedly informed by Crestlloyd personnel while the disbursements were occurring -- that Hankey completely controlled and approved the disbursements,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

12

1    and Hankey scrutinized and approved each disbursement through Hankey's own

2    personnel, and subsequently a third party vendor, Plus Development.

3        38.    Pursuant to Crestlloyd's agreements with Yogi Securities and Crestlloyd's

4    agreements with Hankey, as set forth in paragraphs 36 and 37 above, including Yogi Securities'

5    agreement to reconvey its deed of trust on the Property on the $17,499,900 Promissory Note and

6    its agreement to record its deed of trust on the $30,188,235 Promissory Note after Hankey recorded

7    its deed of trust on its $82,500,000 Construction Loan Agreement:

8        • Yogi Securities recorded on November 1, 2018, as instrument number 2018-

9            1110437, a Substitution Of Trustee And Full Reconveyance dated October 13, 2018,

10           a copy of which is attached hereto as Exhibit Z and incorporated by reference, which

11           reconveyed Yogi Securities' Deed Of Trust And Assignment Of Rents, recorded on

12           May 29, 2018 as instrument number 2018-0527856 (Exhibit M hereto) that had been

13           previously recorded against the Property in connection with the $17,499,900

14           Promissory Note; and

15       • Yogi Securities recorded its Deed Of Trust And Assignment Of Rents (the "11/7/18

16           Yogi Deed Of Trust") on November 7, 2018, as instrument number 2018-1126580

17           in regard to Yogi Securities' $30,235,188 Promissory Note, one day after Hankey

18           recorded its Deed Of Trust/Security Agreement And Fixture Filing With

19           Assignment Of Rents (the "11/6/18 Hankey Deed Of Trust") on November 6, 2020

20           as instrument number 2018-1122917 in regard to its $82,500,000 Construction Loan

21           Agreement.

22       39.    Pursuant to Crestlloyd's agreemenst with Yogi Securities and Crestlloyd's

23   agreements with Hankey, as set forth in paragraphs 36, 37 and 38 above, including Hankey's

24   understanding that Yogi Securities would execute a reconveyance on its lien in regard to its

25   $17,499,900 Promissory Note and the 11/7/18 Yogi Deed Of Trust on Yogi Securities' new

26   $30,188,235 Promissory Note would be recorded after Hankey recorded the 11/6/18 Hankey Deed

27   Of Trust on Hankey's $82,500,000 Construction Loan Agreement:

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

13

122990391\V-6

- Hankey and Crestlloyd entered into the $82,500,000 Construction Loan Agreement on October 25, 2018, a true and correct copy of which is attached hereto as Exhibit AA and incorporated by reference, a purpose of which was to fund the construction of improvements to the Property.

- In connection with the $82,500,000 Construction Loan Agreement, Crestlloyd executed and delivered to Hankey a $82,500,000 Promissory Note dated October 25, 2018, a true and correct copy of which is attached hereto as Exhibit BB and incorporated by reference.

- Hankey and Crestlloyd executed on October 25, 2018, a Security Agreement (Personal Property), a true and correct copy of which is attached hereto as Exhibit CC and incorporated by reference, and as Exhibit A to that agreement, a Profit Participation Agreement (the "October 2018-PP Agreement"), a true and correct copy of which is attached hereto as Exhibit DD and incorporated by reference. The October 2018-PP Agreement provided that Hankey would receive $3,500,000 if the Property sold for more than $200,000,000.

- A Memorandum Of Agreement (the "2018 Memorandum Of Agreement") reflecting the October 2018-PP Agreement was recorded on November 6, 2018 as instrument number 2018-1122919, a true and correct copy of which is attached hereto as Exhibit EE and incorporated by reference.

- Crestlloyd entered into as of October 25, 2018, the 11/6/18 Hankey Deed Of Trust (as already noted, purportedly secured by the Property, recorded on November 6, 2018 as instrument number 2018-1122917), a true and correct copy of which is attached hereto as Exhibit FF and incorporated by reference.

40.    In summary: in accordance with Crestlloyd's agreements with Yogi Securities and Crestlloyd's agreements with Hankey as set forth above, Yogi Securities' $30,188,235 Promissory Note (Exhibit N hereto) was executed on October 16, 2018, before Hankey's $82,500,000 Construction Loan Agreement (Exhibit AA hereto) was executed on October 25, 2018; and the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

11/7/18 Yogi Deed Of Trust was recorded on November 7, 2018 (Exhibit O hereto), one day after the 11/6/18 Hankey Deed Of Trust was recorded on November 6, 2018 (Exhibit FF hereto).

41.    In connection with the $82,500,000 Construction Loan Agreement, Hankey and Inferno entered into a Subordination Agreement, pursuant to which Hankey and Inferno agreed that the Inferno Deed Of Trust (ExhibitB hereto) is subordinate to the Hankey 11/6/18 Deed Of Trust (Exhibit FF hereto). A true and correct copy of the Subordination Agreement, recorded on November 6, 2018 as instrument number 2018-1122920, is attached hereto as Exhibit GG and incorporated by reference. On or about May 26, 2022, more than three years after the Subordination Agreement was recorded, Inferno asserted that the Subordination Agreement was forged.

42.    Hankey then twice increased its loan to Crestlloyd, intentionally failing to notify Yogi Securities and/or obtain Yogi Securities' consent before the additional loans were funded by Hankey to Crestlloyd.

43.    On or about December 10, 2019, Hankey agreed with Crestlloyd to loan additional funds to Crestlloyd, which Hankey asserts increased the principal balance of Hankey's loan to Crestlloyd from $82,500,000 to $91,000,000.

44.    More specifically, on December 10, 2019, Crestlloyd executed and delivered to Hankey an Amended And Restated Promissory Note (the "December 2019 Hankey Note") for the increased sum of $91,000,000, a copy of which is attached hereto as Exhibit HH and incorporated by reference. In connection with the December 2019 Hankey Note, Hankey and Crestlloyd, as of December 10, 2019, entered into a written First Modification Of Construction Loan Agreement and a Modification Of Deed Of Trust to secure repayment of the increased funding amount, copies of which are attached hereto as Exhibits II and JJ and incorporated by reference.

45.    Also as of December 10, 2019, in connection with the December 2019 Hankey Note transaction, Hankey and Crestlloyd entered into a second Profit Participation Agreement (the "December 2019-PP Agreement"), whereby in connection with the then purportedly increased amount of the loan from Hankey to Crestlloyd (from $82,500,000 to $91,000,000), increased Hankey's profit participation from the sale of the Property from $3,500,000 to $8,500,000 if the Property sold for more than $200,000,000, which in and of itself was an incentive for Hankey to

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

15

increase its loan to Crestlloyd. A copy of the December 2019-PP Agreement is attached hereto as Exhibit KK and incorporated by reference.

46.    Hankey made the decision not to record any documents in regard to, and not to disclose to Yogi Securities and/or Inferno Investments, the increase in the amount of the Hankey loan or the profit participation, so as to conceal and not to inform Yogi Securities and/or Inferno Investments of the increases. No documents were recorded in connection with the December 2019 Hankey Note or the December 2019-PP Agreement: there was no notice of the increased $91,000,000 loan, including Hankey's decision not to record the Modification Of Deed Of Trust (Exhibit JJ hereto) executed by Crestlloyd at Hankey's request in connection with the increase of Hankey's loan to $91,000,000, and there was no notice of the increase in profit participation, including no recordation of a memorandum of agreement (or any other document).

47.    At no time did Yogi Securities agree to subordinate its secured position to the December 2019 Hankey Note transaction, the December 2019-PP Agreement or any other additional loan made by Hankey to Crestlloyd.

48.    On or about August 20, 2020, Hankey agreed with Crestlloyd to loan yet additional funds to Crestlloyd, which Hankey asserts increased the principal balance of Hankey's loan to Crestlloyd from $91,000,000 to $106,000,000.

49.    More specifically, on August 20, 2020, Crestlloyd executed and delivered to Hankey an instrument known as the Amended And Restated Promissory Note (the "August 2020 Hankey Note") for the principal sum of $106,000,000, a copy of which is attached hereto as Exhibit LL and incorporated by reference. In connection with the August 2020 Hankey Note, Hankey and Crestlloyd entered into a written instrument known as the Second Modification Of Construction Loan Agreement, a copy of which is attached hereto as Exhibit MM and incorporated by reference. Crestlloyd also executed a second Modification Of Deed Of Trust, recorded on August 31, 2020 as instrument number 2020-1030024, a true and correct copy of which is attached hereto as Exhibit NN and incorporated by reference.

50.    As of August 20, 2020, in connection with the August 2020 Hankey Note, Hankey and Crestlloyd entered into a third Profit Participation Agreement (the "August 2020-PP

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Agreement"). A Memorandum Of Agreement (the "2020 Memorandum of Agreement") reflecting the August 2020-PP Agreement was recorded on August 31, 2020 as instrument number 2020-01030294. A copy of the August 2020-PP Agreement and a true and correct copy of the 2020 Memorandum Of Agreement are attached hereto as Exhibits OO and PP and incorporated by reference.

51.    Hankey made the decision to conceal and not to inform Yogi Securities or Inferno Investments of the second increase in the amount of the Hankey loan *before* the increased loan was funded or the third profit participation agreement was executed.

52.    At no time did Yogi Securities agree to subordinate its secured position to the August 2020 Hankey Note transaction, the August 2020 PP-Agreement or any other additional advances made by Hankey to Crestlloyd.

53.    Neither a consent agreement nor a subordination agreement or any other document was executed by Yogi Securities permitting, authorizing and/or acknowledging the Hankey/ Crestlloyd December 2019 Hankey Note transaction, the August 2020 Hankey Note transaction, the December 2019-PP Agreement or the August 2020 PP-Agreement. Yogi Securities was not informed of the transactions before they occurred and never consented to them.

54.    Recognizing Hankey's failure to seek Yogi Securities' execution of a subordination agreement and/or notify Yogi Securities of the two increases to Hankey's $82,500,000 loan, Don Hankey of Hankey met with Joseph Englanoff of Yogi Securities on or about December 1, 2020 to discuss the status of the Property and the fact that Hankey's loan to Crestlloyd now exceeded $106,000,000. During that meeting, Mr. Hankey asked Mr. Englanoff for Yogi Securities to execute a subordination agreement, Mr. Hankey stating to Mr. Englanoff words to the effect: "We messed up." Yogi Securities refused to execute a subordination agreement. Following this meeting, Hankey continued to request Yogi Securities to execute a subordination agreement, presenting to Yogi Securities a draft subordination agreement on or about February 23, 2021, a copy of which is attached as Exhibit QQ and incorporated by reference. Yogi Securities never executed this or any other subordination agreement.

122990391\V-6

**D.**     **The Construction Loan Agreement**

55.     The provisions of the $82,500,000 Construction Loan Agreement (Exhibit AA hereto) and Exhibit D attached to the $82,500,000 Construction Loan Agreement set forth detailed procedures pursuant to which Hankey could control, supervise and approve the disbursement of funds intended to finance the construction of improvements to the Property.

56.     The purpose of the $82,500,000 Construction Loan Agreement (Exhibit AA hereto) was to fund improvements to the Property, as set forth in Recitals A and B and in Section 2.1 of that Agreement:

> A. Borrower owns or will own certain real property described in EXHIBIT A hereto ("Property").
>
> B. Borrower proposes to construct new improvements or renovate existing improvements on the Property consisting of a single family residence, together with all appurtenances, fixtures, and tenant improvements now or hereafter located on the Property ("Improvements"). *The Improvements shall be constructed in accordance with plans and specifications which Borrower has heretofore, or will hereafter deliver to Lender,* as amended in order to comply with the terms and conditions of this Agreement ("Plans and Specifications"), *Borrower has requested from Lender a loan for the purpose of such construction.*
>
> 2.1. Loan. By and subject to the terms of this Agreement, Lender agrees to lend to Borrower and Borrower agrees to borrow from Lender the principal sum of EIGHTY-TWO MILLION, FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($82,500,000.00), said sum to be evidenced by the Note of even date herewith . . . *Amounts disbursed to or on behalf of Borrower pursuant to the Note shall be used to purchase and finance the construction of the Property and Improvements* and for such other purposes and uses as may be permitted under this Agreement and the other Loan Documents.

[Emphasis added.]

57.     The $82,500,000 Construction Loan Agreement gave Hankey preapproval of design and construction budgets for the improvements, as evidenced by the approval language referenced the following definitions within the $82,500,000 Construction Loan Agreement:

> *"Deemed Approval Matter" - means any matter requiring the consent of Lender under the Loan Documents including, without limitation, the following: (1) contracts for which Lender approval is required hereunder, as contemplated in Sections 4.4 and 4.5, (2) Plans and Specifications and changes thereto for which Lender approval is required hereunder, as contemplated in Section 4.6, (3) Borrower's contracting for any materials, furnishings, equipment, fixtures or other parts or components of the Improvements in which any third party will retain any interest for which Lender approval is required hereunder, as contemplated in Section 4.8 . . .*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

18

*"Disbursement Budget"* - means the design and construction budget for the Improvements, as approved by Lender from time to time.

"Lender Payment Turnaround Period" - means, *provided that Borrower delivers the applicable application for payment to Lender* under cover of a written notice stating in bold, all-capitalized letters what the outside date for such Lender Payment Turnaround Period is for that specific application for payment, ten (10) calendar days.

[Emphasis added.]

58.    Hankey's controlled disbursement of loan proceeds was subject to conditions precedent set forth in Article 3 of the $82,500,000 Construction Loan Agreement, including the following provisions:

### ARTICLE 3. DISBURSEMENT

3.1. Conditions Precedent. *Lender's obligation to make any disbursements or take any other action under the Loan Documents shall be subject at all times to satisfaction of each of the following conditions precedent:*

\*        \*        \*

(b) Any undisbursed Loan funds together with all sums, if any, to be provided by Borrower, shall be at all times equal to or greater than the amount *which Lender from time to time reasonably determines necessary to:* (i) pay, through completion, all costs of renovation, development, construction, operation, marketing and sale or leasing of the Property and Improvements in accordance with the Loan Documents; (ii) pay all sums which may accrue under the Loan Documents prior to repayment of the Loan; and (iii) enable Borrower to perform and satisfy all of the covenants of Borrower contained in the Loan Documents. *If Lender reasonably determines at any time that the undisbursed Loan funds are insufficient for said purposes, Lender may deliver to Borrower written notice demanding that Borrower then deposit funds equal to such deficiency in the Borrower's Funds Account* (an "Out of Balance Notice"), in which event Borrower shall deposit the amount of such deficiency in the Borrower's Funds Account within thirty (30) days after the date of delivery of the applicable Out of Balance Notice; and

(c) *Lender shall have received all Loan Documents, other documents, instruments, policies, and forms of evidence or other materials requested by Lender under the terms of this Agreement or any of the other Loan Documents, including, without limitation, such forms of estoppel certificates and subordination, non-disturbance and attornment agreements as Lender may then require from existing tenants of the Property; and*

(d) *Lender acknowledges that it has received and approved in form and substance satisfactory to Lender: (i) a soils report for the Property and Improvements; (ii) an environmental questionnaire and environmental site assessment with respect to the presence, if any, of Hazardous Materials on the Property and Improvements; (iii) two set of the Plans and Specifications (or if* the Plans and Specifications for the entirety of the Improvements are not then complete or some portion of the Improvements are to be constructed using a design/build

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

process, in either such case pursuant to partial Plans and Specifications approved by Lender under the provisions of Section 4.6 of this Agreement and for which a valid building permit has been issued, then such portion of the Plans and Specifications to the extent that payment for such portion of the Improvements is to be covered by a current disbursement request), *together with evidence of all necessary or appropriate approvals of governmental agencies; (iv) copies of all agreements which are material to completion of the Improvements; (v) copies of all building permits and similar permits, licenses, approvals, development agreements and other authorizations of governmental agencies required in connection with the development of the Property and Improvements*, or, if such approvals are to be issued on a staged basis, then for the current and all prior stages of development, *provided that such staged development has been approved by Lender, as contemplated in Section 4.6;* and (vi) copies of any initial study, negative declaration, mitigated negative declaration, environmental impact report, notice of determination or notice of exemption prepared, adopted, certified or filed by any governmental agency in connection with the Property; and

(e) *Lender shall have received and approved the Disbursement Budget.*

3.2. Account, Pledge and Assignment, and Disbursement Authorization. The proceeds of the Loan and Borrower's Funds, when qualified for disbursement, shall be deposited into an account to be designated by Borrower or otherwise disbursed to or for the benefit or account of Borrower under the terms of this Agreement. *Disbursements hereunder may be made by Lender upon the written request of any person who has been authorized by Borrower to request such disbursements* until such time as written notice of Borrower's revocation of such authority is received by Lender at the address shown in EXHIBIT D.

3.3. Borrower's Funds Account, Pledge and Assignment. Except as otherwise provided in this Agreement, all of the Borrower's Funds which are deposited with Lender by Borrower as shown in EXHIBIT C, or any other provision of the Loan Documents, shall be placed in the Borrower's Funds Account for disbursement under this Agreement. As additional security for Borrower's performance under the Loan Documents, *Borrower hereby irrevocably pledges and assigns to Lender the Borrower's Funds Account and all monies at any time deposited in the Borrower's Funds Account.*

3.4. Loan Disbursements. Subject to the conditions set forth in Section 3.1(b), *the proceeds of the Loan and Borrower's Funds shall be disbursed in accordance with the terms and conditions of EXHIBIT D.* Disbursements made after the deposit of Borrower's Funds shall be made first from the Borrower's Funds Account until depleted. *All disbursements shall be held by Borrower in trust and applied by Borrower solely for the purposes for which the funds have been disbursed.* Lender has no obligation to monitor or determine Borrower's use or application of the disbursements. Partial disbursements shall be permitted under the terms and subject to the conditions set forth in EXHIBIT D.

3.5. Working Capital. From time to time, in Borrower's Applications for Payment, Borrower may request the disbursement of proceeds of the Loan and Borrower's Funds into the Working Capital Reserve Account to maintain the balance of the Working Capital Reserve Account at the amount specified in the Disbursement Budget, provided that *amounts in the Working Capital Reserve Account may only be used to pay reasonable costs of the design or construction of the Improvements, and that Borrower shall have delivered the monthly*

*reports with respect to the Working Capital Reserve Account that are required under the provisions of Section 10.1 of this Agreement for all prior months.* As additional security for Borrower's performance under the Loan Documents, *Borrower hereby irrevocably pledges and assigns to Lender the Working Capital Reserve Account* and all monies at any time deposited in the Working Capital Reserve Account.

[Emphasis added.]

59.     The disbursement plan of the $82,500,000 Construction Loan Agreement, as set forth in Exhibit D to the Agreement, states:

A. Timing Of Disbursement: Unless another provision of this Agreement specifies otherwise, on or before the fifteenth (15th) day of each month, *Borrower shall submit to . . . with a copy to . . . a written itemized statement, signed by Borrower* ("Application for Payment") setting forth:

1. A description of the work performed, material supplied and/or costs incurred or due for which disbursement is requested with respect to any line item ("Item") shown in the Disbursement Budget. Notwithstanding the amount of any line item shown in the Disbursement Budget, Borrower may reallocate amounts among the line items by allocating cost savings in any line item to Contingency, and amounts from the Contingency to any line item with a cost overrun; provided, however, that the aggregate amount of all disbursements under the Loan shall not exceed the Loan amount; and

2. *The total amount incurred, expended and/or due for each requested Item less prior disbursements.*

Each Application for Payment by Borrower shall constitute a representation and warranty by Borrower that Borrower is in compliance with all the conditions precedent to a disbursement specified in this Agreement. With respect to Borrower's remaking of the representations and warranties set forth in Article 6 of this Agreement on the date of submission of each Application for Payment, to the extent circumstances have changed for reasons beyond the reasonable control of Borrower such that Borrower must qualify such representations and warranties as of the date of delivery of any such Application for Payment, such qualification, to the extent it renders the applicable representation materially untrue or breaches the applicable warranty, shall merely be a failure of condition to Lender's obligation to disburse funds under the provisions of this EXHIBIT D, as opposed to constituting an Event of Default.

B. Lender's Right to Condition Disbursements. *Lender shall have the right to condition any disbursement upon Lender's receipt in the appropriate form of the following submissions and Lender's reasonable determination that such submissions comply with the requirements set forth below:*

1. *The Application for Payment and an itemized requisition for payment;*

2. *Bills, invoices, documents of title, vouchers, statements, receipts and any other documents evidencing the total amount expended, incurred or due for any requested Items;*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

21

3. *Evidence of Borrower's use of a lien release, joint check and voucher system acceptable to Lender* for payments or disbursements to any contractor, subcontractor, materialman, supplier or lien claimant;

4. *Architect's, inspector's and/or engineer's periodic certifications of the percentage and/or stage of construction that has been completed and its conformance to the Plans and Specifications and governmental requirements* based upon any such architect's, inspector's and/or engineer's periodic physical inspections of the Property and Improvements;

5. *Waivers and releases of any mechanics' lien, stop notice claim, equitable lien claim or other lien claim rights* (conditional for costs to be paid from the current Application for Payment, and unconditional for all prior costs which have been disbursed by Lender by the twenty-fifth (25th) day of the immediately preceding month or were to have been paid from Borrower's own funds under the Disbursement Budget);

\*      \*      \*

10. *Any other document, requirement, evidence or information that Lender may have reasonably requested* under any provision of the Loan Documents at least thirty (30) days prior to the Application for Payment in question; and

11. Except with respect to items covered under #12 and #13 below, *evidence that any goods, materials, supplies, fixtures or other work in process for which disbursement is requested have been incorporated into the Improvements.*

12. *In the event any Application for Payment includes the cost of materials stored at a location other than the Property ("Offsite Materials"), each of the following: (a) evidence that the Offsite Materials have been purchased by Borrower, have been segregated from other materials in the facility and have been appropriately marked to indicate Borrower's ownership thereof and Lender's security interest therein; and (b) evidence that the Offsite Materials are insured* as required by this Agreement.

13. *In the event that any Application for Payment includes the cost of materials stored on the Property ("Onsite Materials"), each of the following: (a) evidence that the Onsite Materials have been purchased for or by Borrower; (b) evidence that the Onsite Materials are insured as required hereunder; and (c) evidence that the Onsite Materials are stored in an area on the Property for which adequate security is provided* against theft and vandalism.

\*      \*      \*

C. Periodic Disbursement of Construction Costs, Site Work Costs and Offsite Costs. As construction progresses, *the amount of the retention* as provided under any construction contract to which Borrower is a party (the "Retention") *shall be disbursed* into the Account or to or for the benefit or account of the Borrower, Property or Improvements *upon Borrower's delivery to Lender of (1) the applicable lien releases specified above in Paragraph B.8 of this EXHIBIT D, (2) the applicable certificate specified above in Paragraph B.9 of this EXHIBIT D and (3) solely with respect to the Construction Contract, a duly issued temporary certificate of occupancy for the Improvements and completion of the Improvements* in accordance with the Plans and Specifications.

D. Partial Disbursements. *No disbursement shall be made for a particular Application for Payment unless all required supporting materials are included*

122990391\V-6

*for Items totaling at least sixty-five percent (65%) of the total amount of funds requested thereunder. Subject to the foregoing, to the extent that an unconditional lien release and waiver for an Item that was included in a prior disbursement is not delivered to Lender prior to the date that Lender approves the subsequent disbursement, Lender may withhold from the then current approved disbursement an amount equal to one hundred fifty percent (150%) of the amount for the Item(s) which had been previously funded.* Thereafter, such withheld amount shall be disbursed as part of the next ensuing disbursement upon Lender's receipt of the missing unconditional lien release and waiver.

E. Timing of Disbursements. *Lender shall exercise diligent and good faith efforts to disburse funds for all approved Items in any Application for Payment within the Lender Payment Turnaround Period.*

[Emphasis added.]

60.     The "Applications for Payment" provisions in Article 6 of the $82,500,000 Construction Loan Agreement required Crestlloyd's ongoing representations and warranties to Hankey, including confirmation that $82,500,000 was sufficient to complete the improvements on the Property:

As a material inducement to Lender's entry into this Agreement, Borrower represents and warrants to Lender as of the Effective Date and as of the date of each Application for Payment is submitted to Lender pursuant to EXHIBIT D . . . that:

*            *            *

6.9. Loan Proceeds and Adequacy. The undisbursed Loan proceeds, together with Borrower's Funds and all other sums, if any, to be provided by Borrower as shown in EXHIBIT C, are sufficient to construct the Improvements in accordance with the terms and conditions of this Agreement.

6.10 Accuracy. All reports, documents, instruments, information and forms of evidence delivered to Lender concerning the Loan or security for the Loan or required by the Loan Documents are accurate, correct and sufficiently complete to give Lender true and accurate knowledge of their subject matter, and do not contain any material misrepresentation or omission.

61.     The extent of Hankey's involvement with the construction of improvements on the Property extended beyond review and approval of payment applications for the disbursement of loan proceeds, such as to require pre-approval of revisions to Plans and Specifications and inspection rights as set forth in the following provisions of the $82,500,000 Construction Loan Agreement:

4.6. Plans and Specifications

(a) Changes, Lender Consent. *If the Plans and Specifications contemplate staged design and construction, and if Lender has approved Plans and Specifications that contemplate that certain stages will be designed in the future,*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*then any stages of such Plans and Specifications that have not been approved by Lender as of the date of this Agreement* <u>*shall*</u> *be subject to Lender's prior written approval,* which consent shall not be unreasonably withheld, conditioned or delayed. Except as otherwise provided in this Agreement, *Borrower shall not make any changes in the Plans and Specifications or the Improvements without Lender's prior written consent* if such change, taken together with all other changes for which Lender's approval was not required hereunder, could materially affect the overall quality or efficiency of the improvements or the Improvements' exterior, lobbies or building systems. Without limiting the above, Lender agrees that Borrower may make minor changes in the Plans and Specifications and Improvements without Lender's prior written consent, provided that such changes do not violate any of the conditions specified herein . . . *Borrower shall at all times maintain, for inspection by Lender, a set of working drawings of the Improvements, which, if there is staged design that has not yet occurred, if applicable, shall at least cover the portions of the Improvements completed* and under construction or fully designed at such time

(b) Changes; Submission Requirements. *Borrower shall submit any proposed change in the Plans and Specifications requiring Lender's consent to Lender prior to the commencement of construction relating to such proposed change, at least ten (10) Business Days prior to the commencement of construction. Requests for any change which requires consent shall be accompanied by working drawings (or appropriate submittals) and a written description of the proposed change, submitted on a change order form acceptable to Lender, signed by Borrower and, if required by Lender, also by the Contractors.* At its option, Lender may require Borrower to provide: (i) evidence satisfactory to Lender of the cost and time necessary to complete the proposed change; and (ii) a deposit in the amount of any increased costs into Borrower's Funds Account.

(c) Consent Process. Borrower acknowledges that Lender's review of any changes and required consent may result in delays in construction and hereby consents to any such delays. Nevertheless, Lender shall use commercially reasonable efforts to respond to requests for approval within the time periods provided in this Agreement . . .

[Emphasis added.]

62.    Hankey's control was further increased with Crestlloyd's execution of the First Modification Of Construction Loan Agreement (Exhibit II hereto, page.2, 1.1) providing Hankey even more rights:

2.9 Funds Control. Until such time as the Loan has been paid in full, Borrower shall allow Lender's funds control agent weekly access to the Property so as to facilitate the processing of loan advances.

63.    Despite language in the $82,500,000 Construction Loan Agreement that "Lender has no obligation to monitor or determine Borrower's use or application of the disbursements," Yogi Securities alleges -- based on multiple telephone calls with Crestlloyd personnel while the disbursements were being requested and funded over many months -- that Hankey completely

controlled, scrutinized and approved disbursements to Crestlloyd through Hankey personnel and/or through a third party agency retained by Hankey, Plus Development, but failed to monitor and/or control all disbursements, as confirmed to Yogi Securities by at least two vendors, confirming that not all funds disbursed to Crestlloyd were used for construction of improvements to the Property.

64.      Attached hereto as Exhibit RR and incorporated by reference is a chart itemizing disbursements to Crestlloyd that may not have been, or were not, used for construction of improvements to the Property. Exhibit RR is based on a "Client Trust Ledger," which is attached hereto as Exhibit SS and incorporated by reference, prepared by Hankey regarding disbursements to Crestlloyd in connection with the Hankey $82,500,000 Construction Loan Agreement (Exhibit AA hereto).

65.      At least the following amounts, among others, appear not to be for construction of improvements to the Property:

- A payment of $74,389.56 on November 14, 2018, for "Nile Travel" referencing "Miscellaneous."

- A payment of $25,000 on December 19, 2019 for "Sales Office/Supplies/ Furnishings."

66.      In addition, further information is needed as to which of Hankey's disbursements to Crestlloyd were used for construction of improvements to the Property, and which disbursements to Crestlloyd were used by Nile Niami (Crestlloyd's principal) for other projects, including, *but not limited to*:

- Payments totaling $482,810 for Skyline for "Overhead Payroll."

- Payments totaling $640,021.44 to Skyline for "Project Management Fee."

- Payments totaling $710,583.20 to Skyline for "Other Labor."

- Payments totaling $5,918,013.46 for furniture.

- Payments totaling $5,671,406.88 for audio-visual.

- Payments totaling $1,020,000 for electrical.

67.      In addition, based on Yogi Securities' multiple telephone calls with Crestlloyd personnel that took place while the disbursements were being requested and funded over many

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

months, in the later phases of construction of improvements to the Property, Hankey failed to timely make some disbursements and refused to make other disbursements that should have been approved.

**E.    The Hilldun Loan**

68.    Yogi Securities is informed and believes that on or about April 13, 2017, N. Philanthropy and Crestlloyd, as guarantor, entered into a factoring agreement in favor of Hilldun, pursuant to which Crestlloyd executed and delivered a $5,000,000 guaranty in favor of Hilldun. The guaranty was purportedly secured by the Property pursuant to a Deed Of Trust, Assignment Of Rents, Security Agreement And Fixture Filing, recorded on September 4, 2020 as instrument number 2020-1058770, a true and correct copy of which is attached hereto as Exhibit TT and incorporated by reference.

<strong>THE SALE OF THE PROPERTIES</strong>

69.    Between February 7, 2020 and July 9, 2021, the Hillcrest Property, the Stone Ridge Property, the Londonderry Property, the Bellagio Property and the Carcassonne Property were sold. From the proceeds of the sales of the Hillcrest, Bellagio, Carcassonne and Londonderry Properties, $15,240,346.44 was applied to reduce the obligation on Yogi Securities' $30,188,235 Secured Promissory Note, as amended.

70.    In addition, from the sale of the Hillcrest Property, Yogi Securities received $6,436,536.37 which, at the direction of Crestlloyd, was used to pay off in full the $5,200,000 Secured Promissory Note, resulting in Yogi Securities' execution and recording of a Substitution Of Trustee And Deed Of Full Reconveyance for each Deed Of Trust And Assignment Of Rents that secured repayment of the $5,200,000 Secured Promissory Note. The Substitutions Of Trustee And Deeds Of Full Reconveyance eliminating the lien against the Property and eliminating the lien against the Carcassonne Property, the Londonderry Property, the Stone Ridge Property and the Bellagio Property were recorded on January 14, 2021 as instrument numbers 2021-0076458, 2021-0076455, 2021-0076456, 2021-0076457, and 2021-0076459, true and correct copies of which are attached collectively hereto as Exhibit UU and incorporated by reference.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

**THE BANKRUPTCY**

71.    On October 26, 2021, the Debtor filed in this Court its voluntary petition under Chapter 11 of the Bankruptcy Code.

72.    Yogi Securities and Hankey, Inferno and Hilldun have filed the following Proofs Of Claims in the Bankruptcy Case:

a.    As it pertains to the Property, Inferno filed secured Proof of Claim No. 11 in the amount of $20,902,106.12 based on various recorded instruments, including the Inferno Deed of Trust, the Assignment To Inferno, and the Supplemental Inferno Deed Of Trust, as set forth in the Proof of Claim.

b.    As it pertains to the Property, Hankey filed three secured claims: (1) Proof of Claim 17 in the amount of $3,500,000, based on the October 2018-PP Agreement and the 2018 Memorandum of Agreement as set forth in the Proof of Claim; (2) Proof of Claim 18 in the amount of $5,000,000, based on the August 2020-PP Agreement and the 2020 Memorandum of Agreement as set forth in the Proof of Claim; and (3) Proof of Claim 20, in the amount of $122,638,623.41, based on a Construction Deed Of Trust, Security Agreement And Future Filing With Assignment Of Rents and a Modification Of Deed Of Trust as set forth in Proof of Claim 20 ("Hankey's Proof of Claim"). At least Claims 17 and 18 are not actually secured claims because neither the 2018 Memorandum of Agreement nor the 2020 Memorandum of Agreement, or the underlying October 2018-PP Agreement and August 2020-PP Agreement, created a lien or perfected a security interest against the Property or otherwise.

c.    As it pertains to the Property, Yogi Securities filed a secured Amended Proof of Claim 27, asserting a secured claim in the amount of $24,385,366.77 based on the Deed Of Trust And Assignment Of Rents, the Amendment Of Note And Deeds Of Trust and the Second Amendment Of Note And Deeds Of Trust as set forth in Yogi Securities' Proof of Claim 27 (the "Yogi Securities' Proof of Claim").

d.    As it pertains to the Property, Hilldun filed Proof of Claim 9, asserting a secured claim in the amount of $5,000,000 based on a deed of trust recorded in favor of Hilldun, as set forth in Hilldun's Proof of Claim.

122990391\V-6

**THE SALE OF THE PROPERTY**

73.     By order entered on March 28, 2022, the Court overruled objections to the sale of the Property and approved the sale of the Property for $126,000,000, plus $11,970,000 attributable to a rebate of the buyer's premium by Concierge Auctions (the "Rebate").

74.     From the proceeds of sale, the debtor-in-possession loan of Hankey to the Debtor (the "DIP Loan") was paid and certain Mechanic's Liens were paid, among other obligations.

75.     On March 3, 2022, Debtor filed a *Motion For Authority To Disburse Funds To Hankey Capital, LLC, A Senior Secured Creditor* [Docket No. 326], requesting authority to pay to Hankey the amount of $103,837,545.86. Yogi Securities and Inferno consented to the payment of $82,500,000, subject to a reservation of rights, in order to mitigate a potential claim for interest. By order entered on May 27, 2022, the Court authorized Debtor to pay Hankey $82,500,000 "without prejudice to any and all parties' rights to assert claims and defenses as may be appropriate, including but not limited to the right to claw back any portion of the monies paid."

**FIRST CLAIM FOR RELIEF**

COUNTERCLAIM AGAINST INFERNO FOR DECLARATORY RELIEF TO
THE EFFECT THAT INFERNO'S PURPORTED LIEN SHOULD BE
SUBORDINATED TO THE LIEN OF YOGI SECURITIES

76.     Yogi Securities repeats and realleges the allegations contained in paragraphs 1 to 75 hereof and incorporates them by reference as though set forth in full herein.

77.     This claim for relief seeks to obtain a Declaratory Judgment in accordance with Rule 7001(9),[2] seeking a determination as to the validity, priority and/ or extent of liens and/or the extent of secured interests in property in accordance with Rule 7001(2).

78.     As set forth in paragraph 12 above, on January 1, 2016, Crestlloyd and Inferno entered into the Memorandum whereby Crestlloyd and Inferno agreed that the proceeds from the sale of Property would be distributed:

> First to repay the loan(s) obtained from a bank or third-parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property].

---

[2] All references to a "Rule" are those of the Federal Rules of Bankruptcy Procedure.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

79.    Following execution of the Memorandum, Yogi Securities entered into loans with Crestlloyd as set forth above.

80.    Neither the Memorandum nor any of the Amendments contain any requirement that Crestlloyd must obtain Inferno's agreement for Crestlloyd to obtain loans secured by the Property.

81.    Under California Code of Civil Procedure § 106.0, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) and (9), a Court can and should determine the validity, priority and/or extent of the liens and/or the extent of the parties' secured interests on the Property involved in this First Claim For Relief.

82.    An actual controversy has arisen and now exists between Yogi Securities and Inferno, in that, among other things, Yogi Securities asserts that Inferno's purported secured lien has been subordinated to Yogi Securities' secured lien by reason of the Memorandum. Inferno disputes these contentions and contends to the contrary, asserting that Inferno's purported secured lien retains a priority higher than the secured lien of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties as to the existence and priority of liens between Yogi Securities and Inferno.

83.    Yogi Securities seeks a declaration from the Court to the effect that the entirety of Inferno's secured lien (if any) is subordinated to the entirety of the secured lien of Yogi Securities on the grounds that, among other reasons, the Memorandum places the payment of Yogi Securities' secured lien ahead of the payment of Inferno's purported secured lien.

**SECOND CLAIM FOR RELIEF**

COUNTERCLAIM AND CROSSCLAIM FOR AN ACCOUNTING FROM INFERNO AND CRESTLLOYD ON ALL DISBURSEMENTS FROM INFERNO TO CRESTLLOYD AND ON THE AMOUNT DUE FROM CRESTLLOYD TO INFERNO

84.    Yogi Securities repeats and realleges the allegations contained in paragraphs 1 to 75 hereof and incorporates them by reference as though set forth in full herein.

85.    Crestlloyd and Inferno entered into the transactions set forth in paragraphs 10 through 18 herein.

86.    Crestlloyd and Inferno should be required to provide an accounting of the disbursements made by Inferno to Crestlloyd, the repayments by Crestlloyd to Inferno, any

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

reductions of the amount due from Crestlloyd to Inferno, and an accounting as to the calculation of the amount due from Crestlloyd to Inferno, all with supporting documentation.

## THIRD CLAIM FOR RELIEF

### CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE EFFECT THAT THE ENTIRETY OF HANKEY'S PURPORTED LIEN SHOULD BE SUBORDINATED TO THE LIEN OF YOGI SECURITIES

87.     Yogi Securities repeats and realleges the allegations contained in paragraphs 1 to 75 hereof and incorporates them by reference as though set forth in full herein.

88.     This claim for relief seeks to obtain a Declaratory Judgment in accordance with Rule 7001(9), in connection with this adversary proceeding to determine the validity, priority and/ or extent of liens and/or the extent of a secured interests in property in accordance with Rule 7001(2).

89.     Hankey -- without notice to Yogi Securities -- substantially increased its $82,500,000 loan to $91,000,000, including the execution by Hankey and Crestlloyd of a Modification Of Deed Of Trust (Exhibit JJ hereto) that was **never recorded**, and the execution of a second Profit Participation Agreement (Exhibit KK hereto), of which a notice (*i.e.,* a "Memorandum Of Agreement") was **not recorded**.[3] The second Profit Participation Agreement increased Hankey's profit participation by another $5,000,000+ if the Property sold for $100,000,000 or more, increasing Hankey's potential profit participation to as much as $8,500,000 if the Property was sold for $200,000,000 based on the first and second Profit Participation Agreements (Exhibits DD and KK hereto).

90.     In connection with the increase of the loan to $91,000,000 and the second Profit Participation Agreement:

- Hankey made sure that the Hankey 11/06/18 Deed Of Trust (Exhibit FF hereto) was recorded as to the original $82,500,000 loan.

---

[3] A Memorandum Of Agreement (Exhibit OO hereto) was recorded after a third Profit Participation Agreement (Exhibit PP hereto) was executed on August 20, 2020.

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

- Hankey made sure that the second Modification Of Deed Of Trust (Exhibit NN hereto) was recorded on the subsequent second substantial increase of the loan to $106,000,000.

- *Hankey recorded nothing in connection with and at the time of the increase in the loan to $91,000,000 that occurred on or about December 10, 2019.*

- Hankey made sure that a Memorandum Of Agreement (Exhibit EE hereto) was recorded in connection with the first Profit Participation Agreement (Exhibit DD hereto).

- Hankey made sure that a Memorandum Of Agreement (Exhibit PP hereto) was recorded in connection with the third Profit Participation Agreement (Exhibit OO hereto).

- *Hankey recorded nothing in connection with and at the time of the second Profit Participation Agreement* (Exhibit KK hereto).

91.    Hankey made the decision to keep *secret* and not record the Modification Of Deed Of Trust (Exhibit JJ hereto) executed by Crestlloyd at Hankey's request, or a "memorandum of agreement" on the increased loan and the increased profit participation, both of which took place in December 2019, in order to conceal the increase.

92.    Hankey then further increased its $91,000,000 loan to $106,000,000, with the execution as of August 20, 2020, of an Amended And Restated Promissory Note (Exhibit LL hereto), only then recording on August 20, 2020, a Modification Of Deed Of Trust (Exhibit NN hereto), which made of record the increases for the first time of the $82,500,000 Promissory Note to $106,000,000, only then recording on August 20, 2020, a Memorandum Of Agreement (Exhibit PP hereto) on Hankey's second and third Profit Participation Agreements.[4]

---

[4] The second Profit Participation Agreement states as follows:

If, at any time, during the term of the Loan, or subsequent to Borrower's repayment of the Loan, the Property is sold . . . for a purchase price in excess of One Hundred Million and no/100 Dollars ($100,000,000), Lender shall be entitled to receive, from the sale proceeds, a Lender Profit Participation Payment in the amount equal to the lesser of (a) five percent (5%) of the gross sales price for the Property which exceeds $100,000,000, or Five Million and no/100 Dollars ($5,000,000). The parties further

93.     Crestlloyd and Hankey entered into the modifications set forth above, never informing Yogi Securities of the modifications before they were completed, including the December 2019 Hankey Note transaction, the December 2019-PP Agreement, the August 2020 Hankey Note transaction and the August 2020-PP Agreement, and Yogi Securities had no knowledge of the transactions before they were completed.

94.     As set forth in paragraphs 42, 46, 47, 51 and 53 above, neither a consent agreement, nor a subordination agreement, or any other document was executed by Yogi Securities, permitting, authorizing and/or acknowledging the December 2019 Hankey Note transaction, the August 2020 Hankey Note transaction, the December 2019-PP Agreement, and/or the August 2020-PP Agreement. Yogi Securities was not informed of and was unaware of the transactions before they occurred and never consented to them.

95.     The effect of the modifications was to increase substantially the amount of the alleged secured debt due Hankey that was allegedly senior to Yogi Securities' lien, placing repayment of Crestlloyd's obligation to Yogi Securities at greater risk.

96.     Hankey's material and drastic modifications increasing the amount of Hankey's loan to Crestlloyd, without the knowledge or consent of Yogi Securities, materially impaired repayment of Crestlloyd's obligation to Yogi Securities. Yogi Securities was unaware of the necessity to take any action to protect its lien because it did not know about the first increase when that increase occurred because nothing was then recorded, and it knew nothing about the second increase until after that increase had occurred. Had Yogi Securities known of the proposed increases before they occurred, Yogi Securities could have taken action to protect its lien; if Yogi Securities had known of the first increase, Yogi Securities could have insured there was no second increase without further protections for Yogi Securities.

97.     Hankey noticed a foreclosure sale on the Property for the amount of $106,000,000, plus interest and default interest, despite the facts that Yogi Securities did not know about the

---

acknowledge that this Agreement . . . supplements the First Profit Participation Agreement.

Both the second and third Profit Participation Agreements contain the same increase.

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

increases before they occurred and that Yogi Securities had not consented to Hankey increasing Hankey's purported loan first to $91,000,000, then to $106,000,000, placing repayment of Yogi Securities' loan in serious jeopardy.

98.    In addition, Hankey completely controlled and approved all disbursements, utilizing Hankey personnel and/or a third party vendor, Plus Development, scrutinizing each requested disbursement, consistent with the vast majority of the language in the $82,500,000 Construction Loan Agreement, and Exhibit D thereto, and the First Modification Of Construction Loan Agreement, all three of which are quoted above, but failed to insure that disbursements were used for construction of improvements to the Property.

99.    As the work continued in later phases of construction of improvements to the Property, Hankey "slow paid" disbursements and in some instances refused to allow some disbursements that should have been approved. The "slow pay" of disbursements and refusal to allow other disbursements slowed construction of improvements to the Property, the resultant filing of mechanics' liens against the Property when construction vendors were not paid, and construction vendors ceasing work. This in turn impacted Crestlloyd's construction of improvements to the Property and imperiling the Property as security for other the secured lenders, including materially impairing repayment of Crestlloyd's obligation to Yogi Securities.

100.    Hankey's (a) unilateral, substantial and drastic modifications to its loan, increasing its purported loan to Crestlloyd, which also increased the amount of interest payable to Hankey, and increasing the amount of default interest claimed by Hankey, without notice to Yogi Securities; and (b) failure to insure that disbursements were used for construction of improvements to the Property and in later phases of construction "slow paying" or refusing to fund disbursements that should have been funded, were done with utter disregard of Yogi Securities' rights, placing Crestlloyd in an over-leveraged position, enhancing the likelihood of Crestlloyd's default, resulting in a default, a noticed foreclosure, a receivership, this bankruptcy, and the sale of the Property at a depressed value in this bankruptcy case.

101.    In summary, Hankey engaged in actions which resulted in injury to Yogi Securities and/or conferred an unfair advantage on Hankey as a creditor in this Chapter 11 case, including,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

33

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

but not limited to: (a) Hankey secretly and surreptitiously first increasing its loan from $82,500,000 to $91,000,000 not even recording the Modification To Deed Of Trust (Exhibit JJ hereto) that Crestlloyd had signed in favor of Hankey, then increasing its loan to $106,000,000, both of which increases occurred without notice to Yogi Securities; and (b) Hankey completely controlling and approving disbursements consistent with the vast majority of the language in the $82,500,000 Construction Loan Agreement, Exhibit D thereto, and the First Modification Of Construction Loan Agreement, all three of which are quoted above, allowing disbursements to Crestlloyd that were not used for construction of improvements to the Property, and in later phases of the construction, slow paying or disapproving disbursements that should have been permitted, thereby increasing Hankey's leverage over Crestlloyd to the detriment of other creditors, including Yogi Securities.

102.    Yogi Securities' lien was so impaired by Hankey's actions as to warrant judicially elevating Yogi Securities' lien to a position senior to Hankey's lien.

103.    Under California Code Civil Procedure § 106-0, *et seq.*, 28 U.S.C. § 2201 and Rule 7001(2) and (9), the Court can and should determine the validity, priority and extent of the liens and/or the extent of the parties' secured interests in the Property involved in this Third Claim For Relief.

104.    An actual controversy has arisen and now exists between Yogi Securities and Hankey, in that, among other things, Yogi Securities asserts that Hankey's purported loan should be subordinated to Yogi Securities' loan because of Hankey's actions. Hankey disputes these contentions and contends to the contrary, that Hankey holds secured debt which should retain a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to the existence and priority of liens between Yogi Securities and Hankey.

105.    Yogi Securities seeks a declaration from the Court to the effect that the entirety of Hankey's debt (if any) is subordinated to the debt of Yogi Securities.

122990391\V-6

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**FOURTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR EQUITABLE
SUBORDINATION OF THE ENTIRETY OF HANKEY'S CLAIM TO
YOGI SECURITIES' CLAIM

106.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75 and 88-100 hereof and incorporates them by reference as though set forth in full herein.

107.    On January 14, 2022, Hankey's Proof of Claim was filed in the amount of $122,638,623.41. On April 29, 2022, Yogi Securities filed as an amended claim Yogi Securities' Proof of Claim in the amount of $24,385,366.77.

108.    Section 510(c)(1) of the Bankruptcy Code provides that after notice and a hearing, the bankruptcy court may under the principles of equitable subordination, "[s]ubordinate for purposes of distribution all or part of an allowed claim or interest to all or part of another allowed claim or interest . . ."

109.    In summary, Hankey engaged in egregious inequitable conduct, which resulted in injury to Yogi Securities and/or conferred an unfair advantage on Hankey as a creditor in this Chapter 11 case, including, but not limited to: (a) Hankey secretly and surreptitiously increased its loan from $82,500,000 to $91,000,000, not ever recording the Modification Of Deed Of Trust (Exhibit JJ hereto) that Hankey had Crestlloyd sign in favor of Hankey, then increasing its loan to $106,000,000, both of which increases occurred without notice to Yogi Securities; and (b) Hankey completely controlling and approving disbursements consistent with the vast majority of the language in the $82,500,000 Construction Loan Agreement, Exhibit D thereto, and the First Modification Of Construction Loan Agreement, all three of which are quoted above, allowing disbursements to Crestlloyd that were not used for construction of improvements to the Property, and in later phases of the construction, slow paying or disapproving disbursements that should have been permitted, thereby increasing Hankey's leverage over Crestlloyd to the detriment of other creditors, including Yogi Securities.

110.    Hankey's inequitable conduct was so egregious as to warrant subordinating Hankey's Proof of Claim to Yogi Securities' Proof of Claim.

122990391\V-6

111.    The request for equitable subordination of Hankey's Proof of Claim to Yogi Securities' Proof of Claim is consistent with the Bankruptcy Code.

112.    The entirety of Hankey's Proof of Claim should be equitably subordinated to the entirety of Yogi Securities' Proof of Claim, in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

## FIFTH CLAIM FOR RELIEF

**CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE EFFECT THAT PRINCIPAL AND INTEREST, FEES AND COSTS INCLUDED IN HANKEY'S PURPORTED LIEN, RELATED TO HANKEY'S MODIFICATIONS OF DECEMBER 10, 2019 AND AUGUST 20, 2020, ARE SUBORDINATED TO THE LIEN OF YOGI SECURITIES**

113.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75 and 88-101 hereof and incorporates them by reference as though set forth in full herein.

114.    This claim for relief seeks to obtain a Declaratory Judgment in accordance with Rule 7001(9), seeking a determination as to the validity, priority and/ or extent of liens and/or the extent of secured interests in property in accordance with Rule 7001(2).

115.    Yogi Securities' lien was so impaired as to warrant judicially elevating Yogi Securities' lien to a position senior to Hankey's lien, to the extent of the increase in principal and interest and fees and costs that accrued as a result of Hankey's modifications of its loan of December 10, 2019 and August 20, 2020.

116.    Under California Code of Civil Procedure § 106, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure, the Court can and should determine the validity, priority and extent of the liens and/or the extent of the parties' secured interests in the Property involved in this Fifth Claim For Relief.

117.    As an alternative to the relief sought in the Third Claim For Relief, an actual controversy now exists between Yogi Securities and Hankey, in that the amount of principal and interest, fees and costs due in connection with Hankey's modifications to its purported loan in 2019 and 2020 should be subordinated to Yogi Securities' loan. Hankey disputes these contentions and contends to the contrary, that the entirety of Hankey's alleged secured debt retains a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

the rights and responsibilities of the parties, as to the existence and priority of liens between Yogi Securities and Hankey.

118.    Yogi Securities seeks a declaration from the Court to the effect that principal and interest, fees and costs allegedly due Hankey related to the two modifications of Hankey's purported lien are subordinated to Yogi Securities' lien.

## SIXTH CLAIM FOR RELIEF

### CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION OF HANKEY'S CLAIM TO YOGI SECURITIES' CLAIM IN REGARD TO THE AMOUNT OF PRINCIPAL AND INTEREST, FEES AND COSTS RELATED TO HANKEY'S PURPORTED LOAN MODIFICATIONS OF DECEMBER 10, 2019 AND AUGUST 20, 2020
[By Reason Of Sections 510(c)(1), 502(a) and 105 Of The Bankruptcy Code]

119.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75, 88-102 and 107-109 hereof and incorporates them by reference as though set forth in full herein.

120.    Hankey's inequitable conduct was so egregious as to warrant subordinating Hankey's Proof of Claim to Yogi Securities' Proof of Claim in regard to the amount of principal and interest, and fees and costs, related to Hankey's purported loan modifications of December 10, 2019 and August 20, 2020.

121.    As an alternative to the relief sought in the Fourth Claim For Relief, that portion of Hankey's Proof of Claim consisting of principal and interest, fees and costs related to Hankey's modifications of its purported loan on December 20, 2019, and December 20, 2020, should be equitably subordinated to the entirety of Yogi Securities' Proof of Claim in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

## SEVENTH CLAIM FOR RELIEF

### CLAIM AGAINST CRESTLLOYD FOR AN ACCOUNTING ON ALL DISBURSEMENTS FROM HANKEY TO CRESTLLOYD FOR CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY, AND ON THE AMOUNT DUE FROM CRESTLLOYD TO HANKEY IN REGARD TO CRESTLLOYD ABIDING BY THE TERMS OF THE CONSTRUCTION LOAN AGREEMENT

122.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75 and 98-100 hereof and incorporates them by reference as though set forth in full herein.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

37

122990391\V-6

123.   Further information is needed as to the amount of disbursements delivered to Crestlloyd from Hankey that were used for construction of improvements to the Property, and the amount of disbursements delivered to Crestlloyd by Hankey that were used by Nile Niami for other construction projects in which Nile Niami was engaged.

124.   None of the "Plans And Specifications," the "Applications For Payment," the "Disbursement Budget(s)" and/or "copies of all agreements which were material to completion of the Improvements," or other documents related to disbursements to Crestlloyd from Hankey, have been provided to Yogi Securities by either Crestlloyd and/or Hankey to confirm that the disbursements were used for construction of improvements to the Property.

125.   Crestlloyd should be required to provide an accounting of the disbursements made to Crestlloyd from Hankey, with supporting documentation, including the "Plans And Specifications," the "Applications For Payment," the "Disbursement Budget(s)" and "copies of all agreements which were material to completion of the Improvements," as those terms are used in the Construction Loan Agreement and Exhibit D to the Construction Loan Agreement, and an accounting as to the amount allegedly due from Crestlloyd to Hankey, to determine the scope of disbursements made to Crestlloyd that were not used to construct improvements to the Property.

**EIGHTH CLAIM FOR RELIEF**

**CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE EFFECT THAT A PORTION OF HANKEY'S PURPORTED LIEN SHOULD BE SUBORDINATED TO THE LIEN OF YOGI SECURITIES TO THE EXTENT THAT HANKEY'S ALLEGED LOANS WERE NOT USED FOR CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY**

126.   Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75, 88-101 and 123-124 hereof and incorporates them by reference as though set forth in full herein.

127.   This claim for relief seeks to obtain a Declaratory Judgment in accordance with Rule 7001(9), seeking a determination as to the validity, priority and/ or extent of liens and/or the extent of secured interests in property in accordance with Rule 7001(2).

128.   Hankey completely controlled disbursements, consistent with the language in the $82,500,000 Construction Loan Agreement, Exhibit D thereto, and the First Modification Of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Construction Loan Agreement, and allowing disbursements to Crestlloyd that were not used for construction of improvements to the Property.

129.    Under California Code of Civil Procedure §§ 106, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) and (9), the Court can and should determine the validity, priority and extent of the liens and/or the extent of the parties' secured interest in the Property involved in this Eighth Claim For Relief.

130.    An actual controversy now exists between Yogi Securities and Hankey, in that to the extent funds advanced by Hankey to Crestlloyd were not used for construction of improvements to the Property, Yogi Securities alleges that the total of those amounts should be subordinated to the amount due Yogi Securities. Hankey disputes these contentions and contends to the contrary, that the *entirety* of Hankey's secured debt, regardless of whether Hankey's alleged loan was used to fund construction of improvements to the Property, retains a priority higher than the secured debt of Yogi Securities. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to the propriety, priority and amount of lien between Yogi Securities and Hankey, including the subordination of Hankey's purported lien to Yogi Securities' lien to the extent that Hankey's construction loan was not used for construction of improvements to the Property.

131.    Yogi Securities seeks a declaration from the Court to the effect that, to the extent Hankey's purported loan was *not* used for construction of improvements to the Property, such amounts of Hankey's purported lien and any interest related thereto are subordinated to Yogi Securities' lien.

**NINTH CLAIM FOR RELIEF**

**CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION OF HANKEY'S CLAIM TO THE CLAIM OF YOGI SECURITIES TO THE EXTENT HANKEY'S PURPORTED LOAN WAS NOT USED FOR CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY**

132.    Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75, 88-102, 107-109 and 128 hereof and incorporates them by reference as though set forth in full herein.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

133.   That portion of Hankey's Proof of Claim consisting of amounts Hankey supposedly lent to Crestlloyd that were not used for construction of improvements to the Property, should be equitably subordinated to Yogi Securities' Proof of Claim in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

### TENTH CLAIM FOR RELIEF

**CROSSCLAIM AGAINST HANKEY FOR DISALLOWANCE OF HANKEY'S ALLEGED SECURED CLAIM ARISING FROM THE AUGUST 2020 PROFIT PARTICIPATION AGREEMENT**

134.   Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75 hereof and incorporates them by reference as though set forth in full herein.

135.   As set forth in paragraphs 39, 45 and 50 above, Hankey entered into three profit participation agreements: the October 2018-PP Agreement (Exhibit DD hereto), the December 2019-PP Agreement (Exhibit KK hereto) and the August 2020-PP Agreement (Exhibit OO hereto).

136.   The profit participation agreements provide that Hankey would receive a percentage of the amount for which the Property was sold, regardless of the status of Crestlloyd's repayment to Hankey of Hankey's supposed loans to Crestlloyd and regardless of a reconveyance of Hankey's deeds of trust to Crestlloyd.

137.   Yogi Securities understands Hankey is no longer proceeding with Claim 17 because the Property did not sell for $200,000,000.

138.   Claim 18 is not a secured claim because neither the 2020 Memorandum Of Agreement, nor the underlying August 2020-PP Agreement, created a security interest and/or perfected a lien against the Property or otherwise.

139.   Yogi Securities requests that Hankey's Claim 18 be disallowed as a secured claim.

### ELEVENTH CLAIM FOR RELIEF

**CROSSCLAIM AGAINST INFERNO FOR RECHARACTERIZATION OF THE CLAIM OF INFERNO FROM DEBT TO EQUITY**

140.   Yogi Securities repeats and realleges the allegations set forth in paragraphs 1-75 and 78-80 hereof and incorporates them by reference as though set forth in full herein.

122990391\V-6

141.    As set forth above, the nature and terms of the referenced documents and instruments to which Inferno and Crestlloyd are parties demonstrate that Inferno and Crestlloyd's intent was that all or a portion of the purported secured debt of Inferno constitutes contribution to equity (to the extent of any Inferno stake in Crestlloyd or against the Property).

142.    Inferno's agreement in the First Inferno Note (Exhibit A hereto), the Memorandum (Exhibit G hereto), and the terms thereof, the status of the supposed entitlements to recovery by Inferno, and Inferno's apparent entitlement to profits as set forth in the First Inferno Note and the Memorandum, as compared to other stakeholders, demonstrate Inferno and Crestlloyd's intent that Inferno not be considered a debt holder, but instead have status wholly or partially as equity (to the extent of any stake in Crestlloyd or against the Property).

143.    There was no maturity date on any loan from Inferno to Crestlloyd.

144.    As to the First Inferno Note, the $14,040,000 balance due and owing Crestlloyd was reduced by over 50% to $7,000,000 "as an accommodation, to debtor, and without receiving consideration."

145.    As to the Memorandum:

- In the Memorandum's recitals, the Memorandum sets forth the "respective rights" of Crestlloyd and Inferno "with regard to distributions of proceeds at such time as the residence [*i.e.*, the Property] being constructed by Crestlloyd . . . is sold."

- The Memorandum provides in paragraph 2 that profits realized by selling the Property may be divided between Inferno and Crestlloyd, and sets no particular maturity date or repayment schedule.

- The Memorandum states that Crestlloyd and Inferno are to be paid from the sale of the Property on or after repayment of loans obtained from banks or third parties, excluding Crestlloyd and Inferno, recognizing that other lenders would have to be paid ahead of Inferno.

- Inferno was able to realize gains far higher than any set "rate of interest" on any note, due to the ability to divide profits and losses under the Memorandum.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

41

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

146.    Inferno's substantial delay of two-and-one-half years for any attempt to record a lien related to the First Inferno Note and other evidence regarding the acts, omissions and intent of Inferno (including to be revealed by discovery) demonstrate or will demonstrate Inferno's intent that its purported lending be considered wholly or partially as contributions to equity of Crestlloyd, not secured debt.

147.    Yogi Securities is informed and believes and based thereon alleges there are many parts of the relationship between Inferno and Crestlloyd, as set forth hereinabove, which merit categorizing Inferno's interest as equity.

148.    Yogi Securities therefore requests that, based on the grounds described above herein, Inferno's Claim 11 be recharacterized wholly or partially as equity and disallowed wholly or partially as secured debt in accordance with sections 510(c)(1), 502(a) and 105 of the Bankruptcy Code.

## TWELFTH CLAIM FOR RELIEF

**CROSSCLAIM AGAINST CRESTLLOYD FOR DECLARATORY RELIEF TO THE EFFECT THAT THE REBATE AND THE DIP LOAN PROCEEDS ARE ENCUMBERED**
[By Reason Of Yogi Securities' Lien]

149.    Yogi Securities repeats and realleges the allegations contained in paragraphs 1-75 hereof and incorporates them by reference as though set forth in full herein.

150.    This claim for relief seeks to obtain a Declaratory Judgment in accordance with Rule 7001(9), seeking a determination as to the validity, priority and/ or extent of liens and/or the extent of secured interests in property in accordance with Rule 7001(2).

151.    The Bankruptcy Court authorized the Debtor to borrow up to $12,000,000 by way of the DIP Loan from Hankey to the Debtor, that Hankey secured with a first priority lien against the Property. Upon Court approval, the Debtor immediately drew down the entire $12,000,000 loan. Yogi Securities is informed and believes that the Debtor did not spend the full $12,000,000.

152.    In connection with the sale of the Property, Yogi Securities is informed and believes that the Debtor repaid $12,084,999.98 to Hankey in regard to the DIP Financing from the proceeds from the sale of the Property instead of returning the unused DIP loan proceeds ("Unused DIP Loan

Proceeds") and paying the difference from the sale proceeds. Yogi Securities is informed and believes and on that basis alleges that the Debtor is holding approximately $3,600,000 in Unused DIP Loan Proceeds, less professional fees recently authorized to be paid. Yogi Securities is informed and believes that the Debtor asserts the Unused DIP Loan Proceeds are unencumbered. Yogi Securities asserts that the Unused DIP Loan Proceeds are security for the secured obligations of Yogi Securities and any other lienholders as may be determined by the Court to exist. The Court has not made a determination as to whether the Unused DIP Loan Proceeds are encumbered or unencumbered.

153.    Further, in connection with the employment of Concierge Auctions, Debtor negotiated for Concierge to rebate to the estate 9.5% of the 12% buyer's premium to which Concierge was otherwise entitled. Yogi Securities is informed and believes that the Debtor asserts the Rebate is unencumbered. Yogi Securities asserts that the Rebate is security for the secured obligations of Yogi Securities and any other lienholders as may be determined by the Court to exist. The Court has not made a determination about whether the Rebate is encumbered or unencumbered.

154.    Under California Code of Civil Procedure §§ 106, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure, the Court can and should determine the validity, priority and extent of the liens and/or the extent of the parties' secured interest in the Property involved in this Fifteenth Claim For Relief.

155.    An actual controversy now exists between Yogi Securities and any other lienholders as may be determined by the Court to exist, and the Debtor about whether the Rebate and Unused DIP Loan Proceeds are secured for the obligations due to Yogi Securities and such other lienholders. A declaration from the Court is necessary to determine the rights and responsibilities of the parties, as to whether the Rebate and the Unused DIP Loan Proceeds are encumbered or unencumbered.

156.    Yogi Securities seeks a declaration that the Rebate and the Unused DIP Loan Proceeds are not unencumbered and cannot be used to pay unsecured claims unless and until all parties with liens against the Property, including Yogi Securities, are paid in full.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**PRAYER FOR RELIEF**

Wherefore, Yogi Securities prays for judgment as follows:

As to the First Claim For Relief:

1.      For a judicial determination that the entirety of the secured debt allegedly due Inferno is subordinate to the entirety of the secured debt of Yogi Securities based on the Memorandum of Agreement, and therefore Yogi Securities' debt has priority and should be paid first from the proceeds of the sale of the Property prior to any payment to Inferno.

As to the Second Claim For Relief:

2.      For an accounting from and by Inferno and Crestlloyd as to all disbursements from Inferno to Crestlloyd and an accounting at to the amount allegedly due Inferno.

As to the Third Claim For Relief:

3.      For a judicial determination that the entirety of the lien asserted by Hankey is subordinated to the entirety of Yogi Securities' lien, and that Yogi Securities' lien has priority and should be paid from proceeds of the sale of the Property prior to any payment to Hankey.

As to the Fourth Claim For Relief:

4.      For a judicial determination that the entirety of the Proof of Claim asserted by Hankey is subordinated to the entirety of Yogi Securities' Proof of Claim, and that Yogi Securities' Proof of Claim has priority and should be paid from proceeds of the sale of the Property prior to any payment to Hankey.

As to the Fifth Claim For Relief:

5.      For a judicial determination that to the extent that Hankey's purported lien includes principal and interest, fees and costs, attributable to Hankey's modifications of December 10, 2019 and August 20, 2020, Hankey's purported lien is in any case subordinate to Yogi Securities' lien, and that Yogi Securities' lien has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey of such principal and interest, fees and costs.

As to the Sixth Claim For Relief:

6.      For a judicial determination that to the extent that Hankey's Proof of Claim includes principal and interest, fees and costs, attributable to Hankey's modifications of December 10, 2019

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

and August 20, 2020, Hankey's Proof of Claim is subordinate to Yogi Securities' Proof of Claim, and that Yogi Securities' Proof of Claim has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey of such principal and interest, fees and costs.

As to the Seventh Claim For Relief:

7.      For an accounting from and by Crestlloyd as to all disbursements made by Hankey to Crestlloyd, with supporting documentation, including the "Plans and Specifications," the "Applications for Payment," the "Disbursement Budget(s)" and "copies of all agreements which were material to completion of the Improvements," as those terms are used in the Construction Loan Agreement and Exhibit D to the Construction Loan Agreement, and an accounting as to the amount allegedly due Hankey.

As to the Eighth Claim For Relief:

8.      For a judicial determination that to the extent Hankey's purported loan was not used for construction of improvements to the Property, Hankey's purported lien is subordinate to Yogi Securities' lien, and that Yogi Securities' lien has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey.

As to the Ninth Claim For Relief:

9.      For a judicial determination that to the extent Hankey's purported loan was not used for construction of improvements to the Property, Hankey's Proof of Claim is subordinate to Yogi Securities' Proof of Claim, and that Yogi Securities' Proof of Claim has priority and should be paid from proceeds of the sale of the Property prior to payment to Hankey on Hankey's Proof of Claim.

As to the Tenth Claim For Relief:

10.     For an order disallowing Hankey's Proofs of Claim 18 as a secured claim in its entirety.

As to the Eleventh Claim for Relief.

11.     For an order recharacterizing wholly or partially Inferno's Proof of Claim 11 as an equity contribution.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

As to the Twelfth Claim For Relief:

12.     For a judicial determination that the remaining DIP Loan Proceeds and Rebate are encumbered and are security for the secured obligations due the lienholders, including Yogi Securities.

As to All Claims For Relief:

1.     There has been no trustee appointed in this case.

2.     There has been no creditors' committee appointed in this case.

3.     Yogi Securities has a sufficient interest and stake in obtaining the relief requested in each of the counts herein, and has standing to do so, because, *inter alia*, Yogi Securities has an interest in such relief, and each element of it as requested, which interest is separate and apart from the interests of the Debtor's estate as a whole.

4.     To the extent of any distribution or other payment at any time to or for the benefit of Hankey or Inferno which was improper or otherwise inconsistent with any of the above-asserted rights, claims, lien and priority of Yogi Securities, recovery of all such amounts, to and for the benefit of and payment to Yogi Securities, and a judgment in favor of Yogi Securities as against Hankey and/or Inferno consistent therewith.

5.     Payment to Yogi Securities of all such funds held by Crestlloyd as is consistent with or required by the above-asserted rights, claims, lien and priority of Yogi Securities, and a judgment in favor of Yogi Securities consistent therewith.

6.     For costs of suit herein.

7.     For attorney's fees, to the extent allowed by law, incurred in connection with this action.

8.     For such other and further relief as this Court deems just and proper.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122990391\V-6

Dated: January 30, 2023

DENTONS US LLP
ROBERT F. SCOULAR
JOHN A. MOE, II
NORMAN M. ASPIS

By:    /s/*John A. Moe, II*
         JOHN A. MOE, II

Attorneys for Defendant, Crossclaimant and Counterclaimant
YOGI SECURITIES HOLDINGS, LLC

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

122990391\V-6