Howard J. Steinberg (SBN CA 89291)
Eric V. Rowen (SBN CA 106234)
Matthew R. Gershman (SBN CA 253031)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310-586-7700/Facsimile: 310-586-7800

Thomas M. Geher (SBN CA 130588)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone: 310-203-8080/Facsimile: 310-203-0567

Attorneys for Hankey Capital, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

In re

CRESTLLOYD, LLC,

Debtor.

---

INFERNO INVESTMENT, INC., a Quebec corporation,

Plaintiff,

v.

CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL, LLC, a California limited liability company; YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,

Defendants

Bk No. 2:21-bk-18205-DS

Chapter 11

Adv. No. 2:22-ap-01125-DS

**HANKEY CAPITAL, LLC'S ANSWER TO YOGI SECURITIES HOLDINGS, LLC'S SECOND AMENDED COUNTERCLAIM AND CROSSCLAIM; AFFIRMATIVE DEFENSES; AND CROSSCLAIM AGAINST YOGI SECURITIES HOLDINGS, LLC FOR EQUITABLE SUBORDINATION**

Judge: Hon. Deborah J. Saltzman

Action Filed: June 9, 2022

**ANSWER**

Cross-Defendant Hankey Capital, LLC ("Hankey") responds to the Counterclaim and Crossclaim ("Complaint") of Yogi Securities Holdings, LLC ("Yogi") as follows:

**JURISDICTION AND VENUE**

1. Hankey admits that Yogi's Complaint purports to state a claim subject to the jurisdiction of this Court and that Yogi submits to the jurisdiction of this Court. Except as expressly admitted, Hankey denies the allegations of Paragraph 1.

2. Hankey admits that Yogi's Complaint is currently pending in this Court to which the Federal Rules of Bankruptcy Procedure apply. Except as expressly admitted, Hankey denies the allegations of Paragraph 2.

3. Hankey denies that this adversary proceeding arises in a case under Title 11 of the Federal Bankruptcy Code. Hankey admits the remaining allegations of Paragraph 3.

4. Hankey admits that Yogi's claims for equitable subordination and declaratory relief as to Proof of Claims 17 and 18 qualify as "core" proceedings. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Hankey consents to entry of a final judgment by the bankruptcy judge. Except as expressly admitted, Hankey denies the allegations of Paragraph 4.

**THE PARTIES**

5. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 5 of the Complaint and, therefore, denies the allegations therein.

6. Hankey admits that Crestlloyd is the debtor in this pending Chapter 11 bankruptcy case. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 of the Complaint and, therefore, denies the allegations therein.

7. Hankey admits the allegations of Paragraph 7.

8. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 8 of the Complaint and, therefore, denies the allegations therein.

9. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 9 of the Complaint and, therefore, denies the allegations therein.

**FACTUAL BACKGROUND**

10. Hankey admits that Yogi's Complaint purports to state claims related to real property referred to as "The One," which sits at 944 Airole Way in Los Angeles, California (the "Property"). Hankey admits it loaned money to Crestlloyd secured by the Property and that Yogi, Inferno, and Hilldun each purport to have loaned money or extended credit to Crestlloyd allegedly secured by the Property. Except as expressly admitted herein, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 10 of the Complaint and, therefore, denies the allegations therein.

**A. The Alleged Inferno Funding**

11. Hankey admits that Exhibit A to the Complaint purports to be a "Promissory Note Secured By Deed of Trust," in favor of Inferno, with a loan amount to Crestlloyd of $3,925,545, and that the terms of the document attached as Exhibit A to the Complaint are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 11 of the Complaint and, therefore, denies the allegations therein.

12. Hankey admits that Exhibit B to the Complaint purports to be a "Deed Of Trust With Assignment Of Rents" with Crestlloyd as Trustor, in favor of Inferno Realty, LP, as to an undivided $7,040,000 interest, and in favor of Maybach Corporation Holdings, Inc., as to an undivided $7,000,000 interest, and that the terms of the document attached as Exhibit B to the Complaint are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of the Complaint and, therefore, denies the allegations therein.

13. Hankey admits that Exhibit C to the Complaint purports to be an "Assignment Of Note And Deed Of Trust/Mortgage" from Maybach Corporation, as Assignor, to Inferno Realty, LP, as Assignee, and that the terms of the document attached as Exhibit C to the Complaint are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as

to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint and, therefore, denies the allegations therein.

14. Hankey admits that Exhibit D to the Complaint purports to be an "Assignment Of Note And Deed Of Trust/Mortgage" from Inferno Realty, LP, as Assignor, to Inferno, as Assignee, and that the terms of the document attached as Exhibit D to the Complaint are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 of the Complaint and, therefore, denies the allegations therein.

15. Hankey admits that Exhibit E to the Complaint purports to be a "Promissory Note Secured By Deed Of Trust," in favor of Inferno Realty, LP and Maybach Holdings Corporation, Inc. with a total loan amount of $14,040,000, and that the terms of the document attached to the Complaint as Exhibit E are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 15 of the Complaint and, therefore, denies the allegations therein.

16. Hankey admits that Exhibit F to the Complaint purports to be a "Modification And Supplement To Deed of Trust," with Crestlloyd as Trustor, in favor of Inferno, and that the terms of the document attached to the Complaint as Exhibit F are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 of the Complaint and, therefore, denies the allegations therein.

17. Hankey admits that Exhibit G purports to be a "Memorandum of Agreement" between Crestlloyd and Inferno, and that the terms of the document attached to the Complaint as Exhibit G are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 17 of the Complaint and, therefore, denies the allegations therein.

18. Hankey admits that Exhibit H purports to include an "Amendment No. 1 to Memorandum Of Agreement"; "Amendment No. 2 to Memorandum of Agreement"; "Revised Amendment No. 2 to Memorandum of Agreement"; "Amendment No. 3 to Memorandum of Agreement"; and "Revised Amendment No. 3 to Memorandum of Agreement," and that the terms of the documents attached to the Complaint as Exhibit H are as stated therein. Except as expressly admitted, Hankey is without sufficient

information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 18 of the Complaint and, therefore, denies the allegations therein.

19. Hankey admits that it loaned money to Crestlloyd and that Yogi, Inferno, and Hilldun purport to have loaned money to Crestlloyd. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 of the Complaint and, therefore, denies the allegations therein.

**B. The Yogi Securities Loans**

20. Hankey admits that Exhibit I purports to be a "Secured Promissory Note" with Crestlloyd as Borrower and Yogi as Lender with a loan amount of $1,800,000, and that the terms of the document attached to the Complaint as Exhibit I are as stated therein. Hankey admits that Exhibit J purports to be a "Deed Of Trust And Assignment of Rents" with Crestlloyd as Trustor, in favor of Yogi, and that the terms of the document attached to the Complaint as Exhibit J are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 of the Complaint and, therefore, denies the allegations therein.

21. Hankey admits that Exhibit K purports to be a "First Amendment Of Promissory Note" with Crestlloyd as Borrower and Yogi as Lender, and that the terms of the document attached to the Complaint as Exhibit K are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 21 of the Complaint and, therefore, denies the allegations therein.

22. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 22 of the Complaint and, therefore, denies the allegations therein.

23. Hankey admits that Exhibit L purports to be a "Secured Promissory Note" with Crestlloyd as Borrower and Yogi as Lender in the amount of $17,499,900, and that the terms of the document attached to the Complaint as Exhibit L are as stated therein. Hankey admits that Exhibit M purports to include two documents titled "Deed Of Trust And Assignment Of Rents" with Crestlloyd as Trustor, in favor of Yogi; and a "Deed Of Trust And Assignment of Rents" with Holding Company of Beverly Hills, LLC, as Trustor, in favor of Yogi, and that the terms of the documents attached to the Complaint as Exhibit

M are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 of the Complaint and, therefore, denies the allegations therein.

24. Hankey admits that Exhibit N purports to be a "Secured Promissory Note" with Crestlloyd as Borrower and Yogi as Lender in the amount of $30,188,235, that it purports to "cancel[] and supersede[]" all "Prior Notes" between Crestlloyd and Yogi, and that the terms of the documents attached to the Complaint as Exhibit N are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 of the Complaint and, therefore, denies the allegations therein.

25. Hankey admits that Exhibit O purports to be a "Deed Of Trust And Assignment Of Rents" with Crestlloyd as Trustor, in favor of Yogi, and that the terms of the document attached to the Complaint as Exhibit O are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of the Complaint and, therefore, denies the allegations therein.

26. Hankey admits that Exhibit P purports to include a "Deed Of Trust And Assignment Of Rents" with Crestlloyd as Trustor, in favor of Yogi; a "Deed Of Trust And Assignment Of Rents" with 10701 Bellagio Road as Trustor, in favor of Yogi; a "Deed Of Trust And Assignment Of Rents" with Carcassonne Fine Homes, LLC as Trustor, in favor of Yogi; a "Deed Of Trust And Assignment Of Rents" with Marbella Construction, Inc. as Trustor, in favor of Yogi; and a "Deed Of Trust And Assignment Of Rents" with 1369 Londonderry Estate, LLC as Trustor, in favor of Yogi, and that the terms of the documents attached to the Complaint as Exhibit P are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 26 of the Complaint and, therefore, denies the allegations therein.

27. Hankey admits that Exhibit Q purports to include three documents titled "Substitution Of Trustee And Full Reconveyance" that substitute Yogi as Trustee, and that the terms of the documents attached to the Complaint as Exhibit Q are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 27 of the Complaint and, therefore, denies the allegations therein.

28. Hankey admits that Exhibit R purports to be an "Amendment Of Note And Deeds Of Trust" with Crestlloyd as Borrower and 10701 Bellagio Road, LLC; Carcassonne Fine Homes, LLC; Marbella Construction, Inc.; 1369 Londonderry Estate, LLC; and Yogi as Lender, and that the terms of the document attached to the Complaint as Exhibit R are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 28 of the Complaint and, therefore, denies the allegations therein.

29. Hankey admits that Exhibit S purports to be a "Second Amendment Of Note And Deed Of Trust" with Crestlloyd as Borrower and 10701 Bellagio Road, LLC; Carcassonne Fine Homes, LLC; Marbella Construction, Inc.; 1369 Londonderry Estate, LLC; and Yogi as Lender, and that the terms of the document attached to the Complaint as Exhibit S are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 29 of the Complaint and, therefore, denies the allegations therein.

30. Hankey admits that Exhibit T purports to be a "Secured Promissory Note" with Marbella Construction, Inc. and 1369 Londonderry Estate, LLC as Borrower, and Yogi as Lender, with a loan amount of $5,200,000, and that the terms of the document attached to the Complaint as Exhibit T are as stated therein. Hankey admits that Exhibit U purports to include a "Deed Of Trust And Assignment Of Rents" with 1369 Londonderry Estate, LLC as Trustor, in favor of Yogi, as well as a "Deed Of Trust And Assignment Of Rents" with Marbella Construction, Inc. as Trustor, in favor of Yogi, and that the terms of the documents attached to the Complaint as Exhibit U are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 30 of the Complaint and, therefore, denies the allegations therein.

31. Hankey admits that Exhibit V purports to be a "Fourth Amendment Of Note And Deed Of Trust" with Marbella Construction, Inc. and 1369 Londonderry Estate, LLC as Borrower and Yogi as Lender, and that the terms of the document attached to the Complaint as Exhibit V are as stated therein. Hankey admits that Exhibit W purports to be a "Deed Of Trust And Assignment Of Rents" with Crestlloyd as Trustor, in favor of Yogi, and that the terms of the document attached to the Complaint as Exhibit W are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge

to form a belief as to the truth or falsity of the allegations contained in Paragraph 31 of the Complaint and, therefore, denies the allegations therein.

32. Hankey admits that Exhibit X purports to be a "Fifth Amendment Of Note And Deed Of Trust" with Marbella Construction, Inc. and 1369 Londonderry Estate, LLC as Borrower and Yogi as Lender, and that the terms of the document attached to the Complaint as Exhibit X are as stated therein. Hankey admits that Exhibit Y purports to include a "Deed Of Trust And Assignment Of Rents" with Carcassonne Fine Homes, LLC as Trustor, in favor of Yogi and a "Deed Of Trust And Assignment Of Rents" with 10701 Bellagio Road, LLC as Trustor, in favor of Yogi, and that the terms of the documents attached to the Complaint as Exhibit Y are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 of the Complaint and, therefore, denies the allegations therein.

33. Hankey admits that Yogi asserts that the Property, the Londonderry Property, the Stone Ridge Property, the Bellagio Property, and the Carcassone Property (as those properties are defined in the Complaint) secured the $5,200,000 Secured Promissory Note. Hankey admits that Yogi asserts that the Properties (as that term is defined in the Complaint) secured the $30,133,235 Promissory Note. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 33 of the Complaint and, therefore, denies the allegations therein.

**C. The Alleged Hankey Funding And The Interrelationship Between The Hankey Funding And The Increased Yogi Securities Funding**

34. Hankey admits that funding was needed to complete construction of improvements on the Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 34.

35. Hankey admits that it agreed to loan, and did loan, Crestlloyd the initial principal sum of $82,500,000. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 35 of the Complaint and, therefore, denies the allegations therein.

36. Hankey admits that it agreed to loan, and did loan, Crestlloyd the initial principal sum of $82,500,000, and that it is entitled to first position on that loan. Hankey denies that it knew of specific

communications between Crestlloyd and Yogi relating to Hankey's initial $82,500,000 loan. Except as expressly admitted, Hankey is otherwise without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 36 of the Complaint and, therefore, denies the allegations therein.

37. Hankey denies the allegations of Paragraph 37.

38. Hankey admits that Exhibit Z purports to be a "Substitution Of Trustee And Full Conveyance" substituting Yogi as Trustee, and that the terms of the document attached to the Complaint as Exhibit Z are as stated therein. Hankey admits that Yogi recorded its referenced Deed of Trust one day after Hankey recorded its referenced Deed of Trust. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 38 of the Complaint and, therefore, denies the allegations therein.

39. Hankey admits that Exhibit AA is a copy of the Construction Loan Agreement dated October 25, 2018 between Crestlloyd and Hankey, and that the terms of the document attached to the Complaint as Exhibit AA are as stated therein. Hankey admits that Exhibit BB is a copy of the Promissory Note for Hankey's loan to Crestlloyd in the amount of $82,500,000, and that the terms of the document attached to the Complaint as Exhibit BB are as stated therein. Hankey admits that Exhibit CC is a copy of the Security Agreement (Personal Property) between Crestlloyd and Hankey that secures payment of the Promissory Note in the amount of $82,500,000, and that the terms of the document attached to the Complaint as Exhibit CC are as stated therein. Hankey admits that Exhibit DD is a copy of the Profit Participation Agreement which provides for Hankey to receive the amount of $3,500,000 if the purchase price of the Property exceeds $200,000,000, and that the terms of the document attached to the Complaint as Exhibit DD are as stated therein. Hankey admits that Exhibit EE is a copy of a Memorandum of Agreement between Hankey and Crestlloyd that acknowledges and incorporates by reference a Profit Participation Agreement, and that the terms of the document attached to the Complaint as Exhibit EE are as stated therein. Hankey admits that Exhibit FF is a copy of the Construction Deed Of Trust, Security Agreement And Fixture Filing With Assignment Of Rents with Crestlloyd as Trustor, in favor of Hankey, and that the terms of the document attached to the Complaint as Exhibit FF are as stated therein. Hankey

further incorporates its answers to Paragraph 36, 37, and 38 as if set fully forth herein. Except as expressly admitted, Hankey denies the allegations of Paragraph 39.

40. Hankey admits that Yogi recorded its referenced Deed of Trust one day after Hankey recorded its referenced Deed of Trust. Hankey denies that it had "agreements" with Crestlloyd other than as expressly admitted above. Hankey incorporates its answers with respect to Exhibits N, AA, O, and FF as if fully set forth herein. Except as expressly admitted, Hankey denies the allegations of Paragraph 40.

41. Hankey admits the allegations of Paragraph 41.

42. Hankey admits that it twice modified the loan documents to increase the credit limit on the construction loan to Crestlloyd. Except as expressly admitted, Hankey denies the allegations of Paragraph 42.

43. Hankey admits the allegations of Paragraph 43.

44. Hankey admits the allegations of Paragraph 44.

45. Hankey admits that Exhibit KK is a copy of the December 10, 2019 Profit Participation Agreement between Crestlloyd and Hankey and that the terms of the document attached to the Complaint as Exhibit KK are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 45.

46. Hankey admits that the December 2019 transactions between Hankey and Crestlloyd referenced in Paragraph 46 were not recorded at the time they were entered. Except as expressly admitted, Hankey denies the allegations of Paragraph 46.

47. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 47 of the Complaint and, therefore, denies the allegations therein.

48. Hankey admits the allegations of Paragraph 48.

49. Hankey admits the allegations of Paragraph 49.

50. Hankey admits that Exhibit OO is a copy of the August 20, 2020 Profit Participation Agreement between Crestlloyd and Hankey and that the terms of the document attached to the Complaint as Exhibit OO are as stated therein. Hankey admits that Exhibit PP is a copy of the August 20, 2020 Memorandum of Agreement, that the terms of Exhibit PP are as stated therein, and that the Memorandum

of Agreement was recorded on August 31, 2020 as instrument number 20201030294. Except as expressly admitted, Hankey denies the allegations of Paragraph 50.

51. Hankey denies the allegations of Paragraph 51.

52. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 52 of the Complaint and, therefore, denies the allegations therein.

53. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 53 of the Complaint and, therefore, denies the allegations therein.

54. Hankey admits that representatives of Hankey and Yogi met on or around December 1, 2020, to discuss the status of the Property. Hankey admits that Exhibit QQ purports to be an unsigned "Subordination Agreement" between Crestlloyd, Hankey, and Yogi, and that Crestlloyd asked Yogi to execute a Subordination Agreement. Except as expressly admitted, Hankey otherwise denies the allegations of Paragraph 54.

**D. The Construction Loan Agreement**

55. Hankey admits that it had certain rights with respect to the disbursement of funds but denies that it had any obligation to monitor or control disbursements of funds under the Construction Loan Agreement. Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 55.

56. Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey otherwise denies the allegations of Paragraph 56.

57. Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 57.

58. Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 58.

59. Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 59.

60. Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 60.

61. Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 61.

62. Hankey admits that the terms of the Construction Loan Agreement and First Modification Of Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 62.

63. Hankey denies the allegations of Paragraph 63.

64. Hankey admits that Exhibit SS is a Client Trust Ledger prepared by Hankey but denies that the annotations and highlighting thereon were prepared by Hankey. Hankey denies that all proceeds of its loan were required to be used for constructing improvements on the Property. Except as expressly admitted, Hankey is otherwise without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 64 of the Complaint and, therefore, denies the allegations therein.

65. Hankey denies that that all proceeds of its loan were required to be used for constructing improvements on the Property. Except as expressly admitted, Hankey is otherwise without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations in Paragraph 65 of the Complaint and, therefore, denies the allegations therein.

66. Hankey denies that that all proceeds of its loan were required to be used for constructing improvements on the Property. Except as expressly admitted, Hankey is otherwise without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations in Paragraph 66 of the Complaint and, therefore, denies the allegations therein.

67. Hankey denies that it failed to timely make any disbursements or failed to make disbursements that should have been approved. Except as expressly admitted, Hankey is otherwise without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 67 of the Complaint and, therefore, denies the allegations therein.

**E. The Hilldun Loan**

68. Hankey admits that Exhibit TT purports to be a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing with Crestlloyd as Trustor, in favor of Hilldun, and that the terms of the document attached to the Complaint as Exhibit TT are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 68 of the Complaint and, therefore, denies the allegations therein.

**THE SALE OF THE PROPERTIES**

69. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 69 of the Complaint and, therefore, denies the allegations therein.

70. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 70 of the Complaint and, therefore, denies the allegations therein.

**THE BANKRUPTCY**

71. Hankey admits the allegation of Paragraph 71.

72. Hankey admits the Proofs of Claim referenced in Paragraph 72 were filed, but denies that Yogi, Inferno, or Hilldun are entitled to recover on their filed Proofs of Claim.

**THE SALE OF THE PROPERTY**

73. Hankey admits the allegations of Paragraph 73.

74. Hankey admits the allegations of Paragraph 74.

75. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 75 that Yogi and Inferno consented to the referenced motion for the purpose of mitigating a potential claim for interest and, therefore, denies the allegation. Hankey otherwise admits the allegations of Paragraph 75.

**FIRST CLAIM FOR RELIEF**

COUNTERCLAIM AGAINST INFERNO FOR DECLARATORY RELIEF
TO THE EFFECT THAT INFERNO'S PURPORTED LIEN SHOULD BE
SUBORDINATED TO THE LIEN OF YOGI SECURITIES

76. To the extent Paragraph 76 requires an answer, Hankey repeats and incorporates by reference its answers to all prior allegations contained in the Complaint as if fully set forth herein.

77. Answering Paragraphs 77 to 83, the paragraphs are part of a claim for relief that is not directed at Hankey and, therefore, require no answer from Hankey.

**SECOND CLAIM FOR RELIEF**

COUNTERCLAIM AND CROSSCLAIM FOR AN ACCOUNTING FROM
INFERNO AND CRESTLLOYD ON ALL DISBURSEMENTS FROM
INFERNO TO CRESTLLOYD AND ON THE AMOUNT DUE
FROM CRESTLLOYD TO INFERNO

78. To the extent Paragraph 84 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 of the Complaint as if fully set forth herein.

79. Answering Paragraphs 85 and 86, the paragraphs are part of a claim for relief that is not directed at Hankey and, therefore, require no answer from Hankey.

**THIRD CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF
TO THE EFFECT THAT THE ENTIRETY OF HANKEY'S PURPORTED
LIEN SHOULD BE SUBORDINATED TO THE LIEN OF YOGI SECURITIES

80. To the extent Paragraph 87 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 of the Complaint as if fully set forth herein.

81. Hankey admits that this claim for relief purports to state a claim for Declaratory Judgment but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 88.

82. Hankey admits that the terms of the documents attached to the Complaint as Exhibits DD, JJ, and KK are as stated therein and that Exhibit DD, KK, and JJ were not recorded at the time they were executed. Except as expressly admitted, Hankey denies the allegations of Paragraph 89.

83. Hankey admits that the terms of the documents attached to the Complaint as Exhibits FF, NN, EE, DD, PP, OO, and KK are as stated therein and that documents in connection with the December 2019 transactions between Crestlloyd and Hankey were not recorded at the time they were executed. Hankey admits that Exhibits FF, NN, EE, PP, and OO were timely recorded. Except as expressly admitted, Hankey denies the allegations of Paragraph 90.

84. Hankey denies the allegations of Paragraph 91.

85. Hankey admits that the terms of the documents attached to the Complaint as Exhibits LL, NN, and PP are as stated therein and that Exhibits NN and PP were timely recorded. Except as expressly admitted, Hankey denies the allegations of Paragraph 92.

86. Hankey admits that it made additional loan advances to Crestlloyd after its initial loan of $82,500,00. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 93 of the Complaint and, therefore, denies the allegations therein.

87. Hankey incorporates its answers to Paragraph 42, 46, 47, 51, and 53 as if fully set forth herein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 94 of the Complaint and, therefore, denies the allegations therein.

88. Hankey denies the allegations of Paragraph 95.

89. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 96 of the Complaint and, therefore, denies the allegations therein.

90. Hankey admits that it noticed a foreclosure sale on the Property for the amount of $106,000,000, plus appropriate interest. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 97 of the Complaint and, therefore, denies the allegations therein.

91. Hankey denies that it had any obligation to monitor or control disbursements of funds under the Construction Loan Agreement. Hankey admits that the terms of the Construction Loan

Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 98.

92. Hankey denies the allegations of Paragraph 99.

93. Hankey denies the allegations of Paragraph 100.

94. Hankey denies the allegations of Paragraph 101.

95. Hankey denies the allegations of Paragraph 102.

96. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 103.

97. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 104.

98. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 105.

**FOURTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION OF THE ENTIRETY OF HANKEY'S CLAIM TO YOGI SECURITIES' CLAIM

99. To the extent Paragraph 106 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 and 88 to 100 of the Complaint as if fully set forth herein.

100. Hankey admits the allegations the Paragraph 107.

101. Hankey admits that this claim purports to state a claim for equitable subordination but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 108.

102. Hankey denies the allegations of Paragraph 109.

103. Hankey denies the allegations of Paragraph 110.

104. Hankey denies the allegations of Paragraph 111.

105. Hankey denies the allegations of Paragraph 112.

**FIFTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE EFFECT THAT PRINCIPAL AND INTEREST, FEES AND COSTS INCLUDED IN HANKEY'S PURPORTED LIEN, RELATED TO HANKEY'S MODIFICATIONS OF DECEMBER 10, 2019 AND AUGUST 20, 2020, ARE SUBORDINATED TO THE LIEN OF YOGI SECURITIES

106. To the extent Paragraph 113 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 and 88 to 100 of the Complaint as if fully set forth herein.

107. Hankey admits that this claim for relief purports to state a claim for Declaratory Judgment but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 114.

108. Hankey denies the allegations of Paragraph 115.

109. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 116.

110. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 117.

111. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 118.

**SIXTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION OF HANKEY'S CLAIM TO YOGI SECURITIES' CLAIM IN REGARD TO THE AMOUNT OF PRINCIPAL AND INTEREST, FEES AND COSTS RELATED TO HANKEY'S PURPORTED LOAN MODIFICATIONS OF DECEMBER 10, 2019 AND AUGUST 20, 2020

[By Reason Of Sections 510(c)(l), 502(a) and 105 Of The Bankruptcy Code]

112. To the extent Paragraph 119 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75, 88 to 102, and 107 to 109 of the Complaint as if fully set forth herein.

113. Hankey denies the allegations of Paragraph 120.

114. Hankey denies the allegations of Paragraph 121.

**SEVENTH CLAIM FOR RELIEF**

CLAIM AGAINST CRESTLLOYD FOR AN ACCOUNTING ON ALL DISBURSEMENTS FROM HANKEY TO CRESTLLOYD FOR CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY, AND ON THE AMOUNT DUE FROM CRESTLLOYD TO HANKEY IN REGARD TO CRESTLLOYD ABIDING BY THE TERMS OF THE CONSTRUCTION LOAN AGREEMENT

115. To the extent Paragraph 122 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 and 98 to 100 of the Complaint as if fully set forth herein.

116. Answering Paragraphs 123 to 125, the paragraphs are part of a claim for relief that is not directed at Hankey and, therefore, require no answer from Hankey.

**EIGHTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR DECLARATORY RELIEF TO THE EFFECT THAT A PORTION OF HANKEY'S PURPORTED LIEN SHOULD BE SUBORDINATED TO THE LIEN OF YOGI SECURITIES TO THE EXTENT THAT HANKEY'S ALLEGED LOANS WERE NOT USED FOR CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY

117. To the extent Paragraph 126 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75, 88 to 101, and 123 to 124 of the Complaint as if fully set forth herein.

118. Hankey admits that this claim for relief purports to state a claim for Declaratory Judgment but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 127.

119. Hankey denies that it had any obligation to monitor or control disbursements of funds under the Construction Loan Agreement and admits that terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 128.

120. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 129.

121. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 130.

122. Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 131.

**NINTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR EQUITABLE SUBORDINATION OF HANKEY'S CLAIM TO THE CLAIM OF YOGI SECURITIES TO THE EXTENT HANKEY'S PURPORTED LOAN WAS NOT USED FOR CONSTRUCTION OF IMPROVEMENTS TO THE PROPERTY

123. To the extent Paragraph 132 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75, 88 to 102, 107 to 109, and 128 of the Complaint as if fully set forth herein.

124. Hankey denies that all proceeds of its loan were required to be used for constructing improvements. Except as expressly admitted, Hankey denies the allegations of Paragraph 133.

**TENTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST HANKEY FOR DISALLOWANCE OF HANKEY'S ALLEGED SECURED CLAIM ARISING FROM THE AUGUST 2020 PROFIT PARTICIPATION AGREEMENT

125. To the extent Paragraph 134 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 of the Complaint as if fully set forth herein.

126. Hankey incorporates its answers to Paragraph 39, 45, and 50 as if fully set forth herein. Hankey admits that the terms of Exhibits DD, KK, and OO are as stated therein. Except as expressly admitted, Hankey denies the remaining allegations of Paragraph 135.

127. Hankey admits that the terms of Exhibits DD, KK, and OO are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 136.

128. Hankey admits that Claim 17 is moot. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 137 of the Complaint and, therefore, denies the allegations therein.

129. Hankey denies that recovery on Claim 18 is contingent on the existence of a security interest in the Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 138.

130. Hankey admits that this claim for relief requests that Claim 18 be disallowed but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 139.

**ELEVENTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST INFERNO FOR RECHARACTERIZATION OF THE CLAIM OF INFERNO FROM DEBT TO EQUITY

131. To the extent Paragraph 140 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 and 78 to 80 of the Complaint as if fully set forth herein.

132. Answering Paragraphs 141 to 148, the paragraphs are part of a claim for relief that is not directed at Hankey and, therefore, require no answer from Hankey.

**TWELFTH CLAIM FOR RELIEF**

CROSSCLAIM AGAINST CRESTLLOYD FOR DECLARATORY RELIEF TO THE EFFECT THAT THE REBATE AND THE DIP LOAN PROCEEDS ARE ENCUMBERED

[By Reason Of Yogi Securities' Lien]

133. To the extent Paragraph 149 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 to 75 of the Complaint as if fully set forth herein.

134. Answering Paragraphs 150 to 156, the paragraphs are part of a claim for relief that is not directed at Hankey and, therefore, require no answer from Hankey.

**PRAYER FOR RELIEF**

135. Hankey denies that Yogi is entitled to the relief sought for any and all of the claims for relief or to any relief whatsoever.

**<u>AFFIRMATIVE DEFENSES</u>**

**FIRST AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

136. Yogi's claims are barred in whole or in part by the doctrine of unclean hands in that Yogi engaged in inequitable conduct in connection with the Property and toward Hankey.

137. At a time when Yogi knew construction on the Property was not complete, Yogi encumbered the Property with the $5,200,000 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit T) for no consideration to Crestlloyd and without notice to other lenders on the Property, including Hankey.

138. Yogi also increased the principal amount of and interest on its loan to Crestlloyd without providing notice to Hankey. On information and belief, in or around June and July, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit N), the nondefault interest rate was increased and Yogi agreed to loan Crestlloyd the additional sum of $400,000, increasing the principal amount of the note by that amount. Further, on or about August 17, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note, interest in the amount of $201,128.12, which had accrued on the note between June 18, 2019, and August 17, 2019, was added to the principal amount of the note (thereby causing Crestlloyd to accrue interest on interest), and Yogi agreed to loan Crestlloyd the additional sum of $739,000, which sum was also added to the principal amount of the same note. These transactions were not recorded until after they were complete, and were completed without Hankey's knowledge or consent.

139. Yogi also acted inequitably by making disbursements on its loan to Crestlloyd as reflected in the $30,188,325 Promissory Note that were not for the benefit of Crestlloyd or the Property. On information and belief, on or around May 2, 2019, Yogi disbursed the sum of $186,640 to Marbella Construction, Inc., and in or around June 2019, Yogi disbursed the sum of $613,360 to Contemporary Vista, LLC. On information and belief, these disbursements were made for the benefit of real property in which Yogi had an interest, but in which Crestlloyd had no interest. Yet, because the disbursements were made pursuant to the loan to Crestlloyd reflected in the $30,188,325 Promissory Note, Crestlloyd is obligated to repay such disbursements, which prejudiced all of Crestlloyd's other creditors, including Hankey.

140. Further, when the Hillcrest Property was sold (as defined by Yogi above), an asset of Crestlloyd, Yogi applied the proceeds of that sale to the $5,200,000 Promissory Note to pay down the obligations of non-Debtor entities, even though Crestlloyd was not a Borrower on that Note, instead of

applying the proceeds of the sale of the Hillcrest Property to an obligation of Crestlloyd, such as specifically to pay down the $30,188,235 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit N) for which Crestlloyd is the Borrower. In this way, Yogi was the recipient of a fraudulent transfer of funds from the sale of the Hillcrest Property. And by applying the proceeds of the sale of the Hillcrest Property to a non-Debtor obligation, rather than to the obligations of Crestlloyd under the $30,188,325 Promissory Note that underlies Yogi's claims here, Yogi prejudiced the security of all other lenders on the Property, including Hankey.

141. In addition, on information and belief, Debtor sold the Hillcrest Property to an entity related to Yogi and/or owned by its principals, Trousdale Estate ("Trousdale"), on or around February 7, 2020, for the sum of $38,250,000. Then, on information and belief, on or about November 24, 2020, fewer than ten months after purchasing the Hillcrest Property, Trousdale sold the Hillcrest Property to a third party for the sum of $47,000,000, representing a profit of $8,675,000 or approximately 23% in less than a year, suggesting that the sale of the Hillcrest Property from Crestlloyd to Trousdale was not an arms-length transaction made in good faith.

142. Further, Yogi acted inequitably with respect to the Property because it had the right to inspect the Property and "all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property" pursuant to its rights in the $30,188,325 Promissory Note; however, instead of exercising those rights, Yogi did nothing and then delayed until after the Debtor filed bankruptcy to complain about action and/or inaction that it could and should have known about had it properly and timely exercised its rights under its $30,188,325 Promissory Note during construction on the Property.

143. Yogi's November 7, 2018 Deed of Trust (attached to Yogi's Complaint as Exhibit O) also provides that Crestlloyd cannot (a) sell, convey, transfer, assign, or further encumber the Property, or (b) alter or demolish any improvements on the Property without the written consent of Yogi, which consent can be withheld at Yogi's sole and absolute discretion. Thus, Yogi acted inequitably in exercising complete control over, among other things, Crestlloyd's ability to sell, transfer, encumber, and alter the Property.

144. Moreover, principals of the Debtor also had ownership interests in other entities to which Yogi made loans. Yogi did not honor the separate nature of those other entities, including by cross-collateralizing loans to the different entities and cross-defaulting loans to those separate entities, including as discussed herein.

145. In addition, the $30,188,325 Promissory Note requires that Yogi be paid certain sums from the sales of other properties pledged as security for the $30,188,325 Promissory Note, in addition to the Property and the Hillcrest Property. Specifically, the $30,188,325 Promissory Note requires that Yogi will be paid $10,000,000 upon the sale of the Londonderry Property (as defined in the $30,188,325 Promissory Note); $10,000,000 upon the sale of the Bellagio Property (as defined in the $30,188,325 Promissory Note); $15,000,000 upon the sale of the Carcassonne Property (as defined in the $30,188,325 Promissory Note); and $5,000,000,000 upon the sale of the Stone Ridge Property (as defined in the $30,188,325 Promissory Note) (collectively, the "Non-Crestlloyd Secured Properties"). All four of the Non-Crestlloyd Secured Properties were sold; thus, had Yogi enforced the terms of the $30,188,325 Promissory Note, the $30,188,325 Promissory Note would have been paid in full and Yogi would have been owed nothing on the $30,188,325 Promissory Note that underlies its claims here. As an example of funds from the sale of the Non-Crestlloyd Secured Properties that Yogi did not require to be applied to the $30,188,325 Promissory Note as that note required, on information and belief, when the Londonderry Property was sold, approximately $2,700,000 of the sale proceeds from that sale were applied to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of said proceeds being applied to the $30,188,325 Promissory Note for which the Londonderry Property had been pledged as security. Yogi has thus acted inequitably by seeking to recover from Debtor sums that it is owed as a result of its own failure to enforce the terms of the $30,188,325 Promissory Note against the Non-Crestlloyd Properties, at the expense of other lenders on the Property whose debts are not secured by the Non-Crestlloyd Properties, including Hankey.

**SECOND AFFIRMATIVE DEFENSE**
**(Waiver and/or Consent)**

146. Yogi's claims are barred in whole or in part by the doctrine of waiver.

147. Pursuant to the $30,188,325 Promissory Note, Yogi consented to indebtedness senior to its own loans to the Property up to $115,000,000. Therefore, Yogi has waived the right to complain that Hankey's loans to Crestlloyd secured by the Property that do not exceed $115,000,000 should be rendered junior to all or any portion of Yogi's $30,188,325 Promissory Note.

148. Further, Yogi waived the right to complain about how loans to Crestlloyd secured by the Property were used by failing to exercise its contractual rights under the $30,188,325 Promissory Note. Under the $30,188,325 Promissory Note, Yogi had the right to inspect the Property and "all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property"; however, instead of exercising those rights, Yogi did nothing and then delayed until after the Debtor filed bankruptcy to complain about action and/or inaction that it could and should have known about had it properly and timely exercised its rights under its $30,188,325 Promissory Note during construction on the Property.

149. In addition, Yogi waived the right to complain about the sale of the Property, the use of funds to Crestlloyd, or Hankey's purported control over the use of those funds, because Yogi's November 7, 2018 Deed of Trust (attached to Yogi's Complaint as Exhibit O), provides that Crestlloyd cannot (a) sell, convey, transfer, assign, or further encumber the Property, or (b) alter or demolish any improvements on the Property without the written consent of Yogi, which consent can be withheld at Yogi's sole and absolute discretion. Thus, Yogi exercised complete control over, among other things, Crestlloyd's ability to sell, transfer, encumber, and alter the Property.

150. Further, Yogi waived the right to complain about funds being used for purposes other than construction on the Property by making disbursements on its loan to Crestlloyd as reflected in the $30,188,325 Promissory Note that were not for the benefit of Crestlloyd or the Property. On information and belief, on or around May 2, 2019, Yogi disbursed the sum of $186,640 to Marbella Construction, Inc., and in or around June 2019, Yogi disbursed the sum of $613,360 to Contemporary Vista, LLC. On information and belief, these disbursements were made for the benefit of real property in which Yogi had an interest, but in which Crestlloyd had no interest. Yet, because the disbursements were made pursuant to the loan to Crestlloyd reflected in the $30,188,325 Promissory Note, Crestlloyd is obligated to repay such disbursements, which prejudiced all of Crestlloyd's other creditors, including Hankey.

151. Yogi also increased the principal amount of and interest on its loan to Crestlloyd without providing notice to Hankey. On information and belief, in or around June and July, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit N), the nondefault interest rate was increased and Yogi agreed to loan Crestlloyd the additional sum of $400,000, increasing the principal amount of the note by that amount. Further, on or about August 17, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit N), interest in the amount of $201,128.12, which had accrued on the note between June 18, 2019, and August 17, 2019, was added to the principal amount of the note (thereby causing Crestlloyd to accrue interest on interest), and Yogi agreed to loan Crestlloyd the additional sum of $739,000, which sum was also added to the principal amount of the same note. These transactions were not recorded until after they were complete, and without Hankey's knowledge or consent. Thus, to the extent Yogi claims it is a senior creditor, Yogi has waived the right to complain that Hankey (as a senior creditor) increased the principal amount of its loan or the interest that it charged without notice to Yogi or that Hankey charged interest on interest to Crestlloyd.

152. Moreover, principals of the Debtor also had ownership interests in other entities to which Yogi made loans. Yogi did not honor the separate nature of those other entities, including by cross-collateralizing loans to the different entities and cross-defaulting loans to those separate entities, including as discussed herein.

153. Further, the $30,188,325 Promissory Note requires that Yogi be paid certain sums from the sales of other properties pledged as additional security for the $30,188,325 Promissory Note. Specifically, the $30,188,325 Promissory Note requires that Yogi will be paid $10,000,000 upon the sale of the Londonderry Property (as defined in the $30,188,325 Promissory Note); $10,000,000 upon the sale of the Bellagio Property (as defined in the $30,188,325 Promissory Note); $15,000,000 upon the sale of the Carcassonne Property (as defined in the $30,188,325 Promissory Note); and $5,000,000,000 upon the sale of the Stone Ridge Property (as defined in the $30,188,325 Promissory Note). All four of these Non-Crestlloyd Secured Properties were sold; thus, had Yogi enforced the terms of the $30,188,325 Promissory Note, the $30,188,325 Promissory Note would have been paid in full and Yogi

would have been owed nothing on the $30,188,325 Promissory Note that underlines its claims here. As an example of funds from the sale of the Non-Crestlloyd Secured Properties that Yogi did not require to be applied to the $30,188,325 Promissory Note as that note required, on information and belief, when the Londonderry Property was sold, approximately $2,700,000 of the sale proceeds from that sale were applied to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of said proceeds being applied to the $30,188,325 Promissory Note for which the Londonderry Property had been pledged as security. By failing to enforce the terms of the $30,188,325 Promissory Note against the Non-Crestlloyd Properties, Yogi has waived the right to claim that it should be paid on the $30,188,325 Promissory Note from funds from the sale of the Property.

154. In addition, when the Hillcrest Property was sold, an asset of Crestlloyd, Yogi applied the proceeds of that sale to the $5,200,000 Promissory Note to pay down the obligations of non-Debtor entities, even though Crestlloyd was not a Borrower on that Note, instead of applying the proceeds of the sale of the Hillcrest Property to an obligation of Crestlloyd, such as specifically to pay down the $30,188,325 Promissory Note for which Crestlloyd is the Borrower. Further, on information and belief, Debtor sold the Hillcrest Property to an entity related to Yogi and/or owned by its principals, Trousdale, on or around February 7, 2020, for the sum of $38,250,000. Then, on information and belief, on or about November 24, 2020, fewer than ten months after purchasing the Hillcrest Property, Trousdale sold the Hillcrest Property to a third party for the sum of $47,000,000, representing a profit of $8,675,000 or approximately 23% in less than a year, suggesting that the sale of the Hillcrest Property from Crestlloyd to Trousdale was not an arms-length transaction made in good faith. Yogi was thus the voluntary recipient of a fraudulent transfer and waived the right to claim funds from the sale of the Property to pay the amounts owed under the $30,188,325 Promissory Note that it could have recovered, but did not recover, from the sale of the Hillcrest Property.

**THIRD AFFIRMATIVE DEFENSE**
**(Estoppel)**

155. Yogi's claims are barred in whole or in part by the doctrine of estoppel.

156. Pursuant to the $30,188,325 Promissory Note, Yogi consented to indebtedness senior to its own loans to the Property up to $115,000,000. Therefore, Yogi is estopped to deny that Hankey's

loans to Crestlloyd secured by the Property that do not exceed $115,000,000 are senior to all or any portion of Yogi's $30,188,325 Promissory Note.

157. Further, Yogi is estopped to complain about how funds loaned to Crestlloyd that were secured by the Property were expended because it had the right to inspect the Property and "all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property" pursuant to its rights in the $30,188,325 Promissory Note; however, instead of exercising those rights, Yogi did nothing and then delayed until after the Debtor filed bankruptcy to complain about action and/or inaction that it could and should have known about had it properly and timely exercised its rights under its $30,188,325 Promissory Note during construction on the Property. In addition, because of Yogi's inspection rights, it knew or should have known that the funds that had been loaned to Crestlloyd were insufficient to complete construction, and thus Yogi is estopped to argue that Hankey's additional advances to Crestlloyd after its initial $82,500,000 loan were unnecessary or otherwise improper in any way such that they should be subordinated, equitably subordinated, or otherwise not repaid from proceeds from the sale of the Property.

158. In addition, Yogi is estopped to complain about the sale of the Property, the use of funds to Crestlloyd, or Hankey's purported control over the use of those funds, because Yogi's November 7, 2018 Deed of Trust (attached to Yogi's Complaint as Exhibit O), provides that Crestlloyd cannot (a) sell, convey, transfer, assign, or further encumber the Property, or (b) alter or demolish any improvements on the Property without the written consent of Yogi, which consent can be withheld at Yogi's sole and absolute discretion. Thus, Yogi exercised complete control over, among other things, Crestlloyd's ability to sell, transfer, encumber, and alter the Property.

159. Further, Yogi is estopped to complain about funds being used for purposes other than construction on the Property by making disbursements on its loan to Crestlloyd as reflected in the $30,188,325 Promissory Note that were not for the benefit of Crestlloyd or the Property. On information and belief, on or around May 2, 2019, Yogi disbursed the sum of $186,640 to Marbella Construction, Inc., and in or around June 2019, Yogi disbursed the sum of $613,360 to Contemporary Vista, LLC. On information and belief, these disbursements were made for the benefit of real property in which Yogi

had an interest, but in which Crestlloyd had no interest. Yet, because the disbursements were made pursuant to the loan to Crestlloyd reflected in the $30,188,325 Promissory Note, Crestlloyd is obligated to repay such disbursements, which prejudiced all of Crestlloyd's other creditors, including Hankey.

160. In addition, Yogi is estopped to claim that Hankey's practices of charging interest, default interest, and/or interest on interest, is improper or otherwise supports the notion that any sums Hankey is owed for its loans to Crestlloyd secured by the Property should be subordinated, equitably subordinated, or otherwise not repaid from proceeds from the sale of the Property, to the extent that Yogi's $30,188,325 Promissory Note permits the same practice of charging interest, default interest, and/or interest on interest, and to the extent Yogi also charged interest on interest.

161. Yogi also increased the principal amount of and interest on its loan to Crestlloyd without providing notice to Hankey. On information and belief, in or around June and July, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit N), the nondefault interest rate was increased and Yogi agreed to loan Crestlloyd the additional sum of $400,000, increasing the principal amount of the note by that amount. Further, on or about August 17, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit N), interest in the amount of $201,128.12, which had accrued on the note between June 18, 2019, and August 17, 2019, was added to the principal amount of the note (thereby causing Crestlloyd to accrue interest on interest), and Yogi agreed to loan Crestlloyd the additional sum of $739,000, which sum was also added to the principal amount of the same note. These transactions were not recorded until after they were complete, and without Hankey's knowledge or consent. Thus, to the extent Yogi claims it is a senior creditor, Yogi is estopped to complain that Hankey (as a senior creditor) increased the principal amount of its loan or the interest that it charged without notice to Yogi or that Hankey charged interest on interest to Crestlloyd.

162. Principals of the Debtor also had ownership interests in other entities to which Yogi made loans. Yogi did not honor the separate nature of those other entities, including by cross-collateralizing loans to the different entities and cross-defaulting loans to those separate entities,

including as discussed herein. Yogi is thus estopped to claim that it is owed sums as a good faith creditor of Debtor.

163. Yogi is also estopped to assert that it is owed sums on the $30,188,325 Promissory Note in excess of the sums it could have, but did not recover, pursuant to the sales of the Non-Crestlloyd Secured Properties and the Hillcrest Property. The $30,188,325 Promissory Note required that Yogi be paid certain sums from the sales of other properties pledged as additional security for the $30,188,325 Promissory Note. Specifically, the $30,188,325 Promissory Note requires that Yogi will be paid $10,000,000 upon the sale of the Londonderry Property (as defined in the $30,188,325 Promissory Note); $10,000,000 upon the sale of the Bellagio Property (as defined in the $30,188,325 Promissory Note); $15,000,000 upon the sale of the Carcassonne Property (as defined in the $30,188,325 Promissory Note); and $5,000,000,000 upon the sale of the Stone Ridge Property (as defined in the $30,188,325 Promissory Note). All four of these Non-Crestlloyd Secured Properties were sold; thus, had Yogi enforced the terms of the $30,188,325 Promissory Note, the $30,188,325 Promissory Note would have been paid in full, and Yogi would have been owed nothing on the $30,188,325 Promissory Note that underlines its claims here. As an example of funds from the sale of the Non-Crestlloyd Secured Properties that Yogi did not require to be applied to the $30,188,325 Promissory Note as that note required, on information and belief, when the Londonderry Property was sold, approximately $2,700,000 of the sale proceeds from that sale were applied to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of said proceeds being applied to the $30,188,325 Promissory Note for which the Londonderry Property had been pledged as security. Further, when the Hillcrest Property was sold, an asset of Crestlloyd, Yogi applied the proceeds of that sale to the $5,200,000 Promissory Note to pay down the obligations of non-Debtor entities, even though Crestlloyd was not a Borrower on that Note, instead of applying the proceeds of the sale of the Hillcrest Property to an obligation of Crestlloyd, such as specifically to pay down the $30,188,325 Promissory Note for which Crestlloyd is the Borrower. Further, on information and belief, Debtor sold the Hillcrest Property to an entity related to Yogi and/or owned by its principals, Trousdale, on or around February 7, 2020, for the sum of $38,250,000. Then, on information and belief, on or about November 24, 2020, fewer than ten months after purchasing the Hillcrest Property, Trousdale sold the Hillcrest Property to a

third party for the sum of $47,000,000, representing a profit of $8,675,000 or approximately 23% in less than a year, suggesting that the sale of the Hillcrest Property from Crestlloyd to Trousdale was not an arms-length transaction made in good faith. Yogi is estopped to claim that it is thus owed anything on the $30,188,325 Promissory Note in excess of the sums it voluntarily chose not to recover from the sales of the Non-Crestlloyd Properties, chose not to apply to the $30,188,325 Promissory from the sale of the Hillcrest Property, or could have recovered from the sale of the Hillcrest Property from Crestlloyd to Trousdale had that sale been made in good faith.

**FOURTH AFFIRMATIVE DEFENSE**
**(Offset)**

164. Yogi's claims are barred in whole or in part by the doctrine of offset.

165. Yogi's claims to be paid on the $30,188,325 Promissory Note should be offset by the sums it could have, but did not, collect from the sales of the Non-Crestlloyd Secured Properties that were also security for the $30,188,325 Promissory Note, as well as by the proceeds it collected from the sale of the Hillcrest Property that were applied to the $5,200,000 Promissory Note for obligations of non-Debtor entities, instead of toward Crestlloyd's obligations under the $30,188,325 Promissory Note. The $30,188,325 Promissory Note required that Yogi be paid certain sums from the sales of other properties pledged as additional security for the $30,188,325 Promissory Note. Specifically, the $30,188,325 Promissory Note requires that Yogi will be paid $10,000,000 upon the sale of the Londonderry Property (as defined in the $30,188,325 Promissory Note); $10,000,000 upon the sale of the Bellagio Property (as defined in the $30,188,325 Promissory Note); $15,000,000 upon the sale of the Carcassonne Property (as defined in the $30,188,325 Promissory Note); and $5,000,000,000 upon the sale of the Stone Ridge Property (as defined in the $30,188,325 Promissory Note). All four of these Non-Crestlloyd Secured Properties were sold; thus, had Yogi enforced the terms of the $30,188,325 Promissory Note, the $30,188,325 Promissory Note would have been paid in full and Yogi would have been owed nothing on the $30,188,325 Promissory Note that underlines its claims here. As an example of funds from the sale of the Non-Crestlloyd Secured Properties that Yogi did not require to be applied to the $30,188,325 Promissory Note as that note required, on information and belief, when the Londonderry Property was sold, approximately $2,700,000 of the sale proceeds from that sale were

applied to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of said proceeds being applied to the $30,188,325 Promissory Note for which the Londonderry Property had been pledged as security.

166. Further, when the Hillcrest Property was sold, an asset of Crestlloyd, Yogi applied the proceeds of that sale to the $5,200,000 Promissory Note to pay down the obligations of non-Debtor entities, even though Crestlloyd was not a Borrower on that Note, instead of applying the proceeds of the sale of the Hillcrest Property to an obligation of Crestlloyd, such as specifically to pay down the $30,188,235 Promissory Note for which Crestlloyd is the Borrower. In addition, on information and belief, Debtor sold the Hillcrest Property to an entity related to Yogi and/or owned by its principals, Trousdale, on or around February 7, 2020, for the sum of $38,250,000. Then, on information and belief, on or about November 24, 2020, fewer than ten months after purchasing the Hillcrest Property, Trousdale sold the Hillcrest Property to a third party for the sum of $47,000,000, representing a profit of $8,675,000 or approximately 23% in less than a year, suggesting that the sale of the Hillcrest Property from Crestlloyd to Trousdale was not an arms-length transaction made in good faith.

167. Principals of the Debtor also had ownership interests in other entities to which Yogi made loans. Yogi did not honor the separate nature of those other entities, including by cross-collateralizing loans to the different entities and cross-defaulting loans to those separate entities, including as discussed herein. Yogi's claims to be paid on the $30,188,325 Promissory Note should thus be offset by the sums it could have, but did not, collect from the sales of properties that were owned by the other entities in which the principals of Debtor had an ownership interest, as well as by the proceeds it collected from the sales of any properties that were owned by the other entities in which the principals of Debtor had an ownership interest.

168. Further, Yogi made disbursements on its loan to Crestlloyd as reflected in the $30,188,325 Promissory Note that were not for the benefit of Crestlloyd or the Property. On information and belief, on or around May 2, 2019, Yogi disbursed the sum of $186,640 to Marbella Construction, Inc., and in or around June 2019, Yogi disbursed the sum of $613,360 to Contemporary Vista, LLC. On information and belief, these disbursements were made for the benefit of real property in which Yogi had an interest, but in which Crestlloyd had no interest. Yet, because the disbursements were made

pursuant to the loan to Crestlloyd reflected in the $30,188,325 Promissory Note, Crestlloyd is obligated to repay such disbursements, which prejudiced all of Crestlloyd's other creditors, including Hankey.

169. Hankey also alleges, on information and belief, that Yogi was compensated by Crestlloyd separate and apart from being paid funds from the sales of the Hillcrest Property or the Non-Crestlloyd Secured Properties, and any claim of Yogi to be paid on the $30,188,325 Promissory Note should accordingly be offset by the value of any and all compensation Yogi received from Crestlloyd, whether monetary or non-monetary, as well as the compensation it should have received from the sale of the Hillcrest Property from Crestlloyd to Trousdale had that sale been made in good faith, and the sums that were disbursed on the loan reflected in $30,188,325 .

**FIFTH AFFIRMATIVE DEFENSE**
**(Marshaling)**

170. Yogi's claims are barred in whole or in part by the doctrine of marshaling.

171. In fairness and equity, Yogi should be required to look to the sale of the Hillcrest Property to satisfy the $30,188,325 Promissory Note before looking to the proceeds of the sale of the Property. Yogi acted inequitably because, at a time when Yogi knew construction on the Property was not complete, Yogi encumbered the Property with the $5,200,000 Promissory Note for no consideration to Crestlloyd and without notice to other lenders on the Property, including Hankey. Then, when the Hillcrest Property was sold (as defined by Yogi above), an asset of Crestlloyd, Yogi applied the proceeds of that sale to the $5,200,000 Promissory Note to pay down the obligations of non-Debtor entities, even though Crestlloyd was not a Borrower on that Note, instead of applying the proceeds of the sale of the Hillcrest Property to an obligation of Crestlloyd, such as specifically to pay down the $30,188,325 Promissory Note for which Crestlloyd is the Borrower. In this way, Yogi was the recipient of a fraudulent transfer of funds from the sale of the Hillcrest Property. And by applying the proceeds of the sale of the Hillcrest Property to a non-Debtor obligation, rather than to the obligations of Crestlloyd under the $30,188,325 Promissory Note that underlies Yogi's claims here, Yogi prejudiced the security of all other lenders on the Property, including Hankey. Further, on information and belief, Debtor sold the Hillcrest Property to an entity related to Yogi and/or owned by its principals, Trousdale, on or around February 7, 2020, for the sum of $38,250,000. Then, on information and belief, on or about

November 24, 2020, fewer than ten months after purchasing the Hillcrest Property, Trousdale sold the Hillcrest Property to a third party for the sum of $47,000,000, representing a profit of $8,675,000 or approximately 23% in less than a year, suggesting that the sale of the Hillcrest Property from Crestlloyd to Trousdale was not an arms-length transaction made in good faith.

172. Thus, Yogi should be required to look to the proceeds from the sale of the Hillcrest Property to satisfy Crestlloyd's obligation to it under the $30,188,325 Promissory Note before looking to the proceeds of the sale of the Property that are necessary to satisfy the debts to creditors other than Yogi whose loans were not secured by the Hillcrest Property, including Hankey. Yogi should also be required to look to the proceeds that it could have recovered from the sale of the Hillcrest Property from Crestlloyd to Trousdale had that sale been made in good faith.

173. Principals of the Debtor also had ownership interests in other entities to which Yogi made loans. Yogi did not honor the separate nature of those other entities, including by cross-collateralizing loans to the different entities and cross-defaulting loans to those separate entities, including as discussed herein. Thus, Yogi should be required to look to the sums it could have, but did not, collect from the sales of properties that were owned by the other entities in which the principals of Debtor had an ownership interest, as well as by the proceeds it collected from the sales of any properties that were owned by the other entities in which the principals of Debtor had an ownership interest, before looking to satisfy the $30,188,325 Promissory Note from the proceeds of the sale of the Property that are necessary to satisfy the debts to creditors other than Yogi.

**SIXTH AFFIRMATIVE DEFENSE**
**(Intervening and Superseding Cause)**

174. If Yogi suffered or sustained any loss or damages, such loss or damage was legally caused or contributed to by the conduct of other parties, persons, or entities, including Yogi, who engaged in the aforementioned conduct, including deliberately failing to exercise its rights under the $30,188,325 Promissory Note, both in respect to inspecting the Property and in failing to recover sums it was owed from sales of the Non-Crestlloyd Secured Properties to pay down the $30,188,325 Promissory Note, and including Crestlloyd who, on information and belief, engaged in conduct and decisions unrelated to Hankey that rendered it unable to pay all of its outstanding debts and enter bankruptcy,

leaving secured creditors without sufficient recourse to recover all sums owed to them, as well as to the extent Yogi and/or Crestlloyd failed to recognize and honor the separate nature of different entities owned by the principals of Crestlloyd.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Bankruptcy Code Section 502(d))**

175. At a time when Yogi knew construction on the Property was not complete, Yogi encumbered the Property with the $5,200,000 Promissory Note for no consideration to Crestlloyd and without notice to other lenders on the Property, including Hankey. Then, when the Hillcrest Property was sold (as defined by Yogi above), an asset of Crestlloyd, Yogi applied the proceeds of that sale to the $5,200,000 Promissory Note to pay down the obligations of non-Debtor entities, even though Crestlloyd was not a Borrower on that Note, instead of applying the proceeds of the sale of the Hillcrest Property to an obligation of Crestlloyd, such as specifically to pay down the $30,188,325 Promissory Note for which Crestlloyd is the Borrower. Further, on information and belief, when the Londonderry Property was sold, approximately $2,700,000 of the sale proceeds from that sale were applied to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of said proceeds being applied to the $30,188,325 Promissory Note for which the Londonderry Property had been pledged as security. In this way, Yogi was the recipient of fraudulent transfers of funds from the sales of the Hillcrest Property and the Londonderry Property. Yogi thus voluntarily received fraudulent transfers pursuant to 11 U.S.C. § 502(d), and Yogi's claim must accordingly be disallowed until such time as it has paid the amount of the transfer.

**RESERVATION OF DEFENSES**

176. Further responding, Hankey states that it currently has insufficient information or knowledge on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. Hankey reserves the right to assert additional affirmative defenses in the event that discovery indicates it would be appropriate.

## CROSS-CLAIM

Hankey Capital, LLC ("Hankey") hereby alleges for its Cross-Claim against Yogi Securities Holdings, LLC ("Yogi") as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Further, this Court has personal jurisdiction over Yogi because Yogi filed its adversary complaint in this jurisdiction.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises in and relates to a case under Title 11 of the Federal Bankruptcy Court that is now pending in this District.

3. This cross-claim is a "core" proceeding as defined in 28 U.S.C. § 157 because it seeks equitable subordination and thus seeks a determination as to the validity, extent, and/or priority of liens against property. Hankey accordingly consents to entry of a final judgment by the bankruptcy judge.

### THE PARTIES

4. Hankey is a limited liability company organized and existing under the laws of the State of California.

5. Hankey alleges, on information and belief, that Yogi is a limited liability company duly organized and existing under the laws of the State of Nevada.

### FACTUAL BACKGROUND

**A. Hankey's Loans to Crestlloyd**

6. In 2018, Debtor, Crestlloyd, LLC ("Debtor" or "Crestlloyd") was the owner of property at 944 Airole Way in Los Angeles, California, and was working to construct a luxury home thereon (the "Property"). To do so, Debtor needed funding.

7. On or around October 25, 2018, Debtor and Hankey entered into a Construction Loan Agreement (the "Agreement") in which Hankey agreed to loan Debtor $82,500,000, a copy of which Agreement is attached to Yogi's Complaint as Exhibit AA. In connection with that Agreement, Debtor delivered to Hankey a Promissory Note in the principal sum of $82,500,000, a copy of which is attached to Yogi's Complaint as Exhibit BB, and the parties recorded a Construction Deed of Trust, Security

Agreement and Fixture (the "Hankey Deed of Trust"), a copy of which is attached to Yogi's Complaint as Exhibit FF. The $82,500,000 loan was secured by the Property.

8. Although Debtor represented to Hankey that the $82,500,000 loan would be sufficient to complete construction on the Property, that was ultimately not true. Thus, at Debtor's request, on two occasions, and consistent with its rights under the Hankey Deed of Trust to protects its security interest, Hankey and Debtor agreed on two subsequent loan modifications, increasing the principal to $91,000,000 and later to $106,000,000 in or around December 2019 and August 2020, respectively. Each of these modifications was also secured by the Property and was evidenced by an amended Promissory Note, copies of which documents are attached to Yogi's Complaint as Exhibits HH and LL. The parties recorded a Modification of Deed of Trust confirming the increase in principal of Hankey's loan to Crestlloyd secured by the Property to $106,000,000, a copy of which document is attached to Yogi's Complaint as Exhibit NN.

9. On or around January 14, 2022, Hankey filed its proof of claim 20 for which it seeks recovery in this bankruptcy in the amount of $122,638,623.41, which is the amount due and owing on its $106,000,000 loan with appropriate interest.

**B. Yogi's Loans to Crestlloyd**

10. On information and belief, in October 2018, Crestlloyd executed a Secured Promissory Note in favor of Yogi in the principal amount of $30,188,235. Yogi deliberately delayed recording, and did not record, the Deed of Trust in connection with the $30,188,235 Secured Promissory Note until after Hankey recorded the Hankey Deed of Trust.

11. Yogi's November 7, 2018 Deed of Trust (attached to Yogi's Complaint as Exhibit O) in connection with the $30,188,325 Secured Promissory Note also provides that Crestlloyd cannot (a) sell, convey, transfer, assign, or further encumber the Property, or (b) alter or demolish any improvements on the Property without the written consent of Yogi, which consent can be withheld at Yogi's sole and absolute discretion. Thus, Yogi exercised complete control over, among other things, Crestlloyd's ability to sell, transfer, encumber, and alter the Property.

12. On information and belief, also in October 2018, and as further security for the $30,188,235 Secured Promissory Note:

a. Crestlloyd executed and delivered a Deed Of Trust And Assignment Of Rents (the "Hillcrest Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "Hillcrest Property");

b. 10701 Bellagio Road, LLC ("Bellagio") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Bellagio Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 10701 Bellagio Road, Los Angeles, California 90077 (the "Bellagio Property");

c. Carcassonne Fine Homes, LLC ("Carcassonne") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Carcassonne Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 627 North Carcassonne Road, Los Angeles, California 90077 (the "Carcassonne Property");

d. Marbella Construction, Inc. ("Marbella") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Marbella Deed Of Trust") dated October 16, 2018, further securing the obligation with real property located at 3381 Stone Ridge Road, Los Angeles, California 90077 (the "Stone Ridge Property"); and

e. 1369 Londonderry Estate, LLC ("Londonderry") executed and delivered a Deed Of Trust And Assignment Of Rents (the "Londonderry Deed Of Trust") dated October 16 2018, further securing the obligation with real property located at 1369 Londonderry Place, Los Angeles, California 90069 (the "Londonderry Property").

Yogi's loan to Crestlloyd in the amount of $30,188,235 was secured by the Property; another Crestlloyd asset, the Hillcrest Property; and four non-Crestlloyd assets, the Bellagio Property, the Carcassone Property, the Stone Ridge Property, and the Londonderry Property (the "Non-Crestlloyd Properties").

13. Yogi also made disbursements on this loan to Crestlloyd that were not for the benefit of Crestlloyd or the Property. On information and belief, on or around May 2, 2019, Yogi disbursed the sum of $186,640 to Marbella Construction, Inc., and in or around June 2019, Yogi disbursed the sum of $613,360 to Contemporary Vista, LLC. On information and belief, these disbursements were made for the benefit of real property in which Yogi had an interest, but in which Crestlloyd had no interest. Yet,

because the disbursements were made pursuant to the loan to Crestlloyd reflected in the $30,188,325 Promissory Note, Crestlloyd is obligated to repay such disbursements, which prejudiced all of Crestlloyd's other creditors, including Hankey.

14. Pursuant to the $30,188,235 Secured Promissory Note in favor of Yogi, Yogi was entitled to the following payments from the sale of the four Non-Crestlloyd Properties up until the Secured Promissory Note was paid in full:

a. $10,000,000 upon the sale of the Bellagio Property

b. $15,000,000 upon the sale of the Carcassone Property;

c. $5,000,000 upon the sale of the Stone Ridge Property; and

d. $10,000,000 upon the sale of the Londonderry Property.

Thus, Yogi was entitled to be paid as much as $40,000,000 upon the sale of the Non-Crestlloyd Properties in order to pay the $30,188,235 Secured Promissory Note, until it was paid in full, including in the event that the Non-Crestlloyd Properties were sold before the Property or the Hillcrest Property, in which case Yogi might not have needed to recover any sums from the sale of the Property or the Hillcrest Property in order to be repaid in full for its loan in the principal amount of $30,188,235.

15. As an example of funds from the sale of the Non-Crestlloyd Secured Properties that Yogi did not require to be applied to the $30,188,325 Promissory Note as that note required, on information and belief, when the Londonderry Property was sold, approximately $2,700,000 of the sale proceeds from that sale were applied to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of said proceedings being applied to the $30,188,325 Promissory Note for which the Londonderry Property had been pledged as security.

16. Yogi also increased the principal amount of and interest on its loan to Crestlloyd without providing notice to Hankey. On information and belief, in or around June and July, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit N), the nondefault interest rate was increased and Yogi agreed to loan Crestlloyd the additional sum of $400,000, increasing the principal amount of the note by that amount. Further, on or about August 17, 2019, in addition to extending the maturity date on the $30,188,325 Promissory Note (as defined by Yogi above and attached to Yogi's Complaint as Exhibit

N), interest in the amount of $201,128.12, which had accrued on the note between June 18, 2019, and August 17, 2019, was added to the principal amount of the note (thereby causing Crestlloyd to accrue interest on interest), and Yogi agreed to loan Crestlloyd the additional sum of $739,000, which sum was also added to the principal amount of the same note. These transactions were not recorded until after they were complete, and without Hankey's knowledge or consent. Separate and apart from the $30,188,235 Secured Promissory Note, on information and belief, on or about April 20, 2018, Marbella and Londonderry executed and delivered a $5,200,000 Secured Promissory Note in favor of Yogi, and each of Marbella and Londonderry executed and delivered Deeds of Trust in connection with the $5,200,000 Secured Promissory Note, which were recorded.

17. On or around September 18, 2019—after Hankey had made its initial loan to Crestlloyd secured by the Property of $82,500,000 and had recorded proof of same—on information and belief, Crestlloyd, Marbella, Londonderry, and Yogi entered into a Fourth Amendment of Note and Deed of Trust related to the $5,200,000 Secured Promissory Note, which added the Property as security for the $5,200,000 Secured Promissory Note, in exchange for no consideration or benefit to Debtor.

**C. The Sale of the Hillcrest Property and the Non-Crestlloyd Properties**

18. On information and belief, on or around February 7, 2020, the Hillcrest Property sold for $38,325,000 by Debtor to an entity related to Yogi and/or owned by its principals, Trousdale Estate ("Trousdale"). On information and belief, of that sum, $6,435,535,37 was credited toward Yogi's $5,200,000 Secured Promissory Note, even though the Hillcrest Property had not been pledged as security for that Note and Crestlloyd was not the Borrower on that Note.

19. Then, on information and belief, on or about November 24, 2020, fewer than ten months after purchasing the Hillcrest Property, Trousdale sold the Hillcrest Property to a third party for the sum of $47,000,000, representing a profit of $8,675,000 or approximately 23% in less than a year, suggesting that the sale of the Hillcrest Property from Crestlloyd to Trousdale was not an arms-length transaction made in good faith.

20. On information and belief, on or about February 9, 2021, the Londonderry Property was sold. Although the $30,188,235 Secured Promissory Note entitled Yogi to be paid $10,000,000 upon the sale of the Londonderry Property, Yogi accepted only $8,708,122 upon the sale of the Londonderry

Property, foregoing its right to an additional payment of $1,291,878 to pay down the outstanding sum on the $30,188,235 Secured Promissory Note. Rather, on information and belief, when the Londonderry Property was sold, approximately $2,700,000 of the sale proceeds from that sale were applied to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of said proceeds being applied to the $30,188,325 Promissory Note for which the Londonderry Property had been pledged as security.

21. On information and belief, the other Non-Crestlloyd Properties—the Bellagio Property, the Carcassone Property, and the Stone Ridge Property—were also sold between February 7, 2020, and July 9, 2021.

22. On information and belief, from the sales of the Hillcrest Property and the Non-Crestlloyd Properties, Yogi accepted a total of only $15,240,346.44 to reduce Crestlloyd's obligations on the $30,188,235 Secured Promissory Note, even though the terms of that Note entitled Yogi to $40,000,000 upon the sale of just the Non-Crestlloyd Properties, foregoing its right to additional payments of at least $24,759,653.56.

23. Despite this, Yogi submitted proof of claim number 27 in this bankruptcy case based on the $30,188,235 Secured Promissory Note and claims to be owed $24,385,366.77 thereon, which is less than the sums to which it was entitled from the sale of the Non-Crestlloyd Properties and which it would have been paid had Yogi enforced the terms of the $30,188,235 Secured Promissory Note according to its terms.

**FIRST CLAIM FOR RELIEF AGAINST YOGI**

**For Equitable Subordination**

24. Hankey repeats and realleges each of the allegations in the foregoing paragraphs 1-23 and incorporates them by reference as if fully set forth herein.

25. Hankey seeks recovery pursuant to its proof of claim 20 of $122,638,623.41 for the outstanding balance due and owing to it for its loan in the principal amount of $106,000,000 plus appropriate interest. Meanwhile, Yogi seeks to recover pursuant to its proof of claim 27 for $24,385,366.77, which is the sum Yogi claims is due and owing pursuant to the $30,188,235 Secured Promissory Note.

26. Section 510(c)(1) of the Bankruptcy Code provides that "after notice and a hearing, the court may" "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest…."

27. Yogi engaged in inequitable conduct as alleged herein, including by exercising complete control over, among other things, Crestlloyd's ability to sell, transfer, encumber, and alter the Property. Yogi also acted inequitably in applying the proceeds of a sale of an asset of Crestlloyd, namely the Hillcrest Property, to a debt that was not owed by Crestlloyd and, rather, to a debt that was owed by two different entities, and by selling the Hillcrest Property to an entity that was related to Yogi and/or owned by its principals, Trousdale, at a discounted price that was not in an arms-length transaction made in good faith. Further, Yogi acted inequitably by failing to enforce the terms of the $30,188,235 Secured Promissory Note to ensure that its loan balance was paid in full upon the sale of the Non-Crestlloyd Properties, and instead accepting a sum far less than that to which it was entitled from the sale of those Non-Crestlloyd Properties (including by applying those sums to loans for which those Non-Crestlloyd Properties had not been pledged as security), when enforcing the terms of the $30,188,235 Secured Promissory Note would have resulted in the total outstanding balance on that Note being paid in full and would have eliminated any need for Yogi to look to the proceeds from the sale of the Property to pay off the outstanding balance of that loan.

28. On information and belief, upon the sale of the Hillcrest Property, $6,435,535,37 of the sale proceeds were used to pay down the outstanding balance on the $5,200,000 Secured Promissory Note, even though the Hillcrest Property was not pledged as security for that Note and Crestlloyd was not the borrower on that Note. Rather, that loan was owed by two different entities, Londonderry and Marbella. Thus, Yogi was the voluntary recipient of a fraudulent transfer. The proceeds of that sale were not applied in full to Crestlloyd's outstanding loan balance due to Yogi under the $30,188,235 Secured Promissory Note that underlies Yogi's proof of claim 27 in this matter.

29. On information and belief, upon the sale of the Hillcrest Property and the Non-Crestlloyd Properties, as defined above, Yogi agreed to accept and accepted a total of only $15,240,346.44 from the proceeds of those sales to pay down the outstanding loan balance due to Yogi under the $30,188,235

Secured Promissory Note, even though Yogi was entitled under the terms of that Note to $40,000,000 of the sales proceeds from the sales of the Non-Crestlloyd Properties, foregoing its right to additional payments of at least $24,759,653.56. Had Yogi enforced the terms of the $30,188,235 Secured Promissory Note according to its terms, the outstanding balance of the Note would have been paid in full upon the completion of the sales of the Non-Crestlloyd Properties, and Yogi would not have needed to seek to recover any sums to pay off the $30,188,235 Secured Promissory Note from the sale of the Property. This includes, on information and belief, Yogi applying sums of the sale of the Londonderry Property to a $2,620,000 loan for which the Londonderry Property had not been pledged as security, instead of applying those funds to the $30,188,235 Secured Promissory Note as that note required. In this way, Yogi was the recipient of a fraudulent transfer with respect to the proceeds of the Londonderry Property.

30. To the extent that any or all of the $24,385,366.77 that Yogi claims is due and owing from Crestlloyd is deemed senior indebtedness to any or all of Hankey's $122,638,623.41 indebtedness, Yogi's claim should be equitably subordinated to Hankey's claim because the foregoing conduct was egregious, tantamount to overreaching and/or spoliation, and in blatant disregard for the rights of Hankey who has suffered by Yogi (1) exercising complete control over, among other things, Crestlloyd's ability to sell, transfer, encumber, and alter the Property, (2) wrongfully applying proceeds from a Crestlloyd asset, the Hillcrest Property, to non-Crestlloyd debts, (3) buying the Hillcrest Property at a discounted amount via Trousdale in a transaction that was not at arms-length or in good faith, thus decreasing the sums available to pay Crestlloyd's indebtedness, (4) making disbursements under the loan reflected in the $30,188,235 Secured Promissory Note that were not for the benefit of Crestlloyd or the Property, and (5) failing to enforce contractual rights that would have ensured its payment in full, rather than accepting less than that to which it was entitled from the sale of the Non-Crestlloyd Properties and then seeking to recover those sums at the expense of other lenders on the Property, including Hankey, whose debts are not secured by those additional properties. The above-mentioned conduct by Yogi was so egregious that it warrants equitably subordinating Yogi's proof of claim 27 to Hankey's proof of claim 20, to the extent the debt at issue in Yogi's proof of claim is deemed senior to

the debt at issue in Hankey's proof of claim. This request for equitable subordination is consistent with the Bankruptcy Code.

**PRAYER FOR RELIEF**

Wherefore, Hankey prays for judgment as follows:

**AS TO YOGI'S CROSS-CLAIMS AGAINST HANKEY:**

1. That Yogi takes nothing by its Complaint;

2. For Hankey's costs incurred herein; and

3. For such other and further relief as the Court deems just and proper.

**AS TO HANKEY'S CROSS-CLAIM AGAINST YOGI:**

4. For a judicial determination that, to the extent any or all of the $24,385,366.77 that Yogi claims is due and owing from Crestlloyd is deemed a senior indebtedness to any or all of Hankey's $122,638,623.41 indebtedness, Yogi's debt is subordinate to the entirety of the secured debt of Hankey, and therefore Hankey's debt has priority and should be paid first from the proceeds of the sale of the Property prior to any payment to Yogi;

5. For Hankey's costs incurred herein; and

6. For such other relief as the Court deems just and proper.

**AS TO ALL CROSS-CLAIMS BETWEEN HANKEY AND YOGI:**

7. For Hankey's costs incurred herein;

8. For Hankey's attorney's fees, to the extent allowed by contract or law, incurred in connection with this action; and

9. For such other relief as the Court deems just and proper.

DATED: March 6, 2023

GREENBERG TRAURIG, LLP

By *\/s/ Howard J. Steinberg*
Howard J. Steinberg
Attorneys for Defendant and Cross-Claimant
Hankey Capital, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **HANKEY CAPITAL, LLC'S ANSWER TO YOGI SECURITIES HOLDINGS, LLC'S SECOND AMENDED COUNTERCLAIM AND CROSSCLAIM; AFFIRMATIVE DEFENSES; AND CROSSCLAIM AGAINST YOGI SECURITIES HOLDINGS, LLC FOR EQUITABLE SUBORDINATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 2/21/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy** kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Todd M Arnold** tma@lnbyg.com
- **Ryan Coy** rcoy@bg.law, ecf@bg.law
- **Max Fabricant** mfabricant@lavelysinger.com
- **Thomas M Geher** tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **David B Golubchik** dbg@lnbyg.com, stephanie@lnbyb.com
- **Jonathan Gottlieb** jdg@lnbyg.com
- **John A Moe** john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- **Hamid R Rafatjoo** hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Joseph M Rothberg** jmr@lnbyg.com
- **Paul Sorrell** psorrell@lavelysinger.com
- **Howard Steinberg** steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Johnny White** JWhite@wrslawyers.com, jlee@wrslawyers.com

**2. <u>SERVED BY UNITED STATES MAIL</u>**:

On (*date*) <u>2/21/2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Crestlloyd, LLC, 4470 W. Sunset Blvd., #362, Los Angeles, CA 90027

Martin D Singer, Lavely & Singer Professional Corporation, 2049 Century Park East Ste 2400, Los Angeles, CA 90067

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** <u>(state method for each person or entity served)</u>: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ______, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/6/2024 | Debbie R. Gutierrez | */s/ Debbie R. Gutierrez* |
| *Date* | *Printed Name* | *Signature* |