Howard J. Steinberg (SBN CA 89291)
Eric V. Rowen (SBN 106234)
Matthew R. Gershman (SBN 253031)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310-586-7700/Facsimile: 310-586-7800

Thomas M. Geher (SBN CA 130588)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone: 310-203-8080/Facsimile: 310-203-0567

Attorneys for Defendant Hankey Capital, LLC

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>　　　　Debtor.<br>──────────────────────<br>INFERNO INVESTMENT, INC., a Quebec corporation,<br><br>　　　　Plaintiff,<br>v.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL, LLC, a California limited liability company; YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,<br><br>　　　　Defendants | Bk No. 2:21-bk-18205-DS<br><br>Chapter 11<br><br>Adv. No. 2:22-ap-01125-DS<br><br>**DEFENDANT HANKEY CAPITAL, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT**<br><br>Hearing Date:　　May 4, 2023<br>Hearing Time:　　11:30 a.m.<br>Hearing Dept.:　　1639<br>Judge:　　　　　Hon. Deborah J. Saltzman<br><br>Action Filed: June 9, 2022 |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 4, 2023 at 11:30 a.m., in Courtroom 1639 of the above-captioned Court, located in the Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Los Angeles, California 90012, Hankey Capital, LLC ("Hankey") will move, and hereby does move, this Court for an order under Federal Rules of Civil Procedure 12(b)(6) and 8(a), as made applicable by Federal Rules of Bankruptcy Procedure 7012 and 7008, dismissing the First, Fourth, and Seventh Claims of Inferno Investment, Inc. ("Inferno") in its Second Amended Complaint ("SAC") for failure to state a claim (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), anyone who wishes to oppose this Motion must do so in a writing that complies with the rules of practice and procedure before the United States Bankruptcy Court for the Central District of California, and must ensure that that such opposition is filed with the Court no later than fourteen (14) days before the hearing on the Motion.  The opposition must be served on Hankey's counsel at the following address:

> Howard J. Steinberg, Esq.
> Greenberg Traurig, LLP
> 1840 Century Park East, Suite 1900
> Los Angeles, CA 90067

This Motion is based on this Notice and Motion, the Memorandum of Points and Authorities below, the concurrently filed request for judicial notice, the Declaration of Howard J. Steinberg, all pleadings and files in this adversary proceeding, and upon such other and further oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

DATED:  March 28, 2023                    GREENBERG TRAURIG, LLP


                                          By */s/ Howard J. Steinberg*
                                              Howard J. Steinberg
                                          Attorneys for Defendant Hankey Capital, LLC

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT BACKGROUND AS PLEADED IN THE SAC ....................................1

        A.      Inferno's Loans to Crestlloyd ...................................................................1
        B.      The Initial Hankey Loan ............................................................................2
        C.      The Increases to the Hankey Loan...........................................................3
        D.      Bankruptcy History....................................................................................3
        E.      Inferno's Prior Complaints and Prior Hearings on Hankey's Previous Motions to
                Dismiss.........................................................................................................4
        F.      Inferno's Second Amended Complaint.....................................................5

III.    LEGAL STANDARD...............................................................................................6

IV.     ARGUMENT ..........................................................................................................7

        A.      Inferno's First Declaratory Relief Claim Fails, for the *Third Time*, to State a Claim
                for Subordination Based on Hankey's Purported Failure to Monitor Loan
                Disbursements...........................................................................................7

                1.      Inferno's theory that Hankey failed to monitor disbursement of loan
                        proceeds and represented that its initial loan was sufficient to complete
                        construction is contradicted by the Construction Loan Agreement attached
                        to the SAC....................................................................................8
                2.      Neither the alleged failure to monitor loan disbursements nor Hankey's
                        loan modifications justify equitable subordination.................................10
                3.      Dismissal with prejudice is warranted because Inferno has repeatedly failed
                        to fix deficiencies the Court identified...................................................12

        B.      The SAC Fails to State a Claim For Declaratory Relief As to Proof of Claim No.
                18..................................................................................................................13
        C.      Despite the Court Specifically Directing Inferno to Plead Facts, the SAC's Seventh
                Claim for Relief for Intentional Interference with Inferno's Contract with
                Crestlloyd Simply Recites Legal Conclusions............................................15

V.      CONCLUSION......................................................................................................19

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT,
INC.'S SECOND AMENDED ADVERSARY COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 80 Nassau Assoc.*,
169 B.R. 832 (S.D.N.Y. 1994)..................................................................10

*Ames v. City of Novato*,
No. 16-cv-02590-JST, 2017 WL 130239 (N.D. Cal. Jan. 12, 2017) ..................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................6, 7, 17

*Bauer v. Interpublic Grp. of Cos., Inc.*,
255 F. Supp. 2d 1086 (N.D. Cal. 2003) .............................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................6, 16

*Cataulin v. Wash. Mut. Bank*,
No. 08 CV 2419 JM (NLS), 2009 WL 2058730 (S.D. Cal. July 13, 2009)..................9

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ....................................................6

*CMR Mortg. Fund, LLC v. Canpartners Realty Holding Co. IV LLC (In re CMR Mortg. Fund, LLC)*,
416 B.R. 720 (Bankr. N.D. Cal. 2009) .............................................12

*Comput. Place, Inc. v. Hewlett-Packard Co.*,
607 F. Supp. 822 (N.D. Cal. 1984) .............................................17

*Dollar Tree Stores Inc. v. Toyama Partners, LLC*,
No. C 10-00325, 2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) ..................17

*Eclectic Properties East, LLC v. Marcus & Milichap Co.*,
751 F.3d 990 (9th Cir. 2014) ....................................................7, 19

*In re First All. Mortg. Co.*,
298 B.R. 652 (C.D. Cal. 2003) ....................................................10

*Gladstone v. Schaefer (In re UC Lofts on 4th, LLC)*,
2015 WL 5209252 (BAP 9th Cir. Sep. 4, 2015)....................................11

*In re Granite Partners, L.P.*,
210 B.R. 508 (Bankr. S.D.N.Y. 1997)............................................10

*In re Harbour East Dev., Ltd.*,
Adv. No. 10-20733-BKC-AJC-A, 2011 WL 5593113 (Bankr. S.D. Fla. Oct. 27, 2011)....................11

*Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.)*,
471 F.3d 977 (9th Cir. 2006) ....................................................8, 10, 11

*Johnson v. Riverside Healthcare Sys., LP*,
534 F.3d 1116 (9th Cir. 2008) ....................................................6

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT,
INC.'S SECOND AMENDED ADVERSARY COMPLAINT

*King v. Exp. Dev. Can. (In re Zetta Jet USA, Inc.)*,
   624 B.R. 461 (Bankr. C.D. Cal. 2020) ................................................................. 6, 7

*Manantan v. Nat'l City Mortg.*,
   No. C-11-00216 CW, 2011 WL 3267706 (N.D. Cal. July 28, 2011) ................................. 9

*Maryland Nat'l Bank v. Vessel Madam Chapel*,
   46 F.3d 895 (9th Cir. 1995) ................................................................. 12

*In re Midway Games Inc.*,
   428 B.R. 303 (Bankr. D. Del. 2010) ................................................................. 10

*Moore v. Apple Inc.*,
   309 F.R.D. 532 (N.D. Cal. 2015) ................................................................. 18

*Neal v. Select Portfolio Servicing, Inc.*,
   No. 5:16-cv-04923-EJD, 2017 WL 4224871 (N.D. Cal. Sept. 22, 2017) ................................. 18

*Nev. Deanza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*,
   No. 19-cv-03773-NC, 2020 WL 6588606 (N.D. Cal. Oct. 1, 2020) ................................. 16

*Pankow Constr. Co. v. Advance Mortg. Co.*,
   618 F.2d 611 (9th Cir. 1980) ................................................................. 18

*In re Radnor Holdings Corp. v. Tennenbaum Capital Partners*,
   353 B.R. 820 (Bankr. D. Del. 2006) ................................................................. 10

*Resolution Trust Corp. v. BVS Dev., Inc.*,
   42 F.3d 1206 (9th Cir. 1994) ................................................................. 9

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ................................................................. 12

*Spencer v. DHI Mortg. Co.*,
   642 F. Supp. 2d 1153 (E.D. Cal. 2009) ................................................................. 9

*Weststeyn Dairy 2 v. Eades Commodities Co.*,
   280 F. Supp. 2d 1044 (E.D. Cal. 2003) ................................................................. 18

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) ................................................................. 6

**State Cases**

*612 S. LLC v. Laconic Ltd. P'ship*,
   184 Cal. App. 4th 1270 (2010) ................................................................. 14

*Am. Med. Int'l, Inc. v. Feller*,
   59 Cal. App. 3d 1008 (1976) ................................................................. 14

*Dryden v. Tri-Valley Growers*,
   165 Cal. App. 3d 990 (1977) ................................................................. 18

*Gray v. Horne*,
   48 Cal. App. 2d 372 (1941) ................................................................. 13

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT,
INC.'S SECOND AMENDED ADVERSARY COMPLAINT

*Imperial Ice Co. v. Rossier*,
    18 Cal. 2d 33 (1941) ...................................................................................................18

*Kinnison v. Guaranty Liquidating Corp.*,
    18 Cal. 2d 256 (1941) .................................................................................................14

*Lawrence v. Oakes*,
    117 Cal. App. 32 (1931) .............................................................................................11

*Lennar Northeast Partners v. Buice*,
    49 Cal. App. 4th 1576 (1996) ......................................................................................8

*Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Assn.*,
    184 Cal. App. 3d 817 (1986) .....................................................................................14

*Swiss Prop. Mgmt. Co. v. S. Cal. IBEW-NECA Pension Plan*,
    60 Cal. App. 4th 839 (1997) ........................................................................................9

*In the Matter of the Estate of Beffa*,
    54 Cal. App. 186 (1921) .............................................................................................14

*Webber v. Inland Empire Invests., Inc.*,
    74 Cal. App. 4th 884 (1999) .................................................................................17, 18

**Federal Statutes**

11 U.S.C. § 510(c) ..............................................................................................................8

**State Statutes**

Cal. Bus. & Prof. Code § 17200 .........................................................................................4

Cal. Civ. Code § 19 ...........................................................................................................14

Cal. Civ. Code § 2872 .......................................................................................................13

Cal. Civ. Code § 2938 .......................................................................................................14

**Rules**

Fed. R. Bankr. P. 7012(b) ...................................................................................................6

Fed. R. Civ. P. 12(b)(6) ......................................................................................................6

**Other Authorities**

4 Cal. Real Est. § 10:61 (4th ed.) ......................................................................................14

Lien, Black's Law Dictionary (11th ed. 2019) ..................................................................13

Witkin, Summary of California Law, Personal Property § 226 (11th ed. 2022) ................13

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT,
INC.'S SECOND AMENDED ADVERSARY COMPLAINT

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Court has repeatedly dismissed Inferno Investment, Inc's. ("Inferno") claims for relief for (i) subordination of Hankey's loan, (ii) disallowance of Proof of Claim No. 18 as a secured claim, and (iii) intentional interference with contract for failing to allege facts rather than legal conclusions. Now on its third try, Inferno's Second Amended Complaint ("SAC") has the same shortcomings. Rather than add *a single new fact*, Inferno merely adds a few more legal conclusions, or restates the ones already found insufficient using slightly different language. That simply cannot save the SAC's First, Fourth, or Seventh Claims.

The Court previously dismissed the portions of Inferno's First Claim in the First Amended Complaint ("FAC") seeking declaratory relief to subordinate Hankey's secured claim that were based primarily on allegations that Hankey failed to monitor loan disbursements to Debtor, Crestlloyd, LLC ("Crestlloyd"); modified Hankey's loan without Inferno's knowledge or consent; and further objected to the secured status of Hankey's Proof of Claim No. 18. The Court also dismissed the FAC's Seventh Claim alleging tortious interference with contract for failing to allege facts plausibly suggesting that Hankey intended to interfere with Inferno's loan to Crestlloyd. The Court specifically stated that to survive another motion to dismiss, Inferno needed to allege more facts to support its claims. Rather than add facts to support these claims or abandon them, Inferno's SAC merely relies upon the same conclusory allegations. Accordingly, these claims should now be dismissed with prejudice.

### II.    RELEVANT BACKGROUND AS PLEADED IN THE SAC

### A.    Inferno's Loans to Crestlloyd

Inferno alleges that in 2013, Inferno and a related entity made loans to Crestlloyd to finance acquisition of land and construct a residence at 944 Airole Way ("the Property"). (SAC ¶¶ 15-16) Notwithstanding its alleged status as a lender, Inferno states that in 2015 as an "accommodation" it reduced the amount of its loan by more than 50% from $14,040,000 to $7,000,000. (*Id.* ¶ 17) In 2016, Crestlloyd and Inferno signed a Memorandum of Agreement that expressly states that distributions from the sale of

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

the Property will first be made to repay loans obtained from third parties for the Property, and only then will Inferno be entitled "repayment of any loans owing" to it. (SAC Ex. 1)

**B.      The Initial Hankey Loan**

Inferno alleges that Hankey made a loan of $82.5 million to Crestlloyd on October 25, 2018, which is evidenced by a construction loan agreement (the "Construction Loan Agreement"), promissory note, and secured by a recorded deed of trust (the "Hankey Deed of Trust"). (*See* SAC ¶ 21) The Construction Loan Agreement is attached as Exhibit 2 to Inferno's SAC. Among other things:

- The Construction Loan Agreement contains a representation and warranty from the Borrower (now-Debtor), Crestlloyd, that the loan proceeds will be "sufficient to construct the Improvements [on the Property] in accordance with the terms and conditions of this Agreement." (SAC Ex. 2, ¶ 6.9) There is no representation or warranty by Hankey to this effect. (*See generally* SAC Ex. 2)

- The Construction Loan Agreement contains a representation and warranty from Crestlloyd that its "execution, delivery, and performance under the Loan Documents [with Hankey] do not … materially conflict with, or constitute a material breach or default or permit the acceleration of obligations under any agreement, contract, lease, or other document by which the Borrower is or the Property and Improvements are bound or regulated." (*Id.*, ¶ 6.4)

- The Construction Loan Agreement provides that loan proceeds will be used to "finance the construction of the Property and Improvements and for such other purposes and uses as may be permitted under this Agreement and the other Loan Documents." (*Id.*, ¶ 2.1)

- The Construction Loan Agreement provides that $6 million can be used for distributions to members and other affiliates of Crestlloyd. (*Id.*, ¶ 6.15)

- The Construction Loan Agreement provides for the payment of furnishings. (*Id.*, ¶ 4.8)

- The Construction Loan Agreement provides for an interest reserve account to pay interest. (*Id.*, ¶ 3.6)

- The Construction Loan Agreement requires payment of all monies owing to Hankey under the agreement and the Loan Documents. (*Id.*, ¶ 2.4)

**DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT**

- The Hankey Deed of Trust provides that it is securing the initial principal of $82.5 million, plus interest, as well as "any and all modifications, extensions and renewals thereof." (Hankey's Request for Judicial Notice ("RJN") Ex. A, § 2)

- The Hankey Deed of Trust provides that it is securing the "payment of such other indebtedness now or hereafter owing" to Hankey from Crestlloyd "when evidenced by a document reciting that it is so secured." (*Id.*, § 3)

- The Hankey Deed of Trust provides that it is securing the "[p]ayment of all sums advanced or paid out" by Hankey "under any provision of th[e] Deed of Trust or to protect the security of th[e] Deed of Trust," *i.e.*, the Property. (*Id.*, § 4)

There are no allegations in the SAC that, prior to making its loan, Hankey ever had any discussions with Crestlloyd pertaining to the Inferno loan.

## C.    The Increases to the Hankey Loan

Inferno alleges that the proceeds of Hankey's $82.5 million loan were not sufficient to complete construction. (SAC ¶ 29) Therefore, on December 10, 2019, Hankey "agreed to loan additional funds" to Crestlloyd, which "increased the principal balance" on Hankey's loan to $91 million. (SAC ¶ 27) Then, on August 20, 2020, Hankey "agreed to loan additional funds" that increased the principal balance on Hankey's loan to $106 million. (*Id.* ¶ 28) Simultaneously with the increase in Hankey's loan, Crestlloyd and Hankey executed a Profit Participation Agreement ("PPA") over a portion of the proceeds from the sale of the Property, and Hankey recorded a Memorandum of Agreement referring to the PPA. (*Id.* ¶ 33; Declaration of Howard Steinberg ["Steinberg Decl."], Ex. 2) Inferno does not allege these loans were not necessary to allow construction on the Property to continue. Indeed, it alleges that, notwithstanding the increased funding, Crestlloyd still did not complete construction. (*Id.* ¶ 29)

## D.    Bankruptcy History

Crestlloyd filed its voluntary chapter 11 bankruptcy petition on October 26, 2021. (SAC ¶ 32) Crestlloyd represented "that the Property was worth $325 [million] so that the existing lienholders were adequately protected." (*Id.*)

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

Hankey filed three proofs of claim in the underlying bankruptcy relevant to Inferno's adversary complaint: (1) Claim 17, based on a Profit Participation Agreement that only came into effect if the Property was sold for more than $200 million—which the Court recognized at Hankey's behest was moot because the Property sold for only $126 million (SAC ¶ 33, Ex. 2, ¶ 2.7; *see* SAC ¶ 36; RJN Ex. B at 7:19-8:5); (2) Claim 18, which is based on the August 2020 Profit Participation Agreement, which came into effect if the Property was sold for more than $100 million (SAC ¶ 33); and (3) Claim 20, for the total amount Hankey loaned to Crestlloyd, with interest, fees and costs (*id.*).

**E.    Inferno's Prior Complaints and Prior Hearings on Hankey's Previous Motions to Dismiss**

Inferno filed its initial complaint in this adversary proceeding in June 2022. (DE 1) Hankey moved to dismiss. (DE 24) As relevant here, Hankey's motion was granted in part and denied in part as to the First Claim for Relief (for subordination of Hankey's entire debt and disallowance of Proof of Claim Nos. 17 and 18) and granted as to the Fourth Claim for Relief (which at the time was for unfair business practices under Cal. Bus. & Prof. Code § 17200), both without prejudice. (DE 95; *see* RJN Ex. B)

Inferno then filed the FAC. (DE 110) Hankey moved to dismiss Inferno's First Claim for Relief for declaratory relief, subordination, equitable subordination, and disallowance of Proof of Claim Nos. 17 and 18, Fourth Claim for Relief for unfair business practices under Cal. Bus. & Prof. Code § 17200, and the newly asserted Seventh Claim for Relief for Intentional Interference with Contract. The Court dismissed the unfair business practices claim with prejudice; as to the claims from the FAC that remain in the SAC, this Court ruled as follows:

First, the Court held that the First Claim in the FAC for subordination, equitable subordination, and disallowance of Proof of Claim Nos. 17 and 18 suffered from the "same problems" as with the initial complaint, namely "[h]ow does Hankey's alleged failure to monitor disbursements support equitable or some other subordination" of any amount, much less "of the original loan amount in its entirety[?]" (RJN Ex. C at 6:2-14) The Court also noted that "there needs to be something in the complaint more than what we already have that would support subordination as to the full amount." (RJN Ex. C at 6:18–20) The Court continued: "[h]ow does the lack of perfection with respect to claims 17 and 18 support subordination as to

Inferno?" (RJN Ex. C at 6:10-12) The Court dismissed the First Claim without prejudice. (RJN Ex. C at 7:9)

Like the FAC before it, the SAC still fails to specify the basis for subordination and adds no new facts to support the claim; rather, it *deletes* allegations the Court previously said were not sufficiently clear, replacing them with nothing to satisfy the Court's prior concerns. (*See generally* Steinberg Decl., Ex. 1 [Redline]) The SAC no longer seeks disallowance of Proof of Claim No. 17, and the request for disallowance of Proof of Claim No. 18 has been excised from the First Claim and re-asserted as a separate claim in the Fourth Claim (a position previously held by the now-dismissed-with-prejudice unfair business practices claim). (*Id.*)

Second, the Court held that the problem with the Seventh Claim in the FAC "is the intent element. I don't think that the allegations are clear enough." (RJN Ex. C at 10:19–21) The Court explained that "the allegation with respect to this cause of action is to me generic and conclusory when it says Hankey intentionally induced debtor to breach, designed its conduct to pressure debtor to breaching its obligation to Inferno. . . . I think the complaint needs to allege *facts* that would support either a specific purpose of disrupting the contractual relationship between Inferno and the debtor or . . . that Hankey knew that based on its conduct or its alleged conduct that the debtor's breach of its obligation to Inferno would be substantially likely to occur." (RJN Ex. C. at 11:18–24 [emphasis added]) In lieu of alleging new facts, however, the SAC simply replaces one set of conclusory allegations of the intent element with another equally deficient conclusion. (*See* Steinberg Decl. Ex. 1, ¶ 91 [Redline])

**F.    Inferno's Second Amended Complaint**

Inferno's SAC asserts three causes of action relevant to this Motion. The First Claim seeks declaratory relief that the entirety of Hankey's loan to Crestlloyd is subordinated to Inferno's loan because: (1) the Subordination Agreement between Hankey and Inferno is a forgery; (2) Hankey allegedly misrepresented that its initial $82.5 million loan was sufficient to complete construction; and (3) Hankey recklessly made its initial loan and modified the loan knowing of Inferno's rights. (SAC ¶¶ 38–44). In the alternative, the First Claim seeks subordination of only the subsequent modifications to Hankey's loan. (SAC ¶ 44) The Fourth Claim seeks relief previously incorporated into the FAC's First Claim for Relief:

disallowance of Hankey's Proof of Claim No. 18 on the grounds that Hankey did not perfect any lien supporting Proof of Claim No. 18. (SAC ¶¶ 58–60) The Seventh Claim continues to allege that Hankey intentionally interfered with Inferno's loan to Crestlloyd by modifying its loan and failing to monitor loan disbursements. (SAC ¶¶ 85–91).

Neither the SAC's general allegations, nor the First, Fourth, or Seventh Claims contain a ***single new*** factual allegation. (*See generally* Steinberg Decl. Ex. 1)

## III.    <u>LEGAL STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure applies in adversary proceedings and provides that a party may assert the defense of "failure to state a claim upon which relief can be granted." Fed. R. Bankr. P. 7012(b); *King v. Exp. Dev. Can. (In re Zetta Jet USA, Inc.)*, 624 B.R. 461, 468 (Bankr. C.D. Cal. 2020). Dismissal is proper under Rule 12(b)(6) if the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *King*, 624 B.R. at 468-69. The Court is not bound, however, by conclusory statements, statements of law, or unsubstantiated inferences cast as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "While a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (emphasis in original). These allegations require more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Taken together, *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

Further, "[d]etermining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties East, LLC v. Marcus & Milichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (internal citations and quotations omitted).

In ruling on a 12(b)(6) motion, the Court can consider the pleadings, judicially noticeable matters, and documents incorporated by reference, which treats certain documents as if they were part of the complaint itself. *King*, 624 B.R. at 469.

## IV.    ARGUMENT

### A.    Inferno's First Declaratory Relief Claim Fails, for the *Third Time*, to State a Claim for Subordination Based on Hankey's Purported Failure to Monitor Loan Disbursements.

The Court has now twice dismissed Inferno's claim for declaratory relief seeking to subordinate the entirety of Hankey's loan. The Court should do so again, this time with prejudice, because the SAC *again* fails to plead a legal theory to support the allegations that Hankey's failure to monitor disbursements under the Construction Loan Agreement "would result in any changes of a lienholder's priority." (RJN Ex. B 7:3-18). As the Court noted in dismissing the First Claim in the FAC, "I'm going to tell you if we get to a third round it's going to be a lot more difficult for [me] to be in this same position where I'm not able to determine as a matter of law that it's not possible to allege facts supporting a cause of action." (RJN Ex. C 7:11–15) Despite the Court's clear admonition, the SAC adds *not a single new fact* to support the First Claim. Instead, the First Claim relies on the exact same faulty factual bases and rephrases the same conclusory allegations the Court twice found deficient. This should not be countenanced. Dismissal with prejudice is warranted.

Hankey does not dispute that the SAC pleads a claim under Rule 8 for subordination (not equitable subordination, which is addressed further below) to the extent it is based on allegations of forgery (SAC

¶ 40) or seeks subordination of the modifications to Hankey's loan based on Hankey making those modifications without Inferno's knowledge and consent. (*See id.* ¶ 44) However, the subordination claim must be dismissed to the extent it seeks subordination of the *full amount* of Hankey's loan. As this Court previously observed, even where subordination is appropriate, courts have limited subordination to the amount of the modifications made by the senior lienholder. (RJN Ex. C at 6:11–20) *See Lennar Northeast Partners v. Buice*, 49 Cal. App. 4th 1576, 1587-88 (1996).

The Court previously noted that the FAC's "allegations are not clear as to what is the basis for subordination. Are we talking about equitable subordination. Are we talking about Section 510(c)?" (RJN Ex. C at 7:1-4) Rather than providing clarity, the SAC confuses things even further. The SAC *removes* the reference to equitable subordination *and* 11 U.S.C. § 510(c) that was present in the FAC. Yet, the First Claim fails to specify an alternate ground for subordinating the entirety of Hankey's loan. A generous reading of the First Claim appears to nonetheless still invoke equitable subordination with the allegations that Hankey's loan "substantially impaired Inferno's security interest and significantly increased its financial risk . . . and the *equities* require that [Hankey's] entire obligation forfeit any alleged priority." (SAC ¶ 43 [emphasis added]) *See Henry v. Lehman Commer. Paper, Inc. (In re First All. Mortg. Co.)*, 471 F.3d 977, 1006-07 (9th Cir. 2006) (equitable subordination requires that the senior claimant engaged in some type of inequitable conduct that injured creditors or conferred an unfair advantage on the claimant).

Even so construed, Inferno fails to allege the factual or legal predicates for equitable subordination.

1. ***Inferno's theory that Hankey failed to monitor disbursement of loan proceeds and represented that its initial loan was sufficient to complete construction is contradicted by the Construction Loan Agreement attached to the SAC.***

As was true with Inferno's FAC, the SAC's First Claim is based on a blatant misreading of Hankey's loan documents. The SAC continues to rely on the notion that Hankey "refused to comply with the requirements imposed to protect the asset embodied by the Property, particularly its own disbursement requirements in the Construction Loan Agreement." (SAC ¶ 43) Yet, the Construction Loan Agreement says that "Lender [Hankey] has *no obligation* to monitor or determine Borrower's [Crestlloyd's] use or application of the disbursements." (SAC, Ex. 2, Construction Loan Agreement, ¶ 3.4 [emphasis added])

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

The SAC also repeats the flagrant misrepresentation from the FAC that Hankey represented in the Construction Loan Agreement that its $82.5 million loan was sufficient to complete construction on the Property—this time, doubling down on the misrepresentation in claiming it is "undisputable" that Hankey asserted as much. (SAC ¶ 41). Inferno saying it does not make it so. To the contrary, the Construction Loan Agreement is clear that it is **Crestlloyd** who represented **to Hankey** that Hankey's loan would be "sufficient to construct the Improvements in accordance with the terms and conditions of th[e] [Construction Loan] Agreement." (SAC, Ex. 2, Art. 6 & ¶ 6.9) Hankey made no representation about the sufficiency of its loan proceeds to complete construction. (*Id.*) Inferno cannot simply rewrite the plain terms of the very agreement that forms the basis of its claim because it wishes the document said something different. As the agreement attached to the SAC contradicts Inferno's predicate theory of wrongdoing, Inferno's declaratory relief claim based on Hankey's purported failure to monitor Crestlloyd's disbursement of loan proceeds or purported misrepresentation regarding the adequacy of its loan proceeds to complete construction fails to state a claim. *See Manantan v. Nat'l City Mortg.*, No. C-11-00216 CW, 2011 WL 3267706, at *8 (N.D. Cal. July 28, 2011) (holding plaintiff failed to state a claim for declaratory relief because "[p]laintiff's allegations [were] contradicted by the documents attached to and referred to in [p]laintiff's Complaint").

Even if the Construction Loan Agreement did not expressly contradict Inferno's allegations, Hankey still had no duty to monitor the disbursement of its loan funds. *See Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, excepting those imposed due to special circumstances or a finding that a joint venture exists."); *Swiss Prop. Mgmt. Co. v. S. Cal. IBEW-NECA Pension Plan*, 60 Cal. App. 4th 839, 844-45 (1997) (affirming dismissal of seller's claim that lender lost priority of lien because it had a duty to ensure compliance with disbursement provisions under a construction loan because the agreement stated there was no such duty); *see also Cataulin v. Wash. Mut. Bank*, No. 08 CV 2419 JM (NLS), 2009 WL 2058730, at *2 (S.D. Cal. July 13, 2009) ("financial institutions owe no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money") (citation omitted); *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("[A]s a general rule, a financial institution

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT,
INC.'S SECOND AMENDED ADVERSARY COMPLAINT

owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."). In short, Hankey was a mere lender, and Inferno has not alleged, nor can it given the plain language of the Construction Loan Agreement, that Hankey owed a duty to monitor disbursement of funds.

In short, the SAC has failed to put forth a legal theory or allege any new facts to address the concern the Court expressed at the hearing on Hankey's motion to dismiss the FAC as to how "Hankey's alleged failure to monitor disbursements [can] support equitable or some other subordination" of any amount, much less "of the original loan amount in its entirety." (RJN Ex. C at 6:2-14).

**2.      *Neither the alleged failure to monitor loan disbursements nor Hankey's loan modifications justify equitable subordination.***

Even if the facts alleged in the SAC are given credence, which they clearly should not be, the SAC does not adequately allege the elements of equitable subordination based on Hankey's purported conduct. Equitable subordination of claims requires three elements: (1) the senior claimant engaged in inequitable conduct; (2) the misconduct injured creditors or conferred an unfair advantage on the claimant; and (3) subordination would not be inconsistent with the Bankruptcy Code. *See Henry*, 471 F.3d at 1006-07.

Additionally, where, as here, there is no allegation that Hankey is an insider or fiduciary, the level of proof required to equitably subordinate a claim is elevated, such that gross and egregious conduct is required. *Id.* In *In re First All. Mortg. Co.*, 298 B.R. 652, 667 (C.D. Cal. 2003), *aff'd* 471 F.3d 977 (9th Cir. 2006), the court explained:

> In the case of a non-fiduciary, non-insider, gross and egregious conduct, tantamount to fraud, misrepresentation, overreaching, spoilation or conduct involving moral turpitude are required before a court will equitably subordinate a claim.

*See also In re Radnor Holdings Corp. v. Tennenbaum Capital Partners*, 353 B.R. 820, 840 (Bankr. D. Del. 2006) (claimant must engage in "egregious conduct" tantamount to "fraud, overreaching or spoilation" for equitable subordination); *In re 80 Nassau Assoc.*, 169 B.R. 832, 839 (S.D.N.Y. 1994) (granting motion to dismiss). Thus, to survive a motion to dismiss, Inferno must "allege facts showing fraud, illegality or breach of some other legal duty owing by [the defendant creditor] to the Debtors or their creditors." *In re Granite Partners, L.P.*, 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997); *see In re Midway Games Inc.*, 428 B.R. 303,

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

322 (Bankr. D. Del. 2010) (dismissing equitable subordination claim because plaintiff did not "state[] facts which, if true, would justify a finding of inequitable conduct"); *In re Harbour East Dev., Ltd.*, Adv. No. 10-20733-BKC-AJC-A, 2011 WL 5593113, at *5 (Bankr. S.D. Fla. Oct. 27, 2011) (dismissing equitable subordination claim because the complaint did not set forth any allegations that defendant was "an insider [or] fiduciary" or "egregious conduct such as fraud, spoliation or overreaching … with particularity"). Given this demanding standard, although equitable subordination can apply to an ordinary creditor, the circumstances are "few and far between." *Henry*, 471 F.3d at 1006-07.

The SAC does not remotely satisfy this standard. There are no facts pleaded to justify such relief because Inferno does not allege fraud, illegality, or egregious conduct. *See, e.g.*, *Gladstone v. Schaefer (In re UC Lofts on 4th, LLC)*, 2015 WL 5209252, at *20 (BAP 9th Cir. Sep. 4, 2015) (no equitable subordination claim where relationship never extended beyond borrower-lender relationship). Indeed, the SAC adds ***no new facts*** to support the First Claim; rather, the SAC's general allegations, paragraphs 1 through 37, contain, at best, a handful of minor word choice edits. (*See e.g.*, Steinberg Decl. Ex. 1, ¶ 17) The First Claim simply adds the conclusion that "Hankey Capital's conduct put Debtor in danger of default and ultimately resulted in the filing of this bankruptcy action" without alleging any *facts* showing how Hankey's alleged conduct did so. (SAC ¶ 43)

Nor could Inferno allege such facts where, as here, Hankey's conduct was authorized and anticipated by the loan documents. For instance, in addition to disclaiming any duty to monitor proceeds, Hankey's Deed of Trust also specifically authorized modifications to Hankey's loan. Hankey's Deed of Trust states that it is securing (1) not only the initial principal of $82.5 million, but also "any and all modifications" of the underlying promissory note; (2) "payment of such other indebtedness now *or hereafter* owing" to Hankey; as well as (3) "all sums advanced … to protect the security of this Deed of Trust." (RJN Ex. A [emphasis added]) Such language clearly provides the Promissory Note may be "modif[ied]" to include additional sums that may be "hereafter" owed, including any that are necessary to "protect the security," *i.e.*, the Property, and thus specifically authorized, and put third parties and lienholders on inquiry notice of, modifications to increase the principal loan amount. *See Lawrence v. Oakes*, 117 Cal. App. 32, 34-35 (1931) (mortgage given "to secure all other indebtedness and obligations

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT,
INC.'S SECOND AMENDED ADVERSARY COMPLAINT

that may now or hereafter be due, owing or existing from said mortgagors" covered modifications). Accordingly, because the challenged conduct is expressly authorized by the loan documents, Inferno cannot support an equitable subordination claim as a matter of law. *See CMR Mortg. Fund, LLC v. Canpartners Realty Holding Co. IV LLC (In re CMR Mortg. Fund, LLC)*, 416 B.R. 720, 736 (Bankr. N.D. Cal. 2009) (plaintiff could not allege "inequitable conduct" to support equitable subordination when challenged conduct was "expressly authorized by the [loan documents]").

There are no facts alleged, as opposed to conclusory statements, that demonstrate that Hankey negligently supervised the construction and loan disbursement process (SAC ¶ 23)—particularly since Hankey had no duty to do so. Even if such were the case, a negligence theory cannot, as a matter of law, support an equitable subordination claim. *See Maryland Nat'l Bank v. Vessel Madam Chapel*, 46 F.3d 895, 901 (9th Cir. 1995) (negligence cannot support equitable subordination claim).  Similarly, Inferno cannot allege facts plausibly suggesting Hankey committed inequitable conduct by misrepresenting that its initial loan to Crestlloyd was sufficient to complete construction when the Construction Loan Agreement contains no such representation by Hankey. (*See* SAC, Ex. 2, Art. 6 & ¶ 6.9)

### 3.    *Dismissal with prejudice is warranted because Inferno has repeatedly failed to fix deficiencies the Court identified.*

The Court has dismissed this claim twice before. Yet again, Inferno has failed to remedy the deficences of the First Claim despite clear instructions from the Court.  The Court should dismiss with prejudice the First Claim to the extent: (1) it seeks <u>equitable</u> subordination of any portion of Hankey's loan; (2) seeks subordination of Hankey's original $82.5 million loan for any reason; or (3) seeks subordination or equitable subordination based either on the theory that Hankey failed to monitor its loan disbursements to Crestlloyd or that Hankey represented that its original $82.5 million loan was sufficient to complete construction. *See, e.g.*, *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (affirming grant of motion to dismiss without leave to amend because "the district court gave Plaintiffs specific instructions on how to amend the complaint, and Plaintiffs did not comply"); *Ames v. City of Novato*, No. 16-cv-02590-JST, 2017 WL 130239, at *3 (N.D. Cal. Jan. 12, 2017) (granting motion to dismiss without leave to amend

because plaintiff "failed to cure [] deficienc[ies] once despite specific instructions from this Court on how to amend the complaint").

## B.    The SAC Fails to State a Claim For Declaratory Relief As to Proof of Claim No. 18.

The SAC's Fourth Claim fails because the recorded documents supporting Proof of Claim No. 18 properly perfected a lien on the profits from the sale of the Property so there is no basis to disallow the claim. The Fourth Claim, which merely re-alleges what once was part of the FAC's First Claim, alleges that Hankey's recorded Memorandum of Agreement referenced in Proof of Claim No. 18 ("MOA") "did not perfect any lien" and "has no effect because the deed of trust that was recorded by Hankey Capital which allegedly supports the claim does not conform with the legal formalities required for a grant of an interest in real property with respect to profit participations." (SAC ¶¶ 58–59) The Fourth Claim also alleges that "[t]here is no mention in the profit participation agreement underlying the memorandum referenced in [Proof of Claim No. 18 that the Property is to serve as security," which "is required by law to create an enforceable mortgage or deed of trust." (SAC ¶ 59).

The Fourth Claim fails for the third time, however, because Inferno misunderstands the nature of the PPA. To be clear, Hankey does not contend that Hankey's "deed of trust" secured the PPA nor that the PPA secured the loan Hankey made to Crestlloyd. Rather, the PPA is a lien *on the profits* from the sale of the Property. A lien is any right, title, or interest in real property that supports a debt. *See Gray v. Horne*, 48 Cal. App. 2d 372, 375 (1941) (defining a lien as a "legal claim" on a property); Cal. Civ. Code § 2872 ("A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act[.]"); Lien, Black's Law Dictionary (11th ed. 2019) (defining a lien as "[a] legal right or interest that a creditor has in another's property"). Thus, contrary to Inferno's apparent misunderstanding, liens encompass more than mortgages and deeds of trust: "There are many kinds of liens, among them being mechanic's liens, mortgage liens, liens arising in the course of judicial proceedings, maritime and tax and assessment liens." *Gray*, 48 Cal. App. 2d at 375; *see* Witkin, Summary of California Law, Personal Property § 226 (11th ed. 2022) (listing various types of liens).

Here, the PPA memorializes Hankey's right to profits from the sale of the Property and creates a lien by expressly stating that Hankey is to receive profits of five percent of the sales price if the Property

sells for over $100 million or $5 million, whichever is less, "from the sale proceeds" of the Property. (Steinberg Decl. Ex. 2, Proof of Claim No. 18 at 6). Thus, the PPA, "rather than pledging the [profits] as *additional security* [for the loan], operates to transfer to the mortgagee the mortgagor's *right to the [profits]*." *Kinnison v. Guaranty Liquidating Corp*., 18 Cal. 2d 256, 261 (1941) (emphasis added); *see In the Matter of the Estate of Beffa*, 54 Cal. App. 186, 189 (1921) ("An assignment in law is a transfer or setting over of property, or some right or interest therein, from one person to another. . . [and] ordinarily it is limited in its application to the transfers of those things which are commonly designated choses in action, and to rights in or connected with property as distinguished from the particular item of property itself."). The PPA is a lien—but it is not a mortgage or deed of trust nor secured by a deed of trust on the Property.

In sum, the PPA is a properly executed and perfected assignment of Crestlloyd's right to the profits from the sale of the Property. "A written assignment of an interest in … profits of real property made in connection with an obligation secured by real property … shall, upon execution and delivery by the assignor, be effective to create a present security interest." Cal. Civ. Code § 2938(a). Inferno does not allege that the PPA was not "execut[ed] and deliver[ed] by" Crestlloyd. Further, the recording of an assignment provides a "conclusive presumption" that a subsequent acquiror or junior lienholder has constructive notice thereof. *Id.* §2938(b); *see 612 S. LLC v. Laconic Ltd. P'ship*, 184 Cal. App. 4th 1270, 1278 (2010); *see also* Cal Civ Code § 19. As a matter of law, parties are on notice of documents that are recorded (like the MOA), as well as documents that are referenced in the recorded documents (like the PPA). 4 Cal. Real Est. § 10:61 (4th ed.); *see Pac. Tr. Co. TTEE v. Fid. Fed. Sav. & Loan Assn.*, 184 Cal. App. 3d 817, 825-26 (1986) (holding junior lienholder had constructive notice of terms of a promissory note referenced in a recorded deed); *Am. Med. Int'l, Inc. v. Feller*, 59 Cal. App. 3d 1008, 1020-21 (1976) (holding a subsequent acquiror had constructive notice of a limitation on the right to seek partition of the property in an unrecorded application to the state department of corporations that was referenced in the recorded deed). The MOA expressly and unequivocally states that Crestlloyd and Hankey have "executed a Profit Participation Agreement … pertaining to the real property described in Exhibit A hereof [the Property]." (Steinberg Decl. Ex. 3) Thus, the document states that profits generated from the Property will

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

be shared between Crestlloyd and Hankey, i.e., Hankey will "participate" therein. (*Id.*) Nothing more is needed. There is no basis to conclude the MOA and PPA was not sufficient to give rise to a lien.

As Inferno has failed to properly allege a legal theory to disallow Proof of Claim No. 18 as a secured claim three times, further amendment is futile, and the Fourth Claim (formerly part of the First Claim) should be dismissed with prejudice.

**C.      Despite the Court Specifically Directing Inferno to Plead Facts, the SAC's Seventh Claim for Relief for Intentional Interference with Inferno's Contract with Crestlloyd Simply Recites Legal Conclusions**

The SAC's attempt to state a claim for intentional interference with contract has the same deficiency the Court identified in the FAC: it alleges *no facts* supporting the conclusion that Hankey intended to interfere with Inferno's loan to Crestlloyd. The basic allegations of the SAC's Seventh Claim remain the same: that Hankey intentionally interfered with Inferno's loan contracts with Crestlloyd, by (1) making its initial $82.5 million loan to Crestlloyd and increasing its principal to $106 million, (2) representing that its initial "$82.5 million loan would be fully sufficient to complete construction of the Property," and (3) "commit[ing] to a procedure for loan disbursement requests and expenditures to ensure that the proceeds would be used …. exclusively" for construction. (SAC ¶¶ 88-90) As noted above in Section IV.A.1. and as was true of the FAC, the second and third bases are false and contradicted by the Construction Loan Agreement. The Construction Loan Agreement unambiguously provides that (i) it was ***Crestlloyd*** who represented the adequacy of Hankey's $82.5 million loan and (ii) Hankey had no duty to monitor any loan disbursements. (SAC, Ex. 2, ¶ 3.4, Art. 6 & ¶ 6.9) This leaves Inferno with the lone argument that Hankey committed a tort by loaning money to Crestlloyd, and that such loan makes Hankey liable for Crestlloyd failing to pay Inferno. In essence, Inferno's interference claim argues a commercial lender tortiously interferes with the loan agreements of all other lenders if it loans money knowing of those existing lenders and the borrower ultimately does not pay. The notion defies logic and law and would turn the lending market upside down.

In the FAC, Inferno alleged that Hankey's loans to Inferno were "designed to induce a breach" by Crestlloyd of its obligation to pay Inferno. (FAC ¶ 92) The Court dismissed the Seventh Claim in the FAC,

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

specifically advising Inferno that this allegation was "generic and conclusory when it says Hankey intentionally induced debtor to breach, designed its conduct to pressure debtor to breaching its obligation to Inferno. . . . I think the complaint needs to allege **_facts_** that would support either a [i] specific purpose of disrupting the contractual relationship between Inferno and the debtor or . . . [ii] that Hankey knew that based on its conduct or its alleged conduct that the debtor's breach of its obligation to Inferno would be substantially likely to occur." (RJN Ex. C. at 11:18–24 [emphasis added])

Rather than fix the issues the Court identified with this claim in the FAC, the SAC merely substitutes one conclusion regarding Hankey's intent with a verbatim recitation of the alternative legal standard. In place of the allegation that the Court found insufficient in the FAC that Hankey's conduct was "designed to induce a breach" of Inferno's contract with Crestlloyd (FAC ¶ 92), the SAC alleges that Hankey "knew at the time it engaged in this conduct that its actions were substantially certain to interfere with Debtor's obligations to Inferno and, in fact were substantially certain to result" in Debtor filing for bankruptcy and damaging Inferno and other lenders. (SAC ¶ 90) This allegation is just a bare bones recitation of the alternative method of proving intentional interference. *See Nev. Deanza Fam. Ltd. P'ship v. Tesoro Ref. & Mktg. LLC*, No. 19-cv-03773-NC, 2020 WL 6588606, at *1 (N.D. Cal. Oct. 1, 2020) ("A plaintiff can prove that a defendant's intentional acts were designed to induce a breach by showing: (1) that the defendant had the specific purpose of disrupting the contract or (2) that the defendant knew that interference was substantially certain to occur as a result of their action.")

Despite the Court specifically advising Inferno that such "generic and conclusory" allegations would not survive a motion to dismiss, Inferno does not allege any new facts to support the conclusion that Hankey knew its actions were "substantially certain" to interfere with Inferno's contract. *Id.*; *see Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"). Instead, the SAC merely claims that Hankey purportedly acted in its own self-interest without regard to the potential impacts its conduct might have on other lenders. (*See* SAC ¶¶ 88-89 [Hankey acted "because it was to Hankey Capital's financial advantage … notwithstanding the effect on other lenders"; Hankey "continued cavalierly to loan additional monies … because it allowed Hankey Capital to pay itself large sums of interest … [and] increase its influence … at the expense of other creditors…."; Hankey acted "to pay itself

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

interest on its own loans"]) Hankey acting in its own self-interest and exercising its contractual rights to lend money does not plausibly allege that it knew its actions were "substantially certain" to interfere with Crestlloyd's contracts with other lenders. *See Comput. Place, Inc. v. Hewlett-Packard Co.*, 607 F. Supp. 822, 835 (N.D. Cal. 1984), *aff'd*, 779 F.2d 56 (9th Cir. 1985) ("The exercise of a contractual right cannot be the basis for a claim of tortious interference.").

Accordingly, the facts alleged, which remain unchanged from the FAC, again fail to state a claim in the SAC. Simply put, there are no facts alleged to plausibly establish that Hankey was "substantially certain" Crestlloyd would be unable to pay back Inferno based on the increased loan amount, particularly when coupled with Crestlloyd's representation that its acceptance of the loan from Hankey breached no other agreements. (SAC Ex. 2, ¶ 6.4) *See Dollar Tree Stores Inc. v. Toyama Partners, LLC*, No. C 10-00325, 2010 WL 1688583, at *3 (N.D. Cal. Apr. 26, 2010) (granting motion to dismiss interference with contract claim because "[t]he facts alleged … do not give rise to a plausible theory that by [Lender] funding a reconstruction project, it was substantially certain that [Debtor] would breach" its contract where Debtor "warrantied to [Lender] that the loan would not result in a breach of any agreements"); *see generally Iqbal*, 556 U.S. at 663-64 ("determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense").

Nor could Inferno allege as much, as it admits that Crestlloyd believed the Property was worth $325 million, and that a sales price of $200 million would be sufficient to pay off *all* creditors, and ***"[n]o one anticipated*** that the auction of the Property would have the dismal outcome that it did." (SAC ¶¶ 32, 63, 66 [emphasis added]) Said another way, Inferno admits Hankey had no reason to believe its increased loan amount would impact Crestlloyd's ability to pay other creditors.

Separately, Hankey "was only doing what it was legally entitled to do" in modifying its loan to Crestlloyd, and thus cannot have committed interference thereby. *Webber v. Inland Empire Invests., Inc.*, 74 Cal. App. 4th 884, 901-02 (1999). Hankey's Deed of Trust expressly authorized it to modify its loan, including loaning more money if necessary to protect its security. *Supra* p. 11.

Crestlloyd breached its representation to Hankey that Hankey's initial $82.5 million loan would be sufficient to complete construction. Hankey was "entitled to take all legal steps to obtain payment of the

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

debt owed to it, even if the result was that [debtor] would default on its obligation to [another] creditor." *Webber*, 74 Cal. App. 4th at 001-02. Where, as here, "two parties have separate contracts with a third, each may resort to *any legitimate means at his disposal* to secure performance of his contract even though the … result will be to cause a breach of the other contract." *Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33, 37 (1941) (no liability unless conduct is "intended to induce a breach," even if breach results from his "lawful and proper acts") (emphasis added). Thus, even if Hankey knew that its modifications of its loan to Crestlloyd would prevent Crestlloyd from repaying its loan to Inferno (something itself not plausibly alleged), Hankey's attempts to ensure payment of the debt Crestlloyd owed it does not constitute interference. *See Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1089 (E.D. Cal. 2003) (defendant's "conduct, authorized by the security agreement, negates the argument [defendant] wrongfully intended to and did disrupt [the third parties'] relationship with [p]laintiffs"); *see also Pankow Constr. Co. v. Advance Mortg. Co.*, 618 F.2d 611, 612-13, 616 (9th Cir. 1980) (affirming plaintiff did not state a claim by alleging that lender induced developer to breach contract with plaintiff by letting developer apply loan disbursements to its debt to lender because, even "[i]f [lender] induced [developer] to breach the [] contract, it did so to secure performance on its own contract") (citing *Imperial Ice*, 18 Cal. 2d at 37).

Separately, like the FAC before it, the SAC also again fails to plausibly allege Hankey's loan to Crestlloyd caused Crestlloyd not to pay Inferno what it was owed. To allege causation, Inferno must allege Hankey's conduct was both a "but-for" cause and "proximate cause" of its injury. *Moore v. Apple Inc.*, 309 F.R.D. 532, 547 n.4 (N.D. Cal. 2015) ("Plaintiff's claim for tortious interference with contract … require[s] but-for causation."); *Bauer v. Interpublic Grp. of Cos., Inc.*, 255 F. Supp. 2d 1086, 1095 (N.D. Cal. 2003) ("In a suit for intentional interference with contract, the plaintiff must show that the act complained of was the proximate cause of the injury.") (internal citations and quotations omitted). Inferno has alleged neither.

To demonstrate causation, Inferno "'must allege that the contract would otherwise have been performed, that it was breached and abandoned by reason of [Hankey's conduct] and that such [conduct] was the moving cause'" of the breach. *Neal v. Select Portfolio Servicing, Inc.*, No. 5:16-cv-04923-EJD, 2017 WL 4224871, at *4 (N.D. Cal. Sept. 22, 2017) (quoting *Dryden v. Tri-Valley Growers*, 165 Cal. App.

3d 990, 997 (1977)). Apart from alleging the conclusion that Hankey's loans caused Crestlloyd not to pay Inferno (SAC ¶ 90), Inferno alleges no *facts* plausibly suggesting this was true.

The fact that Crestlloyd ultimately could not pay Inferno what Inferno was owed demonstrates only that Crestlloyd did not maintain or generate sufficient assets to satisfy its debts and thus filed for bankruptcy protection. This does not plausibly allege Hankey's loan caused Crestlloyd not to pay Inferno. Inferno alleges no facts suggesting Hankey is the cause of Crestlloyd's bankruptcy, as opposed to any of Crestlloyd's decisions and actions that contributed to its financial problems. Furthermore, Inferno's SAC admits the Property sold for less than everyone expected. (*See, e.g.*, SAC ¶ 32 [alleging Crestlloyd filed a voluntary bankruptcy petition and represented the Property was worth $325 million]); *id.* ¶ 66 ["***No one anticipated*** that the auction of the Property would have the dismal outcome that it did."] [emphasis added]) Yet, Inferno alleges no facts to suggest Hankey's loan caused the unexpectedly low sales price of the Property. In short, the SAC—just like the FAC—does not allege facts to show causation. *See Eclectic Properties*, 751 F.3d at 996–97 ("[P]laintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible.").

## V.    **CONCLUSION**

The Court should dismiss with prejudice the First Claim to the extent: (1) it seeks equitable subordination of any portion of Hankey's loan; (2) seeks subordination of Hankey's original $82.5 million loan for any reason; or (3) seeks subordination or equitable subordination based either on the theory that Hankey failed to monitor its loan disbursements to Crestlloyd or that Hankey represented that its original $82.5 million loan was sufficient to complete construction. The Fourth and Seventh Claims for Relief in Inferno's SAC should be dismissed with prejudice in their entirety. The documents attached to the SAC and incorporated by reference contradict the factual allegations that Inferno pleads to support the claims, and even accepting those contradictory allegations, the SAC merely pleads that Hankey acted in accordance with its rights and the law.

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

The Court has given Inferno ample opportunity to fix these deficiencies. Inferno's repeated failure to do so after being specifically advised by the Court about the shortcomings in its pleading warrants dismissal without leave to amend.

DATED:  March 28, 2023                    GREENBERG TRAURIG, LLP


                                          By:  _/s/ Howard J. Steinberg_
                                               Howard J. Steinberg
                                          Attorneys for Defendant Hankey Capital, LLC

DEFENDANT HANKEY CAPITAL, LLC'S MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT HANKEY CAPITAL, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/28/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com; gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Todd M Arnold**    tma@lnbyg.com
- **Ryan Coy**    rcoy@bg.law, ecf@bg.law
- **Max Fabricant**    mfabricant@lavelysinger.com
- **Thomas M Geher**    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **David B Golubchik**    dbg@lnbyg.com, stephanie@lnbyb.com
- **Jonathan Gottlieb**    jdg@lnbyg.com
- **John A Moe**    john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Joseph M Rothberg**    jmr@lnbyg.com
- **Paul Sorrell**    psorrell@lavelysinger.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/28/2023 | Terrine Pearsall | /s/ Terrine Pearsall |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.