Howard J. Steinberg (SBN CA 89291)
Eric V. Rowen (SBN 106234)
Matthew R. Gershman (SBN 253031)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310-586-7700/Facsimile: 310-586-7800

Thomas M. Geher (SBN CA 130588)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone: 310-203-8080/Facsimile: 310-712-3302

Attorneys for Defendant Hankey Capital, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>     Debtor.<br>_____<br><br>INFERNO INVESTMENT, INC, a Quebec corporation,<br><br>     Plaintiff,<br>v.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL, LLC, a California limited liability company; YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and  HILLDUN CORPORATION, a New York corporation,<br><br>     Defendants | Bk No. 2:21-bk-18205-DS<br><br>Chapter 11<br><br>Adv. No. 2:22-ap-01125-DS<br><br>**DEFENDANT HANKEY CAPITAL, LLC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT**<br><br><br>Hearing Date:   May 4, 2023<br>Hearing Time:   11:30 a.m.<br>Hearing Dept.:   1639<br>Judge:   Hon. Deborah J. Saltzman<br><br><br>Action Filed: June 9, 2022 |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Hankey Capital, LLC ("Hankey") will and hereby does respectfully request that the Court take judicial notice of the following documents attached to this Request for Judicial Notice when ruling on Hankey's Motion to Dismiss ("Motion") plaintiff Inferno Investment, Inc. ("Inferno")'s Second Amended Complaint ("SAC"):

- **Exhibit A:** A true and correct copy of the Construction Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents, filed in the official records of the Recorder's Office, Los Angeles County, California on November 6, 2018, reference number 20181122917.

- **Exhibit B:** A true and correct copy of the Transcript of Proceedings before the Hon. Deborah Saltzman on Hankey Capital, LLC's Motion to Dismiss Inferno Investment, Inc.'s Adversary Complaint, held on October 27, 2022.

- **Exhibit C:** A true and correct copy of the Transcript of Proceedings before the Hon. Deborah Saltzman on Hankey Capital, LLC's Motion to Dismiss Inferno Investment, Inc.'s First Amended Complaint, held on February 6, 2023.

Facts properly subject to judicial notice may be used to establish that the SAC does not state a claim for relief. *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). Under Fed. R. Evid. 201(b), as made applicable by Fed. R. Bankr. P. 9017, the Court may take judicial notice of matters that "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(c)(2).

A court can properly take judicial notice of its own records and proceedings, and court papers and pleadings filed in related litigation. *United States v. Brugnara*, 856 F.3d 1198, 1209 (9th Cir. 2017); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of transcript from prior proceedings in other courts); *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997) (same). Court documents filed in an underlying bankruptcy case are subject to

judicial notice in related adversary proceedings and district court lawsuits. *O'Rourke v. Seabord Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Mullis v. Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). Courts may also take judicial notice of documents filed with the county recorder. *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (taking judicial notice of trustee's deed of sale recorded with Los Angeles County Recorder's Office); *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1057 (C.D. Cal. 2008) (taking judicial notice of deed of trust recorded with Los Angeles County Recorder's Office).

**Exhibit A** is a document publicly recorded in the Recorder's Office of Los Angeles County, California and is therefore capable of accurate and ready determination and not subject to reasonable dispute. **Exhibits B** and **C** are official transcripts of hearings before the Court in the above captioned adversary proceeding and as part of the Court's own records, are documents capable of accurate and ready determination and not subject to reasonable dispute. Thus, Hankey respectfully requests that the Court take judicial notice of **Exhibits A-C** identified above.

DATED:  March 28, 2023            GREENBERG TRAURIG, LLP


By /s/ *Howard J. Steinberg*
      Howard J. Steinberg
Attorneys for Defendant Hankey Capital, LLC

**EXHIBIT A**

This page is part of your document • DO NOT DISCARD





# 20181122917

Pages:
0020

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/08/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 121.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 346.00 |



LEADSHEET



201811080250001

00015019183

000447827

SEQ:
17

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T72

11/05/2018
*20181112917*

**RECORDING REQUESTED BY**

**AND WHEN RECORDED MAIL TO:**

HANKEY CAPITAL, LLC
4751 Wilshire Blvd., Suite 110
Los Angeles, CA 90010
Attention: Eugene Leydiker

## CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS
### [944 Airole Way]

This CONSTRUCTION DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS (hereinafter the "Deed of Trust") made this 25th day of October, 2018, by CRESTLLOYD, LLC, a California limited liability company (hereinafter referred to as "Trustor", whose address is c/o Skyline Development, 8981 W. Sunset Blvd., Suite 303, West Hollywood, California 90069 to CHICAGO TITLE COMPANY, hereinafter called "Trustee", for the benefit of HANKEY CAPITAL, LLC, a California limited liability company, hereinafter called "Beneficiary", whose address is 4751 Wilshire Blvd., Suite 110, Los Angeles, California 90010.

This Deed of Trust is given for purpose of securing the following:

(1)    Performance of all obligations of Trustor under any agreements of Trustor incorporated by reference or contained herein.

(2)    Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.

(3)    Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.

1

94109

17 G

(4)   Payment of all sums advanced or paid out by the Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust.

This Deed of Trust, and any other instruments given to evidence or further secure the payment and performance of any obligation secured hereby may hereinafter be referred to as the "Trust Documents". The payment obligations of Trustor described in Paragraphs 2, 3, and 4 above are hereinafter referred to as the "Indebtedness".

Trustor, in consideration of the premises and the aforesaid Indebtedness, and in order to secure its obligations under the Note, according to their terms, has granted, bargained, sold, conveyed, confirmed, transferred and assigned and by these presents does grant, bargain, sell, convey, confirm, transfer and assign unto Trustee, his successors and assigns, with power of sale and right of entry and possession, Trustor's interest in and to that certain property described as follows:

(A)   The land described in Exhibit A attached hereto, made a part hereof.

(B)   All buildings and improvements now or hereafter located on said land.

(C)   All easements, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits of the aforesaid property and all the estate, title and interest, homestead or other claim or demand, as well in law as in equity, which Trustor now has or hereafter may acquire, of, in or to said property, or any part thereof, with the appurtenances thereto.

(D)   All of Trustor's right, title and interest in, to or under the property described in Exhibit B attached hereto, made a part hereof and comprising one page.

Trustor's interest in and to the land, buildings, improvements and the rights and property described in paragraphs (A) through (D) above are hereinafter referred to collectively as the "Property".

TO HAVE AND TO HOLD the same unto Trustee, Trustee's successors and assigns, Trustor hereby covenants and agrees as follows:

## ARTICLE I
## COVENANTS AND AGREEMENTS OF TRUSTOR

Trustor hereby covenants and agrees:

1.00   _Payment of Indebtedness._ Trustor will pay the Indebtedness hereby secured promptly when and as said Indebtedness becomes due and payable.

1.01   _Liens._ Trustor, absent the written consent of Beneficiary, will not suffer any lien to

2

be created hereafter upon the Property, or any part thereof, prior to the lien of this Deed of Trust, and will not do or suffer any act or omission whereby the value of the Property, or lien hereof or of any estate or title covered hereby, may be diminished or impaired in any way.

1.02   Maintenance, Repair and Alterations.   Trustor will keep any buildings and improvements constructed on the Property in good condition and repair, will not remove or demolish any buildings or improvements thereon, and commit or permit no waste thereon. Should said building or buildings, or any part thereof, require inspection, repair or protection other than that given it by Trustor, then, and in that event, Beneficiary may enter or cause entry to be made upon the Property and into said building or buildings for inspection, repair or protection thereof and such repair may be made by Beneficiary and be made or done in such manner as fully to protect the interest of Beneficiary in the opinion of Beneficiary, and any and all sums expended by Beneficiary in doing or causing to be done any of the things above authorized are secured by this Deed of Trust and shall be paid by Trustor on demand. Trustor shall comply with all laws, ordinances, governmental regulations, covenants, conditions and restrictions affecting the Property or requiring any alteration or improvement thereof, and permit no violation, as to the Property, of any such law, ordinance, governmental regulation, covenant, condition or restriction affecting the Property.

1.03   Title to Property.   Trustor covenants that Trustor is lawfully seised of each and every part and parcel of the Property as described in the granting clauses hereof and has good and indefeasible title to the same; that there are no liens or encumbrances on said property except for such liens and encumbrances that are approved by Beneficiary; and Trustor forever will warrant and defend the title in the same to the Trustee against the claims and demands of all persons. If during the existence of this Deed of Trust there be commenced or pending any suit or action affecting said property, or any part thereof, or the title thereto, or if any adverse claim for or against said property, or any part thereof, be made or asserted, Trustee or Beneficiary may appear in said suit or action and retain counsel therein and defend the same or otherwise take such action therein as Trustee or Beneficiary may deem advisable, and may settle or compromise the same or the said adverse claim, and in that behalf and for any of the said purposes, may pay and expend such sums of money as Trustee or Beneficiary may deem to be necessary.

1.04   Taxes and Assessments.   Trustor shall pay, satisfy and discharge at maturity all taxes and assessments and all other charges and encumbrances which now are or hereafter shall be or appear to be a lien upon the Property, or any part thereof, or upon the debt secured hereby; and in default thereof, Beneficiary, without demand or notice, may pay, satisfy or discharge said taxes, assessments, charges or encumbrances, and pay and expend such sums of money as Beneficiary may deem to be necessary therefor, and shall be the sole judge of the legality or the validity of such taxes, assessments, charges or encumbrances, and the amount necessary to be paid in the satisfaction or discharge thereof.

1.05   Evidence of Payment of Taxes and Assessments.   Trustor further agrees to deposit with Beneficiary within thirty (30) days of Beneficiary's request, all receipts or other satisfactory evidence of the payment of taxes, assessments, charges, claims and liens of every nature (hereinafter collectively referred to as "taxes" or "tax") affecting or which may affect the Property or any part thereof. Upon the request of Beneficiary, following Trustor's failure to

3

provide such evidence of payment, Trustor thereafter shall deposit with and pay to Beneficiary, on the first day of each calendar month, a sum equivalent to one-twelfth (1/12) of the estimated annual taxes assessed or levied against the Property and all annual premiums for insurance required by this Deed of Trust to be furnished by Trustor, and upon the date when any such tax or insurance premiums shall become due shall pay to Beneficiary an amount which, taken together with tax and insurance deposits theretofore made and not expended for taxes and insurance, shall be sufficient to pay and discharge such tax and insurance premiums. Beneficiary shall not be liable for interest on any such tax and insurance deposits and may mingle the same with its general funds, and such deposits shall create a debtor-creditor relationship and not that of a trust. Trustor shall procure and deliver to Beneficiary, in advance, statements for such charges. Payments from said account for such purposes may be made by Beneficiary at Beneficiary's discretion, even though subsequent owners of the property described herein may benefit thereby. In the event of any default under the terms of this Deed of Trust, any part or all of the balance of said account may be applied to any part of the indebtedness hereby secured, and, in refunding any part of said account, Beneficiary may deal with whomever is represented to be the owner of said property at that time. The enforceability of the covenants relating to taxes and insurance premiums provided for herein shall not be affected, except to the extent that said obligations have been actually met by compliance with this paragraph.

1.06    Insurance. Trustor at all times shall keep the buildings and improvements which are now or hereafter erected upon said property insured against loss or damage by vandalism, malicious mischief and fire with extended coverage (and by other hazards as reasonably may be required by Beneficiary) and shall procure and maintain in force such other insurance as may be required by Beneficiary, all in amounts approved by Beneficiary and by an insurance company or companies or governmental agency or instrumentality approved by Beneficiary, and the policies for such insurance shall be made payable, in case of loss, to Beneficiary pursuant to standard mortgagee's loss payable endorsement, and shall be delivered to and held by Beneficiary as further security for payment under the Note and other moneys herein mentioned, said policies shall provide for fifteen days' notice to Beneficiary prior to cancellation or nonrenewal for any reason, including nonpayment of premium; and in default thereof, Beneficiary may procure such insurance to be effected upon Beneficiary's interest as Beneficiary or upon the interest of Trustee or upon the interest of the owners of the Property and in their names; loss, if any, being made payable to Beneficiary, and Beneficiary may pay and expend for premiums for such insurance such moneys as Beneficiary may deem to be necessary. The form of said policies shall be approved by Beneficiary. If Trustor is a co-insurer under any policies of fire and extended coverage insurance, then Trustor covenants and agrees that, upon request of Beneficiary at any time, it will furnish the Beneficiary satisfactory evidence of insurable value of the improvements situated on said Property. In addition, Trustor shall procure and maintain liability insurance insuring Trustor and, if requested, Beneficiary against liability because of personal injury or property damage in amounts and by companies approved by Beneficiary.

1.07    Insurance and Condemnation Proceeds. Should a loss occur under any policy of insurance required by Paragraph 1.06 hereof, or should all or any portion of the Property be taken or damaged by reason of any public improvement or condemnation proceeding, Beneficiary shall be entitled to all insurance proceeds, compensation, awards, and other payments or relief therefor (all hereinafter referred to as "proceeds"), and, whether or not the

4

security for the Note secured by this Deed of Trust has been impaired, Beneficiary shall be entitled to apply the proceeds collected, after first deducting therefrom all its expenses, including attorneys' fees, in collecting said proceeds, to any and all indebtedness secured hereby and thereafter shall pay the balance remaining, if any, to Trustor.  At its option, in its own name, Beneficiary shall be entitled to commence, appear in and prosecute any action or proceedings or to make any compromise or settlement, in connection with such loss, taking or damage. All such proceeds and rights of action hereby are assigned to Beneficiary.  Notwithstanding the foregoing, absent an "Event of Default" as set for in Paragraph 4.00 below, in the event of such insurance loss or that only a portion of the Property is taken or damaged by reason of any public improvement or condemnation proceeding, and restoration is necessary, Beneficiary, after deducting from said proceeds received all its expenses, including attorneys' fees, may release to Trustor as restoration progresses, so much of said amount as equals the costs of restoration effected by Trustor, subject to reasonable conditions, including the right of Beneficiary to withhold up to ten percent (10%) of said amount until completion and the expiration of the period within which mechanics' or materialmen's liens may be filed and until receipt of satisfactory evidence that no liens exist. Any amount required to complete such restoration in excess of such proceeds shall be paid to Trustor before such proceeds are used. Trustor agrees to execute such further assignments of any such proceeds and rights of action as Beneficiary or Trustee may require.

1.08    Performance of Other Obligations.  Trustor promises and agrees to perform all of the obligations in and under the Note, and any other documents given now or hereafter as security for the Indebtedness secured by this Deed of Trust.

1.09    Restrictions on Transfer or Further Encumbrance.  Absent the prior written consent of Beneficiary, Trustor shall not (a) execute or deliver any pledge, security agreement, mortgage, deed of trust or other instrument of hypothecation, covering all or any portion of the Property or any interest therein; (b) sell, convey, alienate, transfer or otherwise dispose of all or any portion of the Property or any interest therein, whether voluntarily or involuntarily, by operation of law or otherwise; (c) in the event Trustor is a corporation or trust or similar entity, sell, convey, transfer or encumber, whether voluntarily, involuntarily or otherwise, more than ten percent (10%) of the issued and outstanding capital stock of Trustor or of the beneficial interest of such trust or similar entity; or (d) in the event Trustor is a limited or general partnership, or a joint venture, change any constituent general partner or any joint venturer whether voluntarily, involuntarily or otherwise, or sell, convey, transfer, change or encumber any such general partner or joint venturer interests.

1.10    Environmental Compliance.  Trustor shall keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of any federal, state or local laws, ordinances or regulations relating to industrial hygiene or to the environmental conditions on, under or about the Property including, but not limited to, soil and ground water conditions. Trustor shall not use, generate, manufacture, store or dispose of on, under or about the Property or transport to or from the Property any flammable explosives, radioactive materials, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under any applicable federal or

5

state laws or regulations (collectively referred to hereinafter as "Hazardous Materials"), except only those materials and substances which are usually and customarily used in the operation of a residential construction project so long as the amount of such materials and substances which are used or stored upon the Property shall not exceed the amount reasonably required for the operation of such business in its normal and ordinary course.

Trustor shall immediately advise Beneficiary in writing of (i) any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened pursuant to any applicable federal, state or local laws, ordinances, or regulations relating to any Hazardous Materials affecting the Property ("Hazardous Materials Laws"); (ii) all claims made or threatened by any third party against Trustor or the Property relating to damage, contribution, cost recovery compensation, loss or injury resulting from any Hazardous Materials (the matters set forth in clauses (i) and (ii) above are hereinafter referred to as "Hazardous Materials Claims"); and (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property" under the provisions of California Health and Safety Code, Sections 25220 et. seq. or any regulation adopted in accordance therewith, or to be otherwise subject to any restrictions on the ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

Beneficiary shall have the right to join and participate in, as a party, if it so elects, any legal proceedings or actions initiated in connection with any Hazardous Materials Claims and to have its reasonable attorneys' fees in connection therewith paid by Trustor. Trustor shall be solely responsible for, and shall indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any loss, damage, cost, expense or liability directly or indirectly arising out of or attributable to the use, generation, storage, release, threatened release, discharge, disposal, or presence of Hazardous Materials on, under or about the Property, including, without limitation: (a) all foreseeable consequential damages; (b) the costs of any required or necessary repair, cleanup or detoxification of the Property, and the preparation and implementation of any closure, remedial or other required plans; and (c) all reasonable costs and expenses incurred by Beneficiary in connection with clauses (a) and (b) including, but not limited to, reasonable attorneys' fees.

Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Materials on, under, or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any Hazardous Material Claims, which remedial action, settlement, consent or compromise might, in Beneficiary's reasonable judgment, impair the value of the Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Materials on, under, or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action, provided that in such event Trustor shall notify Beneficiary as soon as practicable of any action so taken. Beneficiary agrees not to withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the

6

reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

1.11    Indemnification.    Trustor hereby agrees to indemnify Beneficiary and hold Beneficiary harmless from and against any and all claims, losses, damages, liabilities, fines, penalties, charges, administrative and judicial proceedings and orders, judgments, remedial action requirements, enforcement actions of any kind, and all costs and expenses incurred in connection therewith (including, but not limited to, reasonable attorneys' fees and expenses) arising directly or indirectly, in whole or in part, out of (i) the presence on or under the Property of any Hazardous Materials (as defined in Paragraph 1.10), or any releases or discharges of any Hazardous Materials on, under or from the Property, or (ii) any activity carried on or undertaken on or off the Property, whether prior to or during the period during which any indebtedness under the Note is outstanding and whether by Trustor or any predecessor in title or any employees, agents, contractors or subcontractors of Trustor or any predecessor in title, or any third persons at any time occupying or present on the Property, in connection with the handling, treatment, removal, storage, decontamination, clean-up, transport or disposal of any Hazardous Materials (as defined in Paragraph 1.10) at any time located or present on or under the Property. The foregoing indemnity shall further apply to any residual contamination on or under the Property, or affecting any natural resources, and to any contamination of any property or natural resources arising in connection with the generation, use, handling, storage, transport or disposal of any such Hazardous Materials, and irrespective of whether any of such activities were or will be undertaken in accordance with applicable laws, regulations, codes and ordinances.

1.12    Environmental Provisions.    Trustor hereby acknowledges and agrees that the provisions of Paragraphs 1.10 and 1.11 hereof are intended to be "environmental provisions" (as defined in Section 736 of the California Code of Civil Procedure), and that Beneficiary is intended to have all of the rights of a secured lender under Section 736 of the California Code of Civil Procedure in respect of such "environmental provisions." Trustor further acknowledges and agrees that the rights afforded to Beneficiary under Section 736 of the California Code of Civil Procedure are in addition to all rights, powers and remedies otherwise available to Beneficiary under any of the Trust Documents or at law or in equity.

1.13    Financial Statements.    Trustor shall deliver to Beneficiary a copy of Trustor's federal and state tax returns, prepared by a certified public accountant, concurrently with Trustor's filing of said returns.

1.14    Covenant to Assign Future Leases.    Until all of the indebtedness secured by the Deed of Trust shall have been paid in full, Trustor covenants and agrees that it will immediately transfer and assign to Beneficiary any and all other and future leases on all or any portion of the Property. Assignor further covenants and agrees to make, execute and deliver to Assignee on demand, and at any time or times, any and all written assignments and other instruments sufficient for this purpose or that Beneficiary may deem advisable for carrying out the true intent of this covenant.

### ARTICLE II
### ASSIGNMENT OF RENTS, ISSUES AND PROFITS

7

Non-Order Search
Doc: CALOBA:2018 01122917

Requested By: ravindrak, Printed: 6/8/2020 9:11 PM

2.00 **Assignments of Rents.** Trustor hereby assigns to Beneficiary the rents, issues, profits, royalties, and payment payable under any lease of the Property, or portion thereof including any oil, gas or mineral lease, or any installments of money payable pursuant to any agreement or any sale of said property or any part thereof, reserving unto Trustor the rights prior to default by Trustor in payment of the Indebtedness secured hereby or in the performance of any agreement hereunder, to collect and retain such rents, issues, profits, royalties, payments and installments of money as they may become due and payable. Upon any such default, Beneficiary, without regard to the adequacy of any security for the Indebtedness hereby secured, shall be entitled to (1) collect such rents, issues, profits, royalties, payments and installments of money and apply the same as more particularly set forth in this Paragraph, all without taking possession of the Property, or (2) enter and take possession of the Property or any part thereof, in person, by agent, or by a receiver to be appointed by the court and to sue for or otherwise collect such rents, issues, profits, royalties, payments and installments of money. Beneficiary may apply any such rents, issues, profits, royalties, payments and installments of money so collected, less costs and expenses of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby, in such order as Beneficiary may determine, and, if such costs and expenses and attorneys' fees shall exceed the amount collected, the excess shall be immediately due and payable. The collection of such rents, issues, profits, royalties, payments and installments of money and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice, except to the extent any such default fully is cured. Failure or discontinuance of Beneficiary at any time, or from time to time, to collect any such moneys shall not impair in any manner the subsequent enforcement by Beneficiary of the right, power and authority herein conferred on Beneficiary. Nothing contained herein, including the exercise of any right, power or authority herein granted to Beneficiary, shall be, or be construed to be, an affirmation by Beneficiary of any tenancy, lease or option, or an assumption of liability under, or the subordination of the lien or charge of this Deed of Trust to any such tenancy, lease or option. Trustor hereby agrees that, in the event Beneficiary exercises its rights as in this Paragraph provided, Trustor waives any right to compensation for the use of Trustor's furniture, furnishings or equipment in the Property for the period such assignment of rents or receivership is in effect, it being understood that the rents, issues, profits, royalties, payments and installments of money derived from the use of any such items shall be applied to Trustor's obligation hereunder as above provided. In the event that Trustor concurrently herewith or hereafter executes any separate assignment of rents or of leases to Beneficiary, then to the extent of any inconsistency between the provisions hereof and any such assignment, the provisions of such assignment shall control.

2.01 **Performance of Leases.** Trustor promises and agrees to keep, perform and observe all of the lessor's covenants, agreements and obligations, under the terms of all leases now or hereafter executed relating to all or any portion of the Property, to require that lessees under said leases keep, perform, and observe all of the covenants, agreements and obligations thereunder on their part to be kept, performed and observed; not to alter, amend or modify such leases or any of them without the prior written consent of Beneficiary.

## ARTICLE III
## SECURITY AGREEMENT AND FIXTURE FILING

8

3.00    Creation of Security Interest. This Deed of Trust is deemed a Security Agreement as defined in the California Commercial Code, the Trustor being the Debtor and the Beneficiary being the Secured Party, and the remedies for any violation of the covenants, terms and conditions of the agreements herein contained shall be as prescribed (i) herein, or (ii) by general law, or (iii) as to such part of the security which is also reflected in the financing statement which will be filed to perfect the security interest created herein, by the specific statutory consequences now, or hereafter enacted and specified in the California Commercial Code, all at Beneficiary's sole election. Trustor and Beneficiary agree that the filing of a financing statement in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and the hereby-stated intention of the parties hereto that everything used in connection with the operation or occupancy of the Property is and, at all times and for all purposes and in all proceedings, both legal and equitable, shall be regarded as real property, irrespective of whether (1) any such item is physically attached to the buildings and improvements, (2) serial numbers are used for the better identification of certain equipment items capable of being filed by the Beneficiary, or (3) any such item is referred to or reflected in any such financing statement so filed at any time. Such mention in the financing statement is declared to be for the protection of the Beneficiary in the event any court or judge shall at any time hold that notice of Beneficiary's priority of interest must be filed in the California Commercial Code records to be effective against a particular class of persons, including, but not limited to, the federal government and any subdivision or entity of the federal government. Trustor covenants and agrees to reimburse Beneficiary for any costs incurred in filing such financing statement and any continuation statements.

3.01    Fixture Filing. Portions of the Property are goods which are or are to become fixtures relating to the land, buildings and improvements, and Trustor covenants and agrees that the recording of this Deed of Trust in the real estate records of the County where the land is located shall also operate from the time of recording as a Fixture Filing in accordance with Section 9313 of the California Uniform Commercial Code.

## ARTICLE IV
## DEFAULTS AND REMEDIES

4.00    Events of Default. Any of the following events shall be deemed an Event of Default hereunder, upon the expiration of any applicable grace period:

(a)    Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, whether at maturity or by acceleration or as part of any prepayment or otherwise; or

(b)    If the Trustor shall become insolvent or admit in writing its inability to pay its debts as they mature; or make any assignment for the benefit of creditors; or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business; or

(c)    If any order, judgment or decree shall be entered against Trustor decreeing its dissolution or diversion; or

9

(d) If bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for relief under any bankruptcy law or any law for the relief of debtors shall be instituted against Trustor; or

(e) A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein; or

(f) There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in the Note or the Note, or any loan application or other agreement related thereto or any other now or hereafter existing agreement between Trustor or any affiliate of Trustor and Beneficiary.

4.01 <u>Acceleration upon Default, Additional Remedies.</u> In the event of any such Event of Default, Beneficiary may declare, by notice given to Trustor, all Indebtedness secured hereby to be due and payable without any further presentment, demand, protest or notice of any kind. Thereafter Beneficiary may:

(a) Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of any security for the Indebtedness and obligations hereby secured, enter upon and take possession of the Property hereby granted, or any part thereof, in its own name or in the name of the Trustee, and do any acts which it deems necessary or desirable to preserve the rentability or increase the income of such property or protect the security hereof and with or without taking possession of the Property sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and apply the rents, issues and profits collected, less costs and expenses of operation and collection including reasonable attorneys' fees and accountants' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits, or the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice; and notwithstanding Beneficiary's or Trustee's continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in this instrument or by law upon the occurrence of any default including the right to exercise the power of sale;

(b) Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof;

(c) Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

10

4.02   Foreclosure by Power of Sale.   Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note, the Note and such receipts with evidence of expenditures made and secured hereby as Trustee may require. Trustee shall then have the following duties and powers:

(a)   Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such Notice of Default and Election to Sell as then required by law and by this Deed of Trust and after lapse of such time as may then be required by law and after recordation of such notice of default, Trustee, without demand on Trustor, shall, after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels or items and in such order as Trustee may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary, may purchase at such sale.

(b)   After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums due under the Note, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(c)   Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place first fixed for sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give new notice of sale.

4.03   Appointment of Receiver.   If any Event of Default described in Paragraph 4.00 of this Deed of Trust shall have occurred and be continuing, Beneficiary, as a matter of right but with notice as provided herein to Trustor, but without notice to anyone claiming under Trustor and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property. Any such receiver or receivers shall have all the usual powers and duties of Beneficiary in case of entry as provided in Paragraph 4.01(a) and shall continue as such and exercise such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

4.04   Remedies Not Exclusive.   No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, in the Trust Documents, or by law provided or permitted, but each shall be distinct and cumulative and shall be in addition to every other remedy given hereunder, under the Trust Documents, or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this Deed of Trust or by the Trust Documents to Trustee or Beneficiary or to which either of them may be otherwise entitled,

11

may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

4.05  Partial or Late Payment.  The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums secured hereby or to declare a default as herein provided and in either event to assess a late charge or penalty. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon the condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this Deed of Trust or the other Trust Documents conferred upon them or either of them upon the occurrence of a default.

4.06  Failure or Indulgence Not Waiver.  No failure or delay on the part of Beneficiary in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other power, right or privilege.

## ARTICLE V
## MISCELLANEOUS

5.00  Governing Law.  This Deed of Trust shall be governed by the laws of the State of California. In the event that any provision or clause of this Deed of Trust conflicts with applicable laws, such conflicts shall not affect other provisions of this Deed of Trust which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust are declared to be severable. This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing by the party against whom enforcement of any waiver, change, discharge or termination is sought.

5.01  Statements by Trustor.  Trustor, upon fifteen (15) days' written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust and stating either that there are no known offsets or defenses existing against the debt, or if such known offsets or defenses are alleged to exist, the nature thereof.

5.02  Repayment.  In the event that Trustor fully satisfies its obligations under the Note, in lawful money of the United States of America, and pays all moneys herein agreed to be paid by Trustor, and the interest thereon, and also the reasonable expenses of this trust, as herein specified, then Trustee at the request and expense of Trustor, shall reconvey to Trustor, Trustor's successors or assigns, all the estate in the Property granted to Trustee by this instrument.

5.03  Change in Taxation Method.  In the event of the passage after the date of this Deed of Trust of any law of the State of California, deducting from the value of land, for the purpose

12

of taxation, any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or debts secured by deeds of trust for state or local purposes or the manner of the collection of such taxes so as to cause the assessment of a tax on Beneficiary or a lien or charge on this Deed of Trust, the entire amount due under said Note, at the option of said Beneficiary, without demand or notice, forthwith shall become due and payable; provided, however, that such option shall be ineffective if Trustor is permitted by law to pay the whole of such tax, in addition to all other payments required hereunder and, if prior to such specified date, Trustor does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall constitute a modification of this Deed of Trust.

5.04    Substitution of Trustee.  Beneficiary, from time to time, may substitute another Trustee in place of the Trustee named herein, to execute the trusts hereby created; and upon such appointment, and without conveyance to the successor trustee, the successor trustee shall be vested with all the title, interest, powers, duties and trusts in the Property hereby vested in or conferred upon Trustee herein named. Each such appointment and substitution shall be made by written instrument executed by the Beneficiary containing reference to this Deed of Trust sufficient to identify it, which, when recorded in the office of the County Recorder of the county or counties in which the Property is situated, shall be conclusive proof of proper appointment of the successor trustee. The recital or statements in any instrument executed by Trustee, in pursuance of any of said trusts of the due authorization of any agent of the Trustee executing the same, shall for all purposes be conclusive proof of such authorization.

5.05    Legal Proceedings by Trustee.  Trustee at any time, at Trustee's option, may commence and maintain suit in any court of competent jurisdiction and obtain the aid and direction of said court in the execution by it of the trusts or any of them, herein expressed or contained, and, in such suit, may obtain the orders or decrees, interlocutory or final of said court directing the execution of said trusts, and confirming and approving Trustee's acts, or any of them, or any sales or conveyance made by Trustee, and adjudging the validity thereof, and directing that the purchasers of the Property sold and conveyed be let into immediate possession thereof, and providing for orders of court or other process requiring the Sheriffs of the counties in which the Property is situated to place and maintain said purchasers in quiet and peaceable possession of the Property so purchased by them, and the whole thereof.

5.06    Reconveyance by Trustee.  Trustee, at any time, upon request of Beneficiary, may reconvey to Trustor or Trustor's successors or assigns, any portion of the Property without affecting the personal liability of any person for the payment of any of the Indebtedness, or the lien of this Deed of Trust upon the remainder of the Property not reconveyed.

5.07    No Estoppel.  Any failure of Trustee or Beneficiary to exercise any right or option by this Deed of Trust given or preserved to Trustee or Beneficiary shall not stop Trustee or Beneficiary from exercising any such right or option upon any subsequent default of Trustor.

5.08    Further Assurances.  Trustor, forthwith upon request, at any and all times hereafter, at the expense of Trustor, will cause to be made, executed, acknowledged and delivered to Trustee, any and every deed or assurance in law which Trustee or counsel of Trustee shall advise

13

or require for the more sure, effectual and satisfactory granting and confirming of the Property unto Trustee.

5.9   Non-Liability of Trustee. Trustee shall not be liable or responsible with respect to its acts or omissions hereunder, except for Trustee's own gross negligence or willful default, or be liable or responsible for any acts or omissions of any agent, attorneys or employee by it employed hereunder, if selected with reasonable care.

5.10   Release and Exchange of Security. In the event that any change or changes occur in the title to all or any part of the Property, Beneficiary, from time to time, without notice to or consent of Trustor and without prejudice to any rights which Beneficiary may have against Trustor, may (a) take, exchange, or release any security for any of the obligations now or hereafter secured hereby; or (b) extend the time for payment of the said obligations.

5.11   Successors and Assigns.  This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their successors and assigns.

5.12   Construction. This Deed of Trust shall be construed so that, wherever applicable and with reference to any of the parties hereto, the use of the singular number shall include the plural number, the use of the plural number shall include the singular number, the use of one gender shall include the neuter, masculine and feminine gender.

5.13   Notices. Trustor requests that a copy of any notice of default and of any notice of sale hereunder shall be mailed to Trustor at the address set forth above which is Trustor's address.

14

IN WITNESS WHEREOF, Trustor has executed this instrument the day and year first above written.

**CRESTLLOYD, LLC**
a California limited liability company

By: _____
Nile Niami, Manager

15

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _LOS ANGELES_

On _October 30, 2018_ before me, _Nigel Gibbs_ a Notary Public, personally appeared _Nile Niami_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _[signature]_ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2166230
My Comm. Expires Oct 4, 2020

16

## EXHIBIT A

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

17

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS
OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM
THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE
HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021


Initials

18

## EXHIBIT B

(1)     All machinery, equipment, materials (including building materials), appliances, and fixtures now or hereafter installed or placed on or in said land or buildings and improvements for the generation and distribution of air, water, heat, electricity, light, fuel or refrigeration or for ventilating or air conditioning purposes or for sanitary or drainage purposes or for the exclusion of vermin or insects or the removal of dust, refuse or garbage, and all elevators, awnings, window shades, drapery rods and brackets, screens, floor coverings, incinerators, carpeting and all furniture, fixtures, and other property used in the operation or occupancy of said land or buildings and improvements, together with all additions to, substitutions for, changes in or replacements of the whole or any part of any or all of said articles of property, and together with all property of the same character that Trustor may hereafter acquire at any time until the termination of this Deed of Trust and all proceeds received upon the sale, exchange, collection or other disposition of the foregoing.

(2)     All intangible property and rights relating to that land or the operation thereof, or used in connection therewith, including but not limited to all governmental permits relating to construction on said land.

(3)     All reserves, deferred payments, deposits, refunds, cost savings and payments of any kind relating to the construction of any improvements on said land.

(4)     All water stock relating to said property.

(5)     All causes of action, claims, compensation and recoveries for any damage, condemnation or taking of said property, or for any conveyance in lieu thereof, whether direct or consequential, or for any damage or injury to said property, or for any loss or diminution in value of said property.

(6)     All plans and specifications prepared for construction of buildings and improvements on said land and all studies, data and drawings related thereto; and also all contracts and agreements of the Trustor relating to the aforesaid plans and specifications or to the aforesaid studies, data and drawings or to the construction of buildings and improvements on said land.

(7)     All monies on deposit for the payment of real estate taxes or special assessments against said property or for the payment of premiums on policies of fire and other hazard insurance covering the property described herein or said land.

_____
Initials

**EXHIBIT B**

ORIGINAL

1              UNITED STATES BANKRUPTCY COURT

2         CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                        --oOo--

4    In Re:                    )  Case No. 2:21-bk-18205-DS
                               )
5    CRESTLLOYD, LLC,          )  Chapter 11
                               )  Los Angeles, California
6                              )
     Debtor,                   )  Thursday, 11:30 A.M.
7                              )  October 27, 2022
     --------------------------X
8    INFERNO INVESTMENT, INC., )
                               )
9              Plaintiff,      )
                               )
10             v.              )  Adv. No. 2:22-ap-01125-DS
                               )
11   CRESTLLOYD, LLC, et al.,  )
                               )
12             Defendants.     )
     --------------------------X
13
                                  CONTINUED HEARING RE: [24]
14                                DEFENDANT HANKEY CAPITAL,
                                  LLC'S MOTION TO DISMISS
15                                INFERNO INVESTMENT, INC.'S
                                  ADVERSARY COMPLAINT
16

17                TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE DEBORAH SALTZMAN
18            UNITED STATES BANKRUPTCY JUDGE

19

20   APPEARANCES:

21   For the Plaintiff:        PAUL N. SORRELL, ESQ.
                               Lavely & Singer
22                             2049 Century Park East
                               Suite #2400
23                             Los Angeles, California  90067

24
     Proceedings produced by electronic sound recording;
25   transcript produced by transcription service.

```
 1   For Yogi Securities:        JOHN ARTHUR MOE, II, ESQ.
                                 Dentons US, LLP
 2                               601 South Figueroa Street
                                 Suite #2500
 3                               Los Angeles, California  90017

 4   For Hankey Capital,         HOWARD STEINBERG, ESQ.
     LLC:                        GreenbergTraurig
 5                               1840 Century Park East
                                 Suite #1900
 6                               Los Angeles, California  90067

 7   Court Recorder:            Dawnette Francis
                                 U.S. Bankruptcy Court
 8                               Central District of California
                                 Edward R. Roybal Federal Building
 9                                 and Courthouse
                                 255 East Temple Street, Room #940
10                               Los Angeles, California  90012
                                 (855) 460-9641
11
     Court Transcriptionist:     Ruth Ann Hager, C.E.T.**D-641
12                               Ben Hyatt Certified Deposition
                                   Reporters
13                               17835 Ventura Boulevard, Suite 310
                                 Encino, California  91316
14

15

16

17

18

19

20

21

22

23

24

25
```

Page                                                                    3

1          LOS ANGELES, CALIFORNIA, THURSDAY, OCTOBER 27, 2022

2                              11:59 A.M.

3                             --oOo--

4          THE COURT:  Okay.  Let's go back to matter #4.20.

5   This is the Crestlloyd adversary proceeding, *Inferno*

6   *Investment v. Crestlloyd*.  This is a ruling for the parties

7   on last week's discussion regarding the motion to dismiss

8   filed by Hankey.

9          Let me just start with appearances here.

10  Mr. Steinberg, good mor -- good afternoon, though.

11         MR. STEINBERG:  Good afternoon, Your Honor.

12  Howard Steinberg of GreenbergTraurig, appearing on behalf

13  of the defendant Hankey Investments.

14         THE COURT:  Okay.  Mr. Sorrell, good afternoon.

15         MR. SORRELL:  Good afternoon, Your Honor.  Paul

16  Sorrell, Lavely & Singer, appearing on behalf of the

17  plaintiff Inferno Investment, Inc.

18         THE COURT:  Okay.  And we also have Mr. Moe here.

19  Good morning -- or good afternoon.

20         MR. MOE:  Good afternoon.  John Moe of Dentons

21  US, LP, on behalf of Yogi Securities Holdings.

22         THE COURT:  Okay.  Well, I thank you all for

23  coming back today.  I really did want to take a look once

24  again at the complaint and the causes of action and make

25  sure that I gave you a ruling that addressed all the

Page                                                                          4

1   arguments and would be most helpful to everyone going

2   forward so that we could have a clearer complaint and give

3   the parties better direction.  So I do appreciate you

4   coming back.

5          I'm going to be reading a little bit more than

6   you're used to here because I want to make sure that I get

7   everything that was covered in the papers and in oral

8   argument and I want to make sure that I address everything

9   in the complaint adequately.

10          So I'll first take a step back.  Once again, this

11  is the Hankey Capital motion to dismiss.  This is the

12  complaint filed by Inferno Investment in a 12(b)(6) motion.

13  Obviously we are very much at the pleading stage.  The

14  Court is really limited to assessing what is on the paper

15  on the face of the complaint.

16          And with that in mind, I want to address kind of

17  the two broader arguments that are brought up in the motion

18  first regarding judicial estoppel and secondly regarding

19  what I'll call kind of the appropriateness of declaratory

20  relief of the stand-alone claim and then I'll get to each

21  of the six specific claims for relief.

22          So as of last week on judicial estoppel I'm not

23  persuaded by the motion here.  First of all, I think that

24  the parties both actually applied in large part the wrong

25  standard.  I would look to the *New Hampshire v. Maine* case,

Page                                                                          5

1   which I think I cited last week.  That's at 532 U.S. 742.

2   It's 2001 within the Ninth Circuit.  We looked to *Hamilton*

3   *v. State Farm* at 270 F.3d 778, and also I think helpful is

4   the *Spokane Law Enforcement Credit Union v. Barker* case at

5   839 F.3d 1189 setting forth the three-factor test to

6   establish judicial estoppel.

7           I don't see here that under that test the second

8   or third factors have been established here.  I question

9   whether they even could be established at the pleading

10  stage for a 12(b)(6) motion, but whether that is the case

11  or not, I don't see that that's been established here.  I

12  don't think that my ruling -- that I don't find judicial

13  estoppel has been established here in a 12(b)(6) motion

14  would necessarily preclude that argument later on in this

15  proceeding as we go forward.  But for purposes of this

16  motion, I do not find that there is a basis for finding --

17  that the plaintiff would be judicially estopped from making

18  complaints.

19          Secondly, the motion argues broadly with respect

20  to a number of the claims for relief, that declaratory

21  relief is inappropriate as a stand-alone claim.  And this

22  feels as though the argument is one of form over substance

23  because if the movant is arguing that the relative priority

24  lienholders can't be litigated without some statutory or

25  common law cause of action, that is going to be news to a

Page                                                                          6

1  lot of courts that regularly decide cases regarding the

2  distribution of lien priority.

3          The movant doesn't explain how it would be

4  inappropriate for the Court to make a determination about

5  interpretation of the party's memoranda of agreement, the

6  subordination agreement, and whether it was forged or a

7  general assessment of the relative priority of parties

8  claiming security interests and the proceeds of the sale of

9  the property that was approved by the Court.  I just don't

10 see that this argument is one that would cause the Court to

11 grant a motion to dismiss.

12         Now, that said, we now turn to the specific

13 claims for relief.  I'm going to go through them in order

14 one to six (phonetic).

15         The first claim for relief I will grant the

16 motion in part with leave to amend.  As to the allegations

17 in the first claim for relief regarding the allegedly

18 forged subordination agreement, I'm going to deny the

19 motion.  I don't see that the motion makes an effective

20 argument that the complaint fails to state a claim with

21 respect to substance there.  The only real argument made in

22 the motion relate to the issue that I've already discussed,

23 this declaratory relief type of argument, and I don't think

24 that that is enough -- would sustain a motion to dismiss.

25         So as to the allegedly forged agreement, I think

Page                                                                    7

1  that there are facts that are alleged that would support

2  the cause of action, so the motion is denied.

3         With respect to the next subsection under this

4  claim for relief regarding the lack of compliance with the

5  disbursement requirements of Exhibit D, I'm going to grant

6  the motion here with leave to amend.  It doesn't seem to me

7  that the complaint sets forth any legal theory upon which

8  any alleged failure to follow the procedures set forth in

9  Schedule D would result in any changes of a lienholder's

10  priority.  And I think that the complaint needs to set

11  forth that legal theory and support those allegations so

12  that the movants are in a position to be able to answer.

13         Next, we have -- and this is what I look at as

14  the last subset of valuations in the first claim for

15  relief, these allegations that the memoranda of agreement

16  attached to Claim 7 and Claim 18 doesn't perfect liens

17  against the property.  And here again, I'm going to grant

18  the motion with leave to amend.

19         I want to separate out Claim 17 and Claim 18 just

20  for a moment here because I do look at them differently and

21  obviously they're different claims.  I almost don't know

22  what to say about Claim 17.  The relief requested in the

23  complaint is a declaratory judgment as to whether the

24  security interest related to that claim was perfected, but

25  there is no dispute here that this is a worthless claim.

Page                                                                    8

1  So as the claim currently stands, there's no claim --

2  there's no cause of action that's been alleged there.  Now,

3  I don't know if there could be, but the complaint, as it

4  stands, doesn't state a claim upon which relief could be

5  granted.

6         As to Claim 18, I agree with the motion that this

7  is really allegations of legal conclusions.  All the

8  complaint is alleging at this point is that the memorandum

9  of agreement didn't perfect a lien against the property and

10 the Court at this stage can't determine what the factual

11 basis is for Inferno's claims or a legal theory, so I want

12 to give the plaintiff an opportunity to amend the first

13 claim for relief as to that claim as well.

14        The second claim for relief, I'm going to deny

15 the motion to dismiss here.  Again, we're at the pleading

16 stage.  The Court has to look at what is on the face of the

17 document.  Here the allegation -- the allegations in the

18 complaint request declaratory relief to the effect that

19 Inferno didn't subordinate its debt to the defendant

20 lienholder's claims by the MOA and they're, again, kind of

21 in parts here -- two parts.

22        First, there is a reference -- let me make sure I

23 quote this directly here.  "The MOA was prepared in the

24 context and subordination with respect to specific loans to

25 which Inferno agreed in writing to subordinate."  This is

Page                                                                        9

1  from paragraph 46 of the complaint.

2          I can't conclude that accepting all the

3  allegations is true in this paragraph and the second claim

4  for relief and drawing any inferences in favor of the

5  plaintiff at this stage as it'd have to, that this claim

6  would have to fail solely on the language of the MOA

7  itself.  I don't see in the motion to dismiss any authority

8  presented that the language of the MOA agreement itself

9  would necessarily create a broad subordination on its own

10 face.  So at the pleading stage I don't see grounds for a

11 motion to dismiss.

12         I also see in the motion with respect to the

13 second claim for relief an argument that the claim has to

14 fail because the allegations of fraud are not pleaded with

15 particularity.  Now, this is interesting because it is the

16 case, of course, that when fraud is alleged there is a

17 heightened standard for the pleading.  But here, the

18 alleged fraud relates to fraud by Crestlloyd, by the

19 debtor, and they have answered the complaint.

20         I don't see in the motion any explanation for why

21 the movant would need specific further allegations to

22 defend allegations of fraud by another defendant.  I don't

23 think that there's anything that would make the movant

24 unable to respond to this complaint as it stands now.  So

25 again, as to the second claim for relief, I'm going to deny

Page                                                                    10

1  the motion.

2          As to the third claim for relief, this is another

3  declaratory relief claim that Inferno's claim is senior to

4  other secured creditors, I don't see anything in the motion

5  that is really different from the issues that I've already

6  discussed with respect to declaratory relief just generally

7  being inappropriate for a complaint.  As I said before, I

8  don't think that that is the case here.

9          So I don't see any other basis in the motion

10 beyond that general argument and also any arguments with

11 respect to arguments regarding the second claim for relief

12 where I'm denying the motion.  So again, as to the third

13 claim for relief, I am going to deny the motion to dismiss.

14         The fourth claim for relief has to do with

15 violation of California Business and Professionals Code

16 17200.  This is the unfair business practices section of

17 the Code.  Here I am going to grant the motion and, as I

18 said in our conversations last week, I considered granting

19 this motion without leave to amend, but I am going to grant

20 with leave to amend here at this early stage.  You know,

21 leave to amend should be granted liberally, so I'm going to

22 do that here.

23         And I want to specifically talk about the basis

24 for granting the motion here.  First, there's kind of a

25 standing argument that's made in the motion and I take this

1  to mean that there needs to be allegations of a public or

2  consumer interest here that would be protected under

3  California Unfair Business and Professionals Code.

4          Looking at the case law, I think that the most

5  helpful case for the parties to consider is the *Sacramento*

6  *EDM* case and that holding specifically states that there

7  needs to be in a complaint allegations that individual

8  consumers or the public at large were harmed as a result of

9  the alleged conduct.

10         And in this case, the complaint doesn't allege

11 enough facts to show the existence of a public or consumer

12 interest that would be protected by the unfair business

13 practices provisions.  Again, I am granting leave to amend

14 because leave to amend should be granted liberally,

15 particularly when we're talking about the first complaint.

16 But I do wonder whether it's possible to amend the

17 complaint to allege harm within the statute here, but I

18 will grant leave to amend.

19         The second part of the motion here with respect

20 to unfair business practices has to do more with specific

21 allegations of violations of the Code, specifically the

22 motions arguing that there's no alleged statutory

23 violation, there's no allegation of unlawful conduct.

24         The opposition argues that the plaintiff is

25 alleging fraudulent and unfair conduct that would support

Page                                                                          12

1  an unfair business practices claim.  And once again, I do

2  agree with the motion that as it stands the complaint

3  doesn't have sufficient allegations.

4        When I look at paragraph 57 and 58 of the

5  complaint, this is with respect to what Inferno is arguing

6  is allegations of fraudulent conduct, if this is the

7  fraudulent activity, paragraphs 57 and 58, it's not

8  adequate.  These paragraphs don't have the particularity

9  that is needed to satisfy Rule 90 when it comes to claims

10 granted in fraud.

11       When we talk about unfair conduct, which is the

12 other argument that Inferno is making, I do think that the

13 *Celtek* (phonetic) case is the correct standard here.  It is

14 a case involving an action by a competitor alleging anti-

15 competitive practices.  That's exactly what we have here.

16 And I don't think that the standard has been satisfied

17 because the complaint needs to allege not just that the

18 parties are competitors, which I suppose the complaint

19 does, but -- and it doesn't need to just allege that the

20 plaintiff was harmed here, which I suppose it does.  But

21 the complaint has to allege that there is conduct that

22 significantly threatens or harms competition.  That's the

23 *Celtek* task.  That is what needs to be alleged in a

24 complaint that is asserting unfair conduct related to anti-

25 competitive practices.  It's not enough to just say, we're

Page                                                                    13

1   competitors and we're harmed.  There has to be a broader

2   allegation in order to support a claim of unfair business

3   practices.  So as to the fourth claim for relief, again,

4   I'm going to grant the motion with leave to amend here.

5         The fifth claim for relief is the claim for

6   declaratory relief regarding whether the rebates and DIP

7   proceeds are unencumbered.  I don't see anything in the

8   motion beyond, again, the argument on inappropriateness of

9   declaratory relief that would cause me to grant a motion to

10  dismiss the claim.  I don't see any specific arguments

11  regarding the allegations alleged in the fifth claim, so on

12  this, the motion with respect to the fifth claim for relief

13  is denied.

14        Finally, we get to recission, the sixth claim for

15  relief.  Here I will grant with leave to amend.  I'll agree

16  with the motion that recission is not a stand-alone cause

17  of action.  It has to arise out of a specific claim.

18        Now, in briefing related to the motion to

19  dismiss, I was able to discern about what the plaintiff

20  believes or intends is that recission is based on a claim

21  of fraudulent inducement and then recission would be a

22  remedy for that.

23        If that's the case, the complaint needs to allege

24  the elements of fraudulent inducement or some other claim

25  that would be the basis for a recission.  But at this

Page                                                                      14

1   point, the Court doesn't see that there is a claim upon

2   which recission could be granted as a remedy.  So I have to

3   grant the motion to dismiss with leave to amend to allege

4   the elements of the cause of action that would support

5   recission as a remedy.

6           There's a bunch of argument made in the motion

7   with respect to meeting the requirements of (9)(b).  Yeah,

8   the Court would have to evaluate whether the heightened

9   pleading standards of (9)(b) are met in the context of a

10  realleged claim, but at this stage I'm not in a position to

11  say whether that's been met or not, because I don't see the

12  claims that have been alleged.

13          So I thank you for your patience in waiting a

14  week and then sitting through what is a little bit of a

15  longer usual reading than I'm used to giving, but that is

16  my ruling on the motion.  I want to make sure there are no

17  questions regarding specifics and then maybe we'll talk to

18  finding on when an amended complaint is due and when an

19  amended responsive pleading is due.

20          Questions, Mr. Steinberg or Mr. Sorrell?

21          MR. STEINBERG:  No, Your Honor.  I think your

22  ruling was clear.  Thank you very much.

23          THE COURT:  Okay.  Thank you.

24          Mr. Sorrell?

25          MR. SORRELL:  Your Honor, I have no questions.  I

Page                                                                          15

1   mean, there are a number of issues I could address and I

2   was prepared to walk through, you know, chapter and verse

3   some of the issues where Mr. Steinberg had suggested my

4   client had fabricated a forgery and so forth, but I've

5   heard everything you said.  I understand.  It makes sense

6   and I'm prepared to just talk about a day for an amended

7   complaint.

8          THE COURT:  How long do you think you need?

9          MR. SORRELL:  We don't need a lot of time.  I

10  would say two weeks, Your Honor, three weeks.  If we can

11  have three weeks, that would be sufficient.

12         THE COURT:  That's fine with me and I think that

13  that's -- you know, I'm always happy to give more than two

14  weeks when we have, you know, a complaint like this that,

15  you know, has some detail to it and also obviously involves

16  a lot of money that the parties are very concerned about.

17         So let's have an amended complaint then three

18  weeks after entry of the order.

19         Mr. Steinberg, if you would lodge an order, you

20  know, granting the motion in part with leave to amend,

21  amended complaint to be filed three weeks after entry of

22  the order.  And then for a responsive pleading, you know,

23  again, the rules would be two weeks, but perhaps a little

24  more would be appropriate here.  Mr. Steinberg?

25         MR. STEINBERG:  Yeah, I'd appreciate it if we'd

Page                                                                      16

1  get a little bit more.  Then we get into the holiday season

2  is the only --

3          THE COURT:  You want to do three weeks for that

4  as well?

5          MR. STEINBERG:  How about three weeks, three

6  weeks, three weeks.

7          MR. SORRELL:  All right.  That will be fine, Your

8  Honor.

9          THE COURT:  Okay.  If you could include that in

10 the order that would be great.  And I believe at this point

11 do we have -- just looking to see -- no, we didn't keep --

12 yeah, we had our status conference already set to that

13 December date, I believe, to go along with the various

14 other --

15         MR. SORRELL:  I think it was, December 1, Your

16 Honor.

17         THE COURT:  Yeah.  I suspect that date will

18 probably change for everyone, but we'll kind of see where

19 we are when we go forward.

20         MR. SORRELL:  All right.  Very well.  Thank you

21 very much.

22         THE COURT:  Okay.  Thank you so much, everyone.

23         MR. SORRELL:  Thank you.

24         THE COURT:  Mr. Steinberg, I'll look for the

25 order from you in three weeks, three weeks, and I'll get

Page                                                                    17

1    that entered.  Thank you.

2              MR. STEINBERG:  Terrific.

3              ATTORNEYS:  Thank you, Your Honor.

4              THE COURT:  Okay.  That's it for today.  We're

5    adjourned.

6    (At 12:23 p.m.)

7                    *  *  *  *  *  *  *

8              I certify that the foregoing is a correct

9    transcript from the electronic sound recording of the

10   proceedings in the above-entitled matter.

11

12   *Ruth Ann Hager*

13

14   _____        Date:  12/1/2022

15   RUTH ANN HAGER, C.E.T.**D-641

16

17

18

19

20

21

22

23

24

25

**EXHIBIT C**

<pre>
 1                   UNITED STATES BANKRUPTCY COURT

 2            CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

 3                             --oOo--

 4  In Re:                      )  Case No. 2:21-bk-18205-DS
                                )
 5  CRESTLLOYD, LLC,            )  Chapter 11
                                )  Los Angeles, California
 6                              )
    Debtor,                     )  Monday, 1:30 P.M.
 7                              )  February 6, 2023
    ----------------------------X
 8  INFERNO INVESTMENT, INC.,   )
                                )
 9            Plaintiff,        )
                                )
10            v.                )  Adv. No. 2:22-ap-01125-DS
                                )
11  CRESTLLOYD, LLC, et al.,    )
                                )
12            Defendants.       )
    ----------------------------X
13
                                   CONTINUED HEARING RE:
14                                 [131] DEFENDANT HANKEY
                                   CAPITAL, LLC'S NOTICE OF
15                                 MOTION TO DISMISS INFERNO
                                   INVESTMENT, INC.'S FIRST
16                                 AMENDED ADVERSARY
                                   COMPLAINT
17
                                   CONTINUED STATUS HEARING
18                                 RE: [1] ADVERSARY CASE
                                   2:22-ap-01125; COMPLAINT
19                                 BY INFERNO INVESTMENT,
                                   INC., AGAINST CRESTLLOYD,
20                                 LLC, HANKEY CAPITAL, LLC,
                                   A CALIFORNIA LIMITED
21                                 LIABILITY COMPANY, YOGI
                                   SECURITIES HOLDINGS, LLC,
22                                 HILLDUN CORPORATION,
                                   PRIORITY OR EXTENT OF LIEN
23                                 OR OTHER INTEREST IN
                                   PROPERTY)),
24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.
</pre>



P 888.272.0022  F 818.343.7119     BEN HYATT  www.benhyatt.com
                                   Certified Deposition Reporters

```
 1                                    (91 (DECLARATORY
                                      JUDGMENT)), (02 (OTHER
 2                                    (E.G. OTHER ACTIONS THAT
                                      WOULD HAVE BEEN BROUGHT IN
 3                                    STATE COURT IF UNRELATED
                                      TO BANKRUPTCY))) AND
 4                                    CONTINUED STATUS HEARING
                                      RE: [32] COUNTERCLAIM AND
 5                                    CROSSCLAIM BY YOGI
                                      SECURITIES HOLDINGS, LLC
 6                                    AGAINST CRESTLLOYD, LLC;
                                      HANKEY CAPITAL, LLC;
 7                                    INFERNO INVESTMENT, INC.;
                                      AND HILDUN CORPORATION
 8

 9                        TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE DEBORAH SALTZMAN
                   UNITED STATES BANKRUPTCY JUDGE
11

12

13   APPEARANCES:

14   For Inferno Investment,   PAUL N. SORRELL, ESQ.
     Inc.:                     Lavely & Singer
15                             2049 Century Park East
                               Suite #2400
16                             Los Angeles, California  90067

17   For the Debtor:           JOSEPH M. ROTHBERG, ESQ.
                               Levene Neale Bender Yoo &
18                                Golubchick, LLP
                               2818 La Cienega Avenue
19                             Los Angeles, California  90034

20   For Hilldun Corporation:  RYAN COY, ESQ.
                               BG Law, LLP
21                             21650 Oxnard Street
                               Suite #500
22                             Woodland Hills, California  91367

23   For Hankey Capital,       HOWARD STEINBERG, ESQ.
     LLC:                      GreenbergTraurig
24                             1840 Century Park East
                               Suite #1900
25                             Los Angeles, California  90067
```

```
 1   For Hankey Capital,        THOMAS M. GEHER, ESQ.
     LLC:                       1900 Avenue of the Stars
 2                              Seventh Floor
                                Los Angeles, California  90067
 3
     Court Recorder:            Wanda Toliver
 4                              U.S. Bankruptcy Court
                                Central District of California
 5                              Edward R. Roybal Federal Building
                                  and Courthouse
 6                              255 East Temple Street, Room #940
                                Los Angeles, California  90012
 7                              (855) 460-9641

 8   Court Transcriptionist:    Ruth Ann Hager, C.E.T.**D-641
                                Ben Hyatt Certified Deposition
 9                                Reporters
                                17835 Ventura Boulevard, Suite 310
10                              Encino, California  91316

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**P** 888.272.0022 **F** 818.343.7119    **BEN**HYATT    www.benhyatt.com
Certified Deposition Reporters

Page                                                                    4

1          LOS ANGELES, CALIFORNIA, Monday, FEBRUARY 6, 2023

2                              1:46 P.M.

3                              --oOo--

4          THE CLERK:  Please come to order.  This Court is

5    now in session, the Honorable Deborah J. Saltzman

6    presiding.

7          THE COURT:  Thank you.  It is February 6, 2023

8    and this is the Bankruptcy Court for the Central District

9    of California, Los Angeles Division.

10         We are here in the Crestlloyd matter, the

11   adversary proceeding, the motion to dismiss from Hankey

12   Capital, the Inferno amended complaint.  I have collected

13   appearances today.  I think that primarily you'll be

14   hearing from me today on a ruling.  Mr. Steinberg and

15   Mr. Sorrell, we might have something to discuss after I've

16   gone through that.  But why don't we get right to it.

17         This is our second time around, of course, so what

18   I'll be doing is essentially the same thing that I've done

19   on the initial complaint and then on one of the related

20   complaints in the proceeding.  I'll go claim by claim as we

21   walk through the motion to dismiss giving my ruling whether

22   there will be leave to amend or not leave to amend whether

23   the motion will be granted or denied.

24         So to recap where we are with the amended

25   complaint, the claims at issue are the first, fourth and

P 888.272.0022  F 818.343.7119        BENHYATT   www.benhyatt.com
                                              Certified Deposition Reporters

Page                                                                            5

1    sixth causes of action from the original complaint.  Those

2    were to be amended and here there is also a seventh claim

3    for relief as well.  So I'll just go through them in order.

4                MR. SORRELL:  Your Honor?

5                THE COURT:  Yes, Mr. Sorrell.

6                MR. SORRELL:  I apologize.  I think there are

7    only three claims, first, fourth and then the seventh, if

8    I'm not mistaken.  I don't think the sixth --

9                THE COURT:  Did I go through the sixth?  Oops.

10   First, fourth and seventh.  Thank you.  I gave myself more

11   work.

12               All right.  So we all are aware of the standard

13   on the motion to dismiss.  Rule 12(b)(6) provides for

14   dismissal of a complaint if it fails to state a claim upon

15   which relief can be granted.  The Court accepts as true all

16   facts alleged in the complaint and draws all reasonable

17   inferences in favor of the plaintiff.  The Court need not

18   accept as true conclusory allegations or legal

19   characterizations cast in the form of factual allegations.

20               Dismissal is appropriate at this stage if the

21   complaint fails to plead facts sufficient to raise a

22   reasonable expectation that discovery will reveal evidence

23   supporting relief.  So we get to our first claim for

24   relief.  This is the cause of action for declaratory

25   relief, essentially to the fact that Inferno's secured debt

Page                                                                              6

1   would not be subordinated to Hankey's.

2           We are largely in the same place after the

3   amended complaint that we were at after the initial

4   complaint.  When I look at the first amended complaint I

5   see really the same problems that I saw initially.  Inferno

6   to me still has to explain further several issues and this

7   has all been discussed at oral argument and the pleadings.

8   How does Hankey's alleged failure to monitor disbursement

9   support equitable or some other subordination as to

10  Inferno?  How does the lack of perfection with respect to

11  claims 17 and 18 support subordination?  And how would

12  Inferno be entitled to subordination of the original loan

13  amount in its entirety, as opposed to allegedly wrongful

14  additional advances.  We have spent a lot of time

15  discussing *Linear* (phonetic) and the related cases and

16  we've had a lot of discussion at the hearing regarding

17  support for subordination at least of subsequent advances.

18  But there needs to be something in the complaint more than

19  what we already have that would support subordination as to

20  the full amount.

21          I can't at this stage make a conclusion as a

22  matter of law that Inferno is unable to allege facts

23  supporting a claim for subordination or equitable

24  subordination, but the complaint needs to be stronger.  And

25  what I think -- as I look at the complaint or the initial

Page                                                                    7

1  and the amended -- the allegations are not clear as to what

2  is the basis for subordination.  Are we talking about

3  equitable subordination, are we talking about Section

4  510(c)?  I just -- in reading the amended complaint,

5  reading all the papers, even looking back at the original

6  complaint, again I cannot conclude at this stage that it's

7  not possible to allege the facts that would support causes

8  of action for subordination, but it's not there.

9          So I'm going to grant this with leave to amend.

10  Obviously this is the second complaint.  Leave to amend is

11  to be granted freely.  But I will tell you if we get to a

12  third round here it's going to be a lot more difficult for

13  mortgage to be in this same position where I'm not able to

14  determine as a matter of law that it's not possible to

15  allege facts supporting a cause of action.

16          So as to the first claim for relief, the

17  subordination claim, I will grant the motion with leave to

18  amend.

19          The fourth claim has to do with unfair

20  competition, what I've referred to in my notes as the UCL

21  violation.  And again, we're in a pretty similar position

22  as we were with the initial complaint and the initial round

23  of briefing.  Hankey has essentially raised two arguments

24  here:  first, that Inferno lacks standing under the law;

25  and second, that Inferno fails to allege a violation of the

Page                                                                    8

1   law.  And the two arguments are very much overlapping

2   because when we talk about standing, we talk about the

3   failure by Inferno to be able to allege a harm to

4   competition generally to the general public to individual

5   consumers, so the standing argument is based on those

6   allegations.

7        And then when we get to the arguments of failing

8   to allege a violation, again, there are arguments regarding

9   the failure to allege harm to competition.  So the

10  arguments, while they're separated as standing and failing

11  to allege a violation, they really are overlapping, I

12  think, in how we have to look at them.

13       When I look at the amended complaint, I'm trying

14  to find something in it that would allow me to conclude

15  that this proceeding should go forward at the pleading

16  stage.  And I do not think as a matter of law that it is

17  possible for Inferno to allege facts that would support

18  this fourth cause of action.  I cannot see anything other

19  than conclusory allegations about harm to competition

20  broadly.

21       The *Linear Technology* case, I think, is very

22  instructive here.  There's no authority that Inferno has

23  raised here that would support its position.  There's an

24  attempt to kind of distinguish away *Linear Technology* and

25  there are allegations that are conclusory of expense to

Page                                                                          9

1   competition, but there are no allegations of facts that
2   there is harm to any market or competition.  It's not
3   enough to just say that Inferno and the other lenders
4   involved are part of the market, a very small market, and
5   that they're competitors.  There are no facts alleging that
6   harm to a specific competitor, which is all that there is
7   here, are somehow transformed into harm to competition
8   broadly.  And I don't see any authority or any facts in the
9   amended complaint that would begin to support a cause of
10  action under this law.
11          So that, I think, is really the standing type of
12  argument.  And then we get into the violation of the UCL
13  arguments.  And again, we have very similar issues here.
14  The *Cell Tech* case is really instructive here.  And again,
15  it's not enough to try to either distinguish away *Cell Tech*
16  or to say that the complaint satisfies *Cell Tech* by simply
17  saying -- let me quote from the opposition here.  Inferno
18  asserts that it's alleging a "predatory lending scheme that
19  damaged Inferno, the competition as a whole and consumers
20  generally."  The amended complaint doesn't allege any harm
21  to consumers.  It doesn't allege any harm to competition.
22  There's no authority from Inferno to support this idea that
23  you're simply alleging harm to a couple of competitors is
24  harm to competition broadly.
25          I don't see anything that the allegations support

Page                                                                        10

1   a cause of action of the type that UCL is designed to

2   protect here.  There is no allegation of harm to

3   competition.  There is no allegation of harm to the public.

4   There are no facts alleged that support a cause of action

5   under this law that is specifically designed to protect

6   competition in the public.  And I do not see that amendment

7   would solve anything here.

8            So I'm going to grant the motion without leave to

9   amend on the unfair competition claims.

10           Now, we have the new cause of action, the

11  intentional interference with contractual relation.  And

12  the elements of this cause of action, there are five

13  elements:  a valid contract between the plaintiff and a

14  third party; defendant's knowledge of the contract;

15  defendant's intentional act designed to induce a breach or

16  disruption of the contractual relationship; actual breach

17  or disruption of the contractual relationship; and finally,

18  resulting damage.

19           What I think here is problematic with this cause

20  of action is the intent element.  I don't think that the

21  allegations are clear enough.  There is what I see as a

22  conclusory allegation that Hankey intended to disrupt the

23  allegation, but I don't see any allegation of a specific

24  purpose to disrupt that allegation.

25           We had some discussion at oral argument of the

Page                                                                11

1   *Qwelming* (phonetic) case and I've taken a look at that

2   case, I've taken a look at the related case and it is

3   interesting in that the court there recognizes that

4   interference does not need to be the only area in the

5   primary intention underlying the conduct that's alleged.

6   The Court does acknowledge that the defendant must know

7   that interference is certain or substantially certain to

8   occur as a result of the action.

9          The complaint in this case focuses on the self-

10  serving nature of Hankey's alleged conduct alleging that

11  Hankey acted for its own financial advantage without regard

12  or its impact on other lenders.  But the allegation with

13  respect to this cause of action is to me generic and

14  conclusory when it says Hankey intentionally induced debtor

15  to breach, designed its conduct to pressure debtor to

16  breaching its obligations to Inferno.  These are paragraphs

17  90, 91 and 92 and 93 of the first amended complaint.

18         I think that the complaint needs to allege facts

19  that would support either a specific purpose of disrupting

20  the contractual relationship between Inferno and the debtor

21  or -- and/or, I suppose, that Hankey knew that based on its

22  conduct or its alleged conduct that the debtor's breach of

23  its obligation to Inferno would be substantially likely to

24  occur.  Until that happens, the intent element of this

25  cause of action isn't met.  Is it impossible to do?  I

Page                                                                          12

1   don't know.  So I think at this stage I would grant the

2   motion with leave to amend as to the intent element under

3   intentional interference with contractual relations.

4           So we are getting closer here on this complaint.

5   I do think with respect to the first and seventh claims for

6   relief, amendment is appropriate.

7           As to the fourth there is just no set of facts

8   that could be alleged here, so I think a dismissal -- or

9   granting the motion with leave to -- without leave to amend

10  as to the fourth is appropriate.

11          At this stage, I'll do what I've done in other

12  proceedings.  I will ask Mr. Sorrell; how long do you think

13  you need to do an amended complaint and we'll adjust

14  deadlines from there?

15          MR. SORRELL:  I would say 15 days would be

16  sufficient, Your Honor.

17          THE COURT:  Okay.  Let's take a look.

18          And then Mr. Steinberg?  What do you think you'd

19  need after that?

20          MR. STEINBERG:  Twenty-days from the date that he

21  files, which is what we did last time with --

22          THE COURT:  Okay.  Do we just want to set it 21

23  and 21 for both?

24          MR. STEINBERG:  That would be great.

25          THE COURT:  That work?  Okay.

Page                                                                    13

 1            MR. SORRELL:  Yes, Your Honor.

 2            THE COURT:  So 1, 2, 3 -- so we would have --

 3    well, let's do 21 days from the order, so it would be about

 4    end of February.  Let's see.  I can enter an order tomorrow

 5    and then we have 1, 2, 3, March 21st for responsive

 6    pleading.

 7            And did we go ahead last time and just set a date

 8    for a hearing or -- it was December.  Do you recall, did

 9    you self-calendar?

10            MR. SORRELL:  No, we did not set a date last

11    time.

12            THE COURT:  Okay.  So you just went ahead and

13    self-calendared.

14            Why don't we do the same thing, then?  So we'll

15    do responsive pleading -- well, first we'll do amended

16    complaint 21 days after entry of the order and then

17    responsive pleadings 21 days after that.  And depending on

18    whether we have a further motion to dismiss or an answer

19    either -- Mr. Steinberg, you could self-calendar your

20    motion or the Court can go ahead and get the status

21    conference.

22            MR. STEINBERG:  Great.

23            THE COURT:  Okay.  So Mr. Steinberg, if you could

24    lodge the order, I will get that entered.

25            And then, Mr. Sorrell, you'll have 21 days after

Page                                                                    14

1  that to get your amended complaint on file and we'll go

2  from there.

3         MR. SORRELL:  Terrific.  Will do.  Thank you very

4  much, Your Honor.

5         THE COURT:  Okay.  Thank you, everyone.

6         ATTORNEYS:  Thank you, Your Honor.

7         THE COURT:  All right.

8         MR. SORRELL:  There was a status conference.  I

9  guess that -- that's continued?  I'm sorry.

10        THE COURT:  I guess we'll continue that to our

11 next hearing date.  You know, if there is an answer, I'll

12 just put that back on calendar.  If there's another motion

13 to dismiss, I'll set it at the same time.

14        MR. SORRELL:  All right.  Thank you.

15        THE COURT:  Okay.  Thanks again, everyone.

16        ATTORNEYS:  Thank you.

17        THE COURT:  We're adjourned for today.

18 (At 2:05 p.m.)

19                    * * * * * * *

20

21

22

23

24

25

Page                                                                                 15

1              I certify that the foregoing is a correct

2     transcript from the electronic sound recording of the

3     proceedings in the above-entitled matter.

4

5        *Ruth Ann Hager*

6

7     _____        Date:  2/9/2023

8     RUTH ANN HAGER, C.E.T.**D-641

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT HANKEY CAPITAL, LLC'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS INFERNO INVESTMENT, INC.'S SECOND AMENDED ADVERSARY COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/28/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com; gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Todd M Arnold**    tma@lnbyg.com
- **Ryan Coy**    rcoy@bg.law, ecf@bg.law
- **Max Fabricant**    mfabricant@lavelysinger.com
- **Thomas M Geher**    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **David B Golubchik**    dbg@lnbyg.com, stephanie@lnbyb.com
- **Jonathan Gottlieb**    jdg@lnbyg.com
- **John A Moe**    john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Joseph M Rothberg**    jmr@lnbyg.com
- **Paul Sorrell**    psorrell@lavelysinger.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/28/2023 | Terrine Pearsall | /s/ Terrine Pearsall |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
*ACTIVE 685475188v1*

**F 9013-3.1.PROOF.SERVICE**