ROBERT F. SCOULAR (SBN 85293)
robert.scoular@dentons.com
JOHN A. MOE II (SBN 66893)
john.moe@dentons.com
NORMAN M. ASPIS (SBN 313466)
norman.aspis@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: 213 623 9300
Facsimile: 213 623 9924

Attorneys for Defendant, Counter/Crossclaimant
YOGI SECURITIES HOLDINGS, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re,<br><br>CRESTLLOYD, LLC,<br>Debtor. | Case No. 2:21-bk-18205-DS<br><br>Chapter 11<br><br>Adv. No. 2:22-ap-01125-DS |
| INFERNO INVESTMENT, INC., a Quebec corporation,<br>Plaintiff,<br>v.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL, LLC, a California limited liability company; YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,<br><br>Defendants. | **DEFENDANT YOGI SECURITIES HOLDINGS, LLC'S ANSWER TO PLAINTIFF INFERNO INVESTMENT, INC.'S SECOND AMENDED COMPLAINT** |

Defendant Yogi Securities Holdings, LLC ("Defendant" or "Yogi Securities") hereby answers the Second Amended Complaint ("SAC") filed by Plaintiff Inferno Investment, Inc. ("Inferno"), and each purported claim for relief alleged therein, as follows:

**NATURE OF THIS PROCEEDING**

1. In response to Paragraph 1 of the SAC, Yogi Securities denies that "Inferno's lien is senior to those of Hankey Capital, LLC . . . , Yogi Securities Holdings, LLC . . . , and Hilldun Corporation . . . and [that] all amounts owed to Inferno should be paid from proceeds of the sale of the Property prior to payment to any other creditor." Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 1, and, on that basis, denies each and every of the other allegations contained therein.

2. In response to Paragraph 2 of the SAC, Yogi Securities admits that "Hankey Capital asserts that Inferno agreed to subordinate its claim to theirs and the Debtor joins in this contention." Yogi Securities denies that Inferno is "not subordinated to any lien" of Yogi Securities and also denies that Inferno should be paid before Yogi Securities is paid. Except as so expressly admitted or denied, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 2, and, on that basis, denies each and every of the other allegations contained therein.

3. In response to Paragraph 3 of the SAC, Yogi Securities admits that "Debtor, Hankey Capital [and Yogi Securities] . . . seek to rely on an alleged 2016 'Memorandum of Agreement' between Inferno and Debtor ('the MOA') to claim that Inferno subordinated its debt to Defendant Lienholders' debt, including with respect to loans made to the Debtor even after the MOA was signed," and "that there were amendments to the MOA." Yogi Securities also admits, on information and belief, that Crestlloyd expended "dollars that were to be used for the Property for other properties and the personal benefit of Nile Niami and Yvonne Niami, the principals of Crestlloyd." Yogi Securities lacks knowledge or information sufficient to form a belief as to whether "Inferno and the Debtor agreed that Inferno would subordinate only to future debts to which they specifically agreed in writing," and that it was "for that reason there were amendments to the MOA," and on that basis denies those allegations. Except as so expressly admitted or denied, Yogi Securities lacks knowledge or information sufficient to form a belief as

to the truth or falsity of the other allegations contained in Paragraph 3, and, on that basis, denies each and every of the other allegations contained therein.

4. In response to Paragraph 4 of the SAC, and on information and belief, Yogi Securities admits that there were "[s]pecific requests from Hankey Capital for Inferno to subordinate its debt to Hankey Capital's advances to Debtor [that] were refused in 2021." Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 4, and, on that basis, denies each and every other allegation contained therein.

5. In response to Paragraph 5 of the SAC, and on information and belief, Yogi Securities admits that the Property was incomplete as of the bankruptcy petition date. Yogi Securities also admits that Hankey Capital engaged in "unfair and unscrupulous predatory business practices." Yogi Securities also admits, on information and belief, that "[h]ad Hankey Capital acted responsibly, the Property would have been completed and all creditors paid." Yogi Securities denies the allegation that "Inferno has priority and its claims must be paid first, before other creditor claims" to the extent such allegation pertains to Yogi Securities. To the extent Inferno seeks to characterize California law in Paragraph 5, Yogi Securities states that no response is required, as no factual allegation is made thereby. Except as so expressly admitted or denied, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 5, and, on that basis, denies each and every of the other allegations contained therein.

## JURISDICTION AND VENUE

6. In response to Paragraph 6 of the SAC, Yogi Securities admits the allegations contained therein.

7. In response to Paragraph 7 of the SAC, Yogi Securities admits the allegations contained therein.

8. In response to Paragraph 8 of the SAC, Yogi Securities admits the allegations contained therein.

9. In response to Paragraph 9 of the SAC, Yogi Securities admits the allegations contained therein.

## THE PARTIES

10. In response to Paragraph 10 of the SAC, Yogi Securities admits that "Inferno is a corporation organized and existing under the laws of Quebec, Canada," and that "[i]t filed Proof of Claim No. 11 on or about January 4, 2022." Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 10, and, on that basis, denies each and every of the other allegations contained therein.

11. In response to Paragraph 11 of the SAC, and on information and belief, Yogi Securities admits the allegations contained therein.

12. In response to Paragraph 12 of the SAC, and on information and belief, Yogi Securities admits the allegations contained therein.

13. In response to Paragraph 13 of the SAC, Yogi Securities admits that "Yogi [Securities] asserted a claim as a[] . . . secured lender in Proof of Claim No. 15 filed January 14, 2022." Yogi Securities further admits that it is "a limited liability company." Yogi Securities also states that it filed an amended Proof of Claim No. 27 in the above-captioned bankruptcy case, asserting a secured claim in the amount of $24,385,366.77, as set forth therein. Except as so admitted, and subject to the foregoing qualifications and statements, Yogi Securities denies each and every of the other allegations contained in Paragraph 13.

14. In response to Paragraph 14 of the SAC, Yogi Securities admits the allegations contained therein.

## FACTUAL BACKGROUND OF THIS DISPUTE

### Commencement of the Airole Project With Inferno Funds

15. In response to Paragraph 15 of the SAC, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein, and, on that basis, denies each and every allegation contained therein.

16. In response to Paragraph 16 of the SAC, Yogi Securities admits that "[o]n March 13, 2013, Debtor entered into agreements by which it received loans from (a) Inferno in the amount of $3,925,545, (b) Inferno Realty, L.P. in the amount of $7,040,000, and (c) Maybach Holdings Corporation, Inc. in the amount of $7,000,000." Yogi Securities also admits that "[t]he loans were memorialized by promissory notes secured by recorded deeds of trust on the Property." Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 16, and, on that basis, denies each and every of the other allegations contained therein.

17. In response to Paragraph 17 of the SAC, Yogi Securities admits that "Inferno Realty, L.P. and Maybach Holdings Corporation, Inc. assigned their interests in the loans secured by the Property to Inferno. . . . Inferno amended the . . . obligation that was in the principal amount of $14,040,000 to reduce the [alleged] amount owed under that . . . note to $7,000,000, which was the principal balance owing on that note as of October 15, 2015. On November 10, 2015, Debtor and Inferno recorded a Modification and Supplement to Deed of Trust." Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 17, and, on that basis, denies each and every of the other allegations contained therein.

18. In response to Paragraph 18 of the SAC, Yogi Securities admits the allegations contained therein.

19. In response to Paragraph 19 of the SAC, Yogi Securities admits that "[t]he MOA states that proceeds from sale of the Property shall be used '[f]irst to repay the loan(s) obtained from a bank or third-party parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property].'" Yogi Securities also admits, on information and belief, that "Hankey Capital later sought subordination agreements from Inferno with respect to specific loans, which were not signed." Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations

contained in Paragraph 19, and, on that basis, denies each and every of the other allegations contained therein.

20. In response to Paragraph 20 of the SAC, Yogi Securities admits that Yogi Securities "allege[s] that the MOA subordinates Inferno's debt to the debt[] of" Yogi Securities, but denies each and every other allegation set forth in Paragraph 20.

**The Original Hankey Capital Loan and Alleged Subordination by Inferno**

21. In response to Paragraph 21 of the SAC, Yogi Securities admits that "[o]n or about October 25, 2018, Hankey Capital . . . entered into a written Construction Loan Agreement pursuant to which Hankey Capital agreed to loan Debtor $82.5 million ('the Hankey Initial Loan'), which states that the Hankey Initial Loan was to be secured by a . . . lien against the Property." Yogi Securities admits that "[a] copy of the Construction Loan Agreement is attached as Exhibit 2" and states that the Construction Loan Agreement speaks for itself. Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 21, and, on that basis, denies each and every of the other allegations contained therein.

22. In response to Paragraph 22 of the SAC, Yogi Securities admits that "[t]he Construction Loan Agreement provided that Hankey Capital was lending $82.5 million." Yogi Securities also admits that Hankey Capital paid itself interest from the "Hankey Initial Loan" and "subsequent disbursements," the result of which is that there was less than $82.5 million available to fund construction on the Property. Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 22, and, on that basis, denies each and every of the other allegations contained therein.

23. In response to Paragraph 23 of the SAC, and on information and belief, Yogi Securities admits that the Construction Loan Agreement states that the monies Hankey Capital was providing "would be sufficient to complete construction, and agreed to a procedure to ensure that result;" "that disbursements to Debtor shall be in accordance with Exhibit D" of the

"Construction Loan Agreement;" and "Exhibit D sets forth the procedure by which Debtor shall obtain all disbursements" from Hankey Capital and "requires that Debtor substantiate each request for payment for materials or services and provide documentation establishing that the work being funded is actually being accomplished. There is no evidence that Hankey Capital required Debtor to follow the Exhibit D procedure or that Debtor followed the procedure." Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of such other allegations contained in Paragraph 23, and, on that basis, denies each and every of such other allegations contained therein.

24. In response to Paragraph 24 of the SAC, Yogi Securities admits that "Hankey Capital alleges that a Subordination Agreement with respect to Hankey Capital's loan facility of $82.5 million in October 2018 gives it priority," and that "[a] copy of the Subordination Agreement . . . is attached as Exhibit 3." Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 24, and, on that basis, denies each and every of the other allegations contained therein.

25. In response to Paragraph 25 of the SAC, and on information and belief, Yogi Securities admits "that Niami frequently used Gibbs to notarize documents for Debtor and Niami's other businesses." Yogi Securities also admits, on information and belief, that a copy of an alleged email is attached to the SAC as Exhibit 4. Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 25, and, on that basis, denies each and every other allegation contained therein.

26. In response to Paragraph 26 of the SAC, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein, and, on that basis, denies each and every of the allegations contained therein.

27. In response to Paragraph 27 of the SAC, Yogi Securities admits the allegations contained therein.

28. In response to Paragraph 28 of the SAC, Yogi Securities admits the allegations contained therein.

29. In response to Paragraph 29 of the SAC, and on information and belief, Yogi Securities admits that "[i]n February, 2021, Inferno was . . . requested by Hankey Capital to subordinate its loan to Hankey Capital, but Inferno declined to do so." Yogi Securities also admits, on information and belief, that "Hankey Capital . . . loaned additional funds to Debtor without ensuring that Debtor complied with the loan disbursement provisions of Exhibit D to the Construction Loan Agreement or otherwise ensuring that the loan proceeds were used for construction and improvement at the Property. Hankey Capital loaned Debtor at least an additional $23.5 million even after it provided its initial $82.5 million loan that was supposed to complete construction and improvements at the Property. Despite lending these substantial sums, the Property is still not complete." Except as so expressly admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 29, and, on that basis, denies each and every of the other allegations contained therein.

**Loans by Yogi Securities**

30. In response to Paragraph 30 of the SAC, Yogi Securities admits that Yogi Securities made loans to Debtor and other entities associated with Nile Niami, which included loans on multiple real property developments on North Hillcrest Road, Bellagio Road, North Carcassonne Road, Stone Ridge Lane and Londonderry Place; that on or about October 16, 2018, Debtor signed a Secured Promissory Note agreeing to pay Yogi Securities the amount of $30,188,235 plus interest, secured by the Property; and that Yogi Securities filed its "Proof of Claim No. 15 on January 13, 2022, asserting a secured claim on the amount of $21,943,053.75." Yogi Securities also states that it filed an amended Proof of Claim No. 27 in the above-captioned bankruptcy case, asserting a secured claim in the amount of $24,385,366.77. Except as so admitted, Yogi Securities denies each and every of the other allegations contained in Paragraph 30.

31. In response to Paragraph 31 of the SAC, Yogi Securities denies the allegations contained therein.

**The Bankruptcy Filing**

32. In response to Paragraph 32 of the SAC, Yogi Securities admits the allegations contained therein.

**Proofs of Claim**

33. In response to Paragraph 33 of the SAC, and on information and belief, Yogi Securities admits the allegations contained therein.

34. In response to Paragraph 34 of the SAC, Yogi Securities admits the allegations contained therein. Yogi Securities also states that it filed an amended Proof of Claim No. 27 in the above-captioned bankruptcy case, asserting a secured claim in the amount of $24,385,366.77.

35. In response to Paragraph 35 of the SAC, Yogi Securities admits the allegations contained therein.

**The Sale of the Property**

36. In response to Paragraph 36 of the SAC, Yogi Securities admits the allegations contained therein.

37. In response to Paragraph 37 of the SAC, Yogi Securities admits the allegations contained therein.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief Against Hankey Capital to the Effect that Inferno's Secured Debt Is Not Subordinated to Hankey Capital's Debt – C.C.P. Sec. 1060, 28 U.S.C. 2201 and FRBP Rule 7001(2), (9))**

38. In response to Paragraph 38 of the SAC, Yogi Securities realleges and incorporates herein by reference its responses to Paragraphs 1 through 37 above, as if fully set forth herein.

39. In response to Paragraph 39 of the SAC, and on information and belief, Yogi Securities admits that Inferno's liens were "recorded prior to the recording of liens of the Defendant Lienholders" and that "[a] declaration from the Court is necessary to resolve this

dispute." Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 39, and, on that basis, denies each and every of the other allegations contained therein.

40. In response to Paragraph 40 of the SAC, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein, and, on that basis, denies each and every allegation contained therein.

41. In response to Paragraph 41 of the SAC, and on information and belief, Yogi Securities admits that "Hankey Capital made reckless loans to Debtor, knowing of Inferno's rights and without its consent that materially and adversely affected Inferno's rights as a junior lienholder. Hankey Capital made not only the Hankey Initial Loan, but thereafter made the substantial additional loan commitments referenced in Paragraphs 27 and 28 . . . lending additional millions to Debtor at exorbitant interest rates and substantially increasing the loan balance without monitoring application of the loan funds as agreed, without the knowledge or consent of and in utter disregard of the rights of Inferno." Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 41, and, on that basis, denies each and every of the other allegations contained therein.

42. In response to Paragraph 42 of the SAC, and on information and belief, Yogi Securities admits the allegations contained therein.

43. In response to Paragraph 43 of the SAC, and on information and belief, Yogi Securities admits "that Hankey Capital refused to comply with requirements imposed to protect the asset embodied by the Property, particularly its own disbursement requirements in the Construction Loan Agreement. . . . Hankey Capital's failure to monitor and require compliance with the Construction Loan Agreement including Exhibit D or other reasonable disbursement procedures led to dissipation of Debtor's assets and damaged all of Debtor's creditors. Indeed, this conduct ultimately precipitated the filing of this bankruptcy proceeding." Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the

truth or falsity of the other allegations contained in Paragraph 43, and, on that basis, denies each and every of the other allegations contained therein.

44. In response to Paragraph 44 of the SAC, and on information and belief, Yogi Securities admits that "[i]t is undisputable that the Hankey Initial Loan was to be used [for] construction of the Property. . . . Instead, Hankey Capital allowed Debtor to use proceeds from the Hankey Capital loan for other properties of Nile Niami and Yvonne Niami and/or for their personal benefit, and continued to lend millions more. Hankey Capital did not care if Debtor used loan funds to benefit the Property because it wanted to increase Debtor's reliance on and obligations to Hankey Capital, obtain significant increased default rate interest, and put other creditors at risk. Hankey Capital's conduct put Debtor in danger of default and ultimately resulted in the filing of this bankruptcy action. Hankey Capital knew that its conduct would endanger the interests of not only Debtor but Debtor's various creditors, including Inferno. Based on Hankey Capital's conduct, the Court should issue a declaration that Hankey Capital lost any priority it might otherwise have over [other lienholders'] debt, in its entirety. This entire bankruptcy proceeding is attributable to Hankey Capital's conduct, and the equities require that its entire obligation forfeit any alleged priority. Alternatively, the Court should order that the additional loan modifications and extensions of the loan as alleged in Paragraphs 27 and 28 (all sums over and above the Hankey Initial Loan Amount) have no priority over [other lienholders'] claim[s] . . . ." Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 44, and, on that basis, denies each and every of the other allegations contained therein.

45. In response to Paragraph 45 of the SAC, Yogi Securities admits that "[u]nder California Code of Civil Procedure section 1060 *et seq.*, 28 U.S.C. 2201, Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure, the Court can . . . determine the validity, priority and extent of the liens involved herein." Yogi Securities also admits that "[a] declaration from the Court is necessary to determine the rights and responsibilities of the parties, and particularly the priority of liens as between [all lienholders]." Yogi Securities further admits that Inferno seeks

declaratory relief as alleged. Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 45 and, on that basis, denies each and every of the other allegations contained therein.

**<u>SECOND CLAIM FOR RELIEF</u>**

**(Declaratory Relief Against All Defendants to the Effect that Inferno Did Not Subordinate Its Debt to the Defendant Lienholders' Claims Pursuant to the MOA)**

46. In response to Paragraph 46 of the SAC, Yogi Securities realleges and incorporates herein by reference its responses to Paragraphs 1 through 37 above, as if fully set forth herein.

47. In response to Paragraph 47 of the SAC, and on information and belief, Yogi Securities admits that Inferno's liens were "recorded prior to the liens Defendant Lienholders seek to enforce in this bankruptcy proceeding." Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 47, and, on that basis, denies each and every of the other allegations contained therein.

48. In response to Paragraph 48 of the SAC, Yogi Securities denies each and every allegation contained therein.

49. In response to Paragraph 49 of the SAC, Yogi Securities admits that "[u]nder California Code of Civil Procedure section 1060 *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, the Court can . . . determine the validity, priority, and extent of the liens involved herein. . . . A declaration from the Court is necessary to determine the rights and responsibilities of the parties, and particularly the priority of liens as between [all lienholders]." Except as so admitted, Yogi Securities denies each and every of the other allegations contained in Paragraph 49.

50. In response to Paragraph 50 of the SAC, Yogi Securities admits that Inferno seeks declaratory relief, but Yogi Securities otherwise denies that Inferno is entitled to the declaratory relief it seeks.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Relief Against All Defendants to the Effect that Inferno's Claim is Senior to and Has Priority Over Debts of Other Secured Creditors Including Those of Defendant Lienholders)**

51. In response to Paragraph 51 of the SAC, Yogi Securities realleges and incorporates herein by reference its responses to Paragraphs 1 through 37 above, as if fully set forth herein.

52. In response to Paragraph 52 of the SAC, and on information and belief, Yogi Securities admits that Inferno's liens were "recorded prior to the liens Defendant Lienholders seek to enforce in this bankruptcy proceeding." Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 52, and, on that basis, denies each and every of the other allegations contained therein.

53. In response to Paragraph 53 of the SAC, and on information and belief, Yogi Securities admits that "Inferno's . . . claim . . . was the subject of recorded deeds of trust prior to the inception of Defendant Lienholders' liens." Except as so expressly admitted, Yogi Securities denies each and every other allegation contained in Paragraph 53.

54. In response to Paragraph 54 of the SAC, Yogi Securities admits the allegations contained therein.

55. In response to Paragraph 55 of the SAC, Yogi Securities admits that "[u]nder California Code of Civil Procedure § 1060, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, the Court can . . . determine the validity, priority, and extent of the liens involved herein. . . . A declaration from the Court is necessary to determine the rights and responsibilities of the parties, and particularly the priority of liens as between [all

lienholders].” Except as so admitted, Yogi Securities denies each and every of the other allegations contained in Paragraph 55.

56. In response to Paragraph 56 of the SAC, Yogi Securities admits that Inferno seeks declaratory relief, but denies that Inferno is entitled to the declaratory relief it seeks.

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Relief/Disallowance of Secured Claim Against Hankey Capital Regarding Proof of Claim No. 18 – C.C.P. Sec. 1060, 28 U.S.C. 2001 and FRBP Rule 7001(2) and (9))**

57. In response to Paragraph 57 of the SAC, Yogi Securities realleges and incorporates herein by reference its responses to Paragraphs 1 through 37 above, as if fully set forth herein.

58. In response to Paragraph 58 of the SAC, Yogi Securities admits the allegations contained therein.

59. In response to Paragraph 59 of the SAC, Yogi Securities admits the allegations contained therein.

60. In response to Paragraph 60 of the SAC, Yogi Securities admits that “[u]nder California Code of Civil Procedure § 1060, *et seq.*, 28 U.S.C. 2201 and Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure, the Court can . . . determine the validity, priority, and extent of the liens asserted in this case. . . . A declaration from the Court is necessary to determine the rights and responsibilities of the parties.” Except as so admitted, Yogi Securities denies each and every of the other allegations contained in Paragraph 60.

61. In response to Paragraph 61 of the SAC, and on information and belief, Yogi Securities admits “that Proof of Claim No. 18 is ineffective as a matter of law and that no security interest or priority was created as Hankey Capital contends. . . . The Court should further determine that Proof of Claim No. 18 filed by Hankey Capital is disallowed as a secured claim for all purposes.” Except as so admitted, Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 61, and, on that basis, denies each and every of the other allegations contained therein.

**FIFTH CLAIM FOR RELIEF**

**(Declaratory Relief Regarding Whether the Rebate and the DIP Loan Proceeds Are Unencumbered)**

62. In response to Paragraph 62 of the SAC, Yogi Securities realleges and incorporates herein by reference its responses to Paragraphs 1 through 37 above, as if fully set forth herein.

63. In response to Paragraph 63 of the SAC, Yogi Securities admits the allegations contained therein.

64. In response to Paragraph 64 of the SAC, Yogi Securities admits the allegations contained therein.

65. In response to Paragraph 65 of the SAC, and on information and belief, Yogi Securities admits the allegations contained therein.

66. In response to Paragraph 66 of the SAC, Yogi Securities admits that "[t]he Debtor and its agents repeatedly testified before and represented to the Court that the Property was worth $325 million but that even if it went for as low as $200 million, all secured creditors would be adequately protected. If [Yogi Securities] knew that the Property would be sold for $126 million, [it] would have objected to Debtor's proposal for a rebate of the buyer's premium and instead insisted that Concierge just reduce its buyer's premium for this transaction so that the purchase price was not artificially depressed." Yogi Securities lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations contained in Paragraph 66, and, on that basis, denies each and every of the other allegations contained therein.

67. In response to Paragraph 67 of the SAC, Yogi Securities admits that Inferno seeks declaratory relief and that Inferno is entitled to the declaratory relief it seeks.

**SIXTH CLAIM FOR RELIEF**

**(Fraudulent Misrepresentation and Rescission of the MOA as Against Debtor)**

68. In response to Paragraph 68 of the SAC, Yogi Securities realleges and incorporates herein by reference its responses to Paragraphs 1 through 37 above, as if fully set forth herein.

69. In response to Paragraph 69 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

70. In response to Paragraph 70 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

71. In response to Paragraph 71 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

72. In response to Paragraph 72 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

73. In response to Paragraph 73 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

74. In response to Paragraph 74 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

75. In response to Paragraph 75 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

76. In response to Paragraph 76 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

77. In response to Paragraph 77 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

78. In response to Paragraph 78 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

79. In response to Paragraph 79 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

80. In response to Paragraph 80 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

81. In response to Paragraph 81 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

82. In response to Paragraph 82 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

83. In response to Paragraph 83 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Sixth Claim for Relief is not asserted against Yogi Securities.

84. In response to Paragraph 84 of the SAC, Yogi Securities denies that "the recission [of the MOA] should be deemed effective against the claims of [Yogi Securities]." Except as so expressly denied, Yogi Securities neither admits nor denies the other allegations contained within Paragraph 84, on the grounds that the Sixth Claim for Relief is not asserted against Yogi Securities.

## SEVENTH CLAIM FOR RELIEF

**(Intentional Interference With Contract As Against Hankey Capital)**

85. In response to Paragraph 85 of the SAC, Yogi Securities realleges and incorporates herein by reference its responses to Paragraphs 1 through 37 above, as if fully set forth herein.

86. In response to Paragraph 86 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Seventh Claim for Relief is not asserted against Yogi Securities.

87. In response to Paragraph 87 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Seventh Claim for Relief is not asserted against Yogi Securities.

88. In response to Paragraph 88 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Seventh Claim for Relief is not asserted against Yogi Securities.

89. In response to Paragraph 89 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Seventh Claim for Relief is not asserted against Yogi Securities.

90. In response to Paragraph 90 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Seventh Claim for Relief is not asserted against Yogi Securities.

91. In response to Paragraph 91 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Seventh Claim for Relief is not asserted against Yogi Securities.

92. In response to Paragraph 92 of the SAC, Yogi Securities neither admits nor denies the allegations contained therein in that the Seventh Claim for Relief is not asserted against Yogi Securities.

## **AFFIRMATIVE DEFENSES**

Yogi Securities asserts the following defenses to the SAC. Yogi Securities reserves the right to restate or delete any affirmative defense, or add additional affirmative defenses. By listing any matter as an affirmative defense, Yogi Securities does not assume the burden of proving any matter upon which Inferno or any other party bears the burden of proof under applicable law, and the matters set forth below are not an admission of any allegation in the SAC.

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim Upon Which Relief Can Be Granted)**

The SAC, and each purported claim for relief therein, fails to state a claim upon which relief can be granted against Yogi Securities.

**SECOND AFFIRMATIVE DEFENSE**

**(Statutes of Limitations)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred in whole or in part by the applicable statutes of limitations, including, but not limited to, California Code of Civil Procedure sections 337, 338, 339, 340, and 343, and all other applicable limitations, statutes, and requirements.

**THIRD AFFIRMATIVE DEFENSE**

**(Consent)**

Inferno consented to and approved of the acts and omissions alleged in the SAC against Yogi Securities. Therefore, Inferno is barred, in whole or in part, from pursuing each purported claim for relief contained in the SAC against Yogi Securities.

**FOURTH AFFIRMATIVE DEFENSE**

**(Implied Consent)**

Inferno, through its actions and conduct, impliedly consented to and approved of the acts and omissions alleged in the SAC against Yogi Securities. Therefore, Inferno is barred, in whole or in part, from pursuing each purported claim for relief contained in the SAC against Yogi Securities.

**FIFTH AFFIRMATIVE DEFENSE**

**(Waiver)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred in whole or in part by the doctrine of waiver.

**SIXTH AFFIRMATIVE DEFENSE**

**(Laches)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred in whole or in part by the doctrine of laches.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Good Faith)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred in whole or in part because Yogi Securities at all times acted fairly and in good faith, and all actions taken with regard to Inferno and the Property, as that term is defined in the SAC, were taken for lawful business reasons and in good faith.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred in whole or in part by the doctrines of collateral estoppel, equitable estoppel, judicial estoppel, and/or any other applicable estoppel or preclusion doctrines.

**NINTH AFFIRMATIVE DEFENSE**

**(Justification)**

At all relevant times, Yogi Securities' conduct was justified and in good faith.

**TENTH AFFIRMATIVE DEFENSE**

**(Release)**

Inferno's purported claims against Yogi Securities are barred by Inferno's release of any and all such purported claims.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

Inferno's purported claims against Yogi Securities are barred in whole or in part because Inferno comes into court with unclean hands.

**<u>TWELFTH AFFIRMATIVE DEFENSE</u>**

**(Ratification and Consent)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred under the doctrines of ratification and consent.

**<u>THIRTEENTH AFFIRMATIVE DEFENSE</u>**

**(Accord & Satisfaction)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred under the doctrine of accord and satisfaction.

**<u>FOURTEENTH AFFIRMATIVE DEFENSE</u>**

**(No Damages)**

Inferno has suffered no legally cognizable damages as a result of the conduct alleged in the SAC as against Yogi Securities.

**<u>FIFTEENTH AFFIRMATIVE DEFENSE</u>**

**(Speculative Losses or Damages)**

Inferno's purported claims against Yogi Securities are barred, in whole or in part, because Inferno's claimed losses and/or damages, if any, are too speculative to be ascertainable.

**<u>SIXTEENTH AFFIRMATIVE DEFENSE</u>**

**(Offset)**

Any damages awarded to Inferno against Yogi Securities should be reduced by the value of compensation or benefits it received.

**<u>SEVENTEENTH AFFIRMATIVE DEFENSE</u>**

**(Mitigation)**

At all times and places mentioned in the SAC, Inferno failed to make reasonable efforts to mitigate damages, if any there were.

**<u>EIGHTEENTH AFFIRMATIVE DEFENSE</u>**

**(Election of Remedies)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred

and precluded by reason of the doctrine of election of remedies, because Inferno seeks inconsistent remedies.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Unjust Enrichment)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred in whole or in part because Inferno would be unjustly enriched if it were to recover any sum in this action from Yogi Securities.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Equity)**

The SAC, and each purported claim for relief therein against Yogi Securities, is barred in whole or in part because it would be inequitable to hold Yogi Securities liable to Inferno.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Damages Not Recoverable Under Theories Pled)**

Inferno's purported claims are barred, in whole or in part, to the extent Inferno seeks damages which are not properly recoverable under the theories set forth in the SAC.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(Public Policy)**

Inferno's purported claims are barred, in whole or in part, to the extent any recovery would be contrary to public policy.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(Contributory Negligence)**

Inferno's alleged injuries, damages, or losses, to the extent any exist and are asserted against Yogi Securities, are barred or limited by Inferno's own contributory negligence.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(Comparative Fault)**

Yogi Securities denies that Inferno has sustained any injury, damages, or losses by reason of any act, error, or omission on the part of Yogi Securities. If, however, it is established that

Inferno has sustained any injury, damages, or losses, and that Yogi Securities is liable in any amount or at all, to the extent any such injury, damages, or losses were proximately caused or contributed to by negligence and other improper acts on the part of Inferno or others, then the amount of any such injury, damages, or losses must be apportioned according to the respective comparative fault among all those persons whose negligence or improper acts caused and contributed to any such alleged injuries, damages, or losses.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Reservation of Rights to Assert Additional Defenses)**

Yogi Securities has not knowingly or voluntarily waived any applicable defenses and reserves the right to assert and rely on such other applicable defenses as may become available or apparent during discovery proceedings. Yogi Securities further reserves the right to amend its answer and/or defenses accordingly and/or to delete defenses that Yogi Securities determines are not applicable during the course of subsequent discovery.

**PRAYER**

WHEREFORE, Yogi Securities prays for judgment as follows:

1. That Inferno takes nothing by way of its SAC or any purported claims stated therein, except in connection with its Fifth Claim for Relief;
2. That the Court dismiss Inferno's SAC and each purported claim for relief therein against Yogi Securities with prejudice;
3. That the Court award Yogi Securities all of its costs and attorneys' fees, to the extent allowed by law, incurred in connection with this action; and
4. That the Court award Yogi Securities such other and further relief as this Court deems just and proper.

Dated: April 4, 2023

DENTONS US LLP

By: */s/ John A. Moe, II*
Robert F. Scoular
John A. Moe, II
Norman M. Aspis

Attorneys for Defendant
YOGI SECURITIES HOLDINGS, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled (*specify*): ***Defendant For Yogi Securities Holdings, LLC's Answer To Plaintiff Inferno Investment, Inc.'s Second Amended Complaint***
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 4, 2023 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy** kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- **Todd M Arnold** tma@lnbyg.com
- **Ryan Coy** rcoy@bg.law, ecf@bg.law
- **Max Fabricant** mfabricant@lavelysinger.com
- **Thomas M Geher** tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- **David B Golubchik** dbg@lnbyg.com, stephanie@lnbyb.com
- **Jonathan Gottlieb** jdg@lnbyg.com
- **John A Moe** john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- **Hamid R Rafatjoo** hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Joseph M Rothberg** jmr@lnbyg.com
- **Paul Sorrell** psorrell@lavelysinger.com
- **Howard Steinberg** steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Johnny White** JWhite@wrslawyers.com, jlee@wrslawyers.com

☐ Service information continued on attached page

**2.** **SERVED BY UNITED STATES MAIL**:
On (*date*) April 4, 2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

NONE

☐ Service information continued on attached page

**3.** **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) April 4, 2023 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

NONE

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 4, 2023 | Glenda Spratt | /s/ Glenda Spratt |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |