Howard J. Steinberg (SBN CA 89291)
Eric V. Rowen (SBN CA 106234)
Matthew R. Gershman (SBN CA 253031)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310-586-7700/Facsimile: 310-586-7800

Thomas M. Geher (SBN CA 130588)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone: 310-203-8080/Facsimile: 310-203-0567

Attorneys for Counter/Cross-Defendants
Hankey Capital, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>  Debtor.<br>――――――――――――――――――<br>INFERNO INVESTMENT, INC., a Quebec corporation,<br><br>  Plaintiff,<br><br>v.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL, LLC, a California limited liability company; YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,<br><br>  Defendants | Bk No. 2:21-bk-18205-DS<br><br>Chapter 11<br><br>Adv. No. 2:22-ap-01125-DS<br><br><br>**HANKEY CAPITAL, LLC'S ANSWER TO INFERNO INVESTMENT, INC.'S SECOND AMENDED COMPLAINT; AFFIRMATIVE DEFENSES; AND COUNTERCLAIM AGAINST INFERNO INVESTMENT, INC. FOR DECLARATORY RELIEF**<br><br> Judge:        Hon. Deborah J. Saltzman<br><br>Action Filed: June 9, 2022 |

## ANSWER

Defendant Hankey Capital, LLC ("Hankey") responds to the Second Amended Complaint ("Complaint") of Inferno Investment, Inc. ("Inferno") as follows:

## NATURE OF THIS PROCEEDING

1. Hankey admits that Inferno was the first in time of the named entities to allegedly loan funds to Crestlloyd in connection with the Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 1.

2. Hankey admits that it and Crestlloyd contend that Inferno agreed to subordinate Inferno's claims and liens to Hankey's loans and liens to Crestlloyd in connection with the Property. Hankey admits that Inferno has brought this adversary proceeding to determine the priority of Inferno's lien and that Inferno seeks a judicial determination as stated in its Complaint. Except as expressly admitted, Hankey denies the allegations of Paragraph 2.

3. Hankey admits that it contends that the MOA between Inferno and Crestlloyd constitutes an agreement by which Inferno subordinated its debt to Hankey, including with respect to loans made to Crestlloyd after the MOA was signed. Except as expressly admitted, Hankey denies the allegations of Paragraph 3.

4. Hankey admits only that it requested that Inferno sign an additional subordination agreement and that Inferno declined to do so in 2021. Except as expressly admitted, Hankey lacks information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 4, and therefore denies them.

5. Hankey admits that California law governing priority of secured lienholders is as stated in governing statutes and caselaw. Hankey admits that Inferno has brought this action to determine the priority of Inferno's lien as stated in its Complaint. Hankey admits that, when Crestlloyd filed its bankruptcy petition, construction of "The One" was still incomplete and that the price for which the Property was sold is insufficient to meet the outstanding debts to all creditors of Crestlloyd that were secured by Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 5.

## JURISDICTION AND VENUE

HANKEY CAPITAL, LLC'S ANSWER TO INFERNO INVESTMENT, INC.'S
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, ETC.

6.    Hankey admits that Inferno's Complaint purports to state a claim subject to the jurisdiction of this Court and that Inferno submits to the jurisdiction of this Court. Except as expressly admitted, Hankey denies the allegations of Paragraph 6.

7.    Hankey admits that Inferno's Complaint is currently pending in this Court to which the Federal Rules of Bankruptcy Procedure apply. Except as expressly admitted, Hankey denies the allegations of Paragraph 7.

8.    Hankey admits that venue is proper.

9.    Hankey admits that Inferno's claims for declaratory relief qualify as "core" proceedings. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Hankey consents to entry of a final judgment by the bankruptcy judge. Except as expressly admitted, Hankey denies the allegations of Paragraph 9.

## THE PARTIES

10.    Hankey admits that Inferno filed its Proof of Claim No. 11 on or about January 4, 2022 and that Inferno contends it is a secured creditor of Crestlloyd. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 10 of the Complaint and, therefore, denies the allegations therein.

11.    Hankey admits that Crestlloyd is the debtor in this pending Chapter 11 bankruptcy case. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 11 of the Complaint and, therefore, denies the allegations therein.

12.    Hankey admits that it is a limited liability company organized and existing under the laws of the State of California. Hankey admits that it filed Proofs of Claims 17, 18, and 20, on or around January 14, 2022, and that the claims are as stated in each respective Proof of Claim. Except as expressly admitted, Hankey denies the allegations of Paragraph 12.

13.    Hankey admits that Yogi filed Proof of Claim No. 15 on or about January 14, 2022. Except as otherwise admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint and, therefore, denies the allegations therein.

HANKEY CAPITAL, LLC'S ANSWER TO INFERNO INVESTMENT, INC.'S
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, ETC.

14.     Hankey admits that Hilldun filed Proof of Claim No. 9 on or about December 23, 2021. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint and, therefore, denies the allegations therein.

## **FACTUAL BACKGROUND OF THIS DISPUTE**

### **Commencement of the Airole Project With Inferno Funds**

15.     Hankey admits that Crestlloyd purchased the Property. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 15 of the Complaint and, therefore, denies the allegations therein.

16.     Hankey lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 of the Complaint and, therefore, denies the allegations therein.

17.     Hankey admits that a Modification and Supplement to Deed of Trust was recorded on or around November 10, 2015, and that the terms of that agreement are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 17 of the Complaint and, therefore, denies the allegations therein.

18.     Hankey admits that Exhibit 1 includes a document that purports to be a MOA dated January 1, 2016, and that the terms of that MOA are as stated therein. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 18 of the Complaint and, therefore, denies the allegations therein.

19.     Hankey admits that Exhibit 1 includes a document that purports to be a MOA dated January 1, 2016, and that the terms of that MOA are as stated therein. Hankey admits that it sought additional subordination agreements from Inferno. Except as expressly admitted, Hankey denies the allegations of Paragraph 19.

20.     Hankey admits that it contends that the MOA between Inferno and Crestlloyd constitutes an agreement by which Inferno subordinated its debt to Hankey's debts. Except as expressly admitted, Hankey denies the allegations of Paragraph 20.

**The Original Hankey Capital Loan and Alleged Subordination by Inferno**

21.    Hankey admits that it entered a written Construction Loan Agreement with Crestlloyd on or around October 25, 2018, which is attached as Exhibit 2 to the Complaint, and that the terms of the Construction Loan Agreement are as stated therein. Hankey admits that it is a private construction lender. Except as expressly admitted, Hankey denies the allegations of Paragraph 21.

22.    Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 22.

23.    Hankey admits that the terms of the Construction Loan Agreement are as stated therein. Except as expressly admitted, Hankey denies the allegations of Paragraph 23.

24.    Hankey admits that it contends that the recorded Subordination Agreement attached as Exhibit 3 to the Complaint subordinates Inferno's debt to Hankey's debt. Except as expressly admitted, Hankey lacks information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 24, and therefore denies them.

25.    Hankey admits that it contends that the recorded Subordination Agreement attached as Exhibit 3 to the Complaint subordinates Inferno's debt to Hankey's debt. Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations regarding what is attached as Exhibit 4 to the Complaint. Except as expressly admitted, Hankey denies the allegations of Paragraph 25.

26.    Hankey denies the allegations of Paragraph 26.

27.    Hankey admits the allegations of Paragraph 27.

28.    Hankey admits the allegations of Paragraph 28.

29.    Hankey admits that it requested that Inferno sign an additional subordination agreement and that Inferno declined to do so in 2021. Hankey admits that it increased the principal balance on its loan to Crestlloyd by $23.5 million in addition to its initial loan principal amount of $82.5 million. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations of Paragraph 29 and, therefore denies the allegations therein.

**Loans by Yogi Securities**

HANKEY CAPITAL, LLC'S ANSWER TO INFERNO INVESTMENT, INC.'S
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, ETC.

30.    Hankey admits that Yogi filed Proof of Claim No. 15 on or about January 13, 2022. Hankey's position as to Yogi's loans underlying its claims made in this bankruptcy proceeding are as set forth in Hankey's Cross-Claim against Yogi separately filed at ECF Docket Number 172.  Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 30 of the Complaint and, therefore, denies the allegations therein.

31.    Hankey admits that Yogi filed Proof of Claim No. 15 on or about January 13, 2022. Hankey's position as to Yogi's loans underlying its claims made in this bankruptcy proceeding are as set forth in Hankey's Cross-Claim against Yogi separately filed at ECF Docket Number 172.  Except as stated therein or otherwise admitted here, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 31 of the Complaint and, therefore, denies the allegations therein.

### The Bankruptcy Filing

32.    Hankey admits the allegation of the first and second sentences of Paragraph 32. Hankey is without sufficient information or knowledge to form a belief as to whether Crestlloyd was holding $3.6 million of funds attributable to the post-petition loan as of May 5, 2022, and therefore denies them. Hankey admits the allegations of the fourth sentence of Paragraph 32.

### Proofs of Claim

33.    Hankey admits that it filed Proof of Claim Nos. 17, 18, and 20, and that the claims are as stated therein. Hankey admits that Inferno has contended that Claim Nos. 17 and 18 are not secured claims, and that Inferno's contentions with respect to Claim Nos. 17 and 18 are as stated in Inferno's Complaint. Except as expressly admitted, Hankey denies the allegations of Paragraph 33.

34.    Hankey admits that Yogi filed Proof of Claim No. 15 for $21,943,053.75. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 34 of the Complaint and, therefore, denies the allegations therein.

35.    Hankey admits that Hilldun filed Proof of Claim No. 15 for $5,000,000. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth

or falsity of the allegations contained in Paragraph 35 of the Complaint and, therefore, denies the allegations therein.

### The Sale of the Property

36.     Hankey admits that the Court's Orders speak for themselves.  Except as expressly admitted, Hankey denies the allegations of Paragraph 36.

37.     Hankey admits that the Court issued an order on or around May 27, 2022, authorizing Crestlloyd to pay Hankey $82,500,000 and that the terms of that order are as stated therein. Hankey admits that it received said payment and that Inferno and Yogi consented thereto. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 37 of the Complaint and, therefore, denies the allegations therein.

### FIRST CLAIM FOR RELIEF

### (Declaratory Relief Against Hankey Capital to the Effect That Inferno's Secured Debt

### Is Not Subordinated to Hankey Capital's Debt- C.C.P. Sec. 1060, 28 U.S.C. 2201

### and FRBP Rule 7001(2), (9))

38.     To the extent Paragraph 38 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     Hankey admits that Inferno was the first in time of the named entities to allegedly loan funds to Crestlloyd in connection with the Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 39.

40.     Hankey lacks information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 40, and therefore denies the allegations therein.

41.     Hankey admits that it made an initial loan to Crestlloyd of $82.5 million and thereafter increased the principal balance of its loan to Crestlloyd to $106 million. Hankey incorporates by reference its answers to Paragraph 27 and 28 as if fully set forth herein. Except as expressly admitted, Hankey denies the allegations of Paragraph 41.

42.     Hankey admits that it made an initial loan to Crestlloyd of $82.5 million and thereafter increased the principal balance of its loan to Crestlloyd to $106 million. Except as expressly admitted, Hankey denies the allegations of Paragraph 42.

43.     Hankey denies the allegations of Paragraph 43.

44.     Hankey incorporates by reference its answers to Paragraph 27 and 28 as if fully set forth herein. Except as expressly admitted, Hankey denies the allegations of Paragraph 44.

45.     Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 45.

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Against All Defendants to the Effect That Inferno Did Not Subordinate Its Debt to the Defendant Lienholders' Claims Pursuant to the MOA)

46.     To the extent Paragraph 46 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

47.     Hankey admits that Inferno was the first in time of the named entities to allegedly loan funds to Crestlloyd in connection with the Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 47.

48.     Hankey denies the allegations of Paragraph 48.

49.     Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 49.

50.     Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 50.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief Against All Defendants to the Effect That Inferno's Claim is Senior to and Has Priority Over Debts of Other Secured Creditors Including Those of Defendant Lienholders)

51.     To the extent Paragraph 51 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

52.     Hankey admits that Inferno was the first in time of the named entities to allegedly loan funds to Crestlloyd in connection with the Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 52.

HANKEY CAPITAL, LLC'S ANSWER TO INFERNO INVESTMENT, INC.'S
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, ETC.

53.    Hankey admits that Inferno was the first in time of the named entities to allegedly loan funds to Crestlloyd in connection with the Property. Except as expressly admitted, Hankey denies the allegations of Paragraph 53.

54.    Hankey denies the allegations of Paragraph 54.

55.    Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 55.

56.    Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 56.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief/Disallowance of Secured Claim Against Hankey Capital

### Regarding Proof of Claim No. 18 -- C.C.P. Sec. 1060, 28 U.S.C. 2001

### and FRBP Rule 7001(2) and (9))

57.    To the extent Paragraph 57 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

58.    Hankey denies the allegations of Paragraph 58.

59.    Hankey denies the allegations of Paragraph 59.

60.    Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 60.

61.    Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 61.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief Regarding Whether the Rebate and the DIP

### Loan Proceeds Are Unencumbered)

62.    To the extent Paragraph 62 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

63.    Paragraph 63 is part of a claim for relief that is not directed at Hankey and, therefore, requires no answer from Hankey. To an extent an answer is required from Hankey, Hankey admits that the Court authorized Debtor to obtain a post-petition loan of up to $12 million. Except as expressly

admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 63 of the Complaint and, therefore, denies the allegations therein.

64.     Paragraph 64 is part of a claim for relief that is not directed at Hankey and, therefore, requires no answer from Hankey. To an extent an answer is required from Hankey, Hankey admits that Debtor repaid Hankey $12,084,999.98 in satisfaction of the post-petition loan. Except as expressly admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 64 of the Complaint and, therefore, denies the allegations therein.

65.     Paragraph 65 is part of a claim for relief that is not directed at Hankey and, therefore, requires no answer from Hankey. To the extent an answer is required from Hankey, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 65 of the Complaint and, therefore, denies the allegations therein.

66.     Paragraph 66 is part of a claim for relief that is not directed at Hankey and, therefore, requires no answer from Hankey. To the extent an answer is required from Hankey, Hankey admits that its prior statements made to the Court are as set forth in the record. Except as otherwise admitted, Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 66 of the Complaint and, therefore, denies the allegations therein.

67.     Paragraph 67 is part of a claim for relief that is not directed at Hankey and, therefore, requires no answer from Hankey. To the extent an answer is required from Hankey, Hankey admits that this claim for relief requests declaratory relief but denies that the relief sought is appropriate. Except as expressly admitted, Hankey denies the allegations of Paragraph 67.

## SIXTH CLAIM FOR RELIEF

### (Fraudulent Misrepresentation and Rescission of the MOA As Against Debtor)

68.     To the extent Paragraph 68 requires an answer, Hankey repeats and incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

69.     Answering Paragraphs 69 to 84, inclusive, these paragraphs are part of a claim for relief that is not directed at Hankey and, therefore, require no answer from Hankey. To the extent an answer is required from Hankey, Hankey admits that it contends Inferno's lien is subordinated under the Memorandum of Agreement and the Subordination Agreement. Except as expressly admitted, and to the

1  extent an answer is required from Hankey, Hankey is without sufficient information or knowledge to form

2  a belief as to the truth or falsity of the allegations contained in Paragraphs 69 to 84 of the Complaint,

3  inclusive and therefore, denies the allegations therein.

4  **SEVENTH CLAIM FOR RELIEF**

5  **(Intentional Interference With Contract As Against Hankey Capital)**

6  85.    To the extent Paragraph 85 requires an answer, Hankey repeats and incorporates by

7  reference its answers to Paragraphs 1 through 37 of the Complaint as if fully set forth herein.

8  86.    Hankey admits that the MOA is an existing, valid contract. Except as expressly admitted,

9  Hankey is without sufficient information or knowledge to form a belief as to the truth or falsity of the

10  allegations contained in Paragraph 86 of the Complaint and, therefore, denies the allegations therein.

11  87.    Hankey admits that Hankey and Crestlloyd entered into a Construction Loan Agreement

12  secured by a deed of trust in October 2018. Hankey admits that in October 2018, it was aware of other

13  liens on the Property, including liens held by Inferno or affiliates of Inferno. Excepts as expressly

14  admitted, Hankey denies the allegations of Paragraph 87.

15  88.    Hankey admits that it initially loaned Crestlloyd $82.5 million. Except as otherwise

16  admitted, Hankey denies the allegations of Paragraph 88.

17  89.    Hankey denies the allegations of Paragraph 89.

18  90.    Hankey repeats and incorporates by reference its answers to Paragraphs 27 and 28 of the

19  Complaint as if fully set forth herein. Except as expressly admitted, Hankey denies the allegations of

20  Paragraph 90.

21  91.    Hankey denies the allegations of Paragraph 91.

22  92.    Hankey denies the allegations of Paragraph 92.

23  **PRAYER FOR RELIEF**

24  93.    Hankey denies that Inferno is entitled to the relief sought for any and all of the claims for

25  relief or to any relief whatsoever.

26

27

28

HANKEY CAPITAL, LLC'S ANSWER TO INFERNO INVESTMENT, INC.'S
SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF, ETC.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
#### (Waiver and/or Consent)

94.    Inferno's claims are barred in whole or in part by the doctrine of waiver.

95.    Pursuant to the Memorandum of Agreement ("MOA") that Inferno signed on or about January 1, 2016, Inferno agreed that "loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction" would be paid first, before any sums were paid to Crestlloyd or Inferno. Nothing in the MOA requires any additional writing in order to permit the payment to such third parties. Inferno thus agreed that all sums it loaned to Crestlloyd would be paid only after Hankey (and other lienholders) were paid and therefore consented to all sums Hankey loaned to Crestlloyd being senior to (and paid before) all sums Inferno loaned to Crestlloyd.

96.    Similarly, Inferno signed the Subordination Agreement on or about October 30, 2018, pursuant to which Inferno agreed Hankey's loan to Crestlloyd "shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to" Inferno's loan to Crestlloyd. Similarly, Section 4 of the Subordination Agreement stated that in the event of bankruptcy, Hankey's debt would be paid before Inferno's debt. Inferno therefore consented to and agreed that Hankey's loan to Crestlloyd was senior to (and would be paid before) Inferno's loan to Crestlloyd.

97.    Additionally, Inferno has repeatedly agreed that it sits in second priority position behind Hankey. For example: First, in January 2022, in its opposition to Crestlloyd's motion to approve auction and bid procedure regarding the sale of the Property, Inferno conceded its junior lien priority position, stating that Inferno is "the holder of a deed of trust in second priority against the [Property]." Second, Inferno again confirmed its junior lien priority position in March 2022 in opposing Crestlloyd's motion for an order approving the sale of the Property, again stating that it is "the holder of a deed of trust in second priority against the [Property]." Inferno thus consented to and agreed that Hankey sits in a senior lien position and Hankey's loan should be paid before Inferno's loan.

### SECOND AFFIRMATIVE DEFENSE
#### (Estoppel)

98.    Inferno's claims are barred in whole or in part by the doctrine of estoppel.

99.     Pursuant to the Memorandum of Agreement ("MOA") that Inferno signed on or about January 1, 2016, Inferno agreed that "loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction" would be paid first, before any sums were paid to Crestlloyd or Inferno. Nothing in the MOA requires any additional writing in order to permit the payment to such third parties. Inferno is thus estopped to deny that all sums it loaned to Crestlloyd would be paid only after Hankey (and other lienholders) were paid and that all sums Hankey loaned to Crestlloyd are senior to (and should be paid before) all sums Inferno loaned to Crestlloyd.

100.     Similarly, Inferno signed the Subordination Agreement on or about October 30, 2018, pursuant to which Inferno agreed Hankey's loan to Crestlloyd "shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to" Inferno's loan to Crestlloyd. Similarly, Section 4 of the Subordination Agreement stated that in the event of bankruptcy, Hankey's debt would be paid before Inferno's debt. Inferno is therefore estopped to deny that Hankey's loan to Crestlloyd was senior to (and should be paid before) Inferno's loan to Crestlloyd.

101.     Additionally, Inferno has repeatedly agreed that it sits in second priority position behind Hankey. For example: First, in January 2022, in its opposition to Crestlloyd's motion to approve auction and bid procedure regarding the sale of the Property, Inferno conceded its junior lien priority position, stating that Inferno is "the holder of a deed of trust in second priority against the [Property]." Second, Inferno again confirmed its junior lien priority position in March 2022 in opposing Crestlloyd's motion for an order approving the sale of the Property, again stating that it is "the holder of a deed of trust in second priority against the [Property]." Hankey relied upon Inferno's admissions it was a junior lienholder when the sale was approved, and Inferno did not claim that it was in first priority position until May 2022, after it became clear that the proceeds from the sale of the Property would be insufficient to pay all creditors' claims. Inferno is thus estopped to deny that Hankey sits in a senior lien position and that Hankey's loan should be paid before Inferno's loan.

### THIRD AFFIRMATIVE DEFENSE
### (Judicial Estoppel)

102.     Inferno's claims are barred in whole or in part by the doctrine of judicial estoppel.

103.    Although Inferno now claims that the sums it loaned to Crestlloyd should have first priority, in January 2022, in its opposition to Crestlloyd's motion to approve auction and bid procedure regarding the sale of the Property, Inferno conceded its junior lien priority position, stating that Inferno is "the holder of a deed of trust in second priority against the [Property]." Inferno also again confirmed its junior lien priority position in March 2022 in opposing Crestlloyd's motion for an order approving the sale of the Property, again stating that it is "the holder of a deed of trust in second priority against the [Property]."

104.    Both the Court and the parties relied upon Inferno's admissions it was a junior lienholder when the sale was approved, and Inferno did not claim that it was in first priority position until May 2022, after it became clear that the proceeds from the sale of the Property would be insufficient to pay all creditors' claims.

**FOURTH AFFIRMATIVE DEFENSE**
**(Intervening and Superseding Cause)**

105.    If Inferno suffered or sustained any loss or damages, such loss or damage was legally caused or contributed to by the conduct of other parties, persons, or entities, including Yogi, who deliberately failed to exercise its rights under its Promissory Notes and Deeds of Trust and failed to recover sums it was owed from the sale of properties, other than the Property, owned by third parties or Crestlloyd to pay down its loans to Crestlloyd, and including Crestlloyd who, on information and belief, engaged in conduct and decisions unrelated to Hankey that rendered it unable to pay all of its outstanding debts and enter bankruptcy, leaving secured creditors without sufficient recourse to recover all sums owed to them, as well as to the extent that Yogi and/or Crestlloyd failed to recognize and honor the separate nature of different entities owned by the principals of Crestlloyd, including in applying funds from the sale of properties to the outstanding balances on loans made to Crestlloyd by Yogi, resulting in increased balances owed to Yogi that reduce the funds available for other creditors from the sale of the Property.

**FIFTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

106.    Inferno's claims are barred in whole or in part by the doctrine of unclean hands in that Inferno engaged in inequitable conduct towards Hankey.

107. Although the Subordination Agreement that gave Hankey's loan to Crestlloyd priority over Inferno's loan to Crestlloyd was signed and recorded on or about October 30, 2018, and Inferno conceded its junior lien position as late as January 2022, Inferno waited until May 2022 to contend that the Subordination Agreement was forged and Inferno was in first priority position, thereby inducing Hankey to enter into its $82,500,000 construction loan on the belief Hankey's loan would be senior to Inferno's loan.

108. Hankey relied upon the Subordination Agreement in making its initial $82,500,000 construction loan and Inferno did not claim that it was in first priority position until May 2022, after it became clear that the proceeds from the sale of the Property would be insufficient to pay all creditors' claims.

### SIXTH AFFIRMATIVE DEFENSE
### (Bona Fide Encumbrancer For Value)

109. Inferno's claims are barred in whole or in part because Hankey is a bona fide encumbrancer for value.

110. When Hankey recorded its Deed of Trust securing its construction loan, Hankey was a party to a signed Subordination Agreement between Hankey, Inferno and Crestlloyd whereby Inferno's Deed of Trust was subordinated to Hankey's Deed of Trust.

111. Hankey relied upon the Subordination Agreement in making its construction loan and loaning additional funds. Hankey executed and recorded its Deed of Trust without actual or constructive knowledge that there was a lien on the Property senior to Hankey's Deed of Trust.

112. Hankey is a bona fide encumbrancer for value whose Deed of Trust is senior to Inferno's Deed of Trust because it took a Deed of Trust for value without actual or constructive notice that Inferno's Deed of Trust was senior.

### SEVENTH AFFIRMATIVE DEFENSE
### (Justification)

113. Inferno's claims are barred in whole or in part by the doctrine of justification in that Hankey was justified in modifying its initial $82,500,000 loan to protect its security.

114.    Under the Construction Loan Agreement between Hankey and Crestlloyd, Crestlloyd represented that Hankey's $82,500,000 loan would be sufficient to complete construction of the Property and that Crestlloyd's acceptance of Hankey's $82,500,000 loan did not conflict with or materially breach any other contracts. The Deed of Trust securing Hankey's loan provided that it secured modifications of the underlying promissory note, payment of debt thereafter owing, and sums advanced to protect the security of the Deed of Trust.

115.    Despite Crestlloyd's representation that Hankey's $82,500,000 loan would be sufficient to complete construction, it was not. To protect its Deed of Trust and the value of the Property, for the benefit of Hankey and all other secured creditors of Crestlloyd, Hankey agreed to loan additional funds, as the Deed of Trust entitled Hankey to do. These additional funds were necessary for Crestlloyd to continue construction, and were, in fact, used for further construction on the Property.

116.    At the time Hankey's initial loan was made and when Hankey loaned additional funds, Crestlloyd believed the Property was worth $325,000,00, which would be more than adequate to pay off all creditors. In loaning additional funds, Hankey did not intend for Crestlloyd to be unable to pay back other creditors. Hankey did not believe, and had no reason to believe, its additional funds would impact Crestlloyd's ability to pay off all creditors because Hankey, reasonably and in good faith, believed the Property would be worth in excess of $200,000,000 upon completion of construction.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Ratification)**

117.    Inferno's claims are barred in whole or in part by the doctrine of ratification.

118.    Pursuant to the Memorandum of Agreement ("MOA") that Inferno signed on or about January 1, 2016, Inferno agreed that "loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction" would be paid first, before any sums were paid to Crestlloyd or Inferno. Nothing in the MOA requires any additional writing in order to permit the payment to such third parties. Inferno thus agreed that all sums it loaned to Crestlloyd would be paid only after Hankey (and other lienholders) were paid and therefore consented to all sums Hankey loaned to Crestlloyd being senior to (and paid before) all sums Inferno loaned to Crestlloyd.

119.    Similarly, Inferno signed the Subordination Agreement on or about October 30, 2018, pursuant to which Inferno agreed Hankey's loan to Crestlloyd "shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to" Inferno's loan to Crestlloyd. Similarly, Section 4 of the Subordination Agreement stated that in the event of bankruptcy, Hankey's debt would be paid before Inferno's debt. Inferno therefore consented to and agreed that Hankey's loan to Crestlloyd was senior to (and would be paid before) Inferno's loan to Crestlloyd.

120.    Inferno has ratified the MOA and Subordination Agreement by repeatedly conducting business in accordance with the terms of the MOA and Subordination Agreement, *i.e.*, operating as a junior lender to Hankey. For example: First, in January 2022, in its opposition to Crestlloyd's motion to approve auction and bid procedure regarding the sale of the Property, Inferno conceded its junior lien priority position, stating that Inferno is "the holder of a deed of trust in second priority against the [Property]." Second, Inferno again confirmed its junior lien priority position in March 2022 in opposing Crestlloyd's motion for an order approving the sale of the Property, again stating that it is "the holder of a deed of trust in second priority against the [Property]." Inferno thus ratified the MOA and Subordination Agreement by operating pursuant to its terms, namely that Hankey sits in a senior lien position and Hankey's loan should be paid before Inferno's loan.

## RESERVATION OF DEFENSES

121.    Further responding, Hankey states that it currently has insufficient information or knowledge on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. Hankey reserves the right to assert additional affirmative defenses in the event that discovery indicates it would be appropriate.

## COUNTERCLAIM

Hankey Capital, LLC ("Hankey") hereby alleges for its Counterclaim against Inferno Investment, Inc. ("Inferno") as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Further, this Court has personal jurisdiction over Inferno because Inferno filed its adversary complaint in this jurisdiction.

2.       Venue is proper in this District pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises in and relates to a case under Title 11 of the Federal Bankruptcy Court that is now pending in this District.

3.       This counterclaim is a "core" proceeding as defined in 28 U.S.C. § 157 because it seeks subordination and thus seeks a determination as to the validity, extent, and/or priority of liens against property. Hankey accordingly consents to entry of a final judgment by the bankruptcy judge.

## **THE PARTIES**

4.       Hankey is a limited liability company organized and existing under the laws of the State of California.

5.       Hankey alleges, on information and belief, that Inferno is a corporation organized and existing under the laws of Quebec, Canada.

## **FACTUAL BACKGROUND**

### **A. Hankey's Loans to Crestlloyd**

6.       In 2018, Debtor, Crestlloyd, LLC ("Debtor" or "Crestlloyd") was the owner of property at 944 Airole Way in Los Angeles, California, and was working to construct a luxury home thereon (the "Property"). To do so, Debtor needed to obtain a construction loan.

7.       On or around October 25, 2018, Debtor and Hankey entered into a Construction Loan Agreement (the "Agreement") in which Hankey agreed to loan Debtor $82,500,000. In connection with that Agreement, Debtor delivered to Hankey a Promissory Note in the principal sum of $82,500,000, and the parties recorded a Construction Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents (the "Hankey Deed of Trust"). The $82,500,000 loan was secured by the Property.

8.       Although Debtor, in the Agreement, represented to Hankey that the $82,500,000 loan would be sufficient to complete construction on the Property, that was ultimately not true. Thus, at Debtor's request, on two occasions, and consistent with its rights under the Hankey Deed of Trust to protects its security interest, Hankey and Debtor agreed on two subsequent loan modifications, increasing the principal to $91,000,000 and later to $106,000,000 in or around December 2019 and August 2020, respectively. Each of these modifications was also secured by the Property and was

18

evidenced by an amended Promissory Note. The parties recorded a Modification of Deed of Trust confirming the increase in principal of Hankey's loan to Crestlloyd secured by the Property to $106,000,000.

9.      On or around January 14, 2022, Hankey filed its proof of claim 20 for which it seeks recovery in this bankruptcy in the amount of $122,638,623.41, which is the amount due and owing on its $106,000,000 loan with appropriate interest.

**B.  Inferno's Loans to Crestlloyd**

10.      Inferno alleges it helped Crestlloyd finance acquisition of the land and construction for the Property in 2013, accepting the risk based on prior projects with Crestlloyd.

11.      It has been alleged that on or around March 13, 2013, Crestlloyd executed two promissory notes by which it received a $3,925,545 loan from Inferno, a $7,040,000 loan from Inferno Realty, L.P., and a $7,000,00 loan from Maybach Holdings Corporation, Inc. ("Maybach").

12.      It has been alleged that on or around March 13, 2013, Crestlloyd, Inferno Realty, L.P., and Maybach executed and recorded a deed of trust securing the $7,040,000 loan from Inferno Realty, L.P., and a $7,000,000 loan from Maybach.

13.      It has been alleged that Maybach and Inferno Realty, L.P. assigned their right, title and interest in their Deed of Trust to Inferno.

14.      Inferno has acknowledged that in 2015—for no apparent consideration whatsoever—it reduced the principal amount of one of its loans to Crestlloyd from $14,040,000 to $7,000,000, as documented in a Modification and Supplement to Deed of Trust recorded on November 10, 2015.

15.      On January 4, 2022, Inferno filed Proof of Claim 11 asserting a secured claim for which it seeks recovery in this bankruptcy in the amount of $20,902,106.12.

**C.  Inferno Enters Into the MOA and Subordination Agreement**

16.      On or about January 1, 2016, Inferno and Crestlloyd then documented their respective rights concerning the distribution of proceeds from the sale of the Property in a Memorandum of Agreement ("MOA"), which was entered into on January 1, 2016. The MOA states the following in pertinent part:

<u>Distributions</u>. All proceeds received from a sale, condemnation, financing or refinancing of the   [Property] shall be distributed in the following manner:

**First, to repay the loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the [Property].**

**Second, to Crestlloyd and Inferno, pro rata**, in any loans owing them, . . . . (Emphasis added.)

17.     Nowhere in the MOA is there any mention that subordination of any debt would require a written amendment to the MOA as alleged in Inferno's Second Amended Complaint.

18.     On October 30, 2018, shortly after Hankey and Crestlloyd executed the Agreement and the Hankey Deed of Trust, and as a condition of entering into the Agreement Hankey, Crestlloyd, and Inferno executed the Subordination Agreement (as defined in Inferno's Second Amended Complaint). The Subordination Agreement subordinated Inferno's lien on the Property to Hankey's lien. Upon information and belief, the Subordination Agreement was signed by Julien Remillard—director of Inferno—on October 30, 2018, notarized, and recorded on November 6, 2018.

19.     Despite the Subordination Agreement and the MOA, Inferno contends its claim for $20,902,106.12 has priority over Hankey's claim for $122,638,623.41.

### FIRST CLAIM FOR RELIEF AGAINST INFERNO

**(For Declaratory Relief That Inferno's Claim is Subordinated to Hankey's Claim)**

20.     Hankey repeats and realleges the allegations contained in Paragraphs 1 through 19, inclusive, and incorporates them by reference as if set forth fully herein.

21.     Hankey seeks recovery pursuant to its proof of claim 20 of $122,638,623.41 for the outstanding balance due and owing to it for its loan in the principal amount of $106,000,000 plus appropriate interest, charges and fees. Meanwhile, Inferno seeks to recover pursuant to its proof of claim 11 for $20,902,106.12, which is the sum Inferno claims is due and owing pursuant to its promissory notes.

22.     An actual controversy exists over the priority of the Hankey and Inferno's deeds of trust because Inferno alleges its deed of trust has priority over Hankey's deed of trust and vice versa. Specifically, Inferno contends that:

a.  The MOA's provision, stating that proceeds from the sale of the Property would be used first to repay loans obtained from a bank or third parties before Crestlloyd and Inferno received proceeds from the sale of the Property, only authorized the subordination of Inferno's debts to loans where Crestlloyd and Inferno specifically agreed to in writing.

b.  The Subordination Agreement entered into between Crestlloyd, Hankey and Inferno is of no force and effect because the signature of Inferno's principal, Julien Rouillard, was forged.

23.  Hankey disputes Inferno's contention and alleges that:

a.  The MOA requires that loans from third parties such as Hankey are to be paid first and therefore have priority over Inferno's right to proceeds from the sale of the Property.

b.  The Subordination Agreement is valid and enforceable and the signature is not forged or was otherwise authorized or ratified.

24.   Hankey desires and is entitled a to judicial determination of the parties' rights and obligations, including but not limited to a judicial declaration that Inferno's loans, claims and liens are subordinated to Hankey's loans, claims and liens.

25.  A judicial declaration is necessary and appropriate at this time under the present circumstances for the parties to ascertain their rights and obligations and for the proceeds of the sale of the Property to be properly allocated.

## SECOND CLAIM FOR RELIEF AGAINST INFERNO

### (For Recharacterization of Inferno's Claim As Equity Under 11 U.S.C. § 502)

26.  Hankey repeats and realleges the allegations contained in Paragraphs 1 through 19, inclusive, and incorporates them by reference as if set forth fully herein.

27.  Inferno seeks to recover pursuant to its proof of claim 11 for $20,902,106.12, which is the sum Inferno claims is due and owing pursuant to its promissory notes.

28.    Inferno's claim, though presented by Inferno as a secured claim based on a debt owed by Crestlloyd, is in fact a disguised equity contribution and should be recharacterized as an "equity contribution" and not "debt" because:

a.    Inferno reduced the value of the $14,040,000 note it acquired from Inferno Realty L.P. and Maybach to $7,000,000 for no consideration.

b.    The Inferno promissory note contains no fixed maturity date, but rather is due upon the sale of the Property.

c.    Repayment of the Inferno promissory note is only expected if Crestlloyd is successful in its business, *i.e.*, in selling the Property.

d.    The Inferno promissory note requires Crestlloyd to pay Inferno 50% of the net profits derived from the sale of residences other than the Property and 15% of the net profits from the sale of the Property.

e.    Hankey is informed and believes, and thereupon alleges, that Crestlloyd and Inferno had a pattern of practice of conducting other business deals and splitting profits, including but not limited to a transaction related to a property located at 9066 St. Ives Drive in Los Angeles, California.

29.    Because Inferno's claim is, in fact, an equity contribution to Crestlloyd and not a secured debt, Hankey's proof of claim has priority over Inferno's proof of claim.

## **PRAYER FOR RELIEF**

Wherefore, Hankey prays for judgment as follows:

**AS TO INFERNO'S CLAIMS AGAINST HANKEY:**

1.    That Inferno takes nothing by its Complaint;

2.    For Hankey's costs incurred herein; and

3.    For such other and further relief as the Court deems just and proper.

**AS TO HANKEY'S COUNTERCLAIM AGAINST INFERNO:**

4.    For a judicial determination that Inferno's indebtedness of $20,902,106.12 is subordinated to Hankey's indebtedness of $122,638,623.41, and therefore Hankey's debt has priority and should be paid first from the proceeds of the sale of the Property prior to any payment to Inferno;

5.    For recharacterization of Inferno's alleged debt as an equity contribution;

6.    For Hankey's costs incurred herein; and

7.    For such other relief as the Court deems just and proper.

**AS TO ALL CLAIMS BETWEEN HANKEY AND INFERNO:**

8.    For Hankey's costs incurred herein;

9.    For Hankey's attorney's fees, to the extent allowed by contract or law, incurred in connection with this action; and

10.    For such other relief as the Court deems just and proper.


DATED:  July 26, 2023                    GREENBERG TRAURIG, LLP


                                        By   _/s/ Howard J. Steinberg_____
                                            Howard J. Steinberg
                                            Attorneys for Defendant and Cross-Claimant
                                            Hankey Capital, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled (*specify*): **HANKEY CAPITAL, LLC'S ANSWER TO
INFERNO INVESTMENT, INC.'S SECOND AMENDED COMPLAINT; AFFIRMATIVE DEFENSES;
AND COUNTERCLAIM AGAINST INFERNO INVESTMENT, INC. FOR DECLARATORY RELIEF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
7/26/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com; gcruz@swelawfirm.com;
  jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Ryan Coy    rcoy@bg.law, ecf@bg.law
- Max Fabricant    mfabricant@lavelysinger.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- Jonathan Gottlieb    jdg@lnbyg.com
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Joseph M Rothberg    jmr@lnbyg.com
- Paul Sorrell    psorrell@lavelysinger.com, mdsinger@lavelysinger.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Johnny White    JWhite@wrslawyers.com, jlee@wrslawyers.com

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following
persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service
method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal
delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/26/2023 | Terrine Pearsall | /s/ Terrine Pearsall |
|-----------|------------------|----------------------|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                     **F 9013-3.1.PROOF.SERVICE**
*ACTIVE 689120906v1*