1  Howard J. Steinberg (SBN CA 89291)
Eric V. Rowen (SBN CA 106234)
2  Matthew R. Gershman (SBN CA 253031)
GREENBERG TRAURIG, LLP
3  1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
4  Telephone: 310.586.7700/Facsimile: 310.586.7800

5  Thomas M. Geher (SBN CA 130588)
JEFFER MANGELS BUTLER & MITCHELL LLP
6  1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
7  Telephone: 310-203-8080/Facsimile: 310-203-0567

8  Attorneys for Hankey Capital, LLC

9

10            **UNITED STATES BANKRUPTCY COURT**

11       **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

12

13  In re:                          | Bk. No. 2:21-bk-18205-DS

14  CRESTLLOYD, LLC,                 | Chapter 11

15        Debtor,                    | Adv. No. 2:22-ap-01125-DS

16  ——————————————————————          | **DECLARATION OF HOWARD J.**
                                     | **STEINBERG IN SUPPORT OF HANKEY**
17  INFERNO INVESTMENT, INC., a Quebec | **CAPITAL, LLC'S MOTION FOR ORDER TO**
    corporation,                     | **SHOW CAUSE WHY YVONNE NIAMI**
18                                   | **SHOULD NOT BE HELD IN CONTEMPT**
        Plaintiff,                   | **FOR FAILURE TO RESPOND TO**
19                                   | **SUBPOENA TO PRODUCE DOCUMENTS**
    v.
20                                   | [*Filed concurrently with Motion Proposed Order to*
    CRESTLLOYD, LLC, a California limited liability | *Show Cause*]
21  company; HANKEY CAPITAL, LLC, a California |
    limited liability company; YOGI SECURITIES | [Hearing, if any, to be set by the Court pursuant to
22  HOLDINGS, LLC, a Nevada limited liability | Local Bankruptcy Rule 9020-1(d)]
    company; and HILLDUN CORPORATION, a New |
    York corporation,               |
23                                   | DATE:    [TO BE SET]
        Defendants.                  | TIME:    [TO BE SET]
24                                   | CTRM:    1639
25  ——————————————————————          |
    AND RELATED CROSS-ACTIONS.       | JUDGE:   Hon. Deborah J. Saltzman
26                                   |
                                     | Action Filed: June 9, 2022
27

28

I, Howard J. Steinberg, declare as follows:

1.      I am an attorney at law, duly licensed to practice in the State of California and before this Court. I am a shareholder of Greenberg Traurig, LLP, counsel for Defendant and Counter/cross-claimant Hankey Capital, LLC ("Hankey"). I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of Hankey's Motion for Order to Show Cause Why Yvonne Niami Should Not Be Held in Contempt for Failure to Respond to Subpoena to Produce Documents (the "Contempt Motion").

2.      On April 4, 2025, my office caused Yvonne Niami ("Yvonne") to be personally served with a subpoena to produce document ("Subpoena"). A true and correct copy of the Subpoena and proof of service is attached hereto as **Exhibit A**. The Subpoena called for a response no later than April 25, 2025.

3.      We never received Yvonne's responses to the Subpoena by mail or otherwise. We also confirmed with our office services department, which receives the incoming mail at our office, and they confirmed they have never received a response to the Subpoena from Yvonne.

4.      On May 7, 2025, my office sent Yvonne a meet-and-confer letter in a good-faith effort to confer with Yvonne and obtain responses without court action ("Meet-and-Confer Letter"). The Meet-and-Confer Letter informed Yvonne of her failure to serve responses, and that, accordingly, all objections to the Subpoena had been waived. A copy of the Meet-and-Confer Letter is attached hereto as **Exhibit B.**

5.      On May 21, 2025, my office sent Yvonne a second meet-and-confer letter in an additional good-faith effort to confer with Yvonne and obtain responses without court action ("Second Meet-and-Confer Letter"). A copy of the Second Meet-and-Confer Letter is attached hereto as **Exhibit C**.

6.      As of the time of this filing, we have still received no response from Yvonne to the Subpoena, the Meet-and-Confer Letter, or the Second Meet-and-Confer Letter.

7.      I have been practicing law for over 40 years and am the primary and supervising shareholder on this case. The work required to draft the Contempt Motion, Hankey's Motion to Compel Responses to Requests for Production of Documents to Nile Niami (Set One) and Request for Sanctions (the "Nile Motion"), and Hankey's Motion to Compel Responses to Subpoena to Produce Documents to

Yvonne Niami and Request for Sanctions (the "Yvonne Motion," and collectively, the "Motions"), substantially overlapped. I spent 2.2 hours reviewing and revising the Motions, conferring with my team and client, and advising on strategy, which was billed to the client on this matter at the blended rate of $875 per hour. Accordingly, the client was billed a total of $1,925 for my time spent on the above-mentioned tasks.

8.     Heather Silver is a shareholder in GT's Los Angeles office who has been litigating a variety of complex cases for more than ten years. Ms. Silver was responsible for drafting the Motions and in supervising others in gathering research and supporting documents for the Motions. In total, Ms. Silver spent 8.6 hours at the blended rate of $875 per hour on work related to the Motions. Accordingly, the client was billed a total of $7,525 for Ms. Silver's time spent working on the above-referenced tasks relating to the Motions.

9.     Alexsan Gharibian is a junior associate in the litigation group of GT's Los Angeles office who has approximately two years of litigation experience. Mr. Gharibian provided support to Ms. Silver in the drafting of the Motions. In total, Mr. Gharibian spent 18 hours at the blended rate of $875 per hour reviewing materials and drafting the Motions, conducting research, outlining potential arguments, and proofreading the Motions. Accordingly, the client was billed a total of $15,750 for Mr. Gharibian's time spent working on the Motions.

10.    On August 19, 2025, the Court denied the Yvonne Motion without prejudice. Hankey was permitted to refile the Yvonne Motion as the Contempt Motion. To prepare the Contempt Motion, a large portion of the work product from the Yvonne Motion was utilized with the addition of relevant authorities and information to draft the Contempt Motion. To that end, Mr. Gharibian spent an additional 9 hours conducting legal research and drafting the Contempt Motion. Accordingly, the client was/will be billed an additional $7,875 for Mr. Gharibian's time spent working on the Contempt Motion.

11.    Thus, in total, Hankey is seeking an award of $12,600 for the attorney's fees incurred for the work of Ms. Silver, Mr. Gharibian, and myself on the Contempt Motion, representing one half of the total fees incurred for the work on the Motions, and discounting Mr. Gharibian's work solely attributable to the Yvonne Motion. The other half of the total attorney fees incurred for the work on the Nile Motion and the Yvonne Motion was sought and awarded through the Nile Motion.

1    I declare under penalty of perjury under the laws of the United States of America that the foregoing

2 is true and correct.

3    Executed on this 3rd day of October, 2025, at Los Angeles, California

4                                          _/s/ Howard J. Steinberg_
                                          Howard J. Steinberg

**EXHIBIT A**

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Central _____ District of _____ California - Los Angeles Division ___

In re Crestlloyd, LLC _____

_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 2:21-bk-18205-DS _____

Chapter 11 _____

Inferno Investment, Inc. _____

_____
Plaintiff

v.

Crestlloyd, LLC et al. _____

_____
Defendant

Adv. Proc. No. 2:22-ap-01125-DS ___

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Yvonne Niami, 341 South Rodeo Drive, Beverly Hills, California 90212-4206 _____

*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **SEE ATTACHED "EXHIBIT A."**

| PLACE<br>1840 Century Park East, Suite 1900, Los Angeles, California 90067 | DATE AND TIME<br>April 25, 2025, 5 p.m. |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: April 3, 2025 ___

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

/s/ Howard J. Steinberg ___
*Attorney's signature*
Howard J. Steinberg

The name, address, email address, and telephone number of the attorney representing *(name of party)* Hankey Capital, LLC _____ , who issues or requests this subpoena, are:

Howard J. Steinberg; steinbergh@gtlaw.com; 310-586-7702 ___

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

ACTIVE 706618482v1

# PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):* _____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.


       I declare under penalty of perjury that this information is true and correct.

Date: _____

 

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

*(2)For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      (i) disclosing a trade secret or other confidential research, development, or commercial information; or

   (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B)*Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A TO SUBPOENA TO YVONNE NIAMI

## INSTRUCTIONS

1.      These requests shall apply to all items (*e.g.*, documents or things) in your possession, custody, or control at the present time, as well as all items that come into your possession, custody, or control. If you know of the existence, past or present, of any items requested below, but are unable to produce such items because they are not presently in your possession, custody, or control, you shall so state and shall provide a written statement setting forth:

>>> a)  the identity of the item;

>>> b)  the nature of the item (*e.g.*, letter, memorandum, or chart);

>>> c)  the identity of the person(s) who created (*e.g.*, authored) the item;

>>> d)  the identity of any person who received a copy of the item;

>>> e)  the date of the item;

>>> f)  a brief description of the subject matter of the item; and

>>> g)  the identity of any person who has possession, custody, or control of the item.

2.      If no documents are responsive to a particular request, state that no responsive documents exist.

3.      For any responsive items (*e.g.*, documents or things) that have been lost, destroyed, withheld from production, or redacted, for any reason, you shall provide a written statement setting forth:

>>> a)  the identity of the item;

>>> b)  the nature of the item (*e.g.*, letter, memorandum, or chart);

>>> c)  the identity of the person(s) who created (*e.g.*, authored) the item;

>>> d)  the identity of any person who received a copy of the item;

>>> e)  the date of the item;

>>> f)  a brief description of the subject matter of the item; and

>>> g)  the circumstances of the loss or destruction of the item or any fact, statute, rule, or decision upon which you rely in withholding or redacting the item.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

4.      If you decline to produce any document or part thereon based on a claim of privilege or any other claim, describe the nature and basis of your claim and the information withheld in a manner sufficient:

a)  to disclose the facts upon which you rely in asserting your claim;

b)  to permit the grounds and reasons for withholding the information to be unambiguously identified; and

c)  to permit the information withheld to be unambiguously identified.

5.      Hankey specifies the following manner of production:

a)      Non-Electronically Stored Information:  All non-electronic Documents are to be produced as they are kept in the usual course of business, in the files in which such documents have been maintained, and in the order within each file in which such documents have been maintained; or all Documents shall be organized and labeled to correspond with the requests below.  All Documents are to be produced along with copies of the file folders in which they are kept.

b)      Electronically Stored Information ("ESI"):  Regarding responsive, non-privileged ESI, (a) you shall save all data electronically in Native Format; (b) you shall take all reasonable measures to maintain the original Native electronic source documents in a manner so as to preserve the Metadata associated with these electronic materials as it existed at the time of production in the event review of such Metadata becomes necessary; (c) Native Format documents shall not be manipulated to change how the source document would have appeared if printed out to a printer attached to a computer viewing the file; (d) you shall produce native ESI along with single-page .tif images with bates numbers, OCR data, and metadata; (e) ESI that does not readily process into an imaged .tif format, such as Excel spreadsheet files, or audio files, shall be produced in native format, but, in lieu of a .tif image, a slip-sheet .tif image with bates stamp numbering shall be associated with the file and shall indicate "Document Produced in Native Format" or something substantially similar; (f) you shall produce ESI on readily accessible, computer or electronic media such as CD-Rom, DVD, external hard drive

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

(with standard PC-compatible interface or access to a secure on-line repository agreed upon by the Parties), or any other Production Media the parties may mutually agree upon; (g) each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production; (h) any replacement Production Media shall cross-reference the original Production Media and clearly indicate that it is a replacement and cross-reference the document number range that is being replaced; (i) to the extent that decryption or access passwords are necessary to unlock any data in its Native Format, including, but not limited to, e-mail passwords and file decryption passwords, such passwords will be provided immediately upon request, or in a manner the parties mutually agree upon.

## **DEFINITIONS**

The following definitions shall apply to these Requests:

1.    "Communication(s)" means the transmission of information in any form (whether by way of facts, ideas, questions, opinions, or otherwise), including, without limitation, e-mail, handwritten, typed, text message, instant message, and/or other readable or viewable Documents or other tangible thing.

2.    "Document(s)" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence.

3.    "You" or "Your" means Yvonne Niami or anyone acting or purposing to act on her behalf.

4.    "Crestlloyd" means Crestlloyd, LLC and its directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

5.    "Hankey" means Hankey Capital, LLC.

6.    The term "MOA" or "Memorandum of Agreement" refers to the Memorandum of Agreement between Inferno Investments, Inc. and Crestlloyd, LLC, dated January 1, 2016, and any amendments thereto.

7. "Inferno" means Inferno Investment, Inc. and its directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

8. "Yogi" means Yogi Securities Holdings, LLC and its directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

9. "Property" is the land and improvements located at 944 Airole Way, Bel Air, California.

10. The term "Subordination Agreement" refers to the Subordination Agreement between Crestlloyd, Hankey, and Inferno Investment, Inc., entered into as of October 30, 2018, attached hereto as Exhibit 1.

11. "10701 Bellagio Road, LLC" means 10701 Bellagio Road, LLC, and its members, managers, directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

12. "Carcassonne Fine Homes LLC" means Carcassonne Fine Homes LLC, and its members, managers, directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

13. "Marbella Construction, Inc." means Marbella Construction, Inc. and its directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

14. "1369 Londonderry Estate, LLC" means 1369 Londonderry Estate, LLC, and its members, managers, directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

15. "Trousdale Estate, LLC" means Trousdale Estate, LLC, and its members, managers, directors, officers, employees, agents, attorneys, or anyone acting or purposing to act on its behalf.

16. "Cross-Complaint" refers to Defendant Crestlloyd LLC's Cross-Complaint filed in the above-captioned adversary proceeding on or around August 10, 2022, DE 27, attached hereto as Exhibit 2.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

Documents and Communications sufficient to show Crestlloyd's relationship with Trousdale Estate, LLC.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents and Communications relating to, referring to, or discussing loans or capital contributions to Crestlloyd from Yogi.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents and Communications relating to, referring to, or discussing loans or capital contributions to You from Yogi.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications relating to, referring to, or discussing loans to Crestlloyd from Hankey.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications relating to, referring to, or discussing loans or capital contributions to Crestlloyd from Inferno.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents and Communications relating to, referring to, or discussing loans or capital contributions to You from Inferno.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents and Communications relating to, referring to, or discussing the use or disbursement of loan proceeds or capital contributions from Yogi.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents and Communications relating to, referring to, or discussing the use or disbursement of loan proceeds from Hankey.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications relating to, referring to, or discussing the use or disbursement of loan proceeds or capital contributions from Inferno.

**REQUEST FOR PRODUCTION NO. 10:**

All Communications with Yogi.

**REQUEST FOR PRODUCTION NO. 11:**

All Communications with Inferno.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 12:**

All Communications with Hankey.

**REQUEST FOR PRODUCTION NO. 13:**

All final versions of the Memorandum of Agreement, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 14:**

All agreements or contracts that alter or add terms to the Memorandum of Agreement.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents and Communications relating to, referring to, or discussing the applicability of the Memorandum of Agreement on any financing provided by Hankey.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents and Communications related to, discussing, or reflecting the negotiation or execution of the Memorandum of Agreement.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents and Communications related to, discussing, or reflecting the preparation and negotiation or execution of the Subordination Agreement.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents and Communications relating to, referring to, or discussing the reduction, in October 2015, of the principal balance of Inferno's loan to Crestlloyd from $14,040,000 to $7,000,000.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents and Communications relating to, referring to, or discussing the priority of liens against the Property.

**REQUEST FOR PRODUCTION NO. 20:**

Documents and Communications sufficient to show all entities that You control in whole or in part.

**REQUEST FOR PRODUCTION NO. 21:**

Documents and Communications sufficient to show all entities that You own in whole or in part.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 22:**

All Documents and Communications relating to, referring to, or discussing Your purchase or sale of real property since 2010.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents and Communications relating to, referring to, or discussing Crestlloyd's purchase or sale of real property since 2010.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents and Communications relating to, referring to, or discussing the purchase or sale of real property by any entity You own or control since 2010.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents and Communications relating to, referring to, or discussing Inferno's decision or agreement to condition repayment of its promissory notes executed by Crestlloyd on Crestlloyd selling the Property.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications relating to, referring to, or discussing Inferno's decision or agreement to condition repayment of its promissory notes executed by Crestlloyd on Crestlloyd selling property other than the Property.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents and Communications relating to, referring to, or discussing Inferno's decision or agreement to make repayment of its promissory notes executed by Crestlloyd include a percentage of the net profits from the sale of the Property.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents and Communications relating to, referring to, or discussing Inferno's decision or agreement to make repayment of its promissory notes executed by Crestlloyd include a percentage of the net profits from the sale of property other than the Property.

**REQUEST FOR PRODUCTION NO. 29:**

Documents and Communications sufficient to show any loan or capital contribution made by Inferno to You, Nile Niami, or any entity owned or controlled by You or Nile Niami.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 30:**

Documents and Communications sufficient to show any loan or capital contribution made by Yogi to You, Yvonne Niami, or any entity owned or controlled by You or Nile Niami.

**REQUEST FOR PRODUCTION NO. 31:**

All final versions of any agreement between You and Yogi, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 32:**

All final versions of any agreement between Crestlloyd and Yogi, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 33:**

All final versions of any agreement between You and Inferno, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 34:**

All final versions of any agreement between Crestlloyd and Inferno, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 35:**

All agreements or contracts that alter or add terms to the terms of any agreement between You and Yogi.

**REQUEST FOR PRODUCTION NO. 36:**

All agreements or contracts that alter or add terms to the terms of any agreement between Crestlloyd and Yogi.

**REQUEST FOR PRODUCTION NO. 37:**

All agreements or contracts that alter or add terms to the terms of any agreement between You and Inferno.

**REQUEST FOR PRODUCTION NO. 38:**

All agreements or contracts that alter or add terms to the terms of any agreement between Crestlloyd and Inferno.

**REQUEST FOR PRODUCTION NO. 39:**

All agreements or contracts that alter or add terms to the terms of any agreement between Crestlloyd and Hankey.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents and Communications related to, discussing, or reflecting the negotiation or execution of any agreement or amendment to any agreement between You and Yogi.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents and Communications related to, discussing, or reflecting the negotiation or execution of any agreement or amendment to any agreement between Crestlloyd and Yogi.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents and Communications related to, discussing, or reflecting the negotiation or execution of any agreement or amendment to any agreement between You and Inferno.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents and Communications related to, discussing, or reflecting the negotiation or execution of any agreement or amendment to any agreement between Crestlloyd and Inferno.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications related to, discussing, or reflecting the payment from and disbursement of proceeds from the sale of real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents and Communications related to, discussing, or reflecting the payments from and disbursement of proceeds from the sale of real property located at 10701 Bellagio Road, Beverly Hills, California 90077.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents and Communications related to, discussing, or reflecting the payments from and disbursement of proceeds from the sale of real property located at 627 North Carcassonne Road, Los Angeles, California 90077.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 47:**

All Documents and Communications related to, discussing, or reflecting the payments from and disbursement of proceeds from the sale of real property located at 3381 Stone Ridge Road, Los Angeles, California 90077.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications related to, discussing, or reflecting the payments from and disbursement of proceeds from the sale of real property located at 1369 Londonderry Place, Los Angeles, California 90069.

**REQUEST FOR PRODUCTION NO. 49:**

All Documents and Communications related to, discussing, or reflecting the payments from and disbursement of proceeds to Yogi from the sale of any property, whether real property or personal property, owned by 10701 Bellagio Road, LLC, Carcassonne Fine Homes, LLC, Marbella Construction, Inc., or 1369 Londonderry Estate, LLC.

**REQUEST FOR PRODUCTION NO. 50:**

All Documents and Communications related to, discussing, or reflecting any transfer of real or personal property from You to Joseph Englanoff, any relative of Joseph Englanoff, or any entity owned or controlled by Joseph Englanoff.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents and Communications related to, discussing, or reflecting any transfer of real or personal property from Nile Niami to Joseph Englanoff, any relative of Joseph Englanoff, or any entity owned or controlled by Joseph Englanoff.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents and Communications related to, discussing, or reflecting any transfer of real or personal property from any entity You own or control to Joseph Englanoff, any relative of Joseph Englanoff, or any entity owned or controlled by Joseph Englanoff.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 53:**

All Documents and Communications related to, discussing, or reflecting any transfer of real or personal property from any entity Nile Niami owns or controls to Joseph Englanoff, any relative of Joseph Englanoff, or any entity owned or controlled by Joseph Englanoff.

**REQUEST FOR PRODUCTION NO. 54:**

All final versions of any agreement between You and Crestlloyd, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 55:**

All final versions of any agreement between Nile Niami and Crestlloyd, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 56:**

All final versions of any agreement between Crestlloyd and any entity owned or controlled by You or Nile Niami, including any amendments thereto.

**REQUEST FOR PRODUCTION NO. 57:**

All agreements or contracts that alter or add terms to any agreement between You and Crestlloyd.

**REQUEST FOR PRODUCTION NO. 58:**

All agreements or contracts that alter or add terms to any agreement between Crestlloyd and Nile Niami.

**REQUEST FOR PRODUCTION NO. 59:**

All agreements or contracts that alter or add terms to any agreement between Crestlloyd and any entity owned or controlled by You or Nile Niami.

**REQUEST FOR PRODUCTION NO. 60:**

All Communications with Joseph Englanoff.

**REQUEST FOR PRODUCTION NO. 61:**

All Communications with Justine Englanoff.

**REQUEST FOR PRODUCTION NO. 62:**

All Communications with Nicole Englanoff.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 63:**

All Communications with Jacqueline Englanoff.

**REQUEST FOR PRODUCTION NO. 64:**

All Communications with Julien Remillard.

**REQUEST FOR PRODUCTION NO. 65:**

All Communications with Lucien Remillard.

**REQUEST FOR PRODUCTION NO. 66:**

All Documents and Communications with notary public Nigel Gibbs, any entity by which Nigel Gibbs is or was employed as a notary public, or any entity to which Nigel Gibbs provides or provided services in his capacity as a notary public.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 6 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 68:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 7 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 69:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 8 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 70:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 9 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 71:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 32 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 72:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 33 of Crestlloyd's Cross-Complaint.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 73:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 34 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 42 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 43 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 76:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 46 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 47 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 78:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 52 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 53 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 80:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 54 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 81:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 56 of Crestlloyd's Cross-Complaint.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 82:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 57 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 58 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 60 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 85:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 61 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 62 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 87:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 63 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 88:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 67 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 89:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 68 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 90:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 69 of Crestlloyd's Cross-Complaint.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 91:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 70 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 92:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 71 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 93:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 72 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 94:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 73 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 74 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 76 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 97:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 77 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 78 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 79 of Crestlloyd's Cross-Complaint.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 100:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 80 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 82 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 102:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 83 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 89 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 106 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 110 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 111 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 112 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 108:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 113 of Crestlloyd's Cross-Complaint.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 109:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 118 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 126 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 127 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 112:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 128 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 129 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 114:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 130 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 115:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 131 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 132 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 117:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 141 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 118:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 142 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 119:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 153 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 120:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 175 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 121:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 178 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 122:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 185 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 123:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 196 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 124:**

All Documents or Communications relating to, referring to, or discussing the allegations set forth in paragraph 235 of Crestlloyd's Cross-Complaint.

**REQUEST FOR PRODUCTION NO. 125:**

All Documents and Communications relating to, referring to, or discussing the applicability of the Memorandum of Agreement on any financing provided by any person or entity.

**REQUEST FOR PRODUCTION NO. 126:**

All Communications between You and Crestlloyd.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

**REQUEST FOR PRODUCTION NO. 127:**

All Communications between You and Nile Niami relating to, referring to, or discussing Crestlloyd; the Property; 1175 North Hillcrest Road, Beverly Hills, California 90210; 10701 Bellagio Road, Beverly Hills, California 90077; 627 North Carcassonne Road, Los Angeles, California 90077; 3381 Stone Ridge Road, Los Angeles, California 90077; or 1369 Londonderry Place, Los Angeles, California 90069.

**REQUEST FOR PRODUCTION NO. 128:**

All Communications between Crestlloyd and any entity owned or controlled by Joseph Englanoff.

**REQUEST FOR PRODUCTION NO. 129:**

All Communications between You and any entity owned or controlled by Joseph Englanoff.

**REQUEST FOR PRODUCTION NO. 130:**

All Documents and Communications relating to, referring to, or discussing the use or disbursement of loan proceeds or capital contributions from Hankey, Inferno, or Yogi by any person or entity other than Crestlloyd.

**REQUEST FOR PRODUCTION NO. 131:**

All Communications with Yogi relating to, referring to, or discussing any loan by Hankey.

**REQUEST FOR PRODUCTION NO. 132:**

All Communications with Yogi relating to, referring to, or discussing the timing of the recording of any deed of trust against the Property.

EXHIBIT A – ATTACHMENT TO SUBPOENA TO YVONNE NIAMI

# EXHIBIT 1

**This page is part of your document - DO NOT DISCARD**



## 20181122920



**Pages:**
**0012**

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**11/06/18 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 50.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 50.00 |



**LEADSHEET**



201811060250001

00015919186



009447827

**SEQ:**
**20**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**            T72

CRESTLLOYD 000321

2.

RECORDING REQUESTED BY
CHICAGO
**WHEN RECORDED, RETURN TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Ste 110
Los Angeles, CA 90010
Attn: Eugene M. Leydiker

APN No. 4369-026-021



# SUBORDINATION
# AGREEMENT

## (Deed of Trust to Deed of Trust)

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

THIS SUBORDINATION AGREEMENT ("Agreement") is entered into as of October 30, 2018, by and between CRESTLLOYD, LLC, a California limited liability company ("Owner"); and INFERNO INVESTMENT INC. ("Subordinate Lender"); and Hankey Capital, LLC ("Lender").

## RECITALS

**A.**     Subject to the terms and provisions of that certain Deed of Trust With Assignment of Rents dated March 13, 2013, executed by Owner, as Trustor, in favor of INFERNO REALTY, L.P. and MAYBACH CORPORATION HOLDINGS, INC., Subordinate Lender's predecessors-in-interest, recorded on March 13, 2013, as Document Number 20130384037 in the official records of the County of Los Angeles, State of California ("Official Records") ("Subordinate Lender's Deed of Trust"), Owner granted to Subordinate Lender's predecessors-in-interest a security interest in and to the property described in Exhibit "A" attached hereto and incorporated herein located at 944 Airole Way, Los Angeles, California (which property, together with all improvements now or hereafter located on the property, is hereinafter collectively referred to as the "Property") to secure Owner's obligations to Subordinate Lender's predecessors-in-interest (the "Subordinated Debt").

**B.**     MAYBACH CORPORATION HOLDINGS, INC. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to INFERNO REALTY, L.P. by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated June 2, 2014 and recorded on November 10, 2015 in the Official Records as Document Number 20151375606.

**C.**     INFERNO REALTY, L.P. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to Subordinate Lender by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated October 21, 2015 and recorded on November 10, 2015 in the Official Records as Document Number 20151375607.

**D.**     Owner has executed or will execute a Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents ("Lender's Deed of Trust") securing, among other things, Owner's obligations to Lender as set forth in that certain Promissory Note dated October 25, 2018, in favor of Lender, in the principal amount of Eighty Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00) (the "Note"). Lender's Deed of Trust is being recorded in the Official

1

94109

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225 reached

Non-Order Search
Doc: CALOSA:2018 01122920

Requested By: Shivanna.Sampangi, Printed: 12/3/2021 8:02 PM

CRESTLLOYD 000322

3

Records concurrently herewith. The Note and the Lender's Deed of Trust  are collectively referred to herein  as the "Loan Agreement".

E.      As a condition to Lender making a Loan (the "Loan"), to be secured by, among other things, the Lender's Deed of Trust (the "Senior Debt"), Lender requires that Lender's Deed of Trust be unconditionally and at all times remain a lien or charge upon the Property, prior and superior to all the rights of Subordinate Lender under its deed of trust and that Subordinate Lender specifically and unconditionally subordinates its deed of trust to the lien or charge of Lender's Deed of Trust.

F.      Subordinate Lender and Owner agree to the subordination in favor of Lender.

NOW THEREFORE, for good and valuable consideration and the receipt and adequacy of which is hereby acknowledged, and to induce Lender to make the Loan, Owner and Subordinate Lender hereby agree for the benefit of Lender as follows:

Section 1.     Subordination.  Lender's Deed of Trust securing the Note in favor of Lender, shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to Subordinate Lender's Deed of Trust.

Section 2.     Entire Agreement. This Agreement shall be the whole agreement with regard to the subordination of Subordinate Lender's Deed of Trust to the lien or charge of Lender's Deed of Trust, and shall supersede and cancel, but only insofar as would affect the priority of Lender's Deed of Trust, any prior agreements as to such subordination, including, without limitation, those provisions, if any, contained in Subordinate Lender's deed of trust which provide for the subordination of the deed of trust to a deed or deeds of trust or to a mortgage or mortgages.

Section 3. Lien Subordination.  Subordinate Lender intentionally and unconditionally waives, relinquishes and subordinates all of Subordinate Lender's right, title and interest in and to the Property to the lien or charge of Lender's Deed of Trust, upon the Property and understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination, specific loans and advances are being and will be made by Lender and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination.

Section 4. Rights Upon Insolvency. In the event of (1) any insolvency, bankruptcy, receivership, liquidation, reorganization, arrangement, assignment for the benefit of creditors, or other similar proceeding relative to the Owner or its property (as defined in the Loan Agreement), or (2) any proceeding for the voluntary or involuntary liquidation, dissolution or other winding up of the Owner whether or not involving insolvency or bankruptcy proceedings, then and in any such event:

(a) the principal amount of, and all interest on, and all other amounts in respect of, the Senior Debt (including interest thereon accruing after the commencement of any such proceeding, whether or not such interest shall be allowed in such proceeding) shall be paid in full before any payment or distribution of any character, whether in cash, securities or other property, shall be made in respect of the Subordinated Debt; and

(b) any payment or distribution of any character, whether in cash, securities or other property, which would otherwise (but for the terms hereof) be payable or deliverable in respect of Subordinated Debt (including any payment or distribution in respect of the Subordinated Debt by reason of any other indebtedness of the Owner being subordinated to the Subordinated Debt), shall be paid or delivered directly to the Lender, or its representatives, until the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt shall have been paid in full and the Subordinate Lender or any other holder of the Subordinated Debt

2

CRESTLLOYD 000323

4

irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, conservators and others having authority in the premises to effect all such payments and deliveries.

**Section 5. Owner Obligations.** Owner agrees that, in the event that any note or other obligation of the Owner not evidencing Senior Debt, or any portion thereof, shall become due and payable before its expressed maturity for any reason, Owner will give prompt notice, in writing, of such occurrence to the Lender.

**Section 6.      Rights of Lender.**

(a)      Subordinate Lender further declares, agrees and acknowledges for the benefit of the Lender, that Lender, in making disbursement pursuant to the Loan Agreement (whether obligatory or optional), is under no obligation or duty to, nor has Lender represented that it will, see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds, an any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part.

(b)      Except as otherwise provided herein, so long as any of the Senior Debt shall remain unpaid, Lender may at all times exercise any and all powers and rights which it now has or may hereafter acquire with respect to the Loan Agreement, any other security instrument, including, but not limited to deed of trust or mortgage, Collateral Security Agreement, or Membership Interest Pledge Agreement (collectively, "Security Document"), or any of the collateral subject to the Loan Agreement or any other Security Document without having to obtain any consent or approval of the Subordinate Lender and without any accountability to the Subordinate Lender, nor shall it have any liability to the Subordinate Lender for any action taken or failure to act with respect to this Agreement, the Loan Agreement, any other Security Document or the aforesaid collateral.

**Section 7. Constructive Trust.** If, notwithstanding the provisions of this Agreement, any payment or distribution of any character (whether in cash, securities or other property) shall be received by the Subordinate Lender in contravention of the terms of this Agreement, such payment or distribution shall not be commingled with any asset of the Subordinate Lender, but shall be held in trust for the benefit of, and shall be paid over or delivered and transferred to, the Lender, or its representatives or agents, for application to the payment of all Senior Debt remaining unpaid, until the principal amount of, and all interest and premium (including interest thereon accruing after the commencement of any proceedings described herein) on, and all other amounts in respect of, the Senior Debt shall have been paid in full.

**Section 8.      Successors and Assigns.** This Agreement, without further reference, shall pass to and may be relied on and enforced by any transferee or subsequent holder of the Senior Debt and the Subordinated Debt.

**Section 9. Modification.** The terms of this Agreement, the subordination effectuated hereby, and the rights of the Lender and the obligations of the Subordinate Lender arising hereunder, shall not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Loan Agreement, any other Security Document or any other instrument or document executed or delivered pursuant thereto.

**Section 10. Notices.** All notice, consents, approvals, requests, demands, instruments or other communications to be made, given or furnished pursuant to, under or by virtue of their Agreement (each, a "Notice") shall be in writing and shall be deemed given or furnished if addressed to the party intended to receive the same at the address or such party as set forth below (i) upon receipt when personally delivered at such address, or (ii) one (1) business day after the date of delivery of such notice to a nationwide, reputable commercial courier service:

3

CRESTLLOYD 000324

5

| Lender: | HANKEY CAPITAL, LLC |
|---|---|
| | 4751 Wilshire Blvd., Suite 110 |
| | Los Angeles, CA 90010 |
| | Attention: Eugene M. Leydiker |
| | |
| Subordinate Lender: | INFERNO INVESTMENT INC. |
| | 95-4 Chemin de Kandahar |
| | Mont-Tremblant, Quebec J8E 1E2 |
| | |
| Owner: | CRESTLLOYD, LLC |
| | c/o Skyline Development |
| | 8981 W. Sunset Blvd., Suite 303 |
| | West Hollywood, CA 90069 |
| | Attn: Nile Niami |

Any party may change the address to which any notice is to be delivered to any other address within the United States of America by furnishing written notice of such change at least fifteen (15) days prior to the effective date of such change to the other parties in the manner set forth above, but no such notice of change shall be effective unless and until received by such other parties. Notices may be given on behalf of any party by its attorneys.

Section 11. **Miscellaneous.** This Agreement may not be amended or modified orally but may be amended or modified only in writing, signed by all parties hereto. No waiver of any term or provision of this Agreement shall be effective unless it is in writing, making specific reference to this Agreement and signed by the party against whom such waiver is sought to be enforced. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. This Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

Section 12. **Definitions.** Terms used in this Agreement and not defined herein shall have the respective meanings ascribed to them in the Loan Agreement. The recitals hereto shall be a part of this Agreement.

Section 13. **Termination.** This Agreement shall terminate upon the final and indefeasible payment in full of the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt.

Section 14. **Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS AGREEMENT, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT HERETO.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof.

4

CRESTLLOYD 000325

NOTE: THIS AGREEMENT MAY BE EXECUTED IN COUNTERPARTS.

[SIGNATURES COMMENCE ON THE FOLLOWING PAGE.]

5

CRESTLLOYD 000326

**OWNER:**

CRESTLLOYD, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                    }

County of LOS ANGELES }

On Oct 86 30 2018 before me, Nigel Gibbs, Notary Public
         Date                                      Here Insert Name and Title of the Officer

Personally Appeared Nile Niami
                                    Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
                Signature of Notary Public

6

CRESTLLOYD 000327

SUBORDINATE LENDER:

INFERNO INVESTMENT INC.

By:
Name:  Julien Remillard
Title:  Director

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California                                )

County of _____)

On_____before me, _____
        Date                                              Here Insert Name and Title of the Officer
Personally Appeared _____
                                              Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
                              Signature of Notary Public

7

CRESTLLOYD 000328



**CALIFORNIA ACKNOWLEDGMENT**                                CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES

On OCTOBER 30 2018 before me, Nigel Gibbs Notary Public
              Date                              Here Insert Name and Title of the Officer
personally appeared Julien Remilland
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

> NIGEL GIBBS
> Notary Public - California
> Los Angeles County
> Commission # 2184239
> My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

Place Notary Seal and/or Stamp Above

------------------------------ **OPTIONAL** ------------------------------

Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: Subordination Agreement
Document Date: 10/25/18 _____ Number of Pages: 10
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| □ Corporate Officer – Title(s): _____ | □ Corporate Officer – Title(s): _____ |
| □ Partner – □ Limited □ General | □ Partner – □ Limited □ General |
| □ Individual □ Attorney in Fact | □ Individual □ Attorney in Fact |
| □ Trustee □ Guardian or Conservator | □ Trustee □ Guardian or Conservator |
| □ Other: _____ | □ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

©2018 National Notary Association

Non-Order Search                    Page 9 of 12          Requested By: Shivanna.Sampangi, Printed: 12/3/2021 8:02 PM
Doc: CALOSA.2018 03122920

CRESTLLOYD 000329

10

LENDER:

HANKEY CAPITAL, LLC

By: _____
W. Scott Dobbins, President

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )

County of Los Angeles      )

On November 1, 2018   before me,   T. Douglas, Notary Public
Date                            Here insert Name and Title of the Officer
Personally Appeared   W. Scott Dobbins
                        Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.



T. DOUGLAS
Notary Public - California
Los Angeles County
Commission # 2164212
My Comm. Expires Mar 22, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

8

CRESTLLOYD 000330

ſ

## EXHIBIT "A"

### PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF
THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY,
30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07"
WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE
LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A
RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE
WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE
NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF
03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE
SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE
NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL
ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE
BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS
OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST
208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING
A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST
42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40
FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

9

CRESTLLOYD 000331

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS
OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET
FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID
WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

10

CRESTLLOYD 000332

# EXHIBIT 2

1   DAVID B. GOLUBCHIK (State Bar No. 185520)
    TODD M. ARNOLD (State Bar No. 221868)
2   JOSEPH M. ROTHBERG (State Bar No. 286363)
    LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3   2818 La Cienega Avenue
    Los Angeles, California 90034
4   Telephone: (310) 229-1234
    Facsimile: (310) 229-1244
5   Email: DBG@LNBYG.COM; TMA@LNBYG.COM; JMR@LNBYG.COM
6

7   Attorneys for Defendant and Cross-Claimant
    Crestlloyd, LLC, the debtor and debtor-in-possession

8           **UNITED STATES BANKRUPTCY COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10           **LOS ANGELES DIVISION**

11

| | |
|---|---|
| In re | Case No.: 2:21-bk-18205-DS |
| CRESTLLOYD, LLC, | Chapter 11 |
|     Debtor and Debtor-in-Possession | Adv. Proceeding No.: 2:22-ap-01125-DS |

12

13

14

15

16

17   INFERNO INVESTMENT, INC., a
    Quebec corporation,

18

19        Plaintiff,

20   v.

21   CRESTLLOYD, LLC, a California
    limited liability company; HANKEY
22   CAPITAL LLC, a California limited
    liability company, YOGI SECURITIES
23   HOLDINGS, LLC, a Nevada limited
    liability Company; and HILLDUN
24   CORPORATION, a NEW YORK
    CORPORATION,
25
        Defendants.

**DEFENDANT CRESTLLOYD LLC'S CROSS-CROMPLAINT FOR:**

1. **Recharacterization of Debt as Equity (Inferno Investment, Inc.) [11 U.S.C. §502];**

2. **Equitable Subordination (Inferno Investment Inc.) [11 U.S.C. §510]**

3. **Declaratory Relief (Inferno Investment, Inc.)**

4. **Breach of Fiduciary Duty (Nile Niami, Yvonne Niami, and Ground View LLLP);**

5. **Disallowance of Claim (Nile Niami and Yvonne Niami) [11 U.S.C. §502(b)(1), (b)(4), and (d)];**

26

27

28

1

CRESTLLOYD, LLC, a California
limited liability company

2

      Cross-Claimant,

3

v.

4

INFERNO INVESTMENT, INC., a
Quebec Corporation; NILE NIAMI, an
individual; YVONNE NIAMI, an
individual, GROUND VIEW LLLP, A
Nevada Limited Liability Limited
Partnership, 1369 LONDONDERRY
ESTATE LLC, a California limited
liability company; MARBELLA
CONSTRUCTION INC., a California
limited liability company;
N:PHILANTHROPY LLC, a California
Limited Liability Company; YOGI
SECURITIES HOLDINGS, LLC, a
Nevada limited liability Company;
TROUSDALE ESTATE, LLC, a
Nevada limited liability Company;
JOSEPH ENGLANOFF, an individual,
JUSTINE ENGLANOFF, an individual,
NICOLE ENGLANOFF , an individual,
JACQUELINE ENGLANOFF, an
individual, HILLDUN
CORPORATION, a NEW YORK
CORPORATION.

5

6

7

8

9

10

11

12

13

14

15

16

      Cross-Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

6. **Avoidance of Actual Fraudulent Transfers (1369 Londonderry Estate LLC; Marbella Construction Inc., N:Philanthropy LLC) [11 U.S.C. § 548(a)(1)(A), and 11 U.S.C. § 550]**

7. **Avoidance of Actual Fraudulent Transfers (1369 Londonderry Estate LLC; Marbella Construction Inc., N:Philanthropy LLC) [Cal. Civ. Code § 3439.04]**

8. **Avoidance of Constructive Fraudulent Transfers (1369 Londonderry Estate LLC; Marbella Construction Inc., N:Philanthropy LLC) [11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550];**

9. **Avoidance of Constructive Fraudulent Transfers (1369 Londonderry Estate LLC; Marbella Construction Inc., N:Philanthropy LLC) [Cal. Civ. Code § 3439.05];**

10. **Equitable Indemnification (Nile Niami, Yvonne Niami, Ground View LLLP, and N:Philanthropy LLC)**

11. **Recharacterization of Debt as Equity (Yogi Securities Holdings LLC) [11 U.S.C. §502];**

12. **Equitable Subordination (Yogi Securities Holdings LLC) [11 U.S.C. §510];**

13. **Avoidance of Actual Fraudulent Transfers (Yogi Securities Holdings, LLC; Trousdale Estate LLC; Joseph Englanoff; [11 U.S.C. § 548(a)(1)(A) and 11 U.S.C. § 550];**

14. **Avoidance of Actual Fraudulent Transfers (Yogi Securities Holdings, LLC; Trousdale Estate LLC; Joseph Englanoff; [Cal. Civ. Code § 3439.04];**

2

15. **Avoidance of Constructive Fraudulent Transfers (Yogi Securities Holdings, LLC; Trousdale Estate LLC; Joseph Englanoff; [11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550];**

16. **Avoidance of Constructive Fraudulent Transfers (Yogi Securities Holdings, LLC; Trousdale Estate LLC; Joseph Englanoff; [Cal. Civ. Code § 3439.05];**

17. **Avoidance of Actual Fraudulent Transfer (Justine Englanoff; Nicole Englanoff; Jacqueline Englanoff) [11 U.S.C. § 548(a)(1)(A) and 11 U.S.C. § 550];**

18. **Avoidance of Actual Fraudulent Transfer (Justine Englanoff; Nicole Englanoff; Jacqueline Englanoff) [Cal. Civ. Code § 3439.04];**

19. **Avoidance of Constructive Fraudulent Transfer (Justine Englanoff; Nicole Englanoff; Jacqueline Englanoff) [11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550];**

20. **Avoidance of Constructive Fraudulent Transfer (Justine Englanoff; Nicole Englanoff; Jacqueline Englanoff) [Cal. Civ. Code § 3439.05];**

21. **Disallowance of Claim (Yogi Securities Holdings LLC) [11 U.S.C. §502(b)(1), and (d)];**

22. **Avoidance of Constructive Fraudulent Transfers (Hilldun Corporation) [11 U.S.C. § 11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 550]**

23. **Avoidance of Constructive Fraudulent Transfers (Hilldun Corporation) [Cal. Civ. Code § 3439.05]**

24. **Disallowance of Claim (Hilldun Corporation) [11 U.S.C. §502(b)(1), and (d)];**

3

**25. Recovery of Fraudulent Transfers [ 11 U.S.C. § 544, 11 U.S.C. § 548 and 11 U.S.C. § 550].**

Debtor Crestlloyd, LLC (referred to herein as "Crestlloyd", the "Debtor" or "Cross-Claimant"), hereby complains and alleges against Cross-Defendants Inferno Investment Inc., Nile Niami, Yvonne Niami, Ground View LLLP, 1369 Londonderry Estate LLC, Marbella Construction Inc., N:Philanthropy LLC, Yogi Securities Holdings LLC, Trousdale Estate LLC, Joseph Englanoff, Justine Englanoff, Nicole Englanoff, Jacqueline Englanoff, Hilldun Corporation, and DOES 1 – 25 (collectively, the "Cross-Defendants") as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this Cross-Complaint pursuant to 11 U.S.C. §§ 502, 510, 548, and 550, and 28 U.S.C. §§ 157(b)(1), 157(b)(2)(B), 157(b)(2)(H), 157(b)(2)(O) and 1334.

2.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    This action is a core proceeding pursuant to 11 U.S.C. §§ 502, 510, 548, 550, and in accordance with 28 U.S.C. §§ 157(b)(1), 157(b)(2)(B), 157(b)(2)(H), 157(b)(2)(O).

4.    Pursuant to Local Bankruptcy Rule 7008-1, Crestlloyd consents to the entry of a final order or judgment on this Cross-Complaint by this Court.

## SUMMARY OF CLAIMS

5.    By and through this Cross-Complaint, Debtor Crestlloyd seeks to recharacterize certain debts as equity; equitably subordinate certain debts; recover fraudulent conveyances from certain Cross-Defendants; and pursue breach of fiduciary duty claims against Crestlloyd's former principals, Nile Niami and Yvonne Niami and their related entities.  As set forth in detail below, each of the Cross-Defendants may be thought of as falling into one of four groups, all of

/ / /

which intersect through their dealings with Crestlloyd: (1) the Inferno Parties; (2) the Niami Parties; (3) the Englanoff Parties; and (4) Hilldun Corporation.

6.    Crestlloyd seeks to recharacterize the alleged debts owing to Inferno Investment Inc. ("Inferno") as equity, not debt, given the conduct and actions taken by the parties as well as the unequivocal language in the agreement of the parties set forth in the Memorandum of Agreement (the "MOA").   On information and belief, the series of agreements between Crestlloyd and Inferno allowed Inferno's to capture the "upside" of completed real estate transactions by Crestlloyd.   On information and belief, the relationship between Inferno and Crestlloyd was not intended by the parties to be one of a "creditor-debtor" lending arrangement, but rather a partnership or joint venture.   Alternatively, Crestlloyd seeks to equitably subordinate Inferno's debt due to the express terms of the MOA providing that Crestlloyd and Inferno were to be paid last, and at the same time.   Finally, Crestlloyd seeks to have the Court confirm the effectiveness of the MOA that Inferno referenced throughout Inferno's Complaint.

7.    Crestlloyd seeks to recover from Nile Niami, his wife, Yvonne Niami, and their entity Ground View LLLP for breach of fiduciary duty due to their actions saddling Crestlloyd with additional and in some instances improper debts, or otherwise diverting and misappropriating funds from Crestlloyd, to the detriment of Crestlloyd and its creditors. Crestlloyd seeks to disallow their claim based upon the Niami Parties' conduct.   Additionally, Crestlloyd seeks to recover from three other Nile Niami related entities, namely 1369 Londonderry Estates LLC, Marbella Construction, Inc., and N:Philanthropy LLC, for certain funds fraudulently transferred to them, or improperly guaranteed to them as further discussed below.

8.    Crestlloyd also seeks to recharacterize the alleged debts owing to Yogi Securities Holdings LLC ("Yogi") as equity, not debt.   On information and belief, the claimed debts of Yogi rely on a series of agreements between Crestlloyd and Yogi, all of which reveal Yogi's ability to completely control the disposition of secured collateral that Nile Niami pledged toward those loans from Yogi.   Furthermore, Yogi, Crestlloyd, and Nile Niami, and each of them, habitually blurred the lines between various corporate entities, and used Crestlloyd's property

1  to secure the debts of other entities that Yogi made loans to, which provide no value to

2  Crestlloyd. The result as that there was not a true "creditor-debtor" lending arrangement

3  between Yogi and Crestlloyd, but rather a partnership or joint venture. Crestlloyd otherwise

4  seeks to equitably subordinate Yogi's claims due to the various fraudulent conveyances that

5  Yogi orchestrated, as described in further detail herein.

6       9.    Crestlloyd seeks to recover fraudulent transfers from Yogi; Yogi's sister company

7  Trousdale Estate, LLC ("Trousdale"); Yogi's principal, Joseph Englanoff ("Englanoff"); and

8  three individuals believed to be Englanoff's children, Justine Englanoff; Nicole Englanoff, and

9  Jacqueline Englanoff (the "Englanoff Children"). The transfers in question were for no

10  exchange of any value and are related to the sale of certain real properties and the distribution

11  of proceeds in a manner designed to benefit Yogi, Trousdale, and each of the Englanoffs, and to

12  the detriment of Crestlloyd. As described in further detail herein, the payoff statements from

13  the sales of these real properties shows funds being diverted to Yogi, and/or the Englanoff

14  children to the detriment of Crestlloyd.

15       10.    Finally, Crestlloyd seeks to recover fraudulent transfers from Hilldun Corporation

16  ("Hilldun"). Hilldun's claim in this matter appears to be for a guarantee that Crestlloyd made

17  in support of the debts of another one of the Niami controlled entities. However, on information

18  and belief, Crestlloyd received no value for said guarantee, let alone any reasonably equivalent

19  value.

20                      **PARTIES TO THE ACTION**

21     **A.**    **Counter-Complainant**

22       11.    Cross-Complainant Debtor Crestlloyd a California limited liability company, and

23  is the Chapter 11 Debtor in possession in this bankruptcy case.

24     **B.**    **Counter-Defendants**

25         **1.**    **The Inferno Parties**

26       12.    Crestlloyd is informed and believes and based thereon alleges that Plaintiff and

27  Cross-Defendant Inferno is a Quebec corporation who has conducted business within and has

28  / / /

submitted to the jurisdiction of this Court.  Inferno filed proof of claim no. 10 in Crestlloyd's

bankruptcy (the "<u>Inferno Claim</u>").

### 2.    The Niami Parties

13.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Nile Niami is an individual residing in Los Angeles County, is the founder  of Crestlloyd, and at all times relevant was the Manager of Crestlloyd.

14.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Yvonne Niami is an individual residing in Los Angeles County, and through Ground View LLLP became the sole member of Crestlloyd.  Yvonne Niami and Nile Niami are spouses and submitted creditors claim no. 22 in Crestlloyd's bankruptcy case (the "<u>Niami Claim</u>").

15.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Ground View LLLP ("<u>Ground View</u>") is a Nevada Limited Liability Limited Partnership, owned and controlled by Nile Niami and Yvonne Niami.  From December 27, 2010 onward, Ground View was listed as the member of Crestlloyd, with Nile Niami as Crestlloyd's manager.  Crestlloyd is informed and believes and based thereon alleges that Yvonne Niami is the 1% general partner and 99% limited partner of Ground View.

16.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant 1369 Londonderry Estate LLC ("<u>1369 LE</u>") is a California limited liability company, owned and controlled by Nile Niami.

17.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Marbella Construction, Inc. ("<u>Marbella</u>") is a California corporation owned and controlled by Nile Niami.

18.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant N:Philanthropy LLC. ("<u>N:Philanthropy</u>") is a California limited liability company, owned and controlled by Yvonne Niami.

19.    Crestlloyd is informed and believes, and thereon alleges that at all times mentioned herein, that Ground View, 1369 LE, Marbella, and  N:Philanthropy, and each of them, was and is the agent, servant, employee, representative and/or alter ego of one another

and of both Nile Niami and Yvonne Niami, or otherwise was acting in concert with one another, and in that capacity aided and abetted, and in doing the things alleged herein, was acting within the scope of their authority as such agent, servant, employee, representative, alter ego and/or aider and abettor, with the advance knowledge, acquiescence, or subsequent ratification of each of the other.

20.    Crestlloyd is informed and believes, and thereon alleges that Ground View, 1369 LE, Marbella, N: Philanthropy, Nile Niami and Yvonne Niami  and each of them, are responsible, negligently, intentionally and/or in some actionable manner, including as corporate successors liable for the acts of their predecessors, for the events referred to herein, and caused and continue to cause injuries and damages legally to Crestlloyd, as alleged, either through each of  their own conduct, or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

### 3.    The Englanoff Parties

21.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Yogi is a Nevada limited liability company owned and controlled by Englanoff who has conducted business within and has submitted to the jurisdiction of this Court.  Yogi filed proof of claim no. 27 in Crestlloyd's bankruptcy (the "Yogi Claim").

22.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Trousdale is a Nevada limited liability company, owned and controlled by Englanoff who has conducted business within and has submitted to the jurisdiction of this Court.

23.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Joseph Englanoff is an individual residing in Los Angeles County, California.

24.    Crestlloyd is informed and believes, and thereon alleges that at all times mentioned herein, that Englanoff, Yogi, and Trousdale, , and each of them, was and is the agent, servant, employee, representative and/or alter ego of one another and/or otherwise was acting in concert with them, aided and abetted, and in doing the things alleged herein, was acting within the scope of their authority as such agent, servant, employee, representative, alter ego and/or

aider and abettor, with the advance knowledge, acquiescence, or subsequent ratification of each of the other, Crestlloyd is informed and believes, and thereon alleges that Englanoff, Yogi, and Trousdale, and each of them, are responsible, negligently, intentionally and/or in some actionable manner, including as corporate successors liable for the acts of their predecessors, for the events referred to herein, and caused and continue to cause injuries and damages legally to Crestlloyd, as alleged, either through each of their own conduct, or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

25.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Justine Englanoff is an individual whose domicile is presently unknown to Crestlloyd, and is a child of Yogi's principal, Joseph Englanoff.  On information and belief, Justine Englanoff received funds directly from the sale of one of Crestlloyd's real properties.

26.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Nicole Englanoff is an individual whose domicile is presently unknown to Crestlloyd, and is a child of Yogi's principal, Joseph Englanoff.  On information and belief, Nicole Englanoff received funds directly from the sale of one of Crestlloyd's real properties.

27.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Jacqueline Englanoff is an individual whose domicile is presently unknown to Crestlloyd, and is a child of Yogi's principal, Joseph Englanoff.  On information and belief, Jacqueline Englanoff received funds directly from the sale of one of Crestlloyd's real properties.

28.    Justine Englanoff, Nicole Englanoff, and Jacqueline Englanoff shall be referred to herein, collectively, as the "Englanoff Children".

29.    Yogi, Trousdale, Joseph Englanoff, and the Englanoff Children shall be referred to throughout this Cross-Complaint as the "Englanoff Parties"

### 4.    Hilldun Corporation

30.    Crestlloyd is informed and believes and based thereon alleges that Cross-Defendant Hilldun Corporation is a New York Corporation, engaged in the factoring receivables business, a type of financing arrangement.  Hilldun filed proof of claim no. 9 in Crestlloyd's

bankruptcy case (the "Hilldun Claim"), has conducted business within this Court's jurisdiction, and has submitted to the jurisdiction of this Court in Crestlloyd's bankruptcy.

## GENERAL ALLEGATIONS

31.    Nile Niami is an individual who was involved in developing real estate in the Los Angeles area and used various of his entities to do so.  One of the entities Mr. Niami formed to develop real estate included the Debtor, Crestlloyd.

32.    According to Crestlloyd's Operating Agreement and the subsequent amendments, Nile Niami initially founded Crestlloyd and was the sole member up to around December 27, 2010, when Ground View became the member.

33.    Despite the "on paper" change in membership of Crestlloyd, Nile Niami at all times retained his title as manager of Crestlloyd.  Subsequent amendments to Crestlloyd's operating agreement such as Amendment No. 3 to the Operating Agreement dated February 12, 2013, explicitly state that "Notwithstanding the fact that Nile Niami has transferred his interest in the Company and is no longer a Member, Nile Niami remains as the sole Manager of the Company and, acting alone, has full power and authority to bind the Company in any and all matters in which the Company is involved."

34.    Crestlloyd was in the business was developing high-end luxury homes in the Los Angeles area.  To this end, Crestlloyd engaged in a series of transactions with several other companies in order to obtain the financial resources to engage in this business .  Two of these entities who provided financing to Crestlloyd were Inferno and Yogi.

35.    On or about December 12, 2012, Crestlloyd acquired its interest in the real property located at 1175 N. Hilcrest Road, Beverly Hills, CA 90210 (the "Hillcrest Property")

36.    On or about December 31, 2012, Crestlloyd acquired its interest in  the real property located at 944 Airole Way, Los Angeles, CA 90077 (the "Airole Property").  The Airole Property, sometimes referred as "the One" was sold pursuant to this Court's sale order entered earlier this year on March 28, 2022 [ECF Docket No. 247].

/ / /

/ / /

**A.    Crestlloyd's Dealings with Inferno**

37.    In connection with the financing provided by Inferno, Crestlloyd signed a promissory note in favor of one Inferno Realty LP on or about March 13, 2013 (the "March 13, 2013 Note"). A true and correct copy of the March 13, 2013 Note is attached hereto as **Exhibit 1** and incorporated by reference herein.

38.    The March 13, 2013 Note includes no hard maturity date, but rather was considered "payable without demand and/or notice on the date of the close of escrow for the sale of" the Airole Property.

39.    Crestlloyd is informed and believes and based thereon alleges that Inferno Realty LP, along with Maybach Holdings Corporation, Inc., later assigned their interests in the March 13, 2013 Note to Inferno. Inferno has admitted this in paragraph 16 of its Complaint.

40.    Inferno has, additionally, alleged in paragraph 17 of its Complaint [ECF Docket No. 360 commencing this Adversary Proceeding (the "Inferno Complaint")] that the averred $14,040,000 balance due and owing from Crestlloyd to Inferno was reduced by over 50%, to $7,000,000, "as an accommodation to debtor, and without receiving consideration."

41.    Crestlloyd subsequently entered into multiple subordination agreements with Inferno relating to the March 13, 2013 Note. Two of those subordination agreements are of particular import in this action.

42.    Inferno and Crestlloyd entered into the MOA on or about January 1, 2016, which Inferno attached as Exhibit 1 to the Inferno Complaint. A true and correct copy of the MOA is attached hereto as **Exhibit 2** and incorporated by reference herein. Crestlloyd hereby alleges that the MOA is valid and fully binding upon both Inferno and Crestlloyd.

43.    After the MOA, Inferno and Crestlloyd entered into a subordination agreement on or about October 30, 2018 (the "Inferno Subordination Agreement"), wherein Inferno's claims were subordinated to Hankey Capital LLC ("Hankey"). A true and correct copy of the Inferno Subordination Agreement is attached hereto as **Exhibit 3** and incorporated by reference herein. Crestlloyd hereby alleges that the Inferno Subordination Agreement is also valid and fully binding upon both Inferno and Crestlloyd.

44.    In the MOA's Recitals, the MOA sets forth the "respective rights" of Crestlloyd and Inferno "with regard to distribution of proceeds at such time as the residence [i.e., the Airole Property] being constructed by Crestlloyd. . ." "is sold."

45.    Although Inferno claims that the relationship between Crestlloyd and Inferno is one of a creditor-debtor type relationship, the MOA provides otherwise; to wit: in paragraph 2 of the MOA, the *profits* realized by selling the Airole Property may be divided among Inferno and Crestlloyd, and sets no particular maturity date or repayment schedule; and in paragraph 3 that Crestlloyd and Inferno are to be paid from the proceeds received from the sale of the Airole Property only *after* repayment of loans obtained from banks or third parties, excluding Crestlloyd and Inferno.

46.    Accordingly, Crestlloyd is informed and believes and based thereon alleges that just like the March 13, 2013 Note, the MOA is structured as a partnership agreement or joint-venture and not a loan which would create a creditor - debtor relationship.

47.    There were subsequent amendments to the MOA, which, *inter alia,* provided for payments to Inferno in exchange for further subordination of its original interest in the Airole Property.  On information and belief, Crestlloyd alleges that in each of these subsequent amendments, Inferno never disavowed the entirety of the MOA or otherwise challenged its terms.  Instead, Crestlloyd is informed and believes and based thereon alleges that in each of the amendments, Inferno specifically ratified the MOA, and Inferno stated that all unmodified terms and provisions of the MOA "shall remain in full force and effect." [See **Exhibits 4 and 5** identified below].

48.    For example, Amendment No. 1 to the MOA was entered into between Crestlloyd and Inferno in July of 2016.  A true and correct copy of that Amendment No. 1 to the MOA is attached hereto as **Exhibit 4** and incorporated by reference herein.  Amendment No. 1 to the MOA specifically states that except for a further subordination and an adjustment to the "percentage of profits" split between Crestlloyd and Inferno, "all of the terms and provisions of the Memorandum of agreement shall remain in full force and effect."

/ / /

49.    Amendment No. 2 to the MOA was entered into between Crestlloyd and Inferno on or about September 28, 2016 and has similar provisions.  A true and correct copy of Amendment No. 2 to the MOA is attached hereto as **Exhibit 5** and incorporated by reference herein.  Amendment 2 to the MOA allowed for further subordination of Inferno's debt, in exchange for an immediate payment to Inferno of $2,000,000.  Once again, Amendment 2 to the MOA states that "all of the terms and provisions of the Memorandum of Agreement as previously amended shall remain in full force and effect."

50.    Amendment No. 3 to the MOA was entered into between Crestlloyd and Inferno on or about March 29, 2018, and also has similar provisions.  A true and correct copy of Amendment No. 3 to the MOA is attached hereto as **Exhibit 6** and incorporated by reference herein.  Amendment 3 to the MOA rendered null and void an earlier "Amendment No. 3" to the MOA.  Once again, Amendment 3 to the MOA states that "all of the terms and provisions of the Memorandum of Agreement as previously amended shall remain in full force and effect."

51.    Crestlloyd is informed and believes and based thereon alleges that the MOA, as amended by Amendments 1, 2 and 3 remains in full force and effect.

B.    **Crestlloyd's Dealings with Yogi and the Englanoff Parties**

1.    **The August 9, 2017 Yogi Note and Wrongful Diversion of Closing Funds**

52.    Crestlloyd is informed and believes and based thereon alleges that the financial dealings between Mr. Niami and Joseph Englanoff go back several years, at least to August 9, 2017, when Mr. Niami caused Crestlloyd to execute a promissory note in favor of Yogi for $1,800,000 (the "August 9, 2017 Yogi Note") which was later Amended on April 13, 2018 (the "April 13, 2018 Amendment").  True and correct copies of the August 9, 2017 Yogi Note and the April 13, 2018 Amendment are collectively attached hereto as **Exhibit 7** and incorporated by reference herein.

53.    Crestlloyd is informed and believes and based thereon alleges that the "Property" referenced as security in the August 9, 2017 Yogi Note was the Hillcrest Property, and was not related to or otherwise in connection with the Airole Property or any other property.

54.     Crestlloyd is informed and believes and based thereon alleges that the loan referenced in the August 9, 2017 Yogi Note closed on or about August 17, 2017.  A true and correct copy of the Borrower's Final Closing Statement for the loan referenced in the August 8, 2017 Yogi Note is attached hereto as **Exhibit 8** and incorporated by reference herein.

55.     Crestlloyd is informed and believes and based thereon alleges that, according to the Borrower's Final Closing Statement, when the August 9, 2017 Yogi Note on the Hillcrest Property closed, there were three disbursements made to in the amount of $21,000 each: to Justine Englanoff; to Nicole Englanoff; and to Jacqueline Englanoff.

56.     Crestlloyd is informed and believes and based thereon alleges that there was no legitimate business purpose to providing the Englanoff Children with $21,000 each from the sale of the Hillcrest Property, and no such purpose has been provided.

57.     Crestlloyd is informed and believes and based thereon alleges that the $63,000 paid to the Englanoff Children were wrongfully diverted from Crestlloyd, and should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts.

### 2.     The May 22, 2018 Yogi Note

58.     Crestlloyd is informed and believes and based thereon alleges that on or about May 22, 2018, Mr. Niami caused Crestlloyd to execute another secured promissory note in favor of Yogi, in the amount of $17,488,900 (the "May 22, 2018 Yogi Note").  A true and correct copy of the May 22, 2018 Yogi Note is attached hereto as **Exhibit 9** and incorporated by reference herein.

59.     The May 22, 2018 Yogi Note, by its terms, was secured by the Hillcrest Property, the Airole Property, and another real property located at 301 Copa de Oro Road, Los Angeles, California, 90077 (the "Copa de Oro Property").

60.     Crestlloyd is informed and believes and based thereon alleges that Crestlloyd never had any ownership interest in the Copa de Oro Property, and that instead it was owned by another entity owned and controlled by Mr. Niami and/or his wife.

/ / /

/ / /

61. Crestlloyd is informed and believes and based thereon alleges that Yogi and/or Joseph Englanoff either knew or should have known that Crestlloyd did not own the Copa de Oro Property at the time the May 22, 2018 Yogi Note was executed.

62. Crestlloyd is informed and believes and based thereon alleges that Yogi proceeded with the May 22, 2018 Yogi Note, referencing the Copa de Oro Property as collateral even though Crestlloyd did not own it, did not respect the corporate formalities between Crestlloyd and Mr. Niami's other business entities.

63. Crestlloyd is informed and believes and based thereon alleges that the corporate formalities between Crestlloyd and Nile Niami's other entities were not respected in these transactions because the two parties were in a partnership or joint-venture with one another to develop several different high-end residential real estate properties, and it therefore did not matter to Joseph Englanoff which properties were being pledged as collateral to secure various loans between him and Nile Niami, as long as Joseph Englanoff believed that he was being provided adequate security from any source.

64. The May 22, 2018 Yogi Note provides, *inter alia,* in paragraph 10, a clause called "Due on Sale and Encumbrance." This clause states in pertinent part, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered "without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion."

65. Crestlloyd is informed and believes and based thereon alleges that the grant of "sole and complete discretion" to Yogi by Crestlloyd in the May 22, 2018 note further evidences that the relationship between Crestlloyd and Yogi was not a traditional debtor/creditor relationship, but was one of a more wide-ranging partnership / joint-venture to develop several properties.

### 3. The October 16, 2018 Yogi Note

66. Yogi submitted proof of claim number 27 in this bankruptcy case. Attached to Yogi's claim number 27, is a document titled "Secured Promissory Note" in the amount of $30,188,235, dated October 16, 2018 (the "October 16, 2018 Yogi Note"). A true and correct

1    copy of the October 16, 2018 Yogi Note is attached hereto as **Exhibit 10** and incorporated by

2    reference herein.

3        67.    Crestlloyd is informed and believes and based thereon alleges that the October 16,

4    2018 Yogi Note purports to be secured to several properties as collateral, which properties are

5    listed in section 3 of that note.  However, only two of the properties listed as collateral by Yogi

6    in the October 16, 2018 Yogi Note actually belonged to Crestlloyd (the Hillcrest Property and

7    the Airole Property).  The other four properties that were conveyed as collateral in support of

8    the  $30,000,000 October 16, 2018 Yogi Note were owned by other entities, each of which in

9    turn was owned and controlled by Nile Niami.  These include the following four properties:

10            a.    10701 Bellagio Road, Los Angeles, CA 90077, (the "Bellagio Property")

11                    which was owned by 10701 Bellagio Road LLC until on or about April 9,

12                    2021, at which time it was conveyed to third party Asset 1 Holdings LLC.

13                    On information and belief, Bellagio Road LLC is another entity owned by

14                    Nile Niami.

15            b.    1369 Londonderry Place, Los Angeles, CA 90077 (the "Londonderry

16                    Property"), which was owned by Cross-Defendant 1369 LE until on or

17                    about July 9, 2021, at which time it was conveyed to Londonderry Property

18                    LLC;

19            c.    3381 Stone Ridge Lane, Los Angeles, CA 90077 (the "Stone Ridge

20                    Property"), which was owed by Cross-Defendant Marbella until on or

21                    about July 24, 2020, at which time it was conveyed to third party Li Jing

22                    CCA Living Trust.

23            d.    677 Carcassonne Road, Los Angeles, CA 90077, the ("Carcassonne

24                    Property") which was owned by Carcassonne Fine Homes, LLC until

25                    approximately April 16, 2021, at which time it was conveyed to third party

26                    Carcassonne BA Properties LLC.  On information and belief, Carcassonne

27                    Fine Homes LLC is another entity owned and controlled by Nile Niami.

28    ///

68.     Crestlloyd is informed and believes and based thereon alleges that the October 16, 2018 Note in favor of Yogi purported to be secured by collateral for several properties, only two of which belonged to Crestlloyd (the Hillcrest Property and the Airole Property).

69.     Crestlloyd is informed and believes and based thereon alleges that Joseph Englanoff / Yogi knew or should have known that Crestlloyd did not own any of the properties listed as security in the October 16, 2018 Yogi Note other than the Hillcrest Property and the Airole Property, and that public records reflect the same.

70.     Crestlloyd is informed and believes and based thereon alleges that the parties including properties that Crestlloyd did not own as security in the October 16, 2018 Yogi Note further shows that the relationships between Crestlloyd and Yogi was not one of debtor and creditor, but rather was reflective of a broader partnership or joint venture between Nile Niami, Joseph Englanoff, and their respective related entities.

71.     Crestlloyd is informed and believes and based thereon alleges that Yogi delayed recording any deed of trust related to the October 16, 2018 Yogi Note until only after a deed of Trust was issued by Crestlloyd to Hankey Capital LLC, which was issued on or about October 25, 2018.

72.     Crestlloyd is informed and believes and based thereon alleges that Joseph Englanoff / Yogi's efforts in making loans to Crestlloyd secured by properties that Crestlloyd did not own also establishes that there was a wider partnership for the development of residential properties between Englanoff/ Yogi and Nile Niami, and that there was no true debtor / creditor relationship between Crestlloyd and Yogi.

73.     Similar to the May 22, 2018 Yogi Note, in paragraph 10, the October 16, 2018 Yogi Note contains a "Due on Sale and Encumbrance" clause, which prevented any sale or encumbrance on any of the secured properties "without the written consent of the holder being first obtained, which consent may be withheld in holder's [Yogi's] sole and absolute discretion." Crestlloyd is informed and believes and based thereon alleges that Crestlloyd granted Yogi this absolute discretion because the two parties were in a partnership / joint-venture relationship, rather than a traditional debtor / creditor relationship.

**4.    The Sale of the Hillcrest Property and Wrongful Diversion of Closing Funds Belonging to Crestlloyd**

74.    Sometime thereafter, in late 2019 or early 2020, Nile Niami caused Crestlloyd to sell the Hillcrest property to Joseph Englanoff's other entity, Trousdale, for $38,325,000.  A true and correct copy of the buyer's final closing statement dated February 7, 2020 for the Hillcrest Property (the "Hillcrest Closing Statement") is attached hereto as **Exhibit 12** and incorporated by reference herein.

75.    The Hillcrest Closing Statement shows an adjustment in the amount of $9,352,824.23 in favor of "Yogi Securities Holdings."  The Hillcrest Closing Statement describes this line item as "Seller Credit – Pay Down to Yogi Securities Holdings."

76.    Crestlloyd is informed and believes and based thereon alleges that on or about February 8, 2020, Joseph Englanoff sent Nile Niami a letter agreement, which explains the "Pay Down to Yogi Securities Holdings" in the Hillcrest Closing Statement.  That letter agreement, signed by Joseph Englanoff and Nile Niami, shows that at least $6,435,535.37 was credited toward loans owing by other entities belonging to Nile Niami; namely, 1369 LE and Marbella.  A true and correct copy of that February 8, 2020 is attached hereto as **Exhibit 13** and incorporated by reference herein.

77.    Crestlloyd is informed and believes and based thereon alleges that at least $6,435,535.37 out of the $9,352,824 was improperly credited to Yogi as part of the Hillcrest Property sale but rightfully belonged to Crestlloyd, and should have been disbursed to Crestlloyd.

78.    Crestlloyd is informed and believes and based thereon alleges both Nile Niami and Joseph Englanoff knew or should have known that the $6,435,535.37 credited to 1369 LE and Marbella should have been disbursed or otherwise credited to Crestlloyd.

79.    Crestlloyd is informed and believes and based thereon alleges that Nile Niami and Joseph Englanoff, and by extension, Crestlloyd and Yogi, respectively, ignored the corporate formalities of their various entities because they did not consider themselves to be in a true

/ / /

debtor-creditor relationship, but rather operated as partners in developing multiple high-end residential homes in the Los Angeles area.

80.    Crestlloyd is further informed and believes and based thereon alleges that Trousdale did not pay fair market value for the Hillcrest Property, and that the Hillcrest Sale was not truly a bona fide, arms' length transaction.  Crestlloyd is informed and believes and based thereon alleges that Trousdale sold the Hillcrest Property to another, third party for approximately $47,000,000, less than a year after Crestlloyd conveyed it to Trousdale.  This approximately $8,675,000 increase in price represents a 22.6% increase over what Trousdale "paid" Crestlloyd for the Hillcrest Property.

**5.    The Sale of the Londonderry Property**

81.    On or about February 9, 2021, 1369 LE sold the Londonderry Property to third party Londonderry Property LLC.  A true and correct copy of the Seller's Closing Statement (Amended Final) is attached hereto as **Exhibit 14** and incorporated by reference herein.

82.    Crestlloyd is informed and believes and based thereon alleges that there was never any note from 1369 LE to Yogi, and that the $8,708,122 paid to it as part of the closing of Londonderry was credited toward the claimed Crestlloyd balance due to Yogi.

83.    Crestlloyd is informed and believes and based thereon alleges that Joseph Englanoff and Nile Niami once again blurred the lines between all of the various entities that they controlled, and had 1369 LE pay to Yogi $8,708,122 as part of the closing deal.  This is in spite of the fact that each of the above-described promissory notes in favor of Yogi were executed by Crestlloyd, and not any other party.

**C.    Crestlloyd's Dealings with Hilldun**

84.    Hilldun filed proof of claim number 9 in this bankruptcy.  Hilldun's proof of claim number 9 is based upon a guarantee agreement dated February 11, 2020 (the "Hilldun Guaranty").

85.    The Hilldun Guaranty was entered into by Crestlloyd, in favor of Hilldun, to guarantee debts incurred by N:Philanthropy.

86.     The Hilldun Guaranty was signed by Yvonne Niami and Nile Niami on behalf of Crestlloyd.

87.     The Hilldun Guaranty was signed by Yvonne Niami in favor of N:Philanthropy.

88.     The Hilldun Guaranty acted as additional guarantor to a factoring agreement entered into between Hilldun and N:Philanthropy, with Crestlloyd as the Guarantor.

89.     On information and belief, Crestlloyd was not involved in any way with N:Philanthropy's dealings that caused it to enter into a factoring agreement with Hilldun.

90.     In connection with the Hilldun Guaranty, Nile Niami had Crestlloyd execute a Deed of Trust dated February 11, 2020, in favor of Hilldun Corporation, granting in trust an interest in the Airole Property.

91.     Crestlloyd is informed and believes and based thereon alleges that Crestlloyd received no value or benefit for entering into the Hilldun Guaranty, either from Hilldun or from N:Philanthropy.

92.     Crestlloyd is informed and believes and based thereon alleges that at the time Crestlloyd signed the Hilldun Guaranty, it was within the zone of insolvency.

**D.      Crestlloyd's Dealings with Hilldun**

93.     Crestlloyd filed a bankruptcy petition under chapter 11 of the United States Bankruptcy Code on October 26, 2021.

94.     Crestlloyd's Chapter 11 Bankruptcy Estate was able to discover the above-described transfers only within the past several months, either after Crestlloyd's bankruptcy petition was filed, or shortly beforehand, during the course of reviewing the books and records of Crestlloyd and the reviewing the history of the real properties in question.

/ / /

/ / /

/ / /

/ / /

## CLAIMS FOR RELIEF

### First Claim for Relief
### Recharacterization of Debt as to Inferno
### [11 U.S.C. §502 and 548]

95. Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

96. The March 13, 2013 Note signed between Inferno Realty LP and Crestlloyd had no hard maturity date, but rather was considered "payable without demand and/or notice on the date of the close of escrow for the sale of" the Airole Property.

97. Crestlloyd is informed and believes and based thereon alleges that the March 13, 2013 Note, and the debt it was based upon, was assigned to Inferno.

98. Crestlloyd is informed and believes and based thereon alleges that Inferno Realty LP, along with Maybach Holdings Corporation, Inc., later assigned their interests in Crestlloyd's debts to Inferno. [See Inferno Complaint at ¶ 16].

99. Inferno has averred that a $14,040,000 balance due and owing from Crestlloyd to Inferno was reduced by over 50%, to $7,000,000, "as an accommodation to debtor, and without receiving consideration." [See Inferno Complaint at ¶ 17].

100. Crestlloyd subsequently entered into multiple subordination agreements with Inferno, including the MOA and the Inferno Subordination Agreement, as described supra and attached, respectively, as Exhibits 2 and 3 to this Cross-Complaint.

101. In the MOA's Recitals, the MOA sets forth the "respective rights" of Crestlloyd and Inferno "with regard to distribution of proceeds at such time as the residence being constructed by Crestlloyd "is sold."

102. The MOA states in paragraph 2 that the profits realized by selling the Airole Property may be divided among Inferno and Crestlloyd.

103. The MOA states in paragraph 3 that Crestlloyd and Inferno are to be paid from the proceeds received from the sale of the Airole Property only after repayment of loans obtained from banks or third parties, excluding Crestlloyd and Inferno.

104.   There were subsequent amendments to the MOA, which, inter alia, provided for payments to Inferno for further subordination of its original interest in the Airole Property.  On information and belief, Crestlloyd hereon alleges that in each of these subsequent amendments, did Inferno not ever disavow the entirety of the MOA.  Instead, Crestlloyd is informed and believes and based thereon alleges that each of the amendments specifically ratified the MOA, and stated that all unmodified terms and provisions of the MOA "shall remain in full force and effect."

105.   Accordingly, Crestlloyd is informed and believes and based thereon alleges that just like the March 13, 2013 Note (which was structured more like a capital contribution rather than a loan), the MOA is structured as a partnership agreement or joint-venture more than a loan creating a creditor - debtor relationship.

106.   Crestlloyd is informed and believes and based thereon alleges there are many parts of the relationship between Inferno and Crestlloyd which merit categorizing Inferno's interest as equity, which include but are not limited to the following:

      a.   There was no set maturity date on any loan from Inferno to Crestlloyd;

      b.   Inferno was able to realize gains far higher than any set "rate of interest" on any note, due to the ability to divide profits and losses under the MOA;

      c.   In MOA paragraph 3, Inferno recognized that other lenders would have to be paid ahead of it;

      d.   Inferno agreed to wipe out over 50% of the alleged $14,040,00 in debt it assumed from Inferno Realty L.P. and Maybach Holdings Corporation, Inc., as an as an accommodation to debtor, and without receiving consideration."

107.   Crestlloyd is informed and believes and based thereon alleges that Inferno's claimed debts as reflected in the Inferno Proof of Claim at Claim No. 10 should be recharacterized by this Court as equity in this proceeding, and its claims affected in accordance with the provisions of the bankruptcy code.

/ / /

CRESTLLOYD LLC'S CROSS-COMPLAINT

**Second Claim for Relief**
**Equitable Subordination as to Inferno**
**[11 U.S.C. §510 (a) and (c)]**

108.    Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

109.    Crestlloyd is informed and believes and based thereon alleges that Inferno's relationship with Crestlloyd is not that of a creditor-debtor relationship and instead has been engaging in transactions with Crestlloyd as partners or joint venturers.

110.    Crestlloyd is informed and believes and based thereon alleges that Inferno has designed its transactions with Crestlloyd such that Inferno can "reap a windfall" of massive profits in the event that the Airole Property sold for a profit, but if it did not, then as "backstop" have its transactions treated as a loan to Crestlloyd and not a capital contribution, to the detriment of Crestlloyd and its other creditors.

111.    Crestlloyd further is informed and believes and based thereon alleges that Inferno has engaged in inequitable conduct by trying to nullify the MOA and the Inferno Subordination Agreement, and the terms it agreed to therein, and that Inferno ratified in several subsequent agreements with Crestlloyd.

112.    Crestlloyd is informed and believes and based thereon alleges that Inferno's inequitable conduct created an unfair advantage for Inferno, to the detriment of Crestlloyd's other creditors, if Inferno's claim is not subordinated for purposes of distribution to other allowed claims and other allowed interests in the Debtor's Estate, in accordance with both the MOA and the Inferno Subordination Agreement and as provided by 11 U.S.C. §510(a) or (c).

113.    Crestlloyd is informed and believes and based thereon alleges that subordination of Inferno's claims is proper here, and is consistent with the bankruptcy code, and principals of treating all creditors equitably.

**Third Claim for Relief**
**Declaratory Relief as to Defendant Inferno**

114.    Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

CRESTLLOYD LLC'S CROSS-COMPLAINT

115.   As set forth in the Inferno Complaint, Inferno contends that the MOA should be rescinded because it was "entered into solely as a result of material misrepresentation by Debtor". [See Inferno Complaint at ¶68].

116.   As set forth above, Crestlloyd is informed and believes and based thereon alleges that the relationship between Crestlloyd and Inferno was not one of creditor-debtor but really those of partners or of a joint-venture.

117.   Crestlloyd is informed and believes and based thereon alleges that the MOA was not the product of a fraud in the inducement, or any other sort of fraud, but was entered into in order to govern the relationship between Crestlloyd and Inferno.

118.   Crestlloyd is informed and believes and based thereon alleges that the MOA's terms were expressly reaffirmed in every single subsequent amendment to the MOA.

119.   Crestlloyd is informed and believes and based thereon alleges that the MOA is a valid document which remains in full legal effect, and binding upon both Crestlloyd and Inferno.

120.   Therefore, an actual controversy exists between Inferno and Crestlloyd as to the validity of the MOA, the application of its terms, and its enforceability.

121.   Thus, Crestlloyd seeks an order from the Court declaring that the MOA is valid, and remains in full force and effect, and is binding upon Crestlloyd and Inferno.

**Fourth Claim for Relief**
**Breach of Fiduciary Duty Against Nile Niami, Yvonne Niami, and Ground View**

122.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

123.   As the manager of Crestlloyd, Nile Niami owed a fiduciary duty to Crestlloyd, including but not limited to a duty of loyalty, good faith and fair dealing, and an obligation to perform his/her duties as a reasonable person would do as a fiduciary of a business, using his/her judgment in the best interests of Crestlloyd.

124.   On information and belief, and at all relevant times herein, either Nile Niami, Grand View, and/or Yvonne Niami (through her ownership of Grand View), owned 100% of

Crestlloyd. Accordingly, Nile Niami, Grand View, and/or Yvonne Niami, as the sole member of Crestlloyd, owed a fiduciary duty to Crestlloyd, including but not limited to a duty of loyalty, good faith and fair dealing, and an obligation to perform his/her duties as a reasonable person would do as a fiduciary of a business, using his/her judgment in the best interests of Crestlloyd.

125. Crestlloyd is informed and believes and based thereon alleges that upon the disbursement of the funds related to the August 9, 2017 Yogi Note, Nile Niami, Yvonne Niami, and/or Grand View allowed $63,000 to be diverted from Crestlloyd and instead disbursed to the Englanoff children, which disbursement of funds had no legitimate business purpose and were to the detriment of Crestlloyd.

126. Crestlloyd is informed and believes and based thereon alleges that upon the closing of the sale of the Hillcrest Property, and with Nile Niami's express written approval, $6,435,535.37 of the sale proceeds from Trousdale were not applied to Crestlloyd's outstanding balance due and owing to Yogi. Instead, that $6,435,535.37 was used pay off loans owing from two related entities, 1369 LE and Marbella, to Yogi, to the detriment of Crestlloyd.

127. Crestlloyd is informed and believes and based thereon alleges Nile Niami, Yvonne Niami, and/or Grand View breached their fiduciary duties to Crestlloyd when they allowed funds to be directed away from Crestlloyd, and toward other related entities, including 1369 LE and Marbella for Nile Niami's own benefit and to the detriment of Crestlloyd.

128. Crestlloyd is informed and believes and based thereon alleges that the amount wrongfully diverted from Crestlloyd to 1369 LE and Marbella is, at minimum, $6,435,535.37.

129. Crestlloyd is informed and believes and based thereon alleges that Nile Niami, Yvonne Niami, and Grand View allowed the Hillcrest Property to be transferred to Trousdale for far less than fair market value.

130. Crestlloyd is informed and believes and based thereon alleges that Nile Niami, Yvonne Niami, and Grand View knew or should have known that the value of the Hillcrest Property was far more than what it was sold for, at the direction of Nile Niami, in the sale to Trousdale, to the detriment of Crestlloyd.

///

131.  Crestlloyd is informed and believes and based thereon alleges that the Hillcrest Property sold for approximately $5,000,000 less than what its fair market value was when it was transferred from Crestlloyd to Trousdale.

132.  Additionally, Crestlloyd is informed and believes and based thereon alleges Nile Niami breached his fiduciary duties to Crestlloyd when he allowed Crestlloyd to sign a personal guarantee on the factoring agreement between Hilldun and N:Philanthropy LLC, while Crestlloyd received no consideration from any party for signing said guarantee, and to the detriment of Crestlloyd.

133.  As a direct and proximate result of Nile Niami signing the guarantee in favor of Hilldun, Hilldun has submitted the Hilldun Claim in this bankruptcy case in the amount of $5,000,000.

134.  In the event that the Hilldun Claim is allowed, the amount allowed will be a direct and proximate result of Nile Niami's fiduciary breach to Crestlloyd, and to the detriment of Crestlloyd.

135.  All of Nile Niami and Yvonne Niami's described wrongful actions and omissions occurred in the course of their association with Crestlloyd, during which period they owed a fiduciary duty to act for the benefit of the Crestlloyd.

136.  As a direct and proximate result of Nile Niami and Yvonne Niami's breaches of fiduciary duty, including, but not limited to, diverting funds from the sale of the Hillcrest Property, and signing inappropriate guarantees of other entities' debts without any exchange of value or benefit to Crestlloyd, and the resulting dissipation of corporate assets, Crestlloyd and its creditors individually and *en masse*, have been harmed in an amount to be proved at trial, but presently estimated to be at least $16,498,535.37.

### Fifth Claim for Relief
### Disallowance of Claim as to Nile Niami and Yvonne Niami
### [11 U.S.C. §502(b)(1), (b)(4), and (d)]

137.  Nile Niami and Yvonne Niami filed Claim No. 22 in this action for $44,409,682.98.

138. As set forth above, Crestlloyd is informed and believes and based thereon alleges that Nile Niami and Yvonne Niami allowed the wrongful dissipation of Crestlloyd's assets in at least three ways:

    a.    $6,435,535.37 of the sale proceeds for the Hillcrest Property were not applied to Crestlloyd's outstanding balance due and owing to Yogi;

    b.    Nile and Yvonne Niami allowed the Hillcrest Property to be sold for less than fair market value to one of Joseph Englanoff's other entities, Trousdale and to the detriment of Crestlloyd;

    c.    Nile and Yvonne Niami caused Crestlloyd to enter into the $5,000,000 Hilldun Guaranty, without receiving any value to the detriment of Crestlloyd.

139. Based upon Nile Niami's and Yvonne Niami's various wrongful acts described above, including but not limited to, their various breaches of fiduciary duties and fraudulent transfers, the Niami Claim should be disallowed under 11 U.S.C. §502(b)(1), (b)(4), and (d).

### Sixth Claim for Relief
### Avoidance of Actual Fraudulent Transfer as to Nile Niami, Yvonne Niami, 1369 LE, and Marbella
### [11 U.S.C. §548(a)(1)(A), 11 U.S.C. §550]

140. Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

141. Crestlloyd is informed and believes and based thereon alleges that upon the closing of the sale of the Hillcrest Property, $6,435,535.37 of the sale proceeds from Crestlloyd's sale of the Hillcrest Property to Trousdale (the "Niami Related Transfers") were not applied to Crestlloyd's outstanding balance due and owing to Yogi. Instead, that $6,435,535.37 was used pay off loans owing from two related entities, 1369 LE and Marbella, to Yogi, to the detriment of Crestlloyd.

///

142. Crestlloyd is informed and believes and based thereon alleges that Nile Niami, Yvonne Niami, 1369 LE, and Marbella made the Niami related Transfers with actual intent to hinder, delay, or defraud Crestlloyd's creditors. (11 U.S.C. §548(a)(1)(A)).

143. Crestlloyd is informed and believes and based thereon alleges that the Niami Related Transfers were made to the detriment of Crestlloyd and its creditors.

144. Crestlloyd was harmed by the Niami Related Transfers in an amount to be proved at trial, but presently estimated to be, at minimum, $6,435,535.37.

**Seventh Claim for Relief for
Avoidance of Actual Fraudulent Transfer as to 1369 LE, and Marbella
[Cal. Civ. Code §3439.04]**

145. Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

146. Crestlloyd is informed and believes and based thereon alleges that upon the closing of the sale of the Hillcrest Property, $6,435,535.37 which comprised the Niami Related Transfers were not applied to Crestlloyd's outstanding balance due and owing to Yogi. Instead, that $6,435,535.37 was used pay off loans owing from two related entities, 1369 LE and Marbella, to Yogi, to the detriment of Crestlloyd.

147. Crestlloyd is informed and believes and based thereon alleges that Nile Niami, Yvonne Niami, 1369 LE, and Marbella made the Niami Related Transfers with actual intent to hinder, delay, or defraud Crestlloyd's creditors. (Cal. Civ. Code §3439.004).

148. Crestlloyd is informed and believes and based thereon alleges that Nile Niami, Yvonne, Niami, 1369 LE, and Marbella made the Niami Related Transfers without Crestlloyd receiving a reasonably equivalent value in exchange for those transfers, while Crestlloyd was either (a) engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (b) that Nile Niami, Yvonne, Niami, 1369 LE, and Marbella believed or reasonably should have believed that the Crestlloyd would incur, debts beyond the debtor's ability to pay as they became due.

149.  Crestlloyd is informed and believes and based thereon alleges that the Niami Related Transfers were made to the determent of Crestlloyd and its creditors.

150.  Crestlloyd was harmed by the Niami Related Transfers in an amount to be proved at trial, but presently estimated to be, at minimum, $6,435,535.37.

**Eighth Claim for Relief**
**Avoidance of Constructive Fraudulent Transfer as to 1369 LE, and Marbella, and N:Philanthropy**
**[11 U.S.C. §548(a)(1)(B), 11. U.S.C. §550]**

151.  Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

152.  Crestlloyd is informed and believes and based thereon alleges that 1369 LE, Marbella, and N:Philanthropy are corporate vehicles of one or more of Crestlloyd's insiders, Nile Niami and Yvonne Niami.

153.  Crestlloyd is informed and believes and based thereon alleges that the Niami Related Transfers were not applied to Crestlloyd's outstanding balance due and owing to Yogi. Instead, that the Niami Related Transfers were used pay off loans owing from two related entities, 1369 LE and Marbella, to Yogi.

154.  Crestlloyd is informed and believes and based thereon alleges that Nile Niami, Yvonne Niami, 1369 LE and Marbella received the Niami Related Transfers without Crestlloyd receiving reasonably equivalent value in exchange for that transfer or obligation.

155.  Crestlloyd is informed and believes and based thereon alleges that  at the time Nile Niami, Yvonne Niami, 1369 LE, and Marbella received the Niami Related Transfers Crestlloyd received less than a reasonably equivalent value in exchange for the Niami Related Transfers and that Crestlloyd was either insolvent on the date of the Niami Related Transfers or Crestlloyd became insolvent as a result of the Niami Related Transfers, or that Crestlloyd was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with Crestlloyd was an unreasonably small capital or that Crestlloyd intended to incur, or believed that it would incur debts that would be beyond the Crestlloyd's

1    ability to pay as such debts matured, or made such transfer for the benefit of an insider. (11

2    U.S.C. §548(a)(1)(B)).

3    156.   Crestlloyd is informed and believes and based thereon alleges that the Niami

4    Related Transfers from Crestlloyd to 1369 LE and Marbella, to Yogi harmed Crestlloyd in an

5    amount to be proved at trial, but presently estimated to be, at minimum, $6,435,535.37.

6    157.   Crestlloyd is informed and believes and based thereon alleges that Nile Niami,

7    Yvonne Niami, N:Philanthropy received the Hilldun Guaranty without Crestlloyd receiving

8    reasonably equivalent value in exchange for that transfer or obligation.

9    158.   Crestlloyd is informed and believes and based thereon alleges that at the time Nile

10   Niami, Yvonne Niami, N:Philanthropy received the Hilldun Guaranty, Crestlloyd received less

11   than a reasonably equivalent value in exchange for the Hilldun Guaranty, and that Crestlloyd

12   was either insolvent on the date of the Hilldun Guaranty, or Crestlloyd became insolvent as a

13   result of the Hilldun Guaranty, or that Crestlloyd was engaged in business or a transaction or

14   was about to engage in business or a transaction for which any property remaining with

15   Crestlloyd was an unreasonably small capital or that Crestlloyd intended to incur, or believed

16   that it would incur debts that would be beyond the Crestlloyd's ability to pay as such debts

17   matured, or made such transfer for the benefit of an insider. (11 U.S.C. §548(a)(1)(B)).

18   159.   Crestlloyd is informed and believes and based thereon alleges that the Hilldun

19   Guaranty from Crestlloyd to Nile Niami, Yvonne Niami, and N:Philanthropy harmed Crestlloyd

20   in an amount to be proved at trial, but presently estimated to be, at minimum, $5,000,000.

21

22   **Ninth Claim for Relief**

       **Avoidance of Constructive Fraudulent Transfer as to Nile Niami, Yvonne Niami, 1369**
23     **LE, and Marbella**
       **[Cal. Civ. Code §3439.05]**
24

25   160.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth

26   herein.

27   161.   Crestlloyd is informed and believes and based thereon alleges that the Niami

28   Related Transfers were not applied to Crestlloyd's outstanding balance due and owing to Yogi.

1  Instead, that the Niami Related Transfers were used pay off loans owing from two related

2  entities, 1369 LE and Marbella, to Yogi.

3  162.   Crestlloyd is informed and believes and based thereon alleges that Nile Niami,

4  Yvonne Niami, 1369 LE and Marbella received the Niami related Transfers without Crestlloyd

5  receiving reasonably equivalent value in exchange for that transfer or obligation.

6  163.   Crestlloyd is informed and believes and based thereon alleges that at the time Nile

7  Niami, Yvonne Niami, 1369 LE, and Marbella received the Niami Related Transfers Crestlloyd

8  was insolvent at that time or Crestlloyd became insolvent as a result of the Niami Related

9  Transfers.

10  164.   Crestlloyd is informed and believes and based thereon alleges that the Niami

11  Related Transfers from Crestlloyd to 1369 LE and Marbella, to Yogi harmed Crestlloyd in an

12  amount to be proved at trial, but presently estimated to be, at minimum, $6,435,535.37.

13  165.   Crestlloyd is informed and believes and based thereon alleges that Nile Niami,

14  Yvonne Niami, N:Philanthropy received the Hilldun Guaranty without Crestlloyd receiving

15  reasonably equivalent value in exchange for that transfer or obligation.

16  166.   Crestlloyd is informed and believes and based thereon alleges that at the time Nile

17  Niami, Yvonne Niami, N:Philanthropy received the Hilldun Guaranty, Crestlloyd was insolvent

18  at that time or Crestlloyd became insolvent as a result of the Niami Related Transfers.

19  167.   Crestlloyd is informed and believes and based thereon alleges that the Hilldun

20  Guaranty from Crestlloyd to Nile Niami, Yvonne Niami, and N:Philanthropy harmed Crestlloyd

21  in an amount to be proved at trial, but presently estimated to be, at minimum, $5,000,000.

22

23  **Tenth Claim for Relief**
**Equitable Indemnification as to Nile Niami, Yvonne Niami, Ground View, and**

24  **N:Philanthropy**

25  168.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth

26  herein.

27  169.   Crestlloyd is informed and believes and based thereon alleges that Crestlloyd

28  received no reasonable exchange of value for entering into the Hilldun Guaranty.

170.   Crestlloyd is informed and believes and based thereon alleges that Crestlloyd had no legitimate business reason to enter into the Hilldun Guaranty on behalf of N:Philanthropy.

171.   Crestlloyd is informed and believes and based thereon alleges that Crestlloyd providing a $5,000,000 guaranty to N:Philanthropy represented a wrongful use and diversion of Crestlloyd's assets to N:Philanthropy for which Crestlloyd received no value.

172.   Crestlloyd is informed and believes and based thereon alleges that to the extent any portion of Hilldun's claim is allowed, it would only be as a result of the fraudulent transfer / Breach of Fiduciary duty on the part of Nile Niami, Yvonne Niami, and Grand View.

173.   Crestlloyd is informed and believes and based thereon alleges that to the extent any portion of Hilldun's claim is allowed, principles of fairness, equity, and justice support the indemnification of Crestlloyd by N:Philanthropy, Nile Niami, Yvonne Niami, and Ground View for any amounts found to be due and owing to Crestlloyd.

## Eleventh Claim for Relief
## Recharacterization as to Yogi
## [11 U.S.C. §502]

174.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

175.   Crestlloyd is informed and believes and based thereon alleges that the corporate formalities between Crestlloyd and Nile Niami's other entities were not respected in the series of transactions because those two parties, because, in fact and in truth, Joseph Englanoff and Nile Niami were in a partnership or joint-venture with one another to develop several different high-end residential real estate properties, and it therefore did not matter to Joseph Englanoff which properties were being secured to various loans between him and Nile Niami, as long as Joseph Englanoff felt that he was being provided adequate security.

176.   The May 22, 2018 Yogi Note contains, in paragraph 10, a clause called "Due on Sale and Encumbrance."  This clause states in pertinent part, that "the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered . . ."

". . . without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion."

177.    Accordingly, Crestlloyd is informed and believes and based thereon alleges that the business dealings between Yogi and Crestlloyd were structured as a partnership agreement or joint-venture more than a loan creating a creditor - debtor relationship.

178.    Crestlloyd is informed and believes and based thereon alleges there are many parts of the relationship between Yogi and Crestlloyd which merit categorizing Inferno's interest as equity, which include but are not limited to the following:

    a.    The initial promissory notes issued between Yogi and Crestlloyd had extremely high interest rates that well exceeded "prime;

    b.    There was a blurring of lines between which entities actually owed Yogi funds, and which entities were to be paid from proceeds;

    c.    The October 16, 2018 Yogi Note had Crestlloyd agreeing to collateralize properties to which Crestlloyd did not even own title;

    d.    The sale of the Hillcrest Property occurred in rapid fashion, was undervalued relative to market, and was not sold to a third party, but rather was sold to Trousdale, which is owned / controlled by Joseph Englanoff;

    e.    Inferno was able to realize gains far higher than any set "rate of interest" on any note, due to the ability to divide profits and losses under the MOA;

    f.    There were diversions of funds in Yogi / Crestlloyd dealings, which funds should have rightfully gone to Crestlloyd, but instead went to parties related to Joseph Englanoff and/or Nile Niami, such as the Englanoff Children, 1369 LE, or Marbella.

    g.    Yogi, in each note that Crestlloyd issued to it, was granted full and complete "veto power" over all transactions related to the real property which secured those loans, which is not a typical power granted to true arms-length real estate lenders.

CRESTLLOYD LLC'S CROSS-COMPLAINT

179.    Crestlloyd is informed and believes and based thereon alleges that Yogi's claimed debts should be recharacterized by this Court as equity in this proceeding, and its claims affected in accordance with the provisions of the bankruptcy code.

**Twelfth Claim for Relief**
**Equitable Subordination as to Yogi**
**[11 U.S.C. §510]**

180.    Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

181.    Crestlloyd is informed and believes and based thereon alleges that Yogi engaged in inequitable conduct by trying to improperly frame its relationship with Crestlloyd to that of a creditor-debtor relationship, and for diverting assets rightfully belonging to Crestlloyd.

182.    Crestlloyd is informed and believes and based thereon alleges that Yogi's inequitable conduct will create an unfair advantage for itself or persons related to its principal, Joseph Englanoff, to the detriment of Crestlloyd's other creditors, if its claim is not subordinated.

183.    Crestlloyd is informed and believes and based thereon alleges that subordination of Yogi's claims is proper here, and is consistent with the bankruptcy code, and principals of treating all creditors equitably.

**Thirteenth Claim for Relief**
**Avoidance of Actual Fraudulent Transfer as to Yogi Securities Holdings, LLC;**
**Trousdale Estate LLC; and Joseph Englanoff**
**[11 U.S.C. §548(a)(1)(A) and 11 U.S.C. §550]**

184.    Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

185.    Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff diverted assets from Crestlloyd in the sum of at least of $11,435,535.37 (the "Yogi, Trousdale and Englanoff Transfers") with the actual intent to delay, hinder, or defraud creditors, and did so on at least two occasions:

a.   Yogi, Trousdale, and Joseph Englanoff diverted $6,435,535.37 from Crestlloyd when it credited 1369 LE and Marbella with those amounts on alleged loans outstanding, rather than crediting Crestlloyd's outstanding loan to Yogi.

b.   Yogi, Trousdale, and Joseph Englanoff diverted, an amount to be proved at trial, but believed to be in excess of $5,000,0000 from Crestlloyd when it had Crestlloyd transfer the Hillcrest Property to Trousdale for only $38,325,000, when that same property sold for over $47,000,000 less than a year later.

186.   Crestlloyd is informed and believes and based thereon alleges that it did not receive reasonable equivalent value from the sale of the Hillcrest Property.

187.   Crestlloyd is informed and believes and based thereon alleges that such transfers away from Crestlloyd were done with the purpose to hinder, delay, or defraud Crestlloyd's creditors, and that there was the actual intent to do so.

188.   Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff wrongfully diverted from Crestlloyd an amount to be proved at trial, an amount to be proved at trial but believed to be in excess of $11,435,535.37, which amount should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts.

**Fourteenth Claim for Relief**
**Avoidance of Actual Fraudulent Transfer as to Yogi Securities Holdings, LLC;**
**Trousdale Estate LLC; and Joseph Englanoff**
**[Cal. Civ. Code §3439.004]**

189.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

190.   Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff diverted assets from Crestlloyd in the sum of at least of

CRESTLLOYD LLC'S CROSS-COMPLAINT

$11,435,535.37 (the "Yogi, Trousdale and Englanoff Transfers") with the actual intent to delay, hinder, or defraud creditors, and did so on at least two occasions:

      a.      Yogi, Trousdale, and Joseph Englanoff diverted $6,435,535.37 from Crestlloyd when it credited 1369 LE and Marbella with those amounts on alleged loans outstanding, rather than crediting Crestlloyd's outstanding loan to Yogi.

      b.      Yogi, Trousdale, and Joseph Englanoff diverted, an amount to be proved at trial, but believed to be in excess of $5,000,0000 from Crestlloyd when it had Crestlloyd transfer the Hillcrest Property to Trousdale for only $38,325,000, when that same property sold for over $47,000,000 less than a year later.

191. Crestlloyd is informed and believes and based thereon alleges that it did not receive reasonable equivalent value from the sale of the Hillcrest Property.

192. Crestlloyd is informed and believes and based thereon alleges that such transfers away from Crestlloyd were done with the purpose to hinder, delay, or defraud Crestlloyd's creditors, and that there was the actual intent to do so.

193. Crestlloyd is informed and believes and based thereon alleges Yogi, Trousdale, and Joseph Englanoff made the Yogi, Trousdale and Englanoff Transfers without Crestlloyd receiving a reasonably equivalent value in exchange for those transfers, while Crestlloyd was either (a) engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (b) that Yogi, Trousdale, and Englanoff believed or reasonably should have believed that the Crestlloyd would incur, debts beyond the debtor's ability to pay as they became due.

194. Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff wrongfully diverted from Crestlloyd an amount to be proved at trial, an amount to be proved at trial but believed to be in excess of $11,435,535.37, which amount should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts.

### Fifteenth Claim for Relief
### Avoidance of Constructive Fraudulent Transfer as to Yogi Securities Holdings, LLC; Trousdale Estate LLC; and Joseph Englanoff
### [11 U.S.C. §548(a)(1)(B) and 11 U.S.C. §550]

195.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

196.   Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff diverted assets from Crestlloyd with the actual intent to delay, hinder, or defraud creditors, and did so on at least two occasions:

> a.   Yogi, Trousdale, and Joseph Englanoff diverted $6,435,535.37 from Crestlloyd when it credited 1369 LE and Marbella with those amounts on alleged loans outstanding, rather than crediting Crestlloyd's outstanding loan to Yogi.

> b.   Yogi, Trousdale, and Joseph Englanoff diverted, an amount to be proved at trial, but believed to be in excess of $5,000,0000 from Crestlloyd when it had Crestlloyd transfer the Hillcrest Property to Trousdale for only $ $38,325,000, when that same property sold for over $47,000,000 less than a year later.

197.   Crestlloyd is informed and believes and based thereon alleges that it did not receive reasonable equivalent value from the sale of the Hillcrest Property.

198.   Crestlloyd is informed and believes and based thereon alleges that Yogi Securities Holdings, LLC; Trousdale Estate LLC; and Joseph Englanoff received those transfers without Crestlloyd receiving reasonably equivalent value in exchange for that transfer or obligation.

199.   Crestlloyd is informed and beliefs and based thereon alleges that that at the time Yogi Securities Holdings, LLC; Trousdale Estate LLC; and Joseph Englanoff received the Yogi, Trousdale and Englanoff Transfers from Crestlloyd, Crestlloyd, was either insolvent or was imminently within the zone of insolvency, or otherwise those parties knew or should have reasonably known that Crestlloyd would incur debts beyond its ability to pay as those debts came due.

CRESTLLOYD LLC'S CROSS-COMPLAINT

200.   Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff wrongfully diverted from Crestlloyd an amount to be proved at trial, an amount to be proved at trial but believed to be in excess of $11,435,535.37, which amount should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts.

**Sixteenth Claim for Relief**
**Avoidance of Constructive Fraudulent Transfer as to Yogi Securities Holdings, LLC;**
**Trousdale Estate LLC; and Joseph Englanoff**
**[Cal. Civ. Code §3439.005]**

201.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

202.   Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff diverted assets from Crestlloyd with the actual intent to delay, hinder, or defraud creditors, and did so on at least two occasions:

        a.      Yogi, Trousdale, and Joseph Englanoff diverted $6,435,535.37 from Crestlloyd when it credited 1369 LE and Marbella with those amounts on alleged loans outstanding, rather than crediting Crestlloyd's outstanding loan to Yogi.

        b.      Yogi, Trousdale, and Joseph Englanoff diverted, an amount to be proved at trial, but believed to be in excess of $5,000,0000 from Crestlloyd when it had Crestlloyd transfer the Hillcrest Property to Trousdale for only $ $38,325,000, when that same property sold for over $47,000,000 less than a year later.

203.   Crestlloyd is informed and believes and based thereon alleges that it did not receive reasonable equivalent value from the sale of the Hillcrest Property.

204.   Crestlloyd is informed and believes and based thereon alleges that Yogi Securities Holdings, LLC; Trousdale Estate LLC; and Joseph Englanoff received the Yogi, Trousdale and

Englanoff Transfers without Crestlloyd receiving reasonably equivalent value in exchange for that transfer or obligation.

205.   Crestlloyd is informed and believes and based thereon alleges that at the time Yogi, Trousdale, and Joseph Englanoff received the Yogi, Trousdale, and Englanoff Transfers, Crestlloyd was insolvent at that time or Crestlloyd became insolvent as a result of the Yogi, Trousdale, and Englanoff Transfers.

206.   Crestlloyd is informed and believes and based thereon alleges that Yogi, Trousdale, and Joseph Englanoff wrongfully diverted from Crestlloyd an amount to be proved at trial, an amount to be proved at trial but believed to be in excess of $11,435,535.37, which amount should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts.

**Seventeenth Claim for Relief**
**Avoidance of Actual Fraudulent Transfer as to Justine Englanoff; Nicole Englanoff;**
**Jacqueline Englanoff**
**[11 U.S.C. §548(a)(1)(A) and 11 U.S.C. §550]**

207.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

208.   Crestlloyd is informed and believes and based thereon alleges that the loan referenced in the August 9, 2017 Yogi Note closed on or about August 17, 20217.  [See **Exs. 7 and 8**].

209.   Crestlloyd is informed and believes and based thereon alleges that, according to the Borrower's Final Closing Statement, when the loan on the Hillcrest Property closed, there were three disbursements made to in the amount of $21,000 each: 1) to Justine Englanoff; 2) to Nicole Englanoff; and 3) to Jacqueline Englanoff (the "Englanoff Children Transfers").

210.   Crestlloyd is informed and believes and based thereon alleges that there was no legitimate business purpose to providing the Englanoff Children with $21,000 each from the sale of the Hillcrest Property, and that none of the Englanoff Children had ever provided any value to Crestlloyd.

211.  Crestlloyd is informed and believes and based thereon alleges that the Englanoff Children Transfers were done with the purpose to hinder, delay, or defraud Crestlloyd's creditors, and that there was the actual intent to do so.

212.  Crestlloyd is informed and believes and based thereon alleges that the $63,000 paid to the Englanoff Children were wrongfully diverted from Crestlloyd, and should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts.

**Eighteenth Claim for Relief**
**Avoidance of Actual Fraudulent Transfer as to Justine Englanoff; Nicole Englanoff; Jacqueline Englanoff**
**[Cal. Civil Code §3439.004]**

213.  Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

214.  Crestlloyd is informed and believes and based thereon alleges that the loan referenced in the August 9, 2017 Yogi Note closed on or about August 17, 20217.  [See **Exs. 7 and 8**].

215.  Crestlloyd is informed and believes and based thereon alleges that, according to the Borrower's Final Closing Statement, when the loan on the Hillcrest Property closed, there were three disbursements made to in the amount of $21,000 each: 1) to Justine Englanoff; 2) to Nicole Englanoff; and 3) to Jacqueline Englanoff.

216.  Crestlloyd is informed and believes and based thereon alleges that there was no legitimate business purpose to providing the Englanoff Children with $21,000 each from the sale of the Hillcrest Property, and that none of the Englanoff Children had ever provided any value to Crestlloyd.

217.  Crestlloyd is informed and believes and based thereon alleges the Englanoff Children received the Enplane Children Transfers without Crestlloyd receiving a reasonably equivalent value in exchange for those transfers, while Crestlloyd was either (a) engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (b) that the Englanoff Children

believed or reasonably should have believed that the Crestlloyd would incur, debts beyond the debtor's ability to pay as they became due.

218.   Crestlloyd is informed and believes and based thereon alleges that the Englanoff Related Transfers were made to the determent of Crestlloyd and its creditors.

219.   Crestlloyd is informed and believes and based thereon alleges that the $63,000 paid to the Englanoff Children were wrongfully diverted from Crestlloyd, and should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts, and that the Englanoff Children Transfers were made to the determinant of Crestlloyd and its creditors.

**Nineteenth Claim for Relief**
**Avoidance of Constructive Fraudulent Transfer as to Justine Englanoff; Nicole Englanoff; Jacqueline Englanoff**
**[11 U.S.C. §548(a)(1)(B) and 11 U.S.C. §550]**

220.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

221.   Crestlloyd is informed and believes and based thereon alleges that the loan referenced in the August 9, 2017 Yogi Note closed on or about August 17, 20217.  [See **Exs. 7 and 8**].

222.   Crestlloyd is informed and believes and based thereon alleges that, according to the Borrower's Final Closing Statement, when the loan on the Hillcrest Property closed, there were three disbursements made to in the amount of $21,000 each: 1) to Justine Englanoff; 2) to Nicole Englanoff; and 3) to Jacqueline Englanoff.

223.   Crestlloyd is informed and believes and based thereon alleges that there was no legitimate business purpose to providing the Englanoff Children with $21,000 each from the sale of the Hillcrest Property, and that none of the Englanoff Children had ever provided any value to Crestlloyd.

/ / /

/ / /

CRESTLLOYD LLC'S CROSS-COMPLAINT

224.    Crestlloyd is informed and believes and based thereon alleges that the Englanoff Children received the Englanoff Children Transfers without Crestlloyd receiving reasonably equivalent value in exchange for that transfer or obligation.

225.    Crestlloyd is informed and believes and based thereon alleges that  at the time the Englanoff Children received the Englanoff Children Transfers Crestlloyd received less than a reasonably equivalent value in exchange for the Englanoff Children Transfers and that Crestlloyd was either insolvent on the date of the Englanoff Children Transfers or Crestlloyd became insolvent as a result of the Englanoff Children Transfers, or that Crestlloyd was engaged in business or a transaction or was about to engage in business or a transaction for which any property remaining with Crestlloyd was an unreasonably small capital or that Crestlloyd intended to incur, or believed that it would incur debts that would be beyond the Crestlloyd's ability to pay as such debts matured, or made such transfer for the benefit of an insider.  (11 U.S.C. §548(a)(1)(B)).

226.    Crestlloyd is informed and believes and based thereon alleges that the $63,000 paid to the Englanoff Children were wrongfully diverted from Crestlloyd, and should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts, and that the Englanoff Children Transfers were made to the determinant of Crestlloyd and its creditors.

### Twentieth Claim for Relief
### Avoidance of Constructive Fraudulent Transfer as to Justine Englanoff; Nicole Englanoff; Jacqueline Englanoff
### [Cal. Civil Code §3439.005]

227.    Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

228.    Crestlloyd is informed and believes and based thereon alleges that the loan referenced in the August 9, 2017 Yogi Note closed on or about August 17, 20217.  [See **Exs. 7 and 8**].

/ / /

229.    Crestlloyd is informed and believes and based thereon alleges that, according to the Borrower's Final Closing Statement, when the loan on the Hillcrest Property closed, there were three disbursements made to in the amount of $21,000 each: 1) to Justine Englanoff; 2) to Nicole Englanoff; and 3) to Jacqueline Englanoff.

230.    Crestlloyd is informed and believes and based thereon alleges that there was no legitimate business purpose to providing the Englanoff Children with $21,000 each from the sale of the Hillcrest Property, and that none of the Englanoff Children had ever provided any value to Crestlloyd.

231.    Crestlloyd is informed and believes and based thereon alleges that the Englanoff Children received the Englanoff Children Transfers without Crestlloyd receiving reasonably equivalent value in exchange for that transfer or obligation.

232.    Crestlloyd is informed and believes and based thereon alleges that at the time the Englanoff Children received the Englanoff Children Transfers, Crestlloyd was insolvent at that time or Crestlloyd became insolvent as a result of the Englanoff Children Transfers.

233.    Crestlloyd is informed and believes and based thereon alleges that the $63,000 paid to the Englanoff Children were wrongfully diverted from Crestlloyd, and should have either been paid directly to Crestlloyd or otherwise credited toward legitimate Crestlloyd debts, and that the Englanoff Children Transfers were made to the determinant of Crestlloyd and its creditors.

**Twenty-First Claim for Relief**
**Disallowance of Claim as to Yogi**
**[11 U.S.C. §502(b)(1), and (d)]**

234.    Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

235.    As set forth above, the Englanoff Parties engaged in several bad acts, including diverting assets away from Crestlloyd and to other parties, or otherwise assisting Nile Niami in doing the same.

236.  For example, on information and belief, the Englanoff Children, on information and belief, received $21,000 each from the closing of Yogi's Loan to Crestlloyd related to the Hillcrest Property.

237.  For example, on information and belief, Joseph Englanoff allowed sale proceeds from the Hillcrest Property to be diverted away from Crestlloyd and instead used to "credit: other loans to 1369 LE and Marbella.

238.  For example, on information and belief, Yogi avoided recording any deed of trust related to the October 16, 2018 Yogi Note until only after a deed of Trust was issued by Crestlloyd to Hankey Capital LLC, which, on information and belief, allowed Crestlloyd to obtain even more loans than may have otherwise been entitled to from other lenders.

239.  On information and belief, Crestlloyd hereby alleges that the Englanoff Parties therefore acted in a way that was to their own benefit, and extremely detrimental to Crestlloyd. Crestlloyd is informed and believes and based thereon alleges that these actions were taken with the actual intent to defraud Crestlloyd's creditors.

240.  On information and belief, Crestlloyd hereby alleges that based upon the above-described acts, Yogi's creditor's claim no. 27 should be disallowed.

**Twenty-Second Claim for Relief**
**Avoidance of Constructive Fraudulent Transfers as to Hilldun**
**[11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 550]**

241.  Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

242.  On information and belief, on or about February 11, 2020, Crestlloyd executed the Hilldun Guaranty, in favor of Hilldun, to guarantee debts incurred by N:Philanthropy.

243.  On information and belief, Nile Niami and Yvonne Niami signed the Hilldun Guaranty on behalf of both Crestlloyd and N:Philanthropy LLC.

244.  On information and belief this was at the same time that the Hillcrest Property was sold, Crestlloyd owed millions of dollars to creditors, many of which were claimed to be secured but were undercollateralized.

44

245. On information and belief, these loans were undercollateralized, because *inter alia,* the value of the Airole Property was overstated at the time, and because some of the loans were "collateralized" against properties that Crestlloyd did not even own.

246. Crestlloyd is informed and believes and based thereon alleges that at the time Crestlloyd signed the Hilldun Guaranty, Crestlloyd was either insolvent or was within the zone of insolvency.

247. On information and belief, Crestlloyd was not involved in any way with N:Philanthropy's dealings that caused N:Philanthropy to enter into a factoring agreement with Hilldun.

248. Crestlloyd is informed and believes and based thereon alleges that Crestlloyd received no value or benefit for entering into the Hilldun Guaranty, either from Hilldun or from N:Philanthropy, even though Crestlloyd was either insolvent at the time or within the zone of insolvency.

249. Crestlloyd is informed and believes and based thereon alleges that Hilldun received the Hilldun Guaranty without Crestlloyd receiving reasonably equivalent value in exchange for that transfer or obligation.

250. Crestlloyd is informed and beliefs and based thereon alleges that that at the time Hilldun received the Hilldun Guaranty from Crestlloyd, Crestlloyd, was either insolvent or was imminently within the zone of insolvency, or otherwise those parties knew or should have reasonably known that Crestlloyd would incur debts beyond its ability to pay as those debts came due.

251. Crestlloyd is informed and believes and based thereon alleges that the $5,000,000 guaranty granted to Hilldun as part of the Hilldun Guaranty was therefore a fraudulent transfer and avoidable under 11 U.S.C. §§ 548(a)(1)(B), and 11 U.S.C. § 550.

/ / /

/ / /

/ / /

/ / /

**Twenty-Third Claim for Relief**
**Avoidance of Constructive Fraudulent Transfers as to Hilldun**
**[Cal. Civil Code §3439.05]**

252.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

253.   On information and belief, on or about February 11, 2020, Crestlloyd executed the Hilldun Guaranty, in favor of Hilldun, to guarantee debts incurred by N:Philanthropy.

254.   On information and belief, Nile Niami and Yvonne Niami signed the Hilldun Guaranty on behalf of both Crestlloyd and N:Philanthropy LLC.

255.   On information and belief this was at the same time that the Hillcrest Property was sold, Crestlloyd owed millions of dollars to creditors, many of which were claimed to be secured but were undercollateralized.

256.   On information and belief, these loans were undercollateralized, because inter alia, the value of the Airole Property was overstated at the time, and because some of the loans were "collateralized" against properties that Crestlloyd did not even own.

257.   Crestlloyd is informed and believes and based thereon alleges that at the time Crestlloyd signed the Hilldun Guaranty, Crestlloyd was either insolvent or was within the zone of insolvency.

258.   On information and belief, Crestlloyd was not involved in any way with N:Philanthropy's dealings that caused N:Philanthropy to enter into a factoring agreement with Hilldun.

259.   Crestlloyd is informed and believes and based thereon alleges that Crestlloyd received no value or benefit for entering into the Hilldun Guaranty, either from Hilldun or from N:Philanthropy, even though Crestlloyd was either insolvent at the time or within the zone of insolvency.

260.   Crestlloyd is informed and believes and based thereon alleges that Hilldun received the Hilldun Guaranty without Crestlloyd receiving reasonably equivalent value in exchange for that transfer or obligation.

/ / /

261.   Crestlloyd is informed and beliefs and based thereon alleges that that at the time Hilldun received the Hilldun Guaranty from Crestlloyd, Crestlloyd, was either insolvent or was imminently within the zone of insolvency, or otherwise those parties knew or should have reasonably known that Crestlloyd would incur debts beyond its ability to pay as those debts came due.

262.   Crestlloyd is informed and believes and based thereon alleges that at the time Hilldun received the Hilldun Guaranty, Crestlloyd was insolvent at that time or Crestlloyd became insolvent as a result of the Hilldun Guaranty.

263.   Crestlloyd is informed and believes and based thereon alleges that the $5,000,000 guaranty granted to Hilldun as part of the Hilldun Guaranty was therefore a fraudulent transfer and avoidable under Cal. Civil Code §3439.05.

### Twenty-Fourth Claim for Relief
### Disallowance of Claim as to Hilldun Corporation
### [11 U.S.C. §502(b)(1) and (d)]

264.   Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

265.   As set forth above, the Hilldun was the recipient of a constructive fraudulent transfer vis-à-vis the Hilldun Guaranty.

266.   As set forth above, Hilldun should not have received the Hilldun Guaranty, as on information and belief, it was entered into during the time in which Crestlloyd was within the zone of insolvency, and Crestlloyd did not receive reasonably equivalent value for the Hilldun Guaranty.

267.   Based thereon, Crestlloyd hereby alleges that Hilldun's creditor's claim No. 9, which is based upon the Hilldun Guaranty, should be disallowed.

/ / /

/ / /

/ / /

/ / /

**Twenty-Fifth Claim for Relief**
**Recovery of Avoided Transfers**
**[11 U.S.C. §§ 544, 548 and 550; Cal. Civ. Code § 3439.07]**

268.    Crestlloyd incorporates each of the foregoing paragraphs as if fully set forth herein.

269.    As alleged above, there are several actual or constructive fraudulent transfers that were made, to the detriment of Crestlloyd.  Those distributions are as follows:

      a.    The Niami Related Transfers, totaling $6,435,535.37;

      b.    The Yogi, Trousdale and Englanoff Transfers, totaling $11,435,535.37;

      c.    The Englanoff Children Transfers, totaling $63,000; and

      d.    The Hilldun Guaranty, totaling a $5,000,000 guarantee;

270.    By reason of the foregoing, Crestlloyd is entitled to recover the distributions described above, together with interest thereon at the maximum legal rate from and after the date of each of such transfers, in sums according to proof but which Crestlloyd estimates to be the total sums listed above from Cross-Defendants pursuant to 11 U.S.C. §§ 548 and 550, and Cal. Civ. Code § 3439.07.

**PRAYER FOR RELIEF**

WHEREFORE, Crestlloyd prays for a judgment hereon ordering the following relief:

**On the First Claim for Relief as to Inferno:**

1.    For an order recharacterizing the claimed debts owing to Inferno as equity;

**On the Second Claim for Relief as to Inferno:**

2.    For an order equitably subordinating Inferno's claims;

**On the Third Claim for Relief as to Inferno:**

3.    For an order declaring that the MOA is valid and remains in full force and effect;

/ / /

/ / /

CRESTLLOYD LLC'S CROSS-COMPLAINT

**On the Fourth Claim for Relief as to Nile Niami, Yvonne Niami, and Ground View:**

4.    For general damages according to proof at trial, but believed to be at least **$16,498,535.37**;

5.    For attorneys' fees and costs.

6.    For interest according to proof;

**On the Fifth Claim for Relief as to Nile Niami and Yvonne Niami:**

7.    For disallowance of the Niami Claim.

**On the Sixth Claim for Relief as to 1369 LE, and Marbella**

8.    For avoidance of the distributions to 1369 LE, and Marbella, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$6,435,535.37**;

9.    For interest according to proof;

**On the Seventh Claim for Relief as to 1369 LE and Marbella**

10.    For avoidance of the distributions to 1369 LE, and Marbella, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$6,435,535.37**;

11.    For interest according to proof;

**On the Eighth Claim for Relief as to 1369 LE, Marbella, and N:Philanthropy**

12.    For avoidance of the distributions to 1369 LE, and Marbella, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$6,435,535.37**;

13.    For avoidance of the guarantee provided by Crestlloyd to N:Philanthropy the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$5,000,000**;

14.    For interest according to proof;

/ / /

CRESTLLOYD LLC'S CROSS-COMPLAINT

**On the Ninth Claim for Relief as to 1369 LE, Marbella, and N:Philanthropy**

15.    For avoidance of the distributions to 1369 LE, and Marbella, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$6,435,535.37**;

16.    For avoidance of the guarantee provided by Crestlloyd to N:Philanthropy the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$5,000,000**;

17.    For interest according to proof;

**On the Tenth Claim for Relief as to Nile Niami, Yvonne Niami, Ground View and N:Philanthropy:**

18.    For equitable indemnification by Nile Niami, Yvonne Niami, Ground View, and N:Philanthropy, of any claims brought by Hilldun in this action, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$5,000,000**;

19.    For interest according to proof;

**On the Eleventh Claim for Relief as to Yogi:**

20.    For an order recharacterizing the claimed debts owing to Yogi as equity.

**On the Twelfth Claim for Relief as to Yogi:**

21.    For an order equitably subordinating Yogi's claims.

**On the Thirteenth Claim for Relief as to Yogi, Trousdale, and Joseph Englanoff:**

22.    For avoidance of the distributions to all of the Englanoff Parties except the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$11,435,535.37**;

23.    For interest according to proof;

**On the Fourteenth Claim for Relief as to Yogi, Trousdale, and Joseph Englanoff:**

24.    For avoidance of the distributions to all of the Englanoff Parties except the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$11,435,535.37**;

25.    For interest according to proof;

**On the Fifteenth Claim for Relief as to Yogi, Trousdale, and Joseph Englanoff:**

26.    For avoidance of the distributions to all of the Englanoff Parties except the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$11,435,535.37**;

27.    For interest according to proof;

**On the Sixteenth Claim for Relief as to Yogi, Trousdale, and Joseph Englanoff:**

28.    For avoidance of the distributions to all of the Englanoff Parties except the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$11,435,535.37**;

29.    For interest according to proof;

**On the Seventeenth Claim for Relief as to the Englanoff Children:**

30.    For avoidance of the distributions to the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$63,000**;

31.    For interest according to proof;

**On the Eighteenth Claim for Relief as to the Englanoff Children:**

32.    For avoidance of the distributions to the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$63,000**;

33.    For interest according to proof;

**On the Nineteenth Claim for Relief as to the Englanoff Children:**

34.    For avoidance of the distributions to the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$63,000**;

35.    For interest according to proof;

 / / /

 / / /

/ / /

**On the Twentieth Claim for Relief as to the Englanoff Children:**

36.     For avoidance of the distributions to the Englanoff Children, the exact amount according to proof at trial, and the total amount of which presently alleged to be no less than **$63,000**;

37.     For interest according to proof;

**On the Twenty-First Claim for Relief as to Yogi:**

38.     For disallowance of the Yogi Claim.

**On the Twenty-Second Claim for Relief as to Hilldun:**

39.     For avoidance of the **$5,000,000** guaranty Crestlloyd made on debts allegedly owing from N:Philanthropy to Hilldun;

**On the Twenty-Third Claim for Relief as to Hilldun:**

40.     For avoidance of the **$5,000,000** guaranty Crestlloyd made on debts allegedly owing from N:Philanthropy to Hilldun;

**On the Twenty-Fourth Claim for Relief as to Hilldun:**

41.     For disallowance of the Hilldun Claim;

**On the Twenty-Fifth Claim for Relief:**

42.     For recovery of any avoided transfers to Cross-Defendants;

**As to All Claims for Relief:**

43.     Costs of suit permitted under applicable law; and

44.     Any such other and further relief as is just and proper.

Dated: August 10, 2022            LEVENE, NEALE, BENDER, YOO
                                             & GOLUBCHIK L.L.P.

                                  By: _____
                                       DAVID B. GOLUBCHIK
                                       TODD M. ARNOLD
                                       JOSEPH M. ROTHBERG
                                       LEVENE, NEALE, BENDER,
                                       YOO & GOLUBCHIK L.L.P.
                                       Attorneys for Crestlloyd, LLC

# EXHIBIT "1"

PromNote-InfernoMaybach14M

## MODIFIED
## PROMISSORY NOTE
## SECURED BY DEED OF TRUST

$14,040,000.00                 LOS ANGELES, CALIFORNIA                 March 13, 2013

FOR VALUE RECEIVED, the undersigned, ("Borrower") promises to pay to INFERNO REALTY, LP as to an undivided Seven Million Forty Thousand Dollars ($7,040,000.00) and MAYBACH HOLDINGS CORPORATION, INC., as to an undivided Seven Million Dollars ($7,000,000.00) interest (collectively, "Lender") at 85 St. Paul Street West, Suite 500, Montreal, Quebec, CANADA H2Y3V4, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Fourteen Million Forty Thousand Dollars ($14,040,000.00), together with interest on the outstanding principal balance until paid in full in accordance with the terms, conditions and provisions set forth in this Promissory Note (the "Note").

INTEREST RATE. Simple interest shall accrue on the outstanding principal balance of this Note at the rate of eight percent (8%) per annum.

PRINCIPAL AND INTEREST PAYMENTS. Principal and interest shall be payable on the Maturity Date.

All payments due hereunder, including payments of principal and/or interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds.

MATURITY DATE. The entire unpaid principal balance, all unpaid accrued interest thereon, and all other amounts due hereunder shall be due and payable without demand and/or notice on the date of the close of escrow for the sale of the single family residence being constructed by Borrower on the real property located at 944 Airole Way,  Los Angeles, California  (the "Property").

PREPAYMENT.  The principal amount of this Note may be prepaid in whole or in part, without any premium and/or penalty, at any time.

INSURANCE. Insurance against loss or damage to the Property by fire, windstorm, lightning, tornado and hail and against loss and damage by such other, additional risks as may be now or hereafter embraced by an "all-risk" or "special form" insurance policy shall be maintained by Borrower until amounts due hereunder have been paid in full.  The amount of such insurance shall be one hundred percent (100%) of the full replacement cost (insurable value) of the improvements, without reduction for depreciation.  The determination of the replacement cost amount shall be adjusted annually to comply with the requirements of the insurer issuing such coverage.  Absent such annual adjustment, each policy shall contain inflation guard coverage. Full replacement costs, as used herein, means, with respect to the improvements, the cost of replacing the improvements without regard to deduction for depreciation, exclusive of the cost of excavations, foundations and

footings. Each policy shall contain a replacement cost endorsement and either an agreed amount endorsement (to avoid the operation of any co-insurance provisions) or a waiver of co-insurance provisions, all subject to Lender's approval. The maximum deductible shall be Ten Thousand Dollars ($10,000.00).

All such insurance shall (i) be with insurers fully licensed and authorized to do business in California and which have and maintain a claims paying ability rating of "B+" or better by Standard & Poor's (or equivalent rating agency) or an "B+ VIII" or better from A.M. Best, (ii) contain the complete addresses of the Property (or a complete legal description), (iii) be for terms of at least one year, with premium prepaid, and (iv) include a standard, non-contributory, beneficiary clause naming the payees of this Note, its successor and assigns, as the first beneficiary.

Borrower shall, as of the date hereof, deliver to Lender evidence that said insurance policy has been prepaid as required above with an original certificate signed by an authorized agent of the insurance company evidencing such insurance satisfactory to beneficiary. Borrower shall renew all such insurance and deliver to Lender a certificate evidencing such renewal at least thirty (30) days before any such insurance shall expire. Borrower further agrees that each such insurance policy: (i) shall provide for at least thirty (30) days notice to Lender prior to any policy reduction or cancellation due to non-payment of premium; (ii) shall contain an endorsement or agreement by the insurer that any loss shall be payable to Lender in accordance with the terms of such policy notwithstanding any act or negligence of Borrower or any other person which might otherwise result in forfeiture of such insurance; and (iii) in the event that the Property or the improvements constitutes a legal non-conforming use under applicable building, zoning or land use laws or ordinances, shall include an ordinance and law coverage endorsement which will contain Coverage A: "Loss Due to Operation of Law" (with a minimum liability limit equal to Replacement Cost With Agreed Value Endorsement), Coverage B: "Demolition Cost" and Coverage C: "Increased Cost of Construction" coverages. In the event Borrower fails to provide, maintain, keep in force or deliver and furnish to Lender the policy of insurance required by this Note or evidence of its replacement or renewal as required herein, Lender may, but shall not be obligated to, procure such insurance and Borrower shall pay all amounts advanced by Lender therefor, together with interest thereon at the Note Rate from and after the date advanced by Lender until actually repaid by Borrower, promptly upon demand by Lender.

WAIVERS. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law. No delay, omission and/or failure on the part of the Lender in exercising any right and/or remedy hereunder shall operate as a waiver of such right and/or remedy or any other right and/or remedy of Lender.

AUTHORITY. Borrower hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower.

ACCELERATION,  In the event that all or any part of the Property which is security for this Note shall be sold, assigned, mortgaged, hypothecated, or otherwise transferred, the holder of this Note, shall have the right to declare the entire unpaid balance of principal and interest to be immediately due and payable.

ATTORNEY'S FEES.  If legal action be instituted to enforce collection of amounts due hereunder, Borrower agrees to pay reasonable attorney's fees and costs incurred by the holder of this Note.

IN WITNESS WHEREOF, Borrower has executed this Note on the day and year first above written.

BORROWER:

Crestlloyd, LLC, a California Limited Liability Company

By_____

    Nile Niami, Manager

THIS NOTE IS SECURED BY A DEED OF TRUST IN FAVOR OF STEWART TITLE OF CALIFORNIA, INC. AS TRUSTEE.

MODIFICATION

THE ABOVE PROMISSORY NOTE IS AMENDED TO PROVIDE THAT THE FACE AMOUNT OF THE NOTE IS $7,000,000.00 WHICH IS THE PRINCIPAL BALANCE DUE AND OWING AS OF THIS DATE.

DATED: OCTOBER ____, 2015

INFERNO INVESTMENTS INC, a Canadian corporation

By:_____

    Julien Remillard, Director

Y:\NIAMI\944Airole\PromNote-InfernoMaybach14M.wpd        3                            3/13/13

# EXHIBIT "2"

## MEMORANDUM OF AGREEMENT

This Memorandum of Agreement is made and entered into this _1st_ day of _January_, 2016 by and between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENTS INC. ("Inferno").

### RECITALS

The parties desire to set forth their respective rights with regard to distribution of proceeds at such time as the residence being constructed by Crestlloyd (as successor to the Company) at 944 Airole Way, Los Angeles, California (the "Residence") is sold.

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1.    Incorporation of Recitals.  The above Recital is incorporated herein by this reference as though made a part hereof.

2.    Division of Profits and Losses.  Profits and Losses shall be allocated as follows:  Fifty percent (50%) to Crestlloyd for Developer fee and fifty percent (50%) to Crestlloyd and Inferno in proportion to the money loaned by each to finance the construction of the Residence.

For Example: Assume Inferno loaned $18,000,000.00 and Crestlloyd loaned $41,000,000.00.  Inferno's share of the profits and losses is 15.25% ($18,000,000 ÷ $59,000,000 = 30.5% multiplied by 50% = 15.25%).  Crestlloyd's share of the profits and losses is 84.75% ($41,000,000 ÷ $59,000,000 = 69.5% multiplied by 50% = 34.75%), plus Crestlloyd's Developer fee of 50% = 84.75%.

3.    Distributions.  All proceeds received from a sale, condemnation, financing or refinancing of the Residence shall be distributed in the following manner:

First, to repay the loan(s) obtained from a bank or third parties (excluding Crestlloyd and Inferno) and all other unpaid costs of construction of the Residence.

Second, to Crestlloyd and Inferno, pro rata, in repayment of any loans owing them, together with simple interest thereon at the rate of eight percent (8%) per annum.

Third, to Crestlloyd, the sum of ONE HUNDRED FORTY-FIVE THOUSAND DOLLARS ($145,000.00) as compensation for general office overhead and services rendered by it in connection with the construction of the Residence.

Thereafter, to Crestlloyd and Inferno in accordance with their share of the profits and losses determined in the manner set forth in paragraph 2 above.

IN WITNESS HEREOF, the parties have executed this Memorandum of Agreement, effective as of the date set forth above.

CRESTLLOYD, LLC, a California
Limited Liability Company

By _____
　　Nile Niami, Manager

INFERNO INVESTMENTS INC.

By _____
　　Julian Remillard, Director

**EXHIBIT "3"**



## This page is part of your document - DO NOT DISCARD



# 20181122920



**Pages:**
**0012**

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**11/06/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 50.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 50.00 |



**L E A D S H E E T**



**201811060250001**

**00015919186**



009447827

**SEQ:**
**20**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T72

E786156

2

*RECORDING REQUESTED BY*
*CHICAGO*
**WHEN RECORDED, RETURN TO:**

Hankey Capital, LLC
4751 Wilshire Blvd., Ste 110
Los Angeles, CA 90010
Attn: Eugene M. Leydiker



11/06/2018

*20181122920*

APN No. 4369-026-021

𝟼

---

## SUBORDINATION
## AGREEMENT

### (Deed of Trust to Deed of Trust)

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

THIS SUBORDINATION AGREEMENT ("Agreement") is entered into as of October 30, 2018, by and between CRESTLLOYD, LLC, a California limited liability company ("Owner"); and INFERNO INVESTMENT INC. ("Subordinate Lender"); and Hankey Capital, LLC ("Lender").

### RECITALS

**A.**      Subject to the terms and provisions of that certain Deed of Trust With Assignment of Rents dated March 13, 2013, executed by Owner, as Trustor, in favor of INFERNO REALTY, L.P. and MAYBACH CORPORATION HOLDINGS, INC., Subordinate Lender's predecessors-in-interest, recorded on March 13, 2013, as Document Number 20130384037 in the official records of the County of Los Angeles, State of California ("Official Records") ("Subordinate Lender's Deed of Trust"), Owner granted to Subordinate Lender's predecessors-in-interest a security interest in and to the property described in Exhibit "A" attached hereto and incorporated herein located at 944 Airole Way, Los Angeles, California (which property, together with all improvements now or hereafter located on the property, is hereinafter collectively referred to as the "Property") to secure Owner's obligations to Subordinate Lender's predecessors-in-interest (the "Subordinated Debt").

**B.**      MAYBACH CORPORATION HOLDINGS, INC. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to INFERNO REALTY, L.P. by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated June 2, 2014 and recorded on November 10, 2015 in the Official Records as Document Number 20151375606.

**C.**      INFERNO REALTY, L.P. assigned the entirety of its interest in the Subordinate Lender's Deed of Trust to Subordinate Lender by means of that certain Assignment of Note and Deed of Trust/Mortgage, dated October 21, 2015 and recorded on November 10, 2015 in the Official Records as Document Number 20151375607.

**D.**      Owner has executed or will execute a Deed of Trust, Security Agreement and Fixture Filing With Assignment of Rents ("Lender's Deed of Trust") securing, among other things, Owner's obligations to Lender as set forth in that certain Promissory Note dated October 25, 2018, in favor of Lender, in the principal amount of Eighty Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00) (the "Note"). Lender's Deed of Trust is being recorded in the Official

1

94109

Exempt from fee per GC 27388.1 (a) (1);
fee cap of $225 reached

ƵOƐ

Non-Order Search                                    Page 2 of 12        Requested By: Shivamma.Sampangi, Printed: 12/3/2021 8:02 PM

Records concurrently herewith. The Note and the Lender's Deed of Trust are collectively referred to herein as the "Loan Agreement".

E.  As a condition to Lender making a Loan (the "Loan"), to be secured by, among other things, the Lender's Deed of Trust (the "Senior Debt"), Lender requires that Lender's Deed of Trust be unconditionally and at all times remain a lien or charge upon the Property, prior and superior to all the rights of Subordinate Lender under its deed of trust and that Subordinate Lender specifically and unconditionally subordinates its deed of trust to the lien or charge of Lender's Deed of Trust.

F.  Subordinate Lender and Owner agree to the subordination in favor of Lender.

**NOW THEREFORE**, for good and valuable consideration and the receipt and adequacy of which is hereby acknowledged, and to induce Lender to make the Loan, Owner and Subordinate Lender hereby agree for the benefit of Lender as follows:

**Section 1.    Subordination.** Lender's Deed of Trust securing the Note in favor of Lender, shall unconditionally be and at all times remain a lien or charge on the Property prior and superior to Subordinate Lender's Deed of Trust.

**Section 2.    Entire Agreement.** This Agreement shall be the whole agreement with regard to the subordination of Subordinate Lender's Deed of Trust to the lien or charge of Lender's Deed of Trust, and shall supersede and cancel, but only insofar as would affect the priority of Lender's Deed of Trust, any prior agreements as to such subordination, including, without limitation, those provisions, if any, contained in Subordinate Lender's deed of trust which provide for the subordination of the deed of trust to a deed or deeds of trust or to a mortgage or mortgages.

**Section 3. Lien Subordination.** Subordinate Lender intentionally and unconditionally waives, relinquishes and subordinates all of Subordinate Lender's right, title and interest in and to the Property to the lien or charge of Lender's Deed of Trust, upon the Property and understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination, specific loans and advances are being and will be made by Lender and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination.

**Section 4. Rights Upon Insolvency.** In the event of (1) any insolvency, bankruptcy, receivership, liquidation, reorganization, arrangement, assignment for the benefit of creditors, or other similar proceeding relative to the Owner or its property (as defined in the Loan Agreement), or (2) any proceeding for the voluntary or involuntary liquidation, dissolution or other winding up of the Owner whether or not involving insolvency or bankruptcy proceedings, then and in any such event:

(a) the principal amount of, and all interest on, and all other amounts in respect of, the Senior Debt (including interest thereon accruing after the commencement of any such proceeding, whether or not such interest shall be allowed in such proceeding) shall be paid in full before any payment or distribution of any character, whether in cash, securities or other property, shall be made in respect of the Subordinated Debt; and

(b) any payment or distribution of any character, whether in cash, securities or other property, which would otherwise (but for the terms hereof) be payable or deliverable in respect of Subordinated Debt (including any payment or distribution in respect of the Subordinated Debt by reason of any other indebtedness of the Owner being subordinated to the Subordinated Debt), shall be paid or delivered directly to the Lender, or its representatives, until the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt shall have been paid in full and the Subordinate Lender or any other holder of the Subordinated Debt

2

irrevocably authorizes, empowers and directs all receivers, trustees, liquidators, conservators and others having authority in the premises to effect all such payments and deliveries.

Section 5. **Owner Obligations.** Owner agrees that, in the event that any note or other obligation of the Owner not evidencing Senior Debt, or any portion thereof, shall become due and payable before its expressed maturity for any reason, Owner will give prompt notice, in writing, of such occurrence to the Lender.

Section 6. **Rights of Lender.**

(a)     Subordinate Lender further declares, agrees and acknowledges for the benefit of the Lender, that Lender, in making disbursement pursuant to the Loan Agreement (whether obligatory or optional), is under no obligation or duty to, nor has Lender represented that it will, see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds, an any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part.

(b)     Except as otherwise provided herein, so long as any of the Senior Debt shall remain unpaid, Lender may at all times exercise any and all powers and rights which it now has or may hereafter acquire with respect to the Loan Agreement, any other security instrument, including, but not limited to deed of trust or mortgage, Collateral Security Agreement, or Membership Interest Pledge Agreement (collectively, "Security Document"), or any of the collateral subject to the Loan Agreement or any other Security Document without having to obtain any consent or approval of the Subordinate Lender and without any accountability to the Subordinate Lender, nor shall it have any liability to the Subordinate Lender for any action taken or failure to act with respect to this Agreement, the Loan Agreement, any other Security Document or the aforesaid collateral.

Section 7. **Constructive Trust.** If, notwithstanding the provisions of this Agreement, any payment or distribution of any character (whether in cash, securities or other property) shall be received by the Subordinate Lender in contravention of the terms of this Agreement, such payment or distribution shall not be commingled with any asset of the Subordinate Lender, but shall be held in trust for the benefit of, and shall be paid over or delivered and transferred to, the Lender, or its representatives or agents, for application to the payment of all Senior Debt remaining unpaid, until the principal amount of, and all interest and premium (including interest thereon accruing after the commencement of any proceedings described herein) on, and all other amounts in respect of, the Senior Debt shall have been paid in full.

Section 8. **Successors and Assigns.** This Agreement, without further reference, shall pass to and may be relied on and enforced by any transferee or subsequent holder of the Senior Debt and the Subordinated Debt.

Section 9. **Modification.** The terms of this Agreement, the subordination effectuated hereby, and the rights of the Lender and the obligations of the Subordinate Lender arising hereunder, shall  not be affected, modified or impaired in any manner or to any extent by: (i) any amendment or modification of or supplement to the Loan Agreement, any other Security Document or any other instrument or document executed or delivered pursuant thereto.

Section 10. **Notices.** All notice, consents, approvals, requests, demands, instruments or other communications to be made, given or furnished pursuant to, under or by virtue of their Agreement (each, a "Notice") shall be in writing and shall be deemed given or furnished if addressed to the party intended to receive the same at the address or such party as set forth below (i) upon receipt when personally delivered at such address, or (ii) one (1) business day after the date of delivery of such notice to a nationwide, reputable commercial courier service:

3

Lender:              HANKEY CAPITAL, LLC
                     4751 Wilshire Blvd., Suite 110
                     Los Angeles, CA 90010
                     Attention: Eugene M. Leydiker

Subordinate Lender:  INFERNO INVESTMENT INC.
                     95-4 Chemin de Kandahar
                     Mont-Tremblant, Quebec J8E 1E2

Owner:               CRESTLLOYD, LLC
                     c/o Skyline Development
                     8981 W. Sunset Blvd., Suite 303
                     West Hollywood, CA 90069
                     Attn: Nile Niami

Any party may change the address to which any notice is to be delivered to any other address within the United States of America by furnishing written notice of such change at least fifteen (15) days prior to the effective date of such change to the other parties in the manner set forth above, but no such notice of change shall be effective unless and until received by such other parties. Notices may be given on behalf of any party by its attorneys.

      **Section 11.**   **Miscellaneous.** This Agreement may not be amended or modified orally but may be amended or modified only in writing, signed by all parties hereto. No waiver of any term or provision of this Agreement shall be effective unless it is in writing, making specific reference to this Agreement and signed by the party against whom such waiver is sought to be enforced. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. This Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

      **Section 12.**   **Definitions.** Terms used in this Agreement and not defined herein shall have the respective meanings ascribed to them in the Loan Agreement. The recitals hereto shall be a part of this Agreement.

      **Section 13. Termination.** This Agreement shall terminate upon the final and indefeasible payment in full of the principal amount of, and all interest and premium on, and all other amounts in respect of, the Senior Debt.

      **Section 14. Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute and be construed as one and the same instrument.

NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER PURPOSES THAN IMPROVEMENT OF THE LAND.

IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS AGREEMENT, THE PARTIES CONSULT WITH THEIR ATTORNEYS WITH RESPECT HERETO.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date hereof.

4

NOTE: THIS AGREEMENT MAY BE EXECUTED IN COUNTERPARTS.

[SIGNATURES COMMENCE ON THE FOLLOWING PAGE.]

5

**OWNER:**

CRESTLLOYD, LLC,
a California limited liability company

By: _____
     Nile Niami, Manager

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California          )

County of LOS ANGELES )

On OCTOBER 30, 2018 before me, Nigel G. Gibbs, Notary Public
     Date                                          Here Insert Name and Title of the Officer

Personally Appeared _____ Nile Niami _____
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
              Signature of Notary Public

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

6

**SUBORDINATE LENDER:**

**INFERNO INVESTMENT INC.**

By: _____

Name:  Julien Remillard

Title:  Director

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California            )

County of_____)

On_____before me, _____
      *Date*                              *Here Insert Name and Title of the Officer*

Personally Appeared _____
                              *Name(s) of Signer(s)*

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
                    *Signature of Notary Public*

7

**CALIFORNIA ACKNOWLEDGMENT**    CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES

On OCTOBER 30 2018 before me, Nigel Gibbs Notary Public,
　　　　Date　　　　　　　　　　Here Insert Name and Title of the Officer
personally appeared Julien LeMilland
　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　Signature of Notary Public

Place Notary Seal and/or Stamp Above

──────────── **OPTIONAL** ────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Subordination Agreement
Document Date: 10/25/18　　　　　　Number of Pages: 10
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2018 National Notary Association

10

LENDER:

HANKEY CAPITAL, LLC

By: _____
    W. Scott Dobbins, President

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California          )

County of Los Angeles        )

On November 1, 2018   before me,   T. Douglas, notary Public
      Date                       Here Insert Name and Title of the Officer
Personally Appeared   W. Scott Dobbins
                      Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.



T. DOUGLAS
Notary Public – California
Los Angeles County
Commission # 2184270
My Comm. Expires Mar 22, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____
            Signature of Notary Public

8

# EXHIBIT "A"

## PROPERTY DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS
ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS
DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF
LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623
PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF
THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY,
30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07"
'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE
LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A
RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE
WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE
NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF
03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE
SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE
NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL
ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE
BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS
OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST
208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING
A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE
THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST
42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40
FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS
ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE
FOLLOWING DESCRIBED LINE:

9

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE
THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS
OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS
HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET;
THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE
WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET
FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID
WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: **4369-026-021**

10

# EXHIBIT "4"

**AMENDMENT NO. 1**

**TO MEMORANDUM OF AGREEMENT**

**AMENDMENT NO. 1**

**TO AMENDMENT OF AGREEMENT**

This Amendment No. 1 to Memorandum of Agreement is entered into this ____ day of July, 2016 by and between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENTS INC. ("Inferno").

<u>**RECITALS**</u>

A.    Crestlloyd and Inferno previously entered into a Memorandum of Agreement dated January 1, 2016 with regard to division of profits and losses on the sale of the real property located at 944 Airole Way, Los Angeles, California (the "Residence").

B.    Deeds of Trust have been recorded against the Residence in favor of Inferno to secure the loans which it, and its predecessor, previously made to Crestlloyd.

C.    Crestlloyd previously obtained a loan from First Republic Bank which loan is secured by a first Deed of Trust on the Residence. Crestlloyd desires to refinance the existing loan with a new loan to be made by First Credit Bank ("New Lender"). In order to refinance the existing loan New Lender requires that Inferno subordinate the Liens of its Deeds of Trust on the Residence to the new loan to be obtained by Crestlloyd from New Lender in the amount of Forty Million Dollars ($40,000,000.00) which will be secured by a First Trust Deed on the Residence (the "New Loan").

D.    Inferno is willing to subordinate the Liens of its Deeds of Trust on the Residence to the New Loan for the consideration hereafter set forth.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.    <u>Incorporation of Recitals</u>. Each and all of the above Recitals are incorporated herein by this reference as though set forth in full hereat.

2.    <u>Subordination</u>. Inferno hereby agrees to subordinate the Liens of its Deeds of Trust on the Residence to the Lien of the First Deed of Trust securing the New Loan. In connection therewith Inferno agrees to execute any and all documents reasonably required by New Lender to evidence the subordination.

3.    <u>Consideration</u>. In consideration of Inferno subordinating the Liens of its Deeds of Trust to a first Deed of Trust that will secure the New Loan, Crestlloyd agrees that the percentage of profits and losses set forth in paragraph 2 of the Memorandum of Agreement shall be adjusted to provide for Inferno to be allocated an additional one and one-half percent (1.5%) of the profits and losses on the sale of the Residence (the "Additional Percentage"). The Additional Percentage to be allocated to Inferno shall be deducted from the percentage of profits and losses allocated to Crestlloyd.

For Example:  Assume that, pursuant to the formula set forth in paragraph 2 of the Memorandum of Agreement, Crestlloyd is allocated eighty-four and three-quarter percent (84.75%) of the profits and losses and Inferno is allocated fifteen and one-quarter percent (15.25%) of the profits and losses.  The profits and losses will now be adjusted and allocated as follows:  83.25% to Crestlloyd and 16.75% to Inferno.

4.      No Other Changes.  Except as herein expressly provided, all of the terms and provisions of the Memorandum of Agreement  shall remain in full force and effect.

Dated the day and year set forth above.

CRESTLLOYD, LLC, a California          INFERNO INVESTMENTS INC.
Limited Liability Company

By _____          By _____
        Nile Niami, Manager                  Julien Remillard, Director

Y:\NIAMI\944Airole\AmendNo.1-MemoAgt.wpd

# EXHIBIT "5"

REVISED AMENDMENT NO 2.

TO MEMORANDUM OF AGREEMENT


This Revised Amendment No. 2 to Memorandum of Agreement is entered into this 28th day of September , 2016 between CRESTLLOYD, LLC, a California Limited Liability Company ("Crestlloyd") and INFERNO INVESTMENT, INC. ("Inferno").


## RECITALS

A.    Crestlloyd and Inferno previously entered into a Memorandum of Agreement dated January 1, 2016, which was amended July _____, 2016, with regard to division of profits and losses on the sale of the real property located at 944 Airole Way, Los Angeles, California (the "Residence").

B.    A document entitled Amendment No 2 was previously executed between the parties, however that document is deemed null and void upon execution of this Revised Amendment No. 2.

C.    Deeds of Trust have been recorded against the Residence in favor of Inferno to secure the loans which it and its predecessor previously made to Crestlloyd.

D.    Crestlloyd previously obtained a loan with First Credit Bank which loan is secured by a first Deed of Trust on the Residence. Crestlloyd desires to take on additional loans or refinance the existing loan with a new loan or loans to be made by First Credit Bank or another bank or a combination thereof (collectively "New Lender"). In order to accomplish same, New Lender requires that Inferno subordinate the Liens of its Deeds of Trust on the Residence to the new loan(s) to be obtained by Crestlloyd ("the New Loan") in an amount which, in the aggregate, including existing bank loans, shall not exceed fifty-two million dollars ($52 million), which shall be secured by a First Trust Deed on the Residence.

E.    Inferno is willing to subordinate the Liens of its Deeds of Trust on the Residence to the New Loan for the consideration hereafter set forth.

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.    Incorporation of Recitals. Each and all of the above Recitals are incorporated herein by this reference as though set forth in full hereat.

2.    Subordination. Inferno hereby agrees to subordinate the Liens of its Deeds of Trust on the Residence to the Lien of the First Deed of Trust securing the New Loan. In connection therewith Inferno agrees to execute any

and all documents reasonably required by New Lender to evidence the subordination.

     3.    <u>Incentive.</u> As an incentive for Inferno to subordinate the Liens of its Deeds of Trust to a first Deed of Trust that will secure the New Loan, Crestlloyd shall immediately pre pay to Inferno two million dollars $2,000,000.00. It is agreed that this payment shall be made in reduction of the outstanding indebtedness owing to Inferno and not as consideration or Interest.

     4.    <u>Interest and Interest Bearing Periods.</u> The parties agree that Interest shall not be payable to either party during periods when the Property is being rented out to third parties.

     5.    <u>No Other Changes.</u> Except as herein expressly provided, all of the terms and provisions of the Memorandum of Agreement as previously amended shall remain in full force and effect.

     Dated the day and year set forth above.


CRESTLLOYD, LLC, a California
Limited Liability Company

By_____
   Nile Niami, Manager

INFERNO INVESTMENT, INC.,
a Canadian Corporation

By_____
   Julien Remillard,  Director

# EXHIBIT "6"

REVISED AMENDMENT NO 3

TO MEMORANDUM OF AGREEMENT

This Amendment No. 3 to Memorandum of Agreement is entered into this
16th day of May, 2018 between CRESTLLOYD, LLC, a California Limited
Liability Company ("Crestlloyd") and INFERNO INVESTMENT INC. ("Inferno").

RECITALS

A.    Crestlloyd and Inferno previously entered into a Memorandum of
Agreement dated January 1, 2016, which was amended July _____, 2016, and
September 28, 2016 with regard to division of profits and losses on the sale of
the real property located at 944 Airole Way, Los Angeles, California (the
"Residence"). Except as modified by this Revised Amendment No. 3, all previous
items agreed to by the parties shall be incorporated herein.

B.    A previous document entitled AMENDMENT NO 3 TO
MEMORANDUM OF AGREEMENT was executed by the parties on the 29th of
March 2018

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

1.    Incorporation of Recitals.  Each and all of the above Recitals are
incorporated herein by this reference as though set forth in full hereat.

2.    The aforementioned AMENDMENT NO 3 TO MEMORANDUM OF
AGREEMENT shall be deemed null and void as if it never existed.

5.    No Other Changes.  Except as herein expressly provided, all of the
terms and provisions of the Memorandum of Agreement as previously amended
shall remain in full force and effect.

Dated the day and year set forth above.

CRESTLLOYD, LLC, a California          INFERNO INVESTMENT INC.,
Limited Liability Company              a Canadian Corporation

By _____            By _____
    Nile Niami, Manager                    Julien Remillard, Director

# EXHIBIT "7"



## SECURED PROMISSORY NOTE

$1,800,000.00

Los Angeles, California
August 9, 2017

FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("*Borrower*"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("*Lender*") the principal sum of One Million Eight Hundred Thousand Dollars ($1,800,000.00), plus interest on the unpaid principal balance thereof at the rate of 13.500% per annum.

1.      **Maturity Date; Prepayment**.  The outstanding balance owing under this Note as well as interest thereon shall be due and payable in full on February ___, 2018 (the "*Maturity Date*").  This Note may be prepaid in whole or in part without penalty or premium at any time.

2.      **Security**.  This Note is secured by a Deed of Trust (the "*Deed of Trust*") dated as of August 1, 2017, executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," covering certain real property described therein, situated in the County of Los Angeles, State of California (the "*Property*").

3.      **Application of Payments**.  All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

4.      **Late Charge**.  Borrower acknowledges that if any payment required under this Note is not paid within ten (10) days after the same becomes due and payable, the holder hereof will incur extra administrative expenses, in addition to expenses incident to receipt of timely payment, and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by the holder hereto by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that a late charge of five percent (5%) of the amount of the delinquent payment and the imposition of the default interest rate provided for below shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor (provided that no such late charge shall be payable with respect to any balloon payment due on the Maturity Date).  Borrower shall, therefore, in such event, without further notice, pay to the holder hereof as such holder's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment and any additional interest owed as a result of the imposition of the default interest rate as provided below.  The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as an express or implied agreement by the holder hereof to forbear in the collection of any delinquent payment, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise.  The right of the holder hereto to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such holder to

collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

5.     **Address for Payments**. All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

6.     **No Offset; Holder in Due Course**. Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

7.     **Waivers**. Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

8.     **Default Interest; Acceleration**. The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder. Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to three percent (3%) above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.

The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event. The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

9.    **Lawful Money; Costs of Collection**. All amounts payable hereunder are payable in lawful money of the United States. Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

10.    **Due on Sale and Encumbrance**. Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of twenty-five percent (25%) or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

**Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.**

11.    **Usury Protection**. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "*Maximum Rate*"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

12.    **Governing Law; Venue; Joint and Several Liability**. This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

13.    **Fees and Expenses**. Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other loan documents executed pursuant hereto and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

14.    **Commercial Purpose**. Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes. Borrower does not occupy, and does not intend to occupy, the Property, and no principal or owner of Borrower occupies or intends to occupy the Property.

15.    **Broker**. Borrower hereby represents and warrants that the loan evidenced by this Note was arranged by Shaya Ratner-Stauber, a real estate broker licensed with the California Bureau of Real Estate, License Number [01408879], who is receiving a fee from Borrower.

16.    **Severability**. If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note. If any provision or part thereof of this Note is stricken in accordance with the provisions of this section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

CRESTLLOYD LLC, a California limited liability company

By: _____
Nile Niami, Manager

2761568.2

4

## FIRST AMENDMENT OF PROMISSORY NOTE

This First Amendment of Promissory Note (the *"Amendment"*) is entered into to be effective as of April 13, 2018 (the *"Effective Date"*), by and between Crestlloyd, LLC, a California limited liability company (*"Borrower"*), and YOGI Securities Holdings, LLC, a Nevada limited liability company (*"Lender"*), with reference to the following facts:

## RECITALS

A.    Lender made a loan (the *"Loan"*) to Borrower in the original principal amount of $1,800,000.00. The Loan is evidenced by a Promissory Note (the *"Note"*) dated August 9, 2017.

B.    Lender is the holder of the Note and all other instruments that evidence and/or secure the Loan (collectively, the *"Loan Documents"*).

C.    Borrower and Lender wish to execute this Amendment.

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Definitions. Terms which are defined in the Note shall have the same meanings when used in this Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.    Additional Loan. Borrower acknowledges that Lender has provided additional funds pursuant to the terms of the Note and, as of the Effective Date, the outstanding principal amount on the Note is $2,044,125.00.

3.    Amendment to Section 1 of the Note. Section 1 of the Note is hereby deleted in its entirety and replaced with the following:

> 1.    Maturity Date; Prepayment. The outstanding balance owing under this Note as well as interest thereon shall be due and payable upon the earlier to occur of (i) the sale of the Property (as defined below), or (ii) October 12, 2018 (the *"Maturity Date"*). This note may be prepaid in whole or in part without penalty or premium at any time.

4.    No Other Amendments. Except as modified expressly or by necessary implication hereby and by the Amendment, all of the terms and conditions of the Note shall remain unchanged and in full force and effect. To the extent the provisions of this Amendment are inconsistent with the provisions of the Note, the provisions of this Amendment shall control and supersede such inconsistent provisions in the Note.

5.    **Successors and Assigns.** All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

LENDER:

YOGI Securities Holdings, LLC, a Nevada limited liability company

By: _____ YOGI Management Trust
Name: _____ Joseph Englanoff, Trustee
Title: _____ Manager of YOGI Securities Holdings, LLC

BORROWER:

Crestlloyd, LLC, a California limited liability company

By: _____
    Nile Niami, Manager

# EXHIBIT "8"

## Sail North Hollywood Escrow

12345 Ventura Boulevard, Suite J • Studio City, California 91604
(818) 766-3865 • (818) 760-8670 • Fax (818) 766-9848 • Fax (818) 760-8659

**BORROWER STATEMENT**
Final

**File No.:** 5125
**Officer/Escrow Officer:** Sean & John Jansen

**Printed Date/Time:** 08/17/2017 - 2:04:23PM
**Page** 1 of 1
**Closing Date:** 08/17/2017
**Disbursement Date:**

**Borrower:** Crestlloyd, LLC
8981 West Sunset Blvd., Ste 303, West Hollywood, CA 90069

**Property:** 1175 N. Hillcrest Road, Beverly Hills, CA

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | |
| **TITLE CHARGES** | | |
| Lender/Mortgagee Premium for 1,800,000.00: Chicago Title Company | 1,877.00 | |
| Mortgage Recording Fee: Chicago Title Company | 76.00 | |
| Recording Service Fee: Chicago Title Company | 40.00 | |
| **ESCROW CHARGES TO: Sail North Hollywood Escrow, Inc.** | | |
| Settlement Agent Fee | 1,000.00 | |
| Email/Overnight Loan Docs | 75.00 | |
| **LENDER CHARGES** | | |
| New to YOGI Securities Holdings, LLC: | | 1,800,000.00 |
| 30 days Prepaid Interest: YOGI Securities Holdings, LLC | 20,250.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Payoff: Justine Englanoff | 21,000.00 | |
| Payoff: Nicole Englanoff | 21,000.00 | |
| Payoff: Jacqueline Englanoff | 21,000.00 | |
| Broker Commission: Shaya Ratner-Stauber | 3,000.00 | |
| Attorney Fee - Loan & Document Preparation: Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP | 5,668.75 | |
| **SUBTOTALS** | 94,986.75 | 1,800,000.00 |
| **DUE TO BUYER/BORROWER** | 1,705,013.25 | |
| **TOTALS** | 1,800,000.00 | 1,800,000.00 |

THIS IS A FINAL CLOSING STATEMENT

# EXHIBIT "9"

# SECURED PROMISSORY NOTE

$17,499,900.00

Los Angeles, California
May **22**, 2018

FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("*Borrower*"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("*Lender*") the principal sum of up to $17,499,900.00 (the "*Loan Amount*"), plus interest on the unpaid principal balance thereof as detailed below.

1.     **Interest Rate; Maturity Date; Repayment.**

a.     The outstanding principal amount of the Loan shall accrue interest at the rate of 5.714% per annum (the "*Note Rate*"). Notwithstanding the previous sentence, the Note Rate shall be calculated on the entire Loan Amount, regardless of whether any portion of the Loan Amount has not been advanced pursuant to Section 2 below.

b.     The outstanding balance owing under this Note as well as interest thereon shall be due and payable in full on the earlier of (i) the sale of any of the Hillcrest Property, the Airole Property or the Copa Property (as each such term is defined in Section 3 below) such that the entire Loan Amount can be repaid from proceeds of such sale, and (ii) May **22**, 2019 (the "*Maturity Date*").

c.     This Note may be not be prepaid in whole or in part except in accordance with this Section.

2.     **Advances under the Note.** Advances of Loan proceeds under this Note will be disbursed as follows:

a.     Lender shall retain $999,900 as prepaid interest, calculated at the Note Rate on the entire Loan Amount.

b.     Lender shall advance an amount up to $12,500,000 of the Loan Amount, to be disbursed in connection with the closing of the loan contemplated under this Note upon receipt of (i) confirmation of recording of the Deed of Trust and (ii) receipt by Lender of any required title insurance policies relating to the Deed of Trust.

c.     Lender shall advance up to the remaining available Loan Amount, in the amount of $4,000,000, to Borrower upon receipt of a written request from Borrower.

3.     **Security.** This Note is secured by (i) a Deed of Trust dated as of May 1, 2018 (the "*Hillcrest Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1175 Hillcrest Road, Beverly Hills, California 90210 (the "*Hillcrest Property*"), (ii) a Deed of Trust dated as of May 1, 2018 (the "*Airole Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 944 Airole Way, Los Angeles, California 90077 (the "*Airole Property*"), and (iii) a Deed of Trust dated as of May 1, 2018 (the "*Copa Deed of Trust*" and, together with the Hillcrest Deed of Trust and the Airole Deed of

Trust, the "**Deed of Trust**"), executed by Holding Company of Beverly Hills, LLC, a California limited liability company, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 301 Copa de Oro Road, Los Angeles, California 90077 (the "**Copa Property**" and, together with the Hillcrest Property and the Airole Property, the "**Property**").

4.    **Application of Payments**. All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

5.    **Address for Payments**. All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

6.    **No Offset; Holder in Due Course**. Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

7.    **Waivers**. Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

8.    **Default Interest; Acceleration**. The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder. Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10.000% above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.

The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event. The acceptance

by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

9. **Lawful Money; Costs of Collection**. All amounts payable hereunder are payable in lawful money of the United States. Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

10. **Due on Sale and Encumbrance**. Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section.

**Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.**

11. **Usury Protection**. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "*Maximum Rate*"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity

hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

12. **Governing Law; Venue; Joint and Several Liability**. This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

13. **Fees and Expenses**. Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other loan documents executed pursuant hereto and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

14. **Commercial Purpose**. Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly the development of the Airole Property. Borrower does not occupy, and does not intend to occupy, the Airole Property, and no principal or owner of Borrower occupies or intends to occupy the Airole Property.

15. **Severability**. If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note. If any provision or part thereof of this Note is stricken in accordance with the provisions of this Section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

Crestlloyd, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

50942152                                    - 4 -

# EXHIBIT "10"

## SECURED PROMISSORY NOTE

$30,188,235.00

Los Angeles, California
October 16 , 2018

FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("***Borrower***"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("***Lender***"), the principal sum of up to $30,188,235.00 (the "***Loan Amount***"), plus interest on the unpaid principal balance thereof as detailed below.

### 1.    Interest Rate; Maturity Date; Repayment.

a.    The outstanding principal amount of the loan evidenced by this Note (the "**Loan**") shall accrue interest at the rate of 3.975% per annum (the "***Note Rate***"). Notwithstanding the previous sentence, the Note Rate shall be calculated on the entire Loan Amount, regardless of whether any portion of the Loan Amount has not been advanced pursuant to Section 2 below.

b.    The outstanding principal balance owing under this Note as well as interest thereon shall be due and payable in full on the earlier of (i) the sale of either the Hillcrest Property or the Airole Property (as each such term is defined in Section 3 below) such that the entire Loan Amount shall be repaid from proceeds of such sale, or (ii) June 18 , 2019 (the "***Maturity Date***"). Additionally: (i) upon the sale of the Londonderry Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (ii) upon the sale of the Bellagio Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (iii) upon the sale of the Carcassonne Property (as defined in Section 3 below) $15,000,000.00 shall be due and payable and (iv) upon the sale of the Stone Ridge Property (as such defined in Section 3 below) $5,000,000.00 shall be due and payable.

c.    This Note may be prepaid in whole or in part; however the $800,000.00 of prepaid interest is guaranteed and no portion shall be refunded upon any principal payments made prior to the Maturity Date whether obligatory under the terms of this Note or made at Borrower's option.

### 2.    Advances under the Note.

2.1    Timing.    Advances of Loan proceeds under this Note will be disbursed as follows:

a.    Lender shall retain $800,000.00 as prepaid interest, calculated at the Note Rate on the entire Loan Amount.

b.    Lender has already advanced $17,499,900.00 under a Promissory Note dated May 22, 2018 and $2,188,235.00 under a Promissory Note dated August 9, 2017 as amended previously executed by Borrower in favor of Lender (together, the "**Prior Notes**").

c.    Lender shall advance an amount equal to $4,500,100.00 of the Loan Amount, to be disbursed in connection with the closing of the Loan contemplated under this Note upon receipt of confirmation of recording of the Deeds of Trust.

d. So long as there is no uncured breach by Borrower of any of the covenants or obligations of Borrower under any of the documents executed by Borrower in connection with the Loan (collectively, "**Loan Documents**"), Lender shall advance up to the remaining available Loan Amount, in the amount of $5,200,000.00, to Borrower within five (5) business days after Lender's receipt of a written request from Borrower.

2.2. Title Endorsements. As a condition to each advance, at Lender's sole and absolute discretion Lender may require Borrower to obtain, in connection with any or all requested disbursements, at Borrower's sole cost and expense, title endorsements satisfactory to Lender to protect Lender against mechanic's liens, to be attached to and be a part of Lender's title policies.

2.3. Insurance. Borrower shall furnish to Lender evidence of builders risk insurance for the Property (as defined below) in amounts and with an insurance company satisfactory to Lender and with a standard mortgagee's endorsement naming Lender as first mortgagee.

2.4. Inspection. Lender and its agents shall, at all times until the Note is fully repaid, have the right of entry and free access to the Property and the right to inspect all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property. It is expressly understood and agreed that Lender is not under any duty to supervise or to inspect the work or construction or examine any books and records, and that any such inspection or examination is for the sole purpose of protecting the security of Lender and preserving Lender's rights hereunder. Failure to inspect the work or any part thereof shall not constitute a waiver of any rights of Lender; and inspection not followed by notice of default shall not constitute a waiver of any default then existing. In no event shall any inspection by Lender constitute a representation that there has been or will be compliance with the plans and specifications or that the construction is free from defective materials or workmanship.

2.5. Exculpatory Provisions. Borrower acknowledges, understands and agrees as follows:

2.5.1 Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of the quality, adequacy or suitability of the following: (a) the plans and specifications or amendments, alterations and additions thereto; (b) architects, contractors, subcontractors, and materialmen employed or utilized in the construction, or workmanship of or the materials used by any of them; or (c) the progress or course of construction and its conformance or nonconformance with the plans and specifications or amendments, alterations and changes thereto.

2.5.2 Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction.

2.5.3 The consent or approval by Lender to or of any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act.

2.5.4   By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Lender pursuant hereto or pursuant to the loan documents, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

2.5.5   Lender shall in no way be liable for any acts or omissions of the Borrower, agent, contractor or any person furnishing labor and/or materials used in relation to the Property.

2.6.   Protection Against Liens.  Borrower agrees to fully pay and discharge all claims for labor done, material and services furnished in connection with the Property, to diligently file or procure the filing of a valid notice of completion upon completion of construction, to diligently file or procure the filing of a notice of cessation upon the event of a cessation of labor on the work of improvement for a continuous period of thirty (30) days or more, and to take all other reasonable steps to forestall the assertion of claims of lien against the Property or any part thereof and/or claims against Lender.  Borrower irrevocably appoints, designates and authorizes Lender as its agent (said agency being coupled with an interest) with the authority, but without any obligation, to file for record any notice of completion, cessation of labor, or any other notice that Lender deems necessary or desirable to protect its interests under the Note or the Loan Documents.  Nothing herein contained shall require Borrower to pay any claims for labor, materials, or services which Borrower in good faith disputes and which Borrower, at its own expense, is currently and diligently contesting; provided that Borrower shall, within ten (10) days after filing of any claim of lien, record in the Office of the County Recorder where the Property is located, obtain a surety bond sufficient to release said claim of lien or post such other security or make such other arrangements as Lender may approve in writing.

2.7.   Books, Records and Plans.  Borrower shall maintain full and complete books of account and other records concerning the Property, and shall furnish to Lender, at any time and from time to time, such financial data, plans and specifications as Lender shall reasonably request relating to the Property.  Borrower shall maintain at all times a full and current set of working drawings on the site of the Property and available for inspection by Lender or its representatives.

2.8.   Relationship.  Nothing contained herein shall be deemed or construed by the parties hereto or any third person to create a partnership or joint venture or any association between the parties other than the relationship of lender and borrower.

**3.     Security**.  This Note is secured by: (i) a Deed of Trust dated of even date herewith (the "***Hillcrest Deed of Trust***"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "***Hillcrest Property***"), (ii) a Deed of Trust dated of even date herewith (the "***Airole Deed of Trust***"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 944 Airole Way, Los Angeles, California 90077 (the "***Airole Property***"), (iii) a Deed of Trust dated of even date

herewith (the "***Bellagio Deed of Trust***"), executed by 10701 Bellagio Road, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 10701 Bellagio Road, Los Angeles, California (the "***Bellagio Property***"); (iv) a Deed of Trust dated of even date herewith (the "***Carcassonne Deed of Trust***"), executed by Carcassonne Fine Homes, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 627 North Carcassonne Road, Los Angeles, California (the "***Carcassonne Property***"), (v) a Deed of Trust dated of even date herewith (the "***Stone Ridge Deed of Trust***"), executed by Marbella Construction, Inc., as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 3381 Stone Ridge Lane, Los Angeles, California (the "***Stone Ridge Property***") and (vi) a Deed of Trust dated of even date herewith (the "***Londonderry Deed of Trust***"), executed by 1369 Londonderry Estate, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1369 Londonderry Place, Los Angeles, California (the "**Londonderry *Property***"). The Hillcrest Deed of Trust, the Airole Deed of Trust, the Bellagio Deed of Trust, the Carcassonne Deed of Trust, the Stone Ridge Deed of Trust and the Londonderry Deed of Trust are collectively referred to herein as the "***Deeds of Trust***". The Hillcrest Property, the Airole Property, Bellagio Property, the Carcassonne Property, the Stone Ridge Property and the Londonderry Property are collectively referred to herein as the "***Property***".

4.    **Application of Payments**. All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

5.    **Address for Payments**. All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

6.    **No Offset; Holder in Due Course**. Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

7.    **Waivers**. Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

**8.**     **Default Interest; Acceleration**.  The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder.  Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10.00% above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.  The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event.  The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

**9.**     **Lawful Money; Costs of Collection**.  All amounts payable hereunder are payable in lawful money of the United States.  Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

**10.**     **Due on Sale and Encumbrance**.  Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion.  Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable.  If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section.  Notwithstanding anything to the contrary in this Section 10 upon the sale of the

Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

**11.    Usury Protection**. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "***Maximum Rate***"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

**12.    Governing Law; Venue; Joint and Several Liability**. This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

**13.    Fees and Expenses**. Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other Loan Documents and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

**14.    Commercial Purpose**. Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly the development of the Property. Borrower does not occupy, and does not intend to occupy, the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property and no principal or owner of Borrower (including but not limited to Nile Niami) occupies or intends to occupy the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property.

- 6 -

**15.**  **Severability**.  If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note.  If any provision or part thereof of this Note is stricken in accordance with the provisions of this Section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

**16.**  **Limits on Senior Loan Balances**.  Borrower agree that at no time while any portion of the Note remains unpaid shall senior indebteness: (i) encumbering the Hillcrest Property exceed $28,700,000.00, (ii) encumbering the Airole Property exceed $115,000,000.00, (iii) encumbering the Londonderry Property exceed $29,000,000.00, (iv) encumbering the Bellagio Property exceed $34,000,000.00, (v) encumbering the Carcassonne Property exceed $34,000,000.00, or (vi) encumbering the Stone Ridge Property exceed $17,100,000.00.

**17.**  **Prior Notes**.  The Prior Notes are hereby cancelled and superseded by this Note.

Crestlloyd, LLC,
a California limited liability company

By: _____
    Nile Niami, Manager

# EXHIBIT "11"

**Sail North Hollywood Escrow**

12345 Ventura Boulevard, Suite J • Studio City, California 91604
(818) 766-3865 • (818) 760-8670 • Fax (818) 766-9848 • Fax (818) 760-8659

#1

## BORROWER STATEMENT
### Estimated

File No.: 5595-JFJ
Officer/Escrow Officer: Sean & John Jansen

Printed Date/Time: 10/17/2018 - 2:29:58PM
Page 1 of 1
Closing Date: 10/19/2018
Disbursement Date:

Borrower: Crestlloyd, LLC
8981 W. Sunset Blvd., Suite 303, West Hollywood, CA 90069

Property: 1175 North Hillcrest Road, Beverly Hills, CA

| DESCRIPTION | | DEBITS | CREDITS |
|---|---|---|---|
| **TOTAL CONSIDERATION** | | | |
| **TITLE CHARGES** | | | |
| Lender/Mortgagee Premium for 30,188,235.00: Chicago Title Company | | 44,280.00 | |
| Endorsement: Chicago Title Company | | 5,976.00 | |
| Sub Escrow Fee: Chicago Title Company | | 125.00 | |
| Wire/Express: Chicago Title Company | | 100.00 | |
| Messenger Fee: Chicago Title Company | | 50.00 | |
| Mortgage Recording Fee: Chicago Title Company | | 750.00 | |
| Recording Service Fee: Chicago Title Company | | 20.00 | |
| Senate Bill 2 Recording Fee: Chicago Title Company | | 225.00 | |
| Tax Default - APN: 4362-003-044 - Belagio Road: Chicago Title Company | | 144,081.12 | |
| Tax Default APN: 4362-003-043 Carcassonne: Chicago Title Company | | 145,531.70 | |
| **ESCROW CHARGES TO: Sail North Hollywood Escrow, Inc.** | | | |
| Settlement Agent Fee | | 3,000.00 | |
| Email/Overnight Loan Docs | | 75.00 | |
| **LENDER CHARGES** | | | |
| New- to Yogi Securities Holdings, LLC: | | | 30,188,235.00 |
| Prepaid Interest: Yogi Securities Holdings, LLC | | 800,000.00 | |
| Available Draw: Yogi Securities Holdings, LLC | | 5,200,000.00 | |
| **LOAN PAYOFF: Yogi Securities Holdings, LLC** | | | |
| Principal Balance | 17,499,900.00 | | |
| Total Loan Payoff | | 17,499,900.00 | |
| **LOAN PAYOFF: Yogi Securities Holdings, LLC** | | | |
| Principal Balance | 2,188,235.00 | | |
| Total Loan Payoff | | 2,188,235.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | | |
| Attorney Fee: Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP | | 21,000.00 | |
| **SUBTOTALS** | | 26,053,348.82 | 30,188,235.00 |
| **DUE TO BUYER/BORROWER** | | 4,134,886.18 | |
| **TOTALS** | | 30,188,235.00 | 30,188,235.00 |

Crestlloyd, LLC

DocuSigned by:
Nile Niami

10/18/2018 11:36:30 AM PDT

Nile Niami, Manager

THIS IS AN ESTIMATED CLOSING STATEMENT FIGURES ARE SUBJECT TO CHANGE

**Sail North Hollywood Escrow**

*12345 Ventura Boulevard, Suite J • Studio City, California 91604*
*(818) 766-3865 • (818) 760-8670 • Fax (818) 766-9848 • Fax (818) 760-8659*

### BORROWER STATEMENT
Final

| | | |
|---|---|---|
| **File No.:** 5444-JFJ | **Printed Date/Time:** | 05/29/2018 - 1:06:52PM |
| **Officer/Escrow Officer:** Sean & John Jansen | Page | 1 of 1 |
| | **Closing Date:** | 05/29/2018 |
| | **Disbursement Date:** | 05/29/2018 |

**Borrower:**    Crestlloyd, LLC
                 8981 West Sunset Blvd., Suite #300, West Hollywood, CA 90069

**Property:** 944 Airole Way, Los Angeles, CA 90077

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | |
| **TITLE CHARGES** | | |
| Lender/Mortgagee Premium for 17,499,900.00: Chicago Title Company | 7,865.00 | |
| Endorsement: Chicago Title Company | 100.00 | |
| Mortgage Recording Fee: Chicago Title Company | 230.00 | |
| Recording Service Fee: Chicago Title Company | 45.00 | |
| **ESCROW CHARGES TO: Sail North Hollywood Escrow, Inc.** | | |
| Settlement Agent Fee | 1,000.00 | |
| Email/Overnight Loan Docs | 75.00 | |
| **LENDER CHARGES** | | |
| New to Yogi Securities Holdings, LLC: | | 17,499,900.00 |
| Prepaid Interest: Yogi Securities Holdings, LLC | 999,900.00 | |
| Available Loan Proceeds: Yogi Securities Holdings, LLC | 4,000,000.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Attorney Fee: Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP | 3,100.00 | |
| Homeowner's Insurance: Public Insurance Agency POC $191,021.75 | | |
| Payment of Closing Costs to Escrow No. 5443-JFJ: Sail North Hollywood Escrow, Inc. | 4,785.00 | |
| Payment of Closing Costs to Escrow No. 5445-JFJ: Sail North Hollywood Escrow, Inc. | 4,785.00 | |
| Travel Notary Service: Nigel Gibbs * Notary | 200.00 | |
| **SUBTOTALS** | 5,022,085.00 | 17,499,900.00 |
| **DUE TO BUYER/BORROWER** | 12,477,815.00 | |
| **TOTALS** | 17,499,900.00 | 17,499,900.00 |

THIS IS A FINAL CLOSING STATEMENT

*Sail North Hollywood Escrow*

12345 Ventura Boulevard, Suite J • Studio City, California 91604
(818) 766-3865 • (818) 760-8670 • Fax (818) 766-9848 • Fax (818) 760-8659

## BORROWER STATEMENT
### Final

**File No.:** 5125
**Officer/Escrow Officer:** Sean & John Jansen

**Printed Date/Time:** 08/17/2017 - 12:10:58PM
Page    1 of 1
**Closing Date:** 08/23/2017
**Disbursement Date:**

**Borrower:** Crestlloyd, LLC
8981 West Sunset Blvd., Ste 303, West Hollywood, CA 90069

**Property:** 1175 N. Hillcrest Road, Beverly Hills, CA

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | |
| **TITLE CHARGES** | | |
| Lender/Mortgagee Premium for 1,800,000.00: Chicago Title Company | 1,877.00 | |
| Mortgage Recording Fee: Chicago Title Company | 76.00 | |
| Recording Service Fee: Chicago Title Company | 40.00 | |
| **ESCROW CHARGES TO: Sail North Hollywood Escrow, Inc.** | | |
| Settlement Agent Fee | 1,000.00 | |
| Email/Overnight Loan Docs | 75.00 | |
| **LENDER CHARGES** | | |
| New to YOGI Securities Holdings, LLC: | | 1,800,000.00 |
| 30 days Prepaid Interest: YOGI Securities Holdings, LLC | 20,250.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | |
| Payoff: Justine Englanoff | 21,000.00 | |
| Payoff: Nicole Englanoff | 21,000.00 | |
| Payoff: Jacqueline Englanoff | 21,000.00 | |
| Broker Commission: Shaya Ratner-Stauber | 3,000.00 | |
| Attorney Fee - Loan & Document Preparation: Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP | 5,668.75 | |
| **SUBTOTALS** | 94,986.75 | 1,800,000.00 |
| **DUE TO BUYER/BORROWER** | 1,705,013.25 | |
| **TOTALS** | 1,800,000.00 | 1,800,000.00 |

THIS IS A FINAL CLOSING STATEMENT

# EXHIBIT "12"

# Sail North Hollywood Escrow

*12345 Ventura Boulevard, Suite J • Studio City, California 91604*
*(818) 766-3865 • (818) 760-8670 • Fax (818) 766-9848 • Fax (818) 760-8659*

## BUYER/BORROWER STATEMENT
### Final

| | |
|---|---|
| **File No.:** 6023-JFJ | |
| **Officer/Escrow Officer:** Sean & John Jansen | |

| | |
|---|---|
| **Printed Date/Time:** | 02/07/2020 - 12:50:20PM |
| | Page      1 of 1 |
| **Closing Date:** | 02/07/2020 |
| **Disbursement Date:** | 02/07/2020 |
| **Loan Number:** | 12-07489446 |

**Buyer/Borrower:** Trousdale Estate, LLC
  9701 West Pico Blvd. Suite 201-A, Los Angeles, CA 90035

**Seller:** Crestlloyd, LLC
  8981 W. Sunset Blvd., Suite 303, West Hollywood, CA 90069

**Property:** 1175 N. Hillcrest Road, Beverly Hills, CA 90210

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | 38,325,000.00 | |
| Initial Deposit | | 530,000.00 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Property Tax @ 129,974.34 per 6 month(s) 2/07/2020 to 7/01/2020 | 103,979.48 | |
| Seller Credit - Pay-Down to Yogi Securities Holdings | | 9,352,824.23 |
| **TITLE CHARGES** | | |
| Owner's Premium for 38,325,000.00: Chicago Title Company | 23,788.00 | |
| Lender/Mortgagee Premium for 28,650,000.00: Chicago Title Company | 12,589.00 | |
| County Transfer Tax: Chicago Title Company | 42,157.50 | |
| Endorsement: Chicago Title Company | 50.00 | |
| Sub Escrow Fee: Chicago Title Company | 250.00 | |
| Messenger Fee: Chicago Title Company | 44.00 | |
| Deed Recording Fee: Chicago Title Company | 172.00 | |
| Mortgage Recording Fee: Chicago Title Company | 153.00 | |
| Recording Service Fee: Chicago Title Company | 45.00 | |
| Binder Fee for 38,325,000.00: Chicago Title Company | 2,378.80 | |
| Inspection Fee: Chicago Title Company | 55.00 | |
| Reconveyance Fee: Chicago Title Company | 190.00 | |
| Notary Services: Travel Signer | 200.00 | |
| **ESCROW CHARGES TO: Sail North Hollywood Escrow, Inc.** | | |
| Settlement Agent Fee | 10,000.00 | |
| Email / Overnight Loan Docs | 75.00 | |
| **LENDER CHARGES** | | |
| New Deed of Trust to First Republic Bank: | | 28,650,000.00 |
| Prepaid Interest From 2/06/2020 To 2/01/2020, -5 Days, @ 3,183.3333/per day: First Republic Bank | | 15,916.65 |
| Tax Service: First Republic Bank | 84.00 | |
| Flood Certification: First Republic Bank | 6.00 | |
| Processing Fee: First Republic Bank | 3,595.00 | |
| Document Preparation: First Republic Bank | 30.00 | |
| Courier Fee: First Republic Bank | 30.00 | |
| Insurance Monitoring Fee: First Republic Bank | 55.00 | |

# EXHIBIT "13"

February 8, 2020

**VIA EMAIL - nile@skylinedevelopment.net**

Mr. Nile Niami
1369 Londonderry Estate, LLC
Marbella Construction, Inc.
c/o Skyline Development
8981 West Sunset Boulevard, Suite 303
West Hollywood, California 90069

      Re:    <u>$5,200,000 Loan and $30,188,235 Loan</u>

Dear Mr. Nile:

      This letter shall confirm our conversation where we agreed how to apply the payment to Yogi Securities Holdings, LLC ("**Lender**") of $9,352,824.23 paid when Trousdale Estate, LLC acquired from Crestlloyd, LLC the property located at 1175 N. Hillcrest Road, Beverly Hills, California 90210 on February 7, 2020.

      We agreed that that the payment would be first used to payoff the loan (the "**$5,200,000 Loan**") in the original principal amount of $5,200,000.00 from Lender to 1369 Londonderry Estate, LLC and Marbella Construction, Inc. The $5,200,000 Loan matured on November 20, 2019. Until that time interest was accruing on the $5,200,000 Loan at the rate of 9.75% per annum. After maturity, the $5,200,000 Loan was accruing interest at a default rate of 10% per annum.

      The balance would be used to pay down the loan (the "**$30,188,235 Loan**") in the original principal amount of $30,188,235 from Lender to Crestlloyd, LLC. The $30,188,235 Loan matured on October 16, 2019. Until that time interest was accruing on the $30,188,235 Loan at the rate of 4% per annum. After maturity the $30,188,235 Loan was accruing interest at a default rate of 10% per annum.

      You acknowledge and agree that both loans are in default.

      At maturity on November 20, 2019 the amount owing on the $5,200,000 Loan (principal and interest was $6,297,508.17 (as set forth in the 4th amendment to the $5,200,000 Loan).

      Default interest is 10% per annum starting November 19th, on $6,297,508.17 which translates to $1,725.34 per day of default interest. Between the maturity on November 20, 2019 to payoff on February 7, 2020 is 80 days.

4307152.1

Nile Niami
February 8, 2020
Page 2

Accordingly the amount of default interest accrued on February 7th was $138,027.20
($1,725.34 x 80 days). Therefore the total payoff amount for the $5,200,000 Loan on February
7, 2020 was $6,297,508.17 + $138,027.20= $6,435,535.37.

Applying $6,435,535.37 to satisfy in full the $5,200,000 Loan leaves $2,917,288.86 to be
credited towards the $30,188,235 Loan.

On October 16, 2019 the total due on the $30,188,235 Loan was $31,735,672.72 (as set
forth in the 2nd amendment to the $30,188,235 Loan). Default interest is 10% per annum starting
October 16, 2019. The time period until the pay down on February 7, 2020 is 115 days.
$31,735,672.72  x .10 divided by 365 is $8,694.70 per day of interest for a total of $999,890.50
of accrued interest until the pay down on February 7, 2020.

On February 7, 2020 total due on the $30,188,235 Loan was $31,735,672.72 +
$999,890.50 =$32,735,563.22.

On February 7, 2020 the balance of funds paid to Lender after paying off the $5,200,000
Loan was $2,917,288.86 (from the Hillcrest sale) and deducting this amount from the amount
then owing on the $30,188,235 Loan leaves $29,818,274.36 owing on the $30,188,235 Loan as
of February 8, 2020 which amount is accruing interest at 10% per annum from that date.

Very truly yours,

YOGI Securities Holdings, LLC

Joseph Englanoff, Trustee of YOGI Management Trust

ACKNOWLEDGED AND AGREED TO:

Nile Niami, individually and on behalf of
1369 Londonderry Estate, LLC, Marbella Construction, Inc.,
and Crestlloyd, LLC

4307152.1

# EXHIBIT "14"

## Sail North Hollywood Escrow

*12345 Ventura Boulevard, Suite J • Studio City, California 91604*
*(818) 766-3865 • (818) 760-8670 • Fax (818) 766-9848 • Fax (818) 760-8659*

### SELLER'S CLOSING STATEMENT
**Amended Final**

**File No.:** 6618-JFJ
**Officer/Escrow Officer:** Sean & John Jansen

**Printed Date/Time:** 07/16/2021 - 2:08:50PM
Page    1  of 2
**Closing Date:**    07/09/2021
**Disbursement Date:**    07/09/2021

**Buyer/Borrower:** Londonderry Property, LLC, a California limited liability company
317 East Carrillo Street, Santa Barbara, CA  93101

**Seller:** 1369 Londonderry Estate LLC
4470 W Sunset Blvd, Ste 107 PMB 362, Los Angeles, CA  90027

**Property:** 1369 Londonderry Place, Los Angeles, CA  90069

| DESCRIPTION | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | 26,000,000.00 |
| **PRORATIONS/ADJUSTMENTS:** | | |
| Property Tax @ 52,967.74 per 6 month(s) 7/01/2021 to 7/09/2021 | 2,354.12 | |
| **COMMISSION(S):** | | |
| Listing Broker: The Agency | 520,000.00 | |
| Selling Broker: Compass | 520,000.00 | |
| **TITLE CHARGES** | | |
| Owner's Premium for 26,000,000.00: Chicago Title Company | 17,061.00 | |
| County Transfer Tax: Chicago Title Company | 28,600.00 | |
| City Transfer Tax: Chicago Title Company | 117,000.00 | |
| Sub Escrow Fee: Chicago Title Company | 125.00 | |
| Messenger Fee: Chicago Title Company | 19.06 | |
| Deed Recording Fee: Chicago Title Company | 48.00 | |
| Recording Service Fee: Chicago Title Company | 90.00 | |
| Inspection: Chicago Title Company | 110.00 | |
| Sub and Recon #14: Chicago Title Company | 250.00 | |
| Sub and Recon #17: Chicago Title Company | 250.00 | |
| Dismissal Bankruptcy: Chicago Title Company | 250.00 | |
| **ESCROW CHARGES TO: Sail North Hollywood Escrow, Inc.** | | |
| Settlement Agent Fee | 13,000.00 | |
| Processing Fee | 150.00 | |
| Document Preparation Fee | 100.00 | |
| Escrow Fee (Credit) | | 893.20 |
| **LOAN PAYOFF: First Republic Bank** | | |
| Principal Balance | 4,200,000.00 | |
| Interest From        To 7/09/2021 | 302,750.00 | |
| Statement / Fax Demand Fee | 45.00 | |
| Late Charge | 22,050.00 | |
| Reconveyance Fee | 200.00 | |
| Escrow Deficit | 378,660.52 | |
| Legal Fees | 6,858.88 | |
| Bankruptcy Fees | 4,300.00 | |
| Total Loan Payoff | 4,914,864.40 | |
| **LOAN PAYOFF: First Republic Bank** | | |
| Principal Balance | 10,200,000.00 | |
| Interest From  To 7/09/2021 | 732,164.38 | |
| Escrow Deficit | 192,844.68 | |
| Legal Fees | 6,858.88 | |
| SBA - PPP Fee | 20,233.97 | |
| Statement / Fax Demand Fee | 45.00 | |

**Sail North Hollywood Escrow**

*12345 Ventura Boulevard, Suite J • Studio City, California 91604*
*(818) 766-3865 • (818) 760-8670 • Fax (818) 766-9848 • Fax (818) 760-8659*

**SELLER'S CLOSING STATEMENT**
**Amended Final**

**File No.:** 6618-JFJ

**Printed Date/Time:** 07/16/2021 - 2:08:50PM
Page    2   of 2

**Property:** 1369 Londonderry Place, Los Angeles, CA 90069

| DESCRIPTION | | DEBITS | CREDITS |
|---|---|---|---|
| Reconveyance Fee | 200.00 | | |
| UCC Termination Fees - 2 | 50.00 | | |
| Bankruptcy Fee | 4,300.00 | | |
| Total Loan Payoff | | 11,156,696.91 | |
| **LOAN PAYOFF: YOGI Securities Holdings, LLC** | | | |
| Principal Balance | 2,620,000.00 | | |
| Interest Per Diem From  5/10/2021 To  7/09/2021, 60 Days, @ 753.7000 | 45,222.00 | | |
| Legal Fees | 33,900.00 | | |
| Total Loan Payoff | | 2,699,122.00 | |
| **LOAN PAYOFF: Yogi Securities Holdings, LLC** | | | |
| Principal Balance | 6,013,000.00 | | |
| Deposit of overpayment from Yogi Securities Holdings, LLC | -4,000.00 | | |
| Total Loan Payoff | | 6,009,000.00 | |
| **ADDITIONAL DISBURSEMENTS:** | | | |
| Home Owner's Warranty: Home Warranty of America | | 1,500.00 | |
| Natural Hazard Report Fee: MyNHD, Inc. | | 94.95 | |
| Retrofit Inspection: Ace Renovators & Retrofitting Inc. | | 120.00 | |
| Certificate Of Compliance: City of Los Angeles - DWP | | 15.00 | |
| Report Of Residential Property Records: City of Los Angeles | | 72.76 | |
| **SUBTOTALS** | | 26,000,893.20 | 26,000,893.20 |
| **TOTALS** | | 26,000,893.20 | 26,000,893.20 |

THIS IS AN AMENDED FINAL CLOSING STATEMENT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Los Angeles, California 90034.

A true and correct copy of the foregoing document entitled **DEFENDANT CRESTLLOYD LLC'S CROSS-CROMPLAINT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 10, 2022,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Kyra E Andrassy    kandrassy@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Todd M Arnold    tma@lnbyg.com
- Jerrold L Bregman    jbregman@bg.law, ecf@bg.law
- Ryan Coy    rcoy@bg.law, ecf@bg.law
- Marguerite Lee DeVoll    mdevoll@watttieder.com, zabrams@watttieder.com
- Karol K Denniston    karol.denniston@squirepb.com, travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Danielle R Gabai    dgabai@danninggill.com, dgabai@ecf.courtdrive.com
- Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;fc3@jmbm.com;tmg@ecf.inforuptcy.com
- David B Golubchik    dbg@lnbyg.com, stephanie@lnbyb.com
- Andrew Goodman    agoodman@andyglaw.com, Goodman.AndrewR102467@notify.bestcase.com
- Jonathan Gottlieb    jdg@lnbyg.com
- James Andrew Hinds    jhinds@hindslawgroup.com;mduran@hindslawgroup.com, mduran@hindslawgroup.com
- Robert B Kaplan    rbk@jmbm.com
- Jane G Kearl    jkearl@watttieder.com
- Jennifer Larkin Kneeland    jkneeland@watttieder.com, zabrams@watttieder.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- John A Moe    john.moe@dentons.com, glenda.spratt@dentons.com;derry.kalve@dentons.com
- Samuel A Newman    sam.newman@sidley.com, samuel-newman-2492@ecf.pacerpro.com;laefilingnotice@sidley.com
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- Sharon Oh-Kubisch    sokubisch@swelawfirm.com, gcruz@swelawfirm.com;1garrett@swelawfirm.com;jchung@swelawfirm.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Victor A Sahn    victor.sahn@gmlaw.com, vsahn@ecf.courtdrive.com;pdillamar@ecf.courtdrive.com;patricia.dillamar@gmlaw.com,Karen.Files@gmlaw.com
- William Schumacher    wschumac@milbank.com, autodocketecf@milbank.com
- David Seror    dseror@bg.law, ecf@bg.law
- Zev Shechtman    zshechtman@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;lalitdock@gtlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

1      •   Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-
         0813@ecf.pacerpro.com
     •   Jessica Wellington    jwellington@bg.law, ecf@bg.law
2      Genevieve G Weiner    gweiner@sidley.com, laefilingnotice

3 **2.   SERVED BY UNITED STATES MAIL**: On **August 10, 2022**, I served the following persons and/or
entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true
4 and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u>
5 <u>completed</u> no later than 24 hours after the document is filed.

6 *None.*

7                                        ☐ *Service information continued on attached page*

8 **3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR
EMAIL** (state method for each person or entity served):   Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
9 on **August 10, 2022**, I served the following persons and/or entities by personal delivery, overnight mail
service, or (for those who consented in writing to such service method), by facsimile transmission and/or
10 email as follows.   Listing the judge here constitutes a declaration that personal delivery on, or overnight
mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

11 *None.*

12 I declare under penalty of perjury under the laws of the United States of America that the foregoing is
true and correct.
13

14 August 10, 2022          Lisa Masse                   */s/ Lisa Masse*
   *Date*                    *Type Name*                      *Signature*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                           **F 9013-3.1.PROOF.SERVICE**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| Howard J. Steinberg Esq<br>GREENBURG TRAURIG LLP<br>1840 Century Park East  1900 Los Angeles, CA 90067 | | |
| TELEPHONE NO.: (310) 586-7700 \| FAX NO. (310) 586-7800 \| E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | | |

| USBC/LOS ANGELES/CENTRAL DISTRICT OF CA | |
|---|---|
| STREET ADDRESS: 255 E. TEMPLE ST. | |
| CITY AND ZIP CODE: LOS ANGELES, CA 90012 | |
| BRANCH NAME: LOS ANGELES CENTRAL DIVISION | |

| PLAINTIFF/PETITIONER: Inferno Investment, Inc.<br>DEFENDANT/RESPONDENT: Crestlloyd, LLC, et al. | CASE NUMBER:<br>2:21-bk-18205-DS |
|---|---|

| PROOF OF SERVICE | Hearing Date:<br>4/25/2025 | Day | Hearing Time:<br>5:00 PM | Dept: | Ref. No. or File No.:<br>145372.012100. |
|---|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION
**I SERVED COPIES** OF THE FOLLOWING DOCUMENTS:

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION**

**OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)**

|  |  |
|---|---|
| PARTY SERVED: | **Yvonne Niami** |
| DATE & TIME: | **4/4/2025**<br>**10:20 AM** |
| ADDRESS: | **341 S Rodeo Dr**<br>**Beverly Hills, CA 90212-4206** |

PHYSICAL DESCRIPTION:
| **Age: 50** | **Weight: 120** | **Hair: Blonde** |
|---|---|---|
| **Sex: Female** | **Height: 5'9"** | **Eyes: Brown** |
| **Skin: Caucasian** | **Marks:** | |

MANNER OF SERVICE:
**Personal Service - By personally delivering copies.**

Fee for Service: **$ 720.00**

County: **Riverside**
Registration No.: **PS-1899**
**Nationwide Legal, LLC Reg: 12-234648**
1609 James M Wood Blvd.
Los Angeles, CA 90015
(213) 249-9999
Ref: 145372.012100.

I declare under penalty of perjury under the laws of the
The State of California that the foregoing information
contained in the return of service and statement of
service fees is true and correct and that this declaration
was executed on **April 4, 2025.**

Signature: _____

**John Llamas**

**PROOF OF SERVICE**

982(a)(23)[New July 1, 1987]

Order#: LA624151B/General

**EXHIBIT B**

**GT** GreenbergTraurig

Heather Silver
Tel 310.586.7744
Fax 310.586.7800
Heather.Silver@gtlaw.com

May 7, 2025

**<u>VIA CERTIFIED MAIL</u>**
Yvonne Niami
341 South Rodeo Drive
Beverly Hills, CA 90212-4206

Re:    *Yvonne Niami's Responses to Subpoena to Produce Documents Served on April 4, 2025; In Re: Crestlloyd, LLC v. Inferno Investment, Inc., et al.,* United States Bankruptcy Court, Central District, Case No. 2:21-bk-18205-DS, Adv. No. 2:22-ap-01125-DS ("Action")

Dear Mrs. Niami:

As you know, Greenberg Traurig, LLP is counsel for Defendant Hankey Capital, LLC ("Hankey") in the above referenced Action. On April 4, 2025, we personally served you with a subpoena to produce documents, information, or objects ("Subpoena"). As indicated on the first page of the Subpoena, your deadline to produce documents or otherwise respond to the Subpoena was April 25, 2025. You never served a response by the deadline and have therefore waived all objections. (Fed. R. Civ. P. 45(d)(2)(B).)

The purpose of this letter is to attempt to meet and confer regarding your failure to respond to the Subpoena, in an effort to avoid a motion to compel before the Court.

The documents Hankey has sought by way of the Subpoena are all directly relevant to its claims and defenses in this Action. Hankey is entitled to all documents responsive to the Subpoena. If you are not willing to produce them immediately, and if we do not hear from you by **noon on Monday, May 14, 2025**, we will assume you have no interest in meeting and conferring regarding this matter and will file a motion to compel and seek sanctions against you.

You may contact me at my email address above (<u>Heather.Silver@gtlaw.com</u>) or by telephone at my number above (310-586-7744). I look forward to your prompt response to this letter. In the interim, this email is not intended to set forth a complete statement of facts regarding this matter, or of Hankey's rights or remedies, all of which are hereby expressly reserved.

Best Regards,

*Heather J. Silver*

Heather J. Silver

**Greenberg Traurig, LLP | Attorneys at Law**
1840 Century Park East | Suite 1900 | Los Angeles, California 90067-2121 | T +1 310.586.7700 | F +1 310.586.7800

www.gtlaw.com



**GT GreenbergTraurig**

**Greenberg Traurig, LLP**
1840 Century Park East | Suite 1900 | Los Angeles, CA 90067

FIRST-CLASS

US POSTAGE Mtr PITNEY BOWES

ZIP 90067
02 7H
0006134889

$ 009.64⁰

MAY 07 2025



**CERTIFIED MAIL**

7022 0410 0001 5234 4070
7022 0410 0001 5234 4070

Yvonne Niami
341 South Rodeo Drive
Beverly Hills, CA  90212-4206



**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (*Printed Name*)      C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

Yvonne Niami
341 South Rodeo Drive
Beverly Hills, CA 90212-4206

9590 9402 7018 1225 7357 11

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (*Transfer from service label*)

7022 0410 0001 5234 4070

PS Form **3811**, July 2020 PSN 7530-02-000-9053

Domestic Return Receipt

**EXHIBIT C**



Heather Silver
Tel 310.586.7744
Fax 310.586.7800
Heather.Silver@gtlaw.com

May 21, 2025

**VIA CERTIFIED MAIL**
Yvonne Niami
341 South Rodeo Drive
Beverly Hills, CA 90212-4206

Re:     *Yvonne Niami's Responses to Subpoena to Produce Documents Served on April 4, 2025; In Re: Crestlloyd, LLC v. Inferno Investment, Inc., et al.*, United States Bankruptcy Court, Central District, Case No. 2:21-bk-18205-DS, Adv. No. 2:22-ap-01125-DS ("Action")

Dear Mrs. Niami:

As you know, Greenberg Traurig, LLP is counsel for Defendant Hankey Capital, LLC ("Hankey") in the above referenced Action. On May 7, 2025, we sent you a meet and confer letter ("Letter") via certified mail regarding your failure to comply with a subpoena to produce documents, information, or objects ("Subpoena") personally served on you on April 4, 2025. The Letter requested a response by May 14, 2025. As of the date hereof, we have received no response to either the Subpoena or the Letter.

Pursuant to Local Bankruptcy Rule 7026-1(c)(2), we hereby request a telephone meeting at **noon on Friday, May 30, 2025** or at an earlier date and time that is mutually convenient, in a final good faith effort to resolve this discovery dispute prior to filing a motion to compel. The documents Hankey has sought by way of the Subpoena are all directly relevant to its claims and defenses in this Action. Hankey is entitled to all documents responsive to the Subpoena. If you are not willing to produce them immediately, and if you fail to attend the meeting, we will seek an order compelling responses to the Subpoena and production of the documents sought.

You may contact me by telephone at my number above (310-586-7744) for the call or may contact me via phone or email if you would like to arrange a different time to speak before noon on May 30. I look forward to meeting with you. In the interim, this letter is not intended to set forth a complete statement of facts regarding this matter, or of Hankey's rights or remedies, all of which are hereby expressly reserved.

Best Regards

*Heather J. Silver*

Heather J. Silver

---

**Greenberg Traurig, LLP | Attorneys at Law**

1840 Century Park East | Suite 1900 | Los Angeles, California 90067-2121 | T +1 310.586.7700 | F +1 310.586.7800

www.gtlaw.com



GT GreenbergTraurig

**Greenberg Traurig, LLP**
1840 Century Park East | Suite 1900 | Los Angeles, CA 90067

FIRST-CLASS

**US POSTAGE** (M) PITNEY BOWES

ZIP 90067
02 7H
0006134889

$ 009.64⁰

MAY 21 2025

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**



7022 0410 0001 5234 4100
7022 0410 0001 5234 4100

Yvonne Niami
341 South Rodeo Drive
Beverly Hills, CA 90212-4206



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled (*specify*)**: DECLARATION OF HOWARD J. STEINBERG IN SUPPORT OF HANKEY CAPITAL, LLC'S MOTION FOR ORDER TO SHOW CAUSE WHY YVONNE NIAMI SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO RESPOND TO SUBPOENA TO PRODUCE DOCUMENTS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 3, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)     10/3/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/3/2025 | Terrine Pearsall | /s/ Terrine Pearsall |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
ACTIVE 713001105v1

**F 9013-3.1.PROOF.SERVICE**

<u>SERVICE LIST</u>
In re Crestlloyd, LLC
Case No. 2:21-bk-18205-DS
Adv. No. 2:22-ap-01125-DS

**1.    To be Served by the Court Via Notice of Electronic Filing (NEF):**

The following is the list of **<u>parties</u>** who are currently on the list to receive email notice/service for this case.

Kyra E Andrassy    kandrassy@raineslaw.com,
bclark@raineslaw.com;csantiago@raineslaw.com
Todd M Arnold    tma@lnbyg.com
Ryan Coy    ryan.coy@saul.com,
hannah.richmond@saul.com;Shelly.Guise@saul.com;LitigationDocketing@saul.com;ryan.coy@ecf.courtdrive.com
Max Fabricant    mfabricant@lavelysinger.com
Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
David B Golubchik    dbg@lnbyg.com, dbg@lnbyg.com
Jonathan Gottlieb    jdg@lnbyg.com
Jeffrey Huron    jeff.huron@stinson.com,
ebailon@dykema.com;slara@dykema.com;DocketLA@dykema.com
John W Lucas    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
John A Moe    john.moe@dentons.com,
kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
Nicholas David Moss    nmoss@molinolawfirm.com
Joseph M Rothberg    jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Sharon Z. Weiss    sharon.weiss@bclplaw.com,
raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
Jessica Wellington    jwellington@bg.law, ecf@bg.law
Johnny White    JWhite@wrslawyers.com, jlee@wrslawyers.com

**2.**  Served by United States Mail:

Yvonne Niami
341 South Rodeo Drive
Beverly Hills, Ca  90212-4206

1

N. Philanthropy LLC
Attn: Yvonne Niami
341 South Rodeo Drive
Beverly Hills, Ca  90212-4206

Andre Mario Smith
7938 Broadway No. 1263
Lemon Grove, CA 91946

2