1  Richard M. Pachulski (CA Bar No. 90073)
   Henry C. Kevane (CA Bar No. 125757)
2  John W. Lucas (CA Bar No. 271038)
   Beth E. Levine (*pro hac vice*)
3  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
4  Los Angeles, California 90067-4003
   Telephone: 310-277-6910
5  Facsimile:  310-201-0760
   E-mail: rpachulski@pszjlaw.com
6          hkevane@pszjlaw.com
           jlucas@pszjlaw.com
7          blevine@pszjlaw.com

8  *Attorneys for Yogi Securities Holdings, LLC*

9              **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

               **LOS ANGELES DIVISION**

11
   In re                                    Case No. 2:21-bk-18205-DS
12
   CRESTLLOYD, LLC,                         Chapter 11
13
                    Debtor.
14                                          Adv. No. 2:22-ap-01125-DS
   ─────────────────────────────
15 INFERNO INVESTMENT, INC., a Quebec       **NOTICE OF MOTION AND MOTION OF**
   corporation,                             **YOGI SECURITIES HOLDINGS, LLC**
16                                          **FOR PARTIAL SUMMARY JUDGMENT**
                                            **ON NINTH CLAIM FOR RELIEF AND**
17                Plaintiff,                **TENTH CLAIM FOR RELIEF AGAINST**
                                            **HANKEY CAPITAL, LLC;**
18       vs.                                **DECLARATION OF JOSEPH**
                                            **ENGLANOFF; DECLARATION OF**
19 CRESTLLOYD, LLC, a California limited     **JOHN W. LUCAS; AND REQUEST FOR**
   liability company; HANKEY CAPITAL LLC,   **JUDICIAL NOTICE**
20 a California limited liability company, YOGI
   SECURITIES HOLDINGS, LLC, a Nevada       Date:    February 19, 2026
21 limited liability company; and HILLDUN   Time:    1:00 p.m.
   CORPORATION, a New York corporation,     Place:   Courtroom 1639
22                                                   255 E. Temple Street
                                                     Los Angeles, CA 90012
23                Defendants.
   ─────────────────────────────
24 AND RELATED CROSS-ACTIONS.

25 **TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY**

26 **JUDGE, AND TO ALL COUNSEL OF RECORD:**

27

28

*PACHULSKI STANG ZIEHL & JONES LLP*
*ATTORNEYS AT LAW*
*SAN FRANCISCO, CALIFORNIA*

**PLEASE TAKE NOTICE** that **on February 19, 2026 at 1:00 p.m.**, the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in Courtroom 1639 of the above-captioned Court will hold a hearing on Yogi Securities Holdings, LLC's ("**Yogi**") motion (the "**Motion**") for entry of partial summary judgment in Yogi's favor and against Hankey Capital, LLC ("**Hankey**") on the Ninth Claim for Relief (the "**Ninth Claim**") and the Tenth Claim for Relief (the "**Tenth Claim**") in the *Third Amended Counterclaim and Crossclaim of Yogi Against the Defendants* [Adv. Docket No. 288][1] (the "**Yogi Cross-Complaint**").

Yogi filed the Yogi Cross-Complaint seeking, among other things, a determination of the relative priority between (a) the Yogi $30M Note and the advances under Hankey $91M Note (Ninth Claim) and (b) the Yogi $30M Note and the advances under the Hankey $106M Note (Tenth Claim). None of the material facts relevant to this Motion are in dispute. Yogi is entitled to a partial judgment, as a matter of law, on the Ninth Claim and Tenth Claim as set forth in the Yogi Cross-Complaint.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities and the *Declaration of Joseph Englanoff* (the "**Englanoff Declaration**"), the *Declaration of John W. Lucas* (the "**Lucas Declaration**"), the *Request for Judicial Notice* (the "**Request for Judicial Notice**"), and the *Statement of Uncontroverted Facts and Conclusions of Law* (the "**Statement**"), each filed contemporaneously herewith; the pleadings and other papers filed in this adversary proceeding and in the chapter 11 case to which it relates; and such further evidence and argument as may be presented at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE that pursuant to local Bankruptcy Rule 7056-1(c), objections and responses, if any, to the Motion shall be filed with the Court and served on Yogi's counsel at least twenty-one (21) days prior to the hearing date. Any reply to a timely filed objection or response must be filed with the Court and served on Hankey and other parties entitled to notice at least 14-days prior to the hearing date.**

---

[1] All references herein to "Bankr. Docket No. ___" are to the docket entries in Chapter 11 Case No. 21-18205-DS. All references herein to "Adv. Docket No. ___" are to the docket entries in Adv. Case No.: 22-ap-01125-DS.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Dated:    January 8, 2026                PACHULSKI STANG ZIEHL & JONES LLP

2

3                                            By    /s/ John W. Lucas
                                                    John W. Lucas
4
                                                    Attorneys for Yogi Securities Holdings,
5                                                   LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. UNCONTROVERTED FACTS ...........................................................................2

    A.     The Bankruptcy Case ...........................................................................2

    B.     The Yogi Loans ...................................................................................2

    C.     The Hankey Loans ..............................................................................5

    D.     Sale of the Airole Property..................................................................9

    E.     The Hankey Distributions ...................................................................9

III. STANDARD FOR SUMMARY JUDGMENT ..................................................10

IV. YOGI IS ENTITLED TO PARTIAL SUMMARY  JUDGMENT ON ITS NINTH
CLAIM AND TENTH CLAIM ........................................................................11

    A.     Intervening Liens Are Senior to Optional Advances .........................11

    B.     The Hankey Loan Documents Did Not Legally Obligate Hankey to Make
the  Subsequent Advances Evidenced by the Hankey $91M Note and
Hankey $106M Note ..........................................................................14

V. CONCLUSION ..................................................................................................16

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
San Francisco, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4904-8532-1589.15 96887.00001

# TABLE OF AUTHORITIES

**Page**

## CASES

*Althouse v. Provident Mut. Building-Loan Ass'n,*
    59 Cal. App. 31 (Cal. App. 1922) ...................................................................................... 11

*Althouse v. Provident Mut. Building-Loan Asso.,*
    59 Cal. App. 31 (Cal. App. 1922) ...................................................................................... 12

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................................... 10

*Atkinson v. Foote,*
    44 Cal. App. 149 (Cal. App. 1919) .................................................................................... 11

*Barboza v. New Form, Inc. (In re Barboza),*
    545 F. 3d 702 (9th Cir. 2008) ...................................................................................... 10, 11

*California Steel & Tube v. Kaiser Steel Corp.,*
    650 F.2d 1001 (9th Cir. 1981) ........................................................................................... 11

*Coast Cen. Credit Union v. Superior Court,*
    209 Cal. App. 3d 703 (1989) ............................................................................................. 12

*Dockrey v. Gray,*
    172 Cal. App. 2d 388 (1959) ............................................................................................. 12

*E.K. Wood Lumber Co. v. Mulholland,*
    118 Cal. App. 475 (1931) .................................................................................................. 12

*Garcia v. Atmajian,*
    113 Cal. App. 3d 516 (Cal. App. 1980) ....................................................................... 12, 13

*Imhoff v. Title Ins. & Trust Co.,*
    113 Cal. App. 2d 139 (Cal. App. 1952) ............................................................................. 13

*Lumber & Builders Supply Co. v. Ritz,*
    134 Cal. App. 607 (1933) .................................................................................................. 12

*Mi Arbolito,*
    2010 Bankr. LEXIS 3382 (Bankr. S.D. Cal. Sept. 23, 2010) ............................................ 12

*North Slope Borough v. Rogstad (In re Rogstad),*
    126 F.3d 1224 (9th Cir. 1997) ........................................................................................... 10

*Oaks v. Weingartner,*
    105 Cal. App. 2d 598 (3d Dist. 1951) ............................................................................... 13

*Official Mechanics Lienholder Comm. v. Point Ctr. Fin., Inc. (In re Mi Arbolito, LLC),*
    2010 Bankr. LEXIS 3382 (Bankr. S.D. Cal. Sept. 23, 2010) ............................................ 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*Savings & Loan Soc. v. Burnett*,
  106 Cal. 514 (1895) ........................................................................................... 13

*Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ............................................................................ 10

*Summers v. Teichert & Son, Inc.*,
  127 F.3d 1150 (9th Cir. 1997) .......................................................................... 10

*W.P. Fuller & Co. v. McClure*,
  48 Cal. App. 185 (1920) ................................................................................... 12

## **RULES**

Fed. R. Bankr. P. 7056 .............................................................................................. 10

Fed. R. Civ. P. 56 ..................................................................................................... 10

## **MISCELLANEOUS**

17 Cal. Jur.3d *Deeds of Trust* § 145 ....................................................................... 12

4 Miller & Star, *California Real Estate* § 10:109 *et seq.*(4th ed. 2024) ......................... 13

4 *Witkin Summary of California Law, Sec'd Trans. in Real Property* § 77 (11th ed. 2025) ........... 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION[2]

On November 6, 2018, Hankey lent the Debtor $82,500,000.00 and secured the Debtor's payment obligations with a deed of trust against the Debtor's real property located at 944 Airole Way, Los Angeles, CA 90077 (the "**Airole Property**"). The loan documents between the Debtor and Hankey did not require Hankey to loan the Debtor more than the sum borrowed under the $82.5 million promissory note.

At or about the same time, Yogi lent the Debtor approximately $30 million and recorded a deed of trust for the Airole Property on November 7, 2018 that secured the Debtor's payment obligations. Hankey had actual notice of Yogi's loan to the Debtor and that the Debtor's payment obligations to Yogi were secured by the Airole Property.

A little over one year later, on December 10, 2019, Hankey made an additional loan to the Debtor in the amount of $8,500,000.00. Hankey contends that its $8.5 million subsequent advance is secured by the Airole Property and is senior to Yogi's earlier $30 million secured loan to the Debtor. Approximately nine months later, on August 20, 2020, Hankey made an additional loan to the Debtor in the amount of $15,000,000.00. Hankey contends that its $15 million subsequent advance is also secured by the Airole Property and senior to Yogi's earlier secured loan to the Debtor.

Contrary to Hankey's assertions, the entirety of Yogi's $30 million loan to the Debtor is senior to Hankey's $23.5 million in subsequent advances because, as a matter of law, intervening liens have priority over subsequent advances made by a senior lender when the subsequent advances are optional and not mandatory, and the senior lender had actual knowledge of the intervening lien at the time it made the subsequent advances. Pursuant to the Ninth Claim and the

---

[2] This Motion relates solely to the Ninth Claim and Tenth Claim contained in the Yogi Cross-Complaint with respect to the subsequent advances made by Hankey to the Debtor (*i.e.*, the $8.5 million made under the second note and the $15 million made under the third note). Yogi reserves all rights and defenses with respect to the other claims asserted under the Yogi Cross-Complaint and the relief requested by this Motion is not a waiver of any other claims in the Yogi Cross-Complaint.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   Tenth Claim in the Yogi Cross-Complaint, Yogi therefore seeks partial summary judgment that, as

2   to the Airole Property, its $30 million claim is senior to the $23.5 million claim for optional

3   subsequent advances made by Hankey.

4       As demonstrated below, there are no genuine disputes as to any material facts and Yogi is

5   entitled to partial summary judgment on the Ninth Claim and Tenth Claim as a matter of law.

6   Accordingly, this Court should enter partial summary judgment on those claims.

7                                   **II.**

8                       **UNCONTROVERTED FACTS**

9       The following uncontroverted facts are supported by the Englanoff Declaration, the Lucas

10  Declaration, the Request for Judicial Notice, and the Statement of Uncontroverted Facts:

11  **A.    The Bankruptcy Case**

12      On October 26, 2021 (the "**Petition Date**"), Crestlloyd, LLC (the "**Debtor**") commenced

13  its bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States

14  Code (the "**Bankruptcy Code**").[3]

15  **B.    The Yogi Loans**

16      (i)     The Yogi $1.8M Note

17      The Debtor executed a promissory note, dated August 9, 2017, in the principal amount of

18  $1,800,000.00 (the "**Yogi $1.8M Note**") in favor of Yogi.[4] The Debtor also executed a deed of

19  trust (the "**Yogi $1.8M DOT**") encumbering the Debtor's real property located at 1175 North

20  Hillcrest Road, Beverly Hills, CA (the "**Hillcrest Property**") to secure the Debtor's obligations

21  under the Yogi $1.8M Note.[5] The Yogi $1.8M DOT was recorded on August 17, 2017.[6]

22      Thereafter, the Debtor executed a promissory note, dated April 13, 2018 (the "**Amended**

23  **Yogi $1.8M Note**"), that amended the Yogi $1.8M Note by increasing the principal amount

24

25  _____

26  [3] Request for Judicial Notice **Exh. A**.

    [4] Englanoff Declaration **Exh. O**.

27  [5] Englanoff Declaration **Exh. P** and Request for Judicial Notice **Exh. E**.

28  [6] Englanoff Declaration **Exh. P**  and Request for Judicial Notice **Exh. E**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

outstanding to $2,044,125.00.[7] The Amended Yogi $1.8M Note was secured by the Yogi $1.8M DOT.[8]

(ii)     The Yogi $17M Note

The Debtor executed a promissory note, dated May 22, 2018 (the "**Yogi $17M Note**"), in favor of Yogi in the principal amount of $17,499,900.00.[9] The Debtor executed a deed of trust (the "**Yogi $17M DOT**") that secured the Debtor's obligations under the Yogi $17M Note with the Airole Property.[10] The Yogi $17M DOT was recorded on May 29, 2018.[11]

(iii)    The Yogi $30M Note

The Debtor executed a promissory note, dated October 16, 2018 (the "**Yogi $30M Note**"), in the principal amount of $30,188,235.00 in favor of Yogi.[12] On the same date, the Debtor executed a deed of trust (the "**Yogi $30M DOT**") that secured the Debtor's obligations under the Yogi $30M Note with the Airole Property, but it was not recorded until a later date.[13]

Pursuant to the Yogi $30M Note, the Debtor borrowed approximately $10,000,000.00 in addition to the prior borrowings made under the Yogi $1.8M Note, the Amended Yogi $1.8M Note, and the Yogi $17M Note. The obligations under the three prior notes were incorporated into the Yogi $30M Note and extinguished and replaced by the terms of the Yogi $30M Note.[14]

(iv)    The Reconveyances

On October 13, 2018, Yogi executed a reconveyance (the "**Yogi $1.8M DOT Reconveyance**") of the Yogi $1.8M DOT, which secured the Debtor's obligations under the Yogi

---

[7] Englanoff Declaration **Exh. Q**.

[8] Englanoff Declaration **Exh. P**  and Request for Judicial Notice **Exh. E**.

[9] Englanoff Declaration **Exh. R**.

[10] Englanoff Declaration **Exh. S**  and Request for Judicial Notice **Exh. F**.

[11] Englanoff Declaration **Exh. S**.

[12] Englanoff Declaration **Exh. V**.

[13] Englanoff Declaration **Exh. W**  and Request for Judicial Notice **Exh. I**.

[14] Englanoff Declaration **Exh. V**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

$1.8M Note and Amended Yogi $1.8M Note.[15] The Yogi $1.8M DOT Reconveyance was recorded on October 16, 2018.[16]

On October 13, 2018, Yogi executed a reconveyance (the "**Yogi $17M DOT Reconveyance**") of the Yogi $17M DOT, which secured the Debtor's obligations under the Yogi $17M Note.[17] The Yogi $17M DOT Reconveyance was recorded on October 19, 2018.[18]

(v)      Recordation of the Yogi $30M DOT

The Yogi $30M DOT was recorded on November 7, 2018.[19]

(vi)      Amendments to Yogi $30M Note and DOT

On or about June 18, 2019, the Debtor, Yogi and certain other parties entered into an Amendment of Note and Deeds of Trust, extending the maturity date of the Yogi $30M Note and increasing the loan to $30,588,235, repayment of which continued to be secured by the Airole Property, and which was recorded on August 30, 2019 as instrument number 2019-0889046 (the "**Amended Yogi $30M DOT**").[20]

On or about August 17, 2019, the Debtor and Yogi entered into a Second Amendment of Note and Deed of Trust, again extending the maturity date of the Yogi $30M Note and increasing the loan to $31,528,363.12, repayment of which continued to be secured by the Airole Property, and was recorded on September 5, 2019 as instrument number 2019-0907091 (the "**Second Amended Yogi $30M DOT**").[21]

---

[15] Englanoff Declaration **Exh. T**  and Request for Judicial Notice **Exh. G**.

[16] Englanoff Declaration **Exh. T** and Request for Judicial Notice **Exh. G**.

[17] Englanoff Declaration **Exh. U** and Request for Judicial Notice **Exh. H**.

[18] Englanoff Declaration **Exh. U** and Request for Judicial Notice **Exh. H**.

[19] Englanoff Declaration **Exh. W** and Request for Judicial Notice **Exh. I**.

[20] Englanoff Declaration, **Exh. X** and Request for Judicial Notice **Exh. J**.

[21] Englanoff Declaration, **Exh. Y** and Request for Judicial Notice **Exh. K**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## C.    The Hankey Loans

### (i)    The Hankey $82.5M Note

The Debtor executed a promissory note, dated October 25, 2018 (the "**Hankey $82.5M Note**"), in favor of Hankey in the principal amount of $82,500,000.00.[22] Under the terms of the Hankey $82.5M Note, the Debtor promised to pay Hankey "the principal sum of Eighty-Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest from the date hereof computed on the principal balance hereof . . . ."[23]

The Debtor executed a deed of trust (the "**Hankey $82.5M DOT**") that secured the Debtor's obligations under the Hankey $82.5M Note with the Airole Property.[24] The Hankey $82.5M DOT was recorded on November 6, 2018.[25] The Hankey $82.5M DOT states that it secures:

> (2)    Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.
>
> (3)    Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.[26]

Paragraph (2) of the Hankey $82.5M DOT reflects the amount of Hankey's legal commitment to provide a loan to the Debtor (the "**Loan Commitment**").[27]

Paragraph (3) of the Hankey $82.5M DOT reflects that it may secure subsequent advances, but it does not obligate Hankey to make any such advances (the "**Subsequent Advance Clause**").[28]

---

[22] Lucas Declaration **Exh. Z**.

[23] Lucas Declaration **Exh. Z**, Hankey $82.5M Note at 1.

[24] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.

[25] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.

[26] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.

[27] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    The Debtor and Hankey entered into a Construction Loan Agreement, dated October 25,

2    2018 (the "**Construction Loan Agreement**"), which governed, among other things, the

3    disbursement of the proceeds from the $82.5M Note to purchase and finance the construction of

4    the Airole Property.[29]

5    The Construction Loan Agreement defines "Loan" as the:

6    principal sum that Lender agrees to lend and Borrower agrees
to borrow pursuant to the terms and conditions of this
7    Agreement:  EIGHTY TWO MILLION, FIVE HUNDRED
THOUSAND AND NO/100THS DOLLARS
8    ($82,500,000.00).[30]

9    The terms of the Hankey $82.5M Note and the Construction Loan Agreement do not

10    obligate or require Hankey to make further loans to the Debtor in addition to the $82,500,000

11    borrowed by the Debtor pursuant to the Hankey $82.5M Note.[31] Consequently, any additional

12    advance would be optional and not mandatory.

13    (ii)    Hankey's Actual Notice of the Yogi $30M Note and Yogi $30M DOT

14    On October 2, 2019, prior to Hankey's additional advances, Chicago Title Company

15    ("**CTC**") sent Eugene Leydiker, Hankey's general counsel, a preliminary title report, dated

16    September 10, 2019 (the "**Sept. 10, 2019 Title Report**").[32] On page 10, paragraph 16 of the Sept.

17    10, 2019 Title Report, that report lists the Yogi $30M Note and shows that it is secured by the

18    Yogi $30M DOT recorded on November 7, 2018 against the Airole Property.[33] Thus, prior to

19    making any additional advances, Hankey knew that the Airole Property was encumbered by the

20    Yogi $30M DOT.

21

22

23

24    [28] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.

25    [29] Lucas Declaration **Exh. BB**.

26    [30] Lucas Declaration **Exh. BB**, Construction Loan Agreement art. 1 at 3.

    [31] Lucas Declaration **Exh. Z**, **Exh.BB**.

27    [32] Lucas Declaration **Exh. CC**.

28    [33] Lucas Declaration **Exh. CC**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(iii)    The Hankey $91M Note

The Debtor executed a promissory note, dated December 10, 2019 (the "**Hankey $91M Note**"), in favor of Hankey in the principal amount of $91,000,000.00.[34] Hankey asserts that it lent the Debtor an additional $8,500,000.00 (the "**First Subsequent Advance**"). By its terms, the Hankey $91M Note provides that the Debtor promises to pay Hankey "the principal sum of Ninety-One Million and No/100 Dollars ($91,000,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding . . . ."[35]

The Debtor and Hankey also entered into the First Modification of Construction Loan Agreement, dated December 10, 2019 (the "**First Modified Construction Loan Agreement**"), which governed, among other things, the disbursement of the proceeds from the $91M Note.[36]

The First Modified Construction Loan Agreement defined "Loan" to mean:

> The principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: NINETY-ONE MILLION AND NO/100THS DOLLARS ($91,000,000.00).[37]

The terms of the Hankey $91M Note and the First Modified Construction Loan Agreement do not obligate or require Hankey to make further loans to the Debtor in addition to the $91,000,000 borrowed by the Debtor pursuant to the Hankey $91M Note.[38]

(iv)    The Hankey $106M Note

The Debtor executed a promissory note, dated August 20, 2020 (the "**Hankey $106M Note**"), in favor of Hankey in the principal amount of $106,000,000.00.[39] Hankey asserts it lent the Debtor an additional $15,000,000.00 (the "**Second Subsequent Advance**" and together with the First Subsequent Advance, the "**Subsequent Advances**").[40] By its terms, the Hankey $106M

---

[34] Lucas Declaration **Exh. DD**.

[35] Lucas Declaration **Exh. DD**, Hankey $91M Note at 1.

[36] Lucas Declaration **Exh. EE**.

[37] Lucas Declaration **Exh. EE**, First Modified Construction Loan Agreement at 1.

[38] Lucas Declaration **Exh. DD** and **Exh. EE**.

[39] Lucas Declaration **Exh. FF**.

[40] Lucas Declaration **Exh. FF**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   Note provides that the Debtor promises to pay Hankey "the principal sum of One Hundred Six

2   Million and No/100 Dollars ($106,000,000.00), together with interest from the date hereof

3   computed on the principal balance hereof from time to time outstanding…"[41]

4       The Debtor executed a modified deed of trust (the "**Hankey $106M DOT**") that purports

5   to secure the Debtor's obligations under the Hankey $106M Note with the Airole Property.[42] The

6   Hankey $106M DOT was recorded on August 31, 2020.[43]

7       The Debtor and Hankey entered into the Second Modification of Construction Loan

8   Agreement, dated August 20, 2020 (the "**Second Modified Construction Loan Agreement**"),

9   which governed, among other things, the disbursement of the proceeds from the $106M Note to

10  purchase and finance the construction of the Airole Property.[44]

11      The Second Modified Construction Loan Agreement defined "Loan" to mean:

12          The principal sum that Lender agrees to lend and Borrower
            agrees to borrow pursuant to the terms and conditions of this
13          Agreement: ONE HUNDRED SIX MILLION AND
            NO/100THS DOLLARS ($106,000,000.00).[45]
14
        The terms of the Hankey $106M Note and the Second Modified Construction Loan
15
    Agreement do not obligate or require Hankey to make further loans to the Debtor in addition to the
16
    $106,000,000 borrowed by the Debtor pursuant to the Hankey $106M Note.[46]
17
            (v)     Hankey's Proof of Claim
18
        On January 14, 2022, Hankey filed proof of claim 20-1 ("**Claim 20-1**") wherein it asserts
19
    claims arising under the Hankey $82.5M Note, the Hankey $91M Note, and the Hankey $106M
20
    Note.[47] Claim 20-1 does not reflect that a deed of trust was recorded in connection with the
21

22

23  _____

24  [41] Lucas Declaration **Exh. FF**, Hankey $106M Note at 1.

    [42] Lucas Declaration **Exh. GG** and Request for Judicial Notice **Exh. M**.
25
    [43] Lucas Declaration **Exh. GG** and Request for Judicial Notice **Exh. M**.
26
    [44] Lucas Declaration **Exh. HH**.
27  [45] Lucas Declaration **Exh. HH**, Second Modified Construction Loan Agreement at 2.

    [46] Lucas Declaration **Exh. FF**, **Exhibit HH**.
28
    [47] Lucas Declaration **Exh. II** and Request for Judicial Notice **Exh. N**.

1    execution of the Hankey $91M Note.[48] Nor does Claim 20-1 state that Yogi ever subordinated the

2    Yogi $30M Note and Yogi $30M DOT to the Hankey $91M Note or the Hankey $106M Note.[49]

3    **D.**    **Sale of the Airole Property**

4    On March 28, 2022, the Court approved a sale of Airole Property pursuant to the Sale

5    Order [Docket No. 247] (the "**Sale Order**").[50] Pursuant to the Sale Order, the estate received

6    $137.97 million, of which $126 million consisted of the acquisition purchase price and the

7    remaining $11.97 million consisted of an "Auctioneer Rebate,"[51] which Yogi maintains is also

8    sale proceeds of the Airole Property.

9    **E.**    **The Hankey Distributions**

10    On May 27, 2022, the Court entered the *Interim Order on Motion for Authority to Disburse*

11    *Funds to Hankey Capital, LLC* [Docket No. 350] (the "**First Disbursement Order**").[52] By the

12    terms of the First Disbursement Order, the Debtor paid Hankey $82,500,000.00 on account of the

13    Debtor's obligations under the $82.5M Note.[53] The First Disbursement Order reserves the parties'

14    rights to seek a disgorgement of the cash provisionally paid to Hankey.[54]

15    On September 26, 2025, the Court entered the *Order Granting Debtor's Second Motion for*

16    *Authority to Disburse Funds to Hankey Capital, LLC* [Docket No. 656] (the "**Second**

17    **Disbursement Order**").[55] By the terms of the Second Disbursement Order, the Debtor paid

18    Hankey $29,408,724.33 on account of the Debtor's obligations under the $82.5M Note.[56] The

19    Second Disbursement Order provides that "[t]he Payment shall be applied by Hankey to pay off

20

21    [48] Lucas Declaration **Exh. II** and Request for Judicial Notice **Exh. N**.

22    [49] In Claim 20-1, Hankey admits that the Hankey $91M Note and the Hankey $106M Note were each subject to new
agreements, which shows that each of the advances were optional and not mandatory under the Hankey $82.5M Note.
23    Lucas Declaration **Exh. II** and Request for Judicial Notice **Exh. N**.

24    [50] Request for Judicial Notice **Exh. B**.

     [51] As defined in the Sale Order, Request for Judicial Notice **Exh. B**.

25    [52] Request for Judicial Notice **Exh. C**.

26    [53] Request for Judicial Notice **Exh. C**.

     [54] Request for Judicial Notice **Exh. C**.

27    [55] Request for Judicial Notice **Exh. D**.

28    [56] Request for Judicial Notice **Exh. D**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1 all principal and interest due and payable pursuant to the [$82.5M Note]."[57] The Second

2 Disbursement Order reserves the parties' rights to seek a disgorgement of the cash provisionally

3 paid to Hankey.[58]

### III.

### <u>STANDARD FOR SUMMARY JUDGMENT</u>

6       Rule 56 of the Federal Rules of Civil Procedure applies in this adversary proceeding. *See*

7 Fed. R. Bankr. P. 7056. Under Rule 56, "[t]he court shall grant summary judgment if the movant

8 shows that there is no genuine dispute as to any material fact and the movant is entitled to

9 judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is available when "the

10 pleadings, depositions, answers to interrogatories, and admissions on file, together with the

11 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

12 party is entitled to a judgment as a matter of law." *North Slope Borough v. Rogstad (In re*

13 *Rogstad)*, 126 F.3d 1224, 1227 (9th Cir. 1997) (quoting Rule 56).

14       "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary

15 judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

16 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Rather, following the filing of

17 "a properly submitted summary judgment motion, the burden shifts to the opposing party to set

18 forth specific facts showing that there is a genuine issue for trial." *Barboza v. New Form, Inc. (In*

19 *re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). The opposing party cannot simply assert the

20 "mere existence of some alleged factual dispute between the parties," *Liberty Lobby*, 477 U.S. at

21 247-48, nor can it "rest upon the mere allegations or denials" in the pleadings. *Id.* Thus, "[f]or an

22 issue to be 'genuine,' there must be evidence such that a reasonable jury could reach a verdict in

23 favor of the nonmoving party." *Summers v. A. Teichert & Son*, 127 F.3d 1150, 1152 (9th Cir.

24 1997) (citing *Liberty Lobby*, 477 U.S. at 248).

25       Substantive law determines which facts are material for purposes of summary judgment.

26 *Liberty Lobby.*, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material

27 [57] Request for Judicial Notice **Exh. D**.

28 [58] Request for Judicial Notice **Exh. D**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the

2    nonmoving party." *Id.* The court must view all the evidence in the light most favorable to the

3    nonmoving party. *Barboza*, 545 F.3d at 707. The court may not evaluate the credibility of a

4    witness or weigh the evidence. *California Steel & Tube v. Kaiser Steel Corp.*, 650 F.2d 1001,

5    1003 (9th Cir. 1981).

**IV.**

**YOGI IS ENTITLED TO PARTIAL SUMMARY
JUDGMENT ON ITS NINTH CLAIM AND TENTH CLAIM**

As discussed in greater detail below, when the Debtor borrowed $82,500,000 from Hankey

under the Hankey $82.5M Note, the note and all other related loan documents did not obligate

Hankey to lend the Debtor funds in addition to the sums the Debtor borrowed under the Hankey

$82.5M Note. Prior to making the Subsequent Advances, Hankey had actual notice that the Debtor

had borrowed approximately $30,000,000 from Yogi and had secured the Debtor's obligations

under the Yogi $30M Note by the Yogi $30M DOT encumbering the Airole Property. Because (a)

the First Subsequent Advance and the Second Subsequent Advance as set forth in the Hankey

$91M Note and Hankey $106M Note, respectively, were optional and (b) Hankey had actual

notice of the Yogi $30M Note and Yogi $30M DOT prior to making the optional Subsequent

Advances, as a matter of law, any lien that Hankey has regarding the Subsequent Advances is

junior to the Yogi $30M Note and Yogi $30M DOT.

**A.    Intervening Liens Are Senior to Optional Advances**

(i)    Optional Advances

"[A]n optional advance is an advance where the lender is not obligated by the loan

documents in question to make the advance." *Official Mech. Lienholder Comm. v. Point Ctr. Fin.,*

*Inc. (In re Mi Arbolito, LLC)*, 2010 Bankr. LEXIS 3382, *52 (Bankr. S.D. Cal. Sept. 23, 2010);

*see also* Cal. Jur. §145 ("[O]ptional future advances are those that the lender is at liberty to make

or refuse.") (citing *Althouse v. Provident Mut. Building-Loan Ass'n*, 59 Cal. App. 31 (1922);

*Atkinson v. Foote*, 44 Cal. App. 149 (1919)). If a lender intends for a future advance to relate back

to the recordation of the deed of trust and share the lien priority of the prior loan, the lender must

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

have been legally required to make the subsequent advance by the terms of the loan documents. *Mi Arbolito*, 2010 Bankr. LEXIS 3382, at *53-54; *see also W.P. Fuller & Co. v. McClure*, 48 Cal. App. 185, 191-192 (1920); *Dockrey v. Gray*, 172 Cal. App. 2d 388, 390 (1959). The commitment to make a subsequent advance must be made prior to the time the intervening lienor's rights arise. *Mi Arbolito*,  2010 Bankr. LEXIS 3382, at *53-54; *see also Lumber & Builders Supply Co. v. Ritz,* 134 Cal. App. 607 (1933) (mechanic's lien junior to trust deed where oral agreement to make additional loans pre-dated attachment of such mechanic's liens and trust deed secured subsequent advances); *E.K. Wood Lumber Co. v. Mulholland,* 118 Cal. App. 475, 478 (1931) (mechanic's lien junior to trust deed where commitment to lend was firm and only the timing of the loans was subject to lender's option).

In *Mi Arbolito*, a promissory note and construction loan agreement were secured by a deed of trust that contained a subsequent advance provision. The advances made by the lender were defined as the "Unfunded Portion" of the loan, which the loan documents did not require the lenders to make ("neither [Point Center] nor the Lender have guaranteed or do guarantee or commit that the Unfunded Portion, or any part of it, will ever be funded."). The court held that foregoing provision demonstrated that the future advances were "optional" and, hence, junior to any intervening liens of which the lender had notice.

Similarly, in *Althouse*, the borrower's note and related deed of trust secured the payment of subsequent advances, but the loan documents did not require the lender to make further advances. As optional advances, they were subordinate to intervening liens. *Althouse*, 59 Cal. App. at 38-39.

    (ii)    <u>Optional Advances Are Junior To Intervening Liens</u>

"The lien of a trust deed does not operate to secure optional advances made after the beneficiary has acquired notice of a subsequent encumbrance when that operation would defeat or impair the rights of the subsequent encumbrancer." 17 Cal. Jur.3d *Deeds of Trust* § 145 (2015)(hereinafter "Cal Jur"); *see also Coast Cen. Credit Union v. Superior Court*, 209 Cal. App. 3d 703, 711 (1989) (nonobligatory disbursements by construction lender with senior deed of trust are junior to filed mechanics lien); *Garcia v. Atmajian*, 113 Cal. App. 3d 516 (1980); *Imhoff v.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  *Title Ins. & Trust Co.*, 113 Cal. App. 2d 139 (1952); *Oaks v. Weingartner*, 105 Cal. App. 2d 598

2  (1951); *Savings & Loan Soc. v. Burnett*, 106 Cal. 514 (1895); 4 *Witkin Summary of California*

3  *Law, Sec'd Trans. in Real Property* § 77 (11th ed. 2025); 4 Miller & Star, *California Real Estate* §

4  10:109 *et seq.*(4th ed. 2024).

5  In *Garcia*, the borrower executed two notes that were secured by two deeds of trust against

6  the same property. Each of the deeds of trust provided that, in addition to the respective notes they

7  secured, any subsequent advances made by the lender to the borrower would also be secured, but

8  there was no language requiring the lender to make such advances. The lender made optional

9  additional advances, but before it did so the borrower entered into an agreement with the land

10  owner to purchase the property pursuant to an installment purchase contract, which gave rise to an

11  intervening lien. After all installment payments for the purchase of the property were made, the

12  owner quitclaimed the property to the borrower, but the lender refused to tender title to the

13  property to the borrower because the subsequent advances had not been fully satisfied. The

14  appellate court held that the installment purchase agreement gave rise to a lien in favor of the

15  borrower that took priority over the lender's additional advances because they were not required

16  by the terms of the original notes and deeds of trust.

17  In *Imhoff*, two promissory notes were executed and the obligations were secured by deeds

18  of trust on two properties. The deeds of trust secured both the original obligations under the notes

19  and any subsequent advances made by the lender to the borrower, but neither the notes nor the

20  deeds required the lender to make any subsequent advances. The lender voluntarily made several

21  subsequent advances, but it was on notice that the borrower had purchased materials that gave rise

22  to a materialman's lien prior to lender extending the subsequent advances. The court held that the

23  sale proceeds from the properties would first be used to pay off  the sums originally advanced

24  under the two notes, not the subsequent advances, then the materialman's lien to the extent the

25  lender had notice of such lien, which the lender did have prior to the subsequent advances.

26  In *Oaks*, the obligations under a promissory note were secured by a deed of trust. The note

27  contained a future-advance provision, but the amount of the permitted advance was left blank. The

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

court held that the lender legally committed himself to make subsequent advances to the borrower because the section in the note for the amount of the advance was left blank, which the court interpreted to mean there was no limit to the amount of the subsequent advances. Thus, the liens that arose after the promissory note, but before the subsequent advances were made were deemed junior to the promissory note and the subsequent advances because the lender legally committed himself to make subsequent advances in an unspecified amount.

**B.      The Hankey Loan Documents Did Not Legally Obligate Hankey to Make the Subsequent Advances Evidenced by the Hankey $91M Note and Hankey $106M Note**

(i)      First Subsequent Advance Is Junior to the Yogi $30M Note and Yogi $30M DOT

The $8,500,000.00 First Subsequent Advance arising under the Hankey $91M Note is junior to the obligations arising under the Yogi $30M Note because (a) Hankey had actual notice of the Yogi $30M Note and Yogi $30M DOT before making the First Subsequent Advance and (b) Hankey was not legally obligated to make any further loans to the Debtor beyond the amount borrowed by the Debtor under the Hankey $82.5M Note and Hankey $82.5M DOT.

On October 2, 2019, Hankey's general counsel circulated the Sept. 10, 2019 Title Report for the Airole Property, which identified the Yogi $30M DOT as being recorded on November 7, 2018.[59]

On December 19, 2019 –over two months after receiving Sept. 10, 2019 Title Report showing the recorded Yogi $30M DOT– Hankey made the First Subsequent Advance to the Debtor pursuant to the Hankey $91M Note.[60] The First Subsequent Advance was optional because there was no legal commitment in the Hankey $82.5M Note[61] or any other loan document requiring Hankey to lend the Debtor anything more than $82,500,000.00.[62]

The amount of the First Subsequent Advance (*i.e.*, $8,500,000.00) is junior to the intervening Yogi $30M DOT because: (a) the Yogi $30M DOT was recorded on November 7, 2018 (prior to the First Subsequent Advance), (b) Hankey had actual notice of the Yogi $30M

[59] Lucas Declaration **Exh. CC**.

[60] Lucas Declaration **Exh. DD**.

[61] Lucas Declaration **Exh. DD**.

[62] Lucas Declaration **Exh. BB** and **EE**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Note and Yogi $30M DOT, and (c) the First Subsequent Advance was optional and not legally required.

Therefore, Hankey's claim for the First Subsequent Advance arising under the Hankey $91M Note is junior to the Yogi $30M Note and the Yogi $30M DOT.

(ii)    The Second Subsequent Advance
Under the $106M Note is also Junior to the Yogi $30M Note

The $15,000,000.00 Second Subsequent Advance made under the Hankey $106M Note is also junior to the obligations arising under the Yogi $30M Note because Hankey had actual notice of the Yogi $30M Note and Yogi $30M DOT and was not legally obligated to make any further loans to the Debtor beyond the amount borrowed by the Debtor under the Hankey $82.5M Note and the Hankey $82.5M DOT.

On October 2, 2019, Hankey's general counsel circulated the Sept. 10, 2019 Title Report for the Airole Property, which identified the Yogi $30M DOT recorded on November 7, 2018.[63]

On August 20, 2020 –over ten months after receiving the Sept. 10, 2019 Title Report showing the recorded Yogi $30M DOT– Hankey made the Second Subsequent Advance to the Debtor pursuant to the Hankey $106M Note.[64] Like the First Subsequent Advance, the Second Subsequent Advance was optional because there is no legal commitment in the Hankey $82.5M Note,[65] Hankey $91M Note,[66] or any other loan document requiring Hankey to lend the Debtor anything more than $82,500,000.00.[67]

The amount of the Second Subsequent Advance (*i.e.*, $15,000,000.00) is junior to the intervening Yogi $30M DOT because (a) the Yogi $30M DOT was recorded on November 7, 2018 (prior to the Second Subsequent Advance), (b) Hankey had actual notice of the Yogi $30M Note and Yogi $30M DOT, and (c) the Second Subsequent Advance was optional and not legally required.

---

[63] Lucas Declaration **Exh. CC**.

[64] Lucas Declaration **Exh. FF**.

[65] Lucas Declaration **Exh. Z**.

[66] Lucas Declaration **Exh. DD**.

[67] Lucas Declaration **Exh. EE** and **HH**.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Therefore, Hankey's claim for the Second Subsequent Advance arising under the Hankey

2    $106M Note is also junior to the Yogi $30M Note and the Yogi $30M DOT.

3                                             **V.**

4                                      **CONCLUSION**

5    For all of the reasons and based on the authorities set forth herein, Yogi is entitled to

6    partial summary judgment on the Ninth Claim and the Tenth Claim as set forth in Yogi's Cross-

7    Complaint. Judgment should be entered in favor of Yogi and against Hankey adjudging that, the

8    Yogi $30M Note, Yogi $30M DOT, and the amendments thereto are senior to Hankey's claim for

9    its $8,500,000.00 First Subsequent Advance and its $15,000,000.00 Second Subsequent Advance.

10

11   Dated:    January 8, 2026                    PACHULSKI STANG ZIEHL & JONES LLP

12                                               By    */s/ John W. Lucas*

13                                                     John W. Lucas

14                                               Attorneys for Yogi Securities Holdings,
                                                 LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28