Richard M. Pachulski (CA Bar No. 90073)
Henry C. Kevane (CA Bar No. 125757)
John W. Lucas (CA Bar No. 271038)
Beth E. Levine (*pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile:  310-201-0760
E-mail: rpachulski@pszjlaw.com
        hkevane@pszjlaw.com
        jlucas@pszjlaw.com
        blevine@pszjlaw.com

*Attorneys for Yogi Securities Holdings, LLC*

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>Debtor. | Case No. 2:21-bk-18205-DS<br><br>Chapter 11 |
| INFERNO INVESTMENT, INC., a Quebec corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL LLC, a California limited liability company, YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,<br><br>Defendants.<br>AND RELATED CROSS-ACTIONS. | Adv. No. 2:22-ap-01125-DS<br><br>**STATEMENT OF FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION OF YOGI SECURITIES HOLDINGS, LLC FOR PARTIAL SUMMARY JUDGMENT ON NINTH CLAIM FOR RELIEF AND TENTH CLAIM FOR RELIEF AGAINST HANKEY CAPITAL, LLC**<br><br>Date:  February 19, 2026<br>Time:  1:00 p.m.<br>Place:  Courtroom 1639<br>        255 E. Temple Street<br>        Los Angeles, CA 90012 |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY**

**JUDGE, AND TO ALL COUNSEL OF RECORD:**

4932-1066-8678.2 96887.00001

# I.

## STATEMENT OF UNCONTROVERTED FACTS

**A.    The Bankruptcy Case**

On October 26, 2021 (the "**Petition Date**"), Crestlloyd, LLC (the "**Debtor**") commenced its bankruptcy case by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").[1]

**B.    The Yogi Loans**

(i)    The Yogi $1.8M Note

The Debtor executed a promissory note, dated August 9, 2017, in the principal amount of $1,800,000.00 (the "**Yogi $1.8M Note**") in favor of Yogi.[2] The Debtor also executed a deed of trust (the "**Yogi $1.8M DOT**") encumbering the Debtor's real property located at 1175 North Hillcrest Road, Beverly Hills, CA (the "**Hillcrest Property**") to secure the Debtor's obligations under the Yogi $1.8M Note.[3] The Yogi $1.8M DOT was recorded on August 17, 2017.[4]

The Debtor executed a promissory note, dated April 13, 2018 (the "**Amended Yogi $1.8M Note**"), that amended the Yogi $1.8M Note by increasing the principal amount outstanding to $2,044,125.00.[5] The Amended Yogi $1.8M Note was secured by the Yogi $1.8M DOT.[6]

(ii)    The Yogi $17M Note

The Debtor executed a promissory note, dated May 22, 2018 (the "**Yogi $17M Note**"), in favor of Yogi in the principal amount of $17,499,900.00.[7] The Debtor executed a deed of trust (the "**Yogi $17M DOT**") that secured the Debtor's obligations under the Yogi $17M Note with the Airole Property.[8] The Yogi $17M DOT was recorded on May 29, 2018.[9]

---

[1] Request for Judicial Notice **Exh. A**.

[2] Englanoff Declaration **Exh. O**.

[3] Englanoff Declaration **Exh. P** and Request for Judicial Notice **Exh. E**.

[4] Englanoff Declaration **Exh. P** and Request for Judicial Notice **Exh. E**.

[5] Englanoff Declaration **Exh. Q**.

[6] Englanoff Declaration **Exh. P** and Request for Judicial Notice **Exh. E**.

[7] Englanoff Declaration **Exh. R**.

[8] Englanoff Declaration **Exh. S** and Request for Judicial Notice **Exh. F**.

[9] Englanoff Declaration **Exh. S**.

(iii)   The Yogi $30M Note

The Debtor executed a promissory note, dated October 16, 2018 (the "**Yogi $30M Note**"), in the principal amount of $30,188,235.00 in favor of Yogi.[10] On the same date, the Debtor executed a deed of trust (the "**Yogi $30M DOT**") that secured the Debtor's obligations under the Yogi $30M Note with the Airole Property, but it was not recorded until a later date.[11]

Pursuant to the Yogi $30M Note, the Debtor borrowed approximately $10,000,000.00 in addition to the prior borrowings made under the Yogi $1.8M Note, the Amended Yogi $1.8M Note, and the Yogi $17M Note. The obligations under the three prior notes were incorporated into the Yogi $30M Note and extinguished and replaced by the terms of the Yogi $30M Note.[12]

(iv)   The Reconveyances

On October 13, 2018, Yogi executed a reconveyance (the "**Yogi $1.8M DOT Reconveyance**") of the Yogi $1.8M DOT, which secured the Debtor's obligations under the Yogi $1.8M Note and Amended Yogi $1.8M Note.[13] The Yogi $1.8M DOT Reconveyance was recorded on October 16, 2018.[14]

On October 13, 2018, Yogi executed a reconveyance (the "**Yogi $17M DOT Reconveyance**") of the Yogi $17M DOT, which secured the Debtor's obligations under the Yogi $17M Note.[15] The Yogi $17M DOT Reconveyance was recorded on October 19, 2018.[16]

---

[10] Englanoff Declaration **Exh. V**.

[11] Englanoff Declaration **Exh. W** and Request for Judicial Notice **Exh. I**.

[12] Englanoff Declaration **Exh. V**.

[13] Englanoff Declaration **Exh. T** and Request for Judicial Notice **Exh. G**.

[14] Englanoff Declaration **Exh. T** and Request for Judicial Notice **Exh. G**.

[15] Englanoff Declaration **Exh. U** and Request for Judicial Notice **Exh. H**.

[16] Englanoff Declaration **Exh. U** and Request for Judicial Notice **Exh. H**.

      (v)     Recordation of the Yogi $30M DOT

The Yogi $30M DOT was recorded on November 7, 2018.[17]

      (vi)    Amendments to Yogi $30M Note and DOT

On or about June 18, 2019, the Debtor, Yogi and certain other parties entered into an Amendment of Note and Deeds of Trust, extending the maturity date of the Yogi $30M Note and increasing the loan to $30,588,235, repayment of which continued to be secured by the Airole Property, and which was recorded on August 30, 2019 as instrument number 2019-0889046 (the "**Amended Yogi $30M DOT**").[18]

On or about August 17, 2019, the Debtor and Yogi entered into a Second Amendment of Note and Deed of Trust, again extending the maturity date of the Yogi $30M Note and increasing the loan to $31,528,363.12, repayment of which continued to be secured by the Airole Property, and was recorded on September 5, 2019 as instrument number 2019-0907091 (the "**Second Amended Yogi $30M DOT**").[19]

**C.**    **The Hankey Loans**

      (i)     The Hankey $82.5M Note

The Debtor executed a promissory note, dated October 25, 2018 (the "**Hankey $82.5M Note**"), in favor of Hankey in the principal amount of $82,500,000.00.[20] Under the terms of the Hankey $82.5M Note, the Debtor promised to pay Hankey "the principal sum of Eighty-Two Million Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest from the date hereof computed on the principal balance hereof . . . ."[21]

The Debtor executed a deed of trust (the "**Hankey $82.5M DOT**") that secured the Debtor's obligations under the Hankey $82.5M Note with the Airole Property.[22] The Hankey

---

[17] Englanoff Declaration **Exh. W** and Request for Judicial Notice **Exh. I**.

[18] Englanoff Declaration, **Exh. X** and Request for Judicial Notice **Exh. J**.

[19] Englanoff Declaration, **Exh. Y** and Request for Judicial Notice **Exh. K**.

[20] Lucas Declaration **Exh. Z**.

[21] Lucas Declaration **Exh. Z**, Hankey $82.5M Note at 1.

[22] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.

$82.5M DOT was recorded on November 6, 2018.[23] The Hankey $82.5M DOT states that it secures:

> (2)    Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions and renewals thereof.
>
> (3)    Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.[24]

Paragraph (2) of the Hankey $82.5M DOT reflects the amount of Hankey's legal commitment to provide a loan to the Debtor (the "**Loan Commitment**").[25]

Paragraph (3) of the Hankey $82.5M DOT reflects that it may secure subsequent advances, but it does not obligate Hankey to make any such advances (the "**Subsequent Advance Clause**").[26]

The Debtor and Hankey entered into a Construction Loan Agreement, dated October 25, 2018 (the "**Construction Loan Agreement**"), which governed, among other things, the disbursement of the proceeds from the $82.5M Note to purchase and finance the construction of the Airole Property.[27]

The Construction Loan Agreement defines "Loan" as the:

> principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: EIGHTY TWO MILLION, FIVE HUNDRED THOUSAND AND NO/100THS DOLLARS ($82,500,000.00).[28]

---

[23] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.
[24] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.
[25] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.
[26] Lucas Declaration **Exh. AA** and Request for Judicial Notice **Exh. L**.
[27] Lucas Declaration **Exh. BB**.
[28] Lucas Declaration **Exh. BB**, Construction Loan Agreement art. 1 at 3.

The terms of the Hankey $82.5M Note and the Construction Loan Agreement do not obligate or require Hankey to make further loans to the Debtor in addition to the $82,500,000 borrowed by the Debtor pursuant to the Hankey $82.5M Note.[29]

(ii)   **Hankey's Actual Notice of the Yogi $30M Note and Yogi $30M DOT**

On October 2, 2019, prior to Hankey's additional advances, Chicago Title Company ("**CTC**") sent Eugene Leydiker, Hankey's general counsel, a preliminary title report, dated September 10, 2019 (the "**Sept. 10, 2019 Title Report**").[30] On page 10, paragraph 16 of the Sept. 10, 2019 Title Report, that report lists the Yogi $30M Note and shows that it is secured by the Yogi $30M DOT recorded on November 7, 2018 against the Airole Property.[31]

(iii)   **The Hankey $91M Note**

The Debtor executed a promissory note, dated December 10, 2019 (the "**Hankey $91M Note**"), in favor of Hankey in the principal amount of $91,000,000.00.[32] Hankey asserts that it lent the Debtor an additional $8,500,000.00 (the "**First Subsequent Advance**"). By its terms, the Hankey $91M Note provides that the Debtor promises to pay Hankey "the principal sum of Ninety-One Million and No/100 Dollars ($91,000,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding . . . ."[33]

The Debtor and Hankey also entered into the First Modification of Construction Loan Agreement, dated December 10, 2019 (the "**First Modified Construction Loan Agreement**"), which governed, among other things, the disbursement of the proceeds from the $91M Note.[34]

The First Modified Construction Loan Agreement defined "Loan" to mean:

> The principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: NINETY-ONE MILLION AND NO/100THS DOLLARS ($91,000,000.00).[35]

---

[29] Lucas Declaration **Exh. Z**, **Exh.BB**.
[30] Lucas Declaration **Exh. CC**.
[31] Lucas Declaration **Exh. CC**.
[32] Lucas Declaration **Exh. DD**.
[33] Lucas Declaration **Exh. DD**, Hankey $91M Note at 1.
[34] Lucas Declaration **Exh. EE**.
[35] Lucas Declaration **Exh. EE**, First Modified Construction Loan Agreement at 1.

The terms of the Hankey $91M Note and the First Modified Construction Loan Agreement do not obligate or require Hankey to make further loans to the Debtor in addition to the $91,000,000 borrowed by the Debtor pursuant to the Hankey $91M Note.[36]

(iv) The Hankey $106M Note

The Debtor executed a promissory note, dated August 20, 2020 (the "**Hankey $106M Note**"), in favor of Hankey in the principal amount of $106,000,000.00.[37] Hankey asserts it lent the Debtor an additional $15,000,000.00 (the "**Second Subsequent Advance**" and together with the First Subsequent Advance, the "**Subsequent Advances**").[38] By its terms, the Hankey $106M Note provides that the Debtor promises to pay Hankey "the principal sum of One Hundred Six Million and No/100 Dollars ($106,000,000.00), together with interest from the date hereof computed on the principal balance hereof from time to time outstanding…"[39]

The Debtor executed a modified deed of trust (the "**Hankey $106M DOT**") that purports to secure the Debtor's obligations under the Hankey $106M Note with the Airole Property.[40] The Hankey $106M DOT was recorded on August 31, 2020.[41]

The Debtor and Hankey entered into the Second Modification of Construction Loan Agreement, dated August 20, 2020 (the "**Second Modified Construction Loan Agreement**"), which governed, among other things, the disbursement of the proceeds from the $106M Note to purchase and finance the construction of the Airole Property.[42]

The Second Modified Construction Loan Agreement defined "Loan" to mean:

> The principal sum that Lender agrees to lend and Borrower agrees to borrow pursuant to the terms and conditions of this Agreement: ONE HUNDRED SIX MILLION AND NO/100THS DOLLARS ($106,000,000.00).[43]

---

[36] Lucas Declaration **Exh. DD** and **Exh. EE**.
[37] Lucas Declaration **Exh. FF**.
[38] Lucas Declaration **Exh. FF**.
[39] Lucas Declaration **Exh. FF**, Hankey $106M Note at 1.
[40] Lucas Declaration **Exh. GG** and Request for Judicial Notice **Exh. M**.
[41] Lucas Declaration **Exh. GG** and Request for Judicial Notice **Exh. M**.
[42] Lucas Declaration **Exh. HH**.
[43] Lucas Declaration **Exh. HH**, Second Modified Construction Loan Agreement at 2.

The terms of the Hankey $106M Note and the Second Modified Construction Loan Agreement do not obligate or require Hankey to make further loans to the Debtor in addition to the $106,000,000 borrowed by the Debtor pursuant to the Hankey $106M Note.[44]

(v)    Hankey's Proof of Claim

On January 14, 2022, Hankey filed proof of claim 20-1 ("**Claim 20-1**") wherein it asserts claims arising under the Hankey $82.5M Note, the Hankey $91M Note, and the Hankey $106M Note.[45] Claim 20-1 does not reflect that a deed of trust was recorded in connection with the execution of the Hankey $91M Note.[46] Nor does Claim 20-1 state that Yogi ever subordinated the Yogi $30M Note and Yogi $30M DOT to the Hankey $91M Note or the Hankey $106M Note.[47]

### D. Sale of the Airole Property

On March 28, 2022, the Court approved a sale of Airole Property pursuant to the Sale Order [Docket No. 247] (the "**Sale Order**").[48] Pursuant to the Sale Order, the estate received $137.97 million, of which $126 million consisted of the acquisition purchase price and the remaining $11.97 million consisted of an "Auctioneer Rebate."[49]

### E. The Hankey Distributions

On May 27, 2022, the Court entered the *Interim Order on Motion for Authority to Disburse Funds to Hankey Capital, LLC* [Docket No. 350] (the "**First Disbursement Order**").[50] By the terms of the First Disbursement Order, the Debtor paid Hankey $82,500,000.00 on account of the Debtor's obligations under the $82.5M Note.[51] The First Disbursement Order reserves the parties' rights to seek a disgorgement of the cash provisionally paid to Hankey.[52]

---

[44] Lucas Declaration **Exh. FF**, **Exhibit HH**.

[45] Lucas Declaration **Exh. II** and Request for Judicial Notice **Exh. N**.

[46] Lucas Declaration **Exh. II** and Request for Judicial Notice **Exh. N**.

[47] In Claim 20-1, Hankey admits that the Hankey $91M Note and the Hankey $106M Note were each subject to new agreements, which shows that each of the advances were optional and not mandatory under the Hankey $82.5M Note. Lucas Declaration **Exh. II** and Request for Judicial Notice **Exh. N**.

[48] Request for Judicial Notice **Exh. B**.

[49] As defined in the Sale Order, Request for Judicial Notice **Exh. B**.

[50] Request for Judicial Notice **Exh. C**.

[51] Request for Judicial Notice **Exh. C**.

[52] Request for Judicial Notice **Exh. C**.

On September 26, 2025, the Court entered the *Order Granting Debtor's Second Motion for Authority to Disburse Funds to Hankey Capital, LLC* [Docket No. 656] (the "**Second Disbursement Order**").[53] By the terms of the Second Disbursement Order, the Debtor paid Hankey $29,408,724.33 on account of the Debtor's obligations under the $82.5M Note.[54] The Second Disbursement Order provides that "[t]he Payment shall be applied by Hankey to pay off all principal and interest due and payable pursuant to the [$82.5M Note]."[55] The Second Disbursement Order reserves the parties' rights to seek a disgorgement of the cash provisionally paid to Hankey.[56]

## II.

## CONCLUSIONS OF LAW

### A.  Intervening Liens Are Senior to Optional Advances

(i)  Optional Advances

"[A]n optional advance is an advance where the lender is not obligated by the loan documents in question to make the advance." *Official Mech. Lienholder Comm. v. Point Ctr. Fin., Inc. (In re Mi Arbolito, LLC)*, 2010 Bankr. LEXIS 3382, *52 (Bankr. S.D. Cal. Sept. 23, 2010); *see also* Cal. Jur. §145 ("[O]ptional future advances are those that the lender is at liberty to make or refuse.") (citing *Althouse v. Provident Mut. Building-Loan Ass'n*, 59 Cal. App. 31 (1922); *Atkinson v. Foote*, 44 Cal. App. 149 (1919)). If a lender intends for a future advance to relate back to the recordation of the deed of trust and share the lien priority of the prior loan, the lender must have been legally required to make the subsequent advance by the terms of the loan documents. *Mi Arbolito*, 2010 Bankr. LEXIS 3382, at *53-54; *see also W.P. Fuller & Co. v. McClure*, 48 Cal. App. 185, 191-192 (1920); *Dockrey v. Gray*, 172 Cal. App. 2d 388, 390 (1959). The commitment to make a subsequent advance must be made prior to the time the intervening lienor's rights arise. *Mi Arbolito*, 2010 Bankr. LEXIS 3382, at *53-54; *see also Lumber & Builders Supply Co. v. Ritz,*

---

[53] Request for Judicial Notice **Exh. D**.
[54] Request for Judicial Notice **Exh. D**.
[55] Request for Judicial Notice **Exh. D**.
[56] Request for Judicial Notice **Exh. D**.

1  134 Cal. App. 607 (1933) (mechanic's lien junior to trust deed where oral agreement to make additional loans pre-dated attachment of such mechanic's liens and trust deed secured subsequent advances); *E.K. Wood Lumber Co. v. Mulholland,* 118 Cal. App. 475, 478 (1931) (mechanic's lien junior to trust deed where commitment to lend was firm and only the timing of the loans was subject to lender's option).

        (ii)    Optional Advances Are Junior To Intervening Liens

"The lien of a trust deed does not operate to secure optional advances made after the beneficiary has acquired notice of a subsequent encumbrance when that operation would defeat or impair the rights of the subsequent encumbrancer." 17 Cal. Jur.3d *Deeds of Trust* § 145 (2015)(hereinafter "Cal Jur"); *see also Coast Cen. Credit Union v. Superior Court*, 209 Cal. App. 3d 703, 711 (1989) (nonobligatory disbursements by construction lender with senior deed of trust are junior to filed mechanics lien); *Garcia v. Atmajian*, 113 Cal. App. 3d 516 (1980); *Imhoff v. Title Ins. & Trust Co.*, 113 Cal. App. 2d 139 (1952); *Oaks v. Weingartner*, 105 Cal. App. 2d 598 (1951); *Savings & Loan Soc. v. Burnett*, 106 Cal. 514 (1895); 4 *Witkin Summary of California Law, Sec'd Trans. in Real Property* § 77 (11th ed. 2025); 4 Miller & Star*, California Real Estate* § 10:109 *et seq*.(4th ed. 2024).

Dated:    January 8, 2026               PACHULSKI STANG ZIEHL & JONES LLP

By   */s/ John W. Lucas*
      John W. Lucas

Attorneys for Yogi Securities Holdings, LLC