Richard M. Pachulski (CA Bar No. 90073)
Henry C. Kevane (CA Bar No. 125757)
John W. Lucas (CA Bar No. 271038)
Beth E. Levine (*pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
Facsimile: 310-201-0760
E-mail: rpachulski@pszjlaw.com
hkevane@pszjlaw.com
jlucas@pszjlaw.com
blevine@pszjlaw.com

*Attorneys for Yogi Securities Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

In re

CRESTLLOYD, LLC,

Debtor.

INFERNO INVESTMENT, INC., a Quebec corporation,

Plaintiff,

vs.

CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL LLC, a California limited liability company, YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,

Defendants.

AND RELATED CROSS-ACTIONS.

Case No. 2:21-bk-18205-DS

Chapter 11

Adv. No. 2:22-ap-01125-DS

**DECLARATION OF JOSEPH ENGLANOFF IN SUPPORT OF YOGI SECURITIES HOLDINGS, LLC'S MORE FOR PARTIAL SUMMARY JUDGMENT ON NINTH CLAIM FOR RELIEF AND TENTH CLAIM FOR RELIEF AGAINST HANKEY CAPITAL, LLC**

I, Joseph Englanoff, declare as follows:

1. I am the trustee of Yogi Management Trust, which is the Manager of Yogi Securities Holding, LLC ("**Yogi**") and I am also co-trustee of the Englanoff Family 2003

Revocable Living Trust and The Englanoff Family Protection Trust, which are the sole Members of Yogi. As such, I am authorized to act on behalf of Yogi.

2.      I make this Declaration in support of the *Partial Motion for Summary Judgment on Ninth Claim for Relief and Tenth Claim for Relief* (the "**Motion**") filed contemporaneously herewith. All matters set forth herein are based on either my personal knowledge or my review of Yogi's business records.[1] If called upon to testify, I could and would testify competently to the facts set forth herein.

3.      In my role for Yogi as described above, I negotiated and oversaw the execution of the documents set forth herein.

4.      On or about August 9, 2017, I negotiated the terms of a promissory note that was executed by Crestlloyd, LLC (the "**Debtor**") for the benefit of Yogi in the principal amount of $1,800,000.00 plus interest, a true and correct copy of which is annexed hereto as **Exhibit "O"** (the "**Yogi $1.8M Note**").

5.      On or about August 1, 2017, I negotiated the terms of a deed of trust, that was recorded in the County of Los Angeles on August 17, 2017 as instrument number 20170931482 (the "**Yogi $1.8M DOT**"), for the real property located at 1175 North Hillcrest Road, Beverly Hills, CA (the "**Hillcrest Property**") that secured the Debtor's obligations under the Yogi $1.8M Note, a true and correct copy of which is annexed hereto as **Exhibit "P"**.

6.      On or about April 13, 2018, I negotiated the terms of an amendment of the Yogi $1.8M Note (the "**Yogi Amended $1.8M Note**") that was executed by the Debtor for the benefit of Yogi in the principal amount of $2,044,125.00, a true and correct copy of which is annexed hereto as **Exhibit "Q"**.

---

[1] All capitalized terms herein which are otherwise not defined herein shall have the same meaning ascribed to them in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

7.      On  or about May 22, 2018, I negotiated the terms of a promissory note (the "**Yogi $17M Note**") that was executed by the Debtor in the principal amount of $17,499,900.00, plus interest, for the benefit of Yogi, a true and correct copy of which is annexed hereto as **Exhibit "R"**.

8.      On or about May 1, 2018, I negotiated the terms of a deed of trust, that was recorded on May 29, 2018 in the County of Los Angeles as instrument number 20180527856 (the "**Yogi $17M DOT**"), for the real property located at 944 Airole Way, Los Angeles, CA 90077 (the "**Airole Property**") that secured the Debtor's obligations under the Yogi $17M Note, a true and correct copy of which is annexed hereto as **Exhibit "S"**.

9.      On October 13, 2018, I executed a reconveyance of the Yogi $1.8M DOT that was recorded on October 19, 2018 as instrument number 20181065780 (the "**Yogi $1.8M Reconveyance**"), which was reconveyed in connection with the negotiation and execution of the Yogi $30M Note (as defined herein) and Yogi $30M DOT (as defined herein), a true and correct copy of which is annexed hereto as **Exhibit "T"**.

10.     On October 13, 2018, I executed a reconveyance of the Yogi $17M DOT that was recorded on November 1, 2018 as instrument number 20181110437 (the "**Yogi $17M Reconveyance**"), which was reconveyed in connection with the negotiation and execution of the Yogi $30M Note (as defined herein) and Yogi $30M DOT (as defined herein), a true and correct copy of which is annexed hereto as **Exhibit "U"**.

11.     On or about October 16, 2018, I negotiated the terms of a promissory note (the "**Yogi $30M Note**") that was executed by the Debtor in the principal amount of $30,188,235.00, plus interest, for the benefit of Yogi, a true and correct copy of which is annexed hereto as **Exhibit "V"**.

12.      On or about October 16, 2018, I negotiated the terms of a deed of trust that was recorded on November 7, 2018 as instrument number 20181126580 (the "**<u>Yogi $30 DOT</u>**") for the Airole Property that secured the Debtor's obligations under the Yogi $30 Note, a true and correct copy of which is annexed hereto as **<u>Exhibit "W"</u>**.

13.      On or about June 18, 2019, I negotiated the Amended Deed of Trust for the Airole Property that was recorded on August 30, 2019 as instrument number 2019-0889046 (the "**<u>Amended Yogi $30 DOT</u>**") that secured the Debtor's obligations under the Yogi $30 Note, as amended, a true and correct copy of which is annexed hereto as **<u>Exhibit "X"</u>**.

14.      On or about August 17, 2019, I negotiated the terms of the Second Amended Deed of trust for the Airole Property that was recorded on September 5, 2018 as instrument number 2019-0907091 (the "**<u>Second Amended Yogi $30 DOT</u>**") that secured the Debtor's obligations under the Yogi $30 Note, as amended, a true and correct copy of which is annexed hereto as **<u>Exhibit "Y"</u>**.


I declare under penalty of perjury that the foregoing is true and correct and that, if called as a witness, I could and would competently testify as to all of the matters stated herein.

Executed this 8th day of January 2026, at Los Angeles, California.



Joseph Englanoff

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT O</u>**

(Yogi $1.8 M Note)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

## SECURED PROMISSORY NOTE

$1,800,000.00

Los Angeles, California
August 9, 2017

FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("***Borrower***"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("***Lender***") the principal sum of One Million Eight Hundred Thousand Dollars ($1,800,000.00), plus interest on the unpaid principal balance thereof at the rate of 13.500% per annum.

      **1.**     **Maturity Date; Prepayment**. The outstanding balance owing under this Note as well as interest thereon shall be due and payable in full on February ___, 2018 (the "***Maturity Date***"). This Note may be prepaid in whole or in part without penalty or premium at any time.

      **2.**     **Security**. This Note is secured by a Deed of Trust (the "***Deed of Trust***") dated as of August 1, 2017, executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," covering certain real property described therein, situated in the County of Los Angeles, State of California (the "***Property***").

      **3.**     **Application of Payments**. All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

      **4.**     **Late Charge**. Borrower acknowledges that if any payment required under this Note is not paid within ten (10) days after the same becomes due and payable, the holder hereof will incur extra administrative expenses, in addition to expenses incident to receipt of timely payment, and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by the holder hereto by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that a late charge of five percent (5%) of the amount of the delinquent payment and the imposition of the default interest rate provided for below shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor (provided that no such late charge shall be payable with respect to any balloon payment due on the Maturity Date). Borrower shall, therefore, in such event, without further notice, pay to the holder hereof as such holder's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment and any additional interest owed as a result of the imposition of the default interest rate as provided below. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as an express or implied agreement by the holder hereof to forbear in the collection of any delinquent payment, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the holder hereto to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such holder to

collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

5.     **Address for Payments.** All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

6.     **No Offset; Holder in Due Course.** Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof. The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

7.     **Waivers.** Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof. No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

8.     **Default Interest; Acceleration.** The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder. Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to three percent (3%) above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.

The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event. The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

YOGI_002202

9.    **Lawful Money; Costs of Collection**. All amounts payable hereunder are payable in lawful money of the United States. Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

10.   **Due on Sale and Encumbrance**. Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of twenty-five percent (25%) or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

**Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.**

11.   **Usury Protection**. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "*Maximum Rate*"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

2761568.2                                  3

12.     **Governing Law; Venue; Joint and Several Liability**.   This Note shall be governed by and construed according to the laws of the State of California.   The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue.   Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction.   In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

13.     **Fees and Expenses**.   Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other loan documents executed pursuant hereto and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

14.     **Commercial Purpose**.   Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes.   Borrower does not occupy, and does not intend to occupy, the Property, and no principal or owner of Borrower occupies or intends to occupy the Property.

15.     **Broker**.   Borrower hereby represents and warrants that the loan evidenced by this Note was arranged by Shaya Ratner-Stauber, a real estate broker licensed with the California Bureau of Real Estate, License Number [01408879], who is receiving a fee from Borrower.

16.     **Severability**.   If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note.   If any provision or part thereof of this Note is stricken in accordance with the provisions of this section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

CRESTLLOYD   LLC,   a   California   limited liability company

By:

Nile Niami, Manager

YOGI_002204

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

**EXHIBIT P**

(Yogi $1.8 DOT)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD



**This page is part of your document - DO NOT DISCARD**



## 20170931482



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/17/17 AT 08:00AM**

Pages:
0013

| | |
|---|---|
| FEES: | 76.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 76.00 |



**LEADSHEET**



201708170120004

00014119575

008530344

**SEQ:
23**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T72

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002188

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

**CHICAGO TITLE COMPANY**
**COMMERCIAL DIVISION**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

08/17/2017

*20170931482*

Daniel Wiesel, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

## DEED OF TRUST AND ASSIGNMENT OF RENTS

**TITLE ORDER NO. 76852-X59**  **ESCROW NO. 5125**  **APN No. 4391028014**

**This Deed of Trust**, made as of August 1, 2017, between Crestlloyd, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

**TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**

1. Performance of each agreement of Trustor incorporated by reference or contained herein;

2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,800,000.00 executed by Trustor, in favor of Beneficiary or order;

3. Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

4. Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002189

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

3

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002190

(6)   That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)   That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)   That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)   That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)   That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)   That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

Non-Order Search
Doc: CALOSA:2017 00931482

Requested By: lcarlos, Printed: 8/22/2017 2:26 PM

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002191

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

### SEE RIDER TO DEED OF TRUST ATTACHED HERETO.

2761566.4                                        4

**RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.**

YOGI_002192

RECORDER MEMO: THIS COPY IS NOT an OFFICIAL RECORD

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

CRESTLLOYD LLC, a California limited liability company

By: _____

Nile Niami, Manager

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002193

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

**RIDER TO DEED OF TRUST**

1.    Due on Sale and Encumbrance. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

"[Trustor] acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If [Trustor] is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of twenty-five percent (25%) or more of the issued and outstanding common stock or membership interests of [Trustor], or of the beneficial interest of such trust, or, in the event [Trustor] is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

[Trustor] agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

2.    Insurance.

a.    Liability Insurance. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is an encumbrance (the "*Property*") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002194

designated as an additional insured under the liability insurance required under this Deed of Trust.

b.    Property Insurance. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

c.    Insurance Policies. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after thirty (30) days' prior written notice to Beneficiary. Trustor shall, at least thirty (30) days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.    Remedies.    Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

4.    Appointment of Receiver.

a.    Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the

R-2

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002195

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

Q

Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

    b.    <u>Reimbursement of Advances</u>.

        (i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

        (ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

    c.    <u>Possession and Operation of Properties</u>. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    <u>Reserved</u>.

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

CRESTLLOYD LLC, a California limited
liability company

By: _____
    Nile Niami, Manager

R-3

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002196

10

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

**STATE OF CALIFORNIA**              )
                                     )
**COUNTY OF LOS ANGELES**            )

On _Aug. 09, 2017_ before me, _NIGEL GIBBS_____, a Notary Public, personally appeared _Nile Niami_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

YOGI_002197

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

    The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____          **MAIL RECONVEYANCE TO:**

By: _____          _____
Name: _____          _____
Title: _____          _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD

**EXHIBIT A**

**LEGAL DESCRIPTION**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002199

13

PRELIMINARY REPORT
YOUR REFERENCE:

Chicago Title Company
ORDER NO.: 00076852-994-LT2-KD

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 95 OF TRACT 21360, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 587 PAGES 59 TO 63 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4391-028-014

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

YOGI_002200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

## **EXHIBIT Q**

(Yogi Amended $1.8M Note)

## FIRST AMENDMENT OF PROMISSORY NOTE

This First Amendment of Promissory Note (the "*Amendment*") is entered into to be effective as of April 13, 2018 (the "*Effective Date*"), by and between Crestlloyd, LLC, a California limited liability company ("*Borrower*"), and YOGI Securities Holdings, LLC, a Nevada limited liability company ("*Lender*"), with reference to the following facts:

### RECITALS

A.      Lender made a loan (the "*Loan*") to Borrower in the original principal amount of $1,800,000.00. The Loan is evidenced by a Promissory Note (the "*Note*") dated August 9, 2017.

B.      Lender is the holder of the Note and all other instruments that evidence and/or secure the Loan (collectively, the "*Loan Documents*").

C.      Borrower and Lender wish to execute this Amendment.

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **Definitions**. Terms which are defined in the Note shall have the same meanings when used in this Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.      **Additional Loan**. Borrower acknowledges that Lender has provided additional funds pursuant to the terms of the Note and, as of the Effective Date, the outstanding principal amount on the Note is $2,044,125.00.

3.      **Amendment to Section 1 of the Note**. Section 1 of the Note is hereby deleted in its entirety and replaced with the following:

> 1.      **Maturity Date; Prepayment**. The outstanding balance owing under this Note as well as interest thereon shall be due and payable upon the earlier to occur of (i) the sale of the Property (as defined below), or (ii) October 12, 2018 (the "*Maturity Date*"). This note may be prepaid in whole or in part without penalty or premium at any time.

4.      **No Other Amendments**. Except as modified expressly or by necessary implication hereby and by the Amendment, all of the terms and conditions of the Note shall remain unchanged and in full force and effect. To the extent the provisions of this Amendment are inconsistent with the provisions of the Note, the provisions of this Amendment shall control and supersede such inconsistent provisions in the Note.

5.      Successors and Assigns. All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

LENDER:

YOGI Securities Holdings, LLC, a Nevada limited liability company

By: _____   **YOGI Management Trust**
Name: _____   **Joseph Englanoff, Trustee**
Title: _____   **Manager of YOGI Securities Holdings, LLC**

BORROWER:

Crestlloyd, LLC, a California limited liability company

By: _____
       Nile Niami, Manager

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

## **<u>EXHIBIT R</u>**

(Yogi $17M Note)

## SECURED PROMISSORY NOTE

$17,499,900.00                                        Los Angeles, California
                                                          May *22*, 2018

FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("*Borrower*"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("*Lender*") the principal sum of up to $17,499,900.00 (the "*Loan Amount*"), plus interest on the unpaid principal balance thereof as detailed below.

**1.      Interest Rate; Maturity Date; Repayment.**

a.      The outstanding principal amount of the Loan shall accrue interest at the rate of 5.714% per annum (the "*Note Rate*"). Notwithstanding the previous sentence, the Note Rate shall be calculated on the entire Loan Amount, regardless of whether any portion of the Loan Amount has not been advanced pursuant to Section 2 below.

b.      The outstanding balance owing under this Note as well as interest thereon shall be due and payable in full on the earlier of (i) the sale of any of the Hillcrest Property, the Airole Property or the Copa Property (as each such term is defined in Section 3 below) such that the entire Loan Amount can be repaid from proceeds of such sale, and (ii) May *22*, 2019 (the "*Maturity Date*").

c.      This Note may be not be prepaid in whole or in part except in accordance with this Section.

**2.      Advances under the Note.** Advances of Loan proceeds under this Note will be disbursed as follows:

a.      Lender shall retain $999,900 as prepaid interest, calculated at the Note Rate on the entire Loan Amount.

b.      Lender shall advance an amount up to $12,500,000 of the Loan Amount, to be disbursed in connection with the closing of the loan contemplated under this Note upon receipt of (i) confirmation of recording of the Deed of Trust and (ii) receipt by Lender of any required title insurance policies relating to the Deed of Trust.

c.      Lender shall advance up to the remaining available Loan Amount, in the amount of $4,000,000, to Borrower upon receipt of a written request from Borrower.

**3.      Security.** This Note is secured by (i) a Deed of Trust dated as of May 1, 2018 (the "*Hillcrest Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1175 Hillcrest Road, Beverly Hills, California 90210 (the "*Hillcrest Property*"), (ii) a Deed of Trust dated as of May 1, 2018 (the "*Airole Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 944 Airole Way, Los Angeles, California 90077 (the "*Airole Property*"), and (iii) a Deed of Trust dated as of May 1, 2018 (the "*Copa Deed of Trust*" and, together with the Hillcrest Deed of Trust and the Airole Deed of

Trust, the "*Deed of Trust*"), executed by Holding Company of Beverly Hills, LLC, a California limited liability company, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 301 Copa de Oro Road, Los Angeles, California 90077 (the "*Copa Property*" and, together with the Hillcrest Property and the Airole Property, the "*Property*").

4.     **Application of Payments**.  All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

5.     **Address for Payments**.  All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

6.     **No Offset; Holder in Due Course**.  Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof.  The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

7.     **Waivers**.  Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof.  No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

8.     **Default Interest; Acceleration**.  The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder.  Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10.000% above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note.

The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event.  The acceptance

by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

9. **Lawful Money; Costs of Collection**. All amounts payable hereunder are payable in lawful money of the United States. Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

10. **Due on Sale and Encumbrance**. Borrower acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower, or of the beneficial interest of such trust, or, in the event Borrower is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section.

**Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.**

11. **Usury Protection**. The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "*Maximum Rate*"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity

hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

12.    **Governing Law; Venue; Joint and Several Liability.**  This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

13.    **Fees and Expenses.**  Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other loan documents executed pursuant hereto and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

14.    **Commercial Purpose.**  Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly the development of the Airole Property. Borrower does not occupy, and does not intend to occupy, the Airole Property, and no principal or owner of Borrower occupies or intends to occupy the Airole Property.

15.    **Severability.**  If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note. If any provision or part thereof of this Note is stricken in accordance with the provisions of this Section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

Crestlloyd, LLC,
a California limited liability company


By: _____
        Nile Niami, Manager

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

**<u>EXHIBIT S</u>**

(Yogi $17M Dot)



**This page is part of your document - DO NOT DISCARD**

## 20180527856





**Pages:**
**0013**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**05/29/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 80.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 230.00 |



**L E A D S H E E T**



201805290110015

00015296397

009112473

**SEQ:
13**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Daniel Wiesel, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582



05/29/2018

*20180527856*

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

TITLE ORDER NO. *90901*       ESCROW NO. *5444-JFJ*       APN NO. *4369-026-021*

   **This Deed of Trust**, made as of May 1, 2018, between Crestlloyd, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

   Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE,** that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

   **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

   **For the Purpose of Securing:**

   1.    Performance of each agreement of Trustor incorporated by reference or contained herein;

   2.    Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $17,499,900.00 executed by Trustor in favor of Beneficiary or order;

   3.    Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

   4.    Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

13

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1)    To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4)    To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

Non-Order Search    Page 3 of 13    Requested By: choffman, Printed: 7/27/2022 12:27 PM

(6)    That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)    That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)    That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)    That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)    That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)    That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

Non-Order Search                    Page 4 of 13                    Requested By: choffman, Printed: 7/27/2022 12:27 PM

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)   Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)   That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)   That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

**SEE RIDER TO DEED OF TRUST ATTACHED HERETO.**

3097846.1                                              4

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Crestlloyd, LLC,
a California limited liability company

By: _____

Name: _Nile Niami_____

Title: _Manager_____

## RIDER TO DEED OF TRUST

1.   <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

> "[Trustor] acknowledges and agrees that the creditworthiness and expertise of undersigned in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion.  Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, to immediately become due and payable.  If [Trustor] is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of [Trustor], or of the beneficial interest of such trust, or, in the event [Trustor] is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this section.

> [Trustor] agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deed of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

2.   <u>Insurance</u>.

  a.   <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is an encumbrance (the "***Property***") and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be



designated as an additional insured under the liability insurance required under this Deed of Trust.

b.      Property Insurance. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

c.      Insurance Policies. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.      Remedies.      Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

4.      Appointment of Receiver.

a.      Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the

R-2

Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

      b.    <u>Reimbursement of Advances</u>.

      (i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

      (ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

      c.    <u>Possession and Operation of Properties</u>. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    <u>Reserved</u>.

6.    <u>Conflicts</u>. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

                        Crestlloyd, LLC,
                        a California limited liability company

                        By: _____
                        Name: *Nile Niami*
                        Title: *manager*

R-3

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not truthfulness,
accuracy, or validity of that document.

## NOTARY ACKNOWLEDGEMENT (N6)

STATE OF CALIFORNIA         )

COUNTY OF LOS ANGELES )

On May 22, 2018 before me, NICEL GIBBS _____, a Notary Public in and
for said State, personally appeared Alile Niami _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NIGEL GIBBS
Notary Public · California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4. 2020

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee                          Dated _____

     The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____          MAIL RECONVEYANCE TO:

By: _____       _____
Name: _____        _____
Title: _____       _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

*See*

**EXHIBIT A**

**LEGAL DESCRIPTION**

PRELIMINARY REPORT                                                    Chicago Title Company
YOUR REFERENCE: Escrow 5443-JPJ                              ORDER NO.: 00090901-994-LT2-KD

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT T</u>**

(Yogi $1.8M Reconveyance)

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law



**This page is part of your document - DO NOT DISCARD**



# 20181065780

Pages:
0002

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/19/18 AT 08:00AM**

| | |
|---|---:|
| FEES : | 40.00 |
| TAXES : | 0.00 |
| OTHER : | 0.00 |
| SB2 : | 150.00 |
| PAID : | 190.00 |



**L E A D S H E E T**

201810190110030

00015859173

009413317

**SEQ:
01**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

2

RECORDING REQUESTED BY:
Chicago Title Company
Order No. 00098368-994-LT2-KD
Escrow No. 5595-JFJ
Parcel No. 4391-028-014

AND WHEN RECORDED MAIL TO:

CRESTLLOYD, LLC
8981 W SUNSET BLVD., SUITE 303
WEST HOLLYWOOD, CA 90069



10/19/2018

*20181065780*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

WHEREAS, Crestlloyd, LLC, a California limited liability company was the original Trustor, Chicago Title Company the original Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company the original Beneficiary, under that certain Deed of Trust dated August 1, 2017 and recorded on August 17, 2017 as Instrument No. 20170931482, Official Records of the County of Los Angeles, State of California, and affecting the land described in said Deed of Trust, and

WHEREAS, the undersigned Beneficiary desires to substitute a new Trustee under said Deed of Trust in place and stead of Chicago Title Company, now therefore, the undersigned hereby substitutes YOGI Securities Holdings, LLC, a Nevada limited liability company as Trustee under said Deed of Trust and does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the Estate now held by him thereunder.

Date: October 13, 2018

YOGI Securities Holdings, LLC:

By: Yogi Management Trust dated March 31, 2016,
As amended and restated, its Manager

_____
 Joseph S. Englanoff, Trustee , *Beni*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES    } S.S.

On October 18, 2018 , before me, Steven H. Zidell           Notary Public
personally appeared Joseph S. Englanoff
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_          (Seal)



STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

1A.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

**EXHIBIT U**

(Yogi $17M Reconveyance)



**This page is part of your document - DO NOT DISCARD**





**20181110437**

Pages:
0002

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/01/18 AT 08:00AM**

| | |
|---|---|
| **FEES:** | 40.00 |
| **TAXES:** | 0.00 |
| **OTHER:** | 0.00 |
| **SB2:** | 150.00 |
| **PAID:** | 190.00 |



**LEADSHEET**



201811010160002

00015906320

009440176

**SEQ:**
**22**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T72

YOGI_002740

RECORDING REQUESTED BY:
Chicago Title Company
Order No. 00098368-994-LT2-KD
Escrow No. 5595-JFJ
Parcel No. 4369-026-021

AND WHEN RECORDED MAIL TO:

CRESTLLOYD, LLC
8981 W SUNSET BLVD., SUITE 303
WEST HOLLYWOOD, CA 90069



11/01/2018

*20181110437*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

WHEREAS, Crestlloyd, LLC, a California limited liability company was the original Trustor, Chicago Title Company the original Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company the original Beneficiary, under that certain Deed of Trust dated May 1, 2018 and recorded on May 29, 2018 as Instrument No. 20180527856, Official Records of the County of Los Angeles, State of California, and affecting the land described in said Deed of Trust, and

WHEREAS, the undersigned Beneficiary desires to substitute a new Trustee under said Deed of Trust in place and stead of Chicago Title Company, now therefore, the undersigned hereby substitutes YOGI Securities Holdings, LLC, a Nevada limited liability company as Trustee under said Deed of Trust and does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the Estate now held by him thereunder.

Date: October 13, 2018

YOGI Securities Holdings, LLC:

By: Yogi Management Trust dated March 31, 2016,
As amended and restated, its Manager

Joseph S. Englanoff, Trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES   } S.S.

On   October  18, 2018  , before me,   Steven  H.  Zidell  ,
personally appeared   Joseph  S.  Englanoff
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ H. Zidell _____   (Seal)

STEVEN H. ZIDELL
Notary Public · California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

YOGI_002741

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT V</u>**

(Yogi $30M Note)

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law

## SECURED PROMISSORY NOTE

$30,188,235.00                                                      Los Angeles, California
                                                                    October \16 , 2018

 FOR VALUE RECEIVED, Crestlloyd, LLC, a California limited liability company ("***Borrower***"), promises to pay to the order of YOGI Securities Holdings, LLC, a Nevada limited liability company ("***Lender***"), the principal sum of up to $30,188,235.00 (the "***Loan Amount***"), plus interest on the unpaid principal balance thereof as detailed below.

 **1. Interest Rate; Maturity Date; Repayment.**

  a. The outstanding principal amount of the loan evidenced by this Note (the "**Loan**") shall accrue interest at the rate of 3.975% per annum (the "***Note Rate***"). Notwithstanding the previous sentence, the Note Rate shall be calculated on the entire Loan Amount, regardless of whether any portion of the Loan Amount has not been advanced pursuant to Section 2 below.

  b. The outstanding principal balance owing under this Note as well as interest thereon shall be due and payable in full on the earlier of (i) the sale of either the Hillcrest Property or the Airole Property (as each such term is defined in Section 3 below) such that the entire Loan Amount shall be repaid from proceeds of such sale, or (ii) June \18 , 2019 (the "***Maturity Date***"). Additionally: (i) upon the sale of the Londonderry Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (ii) upon the sale of the Bellagio Property (as defined in Section 3 below) $10,000,000.00 shall be due and payable, (iii) upon the sale of the Carcassonne Property (as defined in Section 3 below) $15,000,000.00 shall be due and payable and (iv) upon the sale of the Stone Ridge Property (as such defined in Section 3 below) $5,000,000.00 shall be due and payable.

  c. This Note may be prepaid in whole or in part; however the $800,000.00 of prepaid interest is guaranteed and no portion shall be refunded upon any principal payments made prior to the Maturity Date whether obligatory under the terms of this Note or made at Borrower's option.

 **2. Advances under the Note.**

 2.1 Timing. Advances of Loan proceeds under this Note will be disbursed as follows:

  a. Lender shall retain $800,000.00 as prepaid interest, calculated at the Note Rate on the entire Loan Amount.

  b. Lender has already advanced $17,499,900.00 under a Promissory Note dated May 22, 2018 and $2,188,235.00 under a Promissory Note dated August 9, 2017 as amended previously executed by Borrower in favor of Lender (together, the "**Prior Notes**").

  c. Lender shall advance an amount equal to $4,500,100.00 of the Loan Amount, to be disbursed in connection with the closing of the Loan contemplated under this Note upon receipt of confirmation of recording of the Deeds of Trust.

YOGI_002691

d.      So long as there is no uncured breach by Borrower of any of the covenants or obligations of Borrower under any of the documents executed by Borrower in connection with the Loan (collectively, "**Loan Documents**"), Lender shall advance up to the remaining available Loan Amount, in the amount of $5,200,000.00, to Borrower within five (5) business days after Lender's receipt of a written request from Borrower.

2.2.    <u>Title Endorsements</u>. As a condition to each advance, at Lender's sole and absolute discretion Lender may require Borrower to obtain, in connection with any or all requested disbursements, at Borrower's sole cost and expense, title endorsements satisfactory to Lender to protect Lender against mechanic's liens, to be attached to and be a part of Lender's title policies.

2.3.    <u>Insurance</u>. Borrower shall furnish to Lender evidence of builders risk insurance for the Property (as defined below) in amounts and with an insurance company satisfactory to Lender and with a standard mortgagee's endorsement naming Lender as first mortgagee.

2.4.    <u>Inspection</u>. Lender and its agents shall, at all times until the Note is fully repaid, have the right of entry and free access to the Property and the right to inspect all work done, labor performed and materials furnished in and about the Property and to inspect all books, subcontracts and records of Borrower concerning the Property. It is expressly understood and agreed that Lender is not under any duty to supervise or to inspect the work or construction or examine any books and records, and that any such inspection or examination is for the sole purpose of protecting the security of Lender and preserving Lender's rights hereunder. Failure to inspect the work or any part thereof shall not constitute a waiver of any rights of Lender; and inspection not followed by notice of default shall not constitute a waiver of any default then existing. In no event shall any inspection by Lender constitute a representation that there has been or will be compliance with the plans and specifications or that the construction is free from defective materials or workmanship.

2.5.    <u>Exculpatory Provisions</u>. Borrower acknowledges, understands and agrees as follows:

2.5.1   Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of the quality, adequacy or suitability of the following: (a) the plans and specifications or amendments, alterations and additions thereto; (b) architects, contractors, subcontractors, and materialmen employed or utilized in the construction, or workmanship of or the materials used by any of them; or (c) the progress or course of construction and its conformance or nonconformance with the plans and specifications or amendments, alterations and changes thereto.

2.5.2   Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction.

2.5.3   The consent or approval by Lender to or of any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary the consent or approval to or of any subsequent similar act.

YOGI_002692

2.5.4   By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Lender pursuant hereto or pursuant to the loan documents, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

2.5.5   Lender shall in no way be liable for any acts or omissions of the Borrower, agent, contractor or any person furnishing labor and/or materials used in relation to the Property.

2.6.   <u>Protection Against Liens</u>.   Borrower agrees to fully pay and discharge all claims for labor done, material and services furnished in connection with the Property, to diligently file or procure the filing of a valid notice of completion upon completion of construction, to diligently file or procure the filing of a notice of cessation upon the event of a cessation of labor on the work of improvement for a continuous period of thirty (30) days or more, and to take all other reasonable steps to forestall the assertion of claims of lien against the Property or any part thereof and/or claims against Lender.   Borrower irrevocably appoints, designates and authorizes Lender as its agent (said agency being coupled with an interest) with the authority, but without any obligation, to file for record any notice of completion, cessation of labor, or any other notice that Lender deems necessary or desirable to protect its interests under the Note or the Loan Documents.   Nothing herein contained shall require Borrower to pay any claims for labor, materials, or services which Borrower in good faith disputes and which Borrower, at its own expense, is currently and diligently contesting; provided that Borrower shall, within ten (10) days after filing of any claim of lien, record in the Office of the County Recorder where the Property is located, obtain a surety bond sufficient to release said claim of lien or post such other security or make such other arrangements as Lender may approve in writing.

2.7.   <u>Books, Records and Plans</u>.   Borrower shall maintain full and complete books of account and other records concerning the Property, and shall furnish to Lender, at any time and from time to time, such financial data, plans and specifications as Lender shall reasonably request relating to the Property.   Borrower shall maintain at all times a full and current set of working drawings on the site of the Property and available for inspection by Lender or its representatives.

2.8.   <u>Relationship</u>.   Nothing contained herein shall be deemed or construed by the parties hereto or any third person to create a partnership or joint venture or any association between the parties other than the relationship of lender and borrower.

3.   **Security**.   This Note is secured by: (i) a Deed of Trust dated of even date herewith (the "*Hillcrest Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1175 North Hillcrest Road, Beverly Hills, California 90210 (the "*Hillcrest Property*"), (ii) a Deed of Trust dated of even date herewith (the "*Airole Deed of Trust*"), executed by Borrower, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 944 Airole Way, Los Angeles, California 90077 (the "*Airole Property*"), (iii) a Deed of Trust dated of even date

YOGI_002693

herewith (the "*Bellagio Deed of Trust*"), executed by 10701 Bellagio Road, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 10701 Bellagio Road, Los Angeles, California (the "*Bellagio Property*"); (iv) a Deed of Trust dated of even date herewith (the "*Carcassonne Deed of Trust*"), executed by Carcassonne Fine Homes, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 627 North Carcassonne Road, Los Angeles, California (the "*Carcassonne Property*"), (v) a Deed of Trust dated of even date herewith (the "*Stone Ridge Deed of Trust*"), executed by Marbella Construction, Inc., as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 3381 Stone Ridge Lane, Los Angeles, California (the "*Stone Ridge Property*") and (vi) a Deed of Trust dated of even date herewith (the "*Londonderry Deed of Trust*"), executed by 1369 Londonderry Estate, LLC, as "Trustor," in favor of Lender, as "Beneficiary," with respect to certain real property located at 1369 Londonderry Place, Los Angeles, California (the "**Londonderry *Property***"). The Hillcrest Deed of Trust, the Airole Deed of Trust, the Bellagio Deed of Trust, the Carcassonne Deed of Trust, the Stone Ridge Deed of Trust and the Londonderry Deed of Trust are collectively referred to herein as the "*Deeds of Trust*".   The Hillcrest Property, the Airole Property, Bellagio Property, the Carcassonne Property, the Stone Ridge Property and the Londonderry Property are collectively referred to herein as the "*Property*".

4.      **Application of Payments**.  All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued and unpaid interest, and after all such interest has been paid, any remainder shall be applied to reduction of the principal balance.

5.      **Address for Payments**.  All payments on this Note are to be made or given to the holder hereof whose address for this purpose is 9701 West Pico Boulevard, Suite 201A, Los Angeles, California 90035, or to such other person or at such other place as the holder hereof may from time to time direct by written notice to Borrower.

6.      **No Offset; Holder in Due Course**.  Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns, and agrees to make the payments called for hereunder in accordance with the terms hereof.  The holder hereof and all successors thereof shall have all the rights of a holder in due course as provided in the California Uniform Commercial Code and other laws of the State of California.

7.      **Waivers**.  Borrower and any endorsers, guarantors or sureties hereof severally waive presentment and demand for payment, notice of intent to accelerate maturity, protest or notice of protest or non-payment, bringing of suit and diligence in taking any action to collect any sums owing hereunder or in proceeding against any of the rights and properties securing payment hereunder; expressly agree that this Note, or any payment hereunder, may be extended from time to time; and consent to the acceptance of further security or the release of any security for this Note, all without in any way affecting the liability of Borrower and any endorsers or guarantors hereof.  No extension of time for the payment of this Note, or any installment hereof, made by agreement by the holder hereof with any person now or hereafter liable for the payment of this Note, shall affect the original liability under this Note of Borrower, even if Borrower is not a party to such agreement.

YOGI_002694

**8.     Default Interest; Acceleration.**  The failure of Borrower to pay or perform as required hereunder or a default under the Deed of Trust or any other instrument securing this Note or secured by the Deed of Trust shall constitute a default hereunder. Upon the occurrence of a default hereunder, at the option of the holder hereof, all amounts then unpaid under this Note, the Deed of Trust or any other instrument securing this Note or secured by Deed of Trust shall bear interest for the period beginning with the date of occurrence of such default at a default rate equal to 10.00% above the rate stated herein, payable monthly on the first day of each and every month, and in additional such holder may, at its option, declare immediately due and owing the entire unpaid principal sum together with all interest thereon, plus any other sums owing at the time of such declaration pursuant to this Note, the Deed of Trust or any other instrument securing this Note. The failure to exercise the foregoing option shall not constitute a waiver of the right to exercise the same at any subsequent time in respect of the same event or any other event. The acceptance by the holder hereof of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing options at that time or at any subsequent time or nullify any prior exercise of any such option without the express consent of such holder, except as and to the extent otherwise provided by law.

**9.     Lawful Money; Costs of Collection.**  All amounts payable hereunder are payable in lawful money of the United States. Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees and costs, whether or not a suit or action is instituted to enforce this Note, including but not limited to court costs, appraisal fees, the cost of searching records, obtaining title reports and title insurance and trustee's fees, to the extent permitted by applicable law.

**10.     Due on Sale and Encumbrance.**  Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above. In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable. If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section. Notwithstanding anything to the contrary in this Section 10 upon the sale of the

YOGI_002695

Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.

Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines.

     **11.**    **Usury Protection.** The parties hereto intend to conform strictly to the applicable usury laws. In no event, regardless of any provisions contained therein or in any other document executed or delivered in connection herewith, shall the holder hereof ever be deemed to have contracted for or be entitled to receive, collect or apply as interest on this Note, any amount in excess of the maximum amount permitted by applicable law (the "*Maximum Rate*"). In no event, whether by reason of demand for payment, prepayment, acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by the holder hereunder or otherwise exceed the Maximum Rate. If for any circumstance whatsoever interest would otherwise be payable to the holder in excess of the maximum lawful amount, the interest payable to the holder shall be reduced automatically to the Maximum Rate and any payment received in excess of such amount shall be applied to the outstanding principal balance of the Note.

     **12.**    **Governing Law; Venue; Joint and Several Liability.** This Note shall be governed by and construed according to the laws of the State of California. The parties agree that, at Lender's option, in any action to enforce or interpret this Note, the courts located in Los Angeles, California shall have exclusive jurisdiction and be the exclusive venue. Nothing contained herein shall affect the rights of Lender to bring a suit, action or proceeding in any other appropriate jurisdiction. In the event Borrower is composed of more than one party, the obligations, covenants, agreements and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

     **13.**    **Fees and Expenses.** Borrower agrees to pay all costs and expenses incurred by Lender in connection with the preparation, negotiation and execution of this Note and the other Loan Documents and any and all amendments, modifications and supplements thereto, including, without limitation, the costs and fees of Lender's legal counsel, any applicable title company fees, title insurance premiums, filing fees, escrow fees, reconveyance fees, payoff demands and recording costs.

     **14.**    **Commercial Purpose.** Borrower agrees that no funds advanced under this Note shall be used for personal, family or household purposes, and that all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly the development of the Property. Borrower does not occupy, and does not intend to occupy, the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property and no principal or owner of Borrower (including but not limited to Nile Niami) occupies or intends to occupy the Hillcrest Property, the Airole Property, the Bellagio Property, the Carcassonne Property, the Stone Ridge Property and/or the Londonderry Property.

3281722.2             - 6 -

YOGI_002696

15.    **Severability**.  If a court of competent jurisdiction determines that any term or provision of this Note is illegal, unenforceable or invalid in whole or in part for any reason, such illegal, unenforceable, or invalid provisions or part thereof shall be stricken from this Note, and such provision shall not affect the legality, enforceability, or validity of the remainder of this Note.  If any provision or part thereof of this Note is stricken in accordance with the provisions of this Section, then this stricken provision shall be replaced, to the extent possible, with a legal, enforceable, and valid provision that is as similar in tenor to the stricken provision as is legally possible.

16.    **Limits on Senior Loan Balances**.  Borrower agree that at no time while any portion of the Note remains unpaid shall senior indebtness: (i) encumbering the Hillcrest Property exceed $28,700,000.00, (ii) encumbering the Airole Property exceed $115,000,000.00, (iii) encumbering the Londonderry Property exceed $29,000,000.00, (iv) encumbering the Bellagio Property exceed $34,000,000.00, (v) encumbering the Carcassonne Property exceed $34,000,000.00, or (vi) encumbering the Stone Ridge Property exceed $17,100,000.00.

17.    **Prior Notes**.  The Prior Notes are hereby cancelled and superseded by this Note.

Crestlloyd, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

YOGI_002697

# EXHIBIT W

(Yogi $30 DOT)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW





**This page is part of your document - DO NOT DISCARD**



## 20181126580



**Pages:**
**0014**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/07/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 83.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 233.00 |



**L E A D S H E E T**



**201811070180001**

**00015924543**



**009450611**

**. SEQ:**
**12**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

**T72**

YOGI_002698

2

**RECORDING REQUESTED BY:**

*CHICAGO*

**AND WHEN RECORDED MAIL TO:**

Wolf, Rifkin, Shapiro, Schulman
& Raskin LLP
11400 W Olympic Blvd 9TH FL
L.A. CA 90064



11/07/2018

*20181126580*

---

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust
**Title of Document**

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

YOGI_002699

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Steven H. Zidell, Esq.
Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP
11400 W. Olympic Blvd.,
9th Floor
Los Angeles, California 90064-1582

---

## DEED OF TRUST AND ASSIGNMENT OF RENTS

---

TITLE ORDER NO. 00094109-997-BS5-KD3                    APN NO. 4369-026-021

    **This Deed of Trust**, made as of October 16 , 2018, between Crestlloyd, LLC, a California limited liability company, herein called Trustor, whose address is 8981 West Sunset Boulevard, Suite 303, West Hollywood, California 90069, Chicago Title Company, herein called Trustee, and YOGI Securities Holdings, LLC, a Nevada limited liability company, herein called Beneficiary,

    Trustor **IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE**, that certain property in Los Angeles County, California, described as:

### SEE EXHIBIT A ATTACHED HERETO,

    **TOGETHER WITH** the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.

    **For the Purpose of Securing:**

        1.      Performance of each agreement of Trustor incorporated by reference or contained herein;

        2.      Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $30,188,235.00 executed by Trustor in favor of Beneficiary or order;

        3.      Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured; and

        4.      Payment of any future advances by Beneficiary regardless of whether such advances were contemplated by the parties at the time of the granting of this Deed of Trust, whether or not such future advances are evidenced by any document, or whether or not any such document specifies that it is secured hereby.

YOGI_002700



**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1) To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act upon said property in violation of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay at least 10 days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, and to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

3281725.2

2

YOGI_002701

(6)     That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7)     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8)     That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9)     That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10)     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, upon any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person , by agent, or by a receiver to be· appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11)     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

3281725.2                                        3

YOGI_002702

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12)    Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13)    That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14)    That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.**

### SEE RIDER TO DEED OF TRUST ATTACHED HERETO.

3281725.2    4

IN WITNESS WHEREOF, the undersigned has executed this Deed of Trust as of the date first above written.

Crestlloyd, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

YOGI_002704

## RIDER TO DEED OF TRUST

1.    <u>Due on Sale and Encumbrance</u>. The Note which is secured by this Deed of Trust contains the following "due on sale" and "due on encumbrance" clauses:

> "Borrower acknowledges and agrees that the creditworthiness and expertise of Borrower or Trustor in owning, developing and operating the Property is the basis upon which holder has determined that it is protected against impairment of the security and risk of default and thereby has agreed to lend undersigned the principal sum set forth above.  In order to insure the continued creditworthiness and expertise of the owner of the Property and in order to allow the holder of this Note an opportunity to review and evaluate the same, undersigned agrees, for itself and subsequent owners of the Property, that the Property shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion.  Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable.  If Borrower is a corporation, limited liability company or trust, the sale, conveyance, transfer or disposition, whether voluntary or involuntary, of 25% or more of the issued and outstanding common stock or membership interests of Borrower or Trustor, or of the beneficial interest of such trust, or, in the event Borrower or Trustor is a limited or general partnership or a joint venture, a change of any general partner or any joint venturer, either voluntarily or involuntarily, or the sale, conveyance, transfer, disposition, or encumbrance of any such general partnership or joint venture interest shall be deemed to be a transfer of an interest in the Property for purposes of this Section.  Notwithstanding anything to the contrary in this Section 10 upon the sale of the Londonderry Property, the Bellagio Property, the Carcassonne Property or the Stone Ridge Property the amounts set forth in Section 1(b) above shall be payable.
>
> Borrower agrees, for itself and subsequent owners of the Property, that in the event that the improvements on the Property are altered or demolished without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion then outstanding principal balance and interest thereon and other sums secured by said Deeds of Trust, at the option of said holder, shall immediately become due and payable, in whole or in part, as the holder so determines."

2.    <u>Insurance</u>.

   a.    <u>Liability Insurance</u>. Trustor shall, at Trustor's sole expense, obtain and keep in force during the term of this Deed of Trust a policy of combined single limit, bodily injury and property damage insurance insuring Beneficiary and Trustor against any liability arising out of the ownership, use, occupancy or maintenance of the property upon which this Deed of Trust is

YOGI_002705

an encumbrance (the *"Property"*) and all areas appurtenant thereto. Such insurance shall be a combined single limit policy in an amount not less than $1,000,000 per occurrence. The limits of said insurance shall not, however, limit the liability of Trustor hereunder. Beneficiary shall be designated as an additional insured under the liability insurance required under this Deed of Trust.

b.      Property Insurance. Trustor shall obtain and keep in force during the term of this Deed of Trust a policy or policies of insurance covering loss or damage to the Property, in the amount of the full replacement value thereof, as the same may exist from time to time, as determined by Beneficiary against all perils included within the classification of fire, extended coverage, vandalism, malicious mischief, and special extended perils ("all risk" as such term is used in the insurance industry). Said insurance shall provide for payment of loss thereunder to Beneficiary. A stipulated value or agreed amount endorsement deleting the coinsurance provision of the policy shall be procured with said insurance. If the Trustor shall fail to procure and maintain said insurance the Beneficiary may, but shall not be required to, procure and maintain the same, but at the expense of Trustor. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $1,000 per occurrence, and the Trustor shall be liable for such deductible amount.

c.      Insurance Policies. Insurance required hereunder shall be in companies holding a "General Policyholders Rating" of at least A-, V as set forth in the most current issue of "Best's Insurance Guide." The Trustor shall deliver to the Beneficiary copies of policies of such insurance or certificates evidencing the existence and amounts of such insurance with additional insured and lender's loss payable endorsements as required by this Paragraph 2. No such policy shall be cancelable or subject to reduction of coverage or other modification except after 30 days' prior written notice to Beneficiary. Trustor shall, at least 30 days prior to the expiration of such policies, furnish Beneficiary with renewals or "binders" thereof, or Beneficiary may order such insurance and charge the cost thereof to Trustor, which amount shall be payable by Trustor upon demand. Trustor shall not do or permit to be done anything which shall invalidate the insurance policies referred to in this Paragraph 2.

3.      Remedies. Beneficiary may exercise any right or remedy available under the Note or this Deed of Trust or at law or in equity. All of Beneficiary's remedies upon the occurrence of an event of default are cumulative. Beneficiary's prosecution of any one of these remedies shall not preclude Beneficiary from simultaneously or subsequently prosecuting any other remedy or remedies under this Deed of Trust or under the Note or any other Loan Documents. No act of Beneficiary shall be construed as an election to proceed under any particular provision of this Deed of Trust to the exclusion of any other provision of this Deed of Trust, or as an election of remedies to the exclusion of any other remedy that may then or thereafter be available to Beneficiary. No delay or failure by Beneficiary to exercise any right or remedy under this Deed of Trust shall be construed to be a waiver of that right or remedy or of any default by Trustor. Beneficiary may exercise any one or more of its rights and remedies at its option without regard to the adequacy of its security.

R-2

YOGI_002706

10

4.    Appointment of Receiver.

a.    Appointment of Receiver. In any action to foreclose this Deed of Trust, or sell all or part of the Property, or upon any event of default, Trustee or Beneficiary shall be entitled to the appointment of a receiver without notice, without regard to the solvency or insolvency of Trustor at the time of application for such receiver, and without regard to the then value of the Property or whether the same shall be then occupied as a homestead or not, and Trustee, Beneficiary hereunder or any holder of the Note may be appointed as such receiver. Such receiver shall have the power to collect any Rents during the pendency of such foreclosure suit, and also during any further times when Trustor, except for the intervention of such receiver, would be entitled to collect any Rents, and any and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. The court from time to time may authorize the receiver to apply the net income in its hands, after deducting reasonable compensation for the receiver and its counsel as allowed by the court, in payment (in whole or in part) of any or all of the indebtedness secured hereby, including, without limitation, the following, in such order of application as Trustee or Beneficiary may elect: (i) amounts due upon the Note secured hereby; (ii) amounts due upon any decree entered in any suit foreclosing this Deed of Trust; (iii) costs and expenses of foreclosure and litigation upon the Property; (iv) insurance premiums, repairs, taxes, special assessments, water charges and interest, penalties and costs in connection with the Property; (v) any other lien or charge upon the Property that may be or become superior to the lien of this Deed of Trust, or of any decree foreclosing the same, provided that such application is made prior to foreclosure sale; and (vi) the deficiency in case of a deficiency.

b.    Reimbursement of Advances.

(i)    Trustor agrees to promptly reimburse any monies which Beneficiary advances in connection with the appointment of a receiver or the receiver's operation of the Property, plus interest at the default rate set forth in the Note. Trustor's obligation to reimburse Beneficiary shall be secured by this Deed of Trust.

(ii)    In the event that Beneficiary advances any monies necessary to preserve the security interest granted by this Deed of Trust arising from a default in any loan secured by the Property that is of higher priority that this Deed of Trust, Trustor agrees to pay Beneficiary a fee in the amount of $5,000. Trustor's obligation to make such payment shall be secured by this Deed of Trust.

c.    Possession and Operation of Properties. Trustor agrees that the receiver or his agents shall be entitled to enter upon and take possession of, and operate, manage and control, the Property to the same extent and in the same manner as Trustor might lawfully do.

5.    Reserved.

R-3

YOGI_002707

6.    Conflicts. This Rider shall control in the event of a conflict between the terms hereof and the Deed of Trust.

Crestlloyd, LLC,
a California limited liability company

By: _____
Nile Niami, Manager

R-4

Non-Order Search                              Page 11 of 14                    Requested By: lcarlos, Printed: 11/15/2018 10:01 AM
Doc: CALOSA:2018 01126580

YOGI_002708

12

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

On October 16, 2018 before me, Steven H. Zidell, a Notary Public in and for said State, personally appeared Nile Niami, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Steven H. Zidell (Seal)

13

## REQUEST FOR FULL RECONVEYANCE

### To be used only when note has been paid:

To [_____ Title], Trustee                    Dated _____

     The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

_____        MAIL RECONVEYANCE TO:

By: _____        _____
Name: _____        _____
Title: _____        _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

YOGI_002710

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOTS 1 AND 2 OF TRACT NO. 22727, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 623 PAGE(S) 81 TO 83 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF SAID LOTS LYING WESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE NORTHWESTERLY TERMINUS OF AIROLE WAY, 30 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT THEREON SOUTH 76° 06' 07" 'WEST 2.86 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE LEAVING SAID TERMINUS ALONG A CURVE CONCAVE WESTERLY, HAVING A RADIUS OF 361.97 FEET AND CONCENTRIC WITH THAT CERTAIN CURVE IN THE WESTERLY LINE OF SAID LOT 1 HAVING A RADIUS OF 349.83 FEET; THENCE NORTHERLY 22.69 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 03° 35' 48" TO THE BEGINNING OF A COMPOUND CURVE, CONCAVE SOUTHWESTERLY AND HAVING A RADIUS OF 175.66 FEET; THENCE NORTHWESTERLY 119.88 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 39° 06' 53"; THENCE NORTH 56° 36' 22" WEST 7.97 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHEASTERLY AND HAVING A RADIUS OF 90.80 FEET; THENCE NORTHWESTERLY 71.18 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 44° 55' 04"; THENCE NORTH 11° 41' 18" WEST 208.55 FEET TO THE BEGINNING OF A CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 35.90 FEET; THENCE NORTHERLY 34.44 FEET ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 56° 32' 34"; THENCE NORTH 44° 51' 16" EAST 42.37 FEET TO THE CURVED SOUTHEASTERLY LINE OF STRADELLA ROAD, 40 FEET WIDE, AS SHOWN ON SAID MAP.

PARCEL 2:

THAT PORTION OF LOT 3 IN BLOCK 3 OF TRACT NO. 9745, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 141 PAGES 93 TO 96 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE EASTERLY LINE OF SAID LOT, DISTANCE THEREON SOUTH 13° 13' 20" EAST 34.33 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN COURSE IN SAID EASTERLY LINE SHOWN ON SAID MAP AS HAVING A BEARING AND LENGTH OF NORTH 13° 13' 20" WEST 106.35 FEET; THENCE NORTH 89° 27' 20" WEST 214.07 FEET, MORE OR LESS, TO A POINT IN THE WESTERLY LINE OF SAID LOT, DISTANT SOUTHERLY THEREON 54.93 FEET FROM THE NORTHERLY TERMINUS OF THAT CERTAIN CURVE IN SAID WESTERLY LINE HAVING A LENGTH OF 115.83 FEET.

APN: 4369-026-021

(Property commonly known as: 944 Airole Way, Los Angeles, CA)

YOGI_002711

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT X**

(Amended Yogi $30 DOT)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW



**This page is part of your document - DO NOT DISCARD**



# 20190889046



**Pages:**
**0010**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/30/19 AT 08:00AM**

| | |
|---|---:|
| FEES: | 44.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 119.00 |



**L E A D S H E E T**

201908301000002

00017085868

010087403

**SEQ:**
**27**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E535563

T72

2

CHICAGO TITLE COMPANY
COMMERCIAL DIVISION

This document filed for recording
by Chicago Title Insurance and trust
us an accommodation only. It has not
been examined us to its execution or
as its effect upon its the title.

*112434*



08/30/2019

*20190889046*

|  |  |
|---|---|
| Recording Requested By | ) |
| and When Recorded Mail To: | ) |
|  | ) |
|  | ) |
| WOLF, RIFKIN, SHAPIRO, | ) |
| SCHULMAN & RABKIN, LLP | ) |
| 11400 West Olympic Blvd., 9th Floor | ) |
| Los Angeles, California 90064-1582 | ) |
| Attention:  Steven H. Zidell, Esq. | ) |

Space Above This Line For Recorder's Use

### AMENDMENT OF NOTE AND DEEDS OF TRUST

This Amendment of Note and Deeds of Trust (the "**Amendment**") is entered into as of June 18, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### Recitals

A.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.      10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.      Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of Lender, as

27

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.      Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.      1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.      The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.      Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

I.      Borrower and Lender wish to execute and record this Amendment to extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by this Amendment. The Original Note, as amended by this Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      Definitions. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.      Maturity Date Extension. The maturity date of the Note is hereby extended to August 17, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable. By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.    Interest Rate; Total Payoff Amount. The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Note, and as of the prior maturity date of June 18, 2019, the current balance of unpaid principal due and owing is Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). Additionally, the parties acknowledge and agree that the interest rate of the Note is being increased by this Amendment to 4.0% per annum, to begin accruing on the unpaid principal balance on June 18, 2019, until the Maturity Date. Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $400,000.00 to Borrower, which shall be added as principal to the current principal balance of $30,188,235.00, such that the total unpaid balance of principal shall be Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00) ("New Principal"), which shall be considered the New Principal as of June 18, 2019. The parties further agree that, pursuant to the interest rate established by this Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), including the New Principal, and Two Hundred One Thousand One Hundred Twenty Eight and 12/100 Dollars ($201,128.12) in interest accrued at 4.0% per annum on the New Principal between June 18, 2019 and the Maturity Date. Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.

4.    Releases, Covenants Not to Litigate, Assignments and Indemnification. As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

A.    Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term "Released Parties" shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys) of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "Released Claims");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

-3-

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.    Continuing Security.  The Deed of Trust, as modified by this Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by this Amendment, and all other indebtedness and obligations secured by the Deed of Trust.  Except as expressly modified by this Amendment, the Deed of Trust shall remain in full force and effect, and this Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.    The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

B.    The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

C.    The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

D.    The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

E.    The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

F.      The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.      <u>No Other Modifications</u>.  Except as modified expressly or by necessary implication hereby and by this Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect.  To the extent the provisions of this Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.      <u>Successors and Assigns</u>.  All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:                                LENDER:

CRESTLLOYD, LLC,                         YOGI SECURITIES HOLDINGS, LLC,
a California limited liability company   a Nevada limited liability company

By:_____              By: YOGI Management Trust, its manager
    Nile Niami, Manager

                                         By: _____
                                             Joseph Englanoff, Trustee

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager


CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager


MARBELLA CONSTRUCTION, INC.,
a California corporation

By:_____
    Nile Niami, Manager


1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By:_____
    Nile Niami, Manager

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company


By:_____
        Nile Niami, Manager


10701 BELLAGIO ROAD, LLC,
a California limited liability company


By:_____
        Nile Niami, Manager


CARCASSONNE FINE HOMES, LLC,
a California limited liability company


By:_____
        Nile Niami, Manager


MARBELLA CONSTRUCTION, INC.,
a California corporation


By:_____
        Nile Niami, Manager


1369 LONDONDERRY ESTATE, LLC,
a California limited liability company


By:_____
        Nile Niami, Manager

LENDER:

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager


By: _____
        Joseph Englanoff, Trustee

**CALIFORNIA ACKNOWLEDGMENT**                      CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES )

On JUNE 26, 2019 before me, Nigel Gibbs, Notary Public
_____Date_____                    Here Insert Name and Title of the Officer

personally appeared Nile Nirmi
_____
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.



NiGEL GIBBS
Notary Public - California
Los Angeles County
Commission # 2164239
My Comm. Expires Oct 4, 2020

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

*Place Notary Seal and/or Stamp Above*

─────────── **OPTIONAL** ───────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Amendment of Note & Deeds of Trust
Document Date: 6/26/19                    Number of Pages: 6
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____        Signer's Name: _____
☐ Corporate Officer – Title(s): _____    ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General        ☐ Partner – ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact      ☐ Individual     ☐ Attorney in Fact
☐ Trustee        ☐ Guardian or Conservator  ☐ Trustee        ☐ Guardian or Conservator
☐ Other: _____              ☐ Other: _____
Signer is Representing: _____    Signer is Representing: _____

©2018 National Notary Association

*10*

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not truthfulness, accuracy, or validity of
> that document.

STATE OF CALIFORNIA                      )
                                         )
COUNTY OF LOS ANGELES                    )

On __7|10|2019__ , before me, __Yolanda Chavez__ , a Notary Public in and for said State, personally appeared __Joseph Baylanoff__ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> YOLANDA CHAVEZ
> Notary Public - California
> Los Angeles County
> Commission # 2204195
> My Comm. Expires Aug 3, 2021

3705229.1                                -7-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT Y</u>**

(Second Amended Yogi $30 DOT)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW

**This page is part of your document - DO NOT DISCARD**



## 20190907091





**Pages:**
**0009**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/05/19 AT 08:00AM**

| | |
|---|---:|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |



**L E A D S H E E T**



201909050150015

**00017107247**



010099932

**SEQ:**
**16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T72

E17S092

**CHICAGO TITLE COMPANY
COMMERCIAL DIVISION**

112434-994-LT2

<table>
<tr><td>Recording Requested By<br>and When Recorded Mail To:<br><br>WOLF, RIFKIN, SHAPIRO,<br>SCHULMAN & RABKIN, LLP<br>11400 West Olympic Blvd., 9th Floor<br>Los Angeles, California 90064-1582<br>Attention:  Steven H. Zidell, Esq.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td></td></tr>
</table>

Space Above This Line For Recorder's Use

## <u>SECOND AMENDMENT OF NOTE AND DEEDS OF TRUST</u>

This Second Amendment of Note and Deeds of Trust (the "**Second Amendment**") is entered into as of August 17, 2019, by and between Crestlloyd, LLC, a California limited liability company ("**Borrower**"), 10701 Bellagio Road, LLC, a California limited liability company, Carcassonne Fine Homes, LLC, a California limited liability company, Marbella Construction, Inc., a California corporation, 1369 Londonderry Estate, LLC, a California limited liability company and YOGI Securities Holdings, LLC, a Nevada limited liability company ("**Lender**"), with reference to the following facts:

### <u>Recitals</u>

A.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Hillcrest Deed of Trust**"), in favor of  Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065783, Official Records of Los Angeles County, California ("**Official Records**").

B.      Borrower executed a Deed of Trust dated October 16, 2018 (the "**Airole Deed of Trust**"), in favor of  Lender, as beneficiary, which Deed of Trust was recorded on November 7, 2018, as Instrument No. 20181126580, Official Records.

C.      10701 Bellagio Road, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Bellagio Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065788, Official Records.

D.      Carcassonne Fine Homes, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Carcassonne Deed of Trust**"), in favor of  Lender, as

beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065789, Official Records.

E.      Marbella Construction, Inc., a California corporation, executed a Deed of Trust dated October 16, 2018 (the "**Stone Ridge Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065790, Official Records.

F.      1369 Londonderry Estate, LLC, a California limited liability company, executed a Deed of Trust dated October 16, 2018 (the "**Londonderry Deed of Trust**"), in favor of Lender, as beneficiary, which Deed of Trust was recorded on October 19, 2018, as Instrument No. 20181065787, Official Records. The Hillcrest Deed of Trust, Airole Deed of Trust, Bellagio Deed of Trust, Carcassonne Deed of Trust, Stone Ridge Deed of Trust and Londonderry Deed of Trust are collectively referred to hereinafter as the "**Deed of Trust**".

G.      The Deed of Trust secures a loan (the "**Loan**") to Borrower in the original principal amount of Thirty Million One Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,188,235.00). The Loan is evidenced by a Promissory Note (the "**Original Note**") in the principal amount of the Loan, dated October 16, 2018, made by Borrower in favor of Lender.

H.      Borrower and Lender executed an Amendment of Note and Deed of Trust dated June 18, 2019 (the "**First Amendment**"), which extended the term of the Original Note upon the conditions set forth therein, and established a new principal balance of Thirty Million Five Hundred Eighty Eight Thousand Two Hundred Thirty Five Dollars ($30,588,235.00).

I.      Lender is the holder of all beneficial interest under the Loan, the Deed of Trust, the Original Note and all other instruments that evidence and/or secure the Loan.

J.      Borrower and Lender wish to execute and record this Second Amendment to further extend the term of the Original Note upon the conditions set forth herein, and to confirm that the Deed of Trust, as amended, secures the indebtedness evidenced by the Original Note, and other obligations described in the Original Note and Deed of Trust as modified by the First Amendment and this Second Amendment. The Original Note, as amended by the First Amendment and this Second Amendment is hereinafter referred to as the "**Note**". The Loan, the Note, the Deed of Trust, and all other instruments that evidence and/or secure the Loan are collectively referred to herein as the "**Loan Documents**".

NOW, THEREFORE, in consideration of the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      <u>Definitions</u>. Terms which are defined in the Note and Deed of Trust shall have the same meanings when used in this Second Amendment, unless a different definition is given or referred to herein or unless the context requires otherwise.

2.    <u>Maturity Date Extension</u>.  The maturity date of the Note is hereby extended to October 16, 2019 (the "**Maturity Date**"), at which time the outstanding principal balance of the Note and all accrued interest shall be due and payable.  By agreeing to extend the Maturity Date, Lender is not committing to any future modifications, extensions, or renewals of any of the Loan Documents.

3.    <u>Interest Rate; Total Payoff Amount</u>.  The parties acknowledge and agree that Lender retained Eight Hundred Thousand Dollars ($800,000.00) as prepaid interest pursuant to the terms of the Original Note.  The parties acknowledge and agree that pursuant to the terms of the First Amendment, Lender funded an additional $400,000.00 to Borrower, adding such amount to the unpaid principal balance, and increased the interest rate of the Original Note to 4.0% per annum. The parties acknowledge and agree that as of the prior maturity date of August 17, 2019, the current balance of unpaid principal and interest due and owing is Thirty Million Seven Hundred Eighty Nine Thousand Three Hundred Sixty Three and 12/100 Dollars ($30,789,363.12), which includes (i) the principal amount established by the First Amendment of $30,588,235.00 ("**First Amendment Principal**"), and (ii) interest of $201,128.12 accrued at a rate of 4.0% per annum between June 18, 2019, and August 17, 2019.  The parties further acknowledge and agree that on August 17, 2019, the unpaid interest of $201,128.12 shall be added as principal to the First Amendment Principal balance of $30,588,235.00.  Additionally, on the date of Lender's execution of this Amendment, the parties acknowledge and agree that Lender shall fund an additional $739,000.00 to Borrower, which shall also be added as principal to the First Amendment Principal balance of $30,588,235.00.  Accordingly, the total updated unpaid principal balance shall include (i) the First Amendment Principal balance of $30,588,235.00, (ii) the unpaid interest of $201,128.12, and (iii) Lender's additional funding of $739,000.00 to Borrower, for a total updated principal balance of Thirty One Million Five Hundred Twenty Eight Thousand Three Hundred Sixty Three and 12/100 Dollars ($31,528,363.12) ("**New Principal Balance**"), which shall be considered the New Principal Balance as of August 17, 2019.  The parties further acknowledge and agree that pursuant to the interest rate established by the First Amendment and maintained in this Second Amendment, on the Maturity Date the total payoff amount due under the Loan Documents shall be Thirty One Million Seven Hundred Thirty Five Thousand Six Hundred Seventy Two and 72/100 Dollars ($31,735,672.72), including the New Principal Balance, and Two Hundred Seven Thousand Three Hundred Nine and 60/100 Dollars ($207,309.60) in interest accrued at 4.0% per annum on the New Principal Balance between August 17, 2019 and the Maturity Date.  Borrower agrees upon demand to pay all costs and expenses incurred by Lender in connection with this Second Amendment, including but not limited to attorneys' fees and costs, title company charges and recording fees.  Lender may, at its sole option, pay for such attorneys' fees and costs, title company charges and recording fees out of the proceeds of the additional funding of $739,000.00.

4.    <u>Releases, Covenants Not to Litigate, Assignments and Indemnification</u>.  As of the Date of this Amendment and in consideration for the renewal, extension and/or restructure of the Note, Borrower hereby agrees as follows:

A.    Borrower: (i) fully and finally acquits, quitclaims, releases and discharges each of the Released Parties (the term "**Released Parties**" shall be defined as Lender and its respective officers, directors, shareholders, representatives, employees, agents and attorneys)

of and from any and all obligations, claims, liabilities, damages, demands, debts, liens, deficiencies or cause or causes of action (including claims and causes of action for usury) to, of or for the benefit (whether directly or indirectly) of Borrower, at law or in equity, known or unknown, contingent or otherwise, whether asserted or unasserted, whether now known or hereafter discovered, whether statutory, in contract or in tort, as well as any other kind or character of action now held, owned or possessed (whether directly or indirectly) by Borrower on account of, arising out of, related to or concerning, whether directly or indirectly, proximately or remotely (a) the Note or any of the Loan Documents, or (b) this Second Amendment; (ii) waives any and all defenses to payment of the Note for any reason; and (iii) waives any and all defenses, counterclaims or offsets to the Loan Documents (collectively, the "**Released Claims**");

Except as hereinabove limited, it is understood and agreed by Borrower that the claims released hereunder include all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, arising out of or related to any and all of the matters referred to in the immediately preceding paragraph, notwithstanding the provisions of Section 1542 of the California Civil Code, which Section provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Borrower acknowledges that it may hereafter discover facts different from, or in addition to, those which it now knows or believes to be true with respect to the claims released hereunder, and agree that the foregoing release shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof, and waives application of the provisions of Section 1542 with respect to the claims released hereunder.

5.    Continuing Security.  The Deed of Trust, as modified by the First Amendment and this Second Amendment, shall continue to secure the indebtedness evidenced by the Note as amended by the First Amendment and this Second Amendment, and all other indebtedness and obligations secured by the Deed of Trust.  Except as expressly modified by the First Amendment and this Second Amendment, the Deed of Trust shall remain in full force and effect, and this Second Amendment shall have no effect on the priority or validity of the lien of the Deed of Trust, which shall continue to constitute a lien and charge on the property encumbered by the Deed of Trust as follows:

A.    The Hillcrest Deed of Trust, as modified by this Amendment, shall continue to constitute a seventh position lien and charge on the property encumbered by the Hillcrest Deed of Trust.

B.   The Airole Deed of Trust, as modified by this Amendment, shall continue to constitute a second position lien and charge on the property encumbered by the Airole Deed of Trust.

C.   The Bellagio Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Bellagio Deed of Trust.

D.   The Carcassonne Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Carcassonne Deed of Trust.

E.   The Stone Ridge Deed of Trust, as modified by this Amendment, shall continue to constitute a fourth position lien and charge on the property encumbered by the Stone Ridge Deed of Trust.

F.   The Londonderry Deed of Trust, as modified by this Amendment, shall continue to constitute a fifth position lien and charge on the property encumbered by the Londonderry Deed of Trust.

6.   <u>No Other Modifications</u>. Except as modified expressly or by necessary implication hereby and by this Second Amendment, all of the terms and conditions of the Note and Deed of Trust shall remain unchanged and in full force and effect. To the extent the provisions of this Second Amendment are inconsistent with the provisions of the Note or Deed of Trust, the provisions of this Second Amendment shall control and supersede such inconsistent provisions in the Note and Deed of Trust.

7.   <u>Successors and Assigns</u>. All of the grants, including the grant of the power of sale, obligations, covenants, agreements, terms, provisions and conditions herein shall apply to, bind and inure to the benefit of the heirs, administrators, executors, legal representatives, successors and assigns of Borrower and the successors in trust of trustee, and the endorsees, transferees, successors and assigns of Lender.

*[Signatures on following page]*

3781470.1                                    -5-

EXECUTED AND DELIVERED to be effective as of the date first set forth above.

BORROWER:

CRESTLLOYD, LLC,
a California limited liability company

By: _____
     Nile Niami, Manager

10701 BELLAGIO ROAD, LLC,
a California limited liability company

By: _____
     Nile Niami, Manager

CARCASSONNE FINE HOMES, LLC,
a California limited liability company

By: _____
     Nile Niami, Manager

MARBELLA CONSTRUCTION, INC.,
a California corporation

By: _____
     Nile Niami, Manager

1369 LONDONDERRY ESTATE, LLC,
a California limited liability company

By: _____
     Nile Niami, Manager

LENDER:

YOGI SECURITIES HOLDINGS, LLC,
a Nevada limited liability company

By: YOGI Management Trust, its manager

By: _____
     Joseph Englanoff, Trustee

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On September 3, 2019, before me, Steven H. Zidell _____, a Notary Public in and for said State, personally appeared Joseph Englanoff _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Steven H. Zidell_ (Seal)

STEVEN H. ZIDELL
Notary Public - California
Los Angeles County
Commission # 2241601
My Comm. Expires Jun 6, 2022

3781470.1                                    -7-

*q*

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not truthfulness, accuracy, or validity of
> that document.

STATE OF CALIFORNIA            )
                               )
COUNTY OF LOS ANGELES          )

On *September 3, 2019* before me, *Nigel Gibbs* _____, a Notary Public in and
for said State, personally appeared *Nile Niami* _____, who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> NIGEL GIBBS
> Notary Public - California
> Los Angeles County
> Commission # 2164239
> My Comm Expires Oct 4, 2020