Howard J. Steinberg (SBN CA 89291)
Eric V. Rowen (SBN CA 106234)
Heather J. Silver (SBN 285509)
GREENBERG TAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310-586-7700/Facsimile: 310-586-7800

Thomas M. Geher (SBN CA 130588)
JEFFER MANGELS & MITCHELL LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone: 310-203-8080/Facsimile: 310-203-0567

Attorneys for Hankey Capital, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>　　Debtor.<br><br>——————————————————<br>INFERNO INVESTMENT, INC., a Quebec corporation,<br><br>　　Plaintiff,<br>v.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL, LLC, a California limited liability company; YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,<br><br>　　Defendants<br><br>AND RELATED CROSS-ACTIONS. | Bk No. 2:21-bk-18205-DS<br><br>Chapter 11<br><br>Adv. No. 2:22-ap-01125-DS<br><br>**HANKEY CAPITAL, LLC'S STATEMENT OF GENUINE ISSUES IN SUPPORT OF ITS OPPOSITION TO YOGI SECURITIES HOLDINGS, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON NINTH CLAIM FOR RELIEF AND TENTH CLAIM FOR RELIEF**<br><br>[*Filed concurrently with Opposition to Yogi Securities Holdings, LLC's Motion for Partial Summary Judgment; Declarations of Howard J. Steinberg, Patricia Hankey, and Priyesh Bhakta*]<br><br>Date: March 24, 2026<br>Time: 1:00 p.m.<br>Courtroom: 1639<br><br>Judge:　　Hon. Deborah J. Saltzman<br>Action Filed: June 9, 2022 |

Pursuant to Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056, Hankey Capital, LLC ("Hankey") hereby identifies the following material, genuine issues by providing additional uncontroverted facts and conclusions of law ("GI") in support of Hankey's opposition to Yogi Securities Holdings, LLC's ("Yogi") Motion for Partial Summary Judgment.

Hankey does not dispute the facts contained in Yogi's Statement of Facts and Conclusions of Law ("SFCL"; Docket No. 373), with the exception of:

(1) Hankey disputes Yogi's assertion that "[p]ursuant to the Yogi $30M Note, the Debtor borrowed approximately $10,000,000.00 in addition to the prior borrowings made under the Yogi $1.8M Note, the Amended Yogi $1.8M Note, and the Yogi $17M Note."[1] (SFCL § I.B(iii), lns. 6-9.) No evidence is proffered to substantiate this statement. The paragraph in which the sentence appears cites Exhibit V of the Declaration of Joseph Englanoff in support, but Mr. Englanoff's declaration merely references the execution of a series of notes, culminating in the Yogi $30M Note; it says nothing about and thus provides no admissible evidence of the Debtor's borrowing.

(2) Hankey disputes Yogi's assertion that "[i]n Claim 20-1, Hankey admits that the Hankey $91M Note and the Hankey $106M Note were each subject to new agreements, which shows that each of the advances were optional and not mandatory under the Hankey $82.5M Note." (SFCL § I.C(v), n. 47.) Hankey objects and responds that this statement constitutes argument, not fact, and is not supported by any admissible evidence.

I. **ISSUE: Hankey's Entire $106 Million Loan Is Senior to Any Yogi Lien Because Yogi Consented to Senior Indebtedness Up to $115 Million and Hankey's Original Deed of Trust Secures Its Entire Loan.**

| | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
| 1. | A mortgage given "to secure all other indebtedness and obligations that may now or hereafter be due, owing or existing from said mortgagors" secures | *See Lawrence v. Oakes*, 117 Cal. App. 32, 34–35 (1931). |

---

[1] Capitalized terms not defined herein share the same definitions as those found in Hankey's Opposition to Yogi's Motion for Partial Summary Judgment on Ninth Claim for Relief and Tenth Claim for Relief.

|   | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|   | subsequent advances in excess of the original loan amount. |   |
| 2. | Where a senior deed of trust secures subsequent advances, those advances are given priority over a junior deed of trust where the junior lienholder consented to the priority of a senior deed of trust, regardless of the senior lienholder's knowledge of the junior lien. | See Machado v. Bank of Italy, 67 Cal. App. 769, 773–75 (1924) (junior lienholder's consent to priority of senior deed of trust is "decisive" in priority dispute "irrespective of whether or not the [senior lienholder] had knowledge of the existence or terms of the [junior lien]" when making subsequent advances). |
| 3. | The Hankey Deed of Trust stated that it secured:<br><br>(1)  Performance of all obligations of Trustor [Debtor] under any agreements of Trustor incorporated by reference or contained herein.<br><br>(2)  Payment of indebtedness in the total principal amount of Eighty-Two Million, Five Hundred Thousand and No/100 Dollars ($82,500,000.00), together with interest thereon, as provided in and evidenced by that certain Promissory Note of even date herewith executed by Trustor in favor of Beneficiary (the "Note"), and any and all modifications, extensions, and renewals thereof.<br><br>(3)  Performance of such other obligations or payment of such other indebtedness now or hereafter owing to Beneficiary from Trustor, when evidenced by a document reciting that it is so secured.<br><br>(4)  Payment of all sums advanced or paid out by the Beneficiary under any provision of this Deed of Trust or to protect the security of this Deed of Trust. | Declaration of John Lucas filed in support of Motion (Dkt. 375) ("Lucas Decl."), Ex. AA. |
| 4. | In the Yogi $30M Note, Yogi consented to senior indebtedness up to $115,000,000 on the Property. | Englanoff Declaration filed in support of the Motion (Dkt. 374) ("Englanoff Decl."), Ex. V, ¶ 16 ("Borrower agree[s] that at no time while any portion of the Note remains unpaid shall senior indebtedness … encumbering the Airole Property exceed $115,000,000.00"); Steinberg Decl. Ex. 18 (Englanoff: "Nile and I have agreed to terms for a new note" and reciting terms as "Full Note amount (30+ million) behind no more than 115 million."). |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
| 5. | The total principal of Hankey's loan to Debtor was $106 million. | Motion, Dkt. 372, p. 7–8; *see also* Lucas Decl., Ex. FF. |

**II.    ISSUE: Because Yogi Never Contractually Subordinated to Hankey's Security Interest, Any Loan Modifications After Actual Notice of Yogi's Intervening Security Interest Do Not Affect Priority.**

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  | GI Nos. 1–5 are incorporated here by this reference. [2] |  |
| 6. | "[A] material modification of a senior lien, such as an increase in the principal or interest rate, does not result in loss of priority absent contractual subordination." | *Bank of N.Y. Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 954 (2017); *Friery v. Sutter Buttes Sav. Bank*, 61 Cal. App. 4th 869, 8778 (1998) (Where a senior lender "undert[akes] no express or implied contractual duties" toward a junior lienholder, the "relationship … [is] nothing more than that of [] competing lienholder[s] on the same property," and the senior lender is free to modify its loan without the junior lienholder's consent without risk of subordination.); *See* Restatement (Third) of Property (Mortgages) § 7.3(c) (1997) ("If the mortgagor and mortgagee reserve the right in a mortgage to modify the mortgage or the obligation it secures, the mortgage as modified retains priority even if the modification is materially prejudicial to holder of junior interests in the real estate…."). |

---

[2] To avoid bloating the size of this Statement of Genuine Issues, where the same Additional Uncontroverted Material Facts or Conclusions of Law are relevant to more than one issue, Hankey recites the item number at the beginning of the section and incorporate each Additional Uncontroverted Material Fact or Conclusion of Law by reference, rather than pasting each again in toto.

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
| 7. | Hankey and Yogi did not execute any contractual subordination agreements. | Declaration of Priyesh Bhakta in support of Opposition to Motion ("Bhakta Decl."), ¶ 3. |
| 8. | Yogi does not assert, and offers no evidence to suggest, any special relationship between Hankey and Yogi. | *See generally* Motion; SFCL. |

### III. ISSUE: Not All Moneys Hankey Advanced to Crestlloyd In Excess of $82.5 Million are "Optional Advances."

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  | GI Nos. 1–8 are incorporated here by this reference. |  |
| 9. | The purpose and amounts of moneys Hankey advanced to Crestlloyd after advancing the first $82.5 million, *i.e.*, the Subsequent Advances, are:<br><br>- Improvements: $9,225,461.67<br>- Insurance: $837,461.34<br>- Interest: $10,412,315.04<br>- Labor: $1,134,793.86<br>- Legal: $9,729.40<br>- Loan fees: $85,000.00<br>- Plus Development (loan monitoring): $151,500<br>- Property Taxes: $545,759.14<br>- Operational Expenses: $500,000<br><br>Grand Total: $22,902,020.45 | Declaration of Patricia Hankey in support of Opposition to Motion ("Hankey Decl."), ¶ 3. |
| 10. | Advances, like most or all of those referenced in GI 9, made under a senior deed of trust for interest, taxes, assessments, insurance, improvements, or that are otherwise for the benefit of the property are obligatory. | *See Sav. & Loan Soc. v. Burnett*, 106 Cal. 514, 523, 525–26, 536 (1895) (Payments by a lender are "not optional advances," when they are "made to be used, and which [are] used, to pay street assessments and taxes, and to improve the property.");<br><br>*Mortg. Guar. Co. v. Hammond Lumber Co.*, 13 Cal. App. 2d 538, 541, 544–45 (1936) (Sums for "interest, title fees, and other legal purposes" are "obligatory advancements"); |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  |  | *Manning v. Queen*, 263 Cal. App. 2d 672, 673 (1968) (A deed of trust extending security for "items necessary to protect the property" is sufficient to render first lien lender's advances for taxes, insurance, loan advancement fees, and other costs necessary to preserve the security interest in the property senior to second lien deed of trust.). |
| 11. | Debtor "requested from [Hankey] a loan for the purpose of" "construct[ing] new improvements or renovat[ing] existing improvements on the Property." | Lucas Decl., Ex. BB [Construction Loan Agreement], p. 1; *see also* Lucas Decl., Exs. EE [First Amended Hankey Construction Loan Agreement] at p. 3 (stating that existing Construction Loan Agreement remains in full force and effect), HH [Second Amended Hankey Construction Loan Agreement], at p. 3 (same). |

### IV.  ISSUE: Even if the Law Imposed Any Duty on Hankey, Hankey Did Not Breach That Duty.

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  | GI Nos. 1–8 are incorporated here by this reference. |  |
| 12. | When the law imposes a duty on a senior lienholder, that duty is to refrain from making material modifications to the loan that "substantially impair [a junior lienholder's] security without [its] consent." | *See Friery*, 61 Cal. App. 4th at 871, 880 (acknowledging limited circumstances in which there may be a duty "not to substantially impair [a junior lienholder's] security without [its] consent"; noting the court did not need to consider the "alternate ground for granting the summary judgment [] that the modification was not 'material'" because it found no duty on the part of the senior lienholder to refrain from any loan modifications). |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
| 13. | Yogi does not assert, and offers no evidence to suggest, the Subsequent Advances substantially impaired Yogi's security. | *See generally* Motion; SFCL. |

### V.     ISSUE: Outstanding Questions Regarding Yogi's Inequitable Conduct and Its Principal's Relationship with Crestlloyd and Its Principal Raise Material Disputes About Hankey's Claims and Affirmative Defenses, as Well as Crestlloyd's Claims.

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  | GI Nos. 1–13 are incorporated here by this reference. |  |
| 14. | Denial of summary judgment is proper when there are genuine issues of material fact regarding a non-movant's claims or affirmative defenses. | *See Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 815 (9th Cir. 2004); *Five Point Capital v. Generators Hawaii Corp.*, No. CV1308653MWFSSX, 2014 WL 12461047, at *11 (C.D. Cal., Nov. 26, 2014) ("[G]enuine issues of material fact related to [non-movant's] defense and counterclaims … preclude summary judgment on all of [movant's] claims…."). |
| 15. | Hankey has asserted a claim against Yogi for equitable subordination of the entirety of Yogi's lien. | Hankey's Cross-claim, Dkt. 296, ¶¶ 1–30. |
| 16. | Hankey has asserted seven affirmative defenses to Yogi's claims for relief, including: (1) unclean hands; (2) waiver and/or consent; (3) estoppel; (4) offset; (5) marshaling; (6) intervening and superseding cause; and (7) Bankruptcy Code Section 502(d). | Hankey's Answer to Yogi's Third Amended Counterclaim and Cross-claim ("Yogi TAC"), Dkt. 296, ¶¶ 188–227. |
| 17. | Debtor has asserted a claim against Yogi for recharacterization of Yogi's debt as equity, alleging, *inter alia*, that "in fact and in truth, Joseph Englanoff and Nile Niami were in a partnership or joint-venture with one another to develop several different high-end residential real estate properties, and it therefore did not matter to Joseph Englanoff which properties were being secured to various loans between him and Nile | Crestlloyd's Cross Complaint, Dkt. 27, ¶¶ 175, 179. |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  | Niami, as long as Joseph Englanoff felt that he was being provide adequate security." |  |
| 18. | Nile Niami was the principal and manager of Debtor and several non-Debtor entities, including 10701 Bellagio Road, LLC ("Bellagio"), Carcassonne Fine Homes ("Carcassonne"), Marbella Construction, Inc ("Marbella"), 1369 Londonderry Estate, LLC ("Londonderry"), and Contemporary Vista, LLC. | Crestlloyd's Cross Complaint, Dkt 27, ¶ 13; Declaration of Howard Steinberg ("Steinberg Decl."), Exs. 27, 30–34. |
| 19. | "Yogi's principal, Jo[seph] Englanoff, is Nile's former business partner, and the two of them go way back." | Bhakta Decl., Ex. 3. |
| 20. | On April 20, 2018, non-Debtor entities Marbella and Londonderry executed a promissory note in favor of Yogi in the principal amount of $5,200,000 (the "Yogi $5M Note"). | Yogi TAC, Dkt. 288, ¶ 30, Ex. T; Steinberg Decl., Ex. 7. |
| 21. | Debtor was not a party to the Yogi $5M Note, and no Debtor property was pledged as collateral for the Yogi $5M Note. | *See* Yogi TAC, Dkt. 288, ¶ 30, Ex. T; Steinberg Decl., Ex. 7. |
| 22. | The Yogi $5M Note was amended five times, but Debtor's real property located at 1175 N. Hillcrest Road in Beverly Hills, CA 90210 ("Hillcrest Property") was never pledged as security for the Yogi $5M Note. | *See* Yogi TAC, Dkt. 288, ¶ 30–31, Ex. T–Y; Yogi's Answer to Hankey's Cross Claim, Dkt. 311, ¶ 18; Steinberg Decl., Exs. 8-12. |
| 23. | The Property was added as security for the Yogi $5M Note without notice to Hankey, even though Hankey had already recorded its initial loan to Debtor. | Yogi's Answer to Hankey's Cross Claim, Dkt. 311, ¶ 17. |
| 24. | On October 16, 2018, Debtor executed a promissory note in favor of Yogi in the principal amount of $30,188,235 (the "Yogi $30M Note"). | Englanoff Decl., Ex. V. |
| 25. | Debtor was the only borrower listed on the Yogi $30M Note and the Yogi $30M Note was secured by deeds of trust recorded on:<br>(1) The Property.<br>(2) The Hillcrest Property.<br>(3) A non-Debtor property owned by Bellagio located at 10701 Bellagio Road, Los Angeles, CA (the "Bellagio Property").<br>(4) A non-Debtor property owned by Carcassonne located at 627 North Carcassonne Road, Los Angeles, CA (the "Carcassonne Property").<br>(5) A non-Debtor property owned by Marbella located at 3381 Stone Ridge Lane, Los Angeles, CA (the "Stone Ridge Property"). | Englanoff Decl., Ex. W; Yogi TAC, ¶ 25, Ex. O; Yogi TAC ¶ 26, Ex. P.]; Englanoff Decl., Ex. V, ¶ 3. |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  | (6) A non-Debtor property owned by Londonderry located at 1369 Londonderry Place, Los Angeles, CA (the "Londonderry Property"). |  |
| 26. | The Yogi $30M Note states that "all funds advanced hereunder shall be used solely for business, commercial, investment or other similar purposes, particularly for development of" all six properties—(1) Property; (2) Hillcrest Property; (3) Bellagio Property; (4) Carcassonne Property; (5) Stone Ridge Property; and (6) Londonderry Property. | Englanoff Decl., Ex. V, ¶ 14. |
| 27. | The Yogi $30M Note provides that a sale or encumbrance with respect to any of the six properties by any of the entities without Yogi's consent triggers acceleration of the note. | Englanoff Decl., Ex. V, ¶ 10 ("[T]he Property [defined as all six encumbered properties] shall not be sold, agreed to be sold, conveyed, transferred, assigned, disposed of, or further encumbered, whether voluntarily, involuntarily, by operation of law or otherwise, without the written consent of the holder hereof being first obtained, which consent may be withheld in holder's sole and absolute discretion. Any transaction in violation of the above restrictions shall cause the then outstanding principal balance and interest thereon and other sums secured by the Deeds of Trust, at the option of said holder, to immediately become due and payable."). |
| 28. | The Yogi $30M Note includes mandatory payments that are "due and payable" upon the sale of the non-Debtor properties as follows:<br>(1) $10 million upon the sale of the Londonderry Property.<br>(2) $10 million upon the sale of the Bellagio Property.<br>(3) $15 million upon the sale of the Carcassonne Property.<br>(4) $5 million upon the sale of the Stone Ridge Property. | Englanoff Decl., Ex. V, ¶ 1(b). |
| 29. | "Upon the sale of the Stone Ridge Property, the [Yogi $30M Note] was reduced by approximately $0." | Steinberg Decl., Ex. 28 [Yogi/Crestlloyd Interrogatory ["ROG"] No. 5 Resp.]. |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
| 30. | No mechanic's liens were perfected on the Stone Ridge Property at the time of its sale. | Steinberg Decl., Ex. 22 [Stone Ridge Closing Statement]. |
| 31. | "Upon the sale of the Bellagio Property, the [Yogi $30M Note] was reduced by approximately $2,500,000." | Steinberg Decl., Ex. 28 [Yogi/Crestlloyd ROG No. 5 Resp.]. |
| 32. | No mechanic's liens were perfected on the Bellagio Property at the time of its sale. | Steinberg Decl., Ex. 19 [Bellagio Closing Statement]. |
| 33. | "Upon the sale of the Carcassonne Property, the [Yogi $30M Note] was only reduced by approximately $2,810,057." | Steinberg Decl., Ex. 28 [Yogi/Crestlloyd ROG No. 5 Resp.]. |
| 34. | Only one mechanic's lien was perfected on the Carcassonne Property at the time of its sale, and it was in the amount of $19,942.42. | Steinberg Decl., Ex. 20 [Carcassonne Closing Statement]. |
| 35. | Upon the sale of the Londonderry Property, despite being entitled to $10,000,000, the Yogi $30M Note was only reduced by approximately $6,013,000. | Steinberg Decl., Ex. 28 [Yogi/Crestlloyd ROG No. 5 Resp.]. |
| 36. | No mechanic's liens were perfected on the Londonderry Property at the time of its sale. | Steinberg Decl., Ex. 21 [Londonderry Closing Statement]. |
| 37. | As a basis for its recharacterization, equitable subordination, and fraudulent transfer claims, Debtor alleges that "[t]he sale of the Hillcrest Property occurred in rapid fashion" and was "undervalued relative to market," that there were other "diversions of funds," including that funds that "should have rightfully gone to Crestlloyd, [] instead went" to Englanoff or his children, among others. | Crestlloyd's Cross Complaint, Dkt. 27, ¶ 178. |
| 38. | The Hillcrest Property was pledged as security for the Yogi $30M Note on which Debtor was the borrower but was never pledged as security for the Yogi $5M Note on which Londonderry and Marbella were the borrowers. | *See* Yogi TAC, Dkt. 288, ¶ 30–31, Ex. T–Y [Yogi $5M Original and Amended Deeds of Trust]; Yogi's Answer to Hankey's Cross Claim, Dkt. 311, ¶ 18; Englanoff Decl., Ex. W [Yogi $30M Deed of Trust]. |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
| 39. | On or around January 14, 2020, Yogi's principal, Joseph Englanoff, began arrangements to purchase the Hillcrest Property from Debtor through another one of his entities, Trousdale Estate, LLC ("Trousdale"). | Steinberg Decl., Ex. 5 [YOGI_000934 at 937] (Englanoff: "I'm working with Nile and Yvonne to purchase (thru my entity) 1175 N. Hillcrest rd. 90210."); see Yogi's Answer to Hankey's Cross Claim, Dkt. 311, ¶ 18 ("Yogi admits that 'on or around February 7, 2020, the Hillcrest Property sold for $38,325,000 by Debtor to an entity . . . owned by [Yogi's] principal[ ], Trousdale Estate.'"). |
| 40. | When the sale was consummated, the Hillcrest Property was "not [] transferred in 'as is' condition but rather as brand new construction, with all applicable warranties, indemnities, assurances, standards and legal obligations." | Steinberg Decl., Ex. 5 [YOGI_000934 at 937]; Exs. 27 [Excerpted escrow documents stating same], 34. |
| 41. | The sale of the Hillcrest Property included personal property, which was described including "furniture, furnishings, finishings, decor, staging, art, decorations, serving-ware, supplies, inventory, and the like." | Steinberg Decl., Ex. 5; Ex. 27, 34. |
| 42. | Debtor's sale of the Hillcrest Property to Trousdale closed on February 7, 2020, for a purchase price of $38,325,000. | Steinberg Decl., Ex. 15 [Closing Statement]. |
| 43. | The escrow instructions of the sale of Hillcrest required Debtor to "cause a sum equal to $9,500,000.00, less any short-fall that would otherwise be required to be deposited into escrow by Seller to pay in full all existing First Republic Bank Loans and outstanding taxes, less prorations, shall be paid by Buyer to YOGI [ ], representing a pay-down against a promissory note having an original unpaid balance of $30,188,235.00, secured by the Deed of Trust shown under Item No. 12 of Schedule B of the Preliminary Title Report issued by Chicago Title Company dated effective January 8, 2020 and issued under Order No. 00123813-997-BS5-KD3. Said pay-down shall be made concurrent with the close of this escrow transaction." | Steinberg Decl., Exs. 27 [Excerpted Escrow Instructions], 34; see id. Exs. 27 [Excerpts of Title Report], 34. |
| 44. | When the Hillcrest Property sale closed, Yogi was credited $9,352,824.23. | Steinberg Decl., Ex. 15 [Closing Statement]. |

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
| 45. | Niami and Englanoff agreed to apply, and Yogi did apply, $6,435,535 of the proceeds from the sale of the Hillcrest Property to pay off the Yogi $5M Note on which Crestlloyd was not the borrower and for which the Hillcrest Property was not pledged as security. | *Id.*, Ex. 16 [Letter to Niami] (Englanoff: "We agreed that the payment would be first used to payoff the loan … in the original principal amount of $5,200,000.00 from [Yogi] to 1369 Londonderry Estate, LLC and Marbella Construction, Inc. … The balance would be used to pay down the loan … in the original principal amount of $30,188,235 from [Yogi] to Crestlloyd, LLC."); Yogi's Answer to Hankey's Cross Claim, Dkt. 311, ¶ 18; GI Nos. 22–23, 39. |
| 46. | "Upon the sale of the Hillcrest Property, the [Yogi $30M Note] was reduced by approximately $2,917,288." | Steinberg Decl., Ex. 28 [Yogi/Crestlloyd ROG No. 5 Resp.]. |
| 47. | On May 11, 2020, Englanoff listed the Hillcrest Property for sale at the asking price of $59,950,000. | Steinberg Decl., ¶ 22, Exs. 25–26 [Zillow and Redfin]. |
| 48. | On November 24, 2020, Trousdale sold the Hillcrest Property for at least $47,000,000. | Steinberg Decl., Ex. 17. [Trousdale Seller Closing Statement]; *id.*, Steinberg Decl., ¶ 22, Exs. 25–26 [Zillow and Redfin]; Yogi's Answer to Hankey's Cross Claim, Dkt. 311, ¶ 19. |

**VI.  ISSUE: Outstanding Fraudulent Transfer Claims Bar Determinations of Priority at the Summary Judgment Stage.**

| No. | Additional Uncontroverted Material Facts / Conclusions of Law | Evidence / Citation |
|---|---|---|
|  | GI Nos. 1–48 from above, incorporated here by this reference. |  |
| 49. | "[T]he court shall disallow any claim of any entity … that is a transferee of a transfer avoidable under section … 548 [fraudulent transfers and obligations]…." | *See* 11 U.S.C. § 502(d); *In re America West Airlines, Inc.*, 217 F.3d 1161 (9th Cir. 2000) (Section 502(d) "operates to disallow claims of transferees who do not surrender their avoidable transfer") (quoting *Committee of Unsecured Creditors v. Commodity Credit Corp. (In re KF Dairies, Inc.)*, 143 B.R. 734, 737 (9th Cir. BAP 1992). |
| 50. | "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void …." | 11 U.S.C. § 506(d). |
| 51. | Debtor has outstanding claims against Yogi seeking avoidance of actual and constructive fraudulent transfers. | Crestlloyd's Cross Complaint, Dkt. 27, Claims 13–16, ¶¶ 184–206. |
| 52. | Debtor has outstanding claims against Yogi for disallowance of Yogi's claim against Debtor. | Crestlloyd's Cross Complaint, Dkt. 27, Claim 21, ¶¶ 234–240. |
| 53. | Debtor has outstanding claims against Yogi for recovery of avoided transfers, including more than $11 million from Yogi, Englanoff, and Trousdale. | Crestlloyd's Cross Complaint, Dkt. 27, Claim 25, ¶¶ 268–270. |
| 54. | The sale of Debtor's Hillcrest Property to Yogi (via Trousdale) at price that was less than reasonably equivalent value constitutes a constructive or actual fraudulent transfer. | 11 U.S.C § 548(a)(1)(A) (any transfer made by the debtor with "actual intent to hinder, delay, or defraud any entity to which the debtor was or became … indebted" is avoidable as a fraudulent transfer); *id.* § 548(a)(1)(B) (transfer made where debtor "received less than a reasonably equivalent value" is a potential fraudulent transfer); *see, e.g.*, *In re Eckert*, 388 B.R. 813, 836 (Bankr. N.D. Ill. 2008), *aff'd sub nom. Grochocinski v. Schlossberg*, 402 B.R. 825 (N.D. Ill. 2009) (transferee's profitable resale of real |

| | | |
|---|---|---|
| | | property less than a year after purchase from debtor supported conclusion that sale was for less than reasonably equivalent value and constituted constructive fraudulent transfer); GI Nos. 37, 39–42, 48, 49. |
| 55. | The application of the proceeds from the sale of the Hillcrest Property to pay down the Yogi $5M Note prior to paying down the Yogi $30M Note constitutes a constructive or actual fraudulent transfer. | 11 U.S.C § 548(a)(1)(A) (any transfer made by the debtor with "actual intent to hinder, delay, or defraud any entity to which the debtor was or became … indebted" is avoidable as a fraudulent transfer); GI Nos. 20–26, 38–48. |

DATED: March 3, 2026                    GREENBERG TRAURIG, LLP


                        By  /s/ Howard J. Steinberg
                            Howard J. Steinberg
                            Attorneys for Defendant and Cross-Claimant
                            Hankey Capital, LLC

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA  90067

A true and correct copy of the foregoing document entitled (*specify*): **Hankey Capital LLC's Statement of Genuine Issues ISO Its Opposition to Yogi Securities Holdings, LLC's Motion for Partial Summary Judgment on Ninth Claim for Relief and Tenth Claim for Relief** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 3, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*)  March 3, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 3, 2026 | Terrine Pearsall | /s/ Terrine Pearsall |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
ACTIVE 705722580v1

**F 9013-3.1.PROOF.SERVICE**

SERVICE LIST
In re Crestlloyd, LLC
Case No. 2:21-bk-18205-DS
Adv. No. 2:22-ap-01125-DS

**1. To be Served by the Court Via Notice of Electronic Filing (NEF):**

Kyra E Andrassy    kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
Todd M Arnold    tma@lnbyg.com
Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;camille@lesliecohenlaw.com
Ryan Coy    ryan.coy@blankrome.com, michelle.grams@blankrome.com
Max Fabricant    mfabricant@lavelysinger.com
Thomas M Geher    tmg@jmbm.com, bt@jmbm.com;tmg@ecf.courtdrive.com
David B Golubchik    dbg@lnbyg.com, dbg@lnbyg.com
Jonathan Gottlieb    jdg@lnbyg.com
John W Lucas    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
John A Moe    john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
Nicholas David Moss    nmoss@molinolawfirm.com
Joseph M Rothberg    jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Jessica Wellington    jwellington@bg.law, ecf@bg.law
Johnny White    JWhite@wrslawyers.com, jlee@wrslawyers.com
Jaime K Williams    jaime@lesliecohenlaw.com, jaime.williams@gmail.com

**2. Served by United States Mail:**

Yvonne Niami
341 South Rodeo Drive
Beverly Hills, CA  90212-4206

N. Philanthropy LLC
Attn: Yvonne Niami
341 South Rodeo Drive
Beverly Hills, CA  90212-4206

ACTIVE 719847544v1

Andre Mario Smith
7938 Broadway No. 1263
Lemon Grove, CA 91946

ACTIVE 719847544v1