Richard M. Pachulski (CA Bar No. 90073)
Alan J. Kornfeld (CA Bar No. 130063)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
E-mail: rpachulski@pszjlaw.com
akornfeld@pszjlaw.com
jlucas@pszjlaw.com

*Attorneys for Yogi Securities Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>Debtor. | Case No. 2:21-bk-18205-DS<br><br>Chapter 11 |
| INFERNO INVESTMENT, INC., a Quebec corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL LLC, a California limited liability company, YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,<br><br>Defendants. | Adv. No. 2:22-ap-01125-DS<br><br>**AMENDED NOTICE OF MOTION AND MOTION OF CROSS-DEFENDANT YOGI SECURITIES HOLDINGS, LLC TO EXTEND DEADLINES IN THE COURT'S JUNE 3, 2026, SCHEDULING ORDER AND DECLARATION OF HEATHER SILVER IN SUPPORT THEREOF**<br><br>Date: November 17, 2026<br>Time: 1:00 p.m.<br>Place: Courtroom 1639<br>255 E. Temple Street<br>Los Angeles, CA 90012 |
| AND RELATED CROSS-ACTIONS | |

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, AND TO ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Cross-Defendant Yogi Securities Holdings, LLC ("**Yogi**"), hereby moves (the "**Motion**") the Court for entry of order further extending the



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

deadlines in the Court's *Order Approving Stipulation to Extend Deadlines in the Court's February Scheduling Order* [Adv. Docket No. 450] as set forth in the Memorandum of Points and Authorities annexed hereto, and the declaration of Heather Silver (the "**Silver Declaration**") in support of the Motion.

**PLEASE TAKE FURTHER NOTICE** that, as further described below, the hearing on the Motion will be held on **November 17, 2026, at 1:00 p.m.**, or as soon thereafter as the matter may be heard (the "**Hearing**"), before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in Courtroom 1639 of the above-captioned Court.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice, the Memorandum of Points and Authorities, and the Silver Declaration, each attached hereto, each filed contemporaneously herewith, the pleadings and other papers filed in this adversary proceeding and in the chapter 11 case to which it relates, and such further evidence and argument as may be presented at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE that pursuant to Local Bankruptcy Rule 9013-1(f), objections and responses, if any, to the Motion shall be filed with the Court and served on Yogi's counsel at least fourteen (14) days prior to the hearing date.**

Dated: October 27, 2026

PACHULSKI STANG ZIEHL & JONES LLP

By *__/s/ John W. Lucas__*
John W. Lucas

*Attorneys for Yogi Securities Holdings, LLC*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Cross-Defendant Yogi Securities Holdings, LLC ("**Yogi**"), in the above-captioned adversary proceeding ("**Adversary Proceeding**"), brings this motion ("**Motion**") for entry of an order further extending the deadlines in the Court's *Order Approving Stipulation to Extend Deadlines in the Court's February Scheduling Order by 105 days* (the "**June Scheduling Order**") [Adv. Docket No. 450]. Annexed hereto is the declaration of Heather J. Silver (the "**Silver Declaration**") filed in support of the Motion.

Prior to filing this Motion, Yogi confirmed that Hankey Capital, LLC ("**Hankey**"), Crestlloyd, LLC (the "**Debtor**"), Trousdale, LLC ("**Trousdale**"), and Joseph Englanoff ("**Englanoff**") each agree to the extension as set forth herein. Inferno Investment, Inc. ("**Inferno**"), however, did not consent, which is why Yogi is filing a motion as opposed to submitting a stipulation for the Court's consideration.

### A. The Scheduling Orders

On September 19, 2024, the Court entered a scheduling order [Adv. Docket No. 283] (the "**Original Scheduling Order**"), which, among other things, set certain discovery deadlines. The Original Scheduling order has been extended by stipulation on three separate occasions, the most recent being the June Scheduling Order on June 3, 2026.

The June Scheduling Order set forth the following deadlines:

| Event | Deadline |
|---|---|
| Close of Fact Discovery | December 7, 2026 (Monday) |
| Initial Expert Disclosures & Reports | December 30, 2026 (Wednesday) |
| Rebuttal Expert Disclosures & Reports | January 25, 2027 (Monday) |
| Close of Expert Discovery | March 25, 2027 (Thursday) |
| Deadline to File Dispositive Motions | April 15, 2027 (Thursday) |



PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**B. Current Status of the Adversary Proceeding**

The past six to ten months of this Adversary Proceeding has been punctuated with many starts and stops. For example, on January 8, 2026, Yogi filed a motion for partial summary judgment [Adv. Docket Nos. 372-376]. The foregoing summary judgment motion has been continued several times. Most recently, Yogi and Hankey continued the hearing on the partial summary judgment motion from its previously scheduled date of October 15, 2026 to May 6, 2027 [Adv. Docket No. 460].

On April 28, 2026, the parties participated in a mediation conducted by the Hon. Lee Bogdanoff (ret). While that mediation did not result in a settlement, the parties have attempted to engage in further settlement discussions that have not yet resulted in partial or complete resolutions of the claims in this Adversary Proceeding.

Prior to and after the mediation, the parties in this Adversary Proceeding have propounded discovery against other the other parties, and also against numerous third parties, which has not always resulted in fulsome or complete productions from the parties. For example, as set forth in greater detail in the Silver Declaration (Paras. 3 and 9), the Debtor did not produce source documents with respect to the loans for the Airole Property and those related to non-Debtor affiliates that involved numerous other high-end developments that at times were cross-collateralized. This has required certain parties to subpoena bank records for the purpose of reviewing and reconstructing transactions involving dozens of bank accounts to determine sources and uses of cash proceeds.

Hankey has served numerous sets of discovery requests on Inferno, Yogi, and Trousdale. In turn, Inferno and Yogi have served numerous sets of discovery requests on Hankey. *See* Silver Declaration (Para. 13). Yogi and Hankey have served one set of discovery on the Debtor. *See* Silver Declaration (Para. 13). Yogi has served numerous sets of discovery requests on Inferno, and Inferno has served numerous sets of discovery requests on Yogi. *See* Silver Declaration (Para. 13). In addition, Hankey issued more than 45 subpoenas to third parties including contractors and sub-contractors on the Property, and Yogi also issued nearly forty subpoenas. Hankey and Yogi

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

continue to receive documents and responses related to their third-party discovery. *See* Silver Declaration (Para. 10).

In response to these discovery requests, the parties have objected to the requests for various reasons. In some instances, the parties have resolved certain objections through meeting and conferring, granting extensions, narrowing the request, and by making further productions. While the parties have attempted to narrow or eliminate the disputes entirely, the pending discovery disputes are not completely resolved. In addition, certain of the parties recently propounded new discovery for which the deadline(s) to respond has not yet expired. *See* Silver Declaration (Para. 11). Plus, it is likely that each of the parties expect to propound further discovery. *See* Silver Declaration (Paras. 11 and 12). At the end of the day, there are a host of outstanding discovery disputes between the parties in this Adversary Proceeding that require more time to resolve. Absent consensual resolution, each party will need to bring the disputed discovery to the Court's attention for resolution.

Yogi is actively engaged in trying to resolve the discovery disputes directed at Yogi. For example, engaged a discovery vendor that imaged Yogi's electronic devices. Yogi also developed a set of search terms that it is using to identify potentially relevant, non-privileged documents, and sent the search terms to both Hankey and Inferno for their input. Yogi is currently reviewing the imaged information and upon completion will prepare a supplemental production to all the parties in this Adversary Proceeding. In addition to the supplemental production, Yogi is also amending its interrogatory responses to Inferno.

Yogi has various unresolved discovery disputes with Inferno arising from Inferno's responses to Yogi's document requests, interrogatories, and requests for admissions. For example, Inferno objected to Yogi's discovery requests as: (a) "burdensome, oppressive, overbroad, duplicative, and designed solely to harass.", (b) "vague, ambiguous and/or unintelligible.", and (c) privileged, "confidential" or "proprietary." Further, Inferno denied numerous requests for admissions, which included unqualified representations made by Inferno's counsel on the record before the Court during the sale hearing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Inferno's various discovery objections are troubling for many reasons. For example, Inferno refuses to amend its general objections or confirm whether and to what extent it is withholding the production of discoverable information on the basis of its general/boilerplate objections. Assuming that any of Yogi's requests were "vague" or "ambiguous," Inferno has an obligation to show such vagueness or ambiguity, and Inferno has failed to do such. Similarly, boilerplate objections based on the requests being "overly burdensome" or "harassing" require the objecting party to respond to the extent not objectionable, which, again, Inferno has failed to do. Further, Inferno objects to the production of certain information on the basis of it being "confidential and proprietary" in the face of a protective order [Adv. Docket No. 367] that the parties negotiated for the specific purpose of disclosing confidential information. Inferno will not confirm whether any documents are being withheld on this basis and why the protective order does not address the objection. Also, Inferno's document productions recycle the same production of documents that it produced in its initial disclosures pursuant to Rule 26 (*i.e.*, no new documents). Inferno's productions do not contain "electronically stored information." Last, Inferno has refused to produce a privilege log in response to any documents that are being withheld on the basis of privilege.

As set forth in the Silver Declaration, Hankey also diligently pursued discovery from Inferno. On August 31, 2026, Hankey sent a meet and confer letter to Inferno regarding Inferno's responses to Hankey's Second, Third, Fourth, and Fifth Sets of Requests for Production, First Set of Requests for Admissions, and First and Second Sets of Interrogatories. *See* Silver Declaration (Para. 15). Attached as Exhibits 1, 2, and 3 to the Silver Declaration are copies of the letters between Hankey and Inferno regarding their outstanding discovery disputes.

As set forth in the Silver Declaration (Para. 18), the disputes are material and relate to the completeness of the parties' document collections, privilege logs, and substantive responses to requests for admission and interrogatories. The parties will endeavor to resolve these disputes without Court intervention but completing the meet-and-confer process and, if necessary, presenting the disputes to the Court cannot reasonably be accomplished in sufficient time to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

permit completion of the resulting productions and depositions before the December 7, 2026, fact-discovery cutoff.

**II.**

**RELIEF REQUESTED**

By this Motion, Yogi, along with the consent of Hankey, the Debtor, Trousdale, and Englanoff, seek entry of an order extending all deadlines in the June Scheduling Order as follows:

| **Event** | **Deadline** |
|---|---|
| Close of Fact Discovery | March 31, 2027 (Wednesday) |
| Initial Expert Disclosures & Reports | April 23, 2027 (Friday) |
| Rebuttal Expert Disclosures & Reports | May 19, 2027 (Wednesday) |
| Close of Expert Discovery | July 7, 2027 (Wednesday) |
| Deadline to File Dispositive Motions | July 28, 2027 (Wednesday) |

**III.**

**ARGUMENT**

As set forth herein and the Silver Declaration, Yogi believes that there is cause to extend the deadlines set forth in the June Scheduling Order because, as noted above, there are several pending discovery disputes, the parties expect to propound additional discovery, and there has only been one deposition taken during the life of this Adversary Proceeding. While Inferno does not consent to the extension of the deadlines in the June Scheduling Order, Yogi believes that the extension will ultimately benefit all the parties, including Inferno, because it will enable the parties the time necessary to attempt to resolve their pending discovery disputes without having to resort to the Court.

As noted above, there has only been one deposition taken in this Adversary Proceeding. Once the discovery disputes are resolved, or adjudicated by the Court, Yogi expects that there will be numerous depositions (that have yet to be scheduled), which will require more time before the current discovery cutoff expires on December 7, 2026.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Yogi and the other parties supporting this Motion will attempt to resolve these discovery disputes consensually. However, if the parties are not able to reach resolutions with respect to their respective discovery disputes, they will be required to seek relief from the Court. As noted above, all the parties in this Adversary Proceeding (other than Inferno) support the extension. However, Inferno should not be able to use the upcoming deadlines set forth in the June Scheduling Order as a means to evade the discovery responses that it must provide either consensually or with the assistance of the Court.

**IV.**

**CONCLUSION**

For the reasons set forth herein, Yogi respectfully requests that the Court enter an order granting the Motion extending all deadlines in the June Scheduling Order as follows:

| Event | Deadline |
|---|---|
| Close of Fact Discovery | March 31, 2027 (Wednesday) |
| Initial Expert Disclosures & Reports | April 23, 2027 (Friday) |
| Rebuttal Expert Disclosures & Reports | May 19, 2027 (Wednesday) |
| Close of Expert Discovery | July 7, 2027 (Wednesday) |
| Deadline to File Dispositive Motions | July 28, 2027 (Wednesday) |

Dated: October 27, 2026

PACHULSKI STANG ZIEHL & JONES LLP

By *_/s/ John W. Lucas_*
John W. Lucas

*Attorneys for Yogi Securities Holdings, LLC*

**DECLARATION OF HEATHER J. SILVER IN SUPPORT OF MOTION TO EXTEND DEADLINES IN THE COURT'S JUNE 3, 2026, SCHEDULING ORDER**

1. I, Heather J. Silver, am an attorney at law, duly licensed to practice in the State of California and before this Court. I am a shareholder of Greenberg Traurig, LLP, counsel for Defendant and Counter/Cross-Claimant Hankey Capital, LLC ("Hankey"). I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in connection with the concurrently filed Motion of Yogi to Extend Deadlines in the Court's June 3, 2026, Scheduling Order (the "Motion").

2. In this proceeding, this Court has been asked to intervene in discovery issues on very limited occasions, such as where Yvonne Niami, the spouse of the Debtor's principal, Nile Niami, failed to respond to discovery and was ultimately held in contempt. The parties have sought to limit the need for the Court to spend its valuable time addressing discovery disputes and have routinely granted extensions of time to respond to discovery to both allow for responses to be prepared and to attempt to resolve perceived deficiencies with respect to the responses. Despite the fact that all parties to this proceeding, save for Inferno Investment, Inc. ("Inferno"), support an extension of the discovery deadline, Inferno, who has repeatedly asked for extensions and has failed to fully and properly respond to discovery, now seeks to prejudice the other parties to this proceeding by seeking to have remain in place a discovery deadline that does not enable the parties to complete the discovery needed to fully and adequately present the issues. This type of litigation gamesmanship should not be countenanced. Inferno and the Debtor were partners in their dealings until Inferno chose to have documents prepared to recharacterize their dealings as loans. Further, Inferno's claim that a subordination agreement its principal signed was a forgery has been debunked by both handwriting and fingerprint experts.

3. Discovery has been lengthy for a number of reasons, including the Debtor's failure to provide source documents concerning a construction project involving over $175 million in loans; a series of related non-Debtor affiliates which likewise involved numerous other high end developments; complex dealings involving the non-Debtor affiliates and Debtor, where portions of funding were cross collateralized; the need to obtain bank records, scrutinize, and reconstruct transactions involving dozens of bank accounts to determine sources and uses of cash proceeds; and the need to subpoena numerous

third party contractors and service providers to reconstruct records and ascertain where monies flowed. A further extension is essential to complete discovery of both party and non-party witnesses.

4. On August 19, 2025, the Court entered a *Status Conference and Scheduling Order Pursuant to LBR 7016-1(a)(4)* (the "August Scheduling Order") [Dkt 340]. The August Scheduling Order set forth the following deadlines:

| **Event** | **Deadline** |
|---|---|
| Close of Fact Discovery | May 25, 2026 (Monday) |
| Initial Expert Disclosures & Reports | June 18, 2026 (Thursday) |
| Rebuttal Expert Disclosures & Reports | July 13, 2026 (Monday) |
| Close of Expert Discovery | September 11, 2026 (Friday) |
| Deadline to File Dispositive Motions | October 2, 2026 (Friday) |

5. On February 26, 2026, Inferno, Crestlloyd, LLC ("Debtor" or "Crestlloyd"), Yogi Securities Holdings, LLC ("Yogi"), Trousdale Estate, LLC ("Trousdale"), and Hankey (collectively, the "Parties") filed a *Stipulation to Extend Deadlines in the Court's August 19, 2025, Scheduling Order by Ninety (90) Days* (the "February Stipulation") [Dkt 402]. The Parties sought the extension because discovery was still actively underway, and the Parties were engaged in efforts to mediate the dispute.

6. On February 27, 2026, the Court entered an *Order Approving Stipulation to Extend Deadlines in the Court's August 19, 2025, Scheduling Order by 90 Days* (the "February Scheduling Order") [Dkt 404]. The February Scheduling Order set forth the following deadlines:

| **Event** | **Deadline** |
|---|---|
| Close of Fact Discovery | August 24, 2026 (Monday) |
| Initial Expert Disclosures & Reports | September 16, 2026 (Wednesday) |
| Rebuttal Expert Disclosures & Reports | October 12, 2026 (Monday) |
| Close of Expert Discovery | December 10, 2026 (Thursday) |
| Deadline to File Dispositive Motions | December 31, 2026 (Thursday) |

7. On June 2, 2026, the Parties filed a *Stipulation to Extend Deadlines in the Court's*

*February 27, 2026, Scheduling Order by 105 Days* (the "June Stipulation") [Dkt 448] because discovery was still actively underway, including extensive third-party discovery, and the Parties were continuing to engage in efforts to mediate the dispute.

8. On June 3, 2026, the Court entered an *Order Approving the Stipulation to Extend Deadlines in the Court's February 27, 2026, Scheduling Order by 105 Days* (the "June Scheduling Order") [Dkt 450]. The June Scheduling Order set forth the following deadlines:

| **Event** | **Deadline** |
|---|---|
| Close of Fact Discovery | December 7, 2026 (Monday) |
| Initial Expert Disclosures & Reports | December 30, 2026 (Wednesday) |
| Rebuttal Expert Disclosures & Reports | January 25, 2027 (Monday) |
| Close of Expert Discovery | March 25, 2027 (Thursday) |
| Deadline to File Dispositive Motions | April 15, 2027 (Thursday) |

9. As discussed in the June Stipulation, there remain significant gaps in the Debtor's source documents requiring extensive third-party discovery, including that Debtor has not been able to locate and produce many communications and documents from the relevant time periods, including real property escrow files, bank statements, and lender and vendor communications. These were not turned over by the Debtor's principal, Nile Niami, and efforts to obtain the documents from third parties associated with Niami (his wife, business associates, etc.) have been unsuccessful. The resulting gaps concern core issues in the action, including the receipt, transfer, and use of funds at issue in the parties' claims and defenses.

10. Hankey has moved diligently to close those gaps. To date, Hankey has issued more than 45 subpoenas to third parties, including contractors and subcontractors that performed work at the Property, and I understand that Yogi has also issued nearly forty subpoenas. Hankey and Yogi continue to pursue documents and responses related to their third-party discovery from subpoena recipients, including by following up with third parties that have not responded or have provided incomplete responses. This third-party discovery remains active and is necessary because many of the relevant documents are not available from the Debtor or its principal.

11. Hankey has subpoenaed or intends to subpoena nine purchasers of properties previously owned by Debtor or Nile Niami to trace the alleged diversion of funds for improper purposes. Four subpoenas have been successfully served. Despite diligent efforts, Hankey has not yet been able to locate and serve the remaining subpoena recipients and is investigating additional means of effectuating service. The discovery sought from these purchasers bears directly on the disposition of funds that Hankey contends should have been paid to the property-owning entities and involves in excess of $5 million.

12. Hankey further intends to subpoena The Beverly Hills Estates—the brokerage firm that marketed the sale of The One and Hillcrest—to obtain evidence concerning the sale of both properties.

13. The Parties have also been diligently participating in party discovery. Hankey has served ten sets of discovery requests on Inferno, five sets of discovery requests on Yogi, and two sets of discovery requests on Trousdale. In turn, Inferno has served eight sets of discovery requests on Hankey, and Yogi has served three sets of discovery requests on Hankey. Yogi has served five sets of discovery requests on Inferno, and Inferno has served four sets of discovery requests on Yogi. The volume of party discovery reflects the scope of the issues being litigated, but, as discussed below, numerous responses and productions remain outstanding or materially incomplete.

14. Significant party discovery remains outstanding. Hankey, on the one hand, and Yogi and Trousdale on the other hand, have been meeting and conferring in an effort to resolve significant discovery disputes without involvement of the Court.

15. Hankey has diligently pursued discovery from Inferno. On August 31, 2026, Hankey sent a meet and confer letter to Inferno regarding Inferno's responses to Hankey's Second, Third, Fourth, and Fifth Sets of Requests for Production, First Set of Requests for Admissions, and First and Second Sets of Interrogatories. Attached as **Exhibit 1** is a true and accurate copy of Hankey's August 31, 2026, letter.

16. As explained in that letter, Inferno improperly narrowed the scope of the document requests and asserted a wholesale refusal to produce categories of documents. As for its responses to Hankey's First Set of Requests for Admission, Inferno asserted it lacked personal knowledge and/or information to respond to requests concerning Julien Remillard's—Inferno's officer—signature in a notary book. Despite Inferno's allegation that the signature in the notary book is a forgery, rendering the subordination agreement null and void, Inferno refuses to admit whether Remillard's signature in the

notary book is or is not authentic and genuine. Further, Inferno's responses to Hankey's First and Second Sets of Interrogatories provided only threadbare answers or directed Hankey to Inferno's Third Amended Complaint, without identifying the specific facts responsive to Hankey's Interrogatories.

17. Inferno responded to Hankey's letter on September 15, 2026. Attached as **Exhibit 2** is a true and accurate copy of Inferno's September 15, 2026, letter. In the letter, Inferno refused to produce any documents responsive to the Third Set of Requests for Production and certain requests in the Fourth Set of Requests for Production. Inferno also declined to amend or supplement its responses to the Requests for Admission. Hankey responded to Inferno's September 15 letter on October 14, 2026. Attached as **Exhibit 3** is a true and accurate copy of Hankey's October 14, 2026, letter.

18. Hankey intends to continue to meet and confer with Trousdale, Inferno, and Yogi, and if necessary, seek court intervention. The unresolved disputes are not limited to discrete or collateral requests. They concern communications and financial records bearing on the central transactions at issue, the completeness of the parties' document collections, privilege logs, and substantive responses to requests for admission and interrogatories. Completing the meet-and-confer process and, if necessary, presenting the disputes to the Court cannot reasonably be accomplished in sufficient time to permit completion of the resulting productions and depositions before the December 7, 2026, fact-discovery cutoff.

19. Separate and apart from the complex facts and issues that are the subject of discovery, discovery was delayed at Inferno's request as an accommodation to Inferno. Singer Weinstein Wolf & Jonelis, LLP withdrew as counsel on July 2, 2025, and was replaced by Jeffrey Huron of Stinson LLP. Leslie Cohen PC then substituted in as counsel on February 11, 2026, replacing Stinson LLP and Bryan Cave Leighton Paisner LLP. Ms. Cohen requested and was granted extensions of time to respond to discovery as a professional courtesy since she was getting up to speed in the case. The Singer Weinstein firm associated back into the case on August 13, 2026, and now seeks to disadvantage the other parties who delayed discovery to accommodate Ms. Cohen.

20. Material fact discovery remains to be completed, including the depositions of the Parties and potentially relevant third parties. Those depositions cannot be meaningfully conducted until the outstanding discovery disputes are resolved and the relevant document productions are complete.

21. Given the ongoing discovery disputes and outstanding discovery, all parties, except Inferno, agreed to extend the deadlines in the case for 105 days. The requested extension is not sought for purposes of delay, but to permit the parties to complete discovery that is already underway and that Hankey has diligently pursued. No trial date has been set, and the extension will not prejudice any party.

22. For the foregoing reasons, good cause exists to extend all deadlines in the June Scheduling Order as requested in Yogi's concurrently filed Motion. The requested extension is necessary to permit completion of substantial discovery already underway, resolution of the outstanding discovery disputes, and completion of depositions without prejudice to any party.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 22nd day of October, 2026 in Los Angeles, California.

GREENBERG TRAURIG, LLP

Heather J. Silver

Heather J. Silver
*Attorneys for Hankey Capital, LLC*

# EXHIBIT 1

GT GreenbergTraurig

Heather J Silver
Tel 310.586.7744
Heather.Silver@gtlaw.com

August 31, 2026

**VIA EMAIL**

Leslie A Cohen
J'aime Williams Kerper
Leslie Cohen Law PC
1615-A Montana Avenue
Santa Monica, California 90403
leslie@lesliecohenlaw.com
jaime@lesliecohenlaw.com

Martin D. Singer
Paul N. Sorrell
Singer Weinstein Wolf & Jonelis LLP
2049 Century Park East, Suite 2400
Los Angeles, California 90067
mdsinger@singerlaw.com
psorrell@singerlaw.com

Re: *Crestlloyd, LLC v. Inferno Investment, Inc., et al.*, United States Bankruptcy Court, Central District, Case No. 2:21-bk-18205-DS, Adv. No. 2:22-ap-01125-DS: Discovery Deficiencies

Dear Counsel:

I write regarding Inferno Investment, Inc.'s ("Inferno") responses to Hankey Capital, LLC's ("Hankey") written discovery, including Hankey's Second Set of Requests for Production, Third Set of Requests for Production, Fourth Set of Requests for Production, Fifth Set of Requests for Production, First Set of Requests for Admissions, First Set of Interrogatories, and Second Set of Interrogatories. Inferno's responses are deficient in several respects, as set forth below. Unless Inferno cures these deficiencies and failures, Hankey will move the Court for an order compelling further responses, production of responsive documents, and any other appropriate relief.

**Inferno's Objections Lack Merit**

**Improper General Objections.** Inferno asserts a raft of general objections in response to all of the discovery at issue. Withholding documents or information based on general objections is improper. *See Springer v. Gen. Atomics Aeronautical Sys. Inc.*, No. 16CV2331-BTM(KSC), 2018 WL 490745, at *2 (S.D. Cal. Jan. 18, 2018) (finding "subject to" boilerplate objections noncompliant with Federal Rules of Civil Procedure because they are "confusing and misleading"); *see also Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."). Accordingly, please confirm that Inferno is not withholding any documents or information based on these general objections.

**Improper "Vague and Ambiguous" Objections.** Inferno repeatedly objects that Hankey's discovery is "vague and ambiguous" without identifying the specific wording, phrase, or component of any request or interrogatory that is supposedly unclear. *See, e.g.*, RFP Nos. 39–58, 61–72, 77–86, 88, 90–91, 108–110, 111–137, 138–147; Interrogatory Nos. 3–5, 9–12, 14, 16. *See Bryant v. Armstrong*, 285 F.R.D. 596, 606 (S.D. Cal. 2012) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity. . . . The responding party should exercise common sense and attribute ordinary definitions to terms in discovery requests.") (citations and quotations omitted). The objection is particularly inappropriate where the discovery uses Inferno's own allegations, contentions, transactions, documents, or identified issues as the frame of reference. *See, e.g.*, RFP Nos. 11, 12, 17, 39-58, 61-72, 77-86.

**Improper "Burdensome and Oppressive" Objections.** Inferno also repeatedly objects in a conclusory manner that Hankey's discovery is allegedly "burdensome and oppressive" without explaining in any manner the volume of work involved to demonstrate the claimed burden. *See, e.g.*, RFP Nos. 18–28, 31–38, 53–54, 59–61, 87, 93–104, 108–110, 111–147; Interrogatory Nos. 5, 6, 9–12, 14, 16. Such a conclusory objection is improper and does not justify refusing to produce or respond to discovery. *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections."); *e.g.*, *Hall v. Marriott Int'l, Inc.*, No. 3:19-CV-01715-JLS-AHG, 2021 WL 1906464, at *10–12 (S.D. Cal. May 12, 2021) (defendant failed to show the discovery requests were overly burdensome, as requests are not overly burdensome merely because they may be costly or time consuming). And even if Inferno believed some aspect of the discovery was overbroad, Inferno had a duty to respond to the extent the discovery could be narrowed to an appropriate scope. *See Ludlow v. Flowers Foods, Inc.*, No. 18-CV-01190-TWR-JLB, 2021 WL 12104098, at *6 (S.D. Cal. Dec. 6, 2021) ("[A] party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope.") (alterations in original) (quoting *Sanchez Ritchie v. Energy*, No. 10CV1513-CAB(KSC), 2015 WL 12914435, at *2 (S.D. Cal. Mar. 30, 2015)).

**Improper "Equally Available" Objections.** Inferno also objects to much of the requested discovery on the ground that responsive documents or information are allegedly "equally available" to Hankey. *See*, *e.g.*, RFP Nos. 47, 53–54, 59–61, 68–70, 82–86, 108–110, 138–147. This is not a valid basis for a party to refuse production or withhold information. *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (finding objections to requests on the ground that responsive information was "equally available" to the requesting party improper and insufficient to resist discovery).

Accordingly, please confirm that Inferno is not withholding any documents or information on the basis of its "vague and ambiguous," "burdensome and oppressive," or "equally available" objections.

**The Requested Discovery Is Within the Scope of Rule 26 and Inferno Must Promptly Provide Supplemental Responses**

All of the discovery Hankey served on Inferno is properly within the scope of discoverable information. *See* Fed. R. Civ. P. 26(b)(1), 33, 34, 36. Indeed, the discovery concerns Inferno's own

allegations, the factual bases for Inferno's claims and defenses, the parties' course of dealing, the authenticity of relevant documents and signatures, vendor and funds-transfer issues, or matters bearing directly on Hankey's recharacterization, equitable subordination, priority, and lien-related claims and defenses—all matters relevant and proportional to the needs of the case. Relevance at the discovery stage is broadly construed and, once the propounding party shows relevance, the party opposing discovery bears the burden of showing the discovery should not be allowed and of clarifying, explaining, and supporting its objections with competent evidence. *Owen v. Hyundai Motor Am.*, 344 F.R.D. 531, 535 (E.D. Cal. 2023); *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 280–81 (N.D. Cal. 2015). Inferno has not and cannot meet this burden.

Inferno must promptly amend its responses, withdraw unsupported objections, and confirm whether it is withholding any responsive documents or information on the basis of its objections. Specifically, Inferno must identify any specific limitation it is imposing, state whether anything is being withheld and on what basis, explain any claimed ambiguity or burden with particularity, produce all responsive non-privileged documents, answer each interrogatory directly and completely, and admit, deny, or otherwise amend each request for admission to the fullest extent required by the Rules.

## Specific Deficiencies

**Set Two Requests for Production.** Inferno improperly appears to narrow RFP Nos. 18–28, 32–38, 41–42, 87–88, 93–100, and 103–104 to documents "related to," "relating to," or "involving" the Property. That limitation is improper because many of those Requests seek discovery concerning the broader financial relationship and dealings among Inferno, Crestlloyd, Nile Niami, Yvonne Niami, Yogi Securities Holdings, LLC ("Yogi"), Joseph Englanoff, Hankey, and related entities. Those broader relationships are directly relevant to Hankey's claims and defenses and there is no proper basis to limit production to documents strictly about the Property. For example, Hankey is entitled to explore the scope of the relationship between Inferno and its principals, on the one hand, and Crestlloyd and its principals, on the other hand, which bears directly on Hankey's recharacterization claim. Inferno must amend its responses to remove the limitation and produce all responsive documents.[1]

Inferno should also clarify its use of differing compliance formulations in response to RFP Nos. 30, 31, 39, 40, 43–58, 61, 62, 64–71, 73–86, 89–92, and 105–107. In various responses, Inferno states that it "will comply and produce," "will produce," "has produced or will produce," "will produce all responsive documents," or "will produce all non-privileged responsive documents located after a reasonably diligent search." Inferno may intend those formulations to mean the same thing, but Hankey is unsure whether any difference is intended. Please confirm whether these formulations have different meanings and, if so, identify the difference; otherwise,

---

[1] With respect to RFP No. 34, as relating to Inferno or its representatives, Hankey is willing to limit the request to documents and communications relating to, referencing, or concerning: (1) any of the properties at issue in this adversary proceeding, including, without limitation, the Property, Hillcrest Property, Bellagio Property, Carcassonne Property, Stone Ridge Property, and Londonderry Property, as defined in Hankey's Cross-Claim (Dkt. 296); and (2) any of the other parties to the adversary proceeding and their representatives, including, without limitation, Crestlloyd, LLC, Yogi Securities Holdings, LLC, Nile Niami, and Joseph Englanoff.

please confirm that Inferno is fully complying with each Request and is not withholding any responsive documents on the basis of its objections.

RFP No. 17 seeks all documents and communications relating to, referring to, or discussing Inferno's beliefs or statements regarding its position as holding a lien on the Property junior to Hankey, including statements that Inferno held a deed of trust in second priority or similar statements. RFP No. 17 requires clarification because Inferno states that it will produce documents "on the subject of Plaintiff holding a secured position on the Property in second priority," which suggests Inferno may be limiting the scope of documents it intends to produce in response to the Request. No such limitation is appropriate. Please confirm that Inferno will supplement its response to confirm that it is fully complying and producing all responsive documents called for by the Request.

RFP No. 15 seeks all licenses from any government entity authorizing Inferno to provide loans issued between January 1, 2013, and June 9, 2022. Inferno objected to RFP No. 15 on relevance grounds and then stated that it is "not currently aware" of responsive documents, such that it "cannot comply," and that no license was required. That response is evasive because it does not confirm that Inferno conducted a diligent search, does not clearly state whether responsive licenses or related documents exist, and does not state whether documents are being withheld based on Inferno's objections. Inferno must supplement its response to confirm the search, the existence or nonexistence of responsive documents, and whether anything is being withheld.

Similarly evasive are Inferno's responses to RFP Nos. 63 and 72, which seek documents and communications relating to paragraphs 81 and 90, respectively, of Inferno's Third Amended Complaint. Inferno objects that the Requests are vague and ambiguous but then states only that it is "not currently aware" of responsive documents and cannot comply. As noted above, this is not an appropriate response. Inferno must supplement its responses to these Requests to identify the allegedly ambiguous language, confirm whether it conducted a diligent search, and state whether responsive documents exist or are being withheld.

RFP Nos. 59 and 60 seek documents and communications relating to allegations that Inferno pleaded in support of its Eighth Claim for Relief. RFP No. 59 concerns paragraph 74 of Inferno's Third Amended Complaint, which alleges that Crestlloyd is holding approximately $3.6 million attributable to the post-petition loan, which Crestlloyd contends are unencumbered DIP Loan Proceeds. RFP No. 60 concerns paragraph 75, which alleges that the 2022 rebate negotiated with Concierge Auctions resulted in a decreased purchase price for the Property that directly harmed lienholders, including Inferno. These RFPs seek relevant discovery because they request documents and communications directly supporting allegations Inferno affirmatively pleaded. Inferno cannot refuse to produce documents about its own allegations. Inferno must supplement its responses to RFP Nos. 59 and 60 and agree to produce all responsive documents.

**<u>Set Three Requests for Production</u>**. RFP Nos. 108 and 110 seek all notarized or other documents reflecting Julien Remillard's thumbprint, and RFP No. 109 seeks all notarized documents reflecting Remillard's signature. Inferno has placed Remillard's signature and thumbprint at the center of this dispute by asserting his signature was forged on notarized documents. The requested documents are thus tailored to the authenticity and execution issues raised by Inferno. Undisputed signature and thumbprint samples are important to allow Hankey to

test the claim of forgery because they provide known exemplars against which questioned signatures and thumbprints can be evaluated. Notarized documents created outside the context of this dispute are especially probative because, unlike litigation-created samples, they are ordinary-course materials whose authenticity is not itself the subject of the parties' dispute.

Inferno's objections to RFP Nos. 108–110 do not justify its refusal to search for or produce responsive documents. Inferno objected only in conclusory fashion that RFP Nos. 108–110 are vague, ambiguous, overly burdensome, lacking a time limitation, and not tied to particular transactions or interactions, but it did not identify any specific ambiguity or explain why a search for documents reflecting Remillard's own signature or thumbprint would be disproportionate given that Inferno made the authenticity of his signature and thumbprint a central issue in the case. Indeed, the fact that the documents might be tied to other transactions or interactions that are undisputed is precisely why such documents must be produced.[2]

Inferno also objected to RFP Nos. 108–110 on the ground that responsive documents are already in Hankey's possession because Remillard voluntarily provided signature and thumbprint samples on February 27, 2026. That objection misses the point. The February 27 samples may be useful, and the Request for Sampling and Inspection may have been partially satisfied by that sampling, but those litigation-created samples do not replace undisputed, ordinary-course samples—particularly notarized samples—that may better assist Hankey's expert in evaluating natural variation, consistency, and authenticity. Inferno must confirm whether any additional documents responsive to RFP Nos. 108–110 exist and, if so, produce all responsive, non-privileged documents.

**Set Four Requests for Production**. RFP Nos. 111–119 seek documents and communications concerning partnership relationships or agreements involving Inferno, Remillard, Crestlloyd, Nile Niami, Yvonne Niami, and related entities. RFP Nos. 120–133 seek documents and communications concerning funds transferred among those same entities, including transfers to or from Inferno, Remillard, Crestlloyd, and the Niami parties. RFP Nos. 134 and 135 seek documents and communications concerning business dealings among those parties relating to the Property. Each of these Requests seeks documents that are crucial to understanding the parties' course of dealing, financial relationships, intent, and treatment of the transactions at issue, which bear directly on Hankey's recharacterization and equitable subordination claims and defenses. Inferno's responses to all of RFP Nos. 111–135 are deficient. As to RFP Nos. 111–119, Inferno cannot avoid discovery regarding partnership relationships or agreements among the relevant parties by asserting boilerplate objections that do not clearly state whether Inferno conducted a diligent search, whether it will produce all responsive non-privileged documents, whether it is limiting production to some narrower category of documents, or whether it is withholding documents based on its objections. For example, in response to RFP Nos. 112, 113, and 115, Inferno objects and then refers back to another response rather than stating whether it will produce documents responsive to that particular RFP. That formulation is nonsensical and inadequate because it leaves Hankey unable to determine whether Inferno is producing responsive documents, limiting production, or withholding documents on the basis of objections. As to RFP Nos. 120–

[2] Although it did not object on this basis, if Inferno is concerned about the confidentiality of the contents of such documents, Hankey would be willing to consider a redaction protocol that would still permit it to obtain the needed exemplars.

133, Inferno must state whether it searched for and will produce documents concerning each requested funds transfer, rather than using partial, unclear, or evasive and ambiguous formulations that leave Hankey unable to determine whether responsive documents exist, are being produced, or are being withheld. As to RFP Nos. 134 and 135, Inferno must produce documents concerning business dealings relating to the Property and cannot obscure the scope of Inferno's production through objections or unexplained limitations. Inferno must supplement its responses to each of RFP Nos. 111–135 to state clearly whether it conducted a diligent search, whether its production is complete, whether responsive documents are being withheld and, if so, on what basis, and what limitation, if any, it is imposing.

Inferno's wholesale refusal to produce documents in response to RFP Nos. 136 and 137 is also improper. RFP No. 136 seeks documents and communications concerning non-Property business dealings between Inferno and Crestlloyd, Nile Niami, Yvonne Niami, or Niami-controlled entities. RFP No. 137 seeks the same category of documents and communications for business dealings involving Remillard or Remillard-controlled entities. Non-Property business dealings are relevant as they may shed light on the parties' broader course of dealing, the substance of their financial relationships, their intent when entering similar instruments or arrangements, and the manner in which they treated payments, notes, agreements, and other transactions. Among other things, those issues bear directly on Hankey's recharacterization and equitable subordination claims. Inferno cannot shield from discovery its non-Property business dealings or refuse to produce documents responsive to RFP Nos. 136 and 137 merely by asserting boilerplate objections. Inferno must supplement its responses and produce all responsive, non-privileged documents.

RFP No. 122 has a separate deficiency. It seeks documents and communications relating to funds transferred to Inferno from Crestlloyd in November 2018, but Inferno responds only that it is "not aware" of responsive documents in its possession. That is not a compliant response. It has the same problem as Inferno's "not currently aware" responses in Set Two: it does not confirm that Inferno conducted a diligent search, does not state whether responsive documents exist in Inferno's possession, custody, or control, and does not identify whether any responsive documents are being withheld on the basis of objections. Inferno must supplement its response to RFP No. 122 to confirm that it conducted a diligent search and state whether responsive documents exist or are being withheld.

**Set Five Requests for Production**. RFP Nos. 138 and 147 concern vendors and vendor-related funds connected to the Property and the related entities at issue, including documents that may show how funds were used, directed, or transferred for vendor work. Inferno improperly limited its production to documents concerning only Centurion LV, Snyder-Diamond, and Italian Luxury Group, asserting that it does not know what other vendors the Request is referencing. That claim is not credible, and the limitation should be withdrawn. Inferno knows what "Vendors" means in this case; and even if it does not know every vendor, it knows many more than the three identified. For example, Hankey and Yogi have served dozens of subpoenas on vendors in this litigation; Inferno cannot now feign ignorance to avoid complying with its obligation to search for vendor-related documents. Even if Inferno believed the term required clarification, it was required to conduct a reasonable search and produce documents responsive to the term as commonly understood, not unilaterally narrow the Requests to three vendors. Inferno must supplement its

responses to RFP Nos. 138 and 147 and produce documents and communications located after a reasonably diligent search.

RFP Nos. 139–144 seek relevant discovery because they concern communications involving related entities, related projects, and individuals whose dealings with Inferno, Crestlloyd, Remillard, Joseph Englanoff, Yogi, and others bear on Hankey's allegations concerning the parties' preexisting relationships, broader course of dealing, funding practices, and treatment of transactions among the relevant parties and entities. The point is not simply that other projects exist; it is that the parties' claims and defenses put the parties' larger relationships and related dealings at issue. Inferno's unilateral narrowing of its production to documents "related to the Property" is improper where the requested documents bear directly on, among other things, Hankey's recharacterization, equitable subordination, and related claims and defenses. Inferno must supplement its responses and produce all responsive documents—not merely those related to the Property.

RFP Nos. 145 and 146 seek relevant discovery because they request bank statements sufficient to show monies transferred between Inferno and Crestlloyd in both directions. RFP No. 145 seeks bank statements sufficient to show money transferred from Inferno to Crestlloyd, while RFP No. 146 seeks bank statements sufficient to show money transferred from Crestlloyd to Inferno. Those documents bear on the parties' financial relationship, course of dealing, and the substance, purpose, timing, and treatment of transfers between Crestlloyd and Inferno, including issues relevant to Hankey's recharacterization and equitable subordination claims. Inferno's responses are deficient to the extent they limit production to documents "related to the Property" or otherwise fail to confirm that Inferno has produced all bank statements sufficient to show the requested transfers. For RFP No. 145, Inferno must confirm whether it has produced all bank statements sufficient to show transfers from Inferno to Crestlloyd, regardless of whether Inferno characterizes those transfers as Property-related. For RFP No. 146, Inferno's response is also unclear because it states that Inferno has already produced all documents responsive to the Request "related to the Property," but it is not clear whether Inferno is saying that it has produced all bank statements reflecting Crestlloyd-to-Inferno transfers, that it has produced only bank statements it deems Property-related, or that it is withholding non-Property transfer documents based on its objections. Inferno must clarify its position and produce all responsive documents called for by the Requests, without limiting production to documents it characterizes as relating to the Property.

**Requests for Admission.** RFA Nos. 1 and 3 seek admissions concerning the authenticity of copies from Nigel Gibbs's notary book—an issue that should not remain in dispute. Inferno's counsel took Gibbs's deposition, and Gibbs confirmed that he made the photocopies from his notary book that are Exhibits 2 and 3. Gibbs testified: "Q. So Mr. Gibbs, my final question is, I just wanted to clarify that it was actually you that made the copies from your notary book. Correct? A. Yes." Gibbs Tr. 36:1–5. Inferno's responses are deficient to the extent Inferno refuses to admit authenticity or stipulate to an issue that should not be disputed. Please confirm whether Inferno will stipulate to authenticity so the parties can avoid unnecessary motion practice. If Inferno intends to challenge the veracity of Mr. Gibbs' testimony regarding the authenticity of these documents, it must explain the basis for that challenge.

RFA Nos. 2 and 4 seek relevant admissions because they ask Inferno to admit or deny whether Remillard made the fingerprint or signature markings in the notary book. Inferno's basis

for denial is not credible or adequate. Inferno states that Remillard lacks personal knowledge and/or information required to respond, but these Requests concern Remillard's own conduct. Remillard should be able to say whether he made the fingerprint and signature markings or whether he did not. If Inferno's position is that Remillard does not recall, Inferno must say so clearly and explain the basis for that position after conducting a reasonable inquiry. Inferno must supplement these responses.

**Sets One and Two Interrogatories.** Interrogatory No. 3 asks Inferno to state the factual basis for a specific allegation in its Third Amended Complaint regarding Crestlloyd's purported fraud and repudiation. That information is relevant because Hankey is entitled to know the facts, witnesses, documents, communications, and other information on which Inferno relies to support allegations it has affirmatively placed at issue in this Adversary Proceeding. Inferno's response is deficient because it does not provide those facts. Instead, Inferno refers Hankey generally to the Third Amended Complaint. That is evasive, incomplete, and improper. Hankey is not asking Inferno to identify where the allegation appears in the pleading, it is asking Inferno to provide the factual basis for the allegation in a verified interrogatory response. A general reference to the pleading does not answer the interrogatory and leaves Hankey without the substantive information the Rules require. Inferno must supplement its response to provide the substance of its answer directly, including witnesses, documents, communications, and other supporting allegations. *See U.S. ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 682 (E.D. Cal. 2006) (propounding party is "entitled to receive the facts" receiving party contends support alleged claims or defenses).

Interrogatory No. 4 asks whether Remillard ever signed or placed his fingerprint in Gibbs's notary book and, if so, when and for what purpose. Inferno's response is inappropriate. There is no need to refer generally to Gibbs's notary book to answer that question. The answer is either yes or no. If yes, Inferno must state when and for what purpose. Even if Remillard does not recall every specific detail, Inferno must provide the information reasonably available to it, including the relevant time period, approximate dates, the documents or categories of documents involved, and the circumstances or purpose of any signing or fingerprinting. Vague references to "some" documents or "some" period of time are evasive and insufficient.

Interrogatory Nos. 5 and 12 seek information concerning the broader financial and business relationship among Inferno, Crestlloyd, the Niami parties, and related entities, including Hankey's allegations concerning the parties' preexisting relationships and course of dealing. Interrogatory No. 5 asks for the identity, amounts, and timing of funding Inferno contends in paragraph 5 of its Third Amended Complaint that it had provided. Interrogatory No. 12 asks Inferno to identify promissory notes executed by any entity owned or controlled by Nile or Yvonne Niami in favor of Inferno from 2012 to the present, including the entity, timing, amount, security, and repayment status. Those facts bear on the parties' relationship, course of dealing, intent, prior funding, notes, and treatment of the transactions at issue, including issues relevant to Hankey's equitable subordination and recharacterization claims and defenses. Boilerplate relevance, overbreadth, and proportionality objections do not excuse Inferno from answering. Inferno must provide complete, verified, substantive responses to Interrogatory Nos. 5 and 12 identifying the facts and information requested.

Interrogatory No. 6 seeks facts concerning the reduction in principal of loans to Crestlloyd, including the reason for the reduction and the circumstances under which Inferno agreed to it.

Inferno's skeletal response that the reduction in principal was an "accommodation to the Debtor" does not constitute "all facts" concerning the reduction. Inferno must amend its response to provide the requested facts, including the purpose of the accommodation, who, when, and why it was requested, why Inferno agreed to provide it, and any other facts supporting Inferno's position.

Interrogatory No. 7 also requires a complete response. Inferno states only that, "Not to Plaintiff's knowledge," was a portion of the $7,040,000 claim reduction assigned to Quattro. But Inferno should know—or should be able to determine from its own records—whether any portion of the alleged claim reduction was assigned to Quattro, including in connection with the Quattro Note or otherwise. Inferno must either confirm that it has reviewed all information reasonably available to it, including documents and information within its possession, custody, or control, and provide a complete verified response stating whether any such assignment occurred, or state under oath that it is unable to answer and describe the diligent efforts it made to obtain the requested information. *Bryant v. Armstrong*, 285 F.R.D. 596, 611–13 (S.D. Cal. 2012) (responding party has "affirmative duty to furnish all available information" and may not refuse or answer "I don't know" without stating its inability under oath and describing the efforts made, and must "utilize all reasonably available means").

Interrogatory Nos. 9, 10, and 14 are deficient for a related reason. Inferno answers those interrogatories on "information and belief," including as to alleged misuse of Airole funds, alleged vendor payments for other projects, Hankey's alleged knowledge, the alleged involvement of Hankey representatives, and related allegations concerning other properties or transactions. Inferno must confirm that it has reviewed all information within its possession, custody, or control and that there is no additional information available to provide. *Bryant*, 285 F.R.D. at 611–13. At minimum, Inferno must identify the facts, documents, witnesses, and sources on which its information-and-belief allegations are based, rather than reserving the right to supplement while leaving Hankey to guess what information Inferno actually has. *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 652 (N.D. Cal. 2004) (party may not use a reservation to supplement as a basis to withhold facts it currently has; it "shall respond fully as to all information currently available," with supplementation allowed only after disclosing what it possesses).

Interrogatory No. 11 is deficient because Inferno responds by referring Hankey to its response to Interrogatory No. 10 and to unspecified agreements between Crestlloyd and Hankey. That is not a complete interrogatory response. Interrogatory No. 11 asks for the facts supporting Inferno's contention that Hankey did not care whether loan funds benefited the Property because Hankey allegedly sought to increase Crestlloyd's reliance on Hankey and obtain default interest. Inferno should answer that interrogatory directly and identify the facts supporting that contention, including the specific agreements, provisions, documents, communications, witnesses, and other information on which it relies. In the alternative, if Inferno has no factual basis for that contention, it should be withdrawn.

Interrogatory No. 16 asks Inferno to state the factual basis for a specific allegation that Inferno made in its Third Amended Complaint regarding Hankey's conduct. Hankey is entitled to know the facts, witnesses, documents, communications, and other information on which Inferno relies to support an allegation that it chose to plead and has placed directly at issue in this Adversary Proceeding. Inferno's response is deficient because it does not provide that factual basis. Instead, Inferno refers Hankey generally to the Third Amended Complaint. That is improper.

Hankey is not asking Inferno to identify where the allegation appears in the pleading; Hankey is asking Inferno to provide the facts supporting that pleaded allegation in a verified interrogatory response. Inferno must supplement its response to identify the requested facts and information directly, including the facts, witnesses, documents, communications, and other information supporting the allegation. *See Englund*, 235 F.R.D. at 682 (propounding party is "entitled to receive the facts" receiving party contends support alleged claims or defenses).

*  *  *

Please confirm by no later than September 7, 2026 that Inferno will be supplementing its responses and producing responsive documents by September 14, 2026. If you would like to discuss the concerns raised in this letter, please let me know and I will make myself available.

Best regards,

Heather J. Silver

cc: Howard J. Steinberg
Thomas M. Geher

# EXHIBIT 2

SINGER
WEINSTEN WOLF & JONELIS LLP
ATTORNEYS AT LAW
SUITE 2400
2049 CENTURY PARK EAST
LOS ANGELES, CALIFORNIA 90067-2906
TELEPHONE (310) 556-3501
FACSIMILE (310) 556-3615
www.SINGERLAW.com

MARTIN D. SINGER
BRIAN G. WOLF
LYNDA B. GOLDMAN
PAUL N. SORRELL
MICHAEL E. WEINSTEN
EVAN N. SPIEGEL
ALLISON S. HART
T. WAYNE HARMAN

DAVID B. JONELIS
MELISSA Y. GLASS △*
KELSEY J. LEEKER
CESIE C. ALVAREZ△
SETH D. MUMY
MILAGROS R. VILLALOBOS
ROYA M. HASSAS

△ ALSO ADMITTED IN NY
* ALSO ADMITTED IN TX

September 15, 2026

**<u>VIA EMAIL</u>: heather.silver@gtlaw.com**

Heather J. Silver, Esq.
Greenberg Traurig
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

**Re:** ***<u>Inferno Investment, Inc. v. Crestlloyd, LLC et al.</u>***
***<u>Case No. 2:21-bk-18205-DS / Adv. No. 2:22-ap-01125-DS</u>***
Our File No. 7275-2

Dear Ms. Silver:

I received your letter dated August 31, 2026, in which you seek to meet and confer on responses to discovery requests provided by our client, Inferno Investment, Inc. ("Inferno"), to four requests for production, a set of request for admissions and two sets of interrogatories propounded by Hankey Capital, LLC ("Hankey"). Hankey apparently was content waiting for many months to dispute certain responses; the fact is that none of the discovery is critical to Hankey's alleged position.

Furthermore, as set forth below (with a few exceptions that are discussed as to which Inferno is amendable to providing a supplement), Inferno provided sufficient responses to Hankey's discovery. Your letter is rejected in most respects for the following reasons:

**<u>General Objections</u>**

Inferno has asserted certain general objections to particular requests, just as Hankey has done in its responses to discovery from Inferno and others in the case. Those objections are not withdrawn at this time, unless you can identify a specific basis. We have not withheld documents based on these objections. I will focus on the specific alleged deficiencies in Inferno's responses identified in your letter.

**<u>Set Two Requests for Production</u>**

The issues that you raise with regard to the language of Inferno's responses to many requests is without merit. Hankey is obviously looking for a dispute where no inadequacy actually exists. For example, the concerns you have about the language dealing with phrases similar to "related to" have no bearing on the production that was provided. Inferno has not withheld any responsive documents based on these language issues that you refer to on page 3 of your letter.

The alleged limitation on our client's response to RFP No. 17 that you suggest does not exist. All responsive documents known to Inferno on this request have been or will be produced.

The same holds true with regard to RFP No. 15. Inferno has no responsive documents of which it is aware after a diligent search. The same thing holds true with regard to the other RFPs referenced in your letter concerning Set Two. In particular, Inferno has produced all documents of which it is aware with respect to RFP Nos. 63, 72, 59 and 60. Inferno is not refusing to produce any documents responsive to these requests.

**Set Three Requests for Production**

Hankey is not entitled to seek all documents reflecting all signatures or thumb prints of Julien Remillard, without limitation and at any time. This is clearly overbroad, burdensome and oppressive and harassing. These requests must be limited by time. Otherwise, these requests are overly burdensome and oppressive.

**Set Four Requests for Production**

Hankey's alleged concerns regarding Request Nos. 111 through 135 related to financial transactions involving Inferno have no merit. I do not understand the alleged concerns. Each of these requests states specifically that our client has "produced the documents responsive to this Request and is producing all additional documents in its possession responsive to these requests, which may duplicate documents previously produced…" On what basis is this objectionable? The information is being provided. Requiring Inferno to copy language from prior responses instead of referring to the same response would be nothing more than "make work." The relevant documents in these categories have been produced. This effort accomplishes nothing more than wasting time and running up fees.

With regard to Request Nos. 136 and 137, we stand on the objections. These requests are not only unlimited in time, they are vague in that they do not specify any transaction. The requests are overbroad and seek information that is irrelevant to the issues in this case involving The One.

With respect to RFP No. 122, Inferno conducted a diligent search and no responsive documents exist. You are quibbling over language. We are not aware of responsive documents.

**Set Five Requests for Production**

With regard to Request Nos. 138 and 147, Inferno has conducted a diligent search and provided the responsive documents. If there are any specific vendors for whom you would like us to make a further specific search, let me know. The request for every communication with a vendor is overbroad and absurd.

---

I do not understand your concern regarding RFP Nos. 139 through 144. We have produced the responsive communications requested that are known to Inferno. The response specifically states this. We are not clear on what further documents you believe may exist that do not relate to the Property but are somehow relevant. Inferno's position is that there is nothing more to be produced.

With regard to RFP Nos. 145 and 146, the requests are overbroad and seek irrelevant documents, in seeking to obtain bank statements regarding other projects. The requests are indeed outrageous in the context of this dispute, in which Hankey refuses to provide any information regarding its many other loans to and relationship with the debtor Crestlloyd and the Niamis. We are willing to consider providing further information regarding the relationship between Inferno and Crestlloyd, but the discovery must go both ways. There are many discovery requests that we will be discussing with you further in which Hankey is refusing to provide information concerning its transactions with Nile Niami, Yvonne Niami, Crestlloyd and other related parties. Hankey has an extensive relationship with Nile Niami that must be explored. You have been unwilling to date to provide information on these issues and our willingness to provide information concerning the totality of the relationship with Niami must be mutual. I look forward to discussing this with you further.

**Requests for Admission**

The concerns that Hankey expresses with regard to Inferno's RFA responses are meritless. The objections to Request Nos. 1 and 3, asking for our client to authenticate someone else's records, are completely appropriate. Your effort to obtain Inferno's admissions to the authenticity of a notary who is obviously loose with the truth is laughable if it did not involve such serious consequences. Plaintiff will not make admissions concerning authenticity of a third party's records.

With regard to RFA Nos. 2 and 4, you have an adequate response. Plaintiff lacks information to respond. You are arguing with a sufficient response. Nothing more is required.

**Sets 1 and 2 Interrogatories**

We are willing to provide a supplement to Interrogatory No. 3 regarding facts supporting the claim that Crestlloyd committed fraud and repudiated the MOA. We will set forth the many facts if you require as to why the MOA is of no force or effect. The actual grounds are extensive and we will supplement to provide additional facts in this regard. We trust that Hankey will likewise be amenable to amending its responses, which are deficient in numerous respects.

With regard to Interrogatory No. 4, Mr. Remillard is not aware of whether he ever signed and/or fingerprinted the notary book. We can provide an amendment to this effect if you require.

You point out that Interrogatory Nos. 5 and 12 seek information concerning projects other than The One. You claim that this information is important because it bears "on the parties' relationship, course of dealing, intent, prior funding, notes, and treatment of the transactions at

---

issue, including issues relevant to…equitable subordination and recharacterization claims and defenses." We disagree that this litigation provides an excuse for Hankey to discover facts concerning other transactions between our client and Crestlloyd or the Niamis. Nevertheless, we are willing to provide and have provided in the response the facts relating to our clients' and their entities' investments in Crestlloyd or any Niami entity. To the extent that you want additional information, please specify what you want. Keep in mind that this argument works both ways. We will insist on a mutual exchange of information.

With regard to Interrogatory No. 6, Inferno responded in good faith; regardless, we are willing to provide an amended response. We are willing to provide an amended response to Interrogatory No. 6 within 20 days.

Inferno's response to Interrogatory No. 7 is adequate. It need not be amended. Inferno has answered to the best of its knowledge. You are asking about actions that may have been taken by third parties, not Inferno, which is nothing but speculation. Inferno did not make any such assignment. It does not have knowledge of any assignment. You have been provided with the available information concerning our client's conduct. We cannot speculate on the failures of other parties, including Hankey, to follow procedures to which they agreed.

Without admitting that the responses are in any way deficient, Inferno is willing to supplement the responses to Interrogatory Nos. 9 and 10. Our client can be more specific and inclusive in connection with these issues concerning Hankey's loans. We anticipate that Hankey will likewise be amendable to supplementing its deficient discovery responses.

Your alleged objections to Inferno's response to Interrogatory No. 11 are without merit. Hankey is well aware of the agreements that it had with Crestlloyd that allowed it to benefit from more loan activity and significant default interest. It is comprised simply all of the loan agreements between Hankey Capital and Crestlloyd, in addition to the other documents we have produced.

With regard to Interrogatory No. 16, all of the allegations of the Third Amended Complaint concerning Hankey's intentional conduct provide the basis for the claim for punitive damages. All of the information we are discussing that support the substantive claims against Hankey also support the claim for punitive damages. Regardless, we are willing to supplement the response to Interrogatory No. 16. The information provided to date by Inferno supports the claim for punitive damages.

Hankey seeks to overreach and simply argue with adequate discovery responses. Regardless, Inferno expects the same level of cooperation in discovery. Inferno looks forward to continuing the discussion on these issues and hopefully to resolve all discovery issues without Court intervention. Let's discuss a reasonable time frame for amended responses in the few categories discussed above.

This letter does not constitute a complete or exhaustive statement of all of our client's rights or claims. Nothing stated herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of my client's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Very truly yours,

PAUL N. SORRELL
Of
SINGER WEINSTEN
WOLF & JONELIS LLP

PNS:lc
cc: Martin D. Singer, Esq.

# EXHIBIT 3

GT GreenbergTraurig

Heather J Silver
Tel 310.586.7744
Heather.Silver@gtlaw.com

October 14, 2026

**VIA E-MAIL**

Leslie A. Cohen
J'aime Williams Kerper
Leslie Cohen Law PC
1615-A Montana Avenue
Santa Monica, California 90403
leslie@lesliecohenlaw.com
jaime@lesliecohenlaw.com

Martin D. Singer
Paul N. Sorrell
Singer Weinstein Wolf & Jonelis LLP
2049 Century Park East, Suite 2400
Los Angeles, California 90067
mdsinger@singerlaw.com
psorrell@singerlaw.com

Re: *Crestlloyd, LLC v. Inferno Investment, Inc., et al.,* United States Bankruptcy Court, Central District, Case No. 2:21-bk-18205-DS, Adv. No. 2:22-ap-01125-DS: Discovery Deficiencies

Dear Counsel:

I write in response to your September 15, 2026, letter concerning Inferno Investment, Inc.'s ("Inferno") responses to Hankey Capital, LLC's ("Hankey") written discovery. Thank you for the clarifications and confirmations provided in your letter, including Inferno's confirmation that it conducted diligent searches, is not withholding documents based on its objections, and its agreement to supplement various discovery responses. Those representations have significantly narrowed the areas of disagreement and resolved the majority of issues raised in Hankey's prior correspondence. As discussed below, a limited number of issues remain.

**Set Two Requests for Production**

Thank you for confirming that Inferno is not withholding any otherwise responsive documents pursuant to any of its objections. We understand Inferno's responses to mean that, after a diligent search and reasonable inquiry, Inferno has produced responsive documents within its possession, custody, or control, will produce any remaining responsive documents identified through that search, and is not withholding any responsive documents on any ground other than the attorney-client privilege or the attorney work product doctrine. Please inform us if that understanding is incorrect.

## Set Three Requests for Production

**RFP Nos**. **108–110**. RFP Nos. 108 and 110 seek documents reflecting Julien Remillard's thumbprint, and RFP No. 109 seeks notarized documents reflecting Julien Remillard's signature. Inferno is the one who has made the authenticity of Remillard's signature and thumbprint a central issue in this case. It cannot now refuse the discovery needed to test its claims of forgery. To be clear, the February 27, 2026, litigation-created samples are not a substitute for ordinary-course signatures and thumbprints.

If Inferno would like to withdraw its claim that Remillard's signature was forged, Hankey will withdraw these requests. Otherwise, please provide your proposal for a reasonable limitation and the basis for any burden or proportionality concerns so that the parties can determine whether a mutually acceptable narrowing can be reached. Inferno's wholesale refusal to provide any documents is improper and will be raised with the Court if no compromise can be reached.

## Set Four Requests for Production

**RFP Nos**. **111–135**. Thank you for confirming that Inferno is not withholding any otherwise responsive documents pursuant to any of its objections. We understand Inferno's responses to mean that, after a diligent search and reasonable inquiry, Inferno has produced all responsive documents within its possession, custody, or control, will produce any remaining responsive documents identified through that search, and is not withholding any responsive documents on any ground. Please inform us if that understanding is incorrect.

**RFP Nos**. **136 and 137**. These Requests seek documents and communications concerning non-Property business dealings among Inferno, Crestlloyd, the Niami parties, and related entities. Inferno's position that it will stand on its objections is improper and frivolous; indeed, it directly conflicts with the position Inferno has taken in discovery with Hankey, notwithstanding that there are no allegations by any party in this case of additional dealings between Hankey and Crestlloyd or the Niamis outside of The One.

Nonetheless, as Inferno demanded: "The reality is that in proceeding with this case, we need a full specification of the business relationship between Hankey, on the one hand, and Crestlloyd and the Niamis, on the other hand. We need a reference to all of the loans that were made, security of any kind provided for the loans, and the repayments on all properties. We need an identification of all of the separate projects that were involved, and the governing agreements." If such is true for Hankey, of course it is true for Inferno, whose relationship with Crestlloyd and the Niamis is directly at issue. *See, e.g.*, Hankey's Answer to Inferno's Third Amended Complaint, ECF 297, ¶¶ 26–29.

Inferno's contention that the Requests are overbroad, burdensome, and vague is unsupported and provides no justification for its wholesale refusal to produce documents reflecting information it demands of Hankey. Inferno has not explained the nature or scope of the allegedly burdensome universe of documents, the number or types of business dealings it contends are implicated, the custodians or sources that would need to be searched, or the burden associated with

any such search. *See A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("general or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections"); *see also Ind. Living Ctr. of S. Cal. v. City of Los Angeles*, 296 F.R.D. 632, 637 (C.D. Cal. 2013) (noting opposing party must "offer[] evidence establishing the nature of the burden" and finding "[b]y not establishing the basis for their burdensomeness objection . . . [propounding party] w[as] denied the opportunity to challenge [opposing party's] objection."). Nor has Inferno explained why it cannot identify responsive transactions or dealings. If Inferno has a proposal to narrow the Requests, Hankey will consider it. Otherwise, we will raise the matter with the Court.

**Set Five Requests for Production**

**RFP Nos**. **139–144**. Thank you for confirming that Inferno is not withholding any otherwise responsive documents pursuant to any of its objections. We understand Inferno's responses to mean that, after a diligent search and reasonable inquiry, Inferno has produced all responsive documents within its possession, custody, or control, will produce any remaining responsive documents identified through that search, and is not withholding any responsive documents on any ground. Please inform us if that understanding is incorrect.

**RFP Nos**. **145 and 146**. Hankey will address Inferno's issues with Hankey's responses separately, but conditioning its compliance with its own discovery obligations on Hankey providing nonexistent information is not acceptable. Inferno's response nonetheless demonstrates that it recognizes the propriety of the requested information. While the requests are proper as drafted, in the interest of compromise, Hankey proposes that Inferno produce bank statements sufficient to show all transfers between Inferno and Crestlloyd from January 1, 2013, through the filing of this action. Please serve verified supplemental responses stating that, after a diligent search and reasonable inquiry, it has produced or will produce all responsive bank statements within the identified period, without limiting production to transfers it characterizes as related to the Property.

**Requests for Admission**

**RFA Nos**. **1 and 3**. The Requests ask Inferno to admit the genuineness of identified copies from Nigel Gibbs's notary book. Inferno may not refuse to address authenticity merely because the documents are third-party records. Inferno must make a reasonable inquiry and admit the matter, deny it, or state in detail why it cannot truthfully do either. Gibbs testified that he personally made the copies from his notary book. Please serve amended verified responses admitting the authenticity of Exhibits 2 and 3 or, if Inferno denies authenticity or claims insufficient information, identify the specific evidence supporting that position, describe the reasonable inquiry undertaken, and explain why Gibbs's testimony is insufficient. A generalized attack on Gibbs's credibility does not answer either Request.

**RFA Nos**. **2 and 4**. A party may not state that it lacks sufficient information to admit or deny unless it has made a reasonable inquiry and the information known or readily obtainable remains insufficient. These Requests concern whether Remillard himself made the signature and

fingerprint markings in Gibbs's notary book. Inferno therefore must obtain and state Remillard's knowledge or recollection and review the information reasonably available to it. Please serve amended verified responses admitting or denying each Request. If Remillard does not recall whether he made a particular marking, the response must say so clearly, describe the inquiry undertaken and information reviewed, and explain why the available information remains insufficient to permit an admission or denial.

**Sets One and Two Interrogatories**

**Interrogatory Nos**. **3–6, 9, 10, 12, and 16**. Thank you for confirming that Inferno will amend its responses. We understand Inferno's amended responses will, after a reasonable inquiry, identify the facts, witnesses, documents, communications, and other information supporting those responses. Please inform us if that understanding is incorrect.

While it is Inferno's duty to ensure that its response to each Interrogatory is complete, in response to your inquiry regarding what must be included in response to Interrogatory No. 5, please make sure that, at minimum, the amended response identifies each instance of funding referenced in paragraph 5 of the Third Amended Complaint, including the recipient, amount, date, purpose, form of the transaction, and any related note or security. The response to Interrogatory No. 12 must include, at minimum, the identification of each promissory note executed from 2012 to the present by an entity owned or controlled by Nile or Yvonne Niami in favor of Inferno, including the obligor, date, original principal amount, purpose, collateral or other security, repayment history, current balance, and present status. Both responses should address all responsive transactions, not merely those Inferno characterizes as related to the Property.

**Interrogatory No**. **7**. Inferno's attempt to justify its inadequate response to Interrogatory No. 7 fails. The Interrogatory asks whether any portion of the $7,040,000 claim reduction—a claim reduction that Inferno acknowledges occurred—was assigned to Quattro. Inferno's statement that it did not make an assignment does not answer whether an assignment occurred or whether Inferno has records or other information bearing on the issue. Nor are there any "failures of" Hankey that could possibly bear on Inferno's extinguishing part of a loan obligation. Please serve an amended verified response stating unequivocally whether any portion of the claim reduction was assigned to Quattro after reviewing Inferno's records and making a reasonable inquiry.

**Interrogatory No**. **11**. Inferno cannot avoid its discovery obligations by referring generally to all loan agreements between Hankey and Crestlloyd and to unspecified produced documents, and claiming that Hankey already knows what it supposedly did that supports Inferno's assertions. Inferno must serve an amended verified response identifying the specific loan agreements, provisions, documents, communications, witnesses, and other facts on which Inferno relies to contend that Hankey did not care whether loan proceeds benefited the Property because Hankey sought to increase Crestlloyd's reliance on Hankey and obtain default interest. If Inferno has no additional factual basis beyond the agreements themselves, it should say so expressly and explain how the identified provisions support the contention.

**Interrogatory No. 14**. Inferno's letter does not address Interrogatory No. 14. Please confirm you will agree to supplement your response to Interrogatory 14.

* * *

Please confirm by October 21, 2026, that Inferno will serve the supplemental responses and produce the responsive documents described above by November 2, 2026. If Inferno disagrees with any proposed limitation, please provide a concrete counterproposal and the factual basis for any claimed burden. Hankey remains available to discuss these issues, but absent a prompt and substantive response by these dates, Hankey will seek appropriate relief from the Court. Our view on timing would be more flexible but given your unwillingness to consent to an extension of the discovery deadlines, these are hard dates.

Best regards,

Heather J. Silver

Heather J. Silver

cc: Howard J. Steinberg
Thomas M. Geher

Richard M. Pachulski (CA Bar No. 90073)
Alan J. Kornfeld (CA Bar No. 130063)
Henry C. Kevane (CA Bar No. 125757)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067-4003
Telephone: 310-277-6910
E-mail: rpachulski@pszjlaw.com
akornfled@pszjlaw.com
hkevane@pszjlaw.com
jlucas@pszjlaw.com

*Attorneys for Yogi Securities Holdings, LLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>CRESTLLOYD, LLC,<br><br>Debtor. | Case No. 2:21-bk-18205-DS<br><br>Chapter 11 |
| INFERNO INVESTMENT, INC., a Quebec corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CRESTLLOYD, LLC, a California limited liability company; HANKEY CAPITAL LLC, a California limited liability company, YOGI SECURITIES HOLDINGS, LLC, a Nevada limited liability company; and HILLDUN CORPORATION, a New York corporation,<br><br>Defendants. | Adv. No. 2:22-ap-01125-DS<br><br>**CERTIFICATE OF SERVICE**<br><br>Date: November 17, 2026<br>Time: 1:00 p.m.<br>Place: Courtroom 1639<br>255 E. Temple Street<br>Los Angeles, CA 90012 |
| AND RELATED CROSS-ACTIONS. | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**One Sansome Street, Suite 3430, San Francisco, CA 94105.**

A true and correct copy of the foregoing document entitled (*specify*)**:**

- ***AMENDED NOTICE OF MOTION AND MOTION OF CROSS-DEFENDANT YOGI SECURITIES HOLDINGS, LLC TO EXTEND DEADLINES IN THE COURT'S JUNE 3, 2026, SCHEDULING ORDER AND DECLARATION OF HEATHER SILVER IN SUPPORT THEREOF***

is served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 27, 2026,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On (*date*) ________________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 27, 2026 | Matthew Renck | */s/ Matthew Renck* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
**Case 2:22-ap-01125-DS**

- Kyra E Andrassy kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- Todd M Arnold tma@lnbyg.com
- Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;camille@lesliecohenlaw.com
- Max Fabricant mfabricant@lavelysinger.com
- Thomas M Geher tgeher@jeffer.com, bt@jmbm.com;tmg@ecf.courtdrive.com
- David B Golubchik dbg@lnbyg.com, dbg@lnbyg.com
- Jonathan Gottlieb gottlieb@schonbuchhallissy.com
- John W Lucas jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- John A Moe john.moe@dentons.com, kathryn.howard@dentons.com;derry.kalve@dentons.com;DOCKET.GENERAL.LIT.LOS@dentons.com
- Nicholas David Moss nmoss@molinolawfirm.com
- Joseph M Rothberg jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
- Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Jessica Wellington jwellington@bg.law, ecf@bg.law
- Johnny White JWhite@wrslawyers.com, jlee@wrslawyers.com
- Jaime K Williams jaime@lesliecohenlaw.com, jaime.williams@gmail.com

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California